08 CIV 6978

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

NML CAPITAL, LTD.,                      :

                 Plaintiff,             :

        v.                              :    08 Civ. _____ (   )

THE REPUBLIC OF ARGENTINA,              :

                 Defendant.             :    **COMPLAINT**

                                        :

------------------------------------- X

        Plaintiff, NML Capital, Ltd., ("NML"), by its undersigned counsel, as and for its

Complaint against Defendant Republic of Argentina ("Argentina"), alleges as follows:

<u>NATURE OF THE ACTION</u>

        1.      This is a breach of contract action arising from Argentina's failure to make

contractually-mandated principal and interest payments on certain bonds issued by Argentina

and held by NML.  The bonds in question were issued pursuant to a Fiscal Agency Agreement,

dated October 19, 1994 (the "FAA") between Argentina and Bankers Trust Company, as Fiscal

Agent.  For its relief, NML seeks payment of the principal amount of the bonds together with

any accrued and unpaid interest, as provided for in the FAA.  A true and accurate copy of the

FAA is attached as Exhibit A.

<u>THE PARTIES</u>

        2.      Plaintiff NML is a corporation organized and existing under the laws of

the Cayman Islands.

3.      Defendant Republic of Argentina is a Foreign State as defined in 28 U.S.C. § 1603.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330, as Argentina is a Foreign State which has explicitly and unconditionally waived sovereign immunity with respect to actions arising out of the FAA by holders of bonds issued thereunder and is, therefore, not entitled to immunity under 28 U.S.C. §§ 1605-07 or under any applicable international agreement.

5.      In addition, Argentina consented in the FAA to submit to the jurisdiction of this Court in respect to actions arising out of the FAA or bonds issued thereunder.  Pursuant to Section 22 of the FAA, Argentina appointed Banco de la Nación Argentina, 299 Park Avenue, New York, New York 10171, as its authorized agent for service of process.  Section 23 of the FAA provides that the FAA shall be "governed by, and interpreted in accordance with, the laws of the State of New York."

6.      Venue is proper in this district by agreement of the parties and pursuant to 28 U.S.C. § 1391(f).

## FACTUAL ALLEGATIONS

The 11% Global Bonds

7.      Plaintiff is the holder of $225,000 principal amount of 11% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114AN0 (the "11% Bonds").  A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated July 25, 2008, which shows Plaintiff's current ownership of $6,256,000 principal amount of the 11% Bonds, among

2

other bonds issued by Argentina, is attached as Exhibit B. The $6,256,000 principal amount of 11% Bonds referenced in Exhibit B includes: (1) the $225,000 principal amount of 11% Bonds at issue in this action; and (2) the $6,031,000 principal amount of 11% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in the Court as action 07 Civ. 1910 (TPG).

8.      Plaintiff acquired $225,000 of the 11% Bonds in one transaction on July 7, 2008. A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 11% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

9.      The 11% Bonds are a Series of Securities under the terms of the Agreement.

10.      The 11% Bonds matured on October 9, 2006, at which time the entire principal amount of the 11% Bonds became due and payable.

The 11.75% Global Bonds

11.      Plaintiff is the holder of $11,290,000 principal amount of 11.75% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114BE9 (the "11.75% Bonds"). A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated July 25, 2008, which shows Plaintiff's current ownership of $12,650,000 principal amount of the 11.75% Bonds, among other bonds issued by Argentina, is attached as Exhibit B. The $12,650,000 principal amount of 11.75% Bonds referenced in Exhibit B includes: (1) the $11,290,000 principal amount of 11.75% Bonds at issue in this action; and (2) the $1,360,000 principal amount of 11.75% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in the Court as action 07 Civ. 1910 (TPG).

12.    Plaintiff acquired $11,290,000 of the 11.75% Bonds in five transactions: $100,000 on July 7, 2008, $690,000 on July 8, 2008, $5,000,000 on July 10, 2008, $500,000 on July 14, 2008 and $5,000,000 on July 24, 2008.  A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 11.75% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

13.    The 11.75% Bonds are a Series of Securities under the terms of the FAA.

14.    The 11.75% Bonds mature on April 7, 2009.

The 11.375% Global Bonds

15.    Plaintiff is the holder of $10,260,000 principal amount of 11.375% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114FC9 (the "11.375%% Bonds"). A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated July 25, 2008, which shows Plaintiff's current ownership of $16,540,000 principal amount of the 11.375% Bonds, among other bonds issued by Argentina, is attached as Exhibit B.   The $16,540,000 principal amount of 11.375% Bonds referenced in Exhibit B includes:   (1) the $10,260,000 principal amount of 11.375% Bonds at issue in this action; and (2) the $6,280,000 principal amount of 11.375% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in the Court as action 07 Civ. 1910 (TPG).

16.    Plaintiff acquired $10,260,000 of the 11.375% Bonds in two transactions: $260,000 on July 7, 2008 and $10,000,000 on July 21, 2008.  A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 11.375% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

17.    The 11.375% Bonds are a Series of Securities under the terms of the FAA.

4

18.     The 11.375% Bonds mature on March 15, 2010.

The 12.375% Global Bonds

19.     Plaintiff is the holder of $10,500,000 principal amount of 12.375% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114GD6 (the "12.375% Bonds").  A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated July 25, 2008, which shows Plaintiff's current ownership of $12,220,000 principal amount of the 12.375% Bonds, among other bonds issued by Argentina, is attached as Exhibit B.   The $12,220,000 principal amount of 12.375% Bonds referenced in Exhibit B includes:   (1) the $10,500,000 principal amount of 12.375% Bonds at issue in this action; and (2) the $1,720,000 principal amount of 12.375% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in the Court as action 07 Civ. 1910 (TPG).

20.     Plaintiff acquired $10,500,000 of the 12.375% Bonds in two transactions: $500,000 on July 14, 2008 and 10,000,000 on July 24, 2008.   A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 12.375% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

21.     The 12.375% Bonds are a Series of Securities under the terms of the FAA.

22.     The 12.375% Bonds mature on February 21, 2012.

The 11-3/8% Global Bonds

23.     Plaintiff is the holder of $42,155,000 principal amount of 11-3/8% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114AR1 (the "11-3/8% Bonds").  A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated July 25, 2008, which shows Plaintiff's current ownership of $56,487,000 principal amount of the 11-

3/8% Bonds, among other bonds issued by Argentina, is attached as Exhibit B. The $56,487,000 principal amount of 11-3/8% Bonds referenced in Exhibit B includes: (1) the $42,155,000 principal amount of 11-3/8% Bonds at issue in this action; and (2) the $14,332,000 principal amount of 11-3/8% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in the Court as action 07 Civ. 1910 (TPG).

24.    Plaintiff acquired $42,155,000 of the 11-3/8% Bonds in six transactions: $2,000,000 on June 9, 2008, 9,000,000 on June 24, 2008, 5,000,000 on June 27, 2008, 2,500,000 on June 30, 2008, 8,000,000 on July 15, 2008 and 15,655,000 on July 18, 2008. A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 11-3/8% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

25.    The 11-3/8% Bonds are a Series of Securities under the terms of the FAA.

26.    The 11-3/8% Bonds mature on January 30, 2017.

The 12% Global Bonds

27.    Plaintiff is the holder of $1,100,000 principal amount of 12% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114FB1 (the "12% Bonds"). A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated July 25, 2008, which shows Plaintiff's current ownership of $61,644,000 principal amount of the 12% Bonds, among other bonds issued by Argentina, is attached as Exhibit B. The $61,644,000 principal amount of 12% Bonds referenced in Exhibit B includes: (1) the $1,100,000 principal amount of 12% Bonds at issue in this action; (2) the $60,244,000 principal amount of 12% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in the Court as action 03 Civ. 8845

6

(TPG); and (3) the $300,000 principal amount of 12% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in the Court as action 07 Civ. 6563 (TPG).

28.    Plaintiff acquired $1,100,000 of the 12% Bonds in one transaction on July 16, 2008.    A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 12% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

29.    The 12% Bonds are a Series of Securities under the terms of the FAA.

30.    The 12% Bonds mature on February 1, 2020.

The 9.75% Global Bonds

31.    Plaintiff is the holder of $5,550,000 principal amount of 9.75% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114AV2 (the "9.75% Bonds").    A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated July 25, 2008, which shows Plaintiff's current ownership of $5,550,000 principal amount of the 9.75% Bonds, among other bonds issued by Argentina, is attached as Exhibit B

32.    Plaintiff acquired $5,550,000 of the 9.75% Bonds in four transactions: $600,000 on July 7, 2008, 1,000,000 on July 15, 2008, 2,000,000 on July 17, 2008 and 1,950,000 on July 21, 2008.    A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 9.75% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

33.    The 9.75% Bonds are a Series of Securities under the terms of the FAA.

34.    The 9.75% Bonds mature on September 19, 2027.

The Republic of Argentina's Default

35.    Pursuant to Section 12 of the FAA, the following occurrences, among others, constitute Events of Default:

(a) Non-Payment:  the Republic fails to pay any principal amount of any of the Securities of such Series when due or payable or fails to pay any interest on any of the Securities of such Series when due and payable and such failure continues for a period of 30 days; or

\*    \*    \*

(d) Moratorium:  a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic.

36.    Upon the occurrence of an Event of Default described in Section 12(a) or 12(d) of the FAA, Section 12 further provides that each bondholder may, by notice in writing to the office of the Fiscal Agent, declare the principal amount of the bonds held by it to be due and payable immediately, together with all accrued and unpaid interest.

37.    On December 24, 2001, Argentina declared a moratorium on the payment of principal and interest with respect to all of its foreign debt.

38.    Since then, Argentina has failed to make payments of interest owed on the 11% Bonds, the 11.75% Bonds, the 11.375% Bonds, the 12.375% Bonds, the 11-3/8% Bonds, the 12% Bonds, or the 9.75% Bonds.

39.    Argentina failed to make the interest payments due on the 11% Bonds on April 9, 2002, October 9, 2002, April 9, 2003, October 9, 2003, April 9, 2004, October 9, 2004, April 9, 2005, October 9, 2005, April 9, 2006, October 9, 2006, April 9, 2007, October 9, 2007 and April 9, 2008, as required by the terms of the 11% Bonds.

8

40. Argentina failed to make the interest payments due on the 11.75% Bonds on April 7, 2002, October 7, 2002, April 7, 2003, October 7, 2003, April 7, 2004, October 7, 2004, April 7, 2005, October 7, 2005, April 7, 2006, October 7, 2006, April 7, 2007, October 7, 2007 and April 9, 2008, as required by the terms of the 11.75% Bonds.

41. Argentina failed to make the interest payments due on the 11.375% Bonds on March 15, 2002, September 15, 2002, March 15, 2003, September 15, 2003, March 15, 2004, September 15, 2004, March 15, 2005, September 15, 2005, March 15, 2006, September 15, 2006, March 15, 2007, September 15, 2007 and March 15, 2008, as required by the terms of the 11.375% Bonds.

42. Argentina failed to make the interest payments due on the 12.375% Bonds on February 21, 2002, August 21, 2002, February 21, 2003, August 21, 2003, February 21, 2004, August 21, 2004, February 21, 2005, August 21, 2005, February 21, 2006, August 21, 2006, February 21, 2007, August 21, 2007, February 21, 2008, as required by the terms of the 12.375% Bonds.

43. Argentina failed to make the interest payments on the 11-3/8% Bonds on January 30, 2002, July 30, 2002, January 30, 2003, July 30, 2003, January 30, 2004, July 30, 2004, January 30, 2005, July 30, 2005, January 30, 2006, July 30, 2006, January 30, 2007, July 30, 2007, January 30, 2008, July 30, 2008, as required by the terms of the 11-3/8% Bonds.

44. Argentina failed to make the interest payments due on the 12% Bonds on February 25, 2002, August 25, 2002, February 25, 2003, August 25, 2003, February 25, 2004, August 25, 2004, February 25, 2005, August 25, 2005, February 25, 2006, August 25, 2006,

February 25, 2007, August 25, 2007 and February 25, 2008, as required by the terms of the 12%

Bonds.

45.     Argentina failed to make the interest payments due on the 9.75% Bonds

on March 19, 2002, September 19, 2002, March 19, 2003, September 19, 2003, March 19, 2004,

September 19, 2004, March 19, 2005, September 19, 2005, March 19, 2006, September 19,

2006, March 19, 2007, September 19, 2007 and March 19, 2008, as required by the terms of the

9.75% Bonds.

<u>FIRST CLAIM FOR RELIEF</u>
(For Breach of Contract on the 11% Bonds)

46.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1

through 47 herein.

47.     The 11% Bonds matured on October 9, 2006, at which time the entire

principal amount of the Bonds became due and payable.

48.     On or about August 1, 2008, Plaintiff advised Argentina, by written notice

to Argentina's Fiscal Agent, that it was demanding immediate payment of the $225,000 principal

amount of the 11% Bonds held by Plaintiff together with any accrued and unpaid interest.

49.     Argentina has failed to make any payments of principal or interest on the

11% Bonds to the Plaintiff.

50.     By reason of the foregoing Argentina has breached its contractual

obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be

determined at trial, but not less than $225,000, together with prejudgment interest at the statutory

rate.

## SECOND CLAIM FOR RELIEF
### (For Breach of Contract on the 11.75% Bonds)

51.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 herein.

52.     Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 11.75% Bonds entitling Plaintiff to declare the principal amount of the 11.75% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

53.     On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $11,290,000 principal amount of the 11.75% Bonds held by Plaintiff, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

54.     Despite this notice, Argentina has failed to make any payments of principal or interest on the 11.75% Bonds to the Plaintiff.

55.     By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $11,290,000, together with any accrued and unpaid interest due under the terms of the 11.75% Bonds.

## THIRD CLAIM FOR RELIEF
### (For Breach of Contract on the 11.375% Bonds)

56.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 herein.

57.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 11.375% Bonds entitling Plaintiff to declare the principal amount of the 11.375% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

58.    On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $10,260,000 principal amount of the 11.375% Bonds Plaintiff holds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

59.    Despite this notice, Argentina has failed to make any payments of principal or interest on the 11.375% Bonds to the Plaintiff.

60.    By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $10,260,000, together with any accrued and unpaid interest due under the terms of the 11.375% Bonds.

FOURTH CLAIM FOR RELIEF<br>(For Breach of Contract on the 12.375% Bonds)

61.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 herein.

62.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 12.375% Bonds entitling Plaintiff to declare the principal amount of the 12.375% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

12

63.    On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $10,500,00 principal amount of the 12.375% Bonds Plaintiff holds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

64.    Despite this notice, Argentina has failed to make any payments of principal or interest on the 12.375% Bonds to the Plaintiff.

65.    By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $10,500,000, together with any accrued and unpaid interest due under the terms of the 12.375% Bonds.

### FIFTH CLAIM FOR RELIEF
(For Breach of Contract on the 11-3/8% Bonds)

66.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 herein.

67.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 11-3/8% Bonds entitling Plaintiff to declare the principal amount of the 11-3/8% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

68.    On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $42,155,000 principal amount of the 11-3/8% Bonds Plaintiff holds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

13

69.    Despite this notice, Argentina has failed to make any payments of principal or interest on the 11-3/8% Bonds to the Plaintiff.

70.    By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $42,155,000, together with any accrued and unpaid interest due under the terms of the 11-3/8% Bonds.

SIXTH CLAIM FOR RELIEF
(For Breach of Contract on the 12% Bonds)

71.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 herein.

72.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 12% Bonds entitling Plaintiff to declare the principal amount of the 12% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

73.    On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $1,100,000 principal amount of the 12% Bonds Plaintiff holds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

74.    Despite this notice, Argentina has failed to make any payments of principal or interest on the 12% Bonds to the Plaintiff.

75.    By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be

14

determined at trial, but not less than $1,100,000, together with any accrued and unpaid interest due under the terms of the 12% Bonds.

SEVENTH CLAIM FOR RELIEF
(For Breach of Contract on the 9.75% Bonds)

76.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 herein.

77.     Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 9.75% Bonds entitling Plaintiff to declare the principal amount of the 9.75% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

78.     On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $5,550,000 principal amount of the 9.75% Bonds Plaintiff holds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

79.     Despite this notice, Argentina has failed to make any payments of principal or interest on the 9.75% Bonds to the Plaintiff.

80.     By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $5,500,000, together with any accrued and unpaid interest due under the terms of the 9.75% Bonds.

WHEREFORE, Plaintiff NML demands judgment against the Republic of Argentina as follows:

1.      On the First Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $225,000, together with prejudgment interest at the statutory rate.

2.      On the Second Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $11,290,000, together with any accrued and unpaid interest due under the terms of the 11.75% Bonds.

3.      On the Third Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $10,260,000, together with any accrued and unpaid interest due under the terms of the 11.375% Bonds.

4.      On the Fourth Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $10,500,000, together with any accrued and unpaid interest due under the terms of the 12.375% Bonds.

5.      On the Fifth Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $42,155,000, together with any accrued and unpaid interest due under the terms of the 11-3/8% Bonds.

6.      On the Sixth Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $1,100,000, together with any accrued and unpaid interest due under the terms of the 12% Bonds.

7.    On the Seventh Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $5,500,000, together with any accrued and unpaid interest due under the terms of the 9.75% Bonds.

8.    Awarding Plaintiff its costs, prejudgment interest, attorneys' fees and such other and further relief as the Court shall deem just and proper.

Dated:  New York, New York
        August 5, 2008

                                    DECHERT LLP


                                    By: _Susan Y. Shamoto_____

                                    Robert A. Cohen
                                    (robert.cohen@dechert.com)
                                    Dennis H. Hranitzky
                                    (dennis.hranitzky@dechert.com)
                                    Susan Y. Shamoto
                                    (susan.shamoto@dechert.com)
                                    1095 Avenue of the Americas
                                    New York, NY  10036-6797
                                    (212) 698-3500

                                    and

                                    Kevin S. Reed
                                    (kevin.reed@quinnemanuel.com)
                                    Quinn Emanuel Urquhart Oliver &
                                    Hedges LLP
                                    51 Madison Avenue
                                    New York, New York 10001
                                    (212) 849-7000

                                    *Attorneys for Plaintiff NML Capital,
                                    Ltd.*

EXHIBIT A

File No.33-83954 Exhibit B
Rule 424(b)(4)

RECD S.E.C.

T 2 4 1994

016

FISCAL AGENCY AGREEMENT

between

THE REPUBLIC OF ARGENTINA

and

BANKERS TRUST COMPANY, Fiscal Agent

Dated as of October 19, 1994

## TABLE OF CONTENTS

Page

1.  Securities Issuable in Series . . . . . . . . . . . . . . .  1

2.  Appointment of Fiscal Agent; Paying Agents . . . . . . . .  3

3.  Authentication . . . . . . . . . . . . . . . . . . . . . .  3

4.  Registration, Transfers and Exchanges . . . . . . . . . .  4

5.  Global Securities . . . . . . . . . . . . . . . . . . . .  6

6.  Payment . . . . . . . . . . . . . . . . . . . . . . . . .  9

7.  Additional Amounts . . . . . . . . . . . . . . . . . . . . 11

8.  Mutilated, Destroyed, Stolen or Lost Certificates . . . . 11

9.  Redemption and Purchases . . . . . . . . . . . . . . . . . 12

10. Cancellation and Destruction . . . . . . . . . . . . . . . 14

11. Negative Pledge and Covenants . . . . . . . . . . . . . . 14

12. Default; Acceleration of Maturity . . . . . . . . . . . . 17

13. Limit on Liability; Acceptance of Appointment . . . . . . 19

14. Expenses and Indemnity . . . . . . . . . . . . . . . . . . 20

15. Successor Fiscal Agent . . . . . . . . . . . . . . . . . . 20

16. Meetings of Holders of Securities; Modifications . . . . . 22

17. Further Issues . . . . . . . . . . . . . . . . . . . . . . 26

18. Reports . . . . . . . . . . . . . . . . . . . . . . . . . 26

19. Forwarding of Notice; Inquiries . . . . . . . . . . . . . 27

20. Listings . . . . . . . . . . . . . . . . . . . . . . . . . 27

21. Notices . . . . . . . . . . . . . . . . . . . . . . . . . 27

22. Consent to Service; Jurisdiction . . . . . . . . . . . . . 28

23. Governing Law and Counterparts . . . . . . . . . . . . . . 29

2

Page

24.  Headings . . . . . . . . . . . . . . . . . . . . . . 29


Exhibit A - Form of Registered Security

3

THE REPUBLIC OF ARGENTINA

FISCAL AGENCY AGREEMENT dated as of October 19, 1994, between The Republic of Argentina (the "Republic") and Bankers Trust Company, a New York banking corporation, as fiscal agent.

1. Securities Issuable in Series. (a) The Republic may issue its notes, securities, debentures or other evidances of indebtedness (the "Securities") in separate series from time to time (each such series of Securities being hereinafter referred to as a "Series" or the "Securities of a Series"). The aggregate principal amount of the Securities of all Series which may be authenticated and delivered under this Agreement and which may be outstanding at any time is not limited by this Agreement. The text of the Securities of a Series delivered to the Fiscal Agent (as hereinafter defined) for authentication on original issuance pursuant to Section 3 of this Agreement shall establish (i) the specific designation of the Securities of such Series (which shall distinguish the Securities of such Series from all other Series); (ii) any limit on the aggregate principal amount of the Securities of such Series which may be authenticated and delivered under this Agreement (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such Series pursuant to the provisions of this Agreement or of the Securities of such Series); (iii) the price or prices (expressed as a percentage of the aggregate principal amount thereof) at which the Securities of such Series will be issued; (iv) the date or dates on which the principal and premium, if any, of the Securities of such Series is payable; (v) the rate or rates (which may be fixed or floating) per annum at which the Securities of such Series shall bear interest, if any, the date or dates from which such interest, if any, shall accrue, the interest payment dates on which such interest shall be payable and the record dates for the determination of holders of the Securities of such Series to whom interest is payable; (vi) the place or places where the principal of, and premium, if any, and interest on the Securities of such Series are payable; (vii) the price or prices at which, the period or periods within which and the terms and conditions upon which Securities of such Series may be redeemed, in whole or in part, at the option of the Republic or otherwise; (viii) the obligation, if any, of the Republic to redeem, purchase or repay Securities of such Series pursuant to any sinking fund or analogous provisions and the price or prices at which, the

period or periods within which, and the terms and conditions upon which Securities of such Series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation; (ix) the minimum denomination and any multiples thereof of the Securities of such Series, which may be in U.S. dollars, another foreign currency, units of two or more currencies or amounts determined by reference to an index; (x) the currency or currencies in which the principal, premium, if any, or interest on such Securities may be payable; (xi) the manner in which the amount of payments of principal, premium, if any, or interest on such Securities is to be determined and if such determination is to be made with reference to any index; (xii) any covenants or agreements of the Republic and events which give rise to the right of a holder of a Security of such Series to accelerate the maturity of such Security other than such covenants, agreements or events specified herein; and (xiii) any other terms of the Securities of such Series.  Securities may be issuable pursuant to warrants (if so provided in the text of such Securities) and the Fiscal Agent may act as warrant agent or in any similar capacity in connection therewith.

(b)  The Securities of a Series are to be issued in fully registered form only, without interest coupons, and will be issuable in the denominations specified in the text of the Securities of such Series, substantially in the form of Exhibit A hereto ("registered Securities").  The Securities of a Series may also have such additional provisions, omissions, variations or substitutions as are not inconsistent with the provisions of this Agreement, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with any law or with any rules made pursuant thereto or with the rules of any securities exchange or governmental agency or as may, consistent herewith, be determined by the officials executing such Securities, as evidenced by their execution of such Securities.  All Securities of a particular Series shall be otherwise substantially identical except as to denomination and as provided herein.

(c)  The Securities will constitute (except as provided in Section 11 below) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without any preference among themselves.  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

2.  Appointment of Fiscal Agent; Paying Agents.
(a)  The Republic hereby appoints Bankers Trust Company, at
present having its office at 4 Albany Street, New York, New
York 10006 as fiscal agent, transfer agent, registrar and
principal paying agent of the Republic for the Securities,
upon the terms and conditions set forth herein.  Bankers
Trust Company accepts such appointments, and along with its
successors as such fiscal agent, is hereinafter referred to
as the "Fiscal Agent".  The Republic reserves the right to
appoint different fiscal agents for different series of
securities.

(b)  The Republic may appoint one or more
additional agents (hereinafter called a "Paying Agent" or
the "Paying Agents") for the payment (subject to the
applicable laws and regulations) of the applicable payment
of principal, premium, if any, and interest or Additional
Amounts (as defined in Section 7 hereof), if any, on the
Securities at such place or places as the Republic may
determine pursuant to an agreement (each, a "Paying Agency
Agreement") provided that the Republic will maintain at all
times until no Security is outstanding a Paying Agent (who
may be the Fiscal Agent) in the Borough of Manhattan, The
City of New York.  The Republic will keep the Fiscal Agent
informed as to the name, address, and telephone and
facsimile numbers of each Paying Agent appointed by it and
will notify the Fiscal Agent of the resignation of any
Paying Agent.  The Fiscal Agent shall arrange with each
Paying Agent for the payment, as provided herein, of the
principal and interest or Additional Amounts, if any, on the
Securities on terms previously approved in writing by the
Republic (further references herein to principal and
interest shall be deemed to also refer to any Additional
Amounts).

3.  Authentication.  (a)  The Fiscal Agent shall,
upon delivery of the Securities to it by the Republic, and a
written order or orders to authenticate and deliver
Securities in a stated aggregate principal amount, (i)
authenticate and register not more than said aggregate
principal amount of Securities and deliver them in
accordance with the written order or orders of the Republic
and (ii) thereafter authenticate and register Securities and
deliver them in accordance with the provisions of Sections
4, 5 and 9 of this Agreement.  The total principal amount of
the Securities to be issued and outstanding at any time
shall not be limited hereby.

(b)  The Fiscal Agent may, with the prior written
consent of the Republic, appoint by an instrument or
instruments in writing one or more agents (which may include

3

itself) for the authentication of Securities of a Series
and, with such consent, vary or terminate any such
appointment upon written notice and approve any change in
the office through which any authenticating agent acts.  The
Republic (by written notice to the Fiscal Agent and the
authenticating agent whose appointment is to be terminated)
may also terminate any such appointment at any time.  The
Fiscal Agent hereby agrees to solicit written acceptances
from the entities concerned (in form and substance
satisfactory to the Republic) of such appointments.  In its
acceptance of such appointment, each such authenticating
agent shall agree to act as an authenticating agent pursuant
to the terms and conditions of this Agreement.

(c)  Until definitive Securities of a Series are
prepared, the Republic may execute, and there shall be
authenticated and delivered in accordance with the
provisions hereof (in lieu of definitive Securities of such
Series), temporary Securities of such Series.  Such
temporary Securities of a Series shall be subject to the
same limitations and conditions and entitled to the same
rights and benefits as definitive Securities of such Series,
except as provided herein or therein.  Temporary Securities
of a Series shall be exchangeable for definitive Securities
of such Series when such definitive Securities are available
for delivery; and upon the surrender for exchange of such
temporary Securities of a Series, the Republic shall execute
and there shall be authenticated and delivered, in
accordance with the provisions of Sections 3 and 4 hereof,
in exchange for such temporary Securities of a Series, a
like aggregate principal amount of definitive Securities of
such Series and of like tenor.  The Republic shall pay all
charges, including (without limitation) stamp and other
taxes and governmental charges, incident to any exchange of
temporary Securities for definitive Securities.  All
temporary Securities shall be identified as such and shall
describe the right of the holder thereof to effect an
exchange for definitive Securities and the manner in which
such an exchange may be effected.

4.  Registration, Transfers and Exchanges.  (a)
The Fiscal Agent, as agent of the Republic for such purpose,
will at all times keep at the office of the Fiscal Agent in
the Borough of Manhattan, The City of New York, a register
or registers for the registration and registration of
transfers and exchanges of Securities, in which shall be
entered the names and addresses of the registered holders of
Securities and the particulars of the Securities held by
such registered holders.  Subject to Section 5 hereof, upon
surrender for transfer of any Security of any Series at said
office, the Fiscal Agent shall authenticate, register and

4

deliver in the name of the transferee or transferees a new Security or Securities of any Series for a like aggregate principal amount.  Subject to Section 5 hereof, upon surrender of any Security at said office for exchange, the Fiscal Agent shall authenticate, register and deliver in exchange for such Security a new Security or new Securities of the appropriate authorized denomination(s) and for a like aggregate principal amount in accordance with the provisions of the Securities.

(b)  All new Securities authenticated and delivered by the Fiscal Agent upon registration of transfer or in exchange for Securities of other denominations shall be so dated that neither gain nor loss of interest shall result from such registration of transfer or exchange.

(c)  All Securities presented or surrendered for registration of transfer, exchange or payment shall be accompanied by a written instrument or instruments of transfer in form satisfactory to the Fiscal Agent, duly executed by the registered holder or its attorney duly authorized in writing and with the signatures thereon duly guaranteed by a commercial bank or trust company having its principal office in The City of New York or by a member of the New York Stock Exchange.

(d)  The Fiscal Agent shall not impose any service charge on the registered holder on any such registration, transfer or exchange of Securities; however, the Republic may require of the party requesting such transfer or exchange, as a condition precedent to the exercise of any right of transfer or exchange contained in this Agreement or in the Securities, the payment of a sum sufficient to cover any stamp or other tax or other governmental charge payable in connection therewith.

(e)  The Republic, the Fiscal Agent and any Paying Agent may treat the person in whose name any Security is registered as the owner of such Security for the purpose of receiving payment of principal of and interest on such Security, and all other purposes whatsoever, whether or not such Security be overdue, and none of the Republic, the Fiscal Agent or any Paying Agent shall be affected by any notice to the contrary and any such payment shall be a good and sufficient discharge to the Republic, the Fiscal Agent and any Paying Agent for the amount so paid.

(f)  The Fiscal Agent shall not be required to register any transfer or exchange of Securities during the period from the Regular Record Date (as defined in such Securities) to the Interest Payment Date (as defined in such

5

Securities) and for the purposes of any interest payment made in accordance with Section 6 hereof, such payment shall be made to those persons in whose names the Securities are registered on such Regular Record Date.

5. **Global Securities**. The Securities of any Series may be issued in whole or in part in the form of one or more global securities ("Global Securities") that will be deposited with, or on behalf of, a depositary (the "Depositary") relating to such Series. Global Securities may be issued only in fully registered form and in either temporary or definitive form. Unless and until it is exchanged in whole or in part for Securities in definitive form, a Global Security may not be transferred except as a whole by the Depositary for such Global Security to a nominee of such Depositary or by a nominee of such Depositary to such Depositary or another nominee of such Depositary or by such Depositary or any nominee of such Depositary to a successor Depositary or any nominee of such successor.

Upon the issuance of a Global Security, the Depositary for such Global Security will credit on its book-entry registration and transfer system the respective principal amounts of the Securities represented by such Global Security to the accounts of Persons that have accounts with such Depositary ("Participants"). The accounts to be credited shall be designated by the agents or underwriters with respect to such Securities or by the Republic if such Securities are offered and sold directly by the Republic. Ownership of beneficial interests in a Global Security will be limited to Participants or Persons that may hold interests through Participants. Ownership of beneficial interests in a Global Security will be shown on, and the transfer of that ownership will be effected only through, records maintained by the applicable Depositary (with respect to interests of Participants) and records of Participants (with respect to interests of Persons who hold through Participants). Owners of beneficial interests in a Global Security (other than Participants) will not receive written confirmation from the applicable Depositary of their purchase. Each beneficial owner is expected to receive written confirmation providing details of the transaction, as well as periodic statements of its holdings, from the Depositary (if such beneficial owner is a Participant) or from the Participant through which such beneficial owner entered into the transaction (if such beneficial owner is not a Participant). The laws of some states require that certain purchasers of securities take physical delivery of such securities in definitive form. Such limits and such

laws may impair the ability to own, pledge or transfer beneficial interests in a Global Security.

So long as the Depositary for a Global Security, or its nominee, is the registered owner of such Global Security, such Depositary or such nominee, as the case may be, will be considered the sole owner or holder of the Securities represented by such Global Security for all purposes under this Agreement.  Except as specified below or with respect to the terms of Securities of a Series, owners of beneficial interests in a Global Security will not be entitled to have any of the individual Securities represented by such Global Security registered in their names, and will not receive or be entitled to receive physical delivery of any such Securities in definitive form and will not be considered the owners or holders thereof under such Securities or this Agreement.  Accordingly, each Person owning a beneficial interest in a Global Security must rely on the procedures of the Depositary for such Global Security and, if such Person is not a Participant, on the procedures of the Participant through which such Person owns its interest, to exercise any rights of a holder under the Securities or this Agreement.  The Republic understands that under existing industry practices, if the Republic requests any action of holders, or an owner of a beneficial interest in such Global Security desires to take any action which a holder is entitled to take under the Fiscal Agency Agreement, the Depositary for such Global Security would authorize the Participants holding the relevant interests to take such action, and such Participants would authorize beneficial owners owning through such Participants to take such action or would otherwise act upon the instructions of beneficial owners holding through them.

Payments of principal of and any premium and any interest on Securities registered in the name of a Depositary or its nominee will be made to the Depositary or its nominee, as the case may be, as the holder of the Global Security representing such Securities.  None of the Republic, any Paying Agent or the Fiscal Agent, in its capacity as registrar for such Debt Securities, will have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial interests in a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial interests.

The Republic expects that the Depositary for a series of Securities or its nominee, upon receipt of any payment of principal, premium or interest in respect of a Global Security representing such Securities will credit

*10*

Participants' accounts with payments in amounts proportionate to their respective beneficial interests in the principal amount of such Global Security as shown on the records of such Depositary. The Republic also expects that payments by Participants to owners of beneficial interests in such Global Security held through such Participants will be governed by standing instructions and customary practices, as is now the case with securities held for the accounts of customers in bearer form or registered in "street name". Such payments will be the responsibility of such Participants.

If at any time the Depositary notifies the Republic that it is unwilling or unable to continue as Depositary for the Securities, or if the Republic notifies the Depositary that it will no longer continue as Depositary for the Securities, or if at any time the Depositary ceases to be a clearing agency registered under the United States Securities Exchange Act of 1934, as amended, or otherwise ceases to be eligible to be a Depositary, the Republic shall appoint a successor Depositary with respect to such Securities. If a successor Depositary for such Securities is not appointed by the Republic within 90 days after the Republic receives such notice or becomes aware of such ineligibility, or if the Depositary notifies the Fiscal Agent or the Republic of the acceleration of the indebtedness under the Securities in accordance with the terms of the Securities, the Republic will execute, and the Fiscal Agent upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series), in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

The Republic may at any time and in its sole discretion determine not to have any of the Securities held in the form of Global Securities. In such event, the Republic will execute, and the Fiscal Agent, upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series, in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

Upon the exchange of the Global Securities for Securities in definitive registered form the Global Securities shall be cancelled by the Fiscal Agent.

Securities in definitive registered form issued in exchange
for the Global Securities pursuant to this section shall be
registered in such names as the Depositary, pursuant to
instructions from its direct or indirect participants or
otherwise, shall instruct the Fiscal Agent or the Republic.
The Fiscal Agent shall deliver such Securities in definitive
registered form to or as directed by the persons in whose
names such definitive registered Securities are so
registered and will direct all payments to be made in
respect of such Securities in definitive registered form to
the registered holders thereof on or after such exchange
regardless of whether such exchange occurred after the
record date for such payment.

All Securities in definitive registered form,
issued upon the exchange of the Global Securities, shall be
valid obligations of the Republic, evidencing the same debt,
and entitled to the same benefits under this Agreement, as
the Global Securities surrendered upon such exchange.

6.   Payment.   (a)   The Republic will pay to the
Fiscal Agent, the amounts, at the times and for the purposes
set forth herein and in the text of the Securities of a
Series, not later than 1:00 p.m. New York City time to an
account to be specified by the Fiscal Agent, on the day on
which the same shall become due, all amounts to be paid on
the Securities of such Series as required by the terms of
the Securities, and the Republic hereby authorizes and
directs the Fiscal Agent, from the funds so paid to it, to
make payments in respect of the Securities in accordance
with their terms and the provisions set forth below.  If any
date for payment in respect of a Security is not a Business
Day, such payment shall be made on the next following
Business Day.  "Business Day" means a day on which banking
institutions in The City of New York and at the applicable
place of payment are not authorized or obligated by law or
executive order to be closed.  The Fiscal Agent shall
arrange directly with any Paying Agent who may have been
appointed pursuant to the provisions of Section 2 hereof for
the payment from funds so paid by the Republic of the
principal of (and premium, if any) and any interest on the
Securities of such Series as set forth herein and in the
text of said Securities.  Notwithstanding the foregoing,
where the terms of such Securities expressly so provide and
the Republic so notifies the Fiscal Agent the Republic may
provide directly a Paying Agent with funds for the payment
of the principal thereof and premium and interest, if any,
payable thereon under an agreement with respect to such
funds containing substantially the same terms and conditions
set forth in this Section; and the Fiscal Agent shall have

12

no responsibility with respect to any funds so provided by the Republic to any such Paying Agent.

(b)  All payments with respect to the Global Securities shall be made by the Fiscal Agent to the Depositary in accordance with the regular procedures established from time to time by the Depositary.

(c)  Payment of principal and premium, if any, in respect of Securities in definitive registered form issued pursuant hereto shall be made at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, or at the office of any Paying Agent appointed by the Republic for such purpose pursuant to this Agreement against surrender of such Securities.  Any interest on Securities of a Series shall be paid, unless otherwise provided in the text of the Securities of such Series, to the persons in whose names such Securities are registered on the register maintained for such purposes at the close of business on the record dates designated in the text of the Securities of such Series.  If so provided with respect to the Securities of a Series, payments of interest due prior to or on maturity may be made by forwarding by post or otherwise delivering a check to the registered addresses of registered holders of Securities, or, at the option of the Republic, otherwise transferring funds to the registered holders of the Securities.  Such check shall be made payable to the order of the registered holder or, in the case of joint registered holders, to the order of all such joint holders (failing instructions from them to the contrary) and shall be sent to the address of that one of such joint holders whose name stands first in the register as one of such joint holders.  The Fiscal Agent shall mail or otherwise deliver such checks to the names and addresses of registered holders of Securities sufficiently in advance of the relevant due date for payment that receipt of such checks by registered holders on or before the due date is reasonably assured.

(d)  All money paid to the Fiscal Agent under Section 6(a) of this Agreement shall be held by it in a separate account from the moment when such money is received until the time of actual payment, in trust for the registered holders of Securities to be applied by the Fiscal Agent to payments due on the Securities at the time and in the manner provided for in this Agreement and the Securities.  Any money deposited with the Fiscal Agent for the payment in respect of any Security remaining unclaimed for two years after such principal or interest shall have become due and payable shall be repaid to the Republic upon written request without interest, and the registered holder

13

of Security may thereafter look only to the Republic for any payment to which such holder may be entitled.

7.    <u>Additional Amounts</u>.    All payments of principal, premium, if any, and interest in respect of the Securities by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax (together "Taxes"), unless such withholding or deduction is required by law.    In such event, the Republic shall pay such additional amounts ("Additional Amounts") as will result in receipt by the holders of Securities of such amounts of principal, premium and interest as would have been received by them had no such withholding or deduction been required, except that no such Additional Amounts shall be payable with respect to any Security:

(a)    to a holder (or to a third party on behalf of a holder) where such holder is liable for such Taxes in respect of any Security by reason of his having some connection with the Republic other than the mere holding of such Security or the receipt of principal, premium or interest in respect thereof; or

(b)    presented for payment more than 30 days after the Relevant Date, as defined herein, except to the extent that the holder thereof would have been entitled to Additional Amounts on presenting the same for payment on the last day of such period of 30 days.

"Relevant Date" in respect of any Security means the date on which payment in respect thereof becomes due or (if the full amount of the money payable on such date has not been received by the Fiscal Agent on or prior to such due date) the date on which notice is duly given to the holders in the manner described in Section 21 below that such moneys have been so received and are available for payment.    Any reference herein to "principal" and/or "interest" shall be deemed to include any Additional Amounts which may be payable under the Securities.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

11

*14*

8.   <u>Mutilated, Destroyed, Stolen or Lost</u>
<u>Certificates</u>.  (a)  In case any Security certificate is
mutilated, defaced, destroyed, stolen or lost, application
for replacement shall be made to the Fiscal Agent who shall
promptly transmit such application to the Republic.  Such
application shall be accompanied by the mutilated or defaced
certificate or receipt of proof, satisfactory to the
Republic in its discretion, of the destruction, theft or
loss of the certificate, and upon receipt by it of an
indemnity satisfactory to the Republic and the Fiscal Agent,
the Republic shall execute a new certificate of like tenor,
and upon written instructions from the Republic the Fiscal
Agent shall thereupon cancel the mutilated or defaced
certificate if applicable and authenticate, register and
deliver such new certificate in exchange for the mutilated
or defaced certificate or in substitution for the destroyed,
stolen or lost certificate.  Such new certificate will be so
dated that neither gain nor loss in interest will result
from such exchange or substitution.  All expenses associated
with procuring such indemnity and with the preparation,
authentication and delivery of a new certificate will be
borne by the registered holder of the mutilated, defaced,
destroyed, stolen or lost certificate.

        (b)  Whenever any Security, alleged to have been
lost, stolen or destroyed in replacement for which a new
Security has been issued, is presented to the Fiscal Agent
or any Paying Agent for payment at maturity or at redemption
or for registration of transfer or exchange, the Fiscal
Agent or the Paying Agent, as the case may be, shall
immediately notify the Republic in respect thereof and shall
deal with such Security in accordance with the Republic's
instructions.

        9.   <u>Redemption and Purchases</u>.  (a)  Unless
otherwise permitted by the terms of the Securities of a
Series, Securities will not be redeemable prior to maturity
at the option of the Republic or the registered holders
thereof.

        (b)  The Republic hereby authorizes and directs
the Fiscal Agent to administer the sinking fund with respect
to the Securities of any Series having a mandatory sinking
fund or similar provision in accordance with the provisions
set forth in the terms of the Securities of such Series.  If
the provisions of the Securities of a Series permit the
Republic to redeem Securities of such Series at its option,
then the Republic shall, unless otherwise provided in the
terms of the Securities of such Series, give written notice
to the Fiscal Agent of the principal amount of Securities of
such Series to be so redeemed not less than 60 days prior to

15

the optional redemption date. If the provisions of the
Securities of a Series permit the Republic to redeem
Securities of such Series only upon the occurrence or
satisfaction of a condition or conditions precedent thereto,
then prior to the giving of notice of redemption of the
Securities of such Series, the Republic shall deliver to the
Fiscal Agent a certificate stating that the Republic is
entitled to effect such redemption and setting forth in
reasonable detail a statement of facts showing that such
condition or conditions precedent have occurred or been
satisfied. If the provisions of the Securities of a Series
obligate the Republic at the request of the holders to
redeem Securities of such Series upon the occurrence of
certain events (each hereinafter referred to as a
"Redemption Event"), then the Republic shall promptly
deliver written notice to the Fiscal Agent that a Redemption
Event has occurred. Promptly after receiving written notice
of a Redemption Event, the Fiscal Agent shall deliver
written notice to each holder of the Securities of such
Series stating that a Redemption Event has occurred and that
such holder may tender its Securities by delivering written
notice of its election to tender for redemption, together
with the certificate or certificates for the Securities to
be redeemed, to the Fiscal Agent within 60 days of the
Fiscal Agent's notice (hereinafter referred to as the
"Option Period"). Thereafter, the Republic shall (i) in the
manner provided in the provisions of the Securities of such
Series and as contemplated by Section 6 hereof, arrange with
the Fiscal Agent (and each Paying Agent for the purpose, if
applicable) for the provision of funds sufficient to make
payments to such holders in respect of such redemptions, and
(ii) redeem such Securities within 60 days of the expiration
of the Option Period. The Fiscal Agent shall provide the
Republic from time to time during and upon expiration of the
Option Period with reasonable detailed information as to
Securities tendered for redemption.

All notices of redemption of or Redemption Events
relating to Securities of a Series to the holders thereof
shall be made in the name and at the expense of the Republic
and shall be given in accordance with the provisions
applicable thereto set forth in the terms of the Securities
of such Series.

Whenever less than all the Securities of a Series
with the same interest rate and maturity at any time
outstanding are to be redeemed at the option of the
Republic, the particular Securities of such Series with such
interest rate and maturity to be redeemed shall be selected
not more than 60 days prior to the redemption date by the
Fiscal Agent from the outstanding Securities of such Series

*16*

not previously called for redemption by such usual method as the Fiscal Agent shall deem fair and appropriate, which method may provide for the selection for redemption of portions of the principal amount of registered Securities of such Series the minimum denominations of which, if any, will be specified in the terms of the Securities of such Series. Upon any partial redemption of a registered Security of a Series, the Fiscal Agent shall authenticate and deliver in exchange therefor one or more registered Securities of such Series, of any authorized denomination and like tenor as requested by the holder thereof, in aggregate principal amount equal to the unredeemed portion of the principal of such Security.

(c)  The Republic may at any time purchase Securities at any price in the open market or otherwise, provided that in any such case such purchase or purchases are in compliance with all relevant laws, regulations and directives.  Securities so purchased by the Republic, may, at the Republic's discretion, be held, resold or surrendered to the Fiscal Agent for cancellation.  The Securities so purchased, while held by or on behalf of or for the benefit of the Republic shall not entitle the registered holder thereof to vote at any meetings of registered holders of Securities and shall not be deemed to be outstanding for the purposes of calculating quorums at meetings of the registered holders of the Securities.  Notwithstanding the foregoing, the Republic will not acquire any beneficial interest in any Securities unless it gives prior written notice of each acquisition to the Fiscal Agent.  The Fiscal Agent will be entitled to rely without further investigation on any such notification (or lack thereof).

(d)  If the Republic elects to cancel any Securities when Securities have been issued in the form of a Global Security, it may request the Fiscal Agent to instruct the Depositary to reduce the outstanding aggregate principal amount of the Global Securities in accordance with the regular procedures of the Depositary in effect at such time.

10.  _Cancellation and Destruction_.  All Securities which are paid at maturity or upon earlier repurchase, or are mutilated, defaced or surrendered in exchange for other certificates, shall be cancelled by the Fiscal Agent who shall register such cancellation.  The Fiscal Agent shall, as soon as practicable after the date of any such cancellation, furnish the Republic with a certificate or certificates stating the serial numbers and total number of Securities that have been cancelled.  The Fiscal Agent shall destroy all cancelled Securities in accordance with the instructions of the Republic and shall furnish to the

14

Republic, on a timely basis, certificates of destruction stating the serial numbers, dollar value and total number of all Securities destroyed hereunder.

11. **Negative Pledge and Covenants.** So long as any Security remains outstanding, save for the exceptions set forth below, the Republic will not create or permit to subsist any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by the holders of the Securities (as provided in Section 16).

Notwithstanding the foregoing, the Republic may permit to subsist:

(i) any Lien upon property to secure Public External Indebtedness of the Republic incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii) any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii) any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralized securities issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

(iv)   any Lien in existence on the date of this Agreement;

(v)   any Lien securing Public External Indebtedness of the Republic issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi)   any Lien on any of the Par and Discount Bonds; and

(vii)   any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

For purposes of this Agreement:

"External Indebtedness" means obligations (other than the Securities) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness, as defined below, shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic, any External Indebtedness of, or guaranteed by, the Republic which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, securities, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

"Domestic Foreign Currency Indebtedness" means (i) the following indebtedness: (a) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (c) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (d) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería a 5 Años Plazo issued under Decree No. 211/92 nd Decree No. 526/92, (f) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92 and (g) Bonos de Consolidación de Regalías Hidrocarburíferas a 16 Años de Plazo issued under Decree No 2284/92 and Decree No. 54/93; (ii) any indebtedness issued in exchange, or as replacement, for the indebtedness referred to in (i) above; and (iii) any other indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina which is (a) offered exclusively within the Republic of Argentina or (b) issued in payment, exchange, substitution, discharge or replacement of indebtedness payable in the lawful currency of the Republic of Argentina; provided that in no event shall the following indebtedness be deemed to constitute "Domestic Foreign Currency Indebtedness": (1) Bonos Externos de la República Argentina issued under Law No. 19,686 enacted on June 15, 1972 and (2) any indebtedness issued by the Republic in exchange, or as replacement, for any indebtedness referred to (1) above.

12.  Default; Acceleration of Maturity.  If any of the following events ("Events of Default") with respect to the Securities of any Series occurs and is continuing:

(a)  Non-Payment:  the Republic fails to pay any principal of any of the Securities of such Series when due and payable or fails to pay any interest on any of the Securities of such Series when due and payable and such failure continues for a period of 30 days; or

(b)  Breach of Other Obligations:  the Republic does not perform or comply with any one or more of its other obligations in the Securities of such Series or in this Agreement, which default is incapable of remedy or is not remedied within 90 days after written notice of such default shall have been given to the Republic by the Fiscal Agent; or

(c)  Cross Default:  any event or condition shall occur which results in the acceleration of the maturity (other than by optional or mandatory prepayment or redemption) of the Securities of any other Series or of any

20

Public External Indebtedness of the Republic having an aggregate principal amount of U.S. $30,000,000 or more, or any default in the payment of principal of, or premium or prepayment charge (if any) or interest on, the Securities of any other Series or any such Public External Indebtedness having an aggregate principal amount of U.S. $30,000,000 or more, shall occur when and as the same shall become due and payable, if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic or;

(e) Validity: the validity of the Securities of such Series shall be contested by the Republic;

than the holders of not less than 25 percent in aggregate principal amount of the Securities of such Series by notice in writing to the Republic at the specified office of the Fiscal Agent shall declare the principal amount of all the Securities of such Series to be due and payable immediately, and, in the case of (a) and (d) above, each holder of Securities of such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable upon the date that such written notice is received by the Republic unless prior to such date all Events of Default in respect of all the Securities of such Series shall have been cured; provided that in the case of (b), (d) and (e) above, such event is materially prejudicial to the interests of the holders of the Securities of such Series, and provided further, that if, at any time after the principal of the Securities of such Series shall have been so declared due and payable, and before any sale of property under any judgment or decree for the payment of the monies due shall have been obtained or entered as hereinafter provided, the Republic shall pay or shall deposit with the Fiscal Agent a sum sufficient to pay all matured amounts of interest and principal upon all the Securities which shall have become due and otherwise than solely by declaration (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal of each of the Securities at the rate of interest applicable thereto, to the date of such payment or deposit; and the expenses of the Fiscal Agent, and reasonable compensation to the Fiscal Agent, its agents, legal advisers, and any and all defaults under the Securities of such Series, other than the non-payment of principal on the

21

Securities of such Series which shall have become due solely
by declaration, shall have been remedied, then, and in every
such case, the holders of 75 percent in aggregate principal
amount of the Securities of such Series then outstanding,
after a meeting of holders of Securities held in accordance
with the procedures described in Section 16 below, by
written notice to the Republic at the specified office of
the Fiscal Agent, may on behalf of the holders of all of the
Securities of such Series waive all defaults and rescind and
annul such declaration and its consequences: but no such
waiver or rescission and annulment shall extend to or shall
affect any subsequent default, or shall impair any right
consequent thereon.

13. (a) Limit on Liability. In acting under
this Agreement the Fiscal Agent and any Paying Agent are
acting solely as agents of the Republic and do not assume
any obligation or relationship of agency or trust for or
with any of the holders of the Securities, except that all
funds held by the Fiscal Agent for payment of principal or
interest shall be held in trust, subject to the provisions
of Section 6.

(b) Acceptance of Appointment. The Fiscal Agent
and each Paying Agent accepts its obligations set forth in
or arising under this Agreement, the Paying Agency
Agreements and the Securities upon the terms and conditions
hereof and thereof, including the following, to all of which
the Republic agrees and to all of which the holders of the
Securities shall be subject:

(i) the Fiscal Agent may consult as to legal
matters with lawyers selected by it, who may be
employees of or regular independent counsel to the
Republic, and the Fiscal Agent shall be protected and
shall incur no liability for action taken, or suffered
to be taken, with respect to such matters in good faith
and in accordance with the opinion of such lawyers; and

(ii) the Fiscal Agent and each Paying Agent, and
their officers, directors and employees, may become the
holder of, or acquire any interest in, any Securities,
with the same rights that it or they would have if it
were not the Fiscal Agent or a Paying Agent hereunder,
or they were not such officers, directors, or
employers, and may engage or be interested in any
financial or other transaction with the Republic and
may act on, or as depository, trustee or agent for, any
committee or body of holders of Securities or other
obligations of the Republic as freely as if it were not

the Fiscal Agent or a Paying Agent hereunder or they
were not such officers, directors, or employees.

14. **Expenses and Indemnity.** (a) In connection
with the Fiscal Agent's appointment and duties as Fiscal
Agent, the Republic will pay the Fiscal Agent compensation
agreed upon by them. The Republic will indemnify the Fiscal
Agent and each Paying Agent against any loss or liability
and agrees to pay or reimburse the Fiscal Agent and each
Paying Agent for any reasonable expense, which loss,
liability or reasonable expense may be incurred by the
Fiscal Agent or any Paying Agent by reason of, or in
connection with, the Fiscal Agent's or any Paying Agent's
appointment and duties as such, except as such result from
the negligence, bad faith or wilful misconduct of the Fiscal
Agent or any Paying Agent or their respective directors,
officers, employees or agents. In addition, the Republic
shall pursuant to arrangements separately agreed upon by the
Republic and the Fiscal Agent, transfer to the Fiscal Agent,
upon presentation of substantiating documentation
satisfactory to the Republic, amounts sufficient to
reimburse the Fiscal Agent for certain out-of-pocket
expenses reasonably incurred by it and by any Paying Agent
in connection with their services. The obligation of the
Republic under this paragraph shall survive payment of the
Securities and resignation or removal of the Fiscal Agent.

(b) The Fiscal Agent and each Paying Agent agrees
to indemnify and hold harmless the Republic against all
direct claims, actions, demands, damages, costs, losses and
liabilities (excluding consequential and punitive damages)
arising out of or relating to the bad faith or wilful
misconduct of the Fiscal Agent or any Paying Agent or their
respective directors, officers, employees or agents.

15. **Successor Fiscal Agent.** (a) The Republic
agrees that there shall at all times be a Fiscal Agent
hereunder, and that the Fiscal Agent shall be a bank or
trust company organized and doing business under the laws of
the United States of America or of the State of New York, in
good standing and having a place of business in the Borough
of Manhattan, The City of New York, and authorized under
such laws to exercise corporate trust powers.

Any corporation or bank into which the Fiscal
Agent hereunder may be merged or converted, or any
corporation with which the Fiscal Agent may be consolidated,
or any corporation or bank resulting from any merger,
conversion or consolidation to which the Fiscal Agent shall
sell or otherwise transfer all or substantially all of the
corporate trust business of the Fiscal Agent, provided that

23

it shall be qualified as aforesaid, shall be the successor
Fiscal Agent under this Agreement without the execution or
filing of any paper or any further act on the part of any of
the parties hereto, but subject to prior notice to and the
prior approval of the Republic.

(b)  The Fiscal Agent may at any time resign by
giving written notice to the Republic of its resignation,
specifying the date on which its resignation shall become
effective (which shall not be less than 120 days after the
date on which such notice is given unless the Republic shall
agree to a shorter period); provided that no such notice
shall expire less than 30 days before or 30 days after the
due date for any payment of principal or interest in respect
of the Securities.  The Republic may remove the Fiscal Agent
at any time by giving written notice to the Fiscal Agent
specifying the date on which such removal shall become
effective.  Such resignation or removal shall only take
effect upon the appointment by the Republic of a successor
Fiscal Agent and upon the acceptance of such appointment by
such successor Fiscal Agent.  Any Paying Agent may resign or
may be removed at any time upon like notice, and the
Republic in any such case may appoint in substitution
therefor a new Paying Agent or Paying Agents.

(c)  The appointment of the Fiscal Agent hereunder
shall forthwith terminate, whether or not notice of such
termination shall have been given, if at any time the Fiscal
Agent becomes incapable of performing its duties hereunder,
or is adjudged bankrupt or insolvent, or files a voluntary
petition on bankruptcy or makes an assignment for the
benefit of its creditors or consents to the appointment of a
liquidator or receiver of all or any substantial part of its
property or admits in writing its inability to pay or meet
its debts as they mature or suspends payment thereof, or if
a resolution is passed or an order made for the winding up
or dissolution of the Fiscal Agent, or if a liquidator or
receiver of the Fiscal Agent of all or any substantial part
of its property is appointed, or if any order of any court
is entered approving any petition filed by or against it
under the provisions of any applicable bankruptcy or
insolvency law or if any public officer takes charge or
control of the Fiscal Agent or its property or affairs for
the purposes of rehabilitation, conservation or liquidation.

(d)  Prior to the effective date of any such
resignation or removal of the Fiscal Agent, or if the Fiscal
Agent shall become unable to act as such or shall cease to
be qualified as aforesaid, the Republic shall appoint a
successor Fiscal Agent, qualified as aforesaid.  Upon the
appointment of a successor Fiscal Agent and its acceptance

24

of such appointment, the retiring Fiscal Agent shall, at the direction of the Republic and upon payment of its compensation and expenses then unpaid, deliver and pay over to its successor any and all securities, money and any other properties then in its possession as Fiscal Agent and shall thereupon cease to act hereunder.

Any successor Fiscal Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and to the Republic an instrument accepting such appointment hereunder, and thereupon such successor without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, trusts, immunities, duties and obligations of such predecessor, with like effect as if originally named Fiscal Agent hereunder.

(e)  If the Fiscal Agent resigns or ceases to act as the Republic's fiscal agent in respect of the Securities pursuant to Section 15(c) of this Agreement, the Fiscal Agent shall only be entitled to annual fees otherwise payable to it under this Agreement on a pro rata basis for that period since the most recent anniversary of this Agreement during which the Fiscal Agent has acted as fiscal agent hereunder.  In the event that the Fiscal Agent ceases to act as the Republic's fiscal agent in respect of the Securities for any other reason, the Fiscal Agent shall be entitled to receive the full amount of the annual fees payable to it in respect of the Securities pursuant to Section 14 of this Agreement.

16.  **Meetings of Holders of Securities: Modifications.**  (a)  A meeting of registered holders of Securities of any Series may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given or taken by registered holders of Securities of any Series or to modify, amend or supplement the terms of the Securities of any Series or this Agreement as hereinafter provided.  The Fiscal Agent may at any time call a meeting of registered holders of Securities of any Series for any such purpose to be held at such time and at such place as the Fiscal Agent shall determine.  Notice of every meeting of registered holders of Securities of any Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Securities of any Series, not less than 30 nor more than 60 days prior to the date fixed for the meeting.  In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the Outstanding

22

25

Securities of any Series (as defined in subsection (d) of
this Section) shall have requested the Fiscal Agent to call
a meeting of the registered holders of Securities of any
Series for any such purpose, by written request setting
forth in reasonable detail the action proposed to be taken
at the meeting, the Fiscal Agent shall call such meeting for
such purposes by giving notice thereof.

To be entitled to vote at any meeting of
registered holders of Securities of any Series, a person
shall be a registered holder of Outstanding Securities of
any Series or a person duly appointed by an instrument in
writing as proxy for such a holder.  Any person appointed by
an instrument in writing as proxy for a registered holder
need not be a registered holder of Outstanding Securities of
any Series.  At any meeting each registered holder shall be
entitled to one vote for each of those amounts held by such
holder which represent the lowest denomination in which
Securities of such Series as to which such holder is a
holder may be transferred.  The persons entitled to vote a
majority in principal amount of the Outstanding Securities
of any Series shall constitute a quorum.  At the reconvening
of any meeting adjourned for a lack of a quorum, the persons
entitled to vote 25% in principal amount of the Outstanding
Securities of any Series shall constitute a quorum for the
taking of any action set forth in the notice of the original
meeting.  The Fiscal Agent may make such reasonable and
customary regulations as it shall deem advisable for any
meeting of registered holders of Securities of any Series
with respect to the appointment of proxies in respect of
registered holders of Securities, the record date for
determining the registered holders of Securities who are
entitled to vote at such meeting (which date shall be set
forth in the notice calling such meeting hereinabove
referred to and which shall be not less than 30 nor more
than 90 days prior to such meeting, the adjournment and
chairmanship of such meeting) the appointment and duties of
inspectors of votes, the submission and examination of
proxies, certificates and other evidence of the right to
vote, and such other matters concerning the conduct of the
meeting as it shall deem appropriate.

(b)  (i)  At any meeting of registered holders of
Securities of a Series duly called and held as specified
above, upon the affirmative vote, in person or by proxy
thereunto duly authorized in writing, of the registered
holders of not less than 66 2/3% in aggregate principal
amount of the Securities of any Series then Outstanding (or
of such other percentage as may be set forth in the
Securities of any Series with respect to the action being
taken), or (ii) with the written consent of the owners of

23

26

not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the text of the Securities of any Series with respect to the action being taken), the Republic and the Fiscal Agent may modify, amend or supplement the terms of the Securities of any Series or this Agreement, in any way, and the registered holders of Securities of any Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given, or taken by registered holders of Securities of any Series; provided, however, that no such action may, without the consent of the registered holder of each Security of such Series, (A) change the due date for the payment of the principal of (or premium, if any,) or any installment of interest on any Security of such Series, (B) reduce the principal amount of any Security of such Series, the portion of such principal amount which is payable upon acceleration of the maturity of such Security, the interest rate thereon or the premium payable upon redemption thereof, (C) change the coin or currency in which or the required places at which payment with respect to interest, premium or principal in respect of Securities of such Series is payable, (D) amend the definition of Redemption Event in the Securities of such Series or the procedures provided therefore, (E) shorten the period during which the Republic is not permitted to redeem the Securities of such Series if, prior to such action, the Republic is not permitted to do so, (F) reduce the proportion of the principal amount of Securities of such Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of such Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (G) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of any Series, to (i) any modification of any provisions of the Fiscal Agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in this Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of this Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of any Series and, if the Fiscal Agent so requires, such

24

modification shall be notified to the registered holders of Securities of any Series as soon as practicable.

It shall not be necessary for the vote or consent of the registered holders of the Securities of any Series to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof.

(c)    Any instrument given by or on behalf of any registered holder of a Security in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent registered holders of such Security or any Security issued directly or indirectly in exchange or substitution therefor or in lieu thereof.  Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of a Series will be conclusive and binding on all registered holders of Securities of such Series, whether or not they have given such consent or cast such vote, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Securities of such Series. Notice of any modification or amendment or, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of such Series or this Agreement (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereof or thereof) shall be given to each registered holder of Securities of such Series, in all cases as provided in the Securities of such Series.

Securities of any Series authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to such Series may bear a notation in the form approved by the Fiscal Agent and the Republic as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action.  New Securities modified to conform, in the opinion of the Fiscal Agent and the Republic, to any such modification, amendment, supplement, request, demand, authorization, direction,

notice, consent, waiver or other action may be prepared by the Republic, authenticated by the Fiscal Agent (or any authenticating agent appointed pursuant to Section 3 hereof) and delivered in exchange for Outstanding Securities of any Series.

(d)  For purposes of the provisions of this Agreement and the Securities of any Series, any Security authenticated and delivered pursuant to this Agreement shall, as of any date of determination, be deemed to be "Outstanding", except:

(i)  Securities of any Series theretofore cancelled by the Fiscal Agent or delivered to the Fiscal Agent for cancellation or held by the Fiscal Agent for reissuance but not reissued by the Fiscal Agent; or

(ii)  Securities of any Series which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof, premium, if any, and any interest thereon shall have been made available to the Fiscal Agent;

provided, however, that in determining whether the registered holders of the requisite principal amount of Outstanding Securities of any Series are present at a meeting of registered holders of Securities for quorum purposes or have consented to or voted in favor of any request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement hereunder, Securities of any Series owned directly or indirectly by the Republic shall be disregarded and deemed not to be Outstanding.

17.  Further Issues.  The Republic may from time to time, without notice to or the consent of the registered holders of the Securities of a Series, create and issue further securities ranking pari passu with the Securities of such Series in all respects (or in all respects except for the payment of interest accruing prior to the issue date of such further securities or except for the first payment of interest following the issue date of such further securities) and so that such further securities shall be consolidated and form a single series with the Securities of such Series and shall have the same terms as to status, redemption or otherwise as the Securities.

18.  Reports.  (a)  The Fiscal Agent shall furnish to the Republic such reports as may be required by the Republic relative to the Fiscal Agent's performance under

26

this Agreement. The Republic may, whenever it deems it necessary, inspect books and records maintained by the Fiscal Agent pursuant to this Agreement, if any.

(b) The Fiscal Agent shall (on behalf of the Holders) submit such reports or information as may be required from time to time in relation to the issue and purchase of Securities by applicable law, regulations and guidelines promulgated by the United States government.

(c) The Republic covenants to notify the Fiscal Agent in writing immediately on becoming aware of any Event of Default or any event or circumstance which could with the giving of notice or lapse of time become an Event of Default (a "Potential Event of Default").

(d) The Republic will send to the Fiscal Agent, on or before December 31 in each year (beginning with December 31, 1994), and within 14 days after any written notice by the Fiscal Agent, a certificate of the Republic signed by a duly authorized official of the Republic to the effect that, having made all reasonable inquiries, to the best knowledge of such duly authorized official, no Event of Default or Potential Event of Default has occurred and is continuing on the date of such certificate or, if an Event of Default or a Potential Event of Default has occurred, the circumstances surrounding it and the steps that the Republic has taken or proposes to take to remedy it.

(e) The Republic will send to the Fiscal Agent as soon as practicable after being so requested by the Fiscal Agent a certificate of the Republic, signed by a duly authorized official of the Republic stating the aggregate principal amount of the Securities held by or on behalf of the Republic at the date of such certificate.

19. <u>Forwarding of Notice; Inquiries</u>. (a) If the Fiscal Agent shall receive any notice or demand addressed to the Republic pursuant to the provisions of the Securities, the Fiscal Agent shall promptly forward such notice or demand to the Republic.

(b) The Fiscal Agent shall respond promptly to any inquiries received from any registered holder of Securities regarding the matters covered by paragraphs (b), (c) or (d) of Section 18 of this Agreement.

20. <u>Listings</u>. In the event that the terms of the Securities of any Series provide for a listing on any stock exchange, the Republic agrees to use all reasonable endeavors to maintain the listing of the Securities on such

30

exchange. If, however, it is unable to do so, having used such endeavors, or if the maintenance of such listing is agreed by the Fiscal Agent to be unduly onerous and the Fiscal Agent is satisfied that the interests of registered holders of the Securities would not thereby be materially prejudiced, it will instead use all reasonable endeavors to obtain and maintain a listing of the Securities on such other stock exchange or exchanges as it may decide.

21. Notices. (a) Any communications from the Republic to the Fiscal Agent with respect to this Agreement shall be addressed to Bankers Trust Company, 4 Albany Street, New York, New York 10006, Fax No.: 212-250-6961 or 212-250-6392, Tel. No.: 212-250-6571 and any communications from the Fiscal Agent to the Republic with respect to this Agreement shall be addressed to the Subsecretaría de Financiamiento, Hipólito Yrigoyen 250, Piso 10 - Oficina 1001, 1310 - Buenos Aires, Attention: Deuda Externa, Fax No.: 011-54-1-349-6080, Tel. No.: 011-541-349-6242 (or such other address as shall be specified in writing by the Fiscal Agent or by the Republic, as the case may be) and shall be delivered in person or sent by first class prepaid post or by facsimile transmission subject, in the case of facsimile transmission, to confirmation by telephone to the foregoing addresses. Such notice shall take effect in the case of delivery in person, at the time of delivery, in the case of delivery by first class prepaid post seven (7) business days after dispatch and in the case of delivery by facsimile transmission, at the time of confirmation by telephone.

(b) All notices to the registered holders of Securities of a Series will be published in such publications at such locations as any of the Securities of such Series are listed for the period of time of such listing and as otherwise provided pursuant to the terms of the Securities of such Series. If at any time publication in any such publication is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine. [In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine.] Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made. Written notice will also be given to the Depositary, if at the time of such notice any of the Securities is represented by a Global Security.

31

22. **Consent to Service; Jurisdiction**. The Republic hereby appoints Banco de la Nación Argentina, at its office located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose) as its authorized agent (the "Authorized Agent") upon whom process may be served in any action arising out of or based on the Securities or this Agreement by the holder of any Security which may be instituted in any state or federal court in The City of New York, and expressly accepts the jurisdiction of any such court in respect of such action. Such appointment shall be irrevocable until all amounts in respect of the principal of and any interest due and to become due on or in respect of all the Securities have been provided to the Fiscal Agent pursuant to the terms hereof, except that, if for any reason, such Authorized Agent ceases to be able to act as Authorized Agent or to have an address in the Borough of Manhattan, The City of New York, the Republic will appoint another person in the Borough of Manhattan, The City of New York, selected in its discretion, as such Authorized Agent. Prior to the date of issuance of any Securities hereunder, the Republic shall obtain the consent of Banco de la Nación Argentina to its appointment as such Authorized Agent, a copy of which acceptance it shall provide to the Fiscal Agent. The Republic shall take any and all action, including the filing of any and all documents and instruments, that may be necessary to continue such appointment or appointments in full force and effect as aforesaid. Upon receipt of such service of process, the Authorized Agent shall advise the Subministry of Finance promptly by telecopier at 011-54-1-349-6080. Service of process upon the Authorized Agent at the address indicated above, as such address may be changed within the Borough of Manhattan, The City of New York by notice given by the Authorized Agent to each party hereto, shall be deemed, in every respect, effective service of process upon the Republic. The Republic hereby irrevocably and unconditionally waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any aforesaid action arising out of or in connection with this Agreement brought in any such court has been brought in an inconvenient forum. Neither such appointment nor such acceptance of jurisdiction shall be interpreted to include actions brought under the United States federal securities laws. This appointment and acceptance of jurisdiction is intended to be effective upon execution of this agreement without any further act by the Republic before any such court and introduction of a true copy of this Agreement into evidence shall be conclusive and final evidence of such waiver.

29

32

Notwithstanding the foregoing, any action arising out of or based on the Securities may be instituted by the holder of any Security in any competent court in the Republic of Argentina.

The Republic hereby irrevocably waives and agrees not to plead any immunity from the jurisdiction of any such court to which it might otherwise be entitled in any action arising out of or based on the Securities or this Agreement by the holder of any Security.

23. <u>Governing Law and Counterparts</u>. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24. <u>Headings</u>. The headings for the sections of this Agreement are for convenience only and are not part of this Agreement.

33

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA

By: /s/ Noemi LaGreca
   Name:  Noemi LaGreca
   Title: Financial
          Representative of
          Argentina in the
          United States

BANKERS TRUST COMPANY

By: /s/ Wanda Camacho
   Name:  Wanda Camacho
   Title: Assistant
          Secretary

31

EXHIBIT A

FORM OF REGISTERED SECURITY

[Form of Face
of Security]

[If the Security is a global Security, insert a legend
relating to limitations on the transferability of such
global Security in such form as may be required by the U.S.
Depositary.]

[INSERT ANY LEGEND(S) REQUIRED BY THE INTERNAL REVENUE CODE]

THE REPUBLIC OF ARGENTINA

[Title of Series of Securities]

No. R-_____                          [Principal Amount]

Issue Price:

Original Issue Date:

Maturity Date:

Currency of Denomination:

Option to Receive Payments
in Specified Currency:            _____Yes _____No

Authorized Denominations:

Form:                             ( ) Book-Entry
                                  ( ) Certificated

Initial Interest
Payment Date:

Interest Rate:

Interest Rate Reset:              ( ) The Interest Rate may not
                                      be changed prior to
                                      Maturity Date.

35

( )  The Interest Rate may be
changed prior to Stated
Maturity (see attached).

Optional Reset Dates
(if applicable):

Interest Payment Dates:

Optional Extension of
Maturity Date:                    _____Yes  _____No

   Final Maturity:

Total Amount of OID:

Yield to Maturity:

Initial Accrual Period OID:

Optional Redemption:              _____Yes  _____No

   Optional Redemption Dates:

   If applicable as described above, the Redemption Price
shall initially be     % of the principal amount of
this Security to be redeemed and shall decline at each
anniversary of the Initial Redemption Date by     % of
the principal amount to be redeemed until the
Redemption Price is 100% of such principal amount;
*provided, however*, that if this Security is a Discount
Note (as defined below), the Redemption Price shall be
the Amortized Face Amount (as defined below) of this
Note.

Optional Repayment:               _____Yes  _____No

   Optional Repayment Dates:

   Optional Repayment Prices:

Conversion into or
Exchange for
Other Securities

                ( )  This Security may not be
converted into or
exchanged for other
securities.

                ( )  This Security may be
converted into or

2

*36*

exchanged for _____
[specify securities].

Terms of Conversion
or Exchange
(if applicable):

Indexed Note:  _____ Yes (see attached) _____ No

Exchange Rate Agent:

Other Terms:                _____ Yes _____ No

A-3

THE REPUBLIC OF ARGENTINA (herein called the "Republic"), for value received, hereby promises to pay to

or registered assigns, the principal sum of _____ U.S. Dollars (U.S.$ _____) [other currency] on _____ [If the Security is to bear interest prior to maturity, insert--, and to pay interest thereon from _____ or from the most recent Interest Payment Date to which interest has been paid or duly provided for, [specify frequency] in arrears on _____ [and _____] in each year, commencing _____ (each an "Interest Payment Date"), at the rate [of ___ % per annum] [to be determined in accordance with the provisions hereinafter set forth], until the principal hereof is paid or made available for payment. The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in the Fiscal Agency Agreement hereinafter referred to, be paid to the person (the "registered Holder") in whose name this Security (or one or more predecessor Securities) is registered in the register of such Securities maintained pursuant to the Fiscal Agency Agreement at the close of business on the date (whether or not a business day) [, as the case may be] [each a "Regular Record Date"] [,] [_____ calendar days] next preceding such Interest Payment Date; provided, however, that the first payment of interest on any Security originally issued on a date between a Regular Record Date and an Interest Payment Date or on an Interest Payment Date will be made on the Interest Payment Date following the next succeeding Regular Record Date to the registered Holder on such next succeeding Regular Record Date. Any such interest not so punctually paid or duly provided for will forthwith cease to be payable to the registered Holder on such Regular Record Date and may either be paid to the person in whose name this Security (or one or more predecessor Securities) is registered at the close of business on a special record date for the payment of such interest to be fixed by the Republic, notice whereof shall be given to registered Holders of Securities of this Series not less than 10 days prior to such special record date, or be paid at any time in any other lawful manner [not inconsistent with the requirements of any securities exchange on which the Securities of this series may be listed, and upon such notice as may be required by such exchange.]

[Insert floating interest rate provisions, if applicable.]

[If the Security is not to bear interest prior to maturity, insert--(the "Stated Maturity"). The principal of

A-4

*38*

this Security shall not bear interest except in the case of a default in payment of principal upon acceleration, upon redemption or at Stated Maturity.]

Principal of (and premium, if any, on) [and interest payable at maturity or upon earlier redemption or repayment in respect of] this Security shall be payable in immediately available funds against surrender hereof at the corporate trust office of the Fiscal Agent hereinafter referred to and at the offices of such other Paying Agents as the Republic shall have appointed pursuant to the Fiscal Agency Agreement. Payments of principal of (and premium, if any[, on]) [and interest on] this Security shall be made in same-day funds in accordance with the foregoing and subject to applicable laws and regulations, by [(if the Republic so elects] transfer to an account denominated in U.S. dollars which is maintained by the payee with [any] [a] bank [located in _____]. If the Republic does not so elect, payments of principal (and premium, if any) shall be made against surrender of this Security [if applicable, insert--, and payments of interest shall be made,] by] forwarding by post or otherwise delivering a check [on or before the due date for such payment] to the registered address of the registered Holder of this Security. [If applicable, insert payment provisions for Securities denominated in a currency other than U.S. dollars]. This Security is a direct obligation of the Republic and does not have the benefit of any separate undertaking of other government entities (including Banco Central). The Republic covenants that until all amounts in respect of the principal and interest due and to become due on or in respect of this Security have been paid as provided herein or in the Fiscal Agency Agreement, it will at all times maintain offices or agencies in the Borough of Manhattan, The City of New York for the payment of the principal of (and premium, if any[, on]) [and interest on] the Securities as herein provided.

Reference is hereby made to the further provisions of this Security set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Security shall not be valid or obligatory for any purpose.

A-5

*39*

IN WITNESS WHEREOF, the Republic has caused this instrument to be duly executed.

Dated:

THE REPUBLIC OF ARGENTINA

By_____
[Title]

Attest:

_____
[Title]

Date of Authentication:

This is one of the Securities of the series designated therein referred to in the within-mentioned Fiscal Agency Agreement.

BANKERS TRUST COMPANY,
as Fiscal Agent

By_____
Authorized Signatory

A-6

[Form of reverse
of Security]

This Security is one of a duly authorized issue of securities of the Republic (herein called the "Securities") issued and to be issued in one or more series in accordance with a Fiscal Agency Agreement, dated as of _____ (herein called the "Fiscal Agency Agreement"), between the Republic and Bankers Trust Company, as Fiscal Agent (herein called the "Fiscal Agent"), which term includes any successor fiscal agent under the Fiscal Agency Agreement), copies of which Fiscal Agency Agreement are on file and available for inspection at the corporate trust office of the Fiscal Agent in the Borough of Manhattan, The City of New York. This Security is one of the Securities of the Series designated on the face hereof[, limited in aggregate principal amount to U.S.$ _____ ]. The Fiscal Agency Agreement may be amended from time to time in accordance with the terms thereof.

The Securities will constitute the direct, unconditional, unsecured and unsubordinated obligations of the Republic. Each Series will rank pari passu with each other Series, without any preference one over the other by reason of priority of date of issue or currency of payment or otherwise, and at least equally with all other present and future unsecured and unsubordinated External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic.

The Securities of this Series are issuable only in fully registered form. The Securities are issuable in [the] authorized denomination[s] of [currency/U.S.$ _____ [and [any integral multiple thereof] [integral multiples of [currency/U.S.$ _____ above that amount]].

Until all amounts in respect of the principal and interest due and to become due on or in respect of this Security have been paid, the Republic shall maintain in the Borough of Manhattan, The City of New York, an office or agency where Securities may be surrendered for registration of transfer or exchange. The Republic has initially appointed the corporate trust office of the Fiscal Agent as its agent in the Borough of Manhattan, The City of New York, for such purpose and has agreed to cause to be kept at such office a register in which subject to such reasonable regulations as it may prescribe, the Republic will provide for the registration of Securities and of transfers of Securities. The Republic reserves the right to vary or terminate the appointment of the Fiscal Agent as security

A-7

41

registrar or transfer agent or to appoint additional or other registrars or transfer agents or to approve any change in the office through which any security registrar or any transfer agent acts, provided that there will at all times be a security registrar in the Borough of Manhattan, The City of New York.

Subject to the provisions on the face hereof concerning transfer restrictions, the transfer of a Security is registrable on the aforementioned register upon surrender of such Security at the corporate trust office of the Fiscal Agent duly endorsed by, or accompanied by a written instrument of transfer in form attached hereto duly executed by, the registered Holder thereof or his attorney duly authorized in writing.  Upon such surrender of this Security for registration of transfer, the Republic shall execute, and the Fiscal Agent shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Securities, dated the date of authentication thereof, of any authorized denominations and of a like aggregate principal amount.

Subject to the provisions on the face hereof concerning transfer restrictions, at the option of the registered Holder upon request confirmed in writing, Securities may be exchanged for Securities of any authorized denominations and of a like aggregate principal amount, upon surrender of the Securities to be exchanged at the corporate trust office of the Fiscal Agent.  Any registration of transfer or exchange will be effected upon the Fiscal Agent being satisfied with the documents of title and identity of the person making the request and subject to such reasonable regulations as the Republic may from time to time agree with the Fiscal Agent.  Whenever any Securities are so surrendered for exchange, the Republic shall execute, and the Fiscal Agent shall authenticate and deliver, the Securities which the registered Holder making the exchange is entitled to receive.  The new Security issued upon such exchange shall be so dated that neither gain nor loss of interest shall result from such exchange.  [If the Security is a permanent global Security, insert--Notwithstanding the foregoing, the exchange of this Security is subject to certain limitations set forth in the Fiscal Agency Agreement and on the face hereof.]

[In the event of a redemption of the Securities of this series in part, the Republic shall not be required (i) to register the transfer of or exchange any Security during a period beginning at the opening of business 15 days before, and continuing until, the date notice is given identifying the Securities to be redeemed, or (ii) to

A-8

register the transfer of or exchange any Security, or portion thereof, called for redemption.]

All Securities issued upon any registration of transfer or exchange of Securities shall be the valid obligation of the Republic evidencing the same indebtedness and entitled to the same benefits this Security has at the time of such registration of transfer or exchange.

No service charge shall be made for any registration of transfer or exchange, but the Republic may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith, other than an exchange in connection with a partial redemption of a Security not involving any registration of a transfer.

Prior to due presentment of this Security for registration of transfer, the Republic, the Fiscal Agent and any agent of the Republic or the Fiscal Agent may treat the person in whose name this Security is registered as the owner hereof for all purposes, whether or not this Security is overdue, and neither the Republic nor the Fiscal Agent nor any such agent shall be affected by notice to the contrary.

In any case where the due date or the payment of the principal of (and premium, if any[, on]) [or interest on] any Security[, or the date fixed for redemption of any Security,] shall be, at any place from which any check in respect thereof is to be mailed or where such Security is to be surrendered for payment [or, in the case of payments by transfer, where such transfer is to be made], a day on which banking institutions [If the Securities are denominated in U.S. dollars, insert--in The City of New York] [If the Securities are denominated in a currency other than U.S. Dollars, insert--in [name of financial center of the country in whose currency the securities are denominated] are authorized or obligated by law to close [If the Securities are denominated in a currency other than U.S. Dollars, insert--or a day on which banking institutions in [name of non-U.S. financial center] are not carrying out transactions in [name of non-U.S. currency]], then such payment need not be made on such date at such place but may be made on the next succeeding day at such place which is not a day on which banking institutions are authorized or obligated by law to close, with the same force and effect as if made on the date for such payment payable in respect of any such delay.

43

The Republic shall provide to the Fiscal Agent at its principal office in the Borough of Manhattan, The City of New York, prior to each date on which a payment on or in respect of the Securities of this series shall become due, monies in such amounts which (together with any amounts then held by the Fiscal Agent and available for the purpose) are sufficient to make such payment. Any monies provided by the Republic to the Fiscal Agent for the payment on or in respect of the Securities of this series and remaining unclaimed at the end of two years after such payment shall have become due shall then be returned to the Republic, and upon the return of such monies all liabilities of the Fiscal Agent with respect thereto shall cease, without, however, limiting in any way any obligation the Republic may have to pay the principal of (or premium, if any[, on]) [or interest on] this Security as the same shall become due.

So long as any Security remains outstanding, save for the exceptions set forth in the Fiscal Agency Agreement, the Republic will not create or permit to subsist, or permit Banco Central to create or permit to subsist, any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic or Banco Central unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by not less than 66 2/3% of the registered holders of Securities of any Series then outstanding.

If an Event of Default (as defined in the Fiscal Agency Agreement) occurs and is continuing then the holders of not less than 25 percent in aggregate principal amount of the Securities of this Series, by notice in writing to the Republic at the specified office of the Fiscal Agent, shall declare the principal amount of all the Securities of this Series to be due and payable as set forth in the Fiscal Agency Agreement.

All payments of principal, premium, if any, and interest on this Security by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax

(together "Taxes"), unless such withholding or deduction is required by law.  In such event, the Republic shall pay such Additional Amounts as will result in receipt by the holders of Securities of this Series of such amounts of principal, premium and interest which would have been received by them had no such withholding or deduction been required, save for the exceptions set forth in the Fiscal Agency Agreement.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

[The Securities of this Series will not be subject to any sinking fund and will not be redeemable except as described below.]

[The Securities of this Series are subject to redemption upon not less than 30 days' notice given as hereinafter provided, [if applicable, insert--(1) on _____ in any year commencing with the year ____ and ending with the year ____ through operation of the sinking fund for this series at a redemption price equal to 100% of the principal amount, (2)] [at any time [on or after _____, 19__], as a whole or in part, at the election of the Republic, at the following redemption prices (expressed as percentages of the principal amount of the Securities to be redeemed): If redeemed [on or before _____ of the years indicated, _____, ____%,

| Year | Redemption Price | Year | Redemption Price |
|------|------------------|------|------------------|
|      |                  |      |                  |

and thereafter at a redemption price equal to ____% of the principal amount, and (3)] under the circumstances described in the next succeeding paragraph at a redemption price equal to 100% of the principal amount of the Securities to be redeemed, together in each case with accrued interest (except if the redemption date is an Interest Payment Date) to the redemption date, but interest installments on Securities that are due on or prior to such redemption date will be payable to the holders of such Securities of record at the close of business on the relevant Record Dates referred to above; provided, that if the redemption date occurs between a Record Date and an Interest Payment Date, the interest due and payable will be paid to the holders of

45

such Securities of record at the close of business on such Record Date. [Partial redemptions must be in an amount not less than U.S.$_____ principal amount of Securities.]

[As and for a sinking fund for the retirement of the Securities of this Series, the Republic will, until all Securities of this Series are paid or payment thereof provided for, deposit with the Fiscal Agent, prior to _____ in each year, commencing in ____ and ending in ____ an amount in cash sufficient to redeem on such _____ [not less than U.S.$_____ and not more than] U.S.$_____ principal amount of Securities of this Series at the redemption price specified above for redemption through operation of the sinking fund. [The minimum amount of any sinking fund payment as specified in this Paragraph is herein referred to as a "mandatory sinking fund payment", and any payment in excess of such minimum amount is herein referred to as an "optional sinking fund payment".] The cash amount of any [mandatory] sinking fund payment is subject to reduction as provided below. Each sinking fund payment shall be applied to the redemption of Securities in this Series on such _____ as herein provided. [The right to redeem Securities of this Series through optional sinking fund payments shall not be cumulative and to the extent not availed of on any sinking fund redemption date will terminate.]]

[Notwithstanding the foregoing, the Republic may not, prior to _____, redeem any Securities of this Series as [and optional sinking fund payment] contemplated by the preceding paragraph as a part of, or in anticipation of, any refunding operation by the application, directly or indirectly, of monies borrowed having an interest cost to the Republic (calculated in accordance with general accepted financial practice) of less than __% per annum.]

[Securities of this Series acquired or redeemed by the Republic otherwise than through [mandatory] sinking fund payments may be credited against subsequent [mandatory] sinking fund payments otherwise required to be made [in the inverse order in which they become due].]

[The Republic (i) may deliver outstanding Securities of this Series (other than any previously called for redemption) and (ii) may apply as a credit Securities of this series which have been redeemed otherwise than through the application of [mandatory] sinking fund payments, in each case in satisfaction of all or any part of any [mandatory] sinking fund payment and the amount of such [mandatory] sinking fund payment shall be reduced accordingly.]

46

[In the case of any partial redemption of Securities of this Series pursuant to the sinking fund or at the option of the Republic, the Securities to be redeemed shall be selected by the Fiscal Agent not more than 60 days prior to the redemption date from the outstanding Securities not previously called for redemption, by such method as the Fiscal Agent shall deem fair and appropriate and which may provide for the selection for redemption of portions (equal to U.S.$_____ or any integral multiple thereof) of the principal amount of Securities of a denomination larger than U.S.$_____].

[This Security shall be redeemed, at the option of the registered Holder thereof, upon the occurrence, on or after _____, of a Redemption Event (as hereinafter defined), at the redemption price equal to 100% of the principal amount of this Security, together with interest accrued thereon to the date of redemption; provided, however, that the right of the registered Holder to present this Security [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] for redemption shall, if the Republic gives a Notice of Redemption Event (as hereinafter defined), terminate upon expiration of the Option Period (as hereinafter defined) relating to such Redemption Event.  In the event of the occurrence of more than one Redemption Event, each such Redemption Event shall be deemed to confer upon the registered Holder of this Security a separate right of redemption.]

[The Republic agrees that, if a Redemption Event occurs, it will promptly give written notice thereof to the Fiscal Agent (a "Notice of Redemption Event").  Promptly after receiving such Notice of Redemption Event, the Fiscal Agent shall give written notice to the registered Holder of this Security (a "Notice of Right to Tender") stating that a Redemption Event has occurred and including a form of notice (a "Redemption Notice") pursuant to which the registered Holder of this Security may elect to cause redemption.  The Republic may, but shall not be obligated to, fix a record date for the purpose of determining the registered Holders of Securities of this series entitled to elect to cause redemption of any such Holder elects to cause redemption of this Security, deliver the Redemption Notice, together with the certificate or certificates representing the Securities to be redeemed [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] to the Fiscal Agent within a period of 60 days (the "Option Period") of the date of the Notice

A-13

of Right to Tender, and (ii) the Republic shall select a
date for redemption (the "Redemption Date"), which shall be
within 60 days from the end of the Option Period, and, on
the Redemption Date, shall redeem the Securities tendered
for redemption within the Option Period.  At least 10 days
prior to the Redemption Date, the Republic shall [(i)]
deliver notice of the Redemption Date in the manner provided
for herein to each registered Holder who requested
redemption[, or (ii) publish notice of the Redemption Date
in the manner provided for herein, as the case may be].]

        [If the Security is a permanent global Security,
insert--It is understood that, notwithstanding the foregoing
provisions relating to redemption at the option of a
registered Holder and without otherwise limiting any right
of any other registered Holder to act by agent or proxy, the
Fiscal Agent may treat a person authorized, in a manner
satisfactory to the Fiscal Agent, by the U.S. Depositary to
take action in respect of a portion of this permanent global
Security as the registered Holder of such portion of such
Security and may make arrangements satisfactory to it, the
Republic and the U.S. Depositary in connection with this
partial redemption of this permanent global Security.]

        [Insert description of those events, if any, which
constitute Redemption Events.]

        [If notice of redemption has been given in the
manner set forth herein, the Securities so to be redeemed
shall become due and payable on the redemption date
specified in such notice and upon presentation and surrender
of the Securities [if the Security is a permanent global
Security, insert--, or evidence of ownership of the
Securities represented by this permanent global Security
satisfactory to the Fiscal Agent,] at the place or places
specified in such notice, the Securities shall be paid and
redeemed by the Republic at the places, in the manner and
currency and at the redemption price herein specified
together with accrued interest (unless the redemption date
is an Interest Payment Date) to the redemption date.  From
and after the redemption date, if monies for the redemption
of Securities called for redemption shall have been made
available at the corporate trust office of the Fiscal Agent
for redemption on the redemption date, the Securities called
for redemption shall cease to bear interest, and the only
right of the holder of such Securities shall be to receive
payment of the redemption price together with accrued
interest (unless the redemption date is an Interest Payment
Date) to the redemption date as aforesaid.  If monies for
the redemption of the Securities are not made available for
payment until after the redemption date, the Securities

A-14



called for redemption shall not cease to bear interest until such monies have been so made available.]

[Any Security which is to be redeemed only in part shall be surrendered with, if the Republic or the Fiscal Agent so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Republic and the Fiscal Agent duly executed by, the holder thereof or such holder's attorney duly authorized in writing, and the Republic shall execute, and the Fiscal Agent shall authenticate and deliver to the registered Holder of such Security without service charge, a new Security or Securities of this Series, of any authorized denomination as required by such Holder, in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Security so surrendered.]

A meeting of registered holders of Securities of this Series may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given or taken by registered holders of Securities of this Series or to modify, amend or supplement the terms of the Securities of this Series or the Fiscal Agency Agreement as hereinafter provided. The Fiscal Agent may at any time call a meeting of registered holders of Securities of this Series for any such purpose to be held at such time and at such place as the Fiscal Agent shall determine. Notice of every meeting of registered holders of Securities of this Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Securities of this Series, not less than 30 nor more than 60 days prior to the date fixed for the meeting. In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the Outstanding Securities of this Series (as defined in the Fiscal Agency Agreement) shall have requested the Fiscal Agent to call a meeting of the registered holders of Securities of this Series for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

At any meeting of registered holders of Securities duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66-2/3% (or ____ %) in aggregate principal amount of the

A-15

Securities of this Series then Outstanding, or (ii) with the written consent of the registered holders of not less than 66-2/3% [or ___ %] in aggregate principal amount of the Securities of this Series then Outstanding, the Republic [and the Fiscal Agent] may modify, amend or supplement the terms or provisions contained in the Securities of this Series, in any way, and the registered holders of Securities of this Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given, or taken by registered holders of Securities of this Series; provided, however, that no such action may, without the consent of the registered holder of each Security, (A) change the due date for the payment of the principal of or any installment of interest on any Security, (B) reduce the principal amount of any Security, the portion of such principal amount which is payable upon acceleration of the maturity of such Security or the interest rate thereon, (C) change the coin or currency in which or the required places at which payment with respect to interest or principal in respect of the Securities of this Series is payable, (D) reduce the proportion of the principal amount of Securities of this Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of this Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of this Series to (i) any modification of any provisions of the Fiscal agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in the Fiscal Agency Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of the fiscal Agency Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of this Series and, if the Fiscal Agent so requires, such modification shall be notified to the registered holders of Securities of this Series as soon as practicable.

All notices to the registered holders of Securities will be published in such publications at such locations as any of the Securities are listed for the period

50

of time of such listing and as otherwise provided pursuant to the terms of the Securities of this Series. If at any time publication in any such publication is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine. In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine. Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made.

No reference herein to the Fiscal Agency Agreement and no provision of this Security or of the Fiscal Agency Agreement shall alter or impair the obligation of the Republic to pay the principal of (and premium, if any[, on]) [and interest on] this Security at the times, place and rate, and in the coin or currency, herein prescribed.

Claims against the Republic for payment in respect of the Securities of this Series and interest payments thereon shall be prescribed and become void unless made within 10 years (in the case of principal) and 5 years (in the case of interest) from the appropriate Relevant Date in respect thereof.

This Security shall be governed by and construed in accordance with the laws of the State of New York, except with respect to authorization and execution by the Republic.

The Republic has in the Fiscal Agency Agreement irrevocably submitted to the jurisdiction of any New York state or federal court sitting in the Borough of Manhattan, The City of New York and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series or the Fiscal Agency Agreement (a "Related Proceeding"). The Republic has in the Fiscal Agency Agreement waived any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic agrees that a final non-appealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

51

The Republic has in the Fiscal Agency Agreement agreed that (i) service of all writs, process and summonses in any Related Proceeding or any action or proceeding to enforce or execute any Related Judgment brought against it in the State of New York may be made upon Banco de la Nación Argentina, presently located at 299 Park Avenue, New York, New York 10171, and, if such person is not maintained by the Republic as its agent for such purpose, the Republic will appoint CT Corporation System to act as its agent for such purpose.

To the extent that the Republic or any of its revenues, assets or properties shall be entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties, or in any jurisdiction in which any Specified Court or Other Court is located in which any suit, action or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment, to any immunity from suit, from the jurisdiction of any such court, from set-off, from attachment prior to judgment, form attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the Foreign Sovereign Immunities Act to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment), provided that such waiver shall not be effective (i) with respect to the assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law (the "Convertibility Law"), the amount, composition and investment of which will be reflected on the balance sheet and accounting statement of Banco Central consistently prepared pursuant to Article 5 of the Convertibility Law and (ii) with respect to property of the public domain located in the territory of The Republic of Argentina or property owned by the Republic and located in its territory which is dedicated to the purpose of an essential public service, and provided further that such agreement and waiver, insofar as it relates to any jurisdiction other than a jurisdiction in which a Specified Court is located, is given solely for the purpose of enabling the Fiscal Agent or a holder of Securities of this Series to enforce or execute a Related Judgment. The waiver of immunities referred to herein constitutes only a limited and specific waiver for the purpose of the Securities of this Series and the Fiscal Agency Agreement and under no

A-18

52

circumstances shall it be interpreted as a general waiver of
the Republic or a waiver with respect to proceedings
unrelated to the Securities of this Series or the Fiscal
Agency Agreement.

　　　　Unless the certificate of authentication hereon
has been executed by the Fiscal Agent by manual signature,
this Security shall not be entitled to any benefit under the
Fiscal Agency Agreement or be valid or obligatory for any
purpose.

A-19

53

FOR VALUE RECEIVED the undersigned hereby sell(s), assigns
or transfers unto
PLEASE INSERT SOCIAL SECURITY OR OTHER
    IDENTIFYING NUMBER OF ASSIGNEE

_____

Please print or typewrite name and address including postal

zip code of assignee

the within Security and all rights thereunder, hereby

irrevocably constituting and appointing to transfer such

Security on the books of the Trustee, with full power of
substitution in the premises.

Dated: _____        Signature: _____

Notice: the signature to
this assignment must
correspond with the name
as written upon the face
of the written instrument
in every particular,
without alteration or
enlargement or any change
whatever.

A-20.

54.

**EXHIBIT B**

**JPMorgan**

PAGE    1
Run Date:    07/28/2008
Time:    05:16 pm
Statement Date:    07/25/2008
Run by:    jharvin

## Global Settled Holdings COB Report

| Sedol Number ISIN | Security Description | Units Price CCY |
|---|---|---|
| **Account Number: NML01** | **Account Name: NML CAPITAL,LTD** | |
| **Depot: ECLEAR:NML CAPITAL LIMITED** | | |
| 2541091 US040114FB19 | ARGENTINA(REPUBLIC OF) 12% BDS 01/02/2020 USD1000 | 61,644,000.00 |
| 5188882 US040114AR16 | ARGENTINA(REPUBLIC OF) 11.375% BDS 30/1/2017 USD1000 | 56,487,000.00 |
| 5660197 US040114BE93 | ARGENTINA(REPUBLIC OF) 11.75% NOTES 7/4/2009 USD1000 | 12,650,000.00 |
| 5922262 US040114FC91 | ARGENTINA(REPUBLIC OF) 11.375% BDS 15/3/2010 USD1000 | 16,540,000.00 |
| A003749 US040114AN02 | ARGENTINA(REPUBLIC OF) 11.00% BDS 09/10/06 USD1000 | 6,256,000.00 |
| A020635 US040114GD65 | ARGENTINA(REPUBLIC OF) 12.375% BDS 21/2/2012 USD1000 | 12,220,000.00 |
| A026715 US040114AV28 | ARGENTINA(REPUBLIC OF) 9.75% BDS 19/9/2027 USD1000 | 5,550,000.00 |

**EXHIBIT C**

JPMorgan

| | PAGE | 2 |
|---|---|---|
| Run Date: | JUN 09, 2008 | |
| Time: | 09-28 am | |
| Statement Date: | 06/09/2008 | |
| Time: | 09-10 am | |
| Run by: | jharvin | |

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | | Sedol Number | Due Date | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | Local Price CCY | |
| Trade Status | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

| Account No: | NML01 | Account Name: | NML CAPITAL,LTD |
|---|---|---|---|

**Depot: ECLEAR:NML CAPITAL LIMITED**

| Receive Against Payment | | ARGENTINA(REPUBLIC OF) 11.375% BDS 30/1/2017 USD1000 | | 2,000,000.00 | |
|---|---|---|---|---|---|
| 702383353 | US040114AR16 | 5188882 | 06/09/2008 | | |
| NONE | | EUROCLEAR BRUSSELS MGTCBEBE | 06/09/2008 | 0.0000 USD | |
| Settled | | | | 0.00 USD | |
| TRADE SETTLED | 92436 : | | | 0.00 USD | |

**JPMorgan**

|  | PAGE | 1 |
|---|---|---|
| Run Date: | JUN 24, 2008 | |
| Time: | 05-10 pm | |
| Statement Date: | 06/24/2008 | |
| Time: | 03-09 pm | |
| Run by: | jharvin | |

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | Sedol Number | | Due Date | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | Local Price CCY | |
| Trade Status | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

**Account No:  NML01          Account Name:     NML CAPITAL,LTD**

**Depot:  ECLEAR:NML CAPITAL LIMITED**

| Receive Against Payment | | ARGENTINA(REPUBLIC OF) 11.375% BDS 30/1/2017 USD1000 | | | 5,000,000.00 | |
|---|---|---|---|---|---|---|
| 702461893 | US040114AR16 | 5188882 | | 06/24/2008 | | |
| NONE | | EUROCLEAR BRUSSELS MGTCBEBE | | 06/24/2008 | 0.0000 USD | |
| Settled | | | | | 0.00 USD | |
| TRADE SETTLED | 90014 : | | | | 0.00 USD | ... |
| Receive Against Payment | | ARGENTINA(REPUBLIC OF) 11.375% BDS 30/1/2017 USD1000 | | | 4,000,000.00 | |
| 702461927 | US040114AR16 | 5188882 | | 06/24/2008 | | |
| NONE | | EUROCLEAR BRUSSELS MGTCBEBE | | 06/24/2008 | 0.0000 USD | |
| Settled | | | | | 0.00 USD | |
| TRADE SETTLED | 90014 : | | | | 0.00 USD | .. |

**JPMorgan**

|  |  |
|---|---|
| | PAGE 1 |
| Run Date: | JUN 27, 2008 |
| Time: | 09-07 am |
| Statement Date: | 06/27/2008 |
| Time: | 08-08 am |
| Run by: | jharvin |

## Consolidated Settlement ITD Report

| Trade Type | Security Description | | Units | Outstanding Units |
|---|---|---|---|---|
| Chase Message ID  ISIN | Sedol Number | | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref.  Broker | | Due Date | Local Price CCY | |
| Trade Status | | Settled Date | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | Base Value CCY | Outstanding Base CCY |

**Account No:  NML01          Account Name:     NML CAPITAL,LTD**

**Depot:  ECLEAR:NML CAPITAL LIMITED**

...

| | | | |
|---|---|---|---|
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 11.375% BDS 30/1/2017 USD1000 | | 5,000,000.00 |
| 702477791 | US040114AR16   5188882 | 06/27/2008 | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | 06/27/2008 | 0.0000 USD |
| Settled | | | 0.00 USD |
| TRADE SETTLED | 90014 : | | 0.00 USD |

**JPMorgan**

| | |
|---|---|
| | PAGE 1 |
| Run Date: | JUN 30, 2008 |
| Time: | 08-59 am |
| Statement Date: | 06/30/2008 |
| Time: | 06-10 am |
| Run by: | pdonahue |

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | | Sedol Number | Due Date | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | Local Price CCY | |
| Trade Status | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

**Account No:  NML01          Account Name:    NML CAPITAL,LTD**

**Depot:  ECLEAR:NML CAPITAL LIMITED**

| Trade Type / status | ISIN / Sedol / Broker | Description | Due / Settled Date | Units / Cash |
|---|---|---|---|---|
| Receive Against Payment | | ARGENTINA(REPUBLIC OF) 11.375% BDS 30/1/2017 USD1000 | | 2,500,000.00 |
| 702485013 | US040114AR16   5188882 | | 06/30/2008 | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | | 06/30/2008 | 0.0000 USD |
| Settled | | | | 0.00 USD |
| TRADE SETTLED | 90014 : | | | 0.00 USD |

JPMorgan

PAGE    3
Run Date:    JUL 07, 2008
Time:    08-52 am
Statement Date:    07/07/2008
Time:    08-10 am
Run by:    jharvin

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | Sedol Number | | Due Date | | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | | Local Price CCY | Outstanding Local CCY |
| Trade Status | | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | | Base Value CCY | Outstanding Base CCY |

Account No:  NML01          Account Name:      NML CAPITAL,LTD

Depot:   ECLEAR:NML CAPITAL LIMITED

| | | | | | |
|---|---|---|---|---|---|
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 11.75% NOTES 7/4/2009 USD1000 | | | 100,000.00 | |
| 702516609 | US040114BE93 | 5660197 | 07/07/2008 | | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | | 07/07/2008 | 0.0000 USD | |
| Settled | | | | 0.00 USD | |
| TRADE SETTLED | 92436 : | | | 0.00 USD | |
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 11.375% BDS 15/3/2010 USD1000 | | | 260,000.00 | |
| 702516608 | US040114FC91 | 5922262 | 07/07/2008 | | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | | 07/07/2008 | 0.0000 USD | |
| Settled | | | | 0.00 USD | |
| TRADE SETTLED | 92436 : | | | 0.00 USD | |
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 11.00% BDS 09/10/06 USD1000 | | | 225,000.00 | |
| 702516610 | US040114AN02 | A003749 | 07/07/2008 | | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | | 07/07/2008 | 0.0000 USD | |
| Settled | | | | 0.00 USD | |
| TRADE SETTLED | 92436 : | | | 0.00 USD | |
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 9.75% BDS 19/9/2027 USD1000 | | | 600,000.00 | |
| 702516606 | US040114AV28 | A026715 | 07/07/2008 | | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | | 07/07/2008 | 0.0000 USD | |
| Settled | | | | 0.00 USD | |
| TRADE SETTLED | 92436 : | | | 0.00 USD | |

**JPMorgan**

| | |
|---|---|
| Run Date: | PAGE     3 |
| Time: | JUL 08, 2008 |
| Statement Date: | 09-15 am |
| Time: | 07/08/2008 |
| Run by: | 09-08 am |
| | pdonahue |

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | Sedol Number | | Due Date | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | Local Price CCY | |
| Trade Status | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

| Account No: NML01 | Account Name: | NML CAPITAL,LTD |
|---|---|---|

Depot: ECLEAR:NML CAPITAL LIMITED

| Receive Against Payment | | ARGENTINA(REPUBLIC OF) 11.75% NOTES 7/4/2009 USD1000 | | | 690,000.00 | |
|---|---|---|---|---|---|---|
| 702517338 | US040114BE93 | 5660197 | | 07/08/2008 | | |
| NONE | | EUROCLEAR BRUSSELS MGTCBEBE | | 07/08/2008 | 0.0000 USD | |
| Settled | | | | | 0.00 USD | |
| TRADE SETTLED | 92436 : | | | | 0.00 USD | |

JPMorgan

PAGE    4
Run Date:    JUL 10, 2008
Time:    10-30 am
Statement Date:    07/10/2008
Time:    10-14 am
Run by:    jharvin

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | | Sedol Number | | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Due Date | Local Price CCY | |
| Trade Status | | | | Settled Date | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

**Account No:  NML01**          **Account Name:    NML CAPITAL,LTD**

**Depot:  ECLEAR:NML CAPITAL LIMITED**

| Receive Against Payment | | ARGENTINA(REPUBLIC OF) 11.75% NOTES 7/4/2009 USD1000 | | | 5,000,000.00 | |
|---|---|---|---|---|---|---|
| 702535751 | US040114BE93 | 5660197 | | 07/10/2008 | | |
| NONE | | EUROCLEAR BRUSSELS MGTCBEBE | | 07/10/2008 | 0.0000 USD | |
| Settled | | | | | 0.00 USD | |
| TRADE SETTLED | 90014 : | | | | 0.00 USD | |

**JPMorgan**

| | |
|---|---|
| Run Date: | JUL 14, 2008 |
| Time: | 10-20 am |
| Statement Date: | 07/14/2008 |
| Time: | 10-08 am |
| Run by: | jharvin |

PAGE    3

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | | Sedol Number | Due Date | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | Local Price CCY | |
| Trade Status | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

**Account No:** NML01          **Account Name:**     NML CAPITAL,LTD

**Depot:** ECLEAR:NML CAPITAL LIMITED

| | | | | | |
|---|---|---|---|---|---|
| Receive Against Payment | | ARGENTINA(REPUBLIC OF) 11.75% NOTES 7/4/2009 USD1000 | | 500,000.00 | |
| 702559019 | US040114BE93 | 5660197 | 07/14/2008 | | |
| NONE | | EUROCLEAR BRUSSELS MGTCBEBE | 07/14/2008 | | 0.0000 USD |
| Settled | | | | | 0.00 USD |
| TRADE SETTLED | 92436 : | | | | 0.00 USD |
| Receive Against Payment | | ARGENTINA(REPUBLIC OF) 12.375% BDS 21/2/2012 USD1000 | | 500,000.00 | |
| 702559013 | US040114GD65 | A020635 | 07/14/2008 | | |
| NONE | | EUROCLEAR BRUSSELS MGTCBEBE | 07/14/2008 | | 0.0000 USD |
| Settled | | | | | 0.00 USD |
| TRADE SETTLED | 92436 : | | | | 0.00 USD |

**JPMorgan**

<table>
<tr><td></td><td>PAGE    3</td></tr>
<tr><td>Run Date:</td><td>JUL 15, 2008</td></tr>
<tr><td>Time:</td><td>01-45 pm</td></tr>
<tr><td>Statement Date:</td><td>07/15/2008</td></tr>
<tr><td>Time:</td><td>01-12 pm</td></tr>
<tr><td>Run by:</td><td>jharvin</td></tr>
</table>

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | Sedol Number | | Due Date | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | Local Price CCY | |
| Trade Status | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

**Account No:  NML01          Account Name:    NML CAPITAL,LTD**

**Depot:  ECLEAR:NML CAPITAL LIMITED**

| | | | | |
|---|---|---|---|---|
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 11.375% BDS 30/1/2017 USD1000 | | | 8,000,000.00 |
| 702560161 | US040114AR16    5188882 | | 07/15/2008 | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | | 07/15/2008 | 0.0000 USD |
| Settled | | | | 0.00 USD |
| TRADE SETTLED      90014 : | | | | 0.00 USD |
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 9.75% BDS 19/9/2027 USD1000 | | | 1,000,000.00 |
| 702559017 | US040114AV28    A026715 | | 07/14/2008 | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | | 07/15/2008 | 0.0000 USD |
| Settled | | | | 0.00 USD |
| TRADE SETTLED      92436 : | | | | 0.00 USD |

JPMorgan

PAGE    3
Run Date:    JUL 16, 2008
Time:    01-38 pm
Statement Date:    07/16/2008
Time:    01-07 pm
Run by:    jharvin

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | Sedol Number | | Due Date | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | Local Price CCY | |
| Trade Status | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

Account No:  NML01          Account Name:    NML CAPITAL,LTD

Depot:  ECLEAR:NML CAPITAL LIMITED

| | | | | | |
|---|---|---|---|---|---|
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 12% BDS 01/02/2020 USD1000 | | | | 1,100,000.00 |
| 702560160 | US040114FB19 | 2541091 | | 07/15/2008 | |
| NONE | MERRILL LYNCH ECL | | | 07/16/2008 | 0.0000 USD |
| Settled | | | | | 0.00 USD |
| TRADE SETTLED | 96565 : | | | | 0.00 USD |

**JPMorgan**

PAGE    3
Run Date:    JUL 17, 2008
Time:    01-13 pm
Statement Date:    07/17/2008
Time:    01-09 pm
Run by:    jharvin

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | | Sedol Number | Due Date | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | Local Price CCY | |
| Trade Status | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

**Account No:  NML01          Account Name:    NML CAPITAL,LTD**

**Depot:  ECLEAR:NML CAPITAL LIMITED**

| Receive Against Payment | ARGENTINA(REPUBLIC OF) 9.75% BDS 19/9/2027 USD1000 | | 2,000,000.00 |
|---|---|---|---|
| 702516607 | US040114AV28    A026715 | 07/07/2008 | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | 07/17/2008 | 0.0000 USD |
| Settled | | | 0.00 USD |
| TRADE SETTLED | 90014 : | | 0.00 USD |

**JPMorgan**

| | |
|---|---|
| | PAGE       2 |
| Run Date: | JUL 18, 2008 |
| Time: | 01-08 pm |
| Statement Date: | 07/18/2008 |
| Time: | 12-15 pm |
| Run by: | jharvin |

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | Sedol Number | | Due Date | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | Local Price CCY | |
| Trade Status | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

**Account No: NML01        Account Name:    NML CAPITAL,LTD**

**Depot:  ECLEAR:NML CAPITAL LIMITED**

| | | | | | |
|---|---|---|---|---|---|
| Receive Against Payment | | ARGENTINA(REPUBLIC OF) 11.375% BDS 30/1/2017 USD1000 | | 15,655,000.00 | |
| 702566822 | US040114AR16 | 5188882 | 07/15/2008 | | |
| NONE | | MERRILL LYNCH ECL | 07/18/2008 | 0.0000 USD | |
| Settled | | | | 0.00 USD | |
| TRADE SETTLED | 96565 : | | | 0.00 USD | |

JPMorgan

| | |
|---|---|
| | PAGE 2 |
| Run Date: | JUL 21, 2008 |
| Time: | 10-17 am |
| Statement Date: | 07/21/2008 |
| Time: | 10-08 am |
| Run by: | pdonahue |

## Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | | Sedol Number | | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Due Date | Local Price CCY | |
| Trade Status | | | | Settled Date | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

**Account No: NML01**      **Account Name:**   **NML CAPITAL,LTD**

**Depot:  ECLEAR:NML CAPITAL LIMITED**

| | | | | | |
|---|---|---|---|---|---|
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 11.375% BDS 15/3/2010 USD1000 | | | 10,000,000.00 | |
| 702588147 | US040114FC91 | 5922262 | 07/21/2008 | | |
| NONE | MERRILL LYNCH ECL | | 07/21/2008 | 0.0000 USD | |
| Settled | | | | 0.00 USD | |
| TRADE SETTLED | 96565 : | | | 0.00 USD | |
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 9.75% BDS 19/9/2027 USD1000 | | | 1,950,000.00 | |
| 702596029 | US040114AV28 | A026715 | 07/21/2008 | | |
| NONE | MERRILL LYNCH ECL | | 07/21/2008 | 0.0000 USD | |
| Settled | | | | 0.00 USD | |
| TRADE SETTLED | 96565 : | | | 0.00 USD | |

**JPMorgan**

PAGE    2
Run Date:    JUL 24, 2008
Time:    05-44 pm
Statement Date:    07/24/2008
Time:    03-08 pm
Run by:    jharvin

### Consolidated Settlement ITD Report

| Trade Type | | Security Description | | | Units | Outstanding Units |
|---|---|---|---|---|---|---|
| Chase Message ID | ISIN | | Sedol Number | Due Date | Cash CCY | Outstanding Cash CCY |
| Client Trade Ref. | Broker | | | Settled Date | Local Price CCY | |
| Trade Status | | | | | Market Value CCY | Outstanding Local CCY |
| Fail Description | | | | | Base Value CCY | Outstanding Base CCY |

**Account No:** NML01    **Account Name:** NML CAPITAL,LTD

**Depot:** ECLEAR:NML CAPITAL LIMITED

| Receive Against Payment | ARGENTINA(REPUBLIC OF) 11.75% NOTES 7/4/2009 USD1000 | | 5,000,000.00 |
|---|---|---|---|
| 702604417 | US040114BE93    5860197 | 07/22/2008 | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | 07/24/2008 | 0.0000 USD |
| Settled | | | 0.00 USD |
| TRADE SETTLED | 91448 : | | 0.00 USD |
| Receive Against Payment | ARGENTINA(REPUBLIC OF) 12.375% BDS 21/2/2012 USD1000 | | 10,000,000.00 |
| 702613879 | US040114GD65    A020635 | 07/24/2008 | |
| NONE | EUROCLEAR BRUSSELS MGTCBEBE | 07/24/2008 | 0.0000 USD |
| Settled | | | 0.00 USD |
| TRADE SETTLED | 91448 : | | 0.00 USD |