UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

NML CAPITAL, LTD.,

                        Plaintiff,

               - against -

THE REPUBLIC OF ARGENTINA,

                      Defendant.

------------------------------------------------------------------ X

|  |
|---|
| 03 Civ. 8845 (TPG) |
| 05 Civ. 2434 (TPG) |
| 06 Civ. 6466 (TPG) |
| 07 Civ. 1910 (TPG) |
| 07 Civ. 2690 (TPG) |
| 07 Civ. 6563 (TPG) |
| 08 Civ. 2541 (TPG) |
| 08 Civ. 3302 (TPG) |
| 08 Civ. 6978 (TPG) |

**MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN OPPOSITION TO NML CAPITAL LTD.'S MOTIONS TO COMPEL RESPONSES TO SUBPOENAS**

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

Of Counsel:

Jonathan I. Blackman
Carmine D. Boccuzzi
Christopher P. Moore

Defendant the Republic of Argentina ("the Republic") submits this omnibus Memorandum of Law in opposition to the motions of plaintiff NML Capital, Ltd. ("NML") to compel Barclays Bank PLC, Deutsche Bank AG, and Citigroup, Inc. (the "Banks") to respond to subpoenas (collectively, the "Subpoenas") served on March 27, 2009.[1]

## BACKGROUND

Relying heavily on a collection of hearsay newspaper articles, NML insists that it is entitled to extraordinarily broad discovery against third parties Barclays Bank PLC, Deutsche Bank AG, and Citigroup, Inc. concerning <u>any</u> hypothetical exchange offer contemplated by the Republic <u>at any time</u> after January 1, 2006. Specifically, NML seeks to compel the Banks to produce documents evidencing, <u>inter alia</u>, their alleged communications with the Republic about any potential exchange offer, the structure and terms of any such exchange offer, the roles of the Banks, communications with the SEC concerning any exchange offer, and communications with potential participants. <u>See</u> <u>e.g.,</u> Ex. A to Decl. of William B. Mack In Support of Motion to Compel Citigroup, Inc., dated Sept. 22, 2009 ("Mack Decl."), at 7-8. NML's purported justification for these Subpoenas – namely, that it is entitled to intrusive discovery concerning possible assets of the Republic that would not be created until some future date through future issuance of debt, because such a hypothetical transaction "may" involve attachable property – raises no plausible basis for discovery under the FSIA.

The press articles cited by NML speculate about an exchange offer to be conducted by the Republic at some future point. Nothing in the articles even remotely refers to

---

[1]    The Republic responds to the motions to compel against each of the three Banks in this single opposition memorandum. Citations to NML's brief in support of the motions to compel correspond to the Memorandum of NML in Support of Motion to Compel Barclays Bank PLC to Respond to Subpoena, dated Sept. 22, 2009 ("NML Mem."), which is substantially similar to the memoranda concerning subpoenas directed to Deutsche Bank AG and Citigroup, Inc.

property subject to execution under the FSIA, namely, (i) property of the sovereign debtor that is

(ii) located within the United States and (iii) used for a commercial activity in the United States.

See 28 U.S.C. § 1610(a).  Plainly not aimed at identifying executable assets, these motions to

compel are a fishing expedition aimed at disrupting the Republic's efforts to assess solutions to

its debt crisis, just as NML previously tried to interfere with the Republic's exchange offer in

2005.  The Republic has not announced an exchange offer, made filings required under U.S.

securities laws for such an offer, or legally authorized the hiring of advisors for a debt exchange

or the issuance of new debt in exchange for non-performing debt.  In this context, it is therefore

unsurprising that NML has not identified property of the Republic used for commercial activity

in the United States to which this discovery could relate.  Accordingly, no basis exists for the

demanded discovery.[2]

NML's discovery requests are also foreclosed by securities regulations.  U.S.

securities laws and comparable laws in other countries forbid the selective disclosure of material

information.  In this case, in which the Republic is evaluating options for debt management,

allowing discovery would essentially either chill the country's ability to have a private

evaluation of its debt program, or else force it to perform such an evaluation publicly in front of

the entire market.  This would create other problems relating to publicity of securities offerings.

NML is not entitled to create such disruption, nor can it establish that it would suffer prejudice of

---

[2] Other plaintiffs have similarly sought discovery against third parties regarding potential future exchange offers, but the Court has never ordered such sweeping discovery.  In May 2006, plaintiff EM, Ltd. ("EM") moved for an order enabling it to seek documents from and take a deposition of an employee of Barclays Capital, Inc. on the theory that Barclays might have some role in a potential future exchange offer of the Republic.  The Republic objected to EM's motion, which was similarly grounded in inaccurate press reports.  On the eve of the court hearing on the discovery motion, EM withdrew its requests for discovery, tacitly admitting that the discovery requests had no legal basis.  See Hr'g Tr., May 1, 2007, EM Ltd. v. Republic of Argentina, 03 Civ. 2507 (TPG) at 3.

2

any kind if it were required simply to wait for the public disclosure of any ultimate deal like any other creditor.

## ARGUMENT

### THE SUBPOENAS EXCEED FSIA LIMITATIONS ON POST-JUDGMENT DISCOVERY BECAUSE THEY SEEK INFORMATION ABOUT ASSETS THAT DO NOT EXIST OR ARE NOT ATTACHABLE

The discovery sought by NML has no basis in law, since it seeks information about property that is not in existence and not located within the United States. As this Court and every other court has repeatedly recognized, execution under the FSIA is limited to property of a foreign state that is both "in the United States" and "used for a commercial activity in the United States." 28 U.S.C. § 1610(a). Any other property of the foreign state is immune from execution. See 28 U.S.C. § 1609; EM Ltd. v. The Republic of Argentina, 473 F.3d 463, 481 (2d. Cir. 2007) (quoting 28 U.S.C. § 1609 to state that "[t]he FSIA explicitly protects all property in the United States of a foreign state . . . from attachment arrest and execution except as provided in 28 U.S.C. §§ 1610 & 1611.") (internal quotation omitted); Letelier v. Republic of Chile, 748 F.2d 790, 793 (2d Cir. 1984) ("[U]nder § 1609 foreign states are immune from execution upon judgments obtained against them, unless an exception set forth in §§ 1610 or 1611 of the FSIA applies.").

Courts have understood that the scope of execution under the FSIA determines the scope of execution-related discovery, which is accordingly limited to facts necessary to resolve a colorable question of whether property belongs to the Republic, is located in the United States and is used for commercial activity in the United States. The Second Circuit has instructed that, "in the FSIA context, 'discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination.'" EM Ltd., 473 F.3d at 486 (quoting First

3

City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 176 (2d Cir. 1998) and Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 534 (5th Cir. 1992)); First City Tex. Houston N.A. v. Rafidain Bank, 281 F.3d 48, 53-54 (2d Cir. 2002) (holding that a state is subject to post-judgment asset discovery "to the extent those procedures and responsibilities are related to its commercial activities in the United States"); accord Butler v. Sukhoi Co., -- F.3d --, 2009 WL 2514088, at *4-*5 (11th Cir. Aug. 19, 2009) (holding that district court abused discretion in ordering discovery when there was no prima facie case for jurisdiction under the FSIA); Rubin v. Islamic Republic of Iran, 349 F. Supp. 2d 1108, 1112 (N.D. Ill. 2004) (denying plaintiffs' discovery requests on the ground that the requests were not relevant to the subject matter of the action, which was "determined by the FSIA" to concern only a "foreign sovereign's property . . . used by the foreign sovereign in the United States for commercial purposes").

The Subpoenas, in seeking information regarding possible future exchange offers, by definition do not seek any information involving any property of the Republic that currently exists, much less information regarding property of the Republic located in the United States and used for a commercial purpose in the United States.[3] No exchange offer has even been announced by the Republic, see Mack Decl. Ex. G.3 (Bloomberg article noting that no Argentine decree authorizing an exchange offer has been enacted, although one "may issue" in the future),

---

[3] To the extent that the subpoenas seek information regarding past exchange offers taking place since 2006, they similarly seek discovery about a null set. As all parties are well aware, no exchange offer involving securities the Republic defaulted on in 2001 has occurred since 2006. Information regarding a non-existent past exchange offer does not relate to property of any kind, let alone property in the United States used for a commercial purpose in the United States.

and NML thus unsurprisingly is unable to describe any property about which it can even arguably claim a right to information.[4]

Of course, what NML may really be trying to achieve is a replay of its attempt to disrupt a future exchange offer, much as it tried unsuccessfully to do in 2005, or to deter the Republic from ever making one (while at the same time, continually insulting the Republic for not paying its debts, when NML knows perfectly well that the Republic lacks the resources to pay those debts in full without plunging itself back into the financial catastrophe it faced at the end of 2001 that led to its default in the first place.)  See NML Capital, Ltd. v. Republic of Argentina, No. 02 Civ. 3804, 2005 WL 743086 (S.D.N.Y. Mar. 31, 2005) at *1; aff'd sub. nom. EM Ltd. v. Republic of Argentina, 131 Fed. App'x 745, 746 (2d Cir. 2005).  But even NML's failed attempt to disrupt the 2005 exchange offer was based on public disclosures of an actual deal, not on non-public information given to NML ahead of the market.

There is no basis in law giving NML, or any other creditor, for such a preview. Any information about future debt offerings will be announced by the Republic at the appropriate time in compliance with the applicable laws.  NML's desire for advance disclosure of alleged future debt offerings, in an exchange offer or otherwise, would be an unwarranted and legally unprecedented intrusion into the financial decision-making processes of a sovereign state. Indeed, to the extent that the Banks or any of its present or former employees have information about the Republic's future financial plans, disclosure of such non-public information to NML – which actively trades in defaulted Republic debt – could raise significant concerns under the U.S.

---

[4]    Despite being informed by Citigroup, Inc. that Citigroup "has *not* been retained by the Republic of Argentina with respect to any Exchange Offer at any time after January 1, 2006," Mack Decl. Ex. H (emphasis in original), NML demands production of documents.  Does NML suggest that Citigroup is not telling the truth?  If not, then it is hard to see the purpose of NML's discovery other than simple harassment.

5

securities laws, including under Section 10(b) of the 1934 Securities Exchange Act.  See 15 U.S.C. § 78j(b).

The Court has dealt with requests for discovery of this sort earlier in these cases. In Capital Ventures International v. Republic of Argentina, 05 Civ. 4085 (TPG), 06 Civ. 207 (TPG), the plaintiff ("CVI") demanded discovery about future debt repurchases by the Republic. The Court resolved this demand by ordering the Republic to provide CVI promptly with publicly available information about announcements of such repurchases outside Argentina; it did not require the Republic to divulge discussions about possible future plans that had not resulted in public announcements.  This amply protected any legitimate interest of CVI, since no public debt exchange can be made without public filings under the securities laws with the SEC and other national securities regulators, just as the 2005 exchange offer was publicly filed.  In a similar vein, the Court summarily denied EM's and NML's unprecedented request for an injunction requiring the Republic, without regard to the securities laws, to give them advance notice of future securities offerings.  See Hr'g Tr., May 1, 2007, EM Ltd. v. Republic of Argentina, 03 Civ. 2507 (TPG) at 6 (an order "by the Court to give [advance] notice is not within any framework I know about discovery.  It just isn't.").

The Court should follow the same course here.  NML will receive public information about any future debt exchange:  it is not entitled to insider information about securities offerings before they are publicly announced.

## CONCLUSION

For the foregoing reasons, NML's motions to compel should be denied.

Dated:   New York, New York
         October 9, 2009

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:_____
       Jonathan I. Blackman (jblackman@cgsh.com)
       Carmine D. Boccuzzi (cboccuzzi@cgsh.com)
       Christopher P. Moore (cmoore@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

7