UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

| | | |
|---|---|---|
| NML CAPITAL, LTD., | : | 03 Civ. 8845 (TPG) |
| | : | 05 Civ. 2434 (TPG) |
| Plaintiff, | : | 06 Civ. 6466 (TPG) |
| | : | 07 Civ. 2690 (TPG) |
| - against - | : | 07 Civ. 1910 (TPG) |
| | : | 07 Civ. 6563 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | 08 Civ. 2541 (TPG) |
| | : | 08 Civ. 3302 (TPG) |
| Defendant. | : | 08 Civ. 6978 (TPG) |

--------------------------------------------------------------- x

## MEMORANDUM OF LAW OF NON-PARTY CITIGROUP, INC. IN OPPOSITION TO NML CAPITAL, LTD.'S MOTION TO COMPEL <u>NON-PARTY CITIGROUP, INC. TO RESPOND TO SUBPOENA</u>

**DAVIS WRIGHT TREMAINE LLP**
**1633 Broadway**
**New York, New York 10019**
**(212) 489-8230**

**Attorneys for Non-Party Citigroup, Inc.**

Non-party Citibank, N.A. submits this Memorandum of Law in opposition to the motion of plaintiff NML Capital, Ltd. ("NML") to compel non-party Citigroup, Inc. ("Citi") to respond to a subpoena *duces tecum*, dated March 27, 2009 (the "Subpoena").[1]

## PRELIMINARY STATEMENT

Based on its status as a judgment creditor of the Republic of Argentina (the "Republic"), NML brings this motion to compel discovery of documents from non-parties concerning a future issuance of debt that may be offered by the Republic, in the form of an exchange offer, which "may" involve attachable property. Citi made clear to NML's counsel months ago that it had *not* been retained by the Republic in connection with any such exchange offer and, to the extent Citi had made "presentations" to the Republic in the past about restructuring its debt, that information would hardly be relevant to NML's enforcement actions since it does not relate to property of any kind, let alone property that can be attached to satisfy NML's judgments. Citi heard nothing from NML regarding the Subpoena until the filing of the instant motion.

To the extent that NML is presently focused on a future exchange offer that may be offered by the Republic – as reported in the press – such a transaction has neither been structured nor publicly disclosed to the market and other holders of the Republic's sovereign debt, including NML. In any event, information regarding a future debt exchange or the issuance of new debt in exchange for non-performing debt is, as this Court has previously held, of no relevance since NML would be precluded from attaching any assets of the Republic that would result from a possible exchange offer. *NML Capital, Ltd. v. Republic of Argentina*, No. 02 Civ. 3804, 2005 WL 743086 (S.D.N.Y. Mar. 31, 2005), *aff'd sub nom., EM Ltd. v. Republic of*

---

[1] Although NML purports to bring its motion pursuant to Fed. R. Civ. P. 30, for depositions, (*see* NML Notice of Motion; NML Mem. at 1), the Subpoena only seeks documents. (*See* Declaration of William B. Mack in support of NML's motion to compel, dated September 22, 2009 ("Mack Decl."), Ex. A, Attachment A, at 7-8.)

*Argentina*, 131 Fed. Appx. 745 (2d Cir. 2005). NML offers no justification for its entitlement to the information sought in its Subpoena, and brings this Motion simply to ensure that it obtains advance and preferential notice of any future debt repurchases by the Republic. The federal rules do not sanction this type of discovery, and the Court should not hesitate to protect a non-party from inappropriate discovery demands.

NML's motion should be denied on the further ground that it was filed without requesting a pre-motion conference as required by the Court's rules. *See* Local Civil Rule 37.2; Judge Griesa's Individual Practices, ¶ 2.A.

## FACTS

Pursuant to the Subpoena, NML seeks discovery of a broad array of documents "concerning any Exchange Offer at any time after January 1, 2006" contemplated by the Republic. (Mack Decl., Ex. A, Attachment A, at 7.) "Exchange Offer" is defined in the Subpoena as "any actual, proposed or contemplated transaction in connection with which beneficial interests in Defaulted Bonds would or could be exchanged, directly or indirectly, in whole or in part, for other Securities issued by or on behalf of Argentina." (*Id.* at 2.)

Following receipt of the Subpoena, Citi served its objections and responses to the Subpoena. In addition, Citi's outside counsel followed up with a letter dated June 26, 2009 advising NML that at that time Citi "has *not* been retained by the Republic of Argentina with respect to any Exchange Offer at any time after January 1, 2006" (the "June 26 Letter"). A copy of the letter is annexed to the Mack Decl. as Exhibit H; *see also* NML Mem. at 6-7; Declaration of Sharon L. Schneier, dated October 9, 2009 ("Schneier Decl."), ¶ 4, Ex. 1. Citi heard nothing further from NML regarding the Subpoena (or this matter) until nearly three months later when NML moved to compel Citi to comply with the Subpoena. (Schneier Decl. ¶ 5.) NML's purported justification for this motion is media reports that Citi, and others, have been

2

negotiating with the Republic concerning a possible exchange offer. (*See* NML Mem. at 1-2, 4-5.) It is undisputed that the details or structure of any potential Exchange Offer have not been announced by the Republic to its bondholders, and that consistent with Citi's normal business practices it has not made, and would not make, documents or information concerning a possible "Exchange Offer" public until it is finalized and announced in the marketplace. (Schneier Decl. ¶¶ 5-6.)

## ARGUMENT

### I.  NML'S MOTION TO COMPEL SHOULD BE DENIED SINCE NML DID NOT REQUEST A COURT CONFERENCE PRIOR TO FILING ITS MOTION

As an initial matter, NML's motion should be denied since it was filed without first requesting a conference with the Court. *See* Local Civil Rule 37.2 ("no motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure *shall* be heard unless counsel for the moving party has first requested an informal conference with the court . . . .") (emphasis added); Judge Griesa Individual Practice ¶ 2.A ("For discovery motions, follow Local Civil Rule 37.2.").[2]

Failure to request a discovery conference mandates denial of NML's motion. For example, in *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 152 (S.D.N.Y. 2003), in a case involving a motion to compel production of various documents and of a witness for deposition, Judge Koeltl noted that "failure to request such a conference requires that any motion based on the alleged failure to be given documents . . . be denied." *See also Masters v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911, 2003 WL 21089073, at *1 (S.D.N.Y. May 13,

---

[2] In a similar vein, denial of NML's motion is warranted for failure to certify that it "in good faith conferred or attempted to confer" with Citi prior to making the motion, as required by Fed. R. Civ. P. 37(a)(1). Indeed, NML could not have made this prerequisite certification, as it never even communicated with Citi regarding the Subpoena after the June 26 Letter. (*See* Schneier Decl. ¶ 5.)

3

2003) (denying motion to compel where, "since the dispute is, in essence, a discovery dispute, [the moving parties] were obligated by Local Civil Rule 37.2 to first request an informal conference to resolve the dispute"). The requirement to request a pre-motion conference applies equally to non-party subpoenas. Thus, in *Dodson v. CBS Broadcasting Inc.*, No. 02 Civ. 9270, 2005 WL 3177723, at *2 (S.D.N.Y. Nov. 29, 2005), the Court, in denying a motion to enforce a subpoena, found the motion "procedurally defective" for failure to request a pre-motion conference under Local Civil Rule 37.2 and the judge's individual rules of practice.

NML's failure to seek a conference with the Court prior to filing its motion mandates its denial.

## II. THE DISCOVERY SOUGHT IS NEITHER RELEVANT NOR CALCULATED TO LEAD TO DISCOVERABLE EVIDENCE SINCE IT CONCERNS AN EXCHANGE OFFER THAT DOES NOT YET EXIST AND IS THEREFORE IRRELEVANT TO THE LOCATION OF REPUBLIC ASSETS

NML seeks documents concerning any "actual, proposed or contemplated" exchange offer. (Mack Decl. Ex. A, Attachment A, at 7.) NML claims that such documents are relevant to NML's efforts to enforce its judgments against the Republic because documents concerning even a proposed or contemplated exchange offer will help NML locate Republic assets (*see* NML Mem. at 2), which "will at some point pass through the United States, or another country where NML is able to collect the money Argentina owes it ...." (NML Mem. at 10; *see also id.* at 5 ("it is possible" that NML may be able to attach Republic assets).) The speculative nature of NML's discovery is evident and should not be sanctioned by the Court.

Documents concerning a merely "proposed or contemplated" exchange offer can hardly be deemed relevant to NML's efforts to collect on its judgments. To the extent that the Republic has recently been exploring transactions potentially involving assets of the Republic that would not be created until some future date through a future issuance of debt, such a transaction –

4

which is unstructured and not public – raises no plausible basis for discovery.[3] Indeed, even *if* an exchange offer were to materialize, and even *if* the Republic were to acquire assets as a result of the transaction, NML would not be entitled to attach those assets, following this Court's previous ruling in litigation between NML and the Republic vacating similar such attachments. *See NML Capital*, 2005 WL 743086, at *3.

This Court has previously ruled in connection with the Republic's 2005 Exchange Offer that NML could not attach the bonds that the Republic had defaulted on, and which were the property of the bondholders, in anticipation of those bonds being transferred to the Republic under the terms of that exchange offer. *Id.* at *1-*3. The Court held that, although the bonds would become the property of the Republic upon the closing of the exchange offer, the attachments nevertheless "would, if allowed to stand, negate the very contractual obligations which are cited as a basis for the attachments." *Id.* at *3. Thus, NML's assertion that the documents sought by the Subpoena are "relevant to NML's enforcement efforts because any property of Argentina involved in a renewed exchange offer or similar transaction is potentially subject to seizure by NML in satisfaction of its judgment and anticipated judgments against Argentina" (NML Mem. at 2), is wholly at odds with the Court's prior ruling.

Consistent with Citi's normal business practices, it has not made, and would not make, documents or information concerning a possible "Exchange Offer" public until it is finalized and announced in the marketplace. The unfairness of NML's proposal – that it be advised of a potential or contemplated transaction before it is disclosed so that it can use that "discovery" to

---

[3] To the extent that NML continues to press for documents that pre-date Citi's response to the Subpoena, the relevance of such documents, which related to potential concepts for transactions, is tenuous at best. *See Kingsway Fin'l Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560, 2007 WL 473726, at *3 (S.D.N.Y. Feb. 14, 2007) (in denying motion to compel, holding that portions of documents related to "non-consummated acquisitions contemplated by [non-moving party] are not relevant to this litigation").

DWT 13401814v3 0067486-000014

its advantage – as well as the potentially disruptive effect that such selective and premature disclosure could have on any possible exchange offer, is evident.

Finally, the cases that NML relies on aid its argument not at all. (*See* NML Mem. at 8-9.) Those cases involve a judgment creditor's right to discovery of concealed or transferred assets, *i.e.*, assets that currently exist and belong to the judgment debtor, who is frustrating the efforts of the judgment creditor to locate them.[4] Here, the discovery sought by NML relates to assets that do not belong to the Republic, may never belong to the Republic, and are not attachable by NML even if they did.

In sum, the discovery sought by NML has no basis in law, and NML's motion to compel documents concerning a "hypothetical" and potential debt exchange should be denied.

## III.   THE UNDUE BURDEN ON CITI OUTWEIGHS ANY RELEVANCE THE REQUESTED DOCUMENTS MIGHT HAVE

In support of its motion, NML essentially argues that the Court has endorsed sweeping discovery, even of non-parties, based on nothing more than speculation and without consideration of relevancy. Non-parties are protected from this type of baseless discovery. Fed. R. Civ. P. 26(b)(2)(c)(i) requires the court to limit discovery if it determines that "the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive." Moreover, Fed. R. Civ. P. 45, whose "objective is to protect a [non-party] person subject to or affected by a subpoena," "requires district judges to quash or modify a

---

[4] *Costamar Shipping Co., Ltd. v. Kim-Sail, Ltd.*, No. 95 Civ. 3349, 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995), involved a judgment creditor's right to discovery relating to the "bona fides of the transfer of assets between" the judgment debtor and the non-party to which the subpoena was issued. In *D'Avenza S.p.A. In Bankruptcy v. Garrick & Co., Ltd.*, No. 96 Civ. 166, 1998 WL 13844, at *3 (S.D.N.Y. Jan. 15, 1998), which involved allegedly concealed assets, the Court limited plaintiff's requests to information reasonably related to locating the judgment debtor's assets, noting that plaintiff may not "embark on a fishing expedition." And *Jacobson v. Moller & Moller, Inc.*, No. 02 Civ. 6316, 2007 WL 1989260, at *1 (E.D.N.Y. July 5, 2007,) specifically notes that discovery of the non-party "should be tailored to the search for the debtor's hidden assets."

6

subpoena deemed to impose undue burden or expense on anyone subject to the subpoena." *See* 9A Charles A. Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 2463.1 (3d ed. 2008). Indeed, where discovery is sought from non-parties, "the Court must weigh the probative value of the information against the burden of production on said non-parties." *In re Biovail Corp. Secs. Lit.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) (denying motion to compel compliance with subpoenas where "the requested discovery is unnecessary and irrelevant, and production would be a wholly improper high burden on the non-parties"). Under this analysis the Court must consider, *inter alia*, the relevance of and need for the information sought. *See In re Biovail Corp. Secs. Lit.*, 247 F.R.D. at 75; *Johnson v. Bryco Arms*, 226 F.R.D. 441, 446 (E.D.N.Y. 2005) (quashing subpoena where requested information was not necessary to issuing parties' claims or defenses). NML can hardly establish, as it must, that the requested discovery is probative of, or relevant to, the location of Republic assets and enforcement of its judgments. To the contrary, the circumstances presented here – a hypothetical debt exchange that does not involve attachable property – is far outside the bounds of relevancy.[5]

Moreover, any documents that Citi might have that would be responsive to the Subpoena are highly confidential and proprietary. (Schneier Decl. ¶ 6.) NML is certainly not entitled to Citi's proprietary commercial information. *See Sommer v. Aronow*, No. 95 Civ. 9230, 1996 WL 399820, at *4 (S.D.N.Y. July 16, 1996) (denying motion to compel confidential financial projections where disclosure would interfere with the ability to obtain financing for business project); *see also* Fed. R. Civ. P. 45(c)(3)(B)(i) (a subpoena may be quashed if it requires disclosure of a "trade secret or other confidential research, development, or commercial

---

[5] As noted, information regarding a non-existent past exchange offer that does not involve any property that could be attached to satisfy NML's judgment can hardly be deemed relevant.

7

information"). Disclosure of any responsive documents potentially could impact Citi's ability to conduct business with and in the Republic, and more generally in the Latin America region, as Citi's relationships with clients and prospective clients in the Republic and other countries in the region are crucial to its operations and reputation there. To do business with Citi, clients and prospective clients need to know that they can hold confidential discussions with Citi without risk of disclosure in litigation with unrelated parties. In addition, disclosure by Citi of any responsive documents could impact the ability of the Republic itself to implement an exchange offer or other transaction designed to restructure the remainder of its unsustainable debt. *See EM Ltd.*, 131 Fed. Appx. at 747.

## CONCLUSION

For the foregoing reasons, NML's motion to compel Citi to respond to the Subpoena should be denied.

Dated: New York, New York
October 9, 2009

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: *Sharon Schine*

Sharon L. Schneier
(sharonschneier@dwt.com)
Victor Hendrickson
(victorhendrickson@dwt.com)

1633 Broadway
New York, New York 10019
(212) 489-8230

*Attorneys for Non-Party Citigroup, Inc.*

8

DWT 13401814v3 0067486-000014