UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

NML CAPITAL, LTD.,

        Plaintiff,

    v.

REPUBLIC OF ARGENTINA,

        Defendant.
----------------------------------------------------------x

08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

# MEMORANDUM OF LAW IN SUPPORT OF NML CAPITAL, LTD.'S EX PARTE MOTION FOR AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE, WITH A TEMPORARY RESTRAINING ORDER

**GIBSON, DUNN & CRUTCHER LLP**
Theodore B. Olson
Matthew D. McGill
Jason J. Mendro
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500

**DECHERT LLP**
Robert A. Cohen
Charles I. Poret
1095 Avenue of the Americas
New York, NY 10036-6796
(212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*

14286841.1.LITIGATION

TABLE OF AUTHORITIES

Page(s)

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

III. ARGUMENT ..................................................................................................................... 3

    A. Argentina Should Be Prohibited From Reordering Its Affairs To Evade The Court's Authority Pending The Disposition Of The Equal Treatment Claim ...................................................................................................................... 3

        1. NML Is Likely To Succeed On The Merits Of The Equal Treatment Claim And, Indeed, Has Succeeded Already On The Issue Of Liability .............................................................................................. 4

        2. NML Would Suffer Irreparable Harm If Argentina Is Permitted To Manipulate Its Long Standing Payment Procedures While The Court Finalizes Its Decision ............................................................................. 5

        3. The Equities Overwhelmingly Favor Issuing Preliminary Relief.............. 6

        4. Maintaining The Status Quo Would Promote The Public Interest ............ 7

    B. The Court Should Grant A Temporary Restraining Order On An *Ex Parte* Basis ................................................................................................................... 8

IV. CONCLUSION .................................................................................................................. 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*BIB Constr. Co. v. Fireman's Ins. Co.*,
214 A.D.2d 521 (N.Y. App. Div. 1995) .......... 5

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010) .......... 4, 5

*EM Ltd. v. Republic of Argentina*,
720 F. Supp. 2d 273 (S.D.N.Y. 2010) .......... 9

*Flight Eng'rs' Int'l Ass'n, AFL-CIO v. Am. Airlines, Inc.*,
303 F.2d 5 (5th Cir. 1962) .......... 7

*In re Feit & Drexler, Inc.*,
760 F.2d 406 (2d Cir. 1985) .......... 5

*In re Vuitton Et Fils S.A.*,
606 F.2d 1 (2d Cir. 1979) .......... 7, 8

*Little Tor Auto Ctr. v. Exxon Co. USA*,
822 F. Supp. 141 (S.D.N.Y. 1993) .......... 8

*Von Grabe v. Ziff Davis Publ'g Co.*,
No. 91 Civ. 6275 (DLC), 1994 WL 719697 (S.D.N.Y. Dec. 29, 1994) .......... 3

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 3

**Rules**

Fed. R. Civ. P. 65 .......... 1, 8, 9

**Other Authorities**

11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2951 (3d ed. 2011) .......... 8

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, NML Capital, Ltd. respectfully moves for a temporary restraining order ("TRO") and preliminary injunction to maintain the status quo while the Court finalizes its ruling on NML's motion for summary judgment under the Equal Treatment Provision ("Equal Treatment Motion"). NML requests that the Court enter an order immediately restraining the Republic of Argentina and directing it to appear to show cause why a preliminary injunction should not issue.

## I. INTRODUCTION

Having held that Argentina repeatedly breached Paragraph 1(c) of the Fiscal Agency Agreement (the "Equal Treatment Provision" or "Provision"), the Court requested further briefing to assist it in devising the appropriate remedy for those breaches. Accordingly, drafts of the papers in support of NML's Renewed Motion for Specific Performance ("Renewed Remedy Motion") is appended as Exhibit A to the Declaration of Robert A. Cohen ("Cohen TRO Decl."). Pending the Court's disposition of the Renewed Remedy Motion, NML requests that the Court forbid Argentina from manipulating its longstanding procedures for paying other bondholders in an effort to evade the force of the Court's forthcoming decision.

Argentina could have no legitimate objection. The order would not interfere with any of Argentina's activities, except inasmuch as it intends to pursue preemptive tactics to circumvent the Court's authority.

Finally, granting provisional relief would protect the interests of the multitude of other plaintiffs with claims similar to NML's, thereby curtailing their need to lodge a series of emergency motions while the Court completes its orderly disposition of NML's Equal Treatment claim. The requested relief—which would maintain for a period of weeks a payment structure that has persisted for years—would protect their interests, as well as NML's, and would contribute to the fair and efficient resolution of this dispute.

## II.    BACKGROUND

On December 7, 2011, the Court held that Argentina breached the Equal Treatment Provision when it made payments to "Exchange Bondholders" who participated in Argentina's 2005 and 2010 "Exchange Offers," while refusing to pay NML. *See* Dec. 7 Order at 4-5. Although the Court thus resolved the issue of liability in favor of NML, the Court temporarily deferred ruling on NML's remedy in order to undertake "further consideration . . . [of] the means of enforcement." *Id.* at 5. To assist in that process, the Court instructed NML to submit a renewed motion addressed to potential remedies, so the Court could "pursue that subject promptly" and complete its resolution of the Equal Treatment Motion. Transcript of September 28, 2011 Argument ("Tr."), 46:18-19.

The instant motion for preliminary relief requests that the Court maintain the status quo while it completes its ruling on permanent relief. As the Court has noted, Argentina has proven willing to take every possible step "to evade or avoid" an order requiring it to abide by the Equal Treatment Provision. *See* Tr. 20:15-18. Now that the Court conclusively held that Argentina is liable for breaching the Provision, filing of the Renewed Remedy Motion may invite a new round of evasive tactics and even may assist Argentina in determining how it could best insulate itself from this Court's forthcoming decision. For example, the agreements governing the Exchange Bonds disclose that Argentina presently relies on agents in the United States—and has relied on these agents for many years—to disburse the discriminatory payments that now have been adjudicated unlawful as violations of the Equal Treatment Provision.[1] As further explained

---

[1] For more than half a decade, Argentina has relied upon banks and other financial intermediaries in the United States to assist it in violating the Equal Treatment Provision. For example, under the 2005 Exchange Bonds, Argentina relied upon Bank of New York and Cede & Co. to process payments to the Exchange Bondholders. Cohen TRO Decl. Ex. C ¶ 2(a) (Form of Par Bonds); *see* Cohen TRO Decl. Ex. A, Renewed Remedy Motion 7 & n.2.

in the Renewed Remedy Motion, NML seeks an order of specific performance that would have the effect of preventing Argentina's agents, including those reputable New York financial institutions that could be expected to honor the Court's ruling, from aiding in breaches of the Equal Treatment Provision. *See* Renewed Remedy Motion 8, 17. This component of the relief requested by the Renewed Remedy Motion is intended to ensure that the Court's order will be meaningful, even if Argentina itself is prepared to persist in its defiance of the law. Once advised of this approach, Argentina may attempt to restructure its longstanding payment practices in order to undermine the effectiveness of any equitable relief the Court might award.

NML thus requests that the Court temporarily restrain Argentina from manipulating the process by which it disburses payments to the Exchange Bondholders. Subject to the Court's provisional ruling, NML promptly would file the Renewed Remedy Motion and appear at a show cause hearing to state its grounds in favor of that motion and a preliminary injunction pending its resolution. This preliminary order would preserve the Court's jurisdiction pending its disposition of the Equal Treatment claim and protect the interests of other plaintiffs—all without interfering with Argentina's payments to other bondholders.

### III.   ARGUMENT

**A.   Argentina Should Be Prohibited From Reordering Its Affairs To Evade The Court's Authority Pending The Disposition Of The Equal Treatment Claim**

Courts weigh four factors in deciding whether to grant a TRO or preliminary injunction: (1) the likelihood of the movant's success on the merits; (2) the risk of irreparable harm absent equitable relief; (3) the balance of the equities; and (4) the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Von Grabe v. Ziff Davis Publ'g Co.*, No. 91 Civ. 6275 (DLC), 1994 WL 719697, at *1-2 (S.D.N.Y. Dec. 29, 1994) (same standard for granting TROs and preliminary injunctions). A movant need not show likelihood that it will

3

succeed on the merits of its claim if it can demonstrate a "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35, 37-38 (2d Cir. 2010) (internal quotation omitted) (holding that *Winter* did not displace the "serious question" standard).

All four factors weigh strongly in favor of granting preliminary relief in this case.

### 1. NML Is Likely To Succeed On The Merits Of The Equal Treatment Claim And, Indeed, Has Succeeded Already On The Issue Of Liability

NML claims that Argentina breached the Equal Treatment Provision and should be enjoined from further breaches by an order of specific performance. *See* Renewed Remedy Motion. The Court already resolved this claim in NML's favor, reserving judgment only as to the question of the appropriate remedy. In its December 7 Order, the Court conclusively held that Argentina has repeatedly breached NML's rights under the Equal Treatment Provision by making payments to the Exchange Bondholders "while persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds" (Dec. 7 Order at 4), and by enacting laws that declared that it would never give any rank to NML's payment obligations (*id.* at 5). As the Court has accurately observed, "[i]t is difficult to imagine anything would reduce the rank, reduce the equal status or simply wipe out the equal status" of NML's payment obligations under the bonds more than what Argentina has done in the present case. Tr. 8:14-15.

NML also is likely to prevail in obtaining specific performance as a remedy for Argentina's breach. As explained in NML's Renewed Remedy Motion, only equitable relief can restore NML's right to equal treatment. *See* Renewed Remedy Motion 9-11. Failure to uphold this promise through a specific enforcement order would subject NML to irreparable harm because NML would lose its bargained-for position among other creditors. That harm cannot be

4

remedied with a money judgment. *See BIB Constr. Co. v. Fireman's Ins. Co.*, 214 A.D.2d 521, 523 (N.Y. App. Div. 1995). As the Court itself observed, "if you're standing there and you want me to say [that Argentina breached the Equal Treatment Provision] but ***nothing can be done about it*** to enforce [that] clause [beyond ordering money damages], ***I just don't accept it***." Tr. 28:1-3 (emphases added). At the very least, there is a "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Markets*, 598 F.3d at 35 (internal quotation omitted).

### 2. NML Would Suffer Irreparable Harm If Argentina Is Permitted To Manipulate Its Long Standing Payment Procedures While The Court Finalizes Its Decision

Preliminary relief is appropriate where failure to issue such relief could undermine a court's ability ultimately to grant effective relief on the merits of the claim. Indeed, "courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transfer[ring its assets] out of the jurisdiction." *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) (alteration in original) (internal quotation omitted).

In light of Argentina's repeated breaches of the Equal Treatment Provision, the Court is now giving "further consideration . . . [of] the means of enforcement" of the Provision. Dec. 7 Order at 5. As the Court observed, "it would be a good idea to think out the possibility of Argentina trying to evade or avoid [an order awarding a remedy for its breach], and maybe try to see what protections there can be against that." Tr. 20:15-18. NML has taken this instruction seriously and thus proposed an order that will be difficult for Argentina to evade. One mechanism for enforcing that order will be informing Argentina's U.S.-based financial intermediaries that they may not aid in further violations of the Equal Treatment Provision and

5

therefore cannot process payments to the Exchange Bondholders that would constitute such a violation. Even if Argentina were willing to stand in contempt of the Court's orders, those intermediaries, which include esteemed New York institutions, could be expected to abide by the law. Their fidelity to the law will act as a check on Argentina's disrespect for it.

Precisely for that reason, in the absence of the provisional relief, Argentina can be expected to attempt to reorder its affairs to employ agents that are beyond the Court's jurisdiction. Such a restructuring would impair the Court's ability to craft effective equitable relief to prevent further breaches of the Equal Treatment Provision by Argentina and greatly diminish the Court's ability to supervise Argentina's compliance with such an order. The Court accordingly should enter a TRO and preliminary injunction to protect its jurisdiction to provide NML with effective equitable relief.

### 3.   The Equities Overwhelmingly Favor Issuing Preliminary Relief

A balancing of the equities weighs decisively in favor of granting preliminary relief. In its December 7 Order, the Court held that Argentina breached the Equal Treatment Provision, but concluded that it wanted additional time and briefing to consider the proper remedy for that wrong. *See* Dec. 7 Order at 4-5; *see also* Tr. 46:18-20. The Court unambiguously contemplated that it would decide the case ***on the facts presented to it***. It plainly did not intend to bifurcate its disposition of the Equal Treatment claim in a way that would alert Argentina to the threat of an adverse ruling, so that it could undercut that ruling preemptively. All that NML seeks in this motion is to bar Argentina from doing just that. Ensuring that the Court can complete its ruling on the Equal Treatment claim it has come so far in deciding is unquestionably equitable.

No equitable considerations weigh against preliminary relief. The only reason Argentina possibly could oppose interim relief is if it intends to obstruct the Court's jurisdiction through evasive actions. Any intended scheme to undermine the Court's authority is not entitled to any

6

equitable weight. Indeed, the possibility that a party may take preemptive action to thwart a court's ability to grant effective relief is often the principal basis for issuing a TRO. *See In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (per curiam).

### 4. Maintaining The Status Quo Would Promote The Public Interest

Preliminary relief would promote the public interest by protecting the Court's jurisdiction to complete its adjudication of Argentina's breach of the Equal Treatment provision. The public interest is ill-served when parties are permitted to exploit a Court's thoughtful deliberations as a window for rearranging their affairs to evade the effects of those deliberations. That is especially true in extraordinary cases where liability has been conclusively determined.

In addition, issuing an effective order that protects the contractual rights of creditors will serve the public interest. *See* Renewed Remedy Motion 14-16. It follows that granting preliminary relief that would aid in the effectiveness of such a remedy similarly serves the public interest.

Moreover, maintaining the status quo would contribute immensely to the orderly and efficient disposition of the equal treatment claim by protecting the interests of the many other bondholders who are observing the litigation with great interest. *See Flight Eng'rs' Int'l Ass'n, AFL-CIO v. Am. Airlines, Inc.*, 303 F.2d 5, 11 (5th Cir. 1962) (preliminary injunction is meant to "preserve the status quo pending a judicious, calm and orderly judicial determination"). In the absence of preliminary relief, other bondholders with claims similar to NML's might conclude that they have little choice but to flood the Court with immediate filings in an effort to obtain remedies before Argentina can take measures to nullify those remedies. The result could be a torrent of duplicative, emergency filings and hearings. If, however, other bondholders could be assured that the status quo will be maintained during the pendency of this litigation, their interests will be protected while they await an orderly disposition of NML's Renewed Remedy

7

Motion. The resulting efficiencies would redound not only to the benefit of the Court and the many investors who already have expended tremendous resources to recover what they are owed, but it would benefit Argentina as well. The public interest clearly favors these efficiencies and allowing all contracting parties to seek meaningful redress for their harms.

Finally, NML's requested temporary relief will have no impact on the Exchange Bondholders, who will continue to receive payments in the same matter that they have for years.

**B.     The Court Should Grant A Temporary Restraining Order On An *Ex Parte* Basis**

A TRO may be issued on an *ex parte* basis upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). NML's request for an *ex parte* TRO satisfies all of these requirements.

Issuing a TRO on an *ex parte* basis is the ***only*** way to prevent immediate and irreparable harm to NML and to protect the Court's jurisdiction. As the Second Circuit has explained:

> The ex parte temporary restraining order is indispensable . . . [as] the sole method of preserving a state of affairs in which the court can provide effective final relief. Immediate action is vital when imminent destruction of the disputed property, its removal beyond the confines of the state, or its sale to an innocent third party is threatened. In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all.

*Vuitton Et Fils*, 606 F.2d at 4 (internal quotation omitted); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2951 (3d ed. 2011) (same); *see also Little Tor Auto Ctr. v. Exxon Co. USA*, 822 F. Supp. 141, 143 (S.D.N.Y. 1993) (issuing an *ex parte* TRO "where advance contact with the adversary would itself be likely to trigger irreparable injury").

In the present case, if Argentina is informed about this TRO motion, it may take expedited measures to dodge any remedy the Court may award in response to the Renewed Remedy Motion—even before the Court has the opportunity hear argument on the need for a

8

preliminary injunction. In light of its disreputable history of defying the Court's judgments, it is reasonable to expect that Argentina might pursue such immediate evasive action. *See EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273, 304 (S.D.N.Y. 2010), *rev'd on other grounds*, 652 F.3d 172 (2d Cir. 2011), *petition for cert. filed*, No. 11-604 (U.S. Nov. 15, 2011) ("What is going on between the Republic of Argentina and the federal court system is an exercise of sheer willful defiance of the obligations of the Republic to honor the judgments of a federal court."). If it is permitted to proceed unchecked and employ new agents beyond this Court's jurisdiction, NML (and other plaintiffs) would be irreparably harmed by the loss of the opportunity to bring an immediate halt to Argentina's systematic breaches of the Equal Treatment Provision. Thus, a TRO should be issued on an *ex parte* basis.

## IV.  CONCLUSION

The Court should grant an *ex parte* order (i) temporarily restraining Argentina from changing its payment mechanisms under the Exchange Bonds; and (ii) requiring Argentina to show cause why a preliminary injunction should not issue pending final disposition of NML's Renewed Remedy Motion. NML requests a hearing on these issues within 14 days. *See* Fed. R. Civ. P. 65(b)(2).

Dated: New York, NY
       January 3, 2012                                    Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP                               DECHERT LLP
Theodore B. Olson
(tolson@gibsondunn.com)                                   By: _____
Matthew D. McGill                                         Robert A. Cohen
(mmcgill@gibsondunn.com)                                  (robert.cohen@dechert.com)
Jason J. Mendro                                           Charles I. Poret
(jmendro@gibsondunn.com)                                  (charles.poret@dechert.com)
1050 Connecticut Avenue, N.W.                             1095 Avenue of the Americas
Washington, D.C. 20036-5306                               New York, NY 10036-6796
(202) 955-8500                                            (212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*