UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

NML CAPITAL, LTD.,

                    Plaintiff,

       v.

REPUBLIC OF ARGENTINA,

                  Defendant.

-------------------------------------------------------x

08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

## MEMORANDUM OF LAW IN SUPPORT OF THE RENEWED MOTION OF NML CAPITAL, LTD. FOR SPECIFIC ENFORCEMENT OF <u>THE EQUAL TREATMENT PROVISION</u>

**GIBSON, DUNN & CRUTCHER LLP**
Theodore B. Olson
Matthew D. McGill
Jason J. Mendro
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500

**DECHERT LLP**
Robert A. Cohen
Charles I. Poret
1095 Avenue of the Americas
New York, NY 10036-6796
(212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*

14293526

## TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 4

  A.   The Court Has Held That Argentina Breached The Equal Treatment
       Provision And Invited This Renewed Motion For Equitable Relief...................... 4

  B.   Argentina Violates The Equal Treatment Provision With Assistance Of
       Agents And Financial Institutions In New York .................................................. 6

  C.   NML Seeks An Equitable Order That Would Require Argentina To Pay
       NML When, And To The Same Extent, That It Pays The Exchange
       Bondholders ......................................................................................................... 7

III. ARGUMENT ...................................................................................................... 8

  A.   NML Is Entitled To Specific Enforcement Of The Equal Treatment
       Provision .............................................................................................................. 8

       1.   There Is No Adequate Remedy At Law For Argentina's Breach Of
            The Equal Treatment Provision .................................................................. 9

       2.   The Balance Of Equities Decisively Favors Specific Enforcement
            Of The Equal Treatment Provision ........................................................... 11

       3.   Specific Enforcement Of The Equal Treatment Provision Would
            Promote The Public Interest...................................................................... 14

  B.   Ordering Argentina To Pay NML When It Pays Other Bondholders Would
       Be A Reasonable, Enforceable Remedy That Could Bring A Decade Of
       Litigation To A Just Conclusion ......................................................................... 16

IV.  CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aurelius Capital Master, Ltd. & ACP Master, Ltd. v. Republic of Argentina,*
    09 Civ. 8757 (TPG) (S.D.N.Y.) ......................................................................... 6

*Autotech Techs. LP v. Integral Research & Dev. Corp.,*
    499 F.3d 737 (7th Cir. 2007) ............................................................................. 16

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,*
    440 F.3d 541 (1st Cir. 2006) .............................................................................. 17

*BIB Constr. Co. v. Fireman's Ins. Co.,*
    214 A.D.2d 521 (N.Y. App. Div. 1995) ................................................... 2, 10, 11

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994) ........................................................................................... 15

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,*
    511 F.3d 535 (6th Cir. 2007) ............................................................................. 14

*Citibank, N.A. v. Singer Co.,*
    684 F. Supp. 382 (S.D.N.Y. 1988) .................................................................... 11

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388 (2006) ............................................ 9

*EM Ltd. v. Republic of Argentina,*
    473 F.3d 463 (2d Cir. 2007) ................................................................................ 1

*EM Ltd. v. Republic of Argentina,*
    720 F. Supp. 2d 273 (S.D.N.Y. 2010) ................................................ 8, 12, 13, 14

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo,*
    637 F.3d 373 (D.C. Cir. 2011) .......................................................................... 16

*Guinness Harp Corp. v. Jos. Schlitz Brewing Co.,*
    613 F.2d 468 (2d Cir. 1980) ................................................................................ 8

*In re Associated Gas & Elec. Co.,*
    61 F. Supp. 11 (S.D.N.Y. 1944) ........................................................................ 11

*In re Bd. of Dirs. of Multicanal S.A.,*
    307 B.R. 384 (Bankr. S.D.N.Y. 2004) ............................................................. 15

*In re Reserve Fund Sec. & Derivative Lit.,* No. 09 Civ. 4346 (PGG) (S.D.N.Y. Dec. 11,
    2009) .................................................................................................................. 18

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Kaplan v. Chase Nat'l Bank,*
281 N.Y.S. 825 (Sup. Ct. 1934) ................................................................. 11

*Marine Midland Trust Co. v. Alleghany Corp.,*
28 F. Supp. 680 (S.D.N.Y. 1939) ......................................................... 10, 11

*Nacional Financiera, S.N.C. v. Chase Manhattan Bank N.A.,*
No. 00 Civ. 1571, 2003 WL 1878415 (S.D.N.Y. Apr. 14, 2003) ........................... 13

*Nat'l Sur. Corp. v. Titan Constr. Corp.,*
26 N.Y.S.2d 227 (Sup. Ct. 1940) ................................................................ 11

*Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.,*
992 F.2d 430 (2d Cir. 1993) ................................................................. 8, 9

*NML Capital v. Republic of Argentina,*
621 F.3d 230 (2d Cir. 2010) .................................................................. 13

*Pablo Alberto Varela et al. v. Republic of Argentina,*
10 Civ. 5338 (TPG) (S.D.N.Y.) ................................................................. 6

*Red Mountain Fin., Inc. v. Democratic Republic of Congo,*
No. CV 00-0164 R (BQRx) (C.D. Cal. May 29, 2001) ..................................... 12, 18

*Safeco Ins. Co. of Am. v. Schwab,*
739 F.2d 431 (9th Cir. 1984) .................................................................. 10

*TCW Gem V. Ltd. v. Grupo Iusacell Celular, S.A. de C.V.,*
801 N.Y.S.2d 243 (Sup. Ct. 2004) ............................................................. 11

**Rules**

Fed. R. Civ. P. 65 ......................................................................... 1, 4, 17

## TABLE OF AUTHORITIES (continued)

**Page(s)**

**Other Authorities**

Argentina's Debt Default: Gauchos and Gadflies, THE ECONOMIST, Oct. 22, 2011 .................... 15

Brief for the United States as *Amicus Curiae* Supporting Respondents, *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) (No. 91-763), 1992 U.S. S. Ct. Briefs LEXIS 199 ........................................................................................................... 15

N.Y. Jur. 2d, 96 Specific Performance § 53 ............................................................ 11

Restatement (Second) of Contracts § 360 cmt. d....................................................... 10

Having demonstrated that the Republic of Argentina ("Argentina") has breached Paragraph 1(c) (the "Equal Treatment Provision" or "Provision") of the Fiscal Agency Agreement ("FAA"), NML Capital, Ltd. ("NML") respectfully renews its motion under Federal Rule of Civil Procedure 65(d) and the Court's inherent equitable powers for an order specifically enforcing the Provision.

## I.      **INTRODUCTION**

As the Court well knows, Argentina has a long-established history of defaulting on its sovereign debt. *See EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 466 n.2 (2d Cir. 2007).  To induce investors to purchase its bonds despite this history of misconduct, Argentina promised them, in the Equal Treatment Provision, that their "payment obligations" under those bonds "'shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness.'"  Dec. 7 Order at 1-2 (quoting Paragraph 1(c) of the FAA). In other words, Argentina guaranteed that even if it defaulted on its payment obligations yet again, its bondholders would stand on footing at least equal to that of all other unsecured, external creditors—including *future* creditors—if Argentina eventually resumed repayment of its debts. That guarantee was a meaningful protection against the all-too-likely prospect of default: It ensured prospective purchasers of the bonds that Argentina could not cast them aside indefinitely in favor of other creditors.

On December 7, 2011, the Court held that Argentina repeatedly violated—and continues to violate—that Equal Treatment Provision.  Specifically, the Court found that Argentina breached the Equal Treatment Provision when "it made payments currently due under the [2005 and 2010] Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds" (Dec. 7 Order at 4), and when it enacted laws that codified its intentions to never pay NML (*id.* at 5).

Argentina's contends that the only available remedy for such a violation is a declaration of default and a money judgment.  But this Court rejected that argument when Argentina last advanced it, stating, "if you're standing there and you want me to say, well, that may be true [that Argentina breached the Equal Treatment Provision] but *nothing can be done about it* to enforce [that] clause [beyond ordering money damages], *I just don't accept it*."  Transcript of September 28, 2011 Argument ("Tr."), 28:1-3 (emphases added).  The Court was correct:  Courts enforce promises similar to that of the Equal Treatment Provision through orders of specific performance.  *See, e.g., BIB Constr. Co. v. Fireman's Ins. Co.*, 214 A.D.2d 521, 523 (N.Y. App. Div. 1995).

By this motion, NML accordingly asks the Court to enter an order of specific performance that directs Argentina to treat its payment obligations to NML no worse than its payment obligations to other external creditors.

Argentina's routinized breach of the Equal Treatment Provision satisfies all of the requirements for an order of specific performance.  First, Argentina's violation of the Equal Treatment Provision cannot be remedied adequately with money judgments.  Argentina's conduct over the last decade amply demonstrates that money judgments are inadequate remedies for Argentina's repudiation of its obligations.  But beyond that, Argentina's breach of the Equal Treatment Provision cannot be remedied with money damages because the Equal Treatment Provision promised not the payment of money, but instead guaranteed creditors that their payment obligations would hold a particular *position* in relation to other creditors.  That promised position—like a security interest—was designed to provide additional protection in the event of default, enhancing NML's prospect of recovering real assets in satisfaction of Argentina's debts and providing relief separate from, and in addition to, the money judgments that would be avail-

able in the absence of the Provision and that Argentina historically has been adept at evading. Although money judgments may remedy Argentina's nonpayment of its debts, the only way to restore NML to the *position* vis-à-vis other creditors that Argentina guaranteed to it is to order Argentina to uphold its payment obligations to NML when it upholds its payment obligations to others.

Second, the balance of equities clearly favors specific performance. Without an order, NML will have no means of enforcing its rights under the Equal Treatment Provision. Denial of specific performance thus would impose on NML the continuing hardship of unequal treatment. On the other hand, an order of specific performance would impose no undue hardship on Argentina. Argentina clearly is capable of complying: With foreign exchange reserves of more than $46 billion, Argentina easily could honor 100% of its debts to NML and the Exchange Bondholders. Cohen Decl. Ex. A.

Finally, an order of specific performance would advance the public interest. The public interest is protected when creditors, especially those participating in the critically important market for sovereign debt, know that their contractual rights will be enforced.

The order of specific performance NML now proposes ("Proposed Order," filed simultaneously herewith) would compel Argentina to fulfill its payment obligations to NML when it elects to fulfill its payment obligations to participants in its 2005 and 2010 exchange offers ("Exchange Bondholders"). Because the Equal Treatment Provision commands equal treatment of "payment obligations" and the term "payment obligation" in this context admits of no definition except the duty to pay the amount currently due and owing, the payment due to NML under the Proposed Order is calculated as the total amount Argentina currently owes to NML in these three actions (08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708) multiplied by a percentage that is the

3

same percentage that Argentina pays (or intends to pay) of amounts currently due to Exchange Bondholders. Thus, if Argentina pays Exchange Bondholders half of what of is currently due to them, it would be required to pay half of what it is currently due to NML. Similarly, if Argentina pays Exchange Bondholders the full amount that is currently due to them, it would be required to pay NML the full amount that is currently due to it.

The Proposed Order thus potentially could chart a course toward the end of this decade-long litigation. Unlike money judgments, the Proposed Order would carry with it the threat of the Court's contempt power. Although Argentina has casually disregarded the Court's money judgments for years, it is unlikely to subject itself to an order of contempt. Moreover, upon being notified of the Proposed Order, the reputable New York institutions that play an essential part in distributing Argentina's payments to the Exchange Bondholders—including Argentina's attorneys—would be required to conform to the Proposed Order and could not assist Argentina in violating that Order. *See* Fed. R. Civ. P. 65(d)(2). Even if Argentina were willing to face contempt, these third-parties could be expected to honor the law. And of course the Court would retain jurisdiction to modify the Proposed Order should Argentina devise new tactics to evade it.

In short, the equitable relief NML seeks would make clear that Argentina can no longer escape this Court's judgments by ignoring them and would send a powerful signal about Argentina's obligations to other litigating bondholders, potentially enabling them to pursue a global resolution of Argentina's debts arising from the FAA. Accordingly, Argentina may at long last conclude that it must put an end to its standoff with all of its aggrieved bondholders.

## II.  BACKGROUND

### A.  The Court Has Held That Argentina Breached The Equal Treatment Provision And Invited This Renewed Motion For Equitable Relief

As discussed in the parties' prior briefing and at oral argument, Argentina has systemati-

4

cally disregarded the Equal Treatment Provision it drafted and included in its bonds. After promising NML that its payment obligations would "'at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness'" (Dec. 7 Order at 1-2 (quoting Paragraph 1(c) of the FAA)), Argentina repudiated those obligations and created a new class of future indebtedness, on which it made payments. Specifically, in 2005 and again in 2010, Argentina issued "exchange offers," which permitted bondholders to exchange their defaulted bonds for new bonds of substantially less value, but that Argentina promised would actually be serviced (thereinafter "2005 Exchange Offer" and "2010 Exchange Offer", collectively "Exchange Offers"). *See id.* at 2. In order to formalize further this scheme of paying only those bondholders that accepted its Exchange Offers, Argentina passed Law 26,017 and Law 26,547, which codified Argentina's stated policy of never paying bondholders who declined its Exchange Offers. *See id.* at 3.

After the 2010 Exchange Offer and Argentina's enactment of Law 26,547, NML filed its Motion For Partial Summary Judgment And For Injunctive Relief Pursuant To The Equal Treatment Provision, and Argentina filed responsive papers. The Court held an oral argument on NML's motion on September 28, 2011.

On December 7, 2011, the Court issued an order granting partial summary judgment to NML, finding that Argentina violated the Equal Treatment Provision. In that Order, the Court found Argentina violated the Provision "by relegating NML's bonds to a non-paying class by failing to pay the obligations currently due under NML's Bonds while at the same time making payments currently due to holders of other unsecured and unsubordinated External Indebtedness or by legislative enactment." Dec. 7 Order at 4. Specifically, the Court found that Argentina violated NML's rights under the Equal Treatment Provision in at least two ways: First, "when it

made payments currently due under the Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds" (*id.*); and second, "when it enacted Law 26,017 and Law 26,547" (*id.* at 5).[1]

As part of its order, the Court denied NML's motion for specific performance, but did so only "at the present time to permit further consideration by the court regarding the means of enforcement of the present ORDER." *Id.* The Court thus encouraged NML to renew its request for a remedy in response to Argentina's repeated and ongoing breaches of the Equal Treatment Provision. Tr. 46:17-19. That is the purpose of the present renewed motion.

**B.     Argentina Violates The Equal Treatment Provision With Assistance Of Agents And Financial Institutions In New York**

Argentina has eagerly exploited the advantages of U.S. law, markets, and financial institutions when they served its aims. Argentina relied on New York markets to raise billions of dollars' worth of capital through bond offerings. Argentina retained legal counsel and financial institutions in New York to facilitate those massive transactions. After declaring an unprecedented moratorium on repaying its external debts, Argentina returned to New York to implement a cram-down strategy, whereby it attempted to coerce investors into forfeiting their contractual rights in exchange for rights that are far inferior. Again, it was aided by New York agents, and it exploited its protections under U.S. law to extract concessions from its investors. Now, even as Argentina defies a tide of judgments entered by U.S. courts, Argentina continues to take full advantage of financial and legal services in the United States to perpetrate further violations of U.S. law.

---

[1] The Court recently entered similar orders in other pre-judgment cases. *See Pablo Alberto Varela et al. v. Republic of Argentina*, 10 Civ. 5338 (TPG); *Aurelius Capital Master, Ltd. & ACP Master, Ltd. v. Republic of Argentina*, 09 Civ. 8757 (TPG). The relief granted here would presumably be available in those actions as well.

Similarly, Argentina breaches the Equal Treatment Provision with assistance from its agents and financial institutions located in New York. Under the 2005 Exchange Offers, Argentina provides funds to the Bank of New York or that Bank's "trustee paying agent," which then wires those funds to the New York-based Cede & Co., the registered owner of the securities. Cede & Co. then distributes the funds to the Exchange Bondholders, who are the holders of beneficial interests in those securities. *See* Cohen Decl. Ex. B ¶ 2(a) (Form of Par Bonds). Payments under the 2010 Exchange Bonds are disbursed similarly through the assistance of reputable institutions based in New York.[2] Thus, Argentina not only exploited capital markets in New York to issue the debt it now refuses to repay, but it also exploits financial services in New York to make unlawful payments in violation of its duties to the investors it bilked.

**C.    NML Seeks An Equitable Order That Would Require Argentina To Pay NML When, And To The Same Extent, That It Pays The Exchange Bondholders**

Under the Proposed Order, the Court would require Argentina to perform its obligations under the Equal Treatment Provision by making a "Ratable Payment" to NML whenever Argentina pays an amount currently due to the 2005 or 2010 Exchange Bondholders. Proposed Order at 4. Such a "Ratable Payment" would be in an amount that is equal to a "Payment Percentage," multiplied by the total amount currently due to NML on the bonds at issue in these cases (08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708), including pre-judgment interest. *Id.* The "Payment Percentage" would be calculated by dividing the amount Argentina actually pays or intends to pay to Exchange Bondholders by the total amount of principal and/or interest currently due to them,

---

[2]   Under the 2010 Exchange Bonds, the Republic provides funds to BNY Mellon or that banks "trustee paying agent," which then transfers the money to The Bank of New York Depository (Nominees) Limited. Cohen Decl. Ex. C ¶ 2(a) (Form of 8.75% Global Bonds due 2017). The Bank of New York Depository (Nominees) Limited then distributes the money to its customers, who in turn distribute the money to the Exchange Bondholders. *Id.*

i.e., the amounts of Argentina's payment obligations to them.  *Id.*  Under this approach, NML would get the same percentage of Argentina's payment obligations to it as the Exchange Bondholders get on the amounts owed to them.  Assuming that Argentina pays the Exchange Bondholders the full amount owed to them (as it should be expected to do), it simply would pay NML the full amount owed to it.

Although Argentina unquestionably has ample economic resources to honor its payment obligations to both NML and the Exchange Bondholders (*see EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273, 279 (S.D.N.Y. 2010), *rev'd on other grounds*, 652 F.3d 172 (2d Cir. 2011), *petition for cert. filed*, No. 11-604 (U.S. Nov. 15, 2011)), the Proposed Order would be distributed to the U.S. institutions involved in advising with respect to, preparing, processing, or facilitating the payment, including Argentina's agents and New York banks involved in processing payments under the Exchange Offers, to ensure their cooperation in complying with the Court's ruling.  Proposed Order at 4-5.  In addition, the Proposed Order provides that NML is entitled to discovery to confirm the timing and amounts of Argentina's payments to the Exchange Bondholders, and otherwise prohibits Argentina from taking steps to evade the order, render it ineffective, or diminish the Court's ability to supervise Argentina's compliance.  *Id.* at 5.

## III.   ARGUMENT

### A.   NML Is Entitled To Specific Enforcement Of The Equal Treatment Provision

"New York follows the general rule that specific performance is available where there is no adequate monetary remedy."  *Guinness Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 473 (2d Cir. 1980).  Accordingly, specific performance of a contractual provision is available where (1) "there is no adequate monetary remedy" for the contractual breach; (2) the balance of the equities favors specific enforcement of the provision; and (3) the public interest favors the remedy.  *See id.*; *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 433 (2d Cir.

1993); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (stating similar test for permanent injunctive relief).[3]   Each of these considerations decisively favors NML's request for relief (whether viewed as specific enforcement or an injunction).

### 1.    There Is No Adequate Remedy At Law For Argentina's Breach Of The Equal Treatment Provision

The Equal Treatment Provision entitles NML to more than payments of principal and interest due under the bonds; NML would be entitled to those payments regardless of the Provision.  What the Equal Treatment Provision adds to NML's rights is the guarantee that if Argentina failed to pay principal and interest when it became due to NML, Argentina would fulfill those obligations later to the same extent that it fulfilled its obligations to other external creditors.   In other words, the Equal Treatment Provision guaranteed that if Argentina did devote resources to paying back some of its debts after defaulting on NML's bonds, NML would receive its share of those resources.

The Equal Treatment Provision thus provided NML with a significant protection in the event of default:  It improved the chances that NML would recover actual assets to compensate it for its defaulted investment, rather than being left only to attempt to enforce money judgments against a historically recalcitrant sovereign.   Argentina's promise to treat its payment obligations to NML equally assured NML that it would recoup at least some of its losses in the event that Argentina later repaid its other external debts.

---

[3] In order to be eligible for specific performance of a contractual provision, a party needs to also show that "(1) a valid contract exists between the parties, (2) the plaintiff has substantially performed its part of the contract, and (3) plaintiff and defendant are each able to continue performing their parts of the agreement." *Nemer Jeep-Eagle*, 992 F.2d at 433.  There is no dispute that these factors are satisfied here.

In this respect, the Equal Treatment Provision is closely analogous to a promise to pro-
vide security, which New York and federal courts specifically enforce. *See BIB Constr.*, 214
A.D.2d at 523; *Marine Midland Trust Co. v. Alleghany Corp.*, 28 F. Supp. 680, 683-84
(S.D.N.Y. 1939) ("If a creditor is to have the security position for which he bargained, the prom-
ise to maintain the security must be specifically enforced."), *quoted in Safeco Ins. Co. of Am. v.
Schwab*, 739 F.2d 431, 433 (9th Cir. 1984). A creditor concerned that a prospective debtor may
default has at least two contractual options to protect its interests vis-à-vis other creditors. First,
the creditor can contract for a protection like the Equal Treatment Provision, which guarantees
payments to the creditor if the debtor pays other creditors. Alternatively, the creditor can require
that the debtor post some collateral, to which the creditor will have a specified priority. While
the Equal Treatment Provision promises that the creditor will hold a guaranteed position with
regard to specified ***payments***, a security provision promises that the creditor will hold a specified
position with regard to specified ***property***. Those protections are analogous in that they each en-
title the creditor to specified rights beyond mere recovery of money damages in the event of de-
fault. Indeed, default generally is the only circumstance in which either protection matters.

Both types of provisions must be specifically enforced to avoid irreparable harm. After
all, "[e]ven if damages are adequate in other respects, they will be inadequate if they cannot be
collected by judgment and execution" in a case where the defendant is "judgment proof" or
"conceal[s] his assets" (Restatement (Second) of Contracts § 360 cmt. d); and both an equal
treatment promise and a security provision protect against the possibility that the debtor will ei-
ther become judgment proof or conceal its assets.

Accordingly, New York and federal courts uniformly recognize that "[t]he obligation to
make the [security] deposit is subject to enforcement by specific performance . . . [because] [t]he

damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate." *BIB Constr.*, 214 A.D.2d at 523 (internal quotation omitted); *see also* N.Y. Jur. 2d, 96 Specific Performance § 53; *Nat'l Sur. Corp. v. Titan Constr. Corp.*, 26 N.Y.S.2d 227, 230 (Sup. Ct. 1940); *Citibank, N.A. v. Singer Co.*, 684 F. Supp. 382, 386 (S.D.N.Y. 1988). Argentina has admitted as much. *See* Argentina's Opp. To NML's Motions For Partial Summary Judgment And For Injunctive Relief Pursuant To The Equal Treatment Provision, dkt. 274 at 40 (citing N.Y. Jur. 2d, 96 Specific Performance § 53). This principle applies with equal force where the creditor contracts for merely an "'equal and ratable' lien[]"—as opposed to a superior security interest—with regard to the assets. *See TCW Gem V. Ltd. v. Grupo Iusacell Celular, S.A. de C.V.*, 801 N.Y.S.2d 243, 243 (Sup. Ct. 2004) (unpublished); *cf. In re Associated Gas & Elec. Co.*, 61 F. Supp. 11, 31 (S.D.N.Y. 1944) (holding that a bankruptcy court may use "its powers as a court of equity" to rank certain creditors on parity with others to enforce a negative pledge covenant); *Kaplan v. Chase Nat'l Bank*, 281 N.Y.S. 825, 827 (Sup. Ct. 1934) (ordering the ratable application of collateral to creditors to enforce a negative pledge covenant). For the same reason that equitable relief is necessary to protect a creditor's right to a "security position" (*Marine Midland*, 28 F. Supp. at 683), such relief also is necessary to protect NML's right to a certain position with regard to payment obligations.

## 2. The Balance Of Equities Decisively Favors Specific Enforcement Of The Equal Treatment Provision

As the Court found, Argentina breached the Equal Treatment Provision by implementing a scheme under which it paid the Exchange Bondholders what they were owed while refusing to pay NML. Dec. 7 Order at 4-5. The balance of the equities favors holding Argentina to its promise. Indeed, Argentina can offer no reason in equity why it should be permitted to continue to impose on NML's payment obligations not just a lower rank, but no rank at all.

11

The equities strongly favor specifically enforcing the Equal Treatment Provision's text. The Proposed Order would require Argentina to fulfill its payment obligations to NML when and to the same extent that it fulfills its obligations to the Exchange Bondholders. *See supra* 3–4. That is the only way that Argentina can "'rank'" its "'payment obligations'" to NML "'at least equally with all its other present and future unsecured and unsubordinated External Indebtedness.'" Dec. 7 Order at 1-2 (quoting Paragraph 1(c) of the FAA). Without such a remedy, Argentina's payment obligations to NML will remain debased of their contractually-guaranteed equal status, as Argentina continues to make payment to other external unsecured bondholders while not paying NML. As the Court remarked, "[i]t is difficult to imagine anything would reduce the rank, reduce the equal status or simply wipe out the equal status of these bonds" more than that scenario. Tr. 8:14-16. Doing "nothing" (Tr. 28:2) to remedy this violation, while leaving NML with "mere scraps of paper" in the form of duplicative, unpaid judgments (*EM Ltd.*, 720 F. Supp. 2d at 301), is the very definition of inequity. This harm to NML absent specific performance would be irreparable (*see supra* 10–11), as NML has no other available means to enforce its rights under the Equal Treatment Provision.

Accordingly, the few courts that have considered this issue have found that an equal treatment provision's text is most equitably enforced through orders similar to that proposed by NML. Most closely on point, the District Court's order in *Red Mountain Finance, Inc. v. Democratic Republic of Congo*, No. CV 00-0164 R (BQRx) (C.D. Cal. May 29, 2001) (Cohen Decl. Ex. D), enjoined defendants subject to an equal treatment provision from "making any payments or authoriz[ing] any payments to be made on their behalves with respect to any [debt] unless and until [the defendants] make or cause to be made a proportionate payment to [the plaintiff] at the same time." *Id.* at 2. And in *Nacional Financiera, S.N.C. v. Chase Manhattan Bank N.A.*, No.

00 Civ. 1571, 2003 WL 1878415 (S.D.N.Y. Apr. 14, 2003), Judge Martin observed that plaintiffs who had been promised that their notes would "share pari passu" with other indebtedness "may . . . [have] the right to obtain an injunction to bar [the debtor] from making preferential payments to some of its note holders." *Id.* at *2.[4]

On the other side of the equitable ledger stands Argentina, a party that has long had the ability to pay its past-due debts, but has steadfastly refused to do so.  This recalcitrant debtor drafted the Equal Treatment Provision to induce creditors to give it their money under sovereign bonds, and then repudiated those bonds and that equal treatment promise.  Argentina has continued to make "disingenuous" arguments to both the Court and the Court of Appeals (*NML Capital v. Republic of Argentina*, 621 F.3d 230, 237 (2d Cir. 2010)), all in an attempt to evade its voluntarily-assumed obligations.  Or, as the Court put it, "[w]hat is going on between the Republic of Argentina and the federal court system is an exercise of sheer willful defiance of the obligations of the Republic to honor the judgments of a federal court." *EM Ltd.*, 720 F. Supp. 2d at 304.  Nothing in Argentina's conduct in these cases entitles its position to any equitable accommodation whatever.

Nor will the Proposed Order adversely impact the rights of the Exchange Bondholders.  The Proposed Order is not directed at other creditors—such as the Exchange Bondholders—and does not ask them to take any action before or after receiving payment from Argentina.  Instead, the Proposed Order is directed exclusively at Argentina.

---

[4]  Significantly, the debtor in *Nacional Financiera* did not guarantee that it would treat its *payment obligations* to the plaintiffs equally with its *payment obligations* to others.  Argentina, however, made this additional promise to NML, further assuring NML that it would never make preferential payments to others.

Contrary to Argentina's prior intimations, the Proposed Order will not cause Argentina to default on its payment obligations to the Exchange Bondholders. As the Court has recognized, Argentina has long had the "resources at its command to pay the judgments." *EM Ltd.*, 720 F. Supp. 2d at 279; *see also* Cohen Decl. Ex. A (demonstrating Argentina holds $46 billion in foreign exchange reserves). Given the extensive reputational and economic injury it has suffered from its past history of default, Argentina could not reasonably be expected to default on its obligations to the Exchange Bondholders, just to evade paying what it owes to NML. And there is nothing inequitable about compelling a debtor with ample means to pay its debts in the equal manner it promised to pay them.[5]

### 3.   Specific Enforcement Of The Equal Treatment Provision Would Promote The Public Interest

Granting the Proposed Order will serve the vital public interests of enforcing agreements and upholding the rule of law. It is well-settled that the "[e]nforcement of contractual duties is in the public interest." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). And it is in the public interest that creditors know they can rely upon U.S. courts to enforce promises made by debtors that all of their payment obligations will be treated equally. This is particularly the case when dealing with the debtors of foreign sovereigns, since creditors have no recourse to the protections of bankruptcy law and must often rely upon promises like the Equal Treatment Provision. *See In re Bd. of Dirs. of Multicanal S.A.*, 307

---

[5]   To the extent Argentina attempts to cast its prior assertion of laches as an equitable factor militating against specific performance, that attempt should be rejected. The Court has explained that there is "no merit in the laches argument at all" (Tr. 9:2), and necessarily rejected that argument as part of the December 7 Order. In any case, as NML explained in its Reply Brief In Support Of The Motion For Partial Summary Judgment And For Injunctive Relief Pursuant To The Equal Treatment Provision, any laches argument lacks merit because NML brought this claim within the six-year statute of limitations and no special circumstances compel a laches finding. *See* Dkt. 278, at 10-13.

B.R. 384, 392-93 (Bankr. S.D.N.Y. 2004) (bankruptcy proceedings unavailable in the sovereign debt context). As the United States government has informed the Supreme Court in a case involving Argentina, "the United States has a substantial interest in the operation of the international public debt market. That market . . . involves trillions of dollars, and its operation affects the economies of numerous nations throughout the world, the work of international financial organizations, and the financial positions of many private sector lending institutions and investors, as well as relations between the United States and other countries." Brief for the United States as *Amicus Curiae* Supporting Respondents, *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) (No. 91-763), 1992 U.S. S. Ct. Briefs LEXIS 199, at *1. Creditors who enter this trillion-dollar market must have confidence that their contractual rights will be enforced. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 188 (1994) (noting the importance of adopting rules that foster "certainty and predictability" in the credit markets (internal quotation marks omitted)).

Nor will the Proposed Order undermine the purported public interest in allowing sovereign debt restructurings in the future. Argentina's scheme to lower the rank of (indeed, legally eliminate) its payment obligations to some creditors, while making full payments to other creditors for six years—after drafting and agreeing to the Equal Treatment Provision—is unique in the annals of sovereign default. The proper equitable remedy in a case involving a different sovereign debtor and different facts may well be different. In any event, many sovereign nations now include collective action clauses in their sovereign bonds, which expressly permit restructurings of sovereign debt even if not all bondholders consent. *See* Argentina's Debt Default: Gauchos and Gadflies, THE ECONOMIST, Oct. 22, 2011, Cohen Decl. Ex. F. The inclusion of a collective action clause puts creditors on notice that they purchase sovereign bonds with the understanding

that if a sufficient number of other creditors agree to a restructuring, all creditors will be bound by that restructuring's terms.  Argentina did not include a collective action clause in the FAA; instead, it promised that its payment obligations to NML would rank at least equally with its obligations to any other unsecured external creditor.  In such circumstances, equity and the public interest require Argentina to uphold its contractual obligations, even if it labels its breach a "restructuring" or an "exchange offer."[6]

**B.    Ordering Argentina To Pay NML When It Pays Other Bondholders Would Be A Reasonable, Enforceable Remedy That Could Bring A Decade Of Litigation To A Just Conclusion**

The Proposed Order provides the Court with a fair and practical way to bring this litigation to an end.  NML fully expects Argentina to make its payments in full to the Exchange Bondholders, as its already tenuous reputation in the international community requires.  Pursuant to the Proposed Order, Argentina would fulfill its payment obligations to NML in the above-captioned cases.  Argentina indisputably has sufficient funds to honor its obligation to both the Exchange Bondholders and to NML.  *See supra* Part III.A.2.

The Proposed Order is likely to be effective for at least three reasons:

*First*, the Proposed Order would subject Argentina to contempt sanctions for non-compliance.  *See FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 378-79 (D.C. Cir. 2011) ("[S]anctions against a foreign sovereign are available under the [Foreign Sovereign Immunities Act].")*; Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 744 (7th Cir. 2007) ("Nothing in the text of the FSIA comes close to suggesting that the FSIA was designed to abrogate or limit this essential power [of ordering contempt sanc-

---

[6] To the extent the Court determines the traditional four-factor injunction test applies to NML's requested relief, NML's irreparable harm, balance of the equities and the public interest would be sufficient to meet the requirements of that test for the same reasons articulated above.

tions].").  Although Argentina has long refused to pay the Court's judgments, it is far less likely to stand in contempt of the Court.

*Second*, even if Argentina were willing to place itself in contempt of the Court, it would be unable to continue its unlawful scheme to breach NML's equal treatment rights utilizing the financial and legal infrastructure of this jurisdiction.  Under Rule 65(d)(2), an injunctive order, including one ordering specific performance of a contractual provision, binds those "who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."  *See, e.g., B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006).  The Proposed Order specifies that Argentina will have the duty of notifying any party involved with making payments to Exchange Bondholders of its obligation under the Proposed Order, including the requirement that it make simultaneous ratable payments to NML.  Proposed Order at 4-5.  And, of course, NML will ensure that these agents and intermediaries are aware of Argentina's obligations under the Proposed Order.  These third parties—including Argentina's payment agents and attorneys, many of whom are located in the Southern District of New York (*see supra* 6–7)—will simply need to take no further action unless and until Argentina demonstrates that it has made the required contemporaneous payments to NML.  Argentina, without the assistance of its New York-based agents will be unable to continue its scheme of violating NML's rights.

*Third*, should Argentina devise means of evading the Proposed Order, the Court would have ample tools to address non-compliance.  If questions arise about Argentina's compliance with the Proposed Order, NML will be entitled to discovery to confirm Argentina's claims about when and how it made payments to the Exchange Bondholders.  Proposed Order at 5.  And the

Proposed Order specifically prohibits Argentina from taking steps to evade the order or to diminish the Court's ability to supervise compliance. *Id.* Finally, the Court would retain jurisdiction to enforce and adjust the Proposed Order, as justice and the equities demand. *Id.*[7]

Accordingly, entry of the Proposed Order may well bring this litigation to an end. Argentina has contracted for the cooperation of respected New York entities to process payments and, with the Order in effect, could not alter its payment process to circumvent the Court's ruling. Hemmed in, in this way, Argentina finally may find that it is in its interests to satisfy its debts to NML. Indeed, by making clear that Argentina cannot extinguish its payment obligations by simply ignoring them, the Court might persuade Argentina that it must deal fairly with *all* of its creditors, including the many other bondholders who have observed this litigation with great interest. Confirming that the alternative to good faith is an effective equitable order thus could pave the way to a global resolution of this protracted dispute.[8]

---

[7]  District Courts in the Southern District of New York have extensive experience in managing distributions of a defendant's funds. For example, in *In re Reserve Fund Securities & Derivative Litigation*, Judge Gardephe oversaw a complex distribution of the remaining assets of the Reserve Primary Fund to a multitude of creditors. *See* Cohen Decl. Ex. G (Dec. 11, 2009 Order). Should Argentina defy the Court's injunction in this case, the Court could consider modifications to the Proposed Order that would provide for broader judicial oversight of Argentina's disbursements to the Exchange Bondholders.

[8]  Notably, in *Red Mountain*, after the District Court entered an order that was the functional equivalent of the Proposed Order here, the Republic of the Congo chose to settle with the plaintiff. Cohen Decl. Ex. E.

## IV.   CONCLUSION

For the reasons stated above, the Court should enter the Proposed Order.

Respectfully submitted,

January 6, 2012

GIBSON, DUNN & CRUTCHER LLP                    DECHERT LLP
   Theodore B. Olson
   (tolson@gibsondunn.com)                      By: _____
   Matthew D. McGill
   (mmcgill@gibsondunn.com)                        Robert A. Cohen
   Jason J. Mendro                                 (robert.cohen@dechert.com)
   (jmendro@gibsondunn.com)                        Charles I. Poret
1050 Connecticut Avenue, N.W.                     (charles.poret@dechert.com)
Washington, D.C.  20036-5306                   1095 Avenue of the Americas
(202) 955-8500                                 New York, NY  10036-6796
                                            (212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*