UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

NML CAPITAL, LTD.,
:
: 08 Civ. 6978 (TPG)
                    Plaintiff,        : 09 Civ. 1707 (TPG)
: 09 Civ. 1708 (TPG)
          - against -                 :
:
THE REPUBLIC OF ARGENTINA,            :
:
                    Defendant.        :
:
------------------------------------------------------------------X

AURELIUS CAPITAL MASTER, LTD. and     :
ACP MASTER, LTD.,                     :
: 09 Civ. 8757 (TPG)
                    Plaintiffs,       : 09 Civ. 10620 (TPG)
:
          - against -                 :
:
THE REPUBLIC OF ARGENTINA,            :
:
                    Defendant.        :
------------------------------------------------------------------ X

AURELIUS OPPORTUNITIES FUND II, LLC   :
and AURELIUS CAPITAL MASTER, LTD.,    : 10 Civ. 1602 (TPG)
: 10 Civ. 3507 (TPG)
                    Plaintiffs,       : 10 Civ. 3970 (TPG)
: 10 Civ. 8339 (TPG)
          - against -                 :
:
THE REPUBLIC OF ARGENTINA,            :
:
                    Defendant.        :
------------------------------------------------------------------X *(captions continue on following pages)*


**MEMORANDUM OF LAW IN OPPOSITION TO NML'S MOTIONS FOR
INJUNCTIVE RELIEF PREVENTING THE REPUBLIC FROM SERVICING ITS
RESTRUCTURED DEBT**

```
------------------------------------------------------------ X
BLUE ANGEL CAPITAL I LLC,                        :
                                                 :
                                                 :
                         Plaintiff,              :   10 Civ. 4101 (TPG)
                                                 :   10 Civ. 4782 (TPG)
            - against -                          :
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                                                 :
                         Defendant.              :
                                                 :
------------------------------------------------------------ X
OLIFANT FUND, LTD.,                              :
                                                 :
                                                 :
                         Plaintiff,              :   10 Civ. 9587 (TPG)
                                                 :
            - against -                          :
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                         Defendant.              :
                                                 :
------------------------------------------------------------ X
PABLO ALBERTO VARELA, et al.,                    :
                                                 :
                                                 :
                         Plaintiffs,             :   10 Civ. 5338 (TPG)
                                                 :
            - against -                          :
                                                 :
THE REPUBLIC OF ARGENTINA,                       :
                                                 :
                         Defendant.              :
------------------------------------------------------------ X
```

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................... 4

    A.   The Court's Previous Rejection Of NML's
          Request For Injunctive Relief................................................................. 4

    B.   The Present Motions................................................................................. 7

    C.   The "Me Too" Motions ........................................................................... 8

ARGUMENT ........................................................................................................ 10

I.     THE COURT SHOULD AGAIN REJECT NML'S
      MOTION FOR PERMANENT INJUNCTIVE
      RELIEF PREVENTING THE REPUBLIC FROM
      SERVICING ITS RESTRUCTURED DEBT . ....................................... 10

II.    THE REQUESTED INJUNCTION VIOLATES THE
      FSIA AND APPLICABLE STATE LAW ............................................. 13

III.   NML CANNOT OTHERWISE SATISFY THE
      REQUIREMENTS FOR INJUNCTIVE RELIEF ................................. 16

    A.   NML Has Not Suffered Irreparable Harm And
          Otherwise Has An Adequate Remedy At Law....................................... 17

    B.   The Balance Of Hardships And Public Interest
          Militate Decidedly In Favor Of Denying NML
          Its Requested Injunctive Relief .............................................................. 21

    C.   As Previously Demonstrated, NML Misreads The
          Pari Passu Clause And Is Barred By The Doctrine Of Laches ........................ 22

IV.   NML IS NOT ENTITLED TO A PRELIMINARY
      INJUNCTION PREVENTING THE REPUBLIC
      FROM ALTERING THE WAY IN WHICH IT SERVICES
      ITS RESTRUCTURED DEBT ............................................................... 23

    A.   NML Cannot Establish Irreparable Harm....................................... 23

**Page**

B.   NML Is Unable To Demonstrate A Likelihood Of
Success On The Merits Or The Existence Of Sufficiently
Serious Questions Going To The Merits ........................................................   25

CONCLUSION ...........................................................................................................   26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arctic Ocean Int'l Ltd. v. High Seas Ltd.*,
No. 06 Civ. 1056 (LAP), 2009 WL 5103283 (S.D.N.Y. Dec. 28, 2009) .......................... 17

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)......................................................................................................... 13

*Aurelius Capital Partners LP v. Republic of Argentina*,
584 F.3d 120 (2d Cir. 2009)......................................................................................... 13, 15

*Aurelius Capital Partners, LP v. Republic of Argentina*,
No. 07 Civ. 2715 (TPG), 2010 WL 2925072 (S.D.N.Y. July 23, 2010) .......................... 14

*Aurelius Capital Partners, LP v. Republic of Argentina*,
No. 07 Civ. 2715 (TPG), 2010 WL 768874 (S.D.N.Y. Mar. 5, 2010) .............................. 13-14

*Bass v. Bass*,
528 N.Y.S.2d 558 (1st Dep't 1988) ................................................................................. 14

*Black United Fund of N.J., Inc. v. Kean*,
763 F.2d 156 (3d Cir. 1985)............................................................................................. 19

*Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*,
638 F.2d 568 (2d Cir. 1981)............................................................................................. 21

*Capital Ventures Int'l v. Republic of Argentina*,
282 F. App'x 41 (2d Cir. 2008) ................................................................................... 13, 24

*Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret A.S.*,
598 F.2d 1264 (2d Cir. 1979)......................................................................................... 22-23

*Centauri Shipping Ltd. v. W. Bulk Carriers KS*,
528 F. Supp. 2d 186 (S.D.N.Y. 2007)............................................................................. 19

*Chan v. Reno*,
991 F. Supp. 266 (S.D.N.Y. 1998)................................................................................... 11

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)..................................................................................................... 10-11

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985).............................................................................................. 20

**Page(s)**

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,*
598 F.3d 30 (2d Cir. 2010)....................................................................................... 16

*eBay Inc. v. MercExchange, L.L C.,*
547 U.S. 388 (2006).................................................................................................. 16

*EM Ltd. v. Republic of Argentina,*
131 F. App'x 745 (2d Cir. 2005) .......................................................................... 12, 22

*EM Ltd. v. Republic of Argentina,*
473 F.3d 463 (2d Cir. 2007)..................................................................................... 14

*Exelon Generation Co., LLC v. Gen. Atomics Techs. Corp.,*
559 F. Supp. 2d 892 (N.D. Ill. 2008) ...................................................................... 20

*Grain Traders, Inc. v. Citibank, N.A.,*
160 F.3d 97 (2d Cir. 1998)....................................................................................... 15

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
481 F.3d 60 (2d Cir. 2007)....................................................................................... 23

*Guinness Harp Corp. v. Jos. Schlitz Brewing Co.,*
613 F.2d 468 (2d Cir. 1980)..................................................................................... 16

*Haulage Enters. Corp. v. Hempstead Res. Recovery Corp.,*
426 N.Y.S.2d 52 (2d Dep't 1980)............................................................................ 17

*In re Estate of Zuckerman*
670 N.Y.S.2d 572 (Sur. Ct. 1998)............................................................................ 14

*Marine Midland Trust Co. of N. Y. v. Alleghany Corp.,*
28 F. Supp. 680 (S.D.N.Y. 1939)............................................................................. 19

*Merit Capital Grp., LLC v. Trio Indus. Mgmt., LLC,*
No. 04 Civ. 7690 (RCC), 2005 WL 53283 (S.D.N.Y. Jan. 10, 2005) ................... 18

*N.A.A.C.P. v. Town of E. Haven,*
70 F.3d 219 (2d Cir. 1995)....................................................................................... 17

*Nacional Financiera, S.N.C. v. Chase Manhattan Bank, N.A.,*
No. 00 Civ. 1571 (JSM), 2003 WL 1878415 (S.D.N.Y. Apr. 14, 2003)................. 17

*O'Connor v. Donaldson,*
422 U.S. 563 (1975).................................................................................................. 17

*O'Neil v. Poitras,*
551 N.Y.S.2d 92 (4th Dep't 1990)............................................................................ 17

**Page(s)**

*Plenum Fin. & Invs. Ltd. v. Bank of Zambia*,
No. 95 Civ. 8350 (KMW), 1995 WL 600818 (S.D.N.Y. Oct. 11, 1995) .......................... 18-19

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
109 F.3d 850 (2d Cir. 1997).................................................................................... 2-3, 22

*Rossini v. Republic of Argentina*,
No. 11-100-cv, 2011 WL 2600404 (2d Cir. July 1, 2011) ................................. 14

*Seijas v. Republic of Argentina*,
352 F. App'x 519 (2d Cir. 2009) ....................................................................... 23

*Septembertide Publ'g, B.V. v. Stein & Day, Inc.*,
884 F.2d 675 (2d Cir. 1989)............................................................................... 23

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*,
585 F.3d 58 (2d Cir. 2009).................................................................................. 15

*Weston Compagnie Finance et D'Investissement, S.A. v. La Republica del Ecuador*,
No. 93 Civ. 2698 (LMM), 1993 WL 267282 (S.D.N.Y. July 14, 1993) .......................... 19

*Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co. Ltd.*,
339 F.3d 101 (2d Cir. 2003)............................................................................... 18

**Rules and Statutes**

28 U.S.C. § 1610(a) ............................................................................................. 13

N.Y. C.P.L.R. § 5222(b) ...................................................................................... 14-15

U.C.C. § 4-A-503.................................................................................................. 15

**Other Authorities**

96 N.Y. Jur. 2d *Specific Performance* § 53 ....................................................... 19-20

Philip R. Wood,
*Sovereign State Restructurings and Credit Default Swaps*,
Butterworths J. of Int'l Banking & Fin. L. 559 (2011)...................................... 10

Defendant the Republic of Argentina (the "Republic") submits this memorandum of law in opposition to the motion by NML (joined by eighteen "me too" plaintiffs) for permanent injunctive relief pursuant to the "pari passu" clause, and to the motion by NML for a preliminary injunction.[1]

## PRELIMINARY STATEMENT

The present motion by NML (joined by eighteen "me too" plaintiffs) follows this Court's denial of NML's previous request for injunctive relief in connection with the pari passu clause.  NML's latest motion confirms that the "relief" that follows from NML's reading of the pari passu clause is no less than the disruption of all payments to holders of restructured Republic-issued debt, who tendered their interests in over $74.5 billion of defaulted debt in the Republic's Exchange Offers, and with it, the destruction of the Republic's arduously achieved restructuring of over 91% of its unsustainable pre-2001 debt burden.  Once again, NML seeks to exploit the pari passu clause to obtain a remedy that would prevent the Republic's creditors who restructured their debt from receiving property that is rightfully theirs.  And while NML insists that the pari passu clause requires "*equal* treatment," it of course wants to be treated *not* equally with those creditors, but on *better* terms.  Neither law, nor equity, allows such a result.  NML's motion must be rejected for the following reasons:

*First*, the Court has only five months ago denied NML this precise relief.  In the prior iteration of its motion, filed in October 2010, NML requested that the Court enjoin the Republic from servicing its restructured debt unless it simultaneously paid 100% of the full face

---

[1]   Unless otherwise noted, exhibits are attached to the Declaration of Carmine D. Boccuzzi, dated February 1, 2012.  The Memorandum of Law in Support of the Renewed Motion of NML Capital, Ltd. for Specific Performance of the Equal Treatment Provision, dated January 6, 2012, is cited as "NML Br."; the Memorandum of Law in Support of NML Capital, Ltd.'s Ex Parte Motion for an Order to Show Cause Why a Preliminary Injunction Should Not Issue, With a Temporary Restraining Order, dated January 3, 2012, is cited as "NML PI Br."

value, plus interest, of NML's defaulted debt.  Although the Court at the September 2011 hearing on the motion refused to grant NML such relief, because it would interfere with the Republic's payments to participants in the Exchange Offers, NML now demands that the Court enter an *identical* injunction.  The Court was indisputably correct in denying NML its requested injunction the first time the matter was before the Court, and there is no reason for it to decide differently now.

Second, NML's novel injunction is precluded by the FSIA and state law.  The mandatory injunction that NML seeks – requiring the Republic to pay NML as a condition to its paying any owners of interests in performing restructured debt – is directed to Republic actions and assets outside of the United States.  The Court therefore lacks jurisdiction to enter any such injunction.  Moreover, to the extent that the proposed order is directed to funds in or passing through the United States, both the FSIA and applicable New York law prevent the restraint of those funds, because they are not property of the Republic, but belong instead to the holders of its restructured debt.

Third, NML cannot show that it faces irreparable harm in the absence of an injunction or that it otherwise lacks an adequate remedy at law.  Even though NML has been unable to collect payment on its judgments, that does not justify granting it a remedy that is wholly unsupported by law, and that would in fact cause substantial harm to other creditors. NML cites no case, and we are aware of none, that suggests that payment to one creditor – pursuant to consensual and voluntary debt restructurings specifically supported by United States policy – constitutes irreparable injury to creditors who chose to reject the restructuring.  *See Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 109 F.3d 850, 853, 855 (2d Cir. 1997) (noting that IMF debt resolution procedures, which are commonly followed and consistent with

U.S. policy, include voluntary debt restructurings).  NML is not injured by the fact that the Republic has restructured its debt with creditors who have chosen to do so and is now servicing that debt.  The lack of irreparable injury, and NML's intent to cause disruption, is further borne out by the facts here: the Republic has been making payments on the restructured performing debt for nearly *seven* years, and it was not until its October 2010 motion – after the two debt restructurings in 2005 and 2010 – that NML suddenly began claiming that those payments somehow inflicted irreparable injury upon it.  NML in fact bought *all* of the debt upon which it bases the present motion with full knowledge that the Republic was servicing its restructured debt, and is actively pursuing various enforcement remedies against the Republic.

> *Fourth*, the balance of hardships and the public interest do not support NML.  It would not be fair to the defaulted debt holders who tendered over $74.5 billion of their bond interests in the Republic's debt restructuring to stop payments to them.  This is all the more so given (i) the consistent rulings by this Court that have specifically protected from disruption the Republic's voluntary Exchange Offers that were accepted by owners of over 91% of the Republic's defaulted debt, (ii) the Second Circuit decisions affirming those rulings, and (iii) the Second Circuit precedent expressly instructing the Court to take care to craft orders that do *not* interfere with payments to these bondholders.  Just as the Republic and other bondholders do not have the right to force NML and other holdouts to accept the Republic's Exchange Offers, so too does NML lack the right to interfere with the acceptance by those bondholders of the Exchange Offers or their right to receive payments as a result of those Offers.

> *Fifth*, NML is not entitled to the injunction it seeks for the reasons previously raised by the Republic, which for the sake of efficiency it will not repeat here, but which are in the record of these cases and which the Republic incorporates here by reference, namely: (i)

NML's request for an injunction is barred by the doctrine of laches given its unconscionable delay in raising the pari passu issue; and (ii) NML is not entitled to an injunction because its reading of the pari passu clause is wrong.[2]

   *Finally*, because NML is not entitled to its requested permanent injunction, it is also not entitled to the continuation of the preliminary injunction restricting the Republic from altering the means by which it services its performing debt.  Even if NML were correct concerning the meaning of the pari passu clause, and even if it were entitled to the novel, destructive permanent injunction it demands, NML would have no right to an order requiring the Republic to service its debt in a particular manner.  When, in the *Rossini* action, plaintiffs sought an injunction requiring the Republic to engage in capital markets transactions in the United States, this Court denied plaintiffs the requested relief, and that ruling was affirmed by the Second Circuit.  The Court should do the same here.

## BACKGROUND

## A.  The Court's Previous Rejection Of NML's Request For Injunctive Relief

   The present motion follows NML's 2010 motions concerning the pari passu clause that came (i) almost seven years after the Republic sought an adjudication of NML's erroneous interpretation of the pari passu clause, and NML *opposed* the Court's providing such an adjudication, (ii) after at least three instances in which NML successfully urged the Court *not* to address the meaning of the pari passu clause because NML said it had no intention of bringing a pari passu clause claim, and (iii) after the Republic had successfully restructured over 91% of its defaulted debt – more than $74.5 billion – through two Exchange Offers.  The participants in

---

[2] Attached to this brief as Addendum A is a list of the Republic's prior submissions in connection with the construction of the pari passu clause.  The Republic is prepared to provide additional copies of any materials needed by the Court, but will otherwise refrain from burdening the Court with duplicative submissions.

these Exchange Offers accepted interests in bonds issued at a substantial discount to the face amount of their subsequently cancelled original debt (the "Discounted Exchange Bonds") in reliance on the Republic's promise to pay them on the new debt that they received in exchange. Notwithstanding this history, NML belatedly alleged in its 2010 motions that the Republic has been in violation of the pari passu clause since 2005, and asked the Court for an injunction ordering the Republic to purportedly "restore" NML's rank by paying NML "ratably" under the pari passu clause, and to enforce this injunction by precluding any payments to the holders of the Republic's new debt unless NML was paid in full on its unrestructured debt.

The Republic opposed NML's motions, arguing (i) that they were barred by laches (ii) that there had been no violation of the pari passu clause under its correct interpretation, and (iii) that NML was not otherwise entitled to equitable relief. With respect to laches, the Republic pointed out that NML's motions did not contain *any* information necessary for NML to assert its claim that was unavailable to it in 2005, when the first Exchange Offer was made. The payment by the Republic of other creditors, and not NML, has of course been occurring since 2005. And Argentine Law 26,017, the so-called "Lock Law" that NML repeatedly invoked as the legislative act creating the legal "ranking" forbidden by the pari passu clause, *had been on the books since February 9, 2005.*

As to the merits of NML's claims, the Republic noted that the Argentine legislation at issue had not subordinated NML's debt, because the Lock Law, which was enacted by the Republic at the express urging of bondholder groups and other bondholder representatives, merely prevented the Republic's executive branch from unilaterally re-opening the 2005 Exchange Offer, or otherwise settling with creditors holding defaulted debt, without Congressional approval. In conformity with the procedure set forth in the Lock Law, Law

26,547 – which the Congress enacted on December 9, 2009 – suspended the effects of the Lock Law until December 31, 2010 or until the Ministry of Economy declared the second exchange offer complete, whichever came first.

At the September 28, 2011 hearing on NML's motions, the Court granted NML's motion for summary judgment, but denied NML's motion for injunctive relief because it would have interfered with the Republic's payments to beneficial owners of Discounted Exchange Bonds. The Court quite rightly ruled that it "cannot do something that would prejudice the rights and opportunities of the people who want[ed] to make exchanges." *See* Sept. 28, 2011 Hr'g Tr. at 40:12-14 (Ex. A). The Court also appeared to recognize the fallacious characterization of NML's "pro rata" request to be paid 100% of what it is owed on its defaulted debt because beneficial owners of Discounted Exchange Bonds receive "100%" of what they are owed. As the Court noted, "[i]t would seem to me that it might be that what would need to be done to apply the pari passu clause is to do something, which of course the plaintiffs would not want at all, but it would be to give the plaintiffs the same percentage of the face amount of the bonds that the exchanges received, *because they're not receiving 100 percent*." *Id.* at 12:7-13 (Ex. A) (emphasis added).

The Court confirmed its September ruling in an Order entered on December 7, 2011, in which it held that the Republic violated the pari passu clause when it enacted the legislation preventing Argentina's executive from re-opening the Republic's 2005 and 2010 Exchange Offers, or otherwise settling with creditors, without Congressional approval. *See* Order ¶ 6, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Dec. 7, 2011). The Court's December 7 Order, however, broadened its September ruling by finding that the Republic also violates the clause whenever it services its restructured debt without

6

paying its obligations to NML.  *Id.* ¶ 5.  Consistent with the Court's statements at the September hearing concerning its refusal to interfere with payments to beneficial owners of Discounted Exchange Bonds, the Court denied NML's motion for injunctive relief "to permit further consideration by the court regarding the means of enforcement" of its Order.  *Id.* ¶ 8.

**B.  The Present Motions**

On January 6, 2012, NML submitted a "renewed" motion for injunctive relief in which it seeks an Order from the Court compelling the Republic "to specifically perform its obligations to NML under [the pari passu clause]" by enjoining the Republic from making payments to beneficial owners of its Discounted Exchange Bonds, unless it concurrently pays 100% of the full face value, plus interest, due to NML on its defaulted debt.  *See* Proposed Order ¶ 2 ("permanently" requiring the Republic to pay NML a "Ratable Payment" (*i.e.* 100% of what NML is owed) upon "any" payment to owners of interests in 2005 or 2010 issued bonds).  This renewed motion is no different than NML's rejected October 2010 request that the Court "specifically enforce the [pari passu clause] by issuing an injunction requiring Argentina to pay NML ratably if and when it pays bondholders who participated in the 2005 and 2010 exchanges."  Oct. 20, 2010 NML Pari Passu Mem. at 27.  And just as before, NML argues that as a result of the Republic's servicing of its restructured debt, NML is irreparably harmed by the loss of its "pari passu status," that there is no adequate remedy at law because its judgments remain unpaid in these actions, and that the balance of the equities and public interest supposedly support its requested injunction.  *See* Proposed Order ¶ 1; Oct. 20, 2010 NML Pari Passu Mem. at 19-27.

NML insists that the requested injunctive relief prohibiting the Republic from servicing its restructured debt will be effective because the Republic purportedly makes

payments to holders of Discounted Exchange Bonds in the United States via third party intermediary banks that NML assumes will comply with the Proposed Order's terms, in accordance with Rule 65(d)(2).  NML Br. at 17.  However, the payments targeted by NML have, since 2005, taken place *outside* the United States, and beyond the jurisdiction of the Court. Starting in June 2005, the Republic has made regular interest payments on the Discounted Exchange Bonds in accordance with the Trust Indenture, dated June 2, 2005 (the "Indenture"), between the Republic and The Bank of New York, as trustee for beneficial owners of Discounted Exchange Bonds (the "Trustee"): the Republic makes its interest payments to the beneficial owners of the Discounted Exchange Bonds when it transfers, outside the United States, the required funds to the Trustee.  *See* Indenture § 3.1 (Ex. E); Declaration of Matias Isasa, dated February 1, 2012, ¶ 4 ("Isasa Decl.").  Once the Trustee possesses the funds, it holds those amounts in trust for the exclusive benefit of the Trustee and the beneficial holders of the Discounted Exchange Bonds.  Indenture § 3.5(a); Isasa Decl. ¶ 4.  Thus any funds in the United States are not property of the Republic, but property held in trust for the beneficial owners.

In connection with its renewed relief motion, NML also requests a preliminary injunction preventing the Republic from "altering or amending the processes or specific transfer mechanisms" by which it makes payments on the Discounted Exchange Bonds.  *See* Order to Show Cause, dated Jan. 3, 2012.  Despite the fact that it puts forth no evidence to support such a claim, NML speculates that this relief is necessary because "Argentina may attempt to restructure its longstanding payment practices in order to undermine the effectiveness" of the permanent injunctive relief it seeks.  NML PI Br. at 3.

## C.  The "Me Too" Motions

Since NML's 2010 motions, the unsurprising appearance of "me too" plaintiffs has further demonstrated the impropriety of the relief sought.  To date, eighteen plaintiffs in

thirteen cases, adopting NML's arguments, have also demanded the exact relief sought by NML. *See* Addendum B.

On December 13, 2011, the Court entered Orders granting the *Varela* and *Aurelius* plaintiffs the same declaratory relief that it had granted NML in its December 7 Order. *See* Order, *Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 09 Civ. 8757 (TPG) (S.D.N.Y. Dec. 13, 2011); Order, *Varela v. Republic of Argentina*, No. 10 Civ. 5338 (TPG) (S.D.N.Y. Dec. 13, 2011). The *Varela* and *Aurelius* plaintiffs have now also filed "me too" requests for permanent injunctive relief identical in substance to the relief requested by NML. *See* Pls.' Notice of Mot. for Specific Performance of the Equal Treatment Provision, *Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 09 Civ. 8757 (TPG) (S.D.N.Y. Jan. 13, 2012); Pls.' Notice of Renewed Mot. for Specific Performance of the Equal Treatment Provision, *Varela v. Republic of Argentina*, No. 10 Civ. 5338 (TPG) (S.D.N.Y. Jan. 11, 2012).

While the motions for injunctive relief by NML, and the *Varela* and *Aurelius* plaintiffs were pending, on January 26, 2012 another plaintiff, Olifant Fund, Ltd. ("Olifant"), filed additional "me too" motions for declaratory and injunctive relief also adopting in substance the arguments set forth in NML's papers. *See* Notice of Mot. for Partial Summ. J. and for Injunctive Relief Pursuant to the Equal Treatment Provision, *Olifant Fund, Ltd. v. Republic of Argentina*, No. 10 Civ. 9587 (TPG) (S.D.N.Y. Jan 26, 2012). As agreed by the Republic and Olifant, these papers will serve as the opposition to Olifant's motions. Accordingly, these opposition papers are being filed in the *Olifant* action (as well as the actions of other "me too" plaintiffs). Unlike the other "me too" plaintiffs, Olifant has not obtained an Order granting the declaratory relief concerning the meaning of the pari passu clause set forth in NML's December 7 Order and the *Aurelius* and *Varela* plaintiffs' December 13 Orders, and the Republic opposes

Olifant's pending motion for summary judgment pursuant to the pari passu clause for the reasons set forth in the papers referenced in Addendum B, which are incorporated here by reference. *See* Addendum B.

In total, creditors holding total claims for defaulted principal and interest in the amount of over $3.66 billion now ask the Court, under NML's unprecedented reading of the pari passu clause, to prevent the Republic from making any payments on its restructured debt unless it simultaneously pays all they are owed. Were this relief granted, of course all other "hold-out" creditors would seek it as well. The Republic's debt restructuring and, to the extent the Court's ruling were treated as precedent as an interpretation of New York law by a leading New York court, any future voluntary debt restructurings of Greece, Spain, Italy or any other country, would be essentially rendered impossible.[3]

## ARGUMENT

### I. THE COURT SHOULD AGAIN REJECT NML'S MOTION FOR PERMANENT INJUNCTIVE RELIEF PREVENTING THE REPUBLIC FROM SERVICING ITS RESTRUCTURED DEBT

The Court has already considered and rejected the exact relief now requested by NML and thus should do so again here, because NML does not allege *any* change in circumstances, let alone extraordinary circumstances that work any injustice or render incorrect the Court's September 2011 decision. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S.

---

[3]   *See* Philip R. Wood, *Sovereign State Restructurings and Credit Default Swaps*, Butterworths J. of Int'l Banking & Fin. L. 559, 661-62 (2011) ("Sovereign issuers who make voluntary offers usually – in the absence of a collective action clause – also make a statement that they will not pay those bondholders who were eligible to accept the offer but did not accept the offer (Greece did not say this originally). If they did not say this, then there would be less incentive on bondholders to accept because, if most people did accept, leaving a small rump that did not (almost invariably a tiny minority of holders do not accept), then the rump might get paid ahead of the rescheduled bondholders who did accept. So the issuer makes a commitment not to give any bondholders a better deal than the deal on offer in the voluntary exchange."); *see also* US Statement of Interest at 3 (Ex. F) ("[T]he United States explicitly recognize[s] the role restructurings must play in resolving sovereign debt crises.").

800, 817 (1988) ("[A]s a rule courts should be loathe to [revisit prior decisions of its own] in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'") (citation omitted); *Chan v. Reno*, 991 F. Supp. 266, 272 (S.D.N.Y. 1998) (noting that the "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (citation and internal quotation marks omitted).

Although NML labels its motion as one for "specific performance" and not injunctive relief, as described in NML's October 2010 motion, the substance is exactly the same; NML once again seeks to disrupt the Republic's two successful debt restructurings by enjoining the Republic (and other third parties) from making payments to beneficial owners of Discounted Exchange Bonds, unless NML simultaneously receives 100% of the principal and interest due to it. *See* Proposed Order ¶ 2(d) (enjoining the Republic from "making any payment under the terms of the [Discounted] Exchange Bonds without complying with its obligations pursuant to the [pari passu clause] by concurrently or in advance making a Ratable Payment to NML"); *id.* ¶¶ 2(b)-2(c) (defining "Ratable Payment").  NML thus seeks to jeopardize – indeed, to destroy – the rights of the holders of more than 91% of the Republic's defaulted debt who, in NML's words, "exchange[d] their defaulted bonds for new bonds of substantially less value," so that NML can, in the name of "equal treatment," compel payment on considerably better terms. NML Br. at 5.

The Court denied NML this precise relief – "an injunction requiring Argentina to pay NML ratably if and when it pays bondholders who participated in the 2005 and 2010 exchanges," Oct. 20, 2010 NML Pari Passu Mem. of Law at 27 – at the September 28 hearing, because "it might [have] interfere[d] with an exchange offer" and "would [have] prejudice[d] the

rights and opportunities of people who want to make exchanges."  Sept. 28, 2011 Hr'g Tr. at

40:9-14 (Ex. A); *see also id.* at 19:17-20 (THE COURT: characterizing the Order requested by

NML in October 2010 as "telling Argentina, you cannot pay the exchange offer people unless

you pay . . . the plaintiffs in the lawsuits").  This ruling and its underlying rationale were

consistent with the Court's long-held position that "the Republic of Argentina had a right to

make an exchange offer, and that any bondholders who wished to take that exchange offer had a

right to take it."  *Id.* at 39:17-19; *see also EM Ltd. v. Republic of Argentina*, 131 F. App'x 745,

747 (2d Cir. 2005) (affirming this Court's rejection of NML's attempt to block the Republic's

2005 Exchange Offer because it was "obviously of critical importance to the economic health of

a nation"); Opinion at 5-6, *Barboni v. Republic of Argentina*, No. 06 Civ. 5157 (TPG) (S.D.N.Y.

Apr. 26, 2010) (Ex. B) (rejecting creditor's attempt to enjoin the 2010 Exchange Offer and

stating that "[a]ll recipients of the exchange offer are treated the same, and that is the way it

should be").

        NML's claim that "the Proposed Order [will not] adversely impact the rights of

the Exchange Bondholders" because it "is not directed at [them] . . . and does not ask them to

take any action before or after receiving payment from Argentina" is disingenuous.  NML Br. at

13.  The beneficial owners of the Discounted Exchange Bonds have a right to be paid under the

terms of the bonds, and the Proposed Order plainly prevents them from enjoying that right.  As

NML's brief makes clear, not only does NML seek to enjoin the Republic from making

payments on its restructured debt, but it also aims to the block the Republic's "agents and

intermediaries," including banks, from processing those payments to other bondholders under the

threat of contempt sanctions.  *See* NML Br. at 17.  Accordingly, just as it did the first time, the

Court should reject NML's invitation to the Court to disrupt payments to those individuals and

institutions who extinguished their rights under the defaulted debt in exchange for interests in Discounted Exchange Bonds of lesser value that the Republic promised to service. *See Capital Ventures Int'l v. Republic of Argentina*, 282 F. App'x 41, 42 (2d Cir. 2008) (instructing the Court to "take care to craft [] orders so as to avoid interrupting Argentina's regular payments to bondholders").

## II. THE REQUESTED INJUNCTION VIOLATES THE FSIA AND APPLICABLE STATE LAW

NML's requested relief must in any event be rejected because it seeks to enjoin the Republic's use of its assets outside the United States, where they are indisputably immune from restraint by United States courts under the FSIA. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (FSIA is exclusive source of authority for judgment creditor's action to enforce its judgment against sovereign debtor); 28 U.S.C. § 1610(a); *Aurelius Capital Partners LP v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009) (sovereign property is immune from attachment and execution under the FSIA unless it is located within the territorial limits of the United States and is used for a commercial activity in the United States).

Here, the Republic makes its payments on the Discounted Exchange Bonds *outside the United States*, when it transfers the necessary funds to the Trustee, which then holds the funds in trust solely for itself and the beneficial owners of the Discounted Exchange Bonds. *See* Isasa Decl. ¶ 4; Indenture §§ 3.1, 3.5(a) (Ex. E). Once that transfer takes place, the Republic has no right to the funds and they are no longer the property of the Republic. *See* Isasa Decl. ¶ 4; Indenture § 3.5(a) (Ex. E). Because the payments and property targeted by NML are located outside the United States, they are indisputably beyond the jurisdiction of the Court and outside the scope of NML's requested injunction. *See Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG), 2010 WL 768874, at *4 (S.D.N.Y. Mar. 5, 2010) (rejecting

attachment attempt over funds at Citibank Argentina because transaction between the Republic and Citibank Argentina took place in Argentina and the funds were therefore immune from restraint under the FSIA); *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG), 2010 WL 2925072, at *4 (S.D.N.Y. July 23, 2010) (finding that the Trust Bonds sought to be seized by turnover order were sitused in Argentina and therefore outside scope of execution under the FSIA). As the Court has recognized in a ruling confirmed by the Second Circuit, the Republic is legally entitled to conduct its affairs in Argentina, and a United States court under the FSIA cannot compel the Republic to bring its assets into the United States. *See* Dec. 17, 2010 Hr'g Tr. at 48:16-21 (Ex. C) (THE COURT: [I]f the Republic wishes to structure [bond transactions] . . . in Argentina . . . I do not see why they are not legally entitled to do that.); *Rossini v. Republic of Argentina*, No. 11-100-cv, 2011 WL 2600404, at *3 (2d Cir. July 1, 2011).

Nor are the funds subject to restraint when they enter the United States, because they are then, and are at all points thereafter, held in trust for the beneficial owners of the Discounted Exchange Bonds. *See* Isasa Decl. ¶ 4; *In re Estate of Zuckerman*, 670 N.Y.S.2d 752, 753 (Sur. Ct. 1998) ("[A]n essential characteristic of a trust is that the trustee holds title to the corpus."). Under black letter law, a creditor may not execute upon or otherwise interfere with property that does not belong to the debtor. *See EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 476 n.13 (2d Cir. 2007) (A "party seeking to enforce a judgment . . . . cannot reach . . . assets in which the judgment debtor has no interest.") (citation and internal quotation marks omitted); *see also Bass v. Bass*, 528 N.Y.S.2d 558, 560-61 (1st Dep't 1988) ("CPLR 5201(b) provides that a judgment may be enforced [only] against any property which could be assigned or transferred, that is, property that the judgment debtor has the power to assign or transfer.") (citation and internal quotation marks omitted); N.Y. C.P.L.R. § 5222(b) ("A restraining notice served upon a

person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest"); *see also Aurelius Capital Partners*, 584 F.3d at 131 ("[B]efore the [assets] at issue could be subject to attachment, the funds *in the hands of the Republic* must have been 'used for a commercial activity'" (in the United States)) (emphasis added).  Funds that formerly belonged to the Republic, but no longer do at the time they enter the United States, thus cannot be executed on or otherwise restrained by a creditor of the Republic.

The same result follows under Article 4-A of the U.C.C., which determines the rights, duties and liabilities of parties involved in the funds transfer process.  *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102-03 (2d Cir. 1998).  Under Article 4-A, a court may only restrain (i) an originator from issuing a payment order; (ii) an originator's bank from executing the payment order; or (iii) a beneficiary's bank from releasing the funds to the beneficiary or the beneficiary from withdrawing the funds.  Outside of these three scenarios, "[a] court may not . . . restrain a person from issuing a payment order, paying or receiving payment of a payment order, or otherwise acting with respect to a funds transfer."  U.C.C. § 4-A-503.  Here, the "originator" is the Republic, whose actions and property outside the United States cannot be restrained under the FSIA.  The beneficiary of the transfer is not the Republic, but the holders of its restructured debt, and once the funds are *in* the United States they do not belong to the Republic, and may not be interfered with in the hands of any intermediary bank.  *See Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 71 (2d Cir. 2009) ("Because [electronic fund transfers] in the temporary possession of an intermediary bank are not property of either the originator or the beneficiary under New York law, they cannot be subject to attachment").  Accordingly, once the

15

funds are transferred into the United States, statutory law prevents the Republic's creditors from disrupting their path.

## III.   NML CANNOT OTHERWISE SATISFY THE REQUIREMENTS FOR INJUNCTIVE RELIEF

NML's motion also fails because, even if its requested injunction were otherwise proper, which it is not, NML cannot establish (i) that NML has suffered irreparable harm, (ii) that remedies available at law, such as monetary damages, are inadequate compensation, or (iii) that the balance of hardships or public interest tilts decidedly in its favor.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[4]  This is a particularly high bar for NML to meet here, where it seeks a "mandatory" injunction to "alter the status quo by commanding some positive act, as opposed to a 'prohibitory' injunction seeking only to maintain the status quo." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks and citation omitted).  Here, of course, the mandatory nature of the requested injunction is demonstrated by the fact that it requires the Republic to take the affirmative step of paying NML when it services its restructured debt.  Accordingly, NML must meet the more stringent requirements for a mandatory injunction, *i.e.,* make a "'clear showing that [it] is entitled to the relief requested, or [that] extreme or very serious damage will result from a denial of preliminary relief.'" *Id.*  Given these principles, it is

---

[4]   Because the requirements for specific performance overlap with those for injunctive relief, to the extent the Court determines that the test for the former applies here, the Republic satisfies that standard as well for all the reasons set forth below.  *See e.g., Guinness Harp Corp. v. Jos. Schlitz Brewing Co.*, 613 F.2d 468, 473 (2d Cir. 1980) (specific performance requires (i) that "there is no adequate monetary remedy," (ii) that the balance of equities favors specific performance, and (iii) that the public interest favors the remedy).

unsurprising that no court has ever issued the relief sought by NML, and that NML manifestly

fails to satisfy the strict requirements entitling it to its requested injunction here.[5]

## A.  NML Has Not Suffered Irreparable Harm And Otherwise Has An Adequate Remedy At Law

NML's motion must be denied because it is pursuing "actions involving breach

of contract where [it] ha[s] an adequate remedy at law."  *O'Neil v. Poitras*, 551 N.Y.S.2d 92, 93

(4th Dep't 1990).  *See also N.A.A.C.P. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995);

*Arctic Ocean Int'l Ltd. v. High Seas Ltd.*, No. 06 Civ. 1056 (LAP), 2009 WL 5103283, at *1

(S.D.N.Y. Dec. 28, 2009).  Where a plaintiff's injury could be "fully redressed by monetary

damages as exemplified by the cause of action . . . for breach of contract," it is black letter law

that the irreparable harm and inadequacy of a legal remedy required for an injunction do not

exist.  *See Haulage Enters. Corp. v. Hempstead Res. Recovery Corp.*, 426 N.Y.S.2d 52 (2d Dep't

1980).  Here, NML has alleged, and indeed has prevailed on, claims for breach of contract

arising from the Republic's nonpayment of principal and interest for which it desires

recompense.  Because that injury is remediable by a damages remedy, NML is not entitled to an

injunction under the most basic principles of contract law.

---

[5]   The unprecedented nature of NML's requested injunction is demonstrated by the lengths to which NML must go to find any caselaw that remotely supports its application.  *See* NML Br. at 12-13. Judge Martin's passing reference to hypothetical injunctive relief in *Nacional Financiera, S.N.C. v. Chase Manhattan Bank, N.A.*, No. 00 Civ. 1571 (JSM), 2003 WL 1878415 (S.D.N.Y. Apr. 14, 2003), is dicta.  In any event, that decision does not help NML, because Judge Martin noted that the pari passu clause is only relevant in "insolvency proceedings," which of course do not exist in the sovereign context, where instead all parties must rely on voluntary debt restructurings, which the Republic offered to all its creditors on equal terms.  NML is also not helped by its invocation of a California district court's unpublished order that appears to have in fact implicitly denied the plaintiff's motion for specific performance, and which neither refers to a pari passu clause, nor contains any legal reasoning whatsoever.  *See* Order, *Red Mountain Finance, Inc. v. Democratic Republic of Congo*, No. CV 00-0164 R (BQRx) (C.D.Cal. May 29, 2001).  What little precedential value that order ever had terminated when the court later vacated its ruling in a subsequent order.  *See O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect").

NML's central argument to the contrary, that the pari passu clause must "entitle[] NML to more than payments of principal and interest," because "NML would be entitled to those payments regardless of the [pari passu clause]," NML Br. at 9, proves too much.  Under that logic, NML would be entitled to an injunction or grant of specific performance enforcing every "non-monetary" provision in the Republic's bond documentation.  But as the Second Circuit reasoned in rejecting this very notion, "such a broad [proposition] would eviscerate the essential distinction between compensable and non-compensable harm," *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co. Ltd.*, 339 F.3d 101, 114 (2d Cir. 2003), and as such, "not all bargained-for contractual provisions provide a basis for injunctive relief," *Merit Capital Grp., LLC v. Trio Indus. Mgmt., LLC*, No. 04 Civ. 7690 (RCC), 2005 WL 53283, at *2 (S.D.N.Y. Jan. 10, 2005). Where a plaintiff's suit for damages against a defaulting creditor happens to include a secondary claim for the breach of a provision allegedly meant to protect the creditor in the event of default, this Court has held that equitable relief is inappropriate because the plaintiff "primarily seeks monetary relief in the form of repayment of Defendant's purported debt, [and] any potential harm in [such an] action is readily quantifiable and compensable with monetary damages at the conclusion of [the] action.  *See id.* at *2.  Thus, the fact that NML couches its demand for payment of its judgments as a claim for breach of the pari passu clause does not alter its true nature – NML is ultimately seeking money damages for missed principal and interest payments.

NML's citation to the Restatement of Contracts for the proposition that the inability to collect a judgment renders money damages inadequate is also unavailing.  *See* NML Br. at 10.  NML is actively pursuing enforcement of its judgments in the United States and elsewhere, which defeats any claim that it would necessarily be injured without an injunction here.  *See Plenum Fin. & Invs. Ltd. v. Bank of Zambia*, No. 95 Civ. 8350 (KMW), 1995 WL

600818, at *3 (S.D.N.Y. Oct. 11, 1995).  In any event, mere difficulty in enforcing a judgment –

which in the present case, is entirely the result of the limits imposed by Congress on execution

under the FSIA and the comparable sovereign immunity laws of other nations – does not, as a

matter of law, rise to the level of "irreparable harm."  *Centauri Shipping Ltd. v. W. Bulk Carriers*

*KS*, 528 F. Supp. 2d 186, 194 (S.D.N.Y. 2007); *Weston Compagnie Finance et D'Investissement,*

*S.A. v. La Republica del Ecuador*, No. 93 Civ. 2698 (LMM), 1993 WL 267282, at *2 (S.D.N.Y.

July 14, 1993); *cf. Black United Fund of N.J., Inc. v. Kean*, 763 F.2d 156, 161 (3d Cir. 1985)

(obstacles to enforcing judgment raised by Eleventh Amendment immunity does not transform

money damages into irreparable injury for injunction purposes).

        Nor is NML's attempt to analogize its position to that of a secured creditor

availing.  *See* NML Br. at 10-11.  As an initial matter, NML is forced to make this analogy

because there is *no precedent* for granting equitable relief based on the breach of a pari passu

clause.  And the analogy is particularly inapt here because by the express terms of the Republic's

bonds, NML is an *unsecured creditor* – it has no security interest in any of the Republic's

property, including any funds used to pay beneficial owners of Discounted Exchange Bonds.  *See*

*e.g.,* FAA ¶ 1(c) (Ex. G).  As the authority that NML cites makes clear, in a suit against a debtor,

unsecured creditors are "relegated to an action for damages and [] share [a] debtor's property

with other *unsecured debtors*."  *Marine Midland Trust Co. of N. Y. v. Alleghany Corp.*, 28 F.

Supp. 680, 683 (S.D.N.Y. 1939) (emphasis added).  NML, an unsecured creditor itself, cannot

use the pari passu clause as a means to obtain payment on better terms than other similarly

situated unsecured creditors (although that is precisely what NML demands).  In any event, it is

clear that while the well-defined and the exceedingly small class of contract provisions that

courts deem "non-compensable" does include security interest clauses, *see* 96 N.Y. Jur. 2d

*Specific Performance* § 53, it may not include pari passu provisions, despite the fact that such clauses are standard, boilerplate contained in many thousands of both corporate and sovereign debt agreements.  *See Exelon Generation Co., LLC v. Gen. Atomics Techs. Corp.*, 559 F. Supp. 2d 892, 900 (N.D. Ill. 2008) (rejecting plaintiff's attempt to analogize the purported breach of a contractual performance guarantee to cases involving "guarantees relating to security interests in specific collateral" and noting that performance guarantees describe the defendant's obligations and not the remedy for breach of those obligations).

Furthermore, NML's own behavior rebuts its claim of irreparable harm.

*First*, NML asserts that the Republic's alleged violation of the pari passu clause, and hence its alleged irreparable harm, began from the passage of the Lock Law in 2005 and the Republic's 2005 Exchange Offer.  Yet NML sought and obtained summary judgment in numerous cases since 2005 (when the Republic's regular interest payments on the Discounted Exchange Bonds began) solely for monetary damages, and filed additional complaints from 2008 through 2010, with no mention of a pari passu claim or non-monetary damages.  Instead, NML waited more than *five years* to bring a claim under the pari passu clause.  In the face of this extensive delay, NML is now barred from claiming irreparable harm as a basis for injunctive relief.  *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (reversing grant of an injunction for lack of irreparable harm where movant waited approximately two months: "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights.").

*Second*, NML's claim of irreparable harm is belied by its continued, additional purchases of hundreds of millions of dollars of deeply discounted nonperforming Republic debt *after* the Republic's 2005 Exchange Offer, during the very time period that it now claims it was

suffering "irreparable" harm due to the Republic's purported violation of the pari passu clause with respect to those bonds.  A highly sophisticated hedge fund like NML in the business of buying defaulted sovereign debt would not have behaved in this fashion – doubling, tripling, and quadrupling its bets on potential damages recoveries – had it truly been subject to irreparable harm from these alleged violations of the pari passu clause.  Because irreparable harm is the *sine qua non* requirement for any injunctive relief, and NML has failed to establish any such harm here, its request for injunctive relief must be denied.

**B.    The Balance Of Hardships And Public Interest Militate Decidedly In Favor Of Denying NML Its Requested Injunctive Relief**

NML's motion for injunctive relief also fails because the balance of hardships stemming from the failure to grant its requested injunction outweighs the prejudice that Exchange Offer participants will incur if the Court does order such relief.  As described above in Section III.A, the hardship alleged by NML here consists of monetary damages, which NML sustained with full knowledge as part of its strategy of speculating in defaulted sovereign debt.  Particularly here, where NML purchased the debt knowing not only that it was nonperforming, but also that the specific alleged violations of the pari passu clause at issue were ongoing, and then still waited years to sue, it cannot seriously be heard to plead that the balance of hardships now "tips decidedly in [its] favor."  *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir. 1981).

To the contrary, as noted in Section I, NML's requested injunction would interfere with payments to creditors who participated in the 2005 and 2010 Exchange Offers, resulting in substantial hardship to those creditors, as well as to the Republic and its citizens, who all reasonably expected the continuation of the status quo during NML's long delay in bringing these claims.  In addition, the same policy concerns that weigh in favor of encouraging

sovereign restructurings to take place also weigh in favor of rejecting NML's motion in order to provide certainty that completed restructurings cannot be upset by holdout creditors – especially when those holdouts have waited until years afterward to bring their claims.  *See, e.g.*, *EM Ltd.*, 131 F. App'x at 747; U.S. Statement of Interest at 2-6 (Ex. F); *cf. Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 109 F.3d 850, 853, 855 (2d Cir. 1997).

### C.   As Previously Demonstrated, NML Misreads The Pari Passu Clause And Is Barred By The Doctrine Of Laches

As stated above, the Republic will not repeat arguments already in the record, but restates them here for the sake of completeness.  NML is not entitled to the requested relief for the additional reasons that (i) its reading of the pari passu clause is wrong and (ii) it is barred by the doctrine of laches.  *See* Addendum B and submissions referenced there.

As for laches, this defense applies with equal force to each and every "me too" plaintiff.[6]  The *Varela* plaintiffs have owned their bond interests for nearly a decade and yet did not assert a pari passu claim until August 2011 – over six years after the Republic started servicing its restructured debt.  The *Aurelius* plaintiffs and Olifant similarly purchased their beneficial interests in defaulted Republic debt years ago and watched silently as the Republic made numerous restructured bond payments and conducted the 2010 Exchange Offer.  In any event, they of course acquired their claims subject to all available equitable defenses against their predecessors in interest, who necessarily themselves sat idly by while the Republic restructured its debt in 2005 and thereafter serviced it.  *See Caribbean S.S. Co., S.A. v. Sonmez Denizcilik Ve Ticaret A.S.*, 598 F.2d 1264, 1266 (2d Cir. 1979) (assignee of claim inherits claim with any limits

---

[6]   *See* Mem. of Law in Opp'n to Pls.' Mots. for Partial Summ. J. and for Injunctive Relief Pursuant to the Pari Passu Clause at 12-17, *Varela v. Republic of Argentina*, No. 10 Civ. 5338 (TPG) (S.D.N.Y. Sept. 23, 2011); Mem. of Law in Opp'n to Pls.' Mot. for Partial Summ. J. Pursuant to the Pari Passu Clause at 12-17, *Aurelius Capital Mater, Ltd. v. Republic of Argentina*, No. 09 Civ. 8757 (TPG) (S.D.N.Y. Nov. 9, 2011).

it had in the hands of the assignor); *Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d

675, 682 (2d Cir. 1989).  Thus, the "me too" plaintiffs are similarly barred from interfering with

the rights of the beneficial owners of over 91% of the Republic's defaulted debt who tendered

into the Exchange Offers.

## IV.   NML IS NOT ENTITLED TO A PRELIMINARY INJUNCTION PREVENTING THE REPUBLIC FROM ALTERING THE WAY IN WHICH IT SERVICES ITS RESTRUCTURED DEBT

NML's simultaneous request that the Court preliminarily enjoin the Republic

from altering the manner in which it services its Discounted Exchange Bonds should also be

denied.  NML cannot, as it must, demonstrate either "(1) a likelihood of irreparable harm in the

absence of the injunction; [or] (2) either a likelihood of success on the merits or sufficiently

serious questions going to the merits to make them a fair ground for litigation, with a balance of

hardships tipping decidedly in the movant's favor."  *Seijas v. Republic of Argentina*, 352 F.

App'x 519, 521 (2d Cir. 2009) (citation and internal quotation marks omitted).

### A.  NML Cannot Establish Irreparable Harm

NML's application for a preliminary injunction fails because it cannot

demonstrate irreparable harm.

*First*, NML does not and cannot show that the alteration of the payment

mechanisms at which its motion is directed will cause it to "suffer an injury that is neither remote

nor speculative, but actual and imminent."  *See Grand River Enter. Six Nations, Ltd. v. Pryor*,

481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted).  NML seeks to "protect [the

Court's] jurisdiction" by preventing the Republic from "employ[ing] agents beyond the Court's

jurisdiction" to make payments on its Discounted Exchange Bonds, NML PI Br. at 6, but as

made clear above, the Republic's payments *already* take place outside the United States and

beyond this Court's jurisdiction.  In any event, although NML suggests that the Republic might

23

divert its payments out of the Court's jurisdiction while its permanent injunction motion is pending, it puts forth no evidence supporting this allegation other than self-serving speculation. As the Court has held in these cases when it denied an injunction similarly based on purely speculative harm, "[t]o get an injunction, there has to be evidence that the party that you want to enjoin is planning to, is acting in such a way as to violate the rights of the plaintiff.  There has to be some evidence of a plan, a threat of activity, of danger.  *There has to be evidence*."  Hr'g Tr. at 43:21-25, *Capital Ventures Int'l v. Republic of Argentina*, No. 05 Civ. 4085 (S.D.N.Y. May 4, 2007) (Ex. D) (emphasis added), *aff'd*, *Captial Ventures Int'l v. Republic of Argentina*, 282 F. App'x 41, 42 (2d Cir. 2008) (holding that this Court "properly denied CVI's motion for an injunction" where CVI's claim of imminent harm was based on a mere "assertion").  NML's wholly unsupported assertion that the Republic can simply "be expected to attempt to reorder its affairs," NML PI Br. at 6, does not, as a matter of law, constitute "evidence" of a plan by the Republic to alter its Discounted Exchange Bond payment mechanisms, and NML accordingly does not demonstrate that it will suffer irreparable harm absent a preliminary injunction.[7]

       *Second*, even if NML's claimed harm were not remote and speculative, as it is, the Court should still reject NML's motion because, as established above in Section III.A, NML is not "irreparably harmed" when the Republic pays beneficial owners of its Discounted Exchange Bonds, and thus *a fortiori* it is not harmed when the Republic alters the way in which it executes those payments.  Nothing prevents the Republic from paying its creditors in any

---

[7]    NML's counsel claims that he "believe[s] that Argentina may react to" NML's renewed motion for injunctive relief "by taking steps to undermine the Court's ability to award effective relief."  Decl. of Robert A. Cohen, dated Jan. 3, 2012, ¶ 12.  In support of this assertion he refers the Court to AR-SAT's transfer out of the United States of property it obtained from Honeywell Inc.  In fact, the Court found that property to be *immune* from restraint under the FSIA, so AR-SAT was obviously entitled to do with it as it wished, and NML quite deliberately did not seek a stay of the Court's ruling.  In any event, the Court has also held that AR-SAT is not the Republic but a legally separate entity, and so its past use of its own property is in no way any indication of what the Republic might do in the future.

manner that it is contractually permitted to do so.  Nor does NML have a right to demand that payments to others occur in a certain manner.

**B.  NML Is Unable To Demonstrate A Likelihood Of Success On The Merits Or The Existence Of Sufficiently Serious Questions Going To The Merits**

Even if NML could establish irreparable harm, which it clearly cannot, NML is not entitled to its requested preliminary injunction, and it has no likelihood of success in obtaining the ultimate permanent injunction it demands, because (i) the Court has already denied NML the exact relief it now seeks on the grounds that it improperly interferes with the rights of participants in the Republic's Exchange Offers, (ii) NML's relief is barred under the FSIA and state law because the payments with which NML seeks to interfere take place outside the United States, (iii) NML has an adequate remedy at law, has not suffered irreparable harm, and a balance of the relative hardships and the public interest militate decidedly against granting the requested relief, and (iv) NML's reading of the pari passu clause is wrong and its claim is barred by laches.  *See* Points I-III, *supra*.

## CONCLUSION

For the foregoing reasons, NML's motion for permanent injunctive relief (joined by eighteen "me too" plaintiffs) should be denied.  In addition, NML's motion for preliminary injunctive relief should be denied as well.

Dated: New York, New York
       February 1, 2012

                              Respectfully submitted,

                              CLEARY GOTTLIEB STEEN & HAMILTON LLP


                              By:   /s/ Carmine Boccuzzi
                                  Jonathan I. Blackman (jblackman@cgsh.com)
                                  Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

                              One Liberty Plaza
                              New York, New York 10006
                              (212) 225-2000
                              Attorneys for the Republic of Argentina

26

# Addendum A

<u>Submissions By The Republic In Opposition To NML's 2010 Motion Concerning the Construction Of The Pari Passu Clause</u>

1.  December 10, 2010 Mem. of Law in Opp. to Pl.'s Mots. for Partial Summ. J. and for Injunctive Relief Pursuant to the Pari Passu Clause

2.  December 10, 2010 Declaration of Stephen Choi

3.  December 10, 2010 Declaration of Carmine D. Boccuzzi in Opp. to Pl.'s Mots. for Partial Summ. J. and for Injunctive Relief Pursuant to the Pari Passu Clause, which attached:

Statements of Interest, Amicus Briefs and Other Reports

Ex. A   January 12, 2004 Statement of Interest of the United States, *Macrotecnic Int'l v. Republic of Argentina*, 02 Civ. 5932 (TPG); *EM Ltd. v. Republic of Argentina*, 03 Civ. 2507 (TPG)

Ex. B   January 12, 2004 Br. of the Fed. Reserve Bank of N.Y. as Amicus Curiae in *Macrotecnic Int'l Corp. v. Republic of Argentina*, 02 Civ. 5932; *EM Ltd. v. Republic of Argentina*, 03 Civ. 2507 (TPG)

Ex. C   January 12, 2004 Br. of The New York Clearing House Association L.L.C. as Amicus Curiae in *Macrotecnic Int'l Corp. v. Republic of Argentina*, 02 Civ. 5932; *EM Ltd. v. Republic of Argentina*, 03 Civ. 2507 (TPG)

Ex. D   March 2005 Report by the Bank of England Financial Markets Law Committee, Issue 79 – Pari Passu Clauses

Ex. E   August 31, 2003 Troland Link Declaration, *LNC Invs. LLC v. Republic of Nicaragua,* Folio 2000 1061, R.K. 240/03 (Commercial Ct. of Brussels)

Articles

Ex. F   Lee C. Buchheit & Ralph Reisner, *The Effect of the Sovereign Debt Restructuring Process on Inter-Creditor Relationships*, Univ. Ill. Law Rev. 493 (1988)

Ex. G   United Nations Centre on Transnational Corporations Advisory Studies, No. 4, Series B, International Debt Restructuring:  Substantive Issues and Techniques (1989) (excerpts)

Ex. H   July 19, 1990 Memorandum to the Executive Directors of the World Bank, Review of IBRD's Negative Pledge Policy with Respect to Debt and Debt Service Reduction Operations (excerpts)

Ex. I   Lee C. Buchheit, The Pari Passu Clause Sub Specie Aeternitatis, 10 Int'l Fin. L. Rev. 11 (1991)

Ex. J   Michael Gruson & Stephen Hutter, International Bar Association Project on Legal Opinions in International Business Transactions, 676 PLI/Comm 405, 421 (October 1993)

Ex. K   G. Mitu Gulati & Kenneth K. Klee, Sovereign Piracy, 56 Bus. Law. 635 (2001)

Ex. L   Philip R. Wood, Pari Passu Clauses – What Do They Mean?, Butterworths J. of Int'l Banking and Fin. L. 371, 371 (November 2003)

Ex. M   Stephen J. Choi & G. Mitu Gulati, Contract as Statute, 104 Mich. L. Rev. 1129, 1134 (2006)

Ex. N   Umakanth Varottil, Sovereign Debt Documentation: Unraveling the Pari Passu Mystery, 7 DePaul Bus. & Com. L.J. 119 (2008)

Ex. O   Michael Bradley, James D. Cox, Mitu Gulati, The Market Reaction to Legal Shocks and Their Antidotes: Lessons From the Sovereign Debt Market, 39 J. Legal Stud. 289 (2010)

Other Documents

Ex. P   1994 Fiscal Agency Agreement (excerpts)

Ex. Q   Certificate of Bond ISIN US040114AN02, issued October 9, 1996 (excerpts)

Ex. R   *Kensington Int'l Ltd. v. Republic of Argentina*, 2002 No. 1088 (Commercial Ct. 16 Apr. 2003) (excerpts)

Ex. S   January 14, 2004 Letter from K. Reed to Judge Griesa, *NML Capital, Ltd. v. The Republic of Argentina*, 03 Civ. 8845 (TPG); *Macrotecnic Corp. v. The Republic of Argentina*, 02 Civ. 5932 (TPG); and *EM Ltd. v. The Republic of Argentina*, 03 Civ. 2507 (TPG)

Ex. T   January 15, 2004 Letter from J. Blackman to Judge Griesa, *NML Capital, Ltd. v. The Republic of Argentina*, 03 Civ. 8845 (TPG); *Macrotecnic Corp. v. The Republic of Argentina*, 02 Civ. 5932 (TPG); and *EM Ltd. v. The Republic of Argentina*, 03 Civ. 2507 (TPG)

Ex. U   January 15, 2004 Hr'g Tr., *Allan Applestein, TTEE FBO D.C.A. Grantor Trust*, 02 Civ. 1773 (TPG) (excerpts)

Ex. V   February 3, 2004 Answer and Counterclaim, *NML Capital, Ltd. v. Republic of Argentina*, 03 Civ. 8845 (TPG)

Ex. W   April 2, 2004 Hr'g Tr., *NML Capital, Ltd. v. Republic of Argentina*, 03 Civ. 8845 (TPG) (excerpts)

Ex. X   April 29, 2005 Answer and Counterclaim, *NML Capital, Ltd. v. Republic of Argentina*, 05 Civ. 2434 (TPG)

Ex. Y   May 23, 2005 Mem. Of Law in Supp. Of Pl.'s Mot. to Dismiss Counterclaim, *NML Capital, Ltd. v. Republic of Argentina*, 05 Civ. 2434 (TPG)

Ex. Z   November 9, 2006 Hr'g Tr., *EM Ltd. v. Republic of Argentina*, 06 Civ. 7792 (TPG) (excerpt)

Ex. AA   March 28, 2008 Order,  *NML Capital, Ltd. v. Republic of Argentina*, 05 Civ. 2434 (TPG)

Ex. BB   November 4, 2009 Hr'g Tr., *Capital Ventures Int'l v. Republic of Argentina*, 04 Civ. 4085 (TPG); *NML Capital, Ltd. v. Republic of Argentina*, 03 Civ. 8845 (TPG); *EM Ltd. v. Republic of Argentina*, 03 Civ. 2507 (TPG) (excerpt)

Ex. CC   January 28, 2010 Registration Statement, Amend. No. 1 (excerpts)

Ex. DD   February 2, 2010 Notice of Mot. for Preliminary Injunction, *H.W. Urban GmbH, et al. v. Republic of Argentina*, 02 Civ. 5699 (TPG)

Ex. EE   Drew Benson & Ben Bain, Defaulted Debt Trading Sinks as Elliott Bets on Courts: Argentina Credit, Bloomberg (Sept. 20, 2010)

Ex. FF   October 1, 2010 Annual Report (Form 18-K) (excerpts)

Ex. GG   October 29, 2010 Order Modifying Attachment and Restraining Orders, *Capital Ventures Int'l v. Republic of Argentina*, 05 Civ. 4085, 06 Civ. 207 (TPG)

Ex. HH   December 3, 2010 U.S. Prospectus Supplement (excerpts)

**Addendum B**

Pending Pari Passu Claims[1]

| Case | Principal Claimed | Total Claim (including interest estimated as of Feb. 1, 2012)* |
|---|---|---|
| Aurelius Capital Master Ltd. (09 CV 8757) | $29,950,000 | $98,785,408.53 |
| Aurelius Capital Master Ltd. (09 CV 10620) | $54,090,614 | $178,096,301.71 |
| Aurelius Capital Master Ltd. and Aurelius Opportunities Fund II, LLC (10 CV 3507) | $20,565,153 | $67,624,356.61 |
| Aurelius Capital Master Ltd. and Aurelius Opportunities Fund II, LLC (10 CV 3970) | $21,280,781 | $70,016,362.33 |
| Aurelius Capital Master Ltd. and Aurelius Opportunities Fund II, LLC (10 CV 8339) | $10,640,000 | $35,330,972.76 |
| Aurelius Opportunities Fund II, LLC and Aurelius Capital Master Ltd. (10 CV 1602) | $6,856,773 | $22,814,914.91 |
| Blue Angel Capital I LLC (10 CV 0401) | $11,522,724 | $38,566,099.74 |
| Blue Angel Capital I LLC (10 CV 4782) | $46,043,755 | $154,106,619.89 |

---

[1]   These plaintiffs also hold judgments in other cases against the Republic totaling $2.09 billion, and have been granted summary judgment in actions in which they purportedly hold additional claims for an estimated $272.5 million (including principal and interest estimated as of Feb. 1, 2012).  If they are successful here, they will presumably bring pari passu claims in those cases as well.

| | | |
|---|---|---|
| NML Capital Ltd.<br>(08 CV 6978) | $81,080,000 | $197,278,516.08 |
| NML Capital Ltd.<br>(09 CV 1707) | $30,000 | $355,893.18 |
| NML Capital Ltd.<br>(09 CV 1708) | $156,570,549 | $434,614,268.39 |
| Varela et al.<br>(10 CV 5338) | $367,000 | $810,200.65 |
| Olifant Fund, Ltd.<br>(10 CV 9587) | $5,000,000 | $45,253,302.85 |

**$1,343,653,217.63**

* Interest amounts in all pending cases have been calculated based on principal amounts in defaulted Republic debt that plaintiffs allege to hold. The Republic makes no representation or admission as to the validity or size of plaintiffs' claims.