UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

NML CAPITAL, LTD.,

        Plaintiff,

   v.

REPUBLIC OF ARGENTINA,

        Defendant.
---------------------------------------------------------x

08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

# REPLY BRIEF IN SUPPORT OF THE RENEWED MOTION OF NML CAPITAL, LTD. FOR SPECIFIC ENFORCEMENT OF THE EQUAL TREATMENT PROVISION AND A PRELIMINARY INJUNCTION

**GIBSON, DUNN & CRUTCHER LLP**
Theodore B. Olson
Matthew D. McGill
Jason J. Mendro
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500

**DECHERT LLP**
Robert A. Cohen
Charles I. Poret
1095 Avenue of the Americas
New York, NY 10036-6796
(212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*

**TABLE OF CONTENTS**

<u>**Page**</u>

I.  INTRODUCTION ................................................................................................... 1

II. ARGUMENT .......................................................................................................... 3

    A.   NML Is Entitled To Specific Performance Of The Equal Treatment Provision ............................................................................................... 3

        1.   Argentina Mischaracterizes The Relief NML Seeks ............................... 3

        2.   NML Will Suffer Irreparable Harm Without Equitable Enforcement Of The Equal Treatment Provision ..................................... 4

        3.   Specific Performance Of The Equal Treatment Provision Is Equitable ............................................................................................... 7

    B.   There Is No Barrier To Granting The Specific Performance Remedy To Which NML Is Entitled ....................................................................... 10

        1.   The FSIA and State Law Present No Bar To Specifically Enforcing An Equal Treatment Promise .................................................. 10

        2.   Argentina Blatantly Distorts The Court's Prior Ruling ........................... 11

    C.   NML Is Entitled To A Preliminary Injunction For The Short Period Of Time, If Any, Necessary For The Court To Consider This Renewed Motion ............................................................................................... 12

III. CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BIB Constr. Co. v. Fireman's Ins. Co.*,
    214 A.D.2d 521 (N.Y. App. Div. 1995) ................................................................................. 5

*Checker Motors Corp. v. Chrysler Corp.*,
    405 F.2d 319 (2d Cir. 1969) ................................................................................................ 12

*DiLaura v. Power Authority of State of N.Y.*,
    982 F.2d 73 (2d Cir. 1992) .................................................................................................... 7

*Elliott Associates L.P. v. The Republic of Peru*, General Docket No. 2000/QR/92 (Court
    of Appeals of Brussels, 8th Chamber, Sept. 26, 2000) .......................................................... 4

*Fin. One Public Co., Ltd. v. Lehman Bros. Special Fin. Inc.*,
    414 F.3d 325 (2d Cir. 2005) ................................................................................................ 10

*Marine Midland Trust Co. v. Alleghany Corp.*,
    28 F. Supp. 680 (S.D.N.Y. 1939) .......................................................................................... 5

*Merit Capital Group, LLC v. Trio Industrial Management LLC*,
    No. 04 Civ. 7690 (RCC), 2005 WL 53283 (S.D.N.Y. Jan. 10, 2005) ................................ 6, 7

*Nacional Financiera, S.N.C. v. Chase Manhattan Bank N.A.*,
    No. 00 Civ. 1571, 2003 WL 1878415 (S.D.N.Y. Apr. 14, 2003) ....................................... 4, 5

*Red Mountain Finance, Inc. v. Democratic Republic of Congo*,
    No. CV 00-0164 R (BQRx) (C.D. Cal. May 29, 2001) ...................................................... 4, 5

*Riley v. MEBA Pension Trust*,
    586 F.2d 968 (2d Cir. 1978) ................................................................................................ 12

*Rossini v. Republic of Argentina*,
    No. 11-100-cv, 2011 WL 2600404 (2d Cir. July 1, 2011) .................................................. 11

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
    128 S. Ct. 2531 (2008) .......................................................................................................... 7

*Travelers' Ins. Co. v. Brass Goods Mfg. Co.*,
    146 N.E. 377 (N.Y. 1925) ...................................................................................................... 7

*Weston Compagnie Finance et D'Investissement, S.A. v. La Republica del Ecuador*,
    No. 93 Civ. 2698 (LMM), 1993 WL 267282 (S.D.N.Y. July 14, 1993) ............................... 6

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co. Ltd.*,
    339 F.3d 101 (2d Cir. 2003) ............................................................................. 5, 6

**Statutes**

28 U.S.C. § 1609 ............................................................................................................ 10

28 U.S.C. § 1610 ............................................................................................................ 10

**Other Authorities**

Mem. of Points and Authorities In Support of the Motion for Specific Performance in Aid
    of Execution and Assignment of Assets, *Red Mountain Finance, Inc. v. Democratic
    Republic of Congo,* No. CV 00-0164 R (Apr. 30, 2001), D.E. 98 .............................. 4

# I. INTRODUCTION

Argentina's opposition brief ("Opp.") is premised on the fictional notion that the equitable relief sought by NML and other movants[1] would "prevent the Republic from making any payments on its restructured debt." Opp. 10. To the contrary, the equitable relief sought by NML requires *only* that Argentina live up to the covenant it drafted and fulfill its payment obligations to NML when it fulfills its obligations to holders of Exchange Bonds.

As the Court repeatedly has found, Argentina has the ample means to pay NML and the other movants what it is owed and to service its Exchange Bonds. Indeed, Argentina currently has at least $46 billion in reserves on deposit at the Bank for International Settlements. *See* NML's Renewed Motion For Specific Performance ("Mem.") 6, 14. Pointedly, in its 26-page opposition, Argentina never once suggests that it lacks the ability or means to comply with the equitable relief NML seeks.

In claiming that the equitable relief NML seeks would bring about "the disruption of all payments to holders of restructured Republic-issued debt" (Opp. 1), Argentina levels a not-so-subtle threat to defy any equitable relief issued by the Court, and to compel NML to seek to restrain Argentina's agents from facilitating further violations of the Equal Treatment Provision. But a litigant's threat to violate a proposed order hardly is a reason to deny the order, particularly where the threat rings so hollow. As explained in NML's opening brief, it is implausible that Argentina, despite having ample resources to pay NML and the other movants on the equal terms

---

[1] As noted by Argentina (Opp. 8-10 & Addendum B), several other creditors have filed equal treatment claims in response to the December 7 Order. Notably, Argentina erroneously represents that it owes NML a total of $632,248,677.65 with respect to NML's three pre-judgment claims at issue in the present motion. *See* Opp. Addendum B. In fact, the actual figure is $651,772,421.27. NML is unable to verify the accuracy of Argentina's statement regarding the amounts owed to other creditors that have filed equal treatment claims.

they were promised, would choose instead not to pay the Exchange Bonds and harm its economy.

Once that empty threat is stripped away, Argentina's arguments against equitable relief are makeweight. After nearly a decade of evading money judgments, Argentina's argument that its continuing violation of the Equal Treatment Provision "is remediable by a damages remedy" (Opp. 17) is risible. And on the balance of hardships, Argentina points to no harm that it will suffer if it is compelled to live up to its promise of equal treatment. It complains only of the harm "Exchange Offer participants will incur if the Court does order such relief." Opp. 21. But, as already explained, the only harm that possibly could come to Exchange Bondholders if the Court ordered the relief NML requests is if Argentina chose to breach its obligations. Because Argentina indisputably has the means to pay the Exchange Bondholders, NML, and the other movants, whether harm befalls Exchange Bondholders is entirely within Argentina's control—just as it is now. Argentina's implicit threat not to pay the Exchange Bondholders rather than pay NML—the financial equivalent of hostage-taking—does not alter the equities, much less tip them in Argentina's favor.

Finally, with respect to the form of the equitable relief, Argentina suggests that its obligations to NML should be discounted to the same extent as those of creditors that accepted Argentina's Exchange Offers. But, as the Court recognized in the September 28 hearing, that the Exchange Bondholders accepted a discount in exchange for payment certainty "is no reason whatever for anything." *See* Transcript of September 28, 2011 Argument ("Tr."), 39:25-40:3. The Equal Treatment Provision requires equal treatment of "***payment obligations***"—not to equalize recovery outcomes to particular creditors. Argentina does not possess any right to impose a settlement with certain creditors on all creditors. The inescapable fact is that Argentina pays its ob-

2

ligations under the Exchange Bonds in full as they come due. Its payment obligation to NML deserves the same treatment—equal treatment.

## II.     ARGUMENT

### A.    NML Is Entitled To Specific Performance Of The Equal Treatment Provision

#### 1.    Argentina Mischaracterizes The Relief NML Seeks

Having systemically breached its promise under the Equal Treatment Provision for seven years, Argentina now attempts to evade enforcement of that Provision by purposefully mischaracterizing the relief that NML seeks. Argentina claims that NML is asking for a "mandatory injunction" that "command[s] some positive act" (Opp. 16 (internal quotation omitted)), but also that NML "seek[s] to enjoin the Republic from making payments on its restructured debt" (Opp. 12), which would, of course, not be the command of a "positive act." Argentina also declares that NML seeks to command what Argentina must do with its assets abroad and also to "execute upon" assets held in trust in the United States. Opp. 13-14. These mischaracterizations fail to obscure the straightforward nature of the relief NML has requested.

NML's Proposed Order merely requires Argentina to specifically perform its promise under the Equal Treatment Provision by restoring the rank of Argentina's payment obligations to NML to a rank that is at least equal with all other "unsecured and unsubordinated External Indebtedness"—just as Argentina promised. *See* Mem. 12. The Court already has found that Argentina has breached, and continues to breach, this promise when it makes "payments currently due under the [2005 and 2010] Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds." Dec. 7 Order at 4. All the Proposed Order would require is for Argentina to honor its payment obligations to NML whenever, and on the same basis, that it honors its obligations to the Exchange Bondholders. The Order would not at-

tach or execute upon any assets—including Argentine funds located abroad or assets held in trust within the United States. *See infra* pp. 11-12.

The proper remedy for a breach of a promise of equal treatment is to require equal treatment. This is why the only courts to have considered a breach of an equal treatment provision have found that such a remedy is appropriate. *See, e.g.*, *Elliott Associates L.P. v. The Republic of Peru*, General Docket No. 2000/QR/92 (Court of Appeals of Brussels, 8th Chamber, Sept. 26, 2000). Argentina cannot dispute that NML's Proposed Order is the sort that Judge Martin noted might be appropriate in *Nacional Financiera, S.N.C. v. Chase Manhattan Bank N.A.*, No. 00 Civ. 1571, 2003 WL 1878415, at *2 (S.D.N.Y. Apr. 14, 2003). Instead, Argentina merely refers to Judge Martin's conclusion as "dicta." Opp. 17 n.5. Furthermore, Argentina casts no doubt on the fact that *Red Mountain Finance, Inc. v. Democratic Republic of Congo*, No. CV 00-0164 R (BQRx) (C.D. Cal. May 29, 2001), Ex. Y to Dkt. 231 (Declaration of Robert A. Cohen ("Cohen Decl.")), ordered the functional equivalent of the Proposed Order as a remedy for an equal treatment breach. And while Argentina complains that the *Red Mountain* order does not refer to an equal treatment provision (Opp. 17 n.5), the underlying briefing makes clear that the relief granted there was based upon the violation of exactly such a provision (Mem. of Points and Authorities In Support of the Mot. for Specific Performance in Aid of Execution and Assignment of Assets, D.E. 98, No. CV 00-0164 R, at 6–9 (Apr. 30, 2001)). Notably, Argentina does not cite a *single case* from *any court* that holds that an order compelling equal treatment is an inappropriate remedy for the breach of an equal treatment provision.

    2.    **NML Will Suffer Irreparable Harm Without Equitable Enforcement Of The Equal Treatment Provision**

The Court has already rejected Argentina's argument that "nothing can be done about" its breach of the Equal Treatment Provision beyond ordering another money judgment that Argenti-

na will ignore. Tr. 28:1-3; *but see* Opp. 18. NML is, therefore, seeking specific enforcement of Argentina's promise that NML will retain at least an equal ***position*** with all other unsecured, external creditors. As NML explained in its opening memorandum, the breach of a promise to provide a creditor with a certain position vis-à-vis other creditors causes a non-compensable loss, which courts regularly enforced through equitable relief. *See* Mem. 10 (citing *BIB Constr. Co. v. Fireman's Ins. Co.*, 214 A.D.2d 521, 523 (N.Y. App. Div. 1995); *Marine Midland Trust Co. v. Alleghany Corp.*, 28 F. Supp. 680, 683-84 (S.D.N.Y. 1939).

Argentina has no coherent response to these authorities. Its argument that NML is not entitled to specific performance because NML is an unsecured creditor is a red herring. Opp. 19. NML has never claimed to have the position of a security interest in Argentina's ***property*** vis-à-vis other creditors. But what NML does have—as the Court found in its December 7 Order—is a contractually-guaranteed ***position*** with regard to the fulfillment of ***payment obligations*** that Argentina has to other unsecured creditors. Just as a court may specifically enforce a promise to a certain security position with regard to certain property when faced with a security provision (*see, e.g., BIB Constr.*, 214 A.D.2d at 523), that court has the authority to enforce a certain position with regard to payment obligations when dealing with an equal treatment provision (*see, e.g., Red Mountain Finance* (Order) (May 29, 2001), *Nacional Financiera*, 2003 WL 1878415, at *2).

The few cases Argentina cites do nothing to contradict the principle that the breach of the right to a particular position vis-à-vis other creditors constitutes irreparable harm. For example, *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co. Ltd.*, 339 F.3d 101, 114 (2d Cir. 2003), actually supports NML's position. The Second Circuit there found that denial of minority voting rights in corporate governance was an irreparable harm, explaining that even though the contrac-

5

tual breach caused harm that "translates to damages compensable by a monetary award," equitable relief was still appropriate because "the **breach itself** . . . constitute[s] a non-compensable injury." *Id.* at 113 (emphasis added).  This reasoning applies to a right to a certain position vis-à-vis payment obligations to other creditors, as embodied in the Equal Treatment Provision.

Nor does Argentina's citation (Opp. 19) to *Weston Compagnie Finance et D'Investissement, S.A. v. La Republica del Ecuador*, No. 93 Civ. 2698 (LMM), 1993 WL 267282 (S.D.N.Y. July 14, 1993), support its argument.  In that case, Judge McKenna denied a stay pending appeal of a decision that, in effect, permitted Ecuador to remove certain property from the United States.  That decision is inapposite to this case.  Ecuador never promised that it would refrain from removing the property from the United States, whereas the central purpose of the motion at issue here is to enforce an explicit promise Argentina did make:  the promise to give equal treatment to its payment obligations to NML.  Furthermore, in *Weston*, Judge McKenna explained that it was "less [than] clear" that the denial of the stay would irreparably harm the plaintiff because the "plaintiff has not shown that . . . a final judgment of a court of the United States would not be ***recognized, and enforced, in Ecuador***." *Id.* at *2 (emphasis added).  If the judgment could not be enforced in Ecuador, Judge McKenna might well have concluded that the plaintiff would suffer irreparable harm absent equitable relief.  Here, of course, it is undisputed that the Court's judgments cannot be enforced in Argentina, under the explicit terms of the Lock Law and Law 26,547.

Argentina's reliance on *Merit Capital Group, LLC v. Trio Industrial Management LLC*, No. 04 Civ. 7690 (RCC), 2005 WL 53283 (S.D.N.Y. Jan. 10, 2005), is similarly misplaced.  *See* Opp. 18.  Contrary to Argentina's representation, *Merit* did not hold that a plaintiff may not obtain specific performance as a remedy for a "breach of a provision allegedly meant to protect the

creditor in the event of default" if the plaintiff also asserted a claim for money damages. Opp. 18. Rather, *Merit* held that a plaintiff is not entitled to a preliminary injunction based merely on "speculative and unsubstantiated" assertions that it will incur harm before a determination of liability. *Id.* at *2. That holding is irrelevant here. NML seeks a permanent injunction based on violations of its contractual rights that are anything but speculative. In fact, NML's claims are so well substantiated that the Court has already held that Argentina breached the Equal Treatment Provision—***repeatedly***. Neither *Merit* nor any other case cited by Argentina casts doubt on the right of creditors to obtain relief when they have already proven that they were stripped of promised protections.

Argentina's remaining arguments concerning irreparable harm are meritless. Argentina's claim that NML has not suffered irreparable harm because NML bought already-defaulted bonds (Opp. 20) is frivolous, given that is well-settled that "the assignee of a cause of action recovers in the right of his assignor and to the extent that the assignor might himself recover." *Travelers' Ins. Co. v. Brass Goods Mfg. Co.*, 146 N.E. 377, 378 (N.Y. 1925); *see also Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 128 S. Ct. 2531, 2534-35, 2546 (2008). And the Court has already held that Argentina's argument that NML may not bring its Equal Treatment Provision claim well within the statute of limitations due to laches has "no merit . . . at all." Tr. 9:2. The law-of-the-case precludes Argentina from relitigating this argument. *See DiLaura v. Power Authority of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992).

    **3.**    **Specific Performance Of The Equal Treatment Provision Is Equitable**

Argentina does not dispute that failure to specifically enforce the Equal Treatment Provision will severely harm NML on an on-going basis. Mem. 12-13. Instead, Argentina claims that requiring it to honor its equal treatment promise would somehow "jeopardize—indeed, to destroy—the rights of the" Exchange Bondholders. Opp. 1; *see also id.* ("the destruction of the

7

Republic's arduously achieved restructuring"); *id.* ("the disruption of all payments to holders of restructured Republic-issued debt"); *id.* at 3 ("It would not be fair to the defaulted debt holders who tendered over $74.5 billion of their bond interests in the Republic's debt restructuring to stop payments to them."). This alleged "disruption" (*id.* at 1) of payments to the Exchange Bondholders—one that would result from Argentina's own making—is the ***only*** hardship that Argentina claims would result to itself or any other third parties from granting NML's requested relief. *Id.* at 21. This Court should reject Argentina's unfounded scare tactics, which are nothing more than an attempt to avoid just relief so that Argentina can extend its scheme to evade creditors in perpetuity.

Argentina does not dispute that it has in excess of $46 billion in foreign exchange reserves and various other sources of liquidity, more than enough to pay both NML and the other movants in full, while also continuing to service its regularly-scheduled payments to the Exchange Bondholders. Mem. 6, 14. So, it is not NML's Proposed Order that would "prevent" or "stop" payments to the Exchange Bondholders, but rather ***Argentina's choice*** to do so. In substance, Argentina is threatening to not pay the Exchange Bondholders rather than to pay NML. But Argentina cannot deprive NML of equitable relief to which NML is otherwise entitled—and thus evade enforcement of the equal treatment promise that it made—by threatening to harm third parties in retaliation. Equity does not countenance such hostage-taking as a defense against the imposition of relief, and such tactics could not possibly tip the balance of equities in a defendant's favor.[2]

---

[2] To the extent Argentina's threat to harm the Exchange Bondholders is relevant at all, one would also have to take into account the fact that the Exchange Bondholders would be at least partially responsible for their predicament because they (on Argentina's telling) urged Argentina to breach the Equal Treatment Provision by enacting the Lock Law. *See* Opp. 5

8

In any event, Argentina more likely than not will comply with the Proposed Order by paying both NML and the Exchange Bondholders in full. Argentina nowhere denies that it "could not reasonably be expected to default on its obligations to the Exchange Bondholders, just to evade paying what it owes to NML." Mem. 14. While Argentina can afford to pay both NML and the Exchange Bondholders, it cannot now afford to refuse to pay the Exchange Bondholders, not least because of its need in the coming years to roll over substantial amounts of its external debt. Argentina also is likely to comply with the Proposed Order because Argentina cannot process payments to the Exchange Bondholders without the assistance of New York-based financial intermediaries. Mem. 16-17. Neither Argentina nor its attorneys and agents would not want to be found in contempt of the Court.

Argentina's contention that it would be inequitable to pay both NML and the Exchange Bondholders what it currently owes to them (Opp. 1) also is without merit. As the Court explained at the September 28 hearing, "the idea that the Republic is somehow disabled from paying these judgments [to NML] because that would mean that the plaintiffs get more money than the exchange offer people, that is no reason whatever for anything." Tr. 39:25-40:3. The Exchange Bondholders made the business judgment to take part in the 2005 and 2010 Exchanges, which extinguished Argentina's payment obligations under the bonds they previously held and replaced them with new payment obligations under the Exchange Bonds. Argentina now is obligated to pay—and the Exchange Bondholders are entitled to receive—only the payments specified in the Exchange Bonds, which the Exchange Bondholders have been receiving for years. NML made a different choice; it retained the payment obligations under the FAA and decided to bear the burden and great expense of litigation. That the payment obligations currently due to

---

("the Lock Law, which was enacted by the Republic at the express urging of bondholder groups and other bondholder representatives").

9

NML are larger than those owed to the Exchange Bondholders is of no moment.  Equity does not require creditors owed different amounts to be paid the same sum.  *See Fin. One Public Co., Ltd. v. Lehman Bros. Special Fin. Inc.*, 414 F.3d 325, 344 (2d Cir. 2005) ("LBSF is receiving merely what it is entitled to under the bills, and if other creditors do not receive the same thing that is because LBSF is differently situated from other creditors.").[3]

## B. There Is No Barrier To Granting The Specific Performance Remedy To Which NML Is Entitled

### 1. The FSIA and State Law Present No Bar To Specifically Enforcing An Equal Treatment Promise

Argentina's argument that the Proposed Order would violate the Foreign Sovereign Immunities Act ("FSIA") because "it seeks to enjoin the Republic's use of its assets outside the United States" (Opp. 13) is based upon mischaracterization of NML's requested relief and the FSIA.  The FSIA limits the Court's authority to order attachment or execution of a foreign sovereign's assets.  *See* 28 U.S.C. §§ 1609, 1610.  Argentina asserts—based upon the conclusory and unsubstantiated affidavit of Matias Isasa—that there are no assets of the Republic in the United States used to pay the Exchange Bondholders.  Opp. 13-14.  There has been no discovery with respect to the matters set forth in the Isasa Affidavit and NML does not concede its accuracy.  But even accepting Argentina's factual allegations, NML's Proposed Order does not attach or execute upon Argentina's assets.  The Proposed Order would merely require *Argentina itself*—a party that is indisputably subject to the Court's jurisdiction and that has clearly and voluntarily

---

[3] There is no merit to Argentina's suggestion (Opp. 10 & n.3) that ordering NML's requested remedy will threaten future voluntary debt restructurings by other nations.  As NML noted previously (Mem. 15-16), sovereigns (including Greece, Spain, and Italy) are now increasingly including collective action clauses in their bonds, which permit restructurings without uniform bondholder consent.  In addition, the proper equitable remedy for an equal treatment breach by a different sovereign, under different factual circumstances, may well be different.

10

waived its immunity—to stop its seven-year long scheme of breaching its contractual commitments to NML. Nothing in the FSIA even colorably prohibits such equitable relief. Mem. 6-8.[4]

Similarly, there is no merit to Argentina's suggestion that NML seeks to "execute upon" funds "held in trust for the beneficial owners of the Discounted Exchange Bonds," in violation of state law and the U.C.C. Opp. 14. Nothing in NML's Proposed Order can be read to suggest that NML would "execute upon" any funds, much less those held in trust for the Exchange Bondholders. NML merely seeks an order requiring Argentina to fulfill its payment obligations to NML at the same time, and on the same basis, as it pays the Exchange Bondholders. That Argentina's agents located in New York—including its financial intermediaries—are unlikely to aid and abet Argentina's scheme of violating such an order does not transform an order of specific performance directed at Argentina into an "execution upon" funds held by supposed trustees.

### 2. Argentina Blatantly Distorts The Court's Prior Ruling

There is no substance to Argentina's argument that the Court has already rejected NML's requested relief on the merits. Opp. 10-13. To the contrary, the Court only denied NML's prior request for specific performance "at the present time to permit further consideration by the court regarding the means of enforcement of" the Court's finding that Argentina had breached the Equal Treatment Provision. Dec. 7 Order at 5; *see also* Tr. 46:17-19 (encouraging NML to renew its motion so the Court could "pursue that subject promptly"). Because the Court's denial

---

[4] Nor does the Second Circuit's decision in *Rossini v. Republic of Argentina*, No. 11-100-cv, 2011 WL 2600404 (2d Cir. July 1, 2011), support Argentina's argument. In that case, the Second Circuit merely affirmed the Court's denial of a preliminary injunction because it found no abuse of discretion in the conclusion the proposed injunction would not "aid the Appellants in collecting on their judgment." *Id.* at *2. In the present case, NML is not seeking an injunction aimed at collecting a judgment, but is requesting specific performance of the equal treatment promise that Argentina made.

11

of NML's prior request "did not decide" the merits of the issue, that denial is not law of the case. *See Riley v. MEBA Pension Trust*, 586 F.2d 968 (2d Cir. 1978).[5]

Argentina mischaracterized what the Court said at the September 28 hearing in other respects. *See* Opp. 11-12. Although the Court stated that it would not issue "any remedy that might interfere with an exchange offer," it proceeded to explain that "it seems to me that it is possible to have a remedy which simply imposes an obligation on the Republic." Tr. 40:8-9. The Proposed Order that NML crafted responded directly to this concern by requesting relief that merely requires Argentina to pay to NML a ratable payment whenever it pays the Exchange Bondholders. The Proposed Order does nothing to interfere with either the completed Exchange Offers or the Exchange Bondholder's rights to receive regular payments.

C.  **NML Is Entitled To A Preliminary Injunction For The Short Period Of Time, If Any, Necessary For The Court To Consider This Renewed Motion**

On January 3, 2012, the Court granted NML's *ex parte* request for a temporary restraining order, forbidding Argentina from altering its long-used mechanism for paying the Exchange Bondholders with the assistance of New York-based financial intermediaries. The basis for this order was that Argentina should not be permitted to exploit the Court's bifurcation of the issues of liability and remedy to evade any final injunctive relief the Court might enter. This temporary restraining order expires at the February 15 hearing. Dkt. 365. If the Court grants NML's Proposed Order at that hearing, there will be no need to transform the restraining order into a preliminary injunction, as the Equal Treatment dispute will have been fully adjudicated. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 323 (2d Cir. 1969) ("the purpose of a preliminary injunction is to maintain status quo pending final determination of the merits").

---

[5] Indeed, had the Court actually determined that NML was not entitled to specific performance of the Equal Treatment Provision, it would not have granted NML's subsequent motion for a temporary restraining order, the explicit premise of which was to permit the Court to fully explore the proper equitable remedy for Argentina's breach. *See infra* pp.12-13.

12

But should the Court require further time to decide whether to grant NML's Proposed Order, it should grant a preliminary injunction to prohibit Argentina from altering its payment mechanisms while the Court deliberates. Argentina would only object if it intended to make such an evasive change. *See* Opp. 23-25. Indeed, Argentina does not represent that it has any need to alter its payment mechanisms under the Exchange Bonds, so it is fair to assume that there will be absolutely no prejudice to Argentina from extending this limited form of temporary relief. In contrast, the harm to NML and other movants would be irreparable if Argentina were permitted to reorder its affairs in a preemptive effort to circumvent the Court's ability to grant meaningful equitable relief.[6]

### III. CONCLUSION

For the reasons stated above and in NML's opening memorandum, the Court should grant NML's motion and enter the Order proposed by NML.

Respectfully submitted,

February 10, 2012

By: /s/ Robert A. Cohen

| | |
|---|---|
| Theodore B. Olson | Robert A. Cohen |
| (tolson@gibsondunn.com) | (robert.cohen@dechert.com) |
| Matthew D. McGill | Charles I. Poret |
| (mmcgill@gibsondunn.com) | (charles.poret@dechert.com) |
| Jason J. Mendro | DECHERT LLP |
| (jmendro@gibsondunn.com) | 1095 Avenue of the Americas |
| GIBSON, DUNN & CRUTCHER LLP | New York, NY 10036-6796 |
| 1050 Connecticut Avenue, N.W. | (212) 698-3500 |
| Washington, D.C. 20036-5306 | |
| (202) 955-8500 | |

*Attorneys for Plaintiff NML Capital, Ltd.*

---

[6] In the event the Court decided to deny NML's request for permanent injunctive relief, NML respectfully requests that the Court grant NML's request to convert the temporary restraining order into a preliminary injunction and then stay its vacatur pending appeal. Such relief would maintain the status quo during the pendency of an appeal.