# EXHIBIT R

```
                                                            1
        CB9HNMLA
   1    UNITED STATES DISTRICT COURT
   1    SOUTHERN DISTRICT OF NEW YORK
   2    ------------------------------x
   3    NML CAPITAL, LTD,
   4              Plaintiff,
   4         v.                              08 CV 6978 (TPG)
   5                                         09 CV 1708 (TPG)
   5
   6    THE REPUBLIC OF ARGENTINA,
   6
   7              Defendant.
   7    ------------------------------x
   8                                         New York, N.Y.
   8                                         November 9, 2012
   9                                         11:30 a.m.
   9
  10    Before:
  10
  11                    HON. THOMAS P. GRIESA
  11
  12                                         District Judge
  12
  13                        APPEARANCES
  13
  14    DECHERT LLP
  14         Attorneys for NML Capital Ltd.
  15    BY:  ROBERT A. COHEN
  15         -and-
  16    GIBSON, DUNN & CRUTCHER LLP
  16    BY:  THEODORE B. OLSON
  17         MATTHEW D. McGILL
  17         MISHA TSEYTLIN
  18
  19
  20
  21
  22
  23
  24
  25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
       CB9HNMLA
1      Appearances (Continued)
2      FRIEDMAN KAPLAN SEILER & ADELMAN LLP
2           Attorneys for Aurelius Capital Partners LP
3           and Blue Angel
3      BY:  EDWARD A. FRIEDMAN
4           DANIEL B. RAPPORT
4
5      GOODWIN PROCTER
5           Attorneys for Olifant Fund Ltd
6      BY:  ROBERT D. CARROLL
6           -and
7      SIMON LESSER, P.C.
7      BY:  LEONARD F. LESSER
8
8      MILBERG LLP
9           Attorneys for Varela
9      BY:  MICHAEL C. SPENCER
10
10     CLEARY GOTTLIEB STEEN & HAMILTON LLP
11          Attorneys for The Republic of Argentina
11     BY:  CARMINE D. BOCCUZZI
12          MONA M. WILLIAMS
12          MICHAEL BRENNAN
13
13     REED SMITH LLP
14          Attorneys for The Bank Of New York Mellon
14     BY:  ERIC A. SCHAFFER
15          EVAN FARBER
15
16     O'SHEA PARTNERS, LLP
16          Attorneys for Gramercy Funds Management
17     BY:  SEAN F. O'SHEA
17          MICHAEL E. PETRELLA
18
19
20
21
22
23
24
25
```

3

CB9HNMLA

```
 1                 (In open court)
 2                 THE DEPUTY CLERK:  NML Capital v. Republic of
 3    Argentina.
 4                 THE COURT:  I know that the parties have applications,
 5    but I would like to start with the obvious, and that is, this
 6    court must comply with the Court of Appeals direction.  I am
 7    not going to try to repeat what the Court of Appeals ruled, but
 8    obviously the Court of Appeals affirmed the basic rulings of
 9    the district court and asked the district court to have further
10    proceedings to deal with the question of the amount to be paid
11    to the plaintiffs and then the effect on third parties.  We
12    should schedule proceedings to comply with those directions of
13    the Court of Appeals.
14                 The plaintiffs have submitted a letter and I guess a
15    proposed order, but really, I can't act on that letter.  This
16    is a matter that has to have some briefing and hearing and so
17    forth.  I think it can be done promptly, and I would just like
18    to set a schedule.
19                 I think that it would assist the court to have a brief
20    from the plaintiffs that goes beyond the letter.  Obviously the
21    Republic and perhaps other people will want to reply to that.
22    When could the plaintiffs have a brief?  Maybe all you want to
23    do is repeat what is in the letter, I don't know, but I think
24    the matter deserves somewhat fuller discussion.
25                 MR. OLSON:  Your Honor, Theodore Olson on behalf of
```

4

CB9HNMLA

1   the NML parties.  We can have a brief on file that complies
2   with what you just said on Monday, two days from now, three
3   days from now.
4           THE COURT:  Then when could the Republic reply?
5           MR. BOCCUZZI:  Your Honor, we would like to have, we
6   can have a brief -- I don't have a calendar with me, but the
7   second week in December.  So 30 days from then.
8           THE COURT:  That is too long.
9           MR. BOCCUZZI:  Then could we have 20 days?
10          THE COURT:  Too long.
11          MR. BOCCUZZI:  I mean there are substantial issues,
12  your Honor, to be briefed.
13          THE COURT:  If the plaintiffs can do it quickly, the
14  Republic can do it quickly.
15          MR. BOCCUZZI:  Then ten days --
16          THE COURT:  How about the end of next week?
17          MR. BOCCUZZI:  Could we have at least a week, your
18  Honor?
19          THE COURT:  The end of next week we will receive your
20  brief.
21          MR. BOCCUZZI:  So Friday, November 16th.
22          THE COURT:  Exactly.
23          All right.  Now what needs to be done in the way of a
24  hearing after that we will have to see.
25          MR. O'SHEA:  Your Honor, Sean O'Shea for Gramercy
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

5

CB9HNMLA
```
 1   Funds Management, one of the exchange bondholders.  I think,
 2   your Honor, in fairness, we should have a seat at the table.
 3   We should be allowed to at least file an amicus brief if not
 4   intervene, because of the effects that are going to be had both
 5   against Gramercy Funds Management and many other existing bonds
 6   holders.  So we would request --
 7             THE COURT:  People can file briefs -- I am sure there
 8   will be more briefs than just the plaintiff's and the
 9   Republic's -- as long as all that briefing is concluded by a
10   week from today.  A week from today.  This is not an issue
11   which requires a long time.
12             Now I would like to ask as far as timing, when is the
13   next payment scheduled to be made on the exchange offers?
14             MR. BOCCUZZI:  Your Honor, there are three payments to
15   be made or three payment dates in December:  On December 2nd,
16   December 15th and December 31st.
17             THE COURT:  What do the three relate to?
18             MR. BOCCUZZI:  Various of the restructured bonds.  The
19   December 2nd payment -- just to -- I will finish that and then
20   give you more context.
21             THE COURT:  December 2.  How much money?
22             MR. BOCCUZZI:  The December 2nd payment is on global
23   par bonds maturing in 2017, and I understand it is an interest
24   payment of approximately $42 million.
25             THE COURT:  December 2nd.
```

6

CB9HNMLA

```
 1              MR. BOCCUZZI:  Correct.
 2              THE COURT:  OK.  And that pertains to the exchange
 3    offer, an exchange offer.
 4              MR. BOCCUZZI:  The exchange bonds, yes, correct.
 5              THE COURT:  Interest of what, 42 million.
 6              MR. BOCCUZZI:  Yes, your Honor.
 7              THE COURT:  All right.  And then what is the next one?
 8              MR. BOCCUZZI:  December 15th.  These are payments on
 9    the so-called GDP-linked notes.  There are four series.  One is
10    denominated in yen and one is in euros.  I think it roughs out
11    to around $3 billion.
12              THE COURT:  All right.
13              MR. BOCCUZZI:  That is a rough number.
14              THE COURT:  And then the third?
15              MR. BOCCUZZI:  On December 31st, on the discount
16    bonds -- your Honor, I don't have the total on the bottom.  It
17    is in the range of, let's just call it around 100 million to
18    200 million.
19              THE COURT:  All right.
20              MR. BOCCUZZI:  And then, your Honor, there are other
21    scheduled payments obviously that follow from that.  There is
22    one in March of next year, another series.  Then there are
23    other payments in June, and then in December again.
24              THE COURT:  Now any lawyer responds to this -- you all
25    know this -- but there is, as I understand it, under the
```

CB9HNMLA

```
 1  instruments of the exchange offers, there is a method of
 2  handling the payments.  What are those provisions?  Is anybody
 3  able to describe that?
 4           MR. BOCCUZZI:  I can describe it generally, your
 5  Honor.  I don't have the record cites, but there was a
 6  declaration the last round that explained it.  The Republic
 7  pays, in Argentina, the Bank of New York in Argentina.  The
 8  Bank of New York is the trustee for the bondholders.  The
 9  bondholders who hold exchange debt.
10           Bank of New York gets that money.  Once they have the
11  money, it is their money in trust for those bondholders and
12  then they transfer the money into the payment system, i.e.,
13  they have to pay the so-called registered holder, who could be
14  the Depository Trust Company or its nominee Cede & Co. or else
15  the Euroclear system.  So there may be a step, a few steps in
16  between, but sort of that is the general big picture payment to
17  the trustee in Argentina.
18           That money is in trust for the plaintiffs and then it
19  needs to get to the registered holder of the bonds, who then
20  pays downstream so it ends up in the account of any given
21  beneficial owner.
22           THE COURT:  Does the money come into the United
23  States?
24           MR. BOCCUZZI:  Excuse me?
25           THE COURT:  Does the money come into the United
```

8

CB9HNMLA

1   States?
2          MR. BOCCUZZI:  Yes, at some point it has to come into
3   the United States.  Some of it does because it has to hit DTC
4   or its nominee Cede & Co. and then it gets paid to
5   participants -- they are like broker-dealers -- and then into
6   the accounts of whoever the ultimate beneficial holder may be.
7          THE COURT:  Just go a little slower.
8          MR. BOCCUZZI:  Yes.
9          THE COURT:  Bank of New York in Argentina.
10         MR. BOCCUZZI:  Yes.
11         THE COURT:  Then go a little slower.
12         MR. BOCCUZZI:  Then they have to pay the money, get
13   the money into New York or into Euroclear, the Euroclear
14   system, which pays to holders who hold in that system.  That
15   money gets paid, transferred from Bank of New York in
16   Argentina, and I just don't know the exact step, but then it is
17   going to hit the registered holder, DTC or Cede & Co. in New
18   York.
19         THE COURT:  The registered holder, what are those
20   initials?
21         MR. BOCCUZZI:  DTC, the Depository Trust Company over
22   on Water Street.
23         THE COURT:  Right.
24         MR. BOCCUZZI:  And they have a nominee called Cede &
25   Co., who actually may be the actual, quote-unquote, registered
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

9

CB9HNMLA

```
 1   holder of the global bonds.  Remember, these are global bonds.
 2   So those are the registered holders, and then the money has to
 3   go basically down the chain -- I know it is a metaphor, but to
 4   participants.  DTC has participants.  They are usually the big
 5   financial institutions we all know -- JP Morgan, Citi, etc. --
 6   and then the money continues down so it gets to whoever the
 7   ultimate beneficial owner is of the interest in the global
 8   note.
 9             THE COURT:  Let me see if I repeat it correctly.  The
10   money is paid to the Bank of New York in Argentina.
11             MR. BOCCUZZI:  Correct.
12             THE COURT:  And then the Bank of New York forwards the
13   money to the Depository Trust Company or some entity connected
14   with it and then the Depository Trust Company or the other
15   entity will pay the money to certain registered holders.
16             MR. BOCCUZZI:  Or their participants.  Technically the
17   registered holder is DTC or Cede.  But they have on their books
18   the next level down of people who have interest in these global
19   notes.
20             THE COURT:  In an order of February 23, 2012, there is
21   a paragraph 4 which reads:  "The Republic is permanently
22   prohibited from taking action to evade the directives of this
23   order, render it ineffective, or to take any steps to diminish
24   the court's ability to supervise compliance with the order,
25   including, but not limited to, altering or amending the
```

CB9HNMLA

1  processes or specific transfer mechanisms by which it makes
2  payments on the exchange bonds without obtaining prior approval
3  of the court."
4         Now, in the letter of November 6, 2012 -- obviously
5  very recent -- Mr. Robert Cohen, on behalf of NML, refers to
6  certain statements allegedly made by the president of the
7  Republic, Cristina Kirchner, by Argentina's minister of economy
8  Lorenzino, and the effect of those statements is that the
9  Republic will not comply with the Second Circuit's decision and
10 that money will be paid to the exchange bondholders but none to
11 the plaintiffs.
12        Now that, of course, is completely contrary to what I
13 ruled and the Second Circuit ruled because the effect of my
14 ruling, affirmed by the Second Circuit ruling, is money cannot
15 be paid to the exchange bondholders without an appropriate
16 payment to the plaintiffs, and the amount of that appropriate
17 payment is to be worked out.  I think I am remembering my
18 ruling, and I am reading the Court of Appeals ruling.
19 Otherwise, it would be meaningless.  There cannot be a payment
20 to the exchange bondholders without the court-directed payment
21 to the plaintiffs.
22        Now, if we have the president of Argentina and the
23 minister of the economy saying that that will not be complied
24 with, that is a serious matter.  I want to address that now,
25 and the court is not helpless in dealing with such positions if

CB9HNMLA

```
 1  they are taken.
 2              Is that the position of the president of the Republic?
 3  Is that the position of the economic minister?  Mr. Boccuzzi.
 4              MR. BOCCUZZI:  Thank you, your Honor.  The position
 5  that they were stating is that -- and just to be clear, your
 6  Honor stayed the ruling pending the disposition of the appeal
 7  and the appellate process, and so since February we have been
 8  paying the performing bondholders without paying plaintiffs.
 9              THE COURT:  Of course.
10              MR. BOCCUZZI:  And as part of that stay, the language
11  you read, you said don't change the payment mechanism, and we
12  have not.  BNY remains.  That is why I think the lawyers from
13  BNY are here.  So you don't have to take my word for it.  That
14  mechanism remains in place, and they are here because they want
15  to put in a brief next Friday and say why they want to be able
16  to pay the bondholders the performing debt and they have a
17  fiduciary duty to do that.
18              THE COURT:  You are not answering my question at all.
19              MR. BOCCUZZI:  I am answering the question.  These
20  statements in the press are clear statements by the Republic of
21  Argentina.  They continue to appeal the ruling.  We are filing
22  our en banc petition today.
23              THE COURT:  You are not answering my question.
24              MR. BOCCUZZI:  Your Honor, the issue about the
25  ultimate order in this court will depend on what the order
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

CB9HNMLA

1    says.
2                THE COURT:  You are not answering my question.  Did
3    the president of Argentina and the economic minister make these
4    statements?  That isn't talking about the stay.  It isn't
5    talking about something technical.  They are simply saying we
6    will not comply.
7                MR. BOCCUZZI:  They didn't say that, your Honor.
8                THE COURT:  Oh, they did not.
9                MR. BOCCUZZI:  They did not say we would not comply.
10   They had to calm a market that was in a panic that there was
11   going to be a default, and the order that plaintiff submitted
12   to you, that requires a payment of $1.5 billion by December
13   2nd, to them was clearly, with no stay, with no further
14   possibility of appellate review, is clearly defined to trigger
15   a default.
16               THE COURT:  I don't think the president of Argentina
17   is talking about a stay or talking about what you are talking
18   about.
19               MR. BOCCUZZI:  She is trying to reassure the markets
20   that they believe in their position in litigation, that we are
21   continuing to litigate and that they will do their best to make
22   sure the debt get serviced.
23               This debt, the performing debt, has spiraled in value
24   since the rulings.  The market is panicked.  People are
25   suffering losses who have performing debt.  The president of

13

CB9HNMLA

1    Argentina is permitted to make a statement that they are still
2    fighting the fight, as it were.
3         There is obviously a disagreement between our table
4    and your Honor and this table.  We are going through the
5    appropriate avenues.  We filed our en banc petition.  We are
6    putting in briefs for your consideration next week.
7         THE COURT:  You really will not answer my question.
8         MR. BOCCUZZI:  I said, your Honor -- I did answer it.
9         THE COURT:  No, you didn't.
10        MR. BOCCUZZI:  She did not say she will not comply.
11   They are not thumbing their nose at your Honor or the orders.
12   The payment mechanism stays in place.
13        THE COURT:  Now look here, obviously the Republic has
14   a right to litigate this, to ask for a rehearing by the Court
15   of Appeals, rehearing en banc, file a petition for cert.  That
16   is of course.  So if the president of Argentina had said we
17   will continue to litigate this, then no problem, none at all.
18        The reason I bring this up is I have a long experience
19   in this case and press reports have been amazingly accurate,
20   press reports about various things.  The financial press in
21   Argentina picks up things quite accurately, and over all these
22   years and various applications and motions, the press reports
23   have been quite reliable.
24        What is quoted here doesn't bear any resemblance to
25   what you are talking about.  I just want to say that -- I am

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

CB9HNMLA

 1   probably repeating myself, but I am repeating myself because I
 2   really haven't gotten any answer from the Republic's lawyer.
 3   So I repeat.  This is from the letter of Mr. Cohen dated
 4   November 6th, which I referred to earlier.  The letter states:
 5   "Argentina's president, Cristina Kirchner, flatly declared, in
 6   response to the October 26th decision, that Argentina was
 7   'going to pay' the exchange bondholders 'with dollars because
 8   we have them,' but would not pay 'one dollar to the vulture
 9   funds.'"
10           I am just saying this.  The Court of Appeals did not
11   in any way espouse or approve of the idea that these holders of
12   debt are vultures, vulture funds, or anything like that, but
13   the president of Argentina uses her characterization, if she is
14   quoted correctly, but that is -- it doesn't help matters.
15           Going on with the letter:  "Argentina's minister of
16   economy Hernan Gaspar Lorenzino announced to the press that
17   'despite any ruling that could come out of any jurisdiction --
18   in this case, New York' -- then another quote, 'Argentina isn't
19   going to change its position of not paying vulture funds.'"
20           The Argentine press, according to the letter, has
21   reported that the Argentine government now is developing
22   various alternatives to evade this court's orders, and the
23   letter quotes the Financial Times as saying:  "Since last
24   week's U.S. appeals court ruling went against Argentina, there
25   has been a lot of comment about how the country could try to

15

CB9HNMLA

1    change the trustee or payment structure of the bonds which came
2    out of its 2005 and 2010 restructuring."
3              I don't think there is any utility in me going back
4    and forth with Mr. Boccuzzi further.  Obviously Mr. Boccuzzi
5    does not really want to say that the Republic is saying what is
6    reported in the press.  Obviously the press can be inaccurate,
7    but generally it has not been inaccurate in reporting matters
8    relevant to this case over the years.
9              What I want to say is this, that the Republic has
10   submitted to the jurisdiction of this court in these cases.
11             You may sit down.
12             And obviously that means the Republic has submitted to
13   the jurisdiction of the Court of Appeals in these cases.  That
14   means that any order of this court affirmed by the Court of
15   Appeals is binding on the Republic and the Republic has the
16   duty to comply.
17             Now as the Court of Appeals itself noted, the Republic
18   doesn't seem to respect that duty because already there are
19   judgments against the Republic which the Republic refuses to
20   honor, and the Court of Appeals expressly noted that.
21             Now, I don't know the facts.  I don't know if the
22   press reports are in fact true.  I don't know literally what
23   the intentions of the Republic are.  But I have had some modest
24   amount of experience, and that is that the Republic will not
25   comply with the judgments which have been entered against it.

CB9HNMLA
1    Now if this is any pattern for what is going to go on with
2    respect to the rulings of the Court of Appeals, I think some
3    things have to be said.
4           First of all, it is a good thing to recall that the
5    instruments dealing with the rights and obligations of the
6    Republic with respect to bondholders, those original
7    instruments, provided that the Republic irrevocably submitted
8    to the jurisdiction of a state or federal court in New York
9    City.  Irrevocably submitted to the jurisdiction of such a
10   court over any suit to enforce the bonds.  And the instruments
11   contain the express language that the Republic agrees that a
12   final, non-appealable judgment in actions to enforce rights
13   under the bonds shall be conclusive and binding upon it and may
14   be enforced in any appropriate court.  Conclusive and binding
15   upon it and may be enforced.
16          Now, what has gone on is the Republic has done
17   everything possible to prevent those judgments that have been
18   entered from being enforced.  But the agreement is still there.
19   And what has happened over the years is that the Republic as
20   well as plaintiffs have had an enormous amount of service, both
21   from the district court and from the Court of Appeals.  There
22   have been, as we know, efforts on the part of plaintiffs in
23   these actions to find ways to recover since the normal,
24   legitimate recovery of judgments was completely frustrated by
25   the Republic as completely as they could do, as the Republic

17

CB9HNMLA

1   could do.  And obviously there have been devices attempted for
2   recovery which have been unusual and have led to a lot of
3   litigation.  In that litigation, the Republic has been treated
4   fairly and has won most of those litigated matters.  In certain
5   instances where the plaintiffs won in the district court, the
6   Court of Appeals has reversed the district court.
7           The point I'm making is that the Republic has had the
8   benefit, the service of the district court and the Court of
9   Appeals over many years in many proceedings and has been
10  treated with the utmost fairness and has prevailed in most of
11  these litigated matters.
12          Now the Republic did not prevail here.  If the Court
13  of Appeals ruling stands, and it is certainly standing now,
14  this is a ruling by the district court affirmed by the Court of
15  Appeals that is adverse to the position of the Republic.
16          If -- and I emphasize if -- there is any thought on
17  the part of the Republic to defy and evade the current ruling,
18  then that thought should be seriously reconsidered and set
19  aside.
20          I am repeating myself, but I want to repeat myself.
21  For the Republic to engage in litigation in this court for over
22  ten years, and the Court of Appeals for over ten years, and
23  then suddenly, if it is true, decide to evade a ruling against
24  it would be a very large-scale departure from anything
25  approaching an orderly submission to a court of law,

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

18

CB9HNMLA

1   particularly in view of the fact that this is not the first
2   litigated matter.  This is one in a long series.
3           I will also say that if it turns out as a fact that
4   the Republic has some intention of evading the Court of Appeals
5   ruling, our courts are not helpless.  I think the Republic
6   should realize that the record of defiance of judgments already
7   entered is beginning maybe too late, but it is certainly
8   beginning to be viewed very negatively, and that is certainly
9   evidenced in the Court of Appeals discussion.  And steps can be
10  taken, which I will not try to discuss now, but steps can be
11  taken to sanction any misconduct by the Republic of the kind I
12  am talking about, which will not simply amount to allowing the
13  Republic to disobey judgments and rulings.  There will be means
14  of dealing with that.
15          Consequently, I would hope that the Republic will get
16  back on the track -- if it has gotten off the track -- it will
17  get back on the track of litigating fairly in our courts and
18  certainly as to this new ruling making sure that it is complied
19  with and that there is no doubt about compliance with it.
20          I think that is all we need to do today unless
21  somebody has some application.  We have a schedule for
22  complying with the Court of Appeals ruling.  Is there anything
23  else?
24          MR. OLSON:  All I would add is that we would like to
25  reply to the Republic's brief.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

CB9HNMLA

```
 1              THE COURT:  Sure.
 2              MR. OLSON:  We will do so by the following Monday
 3  which, according to my calculations, would be November 19th.
 4              THE COURT:  All right.
 5              MR. BOCCUZZI:  Your Honor, just the other part was
 6  just to clarify that the stay remains in effect while we go
 7  through these proceedings or certainly until some other
 8  application.  We are in the Court of Appeals and we are before
 9  you on all these issues that we need to follow up on and there
10  is concern about the status of the stay as reported in the
11  press among people in the market.
12              THE COURT:  I don't think there is really any question
13  about the fact that the stay has to stay in effect.  The matter
14  is just not finished.
15              MR. BOCCUZZI:  Thank you, your Honor.
16              MR. OLSON:  The terms of your order with respect to
17  the stay specifically said that it was stayed until the United
18  States Court of Appeals for the Second Circuit has issued its
19  mandate, which it has done, and it has come back --
20              THE COURT:  It has issued an opinion but it hasn't
21  issued its mandate.
22              Let me say this.  The stay was my order.  If there was
23  some reason to amend my order, I would amend my order.  I think
24  it would be quite anomalous to lift the stay while the matter
25  is still being litigated, as it is being litigated.
```

CB9HNMLA

```
 1              The main thing that I want to make sure -- let me just
 2  interrupt myself.  The stay is contained in the order of --
 3              MR. OLSON:  I believe it is March 5, 2002.
 4              THE COURT:  Could I see that, because I have my order
 5  of February 23.
 6              MR. OLSON:  I have marked it.
 7              MR. BOCCUZZI:  I have a clean one, your Honor.
 8              THE COURT:  I don't care.  Just lend it to me.
 9              MR. BOCCUZZI:  Yes.
10              THE COURT:  Is there an application to lift the stay?
11              MR. OLSON:  Well, we believe that the stay expired
12  because what the Court of Appeals said is that the mandate
13  would be returned to it after these proceedings.  Therefore,
14  the implication is that the mandate issued is here now, it is
15  not in the Court of Appeals.  That is in the second-to-last
16  sentence or the last sentence of the Court of Appeals decision.
17              Now, with respect to that, your Honor, I would simply
18  say that we are coming to this point on December 2nd and
19  December 15th and December 31 where if the stay is in effect,
20  Argentina will disregard the decision of this court, affirmed
21  on the merits by the Court of Appeals on October 26th.  So
22  therefore, every aspect of your decision that interpreted the
23  equal treatment provision, found that the Republic had violated
24  it, and that a remedy for violation was appropriate to require
25  compliance by Argentina with this provision when it made these
```

CB9HNMLA

1   payments on the dates that are coming up in December.  So we
2   will be happy to address the issue of a stay in the brief that
3   we file on Monday and the reply brief that we file the
4   following Monday, but the stay should not be in effect from
5   this court in any event.  We mentioned in Mr. Cohen's letter
6   that the Republic can post a bond, the Republic can seek a stay
7   from another court.
8           The Republic is in the position and capable of making
9   these payments and complying with the order.  So therefore,
10  your order having been affirmed in all material, substantive
11  respects with respect to violation of the provision, there
12  should not be a stay any longer in effect when December 2nd
13  rolls around.
14          THE COURT:  One of the reasons I wanted expedited
15  treatment of the matters that the Court of Appeals wanted to
16  have further dealt with was to try to have my ruling completed
17  in advance of those dates.  Give me just a minute to look at
18  the end of the Court of Appeals ruling.
19          (Pause)
20          THE COURT:  I had overlooked that language.  The Court
21  of Appeals ends up saying:  "Once the district court has
22  conducted such proceedings, the mandate should automatically
23  return to this court and to our panel for further consideration
24  of the merits of the remedy without need for a new notice of
25  appeal."

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

22

CB9HNMLA

1          The situation about literally the mandate, I know the
2     Court of Appeals said what it said.  I don't want to get into a
3     technical discussion of the meaning of mandate as applies to
4     me.  My intention is this, to try to get a ruling on the
5     matters subject to the remand and do it very, very promptly in
6     advance of the 1st of December.  Until that time I will just
7     say the stay remains in effect.
8          MR. OLSON:  I understand, your Honor.
9          THE COURT:  It remains in effect.  That is the only
10    way to do it.
11         What happens at the time of my ruling, we will cover
12    that when the time comes.
13         MR. OLSON:  Thank you, your Honor.  We will address
14    that in the briefs that we file on Monday.
15         THE COURT:  Then what happens with the Court of
16    Appeals, that is up to the Court of Appeals.  That is really
17    the way I view the stay.
18         The fact is that a very important part of the stay is
19    paragraph 2, the substance of which was in I think an earlier
20    order, but I want to read this again.
21         "To secure plaintiff's rights during the pendency of
22    the Republic's appeals of the February 23, 2012 orders to the
23    Second Circuit, it is ordered that the Republic shall not
24    during the pendency of the appeal to the Second Circuit take
25    any actions to evade the directives of the February 23, 2012

CB9HNMLA

1  orders in the event they are affirmed, render them ineffective
2  in the event they are affirmed, or diminish the court's ability
3  to supervise compliance with the February 23, 2012 orders in
4  the event they are affirmed, including, without limitation,
5  altering or amending the processes or specific transfer
6  mechanisms by which it makes payments on the exchange bonds
7  without prior approval of the court."
8          Now what I am going to request is an affidavit from
9  the Republic -- not just from Cleary Gottlieb -- from the
10  Republic affirming that that paragraph will be complied with,
11  because I don't think it will be helpful to have further
12  statements to the press and possibly further meetings of this
13  kind to deal with such statements.  That should all be put to
14  rest.  But I want an affidavit from the Republic assuring that
15  this paragraph will be complied with.
16          With that, we will be adjourned.
17          MR. OLSON:  Thank you.
18          MR. BOCCUZZI:  Your Honor, one point.
19          THE COURT:  OK.
20          MR. BOCCUZZI:  We will supply the declaration.  Can we
21  have until next Friday?  We will put it with our papers.
22          THE COURT:  Sure.  Of course.
23          MR. BOCCUZZI:  I will say to the court now that we
24  have complied with it and the payment mechanisms remain in
25  place and Bank of New York is here because they still have a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

CB9HNMLA
1   dog in this fight as it were.  They haven't been fired or
2   anything like that.
3          The only point about the stay, your Honor, is that I
4   understand and appreciate that the stay continues.  Having it
5   as of December 1 means there is now uncertainty in terms of
6   December 1 a ruling comes and there is no stay and there is
7   actually a payment due the next day, December 2.  That is
8   already going to be incredibly disruptive to the market, the
9   people who are here as the tendering bondholders in the
10  exchange.
11         I would just ask if we can keep the stay open or there
12  as contemplated by your Honor's order and the past practice of
13  this court, which is --
14         THE COURT:  Let me interrupt you.  Let's look at the
15  calendar.  Today is the 9th.  The plaintiff's brief is going to
16  come in on the 12th.  Right?
17         MR. OLSON:  Yes, your Honor.
18         THE COURT:  Any opposing briefs, particularly of
19  course the Republic, will come in on the 16th.  If there is
20  going to be a little reply, in a day or so.
21         MR. BOCCUZZI:  One point, just to be clear.  The brief
22  will come on the 12th.  The 12th is a court holiday.  I would
23  like to get it on the 12th.
24         THE COURT:  Make it the 13th.
25         MR. OLSON:  We will make it the 13th, but we will get
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

25

CB9HNMLA
1    it to you as promptly as we can.
2              THE COURT:  I forgot it was a court holiday.  The
3    13th.  This schedule is intended to try to have a decision from
4    the district court well in advance -- not obviously a year in
5    advance, but as far in advance of December 2 as I can do it.
6              MR. BOCCUZZI:  But, your Honor --
7              THE COURT:  That is as much as I can do.  Now what are
8    you suggesting?
9              MR. BOCCUZZI:  I would suggest two things.  Their
10   brief comes in, that is the Monday of Thanksgiving week.  So
11   your Honor will have it there during that week, which is a
12   short week.  The following week is the lead up to December 1st.
13   If your Honor wants to hear the parties, it is just getting
14   very close, and just as a practical matter it is not a matter
15   of just writing a check to plaintiffs.
16             We would want to be able, and the Court of Appeals
17   contemplates that there would be -- and I think they don't have
18   any idea of dragging things out.  But there would be a review
19   of what your Honor does in these two questions, which are two
20   very important questions, because it is not just the interest
21   of the Republic but all the folks they want to restrain and
22   enjoin and the tendering bondholders, the exchange holders.
23             So all I'm saying is your Honor retains jurisdiction
24   over the stay to monitor it, as it says in your order, but just
25   to have it with the expectation that it could go away at the
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

CB9HNMLA
1   end of November with the parties fighting over whether it would
2   last or not, that is really going to cause great disruption in
3   the market, hurt bondholders now.
4           I really think the letter that counsel sent to your
5   Honor talking about the stay ending -- for some reason they
6   filed that on the ECF system.  It became public, whereas the
7   court system said you don't -- we all know you don't file with
8   the ECF to make them public.  If you want to make a motion, you
9   make a motion.  I really think that had negative effects on
10  many third parties.
11          If we just keep the stay in place as we have done,
12  there are going to be payments in March, there are going to be
13  payments in June.  Give us the due process and the ability to
14  appeal as we have always had them.  The stays that your Honor
15  has entered have always remained in effect while people have
16  gone to the Court of Appeals and gone to the Supreme Court.  It
17  stayed in effect for them to pursue all their remedies when
18  they lost, and just the uncertainty -- even Bank of New York,
19  in terms of knowing what they will have to do, because one of
20  the main issues that your Honor is going to decide is going to
21  be what is that payment that has to be made to them if other
22  people are getting payments.  That issue would be contemplated
23  by the Court of Appeals to be subject of an appeal.
24          I am not trying to drag anything out, your Honor, but
25  I am seeing severe prejudice and delay to third parties, to the

27

CB9HNMLA
1    Republic, and no prejudice here to plaintiffs given that we
2    have more scheduled interest payments coming up in March, in
3    June.  So the trigger to these payments are there in the
4    future.  They are not going anywhere.
5              MR. O'SHEA:  Your Honor, on behalf of those people who
6    are being held hostage --
7              THE COURT:  You are Mr.?
8              MR. O'SHEA:  O'Shea on behalf of the exchange
9    bondholder.  Well, on behalf of Gramercy Funds Management, your
10   Honor, one of the exchange bondholders that did the reorg in
11   2010 or restructuring in 2010, I should say.
12             We are the ones being held hostage here, and if the
13   stay isn't in place, we are the ones suffering.  In fact, we
14   are already suffering by the value of our bonds falling out in
15   the marketplace.  So this is very important.
16             Your Honor, one other thing.  What Mr. Olson suggests
17   by having that brief filed the 13th, it gives us four days, and
18   we are absolutely new to the fray, Judge.  We want to have a
19   place at the table because we are the ones being held hostage
20   here.  So what Mr. Boccuzzi says is absolutely correct.
21             I know you are frustrated with Republic of Argentina,
22   but I think you have to be concerned, and I know your Honor was
23   concerned having just had a chance to look at the February 23rd
24   argument, about the collateral consequences to those people who
25   are absolutely innocent here.  Pension funds and endowments
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

CB9HNMLA

```
 1    that are our clients who did the exchange are being held
 2    hostage here.
 3             THE COURT:  It doesn't help me to talk about being
 4    held hostage.  We have some inevitable results of a Court of
 5    Appeals ruling.  The results are inevitable.  Another thing,
 6    the Court of Appeals emphasized the Republic doesn't have to
 7    stop paying the exchange.  They don't have to stop for a minute
 8    as long as they make a payment, an appropriate payment to the
 9    plaintiffs.
10             Now if you want to get the exchange people paid, talk
11    to the Republic.  They can pay you.  As far as holding hostage,
12    there are inevitable results of this Court of Appeals ruling.
13    The Court of Appeals didn't say we are holding somebody
14    hostage; they made a ruling.
15             MR. O'SHEA:  Your Honor --
16             THE COURT:  Excuse me.
17             MR. O'SHEA:  Pardon me.
18             THE COURT:  That ruling obviously is a very important
19    ruling, and there is still more work to be done.  If that
20    ruling had some effect on bond prices, well, court rulings
21    sometimes have effect on securities prices.  I don't sit here
22    planning things in order to affect the market, and I will not
23    do that.  The market is the market.  It reacts to certain
24    things.  But my job is not to affect the market intentionally
25    or not.
```

CB9HNMLA

1          I have some sympathy with what Mr. Boccuzzi is talking
2  about because we are up against -- if we are talking about
3  getting things done by December 2nd or December 15 or even
4  December 31st, there are two things going on in my mind.  Under
5  the Court of Appeals ruling, there should be for all payments
6  hence forth the application of the clause the Court of Appeals
7  is talking about.  The Court of Appeals didn't say this is to
8  be put off until March or July or something.  It made a ruling.
9          Now, the carrying out of that ruling involves some
10 work and some time.  What I thought was I certainly would have
11 the stay in effect until I finish whatever ruling I am going to
12 make, and let's suppose I get all the papers in by the 16th and
13 get to work.
14         MR. BOCCUZZI:  They have a reply, your Honor, on the
15 19th.
16         THE COURT:  All right.
17         MR. O'SHEA:  Your Honor, I think --
18         THE COURT:  Just a minute.  Please.
19         MR. O'SHEA:  Pardon me.
20         THE COURT:  One of the things I have in mind is that,
21 subject to what the Court of Appeals has asked, the plaintiffs
22 are entitled to money and they are entitled to money if the
23 legal steps were in order, they are entitled to money out of
24 the December payments.  They are entitled to money.  And they
25 have been waiting for years to get some money.  But they are

30

CB9HNMLA

1    entitled to money.  And they are going to get something.  The
2    Court of Appeals didn't say they are going to get nothing.  The
3    Court of Appeals said that the district court should do some
4    more work to resolve how much.  But they will get something.
5              Now when should they start?  Should they wait until
6    March?  That is money that they are being deprived of that they
7    are entitled to.  They have a legal right to.  What the Court
8    of Appeals is saying is that the Republic has breached these
9    clauses.  Breached these clauses.  So the plaintiffs are
10   entitled to that money.
11             So what I am saying to all of you is that I will keep
12   the stay in effect until I make my ruling.  I will consider
13   continuing the stay while the Court of Appeals does further
14   work.  But the Court of Appeals further work is not going to
15   say there is no money coming.  It is a matter of how much.
16             So I have to tell you that I will keep the stay in
17   effect until my ruling and at that time I will entertain
18   applications to continue the stay or to dissolve the stay.  And
19   obviously to some extent whether it is appropriate to continue
20   the stay depends on what I rule.  I am repeating myself for the
21   umpteenth time, but some money is due to the plaintiffs out of
22   those December payments.  It's due.  How much is a question.
23             That is what I am going to say about the stay and that
24   is all I am going to say about the stay.
25             Anything else?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

31

CB9HNMLA

```
 1                 MR. OLSON:  May I just respond very briefly?
 2                 THE COURT:  Yes.
 3                 MR. OLSON:  The first part of the remand, so to speak,
 4       was for clarification of what the trial court intended with
 5       respect to the payments of the money that you are talking
 6       about.  It is just for clarification of what you intended in
 7       the first instance, which we submit is clearly reflected in
 8       your orders in the first place, the colloquy that took place on
 9       February 23, and in the orders that you issued.  So there
10       shouldn't be a whole lot of time dedicated to that because even
11       the Republic acknowledged what you were saying and we were
12       saying with respect to the manner in which the equal payment
13       provision should be executed.  So that is one part of it.
14                 With respect to -- and we will move as rapidly as we
15       possibly can to have this thing resolved well before those
16       payments are due.  The Republic can post a bond any time it
17       wants with respect to that, to make sure that the plaintiffs
18       receive the money that they are entitled to.
19                 With respect to the clarification of the intermediary
20       banks and so forth, that is going to be fairly simple.  We have
21       submitted an order that clearly takes care of that and
22       incorporates by reference the UCC provisions that are involved
23       with respect to that.  So everything can be taking place.
24                 As far as the statements by the exchange bondholders
25       today that they are new to the fray, this case has been going
```

32

CB9HNMLA

1    on for a long, long time.  This issue about the equal treatment
2    provisions has been in litigation for two years, your Honor.
3    They haven't intervened.  They have no right to be here and to
4    participate in this case.  If you want to entertain receiving
5    amicus briefs from them, that is one thing.  But you ruled, and
6    it has been affirmed by the Court of Appeals, that the Republic
7    of Argentina can discharge its obligations to the exchange
8    bondholders and to the plaintiffs in this case and that is
9    final.  There is no request for clarification of that.
10           As you indicated, this business about being held
11   hostage is nonsense.  You ruled, after long consideration of
12   the matter, that they can pay, the Republic can pay the
13   exchange bondholders and pay the plaintiffs, and that was
14   affirmed specifically by the Second Circuit, and the Second
15   Circuit did not need any clarification about that.
16           What Mr. Boccuzzi says with respect to let December
17   slide, they are talking about making payments of well over $3
18   billion, and of course that is why they want a stay so they can
19   make those payments and string out the plaintiffs that much
20   longer.  I think that you have indicated that your patience has
21   run out with respect to that.  I just simply want to say that
22   it is certainly justified to hold Argentina to the decision on
23   the merits that was affirmed with respect to the meaning of
24   these provisions and the obligation of Argentina, which was
25   affirmed on every particular by the Court of Appeals.

33
CB9HNMLA

1            MR. O'SHEA:  Your Honor, a response very briefly, your
2    Honor, on behalf of the exchange bondholders.  The Second
3    Circuit explicitly expressed concern for those third parties
4    and your Honor invited us here after we submitted a letter.  We
5    have every right to be here.
6            THE COURT:  I assume I will receive multiple briefs.
7            We are adjourned.  Thank you.  We are adjourned.
8            (Adjourned)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25