UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
NML CAPITAL, LTD., :
: **OPINION**
Plaintiff, :
: 08 Civ. 6978 (TPG)
– against – : 09 Civ. 1707 (TPG)
: 09 Civ. 1708 (TPG)
REPUBLIC OF ARGENTINA, :
:
Defendants. :
:
------------------------------------------------x

On October 26, 2012, the Court of Appeals handed down an opinion affirming certain injunctions entered by the District Court. These injunctions were designed to remedy Argentina's breach of the *Pari Passu* Clause, including the "Equal Treatment Provision," contained in the contractual provisions of the Fiscal Agency Agreement Bonds ("FAA Bonds") at issue in this litigation. This breach resulted from the fact that Argentina had issued new debt pursuant to exchange offers in 2005 and 2010 ("Exchange Bonds"), and was making the payments required on this new debt, but had declared that it would make no payments to those still holding the FAA Bonds. It is of note that the Court of Appeals affirmed the finding of the District Court that, although there had originally been a default on the FAA Bonds because of a well-known financial crisis, currently Argentina is able to make the payments on both the FAA Bonds owned by plaintiffs and the Exchange Bonds.

1

An essential part of the ruling of the Court of Appeals was to affirm the injunctive relief fashioned by the District Court.  It ruled that Argentina must make appropriate payments to plaintiffs on their FAA Bonds concurrent with or in advance of any payments to holders of the 2005 and 2010 Exchange Bonds.  However, the Court of Appeals remanded, directing that the District Court clarify precisely how the payment formula, regarding payments to plaintiffs, is intended to operate.  Also, the Court of Appeals directed a more precise determination as to how the injunctions would apply to third parties, including intermediary banks.

On remand, the court has not only received briefs from plaintiffs and Argentina, but has also received briefs and letters from exchange bondholders, parties responsible for handling the payment process to these bondholders, and the Federal Reserve Bank.  The court has considered these materials without requiring formal interventions.

<u>Payment Formula</u>

The injunctions affirmed by the Court of Appeals are contained in an Order of the District Court dated February 23, 2012, which contains a number of injunction provisions and which is referred to by the Court of Appeals as the "Injunctions."  Paragraph two of the Injunctions provides:

> The Republic accordingly is permanently ORDERED to specifically perform its obligations to NML under Paragraph 1(c) of the FAA as follows:

    a. Whenever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future (collectively, the "Exchange Bonds"), the Republic shall concurrently or in advance make a "Ratable Payment" (as defined below) to NML.

    b. Such "Ratable Payment" that the Republic is ORDERED to make to NML shall be an amount equal to the "Payment Percentage" (as defined below) multiplied by the total amount currently due to NML in respect of the bonds at issue in these cases (08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708), including pre-judgment interest (the "NML Bonds").

    c. Such "Payment Percentage" shall be the fraction calculated by dividing the amount actually paid or which the Republic intends to pay under the terms of the Exchange Bonds by the total amount then due under the terms of the Exchange Bonds.

The Court of Appeals stated that it is unable to discern from the record precisely how this formula is intended to operate, and further stated:

> It could be read to mean that if, for example, Argentina owed the holders of restructured debt $100,000 in interest and paid 100% of that amount then it would be required to pay the plaintiffs 100% of the accelerated principal and all accrued interest. Or it could be read to mean that, if such a $100,000 payment to the exchange bondholders represented 1% of the principal and interest outstanding on the restructured debt, then Argentina must pay plaintiffs 1% of the amount owed to them.
> The following discussion is intended to provide the clarification requested by the Court of Appeals.

Although the provisions of the February 23, 2012 Injunctions regarding the "Ratable Payment" are phrased in a somewhat complicated manner, the actual meaning is quite straightforward. The obligation to plaintiffs under the February 23, 2012 Injunctions accrues whenever Argentina "pays any amount due" under the terms of the Exchange Bonds. The next time this will occur will be in December 2012, when Argentina is scheduled to make interest payments

on the Exchange Bonds of about $3.14 billion: $42 million on December 2, $3 billion on December 15, and $100 million on December 31. When this occurs, Argentina will be required to make a "Ratable Payment" to plaintiffs. Assuming that Argentina pays 100% of what is then due on the Exchange Bonds, this is the "Payment Percentage" referred to in paragraph 2(b). Argentina would be required to pay 100% "multiplied by the <u>total amount currently due</u>" to plaintiffs. There is no question about what is "currently due" to plaintiffs. The amount that is currently due is the amount of the unpaid principal, the due date of which has been accelerated, and accrued interest.[1] The total of these amounts due to plaintiffs is approximately $1.33 billion. Thus, at some time in December 2012, when Argentina makes the interest payments on the Exchange Bonds, amounting to a total of about $3.14 billion, Argentina will be required to pay plaintiffs approximately $1.33 billion.

    This is in accord with the first hypothetical situation posed in the Court of Appeals' opinion, describing the situation in which Argentina owes the holders of restructured debt $100,000 in interest and pays 100% of that amount, resulting in the requirement to pay plaintiffs 100% of the accelerated principal plus all accrued interest.

---

[1] Although judgments have been entered in other related cases, the cases before the court in this matter are ones where judgment has not been entered. <u>See</u> Transcript of Oral Argument at 26-27, <u>NML Capital v. The Republic of Argentina</u>, (February 23, 2012) (03 Civ. 8845).

The second hypothetical situation posed by the Court of Appeals, resulting in Argentina paying plaintiffs 1% of the amount owed to them, is based on a misinterpretation of the relevant language of the Injunctions. The second hypothetical assumes a $100,000 payment to the Exchange bondholders, representing 1% of the total "principal and interest outstanding on the restructured debt," most of which is payable in the future. But the obligation of Argentina under the payment formula in the Injunctions arises when Argentina "<u>pays</u> any amount due" to the exchange bondholders. In the present case, this would next occur when Argentina pays the interest due on the Exchange Bonds in December 2012. Also, the Payment Percentage is calculated on the basis of "the amount actually paid or which the Republic intends to pay," as a percentage of "the total amount then due." None of this relevant language refers to any calculation based upon the total amount of principal and interest outstanding on the restructured debt, including large amounts of principal and interest to be paid into the future.

To recapitulate, the Ratable Payment provisions in the Injunctions, as correctly interpreted and as intended by the court, would be currently applied as follows. In December 2012, there are interest payments of approximately $3.14 billion due on the Exchange Bonds. Presumably, Argentina intends to pay 100% of what is owed. There are currently debts owed to plaintiffs by Argentina of approximately $1.33 billion. It should be emphasized that these are debts <u>currently owed</u>, not debts spaced out over future periods of time. In

order to comply with the terms of the Injunctions, Argentina must pay plaintiffs 100% of that $1.33 billion concurrently with or in advance of the payments on the Exchange Bonds.

This result is not only in accordance with the payment formula provisions of the Injunctions, it is consistent with the *Pari Passu* Clause and its Equal Treatment Provision.  In saying this, the court recognizes that the debt now owed to the exchange bondholders is of a <u>different amount</u> and of a <u>different nature</u> from what is owed to plaintiffs.  What is owed in December 2012 to exchange bondholders are interest payments, which are part of a series which will go on being paid until the maturity of the Exchange Bonds.  The debt owed to plaintiffs is accelerated principal plus accrued interest.  But it is obvious that a *Pari Passu* Clause does not require that the debts in question be in the same amount or of the same nature.  What is required is that the obligations under the various debts are complied with to the same extent, rather than having the obligations on one debt honored and the obligations on the other debt repudiated, as has occurred in the present case.

Of course, what is being done here is not literally to carry out the *Pari Passu* Clause, as would be done in a normal commercial situation, but to provide a remedy for Argentina's violation of the Clause.  <u>NML Capital v. The Republic of Argentina</u>, No. 12-105(L), at 19 n.10 (2d Cir. Oct. 26, 2012)(hereinafter "Opinion").  Yet, the remedy must bear some reasonable relation to the *Pari Passu* Clause in order to be a sensible remedy.  One

definition of *pari passu* in Black's Law Dictionary (8th ed. 2004) is "proportionally," obviously referring to the use of the same proportion in paying down two kinds of debts.  This is clearly reflected in the Ratable Payment provisions in the Injunctions, as correctly interpreted.  These provisions properly start with the fact that if 100% of what is <u>currently due</u> to the exchange bondholders <u>is paid</u>, then 100% of what is currently due to plaintiffs must also be paid.  The payment to plaintiffs must surely relate to a debt actually due to them.  And this leads to the problem which this court finds in the second hypothetical posed by the Court of Appeals.  There is simply no debt owed to plaintiffs on terms providing for payments of 1% of some sum of money, spaced out over 100 installments of 1% each.  The second hypothetical of the Court of Appeals would involve a radical departure from the payment formula in the Injunctions and from the *Pari Passu* Clause.

     Again, there is no suggestion of interfering with what the exchange bondholders are due to be paid.  The question raised by the Court of Appeals relates solely to how much plaintiffs are to be paid at the time exchange bondholders are paid.  But the fact is that the amount owed to plaintiffs by Argentina is the accelerated principal plus accrued interest.  Argentina owes this and owes it now.  No one has suggested any basis in contract or in policy why Argentina deserves to have payment of the amount due to plaintiffs spread over some period of time.

Moreover, and this is most important, to apply the second hypothetical of the Court of Appeals and spread payment to plaintiffs over a period of time, would be a far cry from a proper remedy for the flagrant and intentional contract violations committed by Argentina.

Argentina and certain exchange bondholders argue that it is unjust for them to be receiving thirty cents on the dollar by virtue of the Exchange Bonds, while plaintiffs receive full payment pursuant to the court rulings.  The Court of Appeals essentially answered this argument (Opinion at 26 n.15).  However, some further discussion is in order.

In accepting the exchange offers of thirty cents on the dollar, the exchange bondholders bargained for certainty and the avoidance of the burden and risk of litigating their rights on the FAA Bonds.  However, they knew full well that other owners of FAA Bonds were seeking to obtain <u>full payment</u> of the amounts due on such bonds through persisting in the litigation.  Indeed, the exchange bondholders were able to watch year after year while plaintiffs in the litigation pursued methods of recovery against Argentina which were largely unsuccessful.  However, decisions have now been handed down by the District Court and the Court of Appeals based on the *Pari Passu* Clause, which give promise of providing plaintiffs with full recovery of the amounts due to them on their FAA Bonds.  This is hardly an injustice.  The exchange bondholders made the choice not to pursue the route which plaintiffs have pursued.  Moreover, it is hardly an injustice to have legal rulings which, at long last, mean that

8

Argentina must pay the debts which it owes. After ten years of litigation this is a just result.

Third Parties

It is the intention of the court to properly apply Rule 65(d) of the Federal Rules of Civil Procedure. This Rule provides that an injunction binds the parties, the parties' agents, and other persons who are in active concert or participation with the parties or their agents. It is further provided that an injunction binds these people only if they receive actual notice of the injunction.

The issue arises because of the need to ensure enforcement of the Injunctions' requirement that payments are to be made on the Exchange Bonds only if appropriate payments are made concurrently or in advance to plaintiffs. The Court of Appeals noted that the District Court was invoking Rule 65(d), "Anticipating that Argentina would refuse to comply with the Injunctions and in order to facilitate payment." It goes without saying that if Argentina is able to make the payments on the Exchange Bonds without making the payments to plaintiffs, the District Court and Court of Appeals' rulings and the Injunctions will be entirely for naught. To avoid this, it is necessary that the process for making payments on the Exchange Bonds be covered by the Injunctions, and that the parties participating in that process be so covered.

9

The February 23, 2012 Injunctions contain a provision prohibiting Argentina from taking any action to evade the directives of the Injunctions and further prohibiting Argentina from altering or amending the processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds, without obtaining prior approval of the court.

The process and the parties involved in making payments on the Exchange Bonds are as follows. Argentina transfers funds to the Bank of New York Mellon ("BNY"), which is the indenture trustee in a Trust Indenture of 2005.[2] Presumably there is a similar indenture for the 2010 exchange offer. BNY then forwards the funds to the "registered owner" of the Exchange Bonds. There are two registered owners for the 2005 and 2010 Exchange Bonds. One is Cede & Co. and the other is the Bank of New York Depositary ("BNY Depositary"). Cede and BNY Depositary transfer the funds to a "clearing system" such as the Depository Trust Company ("DTC"). The funds are then deposited into financial institutions, apparently banks, which then transfer the funds to their customers who are the beneficial interest holders of the bonds.

Plaintiffs assert that under Rule 65(d), the Injunctions should bind Argentina, the indenture trustee, the registered owners, and the clearing system, whoever they are. It is probably true that these parties are not all

---

[2] There is apparently a dispute as to whether this payment takes place in Argentina or the United States. However, BNY is surely a United States entity. The rest of the process, without question takes place in the United States.

agents of Argentina, but they surely are "in active concert or participation" with Argentina in processing the payments from Argentina to the exchange bondholders.

There is a problem under Article 4A of the U.C.C. about including intermediary banks. But plaintiffs address this in seeking a carve-out in the Injunctions for such intermediary banks. Plaintiffs are also not requesting that the financial institutions receiving funds from the DTC be bound by the Injunctions.

It would appear that plaintiffs have requested that a reasonable set of parties be bound by the Injunctions, and this is in compliance with Rule 65(d).

BNY, and to some extent others on the above list, object to any application of Rule 65(d) to them. Particularly BNY strenuously asserts that it has duties as indenture trustee, and these duties should be the beginning and the end of its responsibilities.

These arguments miss the point. If Argentina complies with the rulings of the Court of Appeals, there will be no problem about funds destined for exchange bondholders being deposited with BNY and going up the chain until they arrive in the hands of such bondholders. But if Argentina attempts to make payments to the exchange bondholders, contrary to the ruling of the Court of Appeals and thus contrary to law, this would not involve the normal and proper situation dealt with by BNY under the indenture, and dealt with by

others in the chain. Under these circumstances, these third parties should properly be held responsible for making sure that their actions are not steps to carry out a law violation, and they should avoid taking such steps.

## The Order

Since the Court of Appeals has essentially affirmed the February 23, 2012 Order containing the Injunctions, that Order will remain in effect, subject to the following qualifications. In paragraph 2a, there will be an appropriate reference to the definitions contained in the current opinion, which does not change the relevant wording but further defines it.

The court believes that plaintiffs properly recommend specific wording listing the parties bound by the Order under Rule 65(d). Accordingly, that listing will be included.

Dated: New York, New York
       November 21, 2012

                                                Thomas P. Griesa
                                                U. S. District Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
FILED: 11/21/12
```