# EXHIBIT A

# 13-495-cv(L)

## 13-545-cv(CON)

### United States Court of Appeals

**FOR THE SECOND CIRCUIT**

**Docket Nos. 13-495-cv(L); 13-545-cv(CON)**

THAI-LAO LIGNITE (THAILAND) CO. LTD.,
HONGSA LIGNITE (LAO PDR) CO. LTD.,

*Petitioners-Appellees,*

*(Caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF REVERSAL

STUART F. DELERY,
*Acting Assistant
Attorney General*
MARK B. STERN,
SHARON SWINGLE,
*Attorneys, Appellate Staff
Civil Division,
Department of Justice*

MARY E. MCLEOD,
*Acting Legal Adviser,
Department of State*

PREET BHARARA,
*United States Attorney for the
Southern District of New York,
Attorney for the United States
of America as Amicus Curiae*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2761

CHRISTOPHER CONNOLLY,
EMILY E. DAUGHTRY,
*Assistant United States
Attorneys*

—v.—

GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC,

*Respondent-Appellant,*

BANK OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC,

*Intervenor-Appellant.*

# TABLE OF CONTENTS

PAGE

Interest of the United States . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   A.  The Discovery Demands and the Magistrate
      Judge's Rulings . . . . . . . . . . . . . . . . . . . . . . . 7

   B.  The District Court's February 11, 2013
      Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

POINT I—The Lao Government's Diplomatic
   Accounts and Diplomatic Personnel Are Entitled
   to Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   A.  The VCDR Shields the Lao Government's
      Diplomatic Accounts from Attachment and
      Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      1.  The VCDR Protects Diplomatic Property
         Used for Commercial Transactions That
         Are Related to Diplomatic Functions . 14

      2.  The VCDR Immunizes a Foreign Mission
         from Discovery and Precludes Testimony
         from Diplomatic Agents and Staff . . . 18

   B.  The District Court's Order Would Have an
      Adverse Effect on the United States' Foreign
      Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

POINT II—FSIA Section 1611(b)(1) Protects the Lao
   Central Bank's Accounts From Discovery . . . . 23

ii

PAGE

CONCLUSION ............................... 30

iii

PAGE

## TABLE OF AUTHORITIES

*Cases:*

*767 Third Ave. Assocs. v. Permanent Mission of the
     Republic of Zaire,*
     988 F.2d 295 (2d Cir. 1993) . . . . . . . . . .  13, 15, 20

*Abbott v. Abbott,*
     560 U.S. 1, 130 S. Ct. 1983 (2010) . . . . . . . . . . . 21

*Argentine Republic v. Amerada Hess Shipping Corp.,*
     488 U.S. 428 (1989). . . . . . . . . . . . . . . . . . . . . . . 23

*Avelar v. J. Cotoia Const., Inc.,*
     11-CV-2172 (RMM)(MDG), 2011 WL 5245206
     (E.D.N.Y. Nov. 2, 2011) . . . . . . . . . . . . . . . . . 16, 17

*Boos v. Barry,*
     485 U.S. 312 (1988). . . . . . . . . . . . . . . . . . . . . . 22

*EM Ltd. v. Republic of Argentina,*
     695 F.3d 201 (2d Cir. 2012) . . . . . . . . . . . . . . . 4, 19

*Foxworth v. Perm. Mission of the Republic of Uganda
     to the United Nations,*
     796 F. Supp. 761 (S.D.N.Y. 1992) . . . . . . . . . 16, 17

*Khulumani v. Barclay Nat'l Bank Ltd.,*
     504 F.3d 254 n.9 (2d Cir. 2007) . . . . . . . . . . . . . 23

*Liberian Eastern Timber Corp. v. Gov't of the
     Republic of Liberia,*
     659 F. Supp. 606 (D.D.C. 1987) . . . . . . .  16, 17, 19

iv

PAGE

*Republica Argentina,*
  652 F.3d 172 (2d Cir. 2011), . . . . . . . . . . . . . *passim*

*Rubin v. Islamic Republic of Iran,*
  637 F.3d 783 (7th Cir. 2011) . . . . . . . . . . . . . . . . 10

*Sales v. Republic of Uganda,*
  90 Civ. 3972 (CSH), 1993 WL 437762 (S.D.N.Y.
  Oct. 23, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Sumitomo Shoji Am., Inc. v. Avagliano,*
  457 U.S. 176 (1982). . . . . . . . . . . . . . . . . . . . . . . . 22

*Swarna v. Al-Awadi,*
  622 F.3d 123 (2d Cir. 2010) . . . . . . . . . . . . . . 17, 19

*Tabion v. Mufti,*
  73 F.3d 535 (4th Cir. 1996) . . . . . . . . . . . . . . . . . 16

*Vulcan Iron Works, Inc. v. Polish Am. Machinery
  Corp.,*
  472 F. Supp. 77 (S.D.N.Y. 1979) . . . . . . . . . . . . . 20

*Weston Compagnie de Finance et D'Investissement,
  S.A. v. La Republica del Ecuador,*
  823 F. Supp. 1106 (S.D.N.Y. 1993) . . . . . . . . . . . 27

*Statutes and Legislative History:*

28 U.S.C. § 517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1609 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 1610(a). . . . . . . . . . . . . . . . . . . . . . . . . 14

v

PAGE

28 U.S.C. § 1611(b)(1) . . . . . . . . . . . . . . . . . . . . *passim*

H.R. Rep. No. 94-1487, *as reprinted in* 1976
    U.S.C.C.A.N. 6604 . . . . . . . . . . . . . . . . . . . . . 15, 28

*Other Authorities*:

Eileen Denza, Diplomatic Law: Commentary on the
    Vienna Convention on Diplomatic Relations (3d
    ed. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

Ernest T. Patrikis, *Foreign Central Bank Property:*
    *Immunity from Attachment in the United States,*
    1982 U. Ill. L. Rev. 265 (1982) . . . . . . . . . . . . . . 28

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

### Docket No. 13-495

———————

THAI-LAO LIGNITE (THAILAND) CO. LTD.,
HONGSA LIGNITE (LAO PDR) CO. LTD.,

*Petitioners-Appellees,*

—v.—

GOVERNMENT OF THE LAO PEOPLE'S
DEMOCRATIC REPUBLIC,

*Respondent-Appellant,*

BANK OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC,

*Intervenor-Appellant.*

———————

## BRIEF FOR THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF REVERSAL

———————

### Interest of the United States

Pursuant to 28 U.S.C. § 517 and Rule 29(a) of the Federal Rules of Appellate Procedure, the United States respectfully submits this *amicus curiae* brief in support of reversal of the order entered by the United States District Court for the Southern District of New York (Wood, *J.*) on February 11, 2013, affirm-

2

ing multiple discovery orders issued by the magistrate judge.

This matter concerns efforts by Thai-Lao Lignite (Thailand) Co. Ltd. and Hongsa Lignite (Lao PDR) Co. Ltd. (together, "Thai-Lao and Hongsa") to satisfy a foreign arbitral award against the Government of the Lao People's Democratic Republic (the "Lao Government") that was previously confirmed by the district court. In its February 11, 2013 order, the district court approved the extensive post-judgment discovery ordered by the magistrate judge concerning (1) United States bank accounts used to support the diplomatic functions of the embassy and United Nations ("U.N.") mission of the Lao Government; and (2) United States bank accounts held by the Bank of the Lao People's Democratic Republic (the "Lao Central Bank"). In doing so, the district court held that neither the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. 7502 ("VCDR"), nor the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* ("FSIA"), shielded the Lao Government's diplomatic accounts or the Lao Central Bank accounts from discovery. The Lao Government and Lao Central Bank have appealed the district court's rulings.

The United States participates in this case as *amicus curiae* in support of reversal based on its strong interest in the proper interpretation of both the VCDR and applicable international agreements governing the presence of the U.N. in the United States. In addition, the United States has an interest in ensuring the proper application of the provisions of

3

the FSIA that provide special immunity for central bank funds. The district court's order inappropriately circumscribes the immunity afforded to the property of foreign diplomatic missions under the VCDR and to foreign central banks under the FSIA. If affirmed, the district court's order would have adverse consequences for U.S. foreign policy, would negatively affect U.S. diplomatic and financial interests abroad, and could have an adverse impact on the U.S. economy and the global financial system.

As explained below, the VCDR shields the Lao Government's diplomatic bank accounts from attachment and discovery. The district court incorrectly held that the Lao Government's diplomatic funds are subject to discovery and possible attachment under the FSIA because a portion of them are being used for "commercial activities." Funds used for commercial transactions that are related to the functioning of diplomatic missions, however, are not subject to attachment or execution under the VCDR. Article 25 of the VCDR obliges the United States to provide "full facilities" to the diplomatic missions of foreign states, and courts have interpreted this provision to provide immunity from attachment to bank accounts used for diplomatic purposes. The declaration submitted by a high-ranking Lao Government diplomatic agent, to which the district court gave insufficient weight, establishes that the funds subject to the district court's discovery order are used for diplomatic purposes, even if those purposes at times involve transactions that could be characterized as commercial. It is the use of funds for diplomatic purposes that is the

4

touchstone for determining whether those funds are immune from attachment under the VCDR.

The district court also erred in applying this Court's interpretation of the scope of the FSIA in *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012), to conclude that while the VCDR may shield some property from attachment, it does not preclude discovery concerning such property. In *EM Ltd.*, this Court held that where a district court already has jurisdiction over a foreign sovereign, it is empowered to order discovery relevant to enforcing a judgment against that sovereign, even if the sovereign assets discovered ultimately may not be subject to attachment under the FSIA. *Id.* at 209. But *EM Ltd.* is inapposite, as the FSIA does not affect the nature or scope of diplomatic immunity under the VCDR. In addition to the "full facilities" that the VCDR obligates the United States to provide to the diplomatic missions of foreign states under Article 25, the VCDR shields diplomatic agents from their host states' civil jurisdiction and provides them with testimonial immunity (Article 31); shields embassy administrative and technical staff from their host states' civil jurisdiction for acts performed within "the course of their duties" and provides them with testimonial immunity (Article 37); renders the archives and documents of foreign diplomatic missions "inviolable" (Article 24); and renders the official correspondence of foreign diplomatic missions "inviolable" (Article 27). It is clear from these articles that the VCDR prohibits discovery against a foreign state concerning diplomatic property.

5

If affirmed, the district court's order would give rise to a host of adverse foreign policy consequences for the United States. The Court should defer to the Executive Branch's interpretation of the United States' international obligations under the VCDR, as well as its assessment of the foreign policy consequences of failing to meet those obligations. Deference is particularly appropriate with respect to the VCDR, because the United States and the Lao Government agree on the interpretation of the treaty, and that interpretation flows from the treaty's clear language.

The United States also has an interest in protecting foreign governments from intrusive discovery targeted at central bank accounts given the many foreign central banks that hold reserves in accounts in the United States. The Lao Central Bank's accounts are protected from discovery by FSIA § 1611(b)(1). In holding otherwise, the district court misapplied this Court's decision in *NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 23 (2012), by focusing on the possibility that certain funds held by the Lao Central Bank belong to the Lao Government. But *NML Capital* correctly held that central banks need not be formally independent from their parent governments in order for § 1611(b)(1) immunity to apply, and that immunity also applies to funds held by central banks that are the property of the foreign state. *Id.* at 189. Under *NML Capital*, the dispositive question is not who "owns" the funds in question, but whether the funds are used for traditional central banking functions. *Id.* at 194. Here, a declaration

6

from a Lao Central Bank official was sufficient to establish a presumption that the Lao Central Bank's funds are used for traditional central banking functions, and thus immune from attachment and protected from discovery. Because petitioners failed to rebut this presumption by presenting any evidence that the funds were being used for other purposes, the district court's discovery order was inappropriate and failed to accord the Lao Central Bank the immunity to which it is entitled under the FSIA.

## Statement of Facts

This case arises out of a November 2009 award issued by an arbitral tribunal seated in Malaysia in favor of Thai-Lao and Hongsa against the Lao Government.[1] (A 66). The district court entered an order confirming the award on August 3, 2011.[2] (A 126). Thai-

_____

[1] Citations to the Appendix are in the form "A__." Citations to the Lao Government's principal brief on appeal dated May 10, 2013 (Dkt. No. 205) are in the form "Lao Gov't Br. at __." Citations to the Lao Government's motion in support of a stay pending appeal dated February 19, 2013 (Dkt. No. 41) are in the form "Lao Gov't Stay Br. at __."

[2] The arbitral award was subsequently set aside by a Malaysian court in December 2012 (A 1164, 1169), and the Lao Government moved to vacate the district court's confirmation of the award in February 2013. (A 1161). As of the date of this brief, the Lao Government's motion to vacate is still pending before the district court.

7

Lao and Hongsa have sought extensive discovery related to their efforts to satisfy the award, and the magistrate judge assigned to this matter has issued several rulings approving Thai-Lao and Hongsa's discovery demands over the Lao Government's objections. The district court's February 11, 2013 order upheld the magistrate judge's discovery rulings.

## A. The Discovery Demands and the Magistrate Judge's Rulings

Prior to confirmation of the award, Thai-Lao and Hongsa sought discovery concerning property or assets held by the Lao Government in the United States. By order dated April 4, 2011, the magistrate judge directed the Lao Government to produce records relating to U.S. bank accounts that it maintained. (A 119-20). The Lao Government objected to the magistrate judge's order on the ground that the discovery sought, which implicated bank accounts used solely for diplomatic purposes, would violate the immunity provisions of the FSIA and VCDR. (A 169). On September 13, 2011, the district court rejected the Lao Government's arguments, imposed sanctions against the Lao Government for failing to comply with the magistrate judge's order, and directed that discovery proceed. (A 167).

According to the Lao Government, following the district court's September 13, 2011 order, the Lao Government produced two years' worth of records relating to U.S. bank accounts used by its embassy and U.N. mission to support their diplomatic functions, including checks and check register entries showing

8

how the diplomatic funds were spent. Lao Gov't Br. at
10. Thai-Lao and Hongsa then sought deposition tes-
timony from Lao Government officials. (A 1026-31).
In response, the Lao Government requested a protec-
tive order from the magistrate judge. (A 1033). In
support of its request, the Lao Government submitted
under   seal   a   declaration   from   Thongmoon
Phongphilath (the "Thongmoon Declaration"), a dip-
lomatic agent serving as First Secretary at the Em-
bassy of the Lao Government in the United States. As
explained by the Lao Government, the Thongmoon
Declaration attested to the funds' use for diplomatic
purposes such as maintaining the embassy and U.N.
mission facilities, paying rent on those facilities, pay-
ing staff, providing necessary amenities for staff and
visiting dignitaries, procuring office supplies, and
paying for telephone and internet service. Lao Gov't
Br. at 10-11.

By order dated November 26, 2012, the magistrate
judge denied the Lao Government's request for a pro-
tective order (A 958), and on December 17, 2012, she
denied the Lao Government's request for a stay of
discovery to allow it to oppose the ruling before the
district court. (A 985). Mr. Thongmoon was subse-
quently deposed over the course of two days, and af-
ter the deposition, Thai-Lao and Hongsa sought ei-
ther further deposition testimony from Mr. Thong-
moon or further records concerning the Lao Govern-
ment's diplomatic accounts. Lao Gov't Stay Br., Ex.
K. Among other things, Thai-Lao and Hongsa sought
additional bank account statements, monthly finan-
cial reports sent from the embassy and U.N. mission
to the Lao Government, and yearly funding proposals

9

sent from the embassy and U.N. mission to the Lao
Government. *Id.*

Thai-Lao and Hongsa also sought discovery con-
cerning the Lao Central Bank's U.S. bank accounts.
In an order dated May 29, 2012, the magistrate judge
directed the Lao Government to produce several cate-
gories of records, including records concerning the
Lao Central Bank's U.S. bank accounts; the Lao Gov-
ernment's access to the Lao Central Bank's U.S. ac-
counts; and any payments to be made out of the Lao
Central Bank's U.S. accounts to the Lao Government
over the next year. (A 498). The Lao Government re-
sponded by stating that it had no knowledge of or ac-
cess to the Lao Central Bank's U.S. accounts. (A 646).
Thai-Lao and Hongsa objected, and the magistrate
judge issued a subsequent order dated July 20, 2012,
directing the Lao Government to either (1) obtain re-
sponsive records from the Lao Central Bank, or (2)
submit a sworn affidavit from a Lao Government offi-
cial in support of the claim that the Lao Government
had no knowledge of or control over funds held in the
Lao Central Bank's U.S. accounts. (A 594). The Lao
Government sought a stay of this discovery order
pending a challenge in the district court, which the
magistrate judge denied on July 31, 2012. (A 598). On
August 3, 2012, the Lao Central Bank moved to in-
tervene in this matter (A 602), and on August 6,
2012, it objected to the magistrate judge's rulings in-
sofar as they imposed discovery obligations on the
Lao Central Bank (A 721-22).

10

## B.  The District Court's February 11, 2013 Order

In its February 11, 2013 order, the district court upheld the magistrate judge's discovery rulings. (A 1128). The district court determined that the diplomatic accounts might be attachable under the FSIA, and thus susceptible to discovery, based on its understanding that the Thongmoon Declaration, as well as bank records regarding the diplomatic accounts, indicated that the accounts had been used for what the magistrate judge had characterized as " 'a wide array of commercial transactions.' " (A 1153 (quoting magistrate judge's November 26, 2012 order)). Furthermore, relying on this Court's decision in *EM Ltd.*, the district court rejected the Lao Government's claim that the FSIA shields its diplomatic accounts from discovery, holding instead that "[p]etitioners are entitled to discovery regarding those accounts regardless of whether or not they are ultimately attachable" because the district court had established subject matter jurisdiction over the Lao Government.[3] (A 1155).

---

[3]   In *EM Ltd.*, this Court disagreed with the Seventh Circuit's decision in *Rubin v. Islamic Republic of Iran*, which held that "under the FSIA a plaintiff seeking to attach the property of a foreign state in the United States must identify the specific property that is subject to attachment and plausibly allege that an exception to § 1609 attachment immunity applies. If the plaintiff does so, discovery in aid of execution is limited to the specific property the plaintiff has identified." 637 F.3d 783, 799 (7th Cir. 2011). In doing so, the Seventh Circuit adopted a position similar to that

11

The district court also rejected the Lao Government's argument that the VCDR prohibited discovery concerning the diplomatic accounts, finding that "the concerns animating the Second Circuit's opinion in *EM* seem equally applicable in this context: once the Court has jurisdiction over a foreign sovereign, the Court may order discovery as it would over any other

---

advocated by the United States as *amicus curiae* in *Rubin*, and which the United States recently reiterated to the Supreme Court in *Rubin v. Islamic Republic of Iran*, No. 11-431 (S. Ct.). Specifically, the United States took the position that even where a foreign state is subject to suit under the FSIA, its property is presumptively immune from attachment or execution. Accordingly, before discovery is permitted against a foreign state, the court should require the judgment creditor to demonstrate that the proposed discovery is directed toward assets for which there is a reasonable basis to believe that an exception to immunity applies. On April 15, 2013, the Supreme Court requested the views of the Solicitor General in *EM Ltd.*, now captioned *Republic of Argentina v. NML Capital Ltd.*, No. 12-842 (S. Ct.), and the United States intends to file a brief in that matter that fully sets forth its position on the important issues raised by *EM Ltd.* Notwithstanding *EM Ltd.*, however, as explained in Point I below, the district court's discovery order with respect to the Lao Government's diplomatic accounts was incorrect because those accounts are immune from discovery under the VCDR.

12

defendant," regardless of whether the diplomatic bank accounts are "ultimately attachable." (A 1156).

The district court also rejected the Lao Government's and Lao Central Bank's objections to discovery concerning the Lao Central Bank's U.S. accounts. Stating that the Court's holding in *EM Ltd.* foreclosed the Lao Government's sovereign immunity objections to such discovery, the district court held that because it had already established its jurisdiction over the Lao Government, "discovery may proceed as broadly as it would in a typical post-judgment context without regard to immunity issues." (A 1143). With respect to the Lao Central Bank, the district court noted that discovery must be ordered "circumspect[ly]" because, unlike the Lao Government, the Lao Central Bank had not waived its sovereign immunity, and because Lao Central Bank funds held for its own account are immune from attachment under § 1611(b)(1). (A 1147-49). Nonetheless, the district court determined that Thai-Lao and Hongsa could compel production of documents concerning the Lao Central Bank's accounts because the Lao Central Bank had not conclusively established that the funds in the accounts did not belong to the Lao Government. (A 1150).

Both the Lao Government and the Lao Central Bank appealed the district court's February 11, 2013 order. (A 1177, 1220).

13

# ARGUMENT

## POINT I

### The Lao Government's Diplomatic Accounts and Diplomatic Personnel Are Entitled to Immunity

#### A. The VCDR Shields the Lao Government's Diplomatic Accounts from Attachment and Discovery

The VCDR governs the relationship between a sending state (here, Laos) and receiving state (here, the United States) with respect to the operation of the sending state's diplomatic mission, and affords certain privileges and immunities to embassies and diplomatic agents. These protections also extend to U.N. missions. *See* Agreement Between the United Nations and the United States Regarding the Headquarters of the United Nations, art. V, § 15, June 26, 1947, T.I.A.S. 1676 (U.N. representatives will be entitled to the same privileges and immunities as the United States accords to diplomatic envoys); Convention on Privileges and Immunities of the United Nations, art. IV, § 11(g) (member state representatives to the U.N. will receive the same privileges and immunities as diplomatic envoys); *accord 767 Third Ave. Assocs. v. Permanent Mission of the Republic of Zaire*, 988 F.2d 295, 298 (2d Cir. 1993) (applying VCDR to define protection afforded to U.N. permanent mission). In particular, as relevant here, the Lao Government's diplomatic bank accounts, both its embassy and U.N. mission bank accounts, are entitled to the protections set forth in the VCDR. These protec-

14

tions shield the accounts from attachment and discovery.

The district court offered two rationales in support of its holding that the VCDR did not preclude discovery on the Lao Government's diplomatic accounts. First, the district court concluded that the funds might be subject to attachment (and thus also to discovery) because they were used for commercial activities. (A 1156-57). Second, applying the FSIA analysis in *EM Ltd.* to the VCDR context, the district court concluded that the fact that the diplomatic accounts might be immune from attachment did not render them immune from discovery. (A 1156). Both rationales are erroneous.

### 1. The VCDR Protects Diplomatic Property Used for Commercial Transactions That Are Related to Diplomatic Functions

The district court's characterization of the Lao Government's diplomatic accounts as being used for commercial activities, and thus subject to potential attachment, substitutes the scope of protection afforded by the FSIA for the distinct protections provided by the VCDR. Under the FSIA, the property of a foreign state may be subject to attachment or execution to satisfy a judgment if the property is both "in the United States" and "used for a commercial activity in the United States." 28 U.S.C. § 1610(a). But Congress enacted the FSIA "[s]ubject to existing international agreements to which the United States is a party," 28 U.S.C. § 1609, and the FSIA therefore does not circumscribe the broad protections and im-

15

munities conferred by the VCDR, *see* H.R. Rep. No. 94-1487, at 12 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6604, 6630 (FSIA is "not intended to affect either diplomatic or consular immunity"); *id.* at 23 (noting that, even following the enactment of the FSIA, "if a plaintiff sought to depose a diplomat in the United States or a high-ranking official of a foreign government, diplomatic and official immunity would apply"). Put simply, the FSIA exceptions to immunity from attachment are "inapplicab[le]" to an analysis of the validity of attachment where an international agreement such as the VCDR provides immunity. *767 Third Ave. Assocs.*, 988 F.2d at 297.

Under Article 25 of the VCDR, "[t]he receiving State shall accord full facilities for the performance of the functions of the mission." Accordingly, the standard for determining whether a diplomatic bank account is immune from attachment under the VCDR is not whether that account is used for commercial activities, but rather whether such immunity is necessary to ensure the "full facilities" to which the diplomatic mission of the sending state is entitled. VCDR, art. 25; *see also id.*, Preamble (explaining that the privileges and immunities conveyed by the VCDR are meant "to ensure the efficient performance of the functions of diplomatic missions"). Although no appellate court has reached this question, numerous district courts (most of which are in this Circuit) have concluded that according "full facilities" to a diplomatic mission includes providing immunity from execution or attachment on embassy or mission bank accounts that are used for diplomatic purposes, because such bank accounts are critical to the functioning of a

16

diplomatic mission. *See, e.g., Avelar v. J. Cotoia Const., Inc.*, 11-CV-2172 (RMM)(MDG), 2011 WL 5245206, at *4 (E.D.N.Y. Nov. 2, 2011) ("Bank accounts used for diplomatic purposes are immune from execution under [Article 25], as facilities necessary for the mission to function."); *Sales v. Republic of Uganda*, 90 Civ. 3972 (CSH), 1993 WL 437762, at *1 (S.D.N.Y. Oct. 23, 1993) ("It is well settled that a foreign state's bank account cannot be attached if the funds are used for diplomatic purposes."); *Foxworth v. Perm. Mission of the Republic of Uganda to the United Nations*, 796 F. Supp. 761, 763 (S.D.N.Y. 1992) (holding that "attachment of defendant's bank account is in violation of the United Nations Charter and the [VCDR] because it would force defendant to cease operations"); *Liberian Eastern Timber Corp. v. Gov't of the Republic of Liberia*, 659 F. Supp. 606, 608 (D.D.C. 1987) ("The Liberian Embassy lacks the 'full facilities' the Government of the United States has agreed to accord if, to satisfy a civil judgment, the Court permits a writ of attachment to seize official bank accounts used or intended to be used for purposes of the diplomatic mission.").

Indeed, the VCDR acknowledges that diplomatic staff will engage in commercial activities as part of their official duties without losing immunity for such activities. *See* VCDR, art. 31(1)(c) (providing that a diplomatic agent shall be immune from the civil jurisdiction of the receiving state "except in the case of . . . an action relating to any . . . commercial activity exercised by the diplomatic agent in the receiving State *outside his official functions*" (emphasis added)); *Tabion v. Mufti*, 73 F.3d 535, 538-39 (4th Cir.

17

1996) ("commercial activity" refers to "the pursuit of trade or business activity" unrelated to diplomatic mission); *Swarna v. Al-Awadi*, 622 F.3d 123, 139 (2d Cir. 2010) ("*Tabion* articulates the scope of acts as they relate to the term 'commercial activity' under Article 31(1)(c) for sitting diplomats."). Clearly, to the extent the Lao Government uses its diplomatic accounts to purchase office supplies and telephone and internet services, as well as to pay rent on the facilities that house its embassy and U.N. mission, such use is not commercial activity outside the official functions of the diplomatic staff, but rather is in connection with the performance of the functions of the mission.

Thus, absent evidence that the accounts were being used for activities unrelated to the Lao Government's diplomatic mission, there was no basis for the district court to conclude that the diplomatic accounts were arguably exempt from the VCDR's immunity provisions. Courts that have addressed the "full facilities" provision of VCDR Article 25 have routinely relied on sworn affidavits submitted by mission officials attesting that the accounts at issue were used for the functioning of the mission. *See, e.g., Avelar*, 2011 WL 5245206, at *4 ("A sworn statement from the head of mission is sufficient to establish that a bank account is used for diplomatic purposes."); *Sales*, 1993 WL 437762, at *2 (reliance on mission head's affidavit, rather than "painstaking examination of the Mission's budget and books of account," is consistent with principle of diplomatic immunity); *Foxworth*, 796 F. Supp. at 762 (relying on declaration to describe nature and purpose of accounts); *Liberian Eastern Tim-*

18

*ber Corp.*, 659 F. Supp. at 610 (same). Here, the Thongmoon Declaration submitted by the Lao Government was more than sufficient to establish the diplomatic nature of the accounts. As the magistrate judge observed in her November 26, 2012 order, the Thongmoon Declaration "states that the accounts in question are used for the purpose of maintaining the diplomatic functions of the Embassy and Mission, that any commercial transactions with third parties reflected in account statements were ancillary to that purpose, and that it would be 'difficult, and perhaps impossible' for the Embassy and Mission to function if the accounts were under threat of attachment." (A 961). The district court credited the magistrate judge's summary of the Thongmoon Declaration's contents, including Mr. Thongmoon's assertion of the substantial difficulties that the threat of attachment would place on the diplomatic mission's ability to function. (A 1153). Accordingly, the Thongmoon Declaration should have foreclosed any discussion of the "commercial" nature of the Lao Government's diplomatic accounts. Applying the appropriate VCDR standard, the accounts are entitled to immunity.

### 2. The VCDR Immunizes a Foreign Mission from Discovery and Precludes Testimony from Diplomatic Agents and Staff

The district court's conclusion that the Lao Government is subject to discovery regarding its embassy and U.N. mission accounts even if those accounts might be immune from attachment is likewise mistaken. In its opinion, the district court noted that "the concerns animating the Second Circuit's opinion in

19

*EM* seem equally applicable in this context: once the Court has established jurisdiction over a foreign sovereign, the Court may order discovery as it would over any other defendant." (A 1156). But there is no basis for extending *EM Ltd.*'s holding to discovery relating to diplomatic property that is otherwise protected by the VCDR. At the threshold, as discussed above, the FSIA does not circumscribe the protections afforded by the VCDR. Moreover, the Court's holding in *EM Ltd.* rested on its determination that post-judgment discovery did not implicate the FSIA because it did not affect the foreign state's immunity from attachment. 695 F.3d at 208. Thus, once subject matter jurisdiction was established under the FSIA, a district court "could exercise its judicial power over [the foreign state] as over any other party, including ordering third-party compliance with the disclosure requirements of the Federal Rules." *Id.* at 209.

There are several provisions of the VCDR, however, that provide immunity from the types of discovery allowed by the district court in this case. *Cf. Liberian Eastern Timber Corp.*, 659 F. Supp. at 610 n.5 (in light of the VCDR's provisions, it would be "a difficult task at best" to obtain discovery regarding diplomatic accounts). VCDR Article 31 provides that diplomatic agents "enjoy immunity from [the receiving state's] civil and administrative jurisdiction" and may not be compelled "to give evidence as [ ] witness[es]." Indeed, under Article 31, "[s]itting diplomats are accorded near-absolute immunity in the receiving state to avoid interference with the diplomat's service for his or her government." *Swarna*, 622 F.3d at 137. VCDR Article 37 extends those same protections to adminis-

20

trative and technical staff, who are immune from the receiving state's civil jurisdiction for acts performed within "the course of their duties," and may not be compelled to give evidence as witnesses. *See Vulcan Iron Works, Inc. v. Polish Am. Machinery Corp.*, 472 F. Supp. 77, 79-80 (S.D.N.Y. 1979) (VCDR protects administrative and technical staff, and "[t]hus, their failure to appear for depositions in response to the plaintiffs' subpoenas was excusable"). Thai-Lao and Hongsa's attempts to compel deposition testimony from Lao diplomats, or administrative and technical staff of the Lao embassy, are in direct conflict with VCDR articles 31 and 37.

Additionally, VCDR Article 24 provides that the archives and documents of the mission are "inviolable." According to a leading diplomatic law expert, "the expression 'inviolable' was deliberately chosen by the International Law Commission to convey both that the receiving State must abstain from any interference through its own authorities and that it owes a duty of protection of the archives in respect of unauthorized interference by others." Eileen Denza, Diplomatic Law: Commentary on the Vienna Convention on Diplomatic Relations 192 (3d ed. 2008); *see also 767 Third Ave. Assocs.*, 988 F.2d at 300 (concluding that the VCDR "was intended to and did provide for the inviolability of mission premises, archives documents, and official correspondence," and that the VCDR "recognized no exceptions to mission inviolability"). Compelled production of financial and operational records from the Lao Government's embassy and U.N. mission conflicts with this provision; so too would compelled production of documents more re-

21

cently sought by Thai-Lao and Hongsa, such as writ-
ten reports prepared by the embassy and U.N. mis-
sion for the Lao Government concerning finances and
accounts, and yearly proposals made to the Lao Gov-
ernment for funding.

Similarly, VCDR Article 27 provides for the invio-
lability of official correspondence of the mission. Inso-
far as the discovery sought by Thai-Lao and Hongsa
seeks correspondence concerning diplomatic funds
between the embassy and U.N. mission and the Lao
Government, *see* Lao Gov't Stay Br., Ex. K., it could
compromise the ability of the embassy and U.N. mis-
sion to carry out their functions in confidence, thus
implicating the United States' obligation to "permit
and protect free communication on the part of the
mission for all official purposes" and to ensure the in-
violability of the mission's official correspondence.
VCDR, art. 27(1)-(2); *see also* Denza, Diplomatic Law
at 211 ("Free and secret communication between a
diplomatic mission and its sending government is
from the point of view of its effective operation proba-
bly the most important of all the privileges and im-
munities accorded under international diplomatic
law."). The district court's perfunctory rejection of the
VCDR as a basis for immunity from discovery failed
to account for these provisions, instead employing a
commercial activity test that has no applicability and
that led to an incorrect result.

The Court should defer to the Executive Branch's
interpretation of the VCDR. *Abbott v. Abbott*, 560
U.S. 1, 130 S. Ct. 1983, 1993 (2010) ("It is well settled
that the Executive Branch's interpretation of a treaty

22

is entitled to great weight." (citation and internal quotation marks omitted)). That is particularly true where, as here, the Executive's interpretation of the VCDR is agreed to by other parties to the treaty—in this case, the Lao Government—and flows from the treaty's clear language. *See id.* at 1993-95; *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184-85 (1982); *see also* Lao Gov't Br. at 28-38 (setting forth Lao Government's interpretation of the VCDR).

## B. The District Court's Order Would Have an Adverse Effect on the United States' Foreign Policy

The district court's February 11, 2013 order would have several adverse consequences for U.S. foreign policy. For example, by subjecting the property of diplomatic missions to wide-ranging discovery and the threat of potential attachment, the district court's order makes it exceedingly difficult for those missions to plan for and carry out their day-to-day operations, thereby straining the United States' bilateral relationships and its relationships with the U.N. and its member state missions.

Moreover, the United States has a strong interest in promoting reciprocity with respect to the treatment of its own diplomatic missions abroad. *See Boos v. Barry*, 485 U.S. 312, 323 (1988) (respecting diplomatic immunity "ensures that similar protections will be accorded those that we send abroad to represent the United States"). Applied reciprocally, the district court's order would permit discovery into (and foreign judicial scrutiny of) sensitive communications dis-

23

cussing operational details of the United States' foreign missions, as well as the compulsion of testimony from United States diplomats and other diplomatic staff overseas, all of which the United States would vigorously oppose. The unique nature of U.S. discovery counsels in favor of U.S. courts treading carefully in this area, where the United States typically is not subject to this kind of judicial action abroad. The Executive Branch's assessment of the foreign policy consequences of the district court's February 11, 2013 order is entitled to deference. *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 261 n.9 (2d Cir. 2007).

## POINT II

### FSIA Section 1611(b)(1) Protects the Lao Central Bank's Accounts From Discovery

The FSIA, which establishes a comprehensive and exclusive scheme for obtaining and enforcing judgments against a foreign state in civil cases in U.S. courts, *see generally Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-35 (1989), includes a specific provision immunizing foreign central banks from attachment and execution. Section 1611(b)(1) of the FSIA provides that "the property of a foreign state shall be immune from attachment and from execution, if—(1) the property is that of a foreign central bank or monetary authority held for its own account." This provision recognizes that "foreign central banks are not treated as generic agencies and instrumentalities of a foreign state under the FSIA; they are given special protections befitting the particular sovereign interest in preventing the attach-

24

ment and execution of central bank property." *NML Capital*, 652 F.3d at 188 (citation and internal quotation marks omitted). Furthermore, this Court has acknowledged that this protection extends to discovery. *Id.* at 194 ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation."). The district court's February 11, 2013 order misapplies *NML Capital*, and fails to recognize the special protection due the Lao Central Bank under § 1611(b)(1).

In *NML Capital*, this Court made three holdings with respect to central bank immunity under the FSIA. First, it held that "the plain language, history, and structure of § 1611(b)(1) immunizes property of a foreign central bank or monetary authority held for its own account without regard to whether the bank or authority is independent from its parent state . . . ." *Id.* at 187-88. Second, it determined that "the plain language of the statute suggests that Congress recognized that the property of a central bank, immune under § 1611, might *also* be the property of that central bank's parent state." *Id.* at 188-89 (emphasis in original); *accord id.* at 189 ("'By referring to the property of a foreign state and the property of a central bank interchangeably, Congress indicated its understanding that central bank property could be viewed as the property of a foreign state, and nonetheless be immune from attachment.'" (quoting *amicus* brief filed by the United States)). Third, the Court concluded that the phrase "held for its own account" in § 1611(b)(1) describes funds used for traditional central banking functions. *Id.* at 194. Recognizing

25

that the immunity conferred by § 1611(b)(1) includes
immunity "from the costs, in time and expense, and
other disruptions attendant to litigation," the Court
adopted a test whereby funds held in an account in
the name of a central bank are presumed to be im-
mune from attachment absent a specific showing by
the judgment creditor that the funds "are not being
used for central banking functions as such functions
are normally understood." *Id.*

Here, the district court improperly ordered discov-
ery concerning the Lao Central Bank's U.S. accounts.
The district court determined that the Lao Central
Bank had provided "ample statutory evidence" that it
was a separate entity (with a separate claim to sover-
eign immunity) from the Lao Government, and that
unlike the Lao Government, the Lao Central Bank
had not waived its immunity. (A 1148). The district
court further determined that it had "not established
jurisdiction over the Lao [Central] Bank as a separate
entity." (A 1148). Moreover, the district court
acknowledged "that specific details of accounts held
by the Lao [Central] Bank are immune from discov-
ery as well as attachment." (A 1149). And lastly, the
district court recognized that in order to rebut the
presumption that the Lao Central Bank's accounts
are immune under FSIA § 1611, Thai-Lao and
Hongsa must "show, with specificity, 'that the funds
are not being used for central banking functions as
such functions are normally understood.'" (A 1149
(quoting *NML Capital*, 652 F.3d at 194)).

Yet despite these observations, the district court
concluded that petitioners were entitled to discovery

26

because the Lao Central Bank "[did] not conclusively establish that these accounts are the Lao [Central] Bank's property, and not [the Lao Government's]," pointing to a Lao law that it characterized as requiring the Lao Central Bank "to act as a custodian for the Lao Government's assets abroad." (A 1150). On this basis, the district court concluded that "Petitioners are thus entitled to discovery regarding [the Lao Government's] accounts, even though they may be held in the name of the Lao [Central] Bank." (A 1150).

The district court's ruling misapplied *NML Capital* by focusing on whether the Lao Central Bank accounts belonged to the Lao Central Bank or the Lao Government, a question that this Court has made clear is irrelevant to § 1611(b)(1) immunity determinations. *NML Capital*, 652 F.3d at 189. As this Court stated in *NML Capital*, the FSIA recognizes that central bank funds will often also be the property of the foreign state. *Id.* Furthermore, the Declaration of Oth Phonhxiengdy, Deputy Director General of the Lao Central Bank's Banking Operations Department ("Oth Declaration"), made clear that the Lao Central Bank's accounts in the United States are held in its own name, rather than the Lao Government's. (A 675). Thus, applying the test set forth in *NML Capital*, the funds in the Lao Central Bank accounts are "presumed to be immune from attachment under § 1611(b)(1)." 652 F.3d at 194. Thai-Lao and Hongsa could rebut this presumption only "by demonstrating with specificity" that the funds in question were "not being used for central banking functions as such functions are normally understood." *Id.*

27

Thai-Lao and Hongsa provided no "specific show-ing" of facts that would provide a basis to rebut this presumption. To the contrary, the Oth Declaration provides further support for the presumption that funds in the Lao Central Bank accounta are in fact being used for central banking functions. The Oth Declaration explained that the Lao Central Bank is authorized to engage in traditional central banking functions, including issuing legal tender and regulat-ing the money supply, holding and managing foreign currency reserves, acting as a lender of last resort, and serving as the Lao Government's agent in deal-ing with international financial institutions such as the International Monetary Fund. (A 676-77). Fur-thermore, and in particular, the Oth Declaration clar-ified that the Lao law cited by the district court mere-ly establishes that the Lao Central Bank holds the Lao Government's foreign currency reserves (A 676) —a paradigmatic traditional central banking func-tion. *See NML Capital*, 652 F. 3d at 195 (noting that the accumulation of foreign exchange reserves is a "paradigmatic central banking function[]"); *accord Weston Compagnie de Finance et D'Investissement, S.A. v. La Republica del Ecuador*, 823 F. Supp. 1106, 1113 (S.D.N.Y. 1993) ("When the central bank acts as a bank for its parent foreign state. . . , it is engaged in a central banking and governmental function."). By failing to accord the Lao Central Bank a presumption of immunity, and allowing discovery to proceed de-spite the absence of any evidence that the funds at issue were not used for central banking functions, the district court incorrectly applied § 1611(b)(1).

28

It is critically important that district courts properly apply this Court's test with respect to the immunity of foreign central banks under § 1611(b)(1). The United States has an interest both in promoting reciprocal international principles of central bank immunity to ensure that U.S. reserves held by the Federal Reserve abroad receive adequate protection, and also in protecting foreign central banks engaged in central banking activities from interference by unwarranted litigation in U.S. courts. Many foreign central banks choose to hold their reserves in dollar-denominated assets in accounts in the United States. Foreign central banks invest their reserves in the United States because of the stability of the U.S. dollar, the unparalleled depth and liquidity of our financial markets, and the reliability of our political and judicial institutions. Equally critical has been the assurance long provided by United States law that central bank funds held in this country and used for traditional central banking functions are immune from attachment, save for very narrow exceptions, and not subject to discovery. If this traditional immunity is weakened through a misinterpretation of the FSIA and misapplication of this Court's binding precedent, foreign central banks might be led to withdraw their reserves from the United States and place them in other countries, and the preeminence of the U.S. dollar as a reserve currency could be jeopardized. *See generally* Ernest T. Patrikis, *Foreign Central Bank Property: Immunity from Attachment in the United States*, 1982 U. Ill. L. Rev. 265, 265-71 (1982); *see also* H.R. Rep. No. 94-1487, at 25 (explaining that the purpose of FSIA § 1611 is to protect the "funds of a

29

foreign central bank ... deposited in the United
States," because "execution against the reserves of a
foreign state could cause significant foreign relations
problems"). Any significant withdrawal of these re-
serves could have an immediate and adverse impact
on the U.S. economy and the global financial system.

30

## CONCLUSION

**The district court's February 11, 2013 order should be reversed.**

Dated:   New York, New York
         May 17, 2013

                         Respectfully submitted,

                         PREET BHARARA,
                         *United States Attorney for the*
                         *Southern District of New York,*
                         *Attorney for United States of*
                             *America as Amicus Curiae.*

                         CHRISTOPHER CONNOLLY,
                         EMILY E. DAUGHTRY,
                         *Assistant United States Attorneys,*
                             *Of Counsel.*

STUART F. DELERY,
*Acting Assistant Attorney General*
MARK B. STERN,
SHARON SWINGLE,
*Attorneys, Appellate Staff, Civil Division,*
*Department of Justice*

MARY E. MCLEOD,
*Acting Legal Adviser,*
*Department of State*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B). As measured by the word processing system used to prepare this brief, there are 6,840 words in this brief.

PREET BHARARA,
*United States Attorney for the*
*Southern District of New York*
*Attorney for the United States of*
*America as* Amicus Curiae

By: CHRISTOPHER CONNOLLY,
*Assistant United States Attorney*

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                         :

|  |  |
|---|---|
| | 03 Civ. 8845 (TPG) |
| NML CAPITAL, LTD., | 05 Civ. 2434 (TPG) |
| | 06 Civ. 6466 (TPG) |
| Plaintiff, | 07 Civ. 1910 (TPG) |
| | 07 Civ. 2690 (TPG) |
| v. | 07 Civ. 6563 (TPG) |
| | 08 Civ. 2541 (TPG) |
| THE REPUBLIC OF ARGENTINA, | 08 Civ. 3302 (TPG) |
| | 08 Civ. 6978 (TPG) |
| Defendant. | 09 Civ. 1707 (TPG) |
| | 09 Civ. 1708 (TPG) |

------------------------------------------------------- x

## NOTICE OF SUBPOENA

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT pursuant to Rule 45 of the Federal Rules of Civil Procedure, NML Capital, Ltd., plaintiff in the above-captioned actions, is requesting that BNP Paribas Fortis produce at the offices of Hoffner PLLC, 325 Broadway, Suite 505, New York, NY 10007, on or before May 14, 2013, all documents and things in its custody, possession, or control as specified in Attachment A to the subpoena, a copy of which is annexed hereto as Exhibit A.

Dated: New York, New York
          May 1, 2013

                                        HOFFNER PLLC

                                        By: _____
                                                David S. Hoffner
                                                hoffner@hoffnerpllc.com
                                                325 Broadway, Suite 505
                                                New York, New York
                                                Telephone:  (917) 881-1039
                                                Facsimile:  (646) 810-4031

                                                *Attorneys for Plaintiff*
                                                *NML Capital, Ltd.*

                                        -2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------- x
                                      :    03 Civ. 8845 (TPG)
                                      :    05 Civ. 2434 (TPG)
NML CAPITAL, LTD.,                    :    06 Civ. 6466 (TPG)
                                      :    07 Civ. 1910 (TPG)
              Plaintiff,              :    07 Civ. 2690 (TPG)
                                      :    07 Civ. 6563 (TPG)
              v.                      :    08 Civ. 2541 (TPG)
                                      :    08 Civ. 3302 (TPG)
THE REPUBLIC OF ARGENTINA,            :    08 Civ. 6978 (TPG)
                                      :    09 Civ. 1707 (TPG)
              Defendant.              :    09 Civ. 1708 (TPG)
                                      :
-------------------------------------------------- x
```

## SUBPOENA DUCES TECUM

**TO:**   BNP Paribas Fortis
787 Seventh Avenue, 3rd Floor
New York, NY 10019

YOU ARE HEREBY COMMANDED, pursuant to Rule 45 of the Federal Rules of Civil Procedure, to produce for inspection and copying no later than May 14, 2013 at the offices of Hoffner PLLC, 325 Broadway, Suite 505, New York, NY 10007, New York, NY 10007, all documents concerning the subjects identified in Attachment A hereto, in accordance with the Definitions and Instructions set out in Attachment A hereto.

This subpoena has been issued by the United States District Court for the Southern District of New York. Your failure to produce documents as described in this subpoena may be punishable as contempt of that court.

Pursuant to the requirements of Rule 45(a)(1)(A)(iv) of the Federal Rules of Civil Procedure, the text of Rule 45(c) and (d) of the Federal Rules of Civil Procedure is reproduced in Attachment B.

Dated: New York, New York
       May 1, 2013

<div style="margin-left: 40%;">

HOFFNER PLLC

By: _____

David S. Hoffner
hoffner@hoffnerpllc.com
325 Broadway, Suite 505
New York, New York
Telephone:  (917) 881-1039
Facsimile:  (646) 810-4031

*Attorneys for Plaintiff*
*NML Capital, Ltd.*

</div>

## ATTACHMENT A

### DEFINITIONS

1.      The term **"Argentina"** means the Republic of Argentina, as well as its ministries, political subdivisions, representatives, and assigns, and all other persons acting or purporting to act for or on Argentina's behalf, whether or not authorized to do so.  For the avoidance of any doubt, "Argentina" includes, but is not limited to, the entities identified in Attachment C.

2.      The term **"CHIPS"** means Clearing House Interbank Payments System.

3.      The term **"communication"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).  Local Civil Rule 26.3(c)(1).

4.      The term **"concerning"** means relating to, referring to, describing, evidencing or constituting.  Local Civil Rule 26.3(c)(7).

5.      The term **"document"** (or **"documents"**) is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilation, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.  Fed. R. Civ. P. 34(a); Local Civil Rule 26.3(c)(2).

6.      The term **"DTC"** means the Depository Trust Company, its parents, subsidiaries, and affiliates.

7.      The term **"FEDWire"** means the Federal Reserve Wire Network.

8.      The term **"identify,"**

(a)    when used with respect to a person, means to give, to the extent known: (i) the person's full name; (ii) the person's present or last known address; and (iii) when referring to a natural person, additionally, the person's present or last known place of employment. Local Civil Rule 26.3(c)(3).

(b)    when used with respect to a document, means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, you may produce the document, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d). Local Civil Rule 26.3(c)(4).

9.    The term **"person"** means any natural person, or any business, legal, or governmental entity, or association. Local Civil Rule 26.3(c)(6).

10.    The terms **"Relevant Time Period"** means January 1, 2011 through and including the date on which you produce documents in response to this Subpoena Duces Tecum.

11.    The term **"SWIFT"** means the Society for World Interbank Financial Telecommunication.

12.    The terms **"you" and "your"** mean BNP Paribas Fortis, its parents, subsidiaries, and affiliates, as well as its officers, directors, principals, agents, representatives, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

## INSTRUCTIONS

1.    Documents referred to herein are to include all portions, or pages of each document referred to, and all attachments, enclosures, appendices, and supporting documentation, including, without limitation, originals, copies, non-identical copies (that may contain handwritten notes, markings, stamps, interlineations or electronic information), drafts, working papers, routing slips, and similar materials.

2.    A document is deemed in your actual or constructive possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by control, contract, statute,

-4-

order, or otherwise, to use inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document upon any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.  For the avoidance of doubt, a document is deemed in your actual or constructive possession, custody, or control if it is accessible on a network or server that you maintain.

3.      The specifications of this subpoena are to be construed as being inclusive rather than exclusive.  Thus, use of the singular form of any word includes the plural and vice versa; words importing one gender includes both genders; the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents that might otherwise be construed to be outside of its scope; the words "all," "any," and "each" shall each be construed as encompassing "any and all."  Local Civil Rule 26.3(d).

4.      In producing responsive documents, you should furnish all documents in your possession, custody, or control, regardless of whether such documents are possessed directly by you or by your agents, employees, or representatives, including your attorneys or their agents, employees, or representatives.

5.      You are to produce any and all drafts and copies of each document that is responsive to any specification of this subpoena and all copies of each such document that are not identical in any respect, including but not limited to handwritten notes, markings, stamps, interlineations, and electronic information.

6.      With respect to Electronically Stored Information ("ESI"):

        a.)      All electronic records including all payment transactions and instructions, mail, and spreadsheets responsive to this subpoena that are maintained in the

usual course of business in electronic format are to be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

b.)    Electronic payment records and instructions that are responsive to this subpoena processed through CHIPS, FEDWire, SWIFT, and Book-transfers shall include the descriptive field name and not the numeric tag for all data elements contained in the electronic record. Include all relevant data elements contained in Attachment D and any other data fields that are contained in the electronic records responsive to this subpoena.

c.)    All other documents responsive to this subpoena that are maintained in the usual course of business in electronic format are to be produced in properly utilized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

c.)    All documents responsive to this subpoena are to be produced with the metadata normally contained within such documents, and the necessary Concordance or Introspect load files. If such metadata is not available, each document is to be accompanied by a listing of all file properties relating to such document, including, but not limited to, all information relating to the date(s) the document was last accessed, created, modified or distributed, and the author(s) and recipient(s) of the document.

d.)    Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. Databases or underlying data should not be produced without first discussing production format issues with Plaintiff's counsel. If you decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden of cost you claim is associated with the search or production of such ESI.

7.    All documents that are physically attached to each other when located for production are to be left so attached when produced. Documents that are segregated or separated from other documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs or any other method, are to be left so segregated or separated when produced. Documents are to be produced in the order in which they were maintained and in the files in which they were found.

8.     If any document, or any part of a document, called for by this subpoena has been destroyed, discarded, lost, or otherwise disposed of or placed beyond your custody or control, you are to furnish a list identifying each such document by: (i) date, (ii) author; (iii) recipient(s); (iv) type of document (e.g., letter, memorandum, chart, e-mail, etc.); (v) general subject matter; (vi) the document's present or last-known location or custodian; (vii) the date of the document's destruction or other disposition; (viii) the reason for such destruction or other disposition; and (ix) the person authorizing such destruction or other disposition.

9.     Each specification of this subpoena requires production in full, without abbreviation, redaction, or expurgation, of any responsive documents.  If any responsive document is not or cannot be produced in full, produce it to the extent possible, indicating which document, or portion of that document is being withheld, and the reason(s) it is being withheld.

10.    Documents not otherwise responsive to specifications of this subpoena are to be produced if such documents mention, discuss, refer to, or explain the documents which are responsive to this subpoena, or if such documents are attached to documents responsive to this subpoena and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

11.    If in responding to this subpoena, you encounter any ambiguity in construing it or any definitions and instructions relevant to it, set forth the matter or term deemed "ambiguous" and the construction used in responding to the subpoena.

12.    If a privilege is claimed as the basis for not producing any document, you are to furnish a privilege log setting forth, for each such document:   (i) nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; (ii) the type of document, e.g., letter,

memorandum, etc.; (iii) the general subject matter of the document; (iv) the date of the document; and (v) the author of the document, the addressees and any other recipients of the document and, where not apparent, the relationship of the author, addressees, and recipients to each other. Local Civil Rule 26.2(a).

## DOCUMENTS TO BE PRODUCED

1.      All documents concerning any transfer, in which you had any involvement and within the Relevant Time Period, of any monies or financial instruments to, from, or through accounts owned or controlled by Argentina. For the avoidance of any doubt and without limiting the foregoing, this includes, but is not limited to, the entire text of communications transmitted through systems such as SWIFT, CHIPS, FEDWire, DTC, and any similar system. For the further avoidance of any doubt and without limiting the foregoing, data concerning transactions with a counterparty should include fields corresponding to the counterparty, including but not limited to account number, ABA routing number, and SWIFT code.

2.      Documents sufficient to identify all property, assets, or accounts of any type held by you during the Relevant Time Period—including the current value, account owners, and co-signers of interest of such property, assets, or accounts—for which Argentina is, in whole or in part, the owner, beneficiary, or a signatory.

## ATTACHMENT B: Rule 45 Federal Rules of Civil Procedure, Parts C & D

(c) Protecting a Person Subject to a Subpoena.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person—except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.
(d) Duties in Responding to a Subpoena.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

## ATTACHMENT C:  Non-Exclusive List of Persons Included Definition of "Argentina"

| I. Governmental Entities |
| --- |
| República Argentina |
| Estado Nacional |
| Administracion Central |
| Administracion Publica Nacional |
| Nacion Argentina |
| Presidencia de la Nacion |
| Vicepresidente |
| Ministerio de Defensa |
| Ministerio de Desarrollo Social |
| Ministerio de Economia y Finanzas Publicas |
| Ministerio de Educacion |
| Ministerio de Ciencia, Tecnologia e Innovacion Productiva |
| Ministerio de Justicia y Derechos Humanos |
| Ministerio de Planificacion Federal, Inversion Publica y Servicios |
| Ministerio de Relaciones Exteriores, Comercio Internacional y Culto |
| Ministerio de Salud |
| Ministerio de Trabajo, Empleo y Seguridad Social |
| Ministerio del Interior |
| Ministerio de Turismo |
| Ministerio de Industria |
| Ministerio de Agricultura, Ganaderia y Pesca |
| Ministerio de Seguridad |
| Coordinación General de Asuntos Técnicos de la Unidad Presidente |
| Coordinación General de Asuntos Político-Institucionales de la Unidad Presidente |
| Secretaría General |
| Subsecretaría General |
| Subsecretaría de Relaciones con la Sociedad Civil |
| Subsecretaría de Coordinacion |
| Secretaría Legal y Tecnica |
| Subsecretaría Tecnica |
| Subsecretaría de Asuntos Legales |
| Secretaria de Inteligencia |
| Subsecretaría de Inteligencia |
| Secretaría de Programacion para la Prevencion de la Drogadiccion y la Lucha contra el Narcotrafico |
| Subsecretaría Técnica de Planeamiento y Control del Narcotráfico |
| Subsecretaría de Planificación, Prevención y Asistencia |

| |
|---|
| Secretaría de Cultura |
| Subsecretaría de Gestión Cultural |
| Subsecretaría de Industrias Culturales |
| Casa Militar |
| Secretaría de Ambiente y Desarrollo Sustentable |
| Subsecretaria de Control y Fiscalizacion Ambiental y Prevencion de la Contaminacion |
| Subscretaria de Coordinacion de Politicas Ambientales |
| Subscretaria de Planificacion de Politica Ambiental |
| Subsecretaría de Promocion del Desarrollo Sustentable |
| Secretaría de Coordinación Administrativa y Evaluación Presupuestaria |
| Subsecretaría de Evaluacion de Presupuesto Nacional |
| Subsecretaría de Evaluación de Proyectos con Financiamiento Externo |
| Subsecretaría de Coordinación Administrativa |
| Secretaría de Relaciones Parlamentarias |
| Subsecretaría de Relaciones Institucionales |
| Secretaría de la Gestion Publica |
| Subsecretaría de Gestión y Empleo Publico |
| Subsecretaría de Tecnologías de Gestión |
| Secretaría de Medios de Comunicacion |
| Subsecretaría de Gestion de Medios |
| Subsecretaría de Comunicacion y Contendios de Difusion |
| Subsecretaría de Comunicacion Estrategica |
| Secretaría de Gabinete |
| Subsecretaría para la Reforma Institucional y Fortalcimiento de la Democracia |
| Secretaría de Integración Nacional |
| Subsecretaría de Planificación y Gestión para la Integración Nacional |
| Subsecretaría de Ejecución Operativa |
| Secretaría de Politica Economica |
| Subsecretaría de Coordinación Económica |
| Subsecretaría de Programacion Económica |
| Secretaría de Comercio Interior |
| Subsecretaría de Defensa del Consumidor |
| Secretaría de Finanzas |
| Subsecretaría de Servicios Financieros |
| Subsecretaría de Financiamiento |
| Secretaría de Hacienda |
| Subsecretaría de Presupuesto |
| Subsecretaría de Relaciones con Provincias |
| Subsecretaría de Ingresos Públicos |

| |
|---|
| Secretaría Legal y Administrativa |
| Subsecretaría Legal |
| Subsecretaría de Administración y Normalización Patrimonial |
| Subsecretaría de Relaciones Institucionales |
| Secretaría de Asuntos Militares |
| Secretaría de Asuntos Técnico Militares |
| Subsecretaría de Formación |
| Secretaría de Planeamiento |
| Subsecretaría de Planificación Logística y Operativa de la Defensa |
| Subsecretaría de Innovación Científica y Tecnológica |
| Subsecretaría de Asuntos Internacionales de la Defensa |
| Subsecretaría de Coordinacion |
| Secretaría de Interior |
| Subsecretaría de Interior |
| Secretaría de Asuntos Politicos |
| Subsecretaría de Asuntos Politicos y Electorales |
| Secretaría de Provincias |
| Subsecretaría de Desarrollo y Fomento Provincial |
| Secretaría de Asuntos Municipales |
| Subsecretaría de Gestión Municipal |
| Subsecretaría de Coordinacion |
| Agencia Nacional de Gestión Informática |
| Secretaría de Politica, Regulacion e Institutos |
| Subsecretaría de Gestión de Servicios Asistenciales |
| Subsecretaría de Políticas, Regulación y Fiscalización |
| Secretaría de Promocion y Programas Sanitarios |
| Subsecretaría de Salud Comunitaria |
| Subsecretaría de Prevención y Control de Riesgos |
| Secretaría de Determinantes de la Salud y Relaciones Sanitarias |
| Subsecretaría de Relaciones Sanitarias e Investigación |
| Secretaría de Coordinacion |
| Subsecretaría de Coordinacion Administrativa |
| Subsecretaría de Planificacion Territorial de la Inversion Publica |
| Subsecretaría de Coordinación y Control de Gestión |
| Subsecretaría Legal |
| Secretaría de Obras Publicas |
| Subsecretaría de Desarrollo Urbano y Vivienda |
| Subsecretaría de Coordinacion de Obra Publica Federal |
| Subsecretaría de Recursos Hidricos |
| Subsecretaría de Obras Publicas |
| Secretaría de Comunicaciones |
| Secretaría de Energia |

-12-

| |
|---|
| Subsecretaría de Energia Electrica |
| Subsecretaría de Combustibles |
| Secretaría de Mineria |
| Secretaría de Transporte |
| Subsecretaría de Puertos y Vias Navegables |
| Subsecretaría de Transporte Ferroviario |
| Subsecretaría de Transporte Aerocomercial |
| Subsecretaría de Transporte Automotor |
| Secretaría de Relaciones Exteriores |
| Subsecretaría de Relaciones Institucionales |
| Subsecretaría de Politica Latinoamericana |
| Subsecretaría de Politica Exterior |
| Secretaría de Coordinación y Cooperación Internacional |
| Subsecretaría Legal, Tecnica y Administrativa |
| Secretaría de Comercio y Relaciones Economicas Internacionales |
| Subsecretaría de Integracion Economica Americana y MERCOSUR |
| Subsecretaría de Comercio Internacional |
| Subsecretaría de Desarrollo de Inversiones |
| Secretaría de Culto |
| Subsecretaría de Culto |
| Subsecretaría de Programación Técnica y Estudios Laborales |
| Subsecretaría de Coordinacion |
| Secretaría de Trabajo |
| Subsecretaría de Relaciones Laborales |
| Subsecretaría de Fiscalización del Trabajo y de la Seguridad Social |
| Secretaría de Empleo |
| Subsecretaría de Políticas de Empleo y Formación Profesional |
| Subsecretaría de Promoción del Sector Social de la Economía |
| Secretaría de Seguridad Social |
| Subecretaría de Politicas de la Seguridad |
| Subsecretaría de Coordinacion e Innovcacion |
| Subsecretaría de Planificación Estratégica |
| Secretaría de Justicia |
| Subsecretaría de Asuntos Penitenciarios |
| Subsecretaría de Politica Criminal |
| Subsecretaría de Relaciones con el Poder Judicial |
| Secretaría de Asuntos Registrales |
| Subsecretaría de Asuntos Registrales |
| Secreteria de Seguridad Interior |
| Subsecretaría de Seguridad Ciudadana |
| Subsecretaría de Seguridad en los Espectáculos Futbolísticos |
| Secretaría de Derechos Humanos |

| |
|---|
| Subsecretaría de Protección de Derechos Humanos |
| Subsecretaría de Promoción de Derechos Humanos |
| Secretaría de Educacion |
| Subsecretaría de Equidad y Calidad Educativa |
| Subsecretaría de Planeamiento Educativo |
| Secretaría de Politicas Universitarias |
| Secretaría de Coordinación Administrativa |
| Secretaría de Coordinación y Monitoreo Institucional |
| Subsecretaría de Comercialización de la Economía Social |
| Secretaría de Economia Social |
| Subsecretaría de Fortalecimiento Institucional |
| Subsecretaría de Organización de Ingresos Sociales |
| Secretaría de Organización y Comunicación Comunitaria |
| Subsecretaría de Organización y Capacitación Popular |
| Secretaría de Gestion y Articulacion Institucional |
| Subsecretaría de Abordaje Territorial |
| Subsecretaría de Políticas Alimentarias |
| Secretaría Nacional de Niñez, Adolescencia y Familia |
| Subsecretaría de Derechos para la Niñez, Adolescencia y Familia |
| Subsecretaría de Desarrollo Institucional e Integración Federal |
| Secretaría de Deportes |
| Subsecretaría de Planeamiento y Gestión Deportiva |
| Subsecretaría de Recursos Deportivos |
| Subsecretaría de Coordinacion |
| Secretaría de Turismo |
| Subsecretaría de Desarrollo Turístico |
| Subsecretaría de Promoción Turística Nacional |
| Subsecretaría de Coordinacion Administrativa |
| Secretaría de Planeamiento y Politicas de Ciencia, Tecnologia e Innovacion |
| Subsecretaría de Estudios y Prospectiva |
| Subsecretaría de Politicas de Ciencia, Tecnologia e Innovacion Productiva |
| Secretaría de Articulacion Cientifico Tecnologia |
| Subsecretaría de Coordinacion Institucional |
| Subsecreteria de Evaluacion Institucional |
| Subsecretaría de Coordinacion |
| Secretaria de Industria y Comercio |
| Subsecretaría de Industria |
| Subsecretaría de Política y Gestión Comercial |
| Secretaría de la Pequena y Mediana Empresa y Desarrollo Regional |
| Subsecretaría de Política y Gestión de la Pequeña y Mediana Empresa y del Desarrollo |
| Subsecretaría de Promoción al Financiamiento de la Pequeña y Mediana Empresa |
| Subsecretaría de Coordinacion Tecnica y Administrativa |

| |
|---|
| Secretaría de Agricultura, Ganaderia y Pesca |
| Subsecretaría de Agricultura |
| Subsecretaría de Ganaderia |
| Subsecretaría de Lechería |
| Subsecretaría de Pesca y Acuicultura |
| Secretaria de Desarrollo Rural y Agricultura Familiar |
| Subsecretaría de Desarrollo de Economías Regionales |
| Subsecretaría de Agricultura Familiar |
| Secretaría Relaciones Institucionales |
| Subsecretaría de Coordinacion Institucional |
| Subsecretaría de Comunicación Institucional |
| Unidad de Planificacion y Evaluacion de la Educacion |
| Consejo Nacional de Coordinacion de Politicas Sociales |
| Secretaría de Politicas Sociales y Desarrollo Humano |
| Secretaría del Consejo Federal de Educacion |
| Secretaría de Estrategía y Asuntos Militares |
| Banco Central de la Republica Argentina |
| Fondo Fiduciario Anticiclico |
| Procuracion del Tesoro de la Nacion |
| Comision Nacional de Museos y Monumentos Historicos |
| Instituto Nacional Browniano |
| Instituto Nacional Newberiano |
| Instituto Nacional de Investigaciones Historicas Eva Peron |
| Instituto Nacional de Investigaciones Historicas Juan M de Rosas |
| Instituto Nacional Belgranio |
| Insituto Nacional Sanmartiniano |
| Comision Nacional Protectora de Bibliotecas Populares |
| Museo Nacional de Bellas Artes |
| Agencia Nacional de Promoción Científica y Tecnológica |
| Comision Nacional de Pensiones Asistenciales |
| Comision Nacional de Coordinacion del Programa de Promocion del Microcredito para el Desarrollo de la Economia Social |
| Instituto Nacional de Educación Tecnológica National |
| Instituto Nacional de Formación Docente |
| Archivo Nacional de la Memoria |
| Servicio Penitenciario Federal National Penitentiary Service |
| Policia de Seguridad Aeroportuaria |
| Órgano de Control de Concesiones Viales |
| Organismo Nacional de Administracion de Bienes |
| Instituto Nacional del Cáncer |
| Prefectura Naval Argentina |
| Policia Federal Argentina |

| |
|---|
| Gendarmeria Nacional |
| Comision Nacional de Defensa de la Competencia |
| Comision Nacional de Comercio Exterior |
| Instituto Nacional de Estadistica y Censo |
| Comisión Nacional de Tierras para el Hábitat Social. "Padre C. Mugica" |
| Comisión Nacional Coordinadora de Políticas Públicas en Materia de Prevención y Control del Tráfico Ilícito de Estupefacientes, la Delincuencia Organizada Transnacional y la Corrupción |
| Consejo Nacional de Investigaciones Científicas y Técnicas |
| Banco Nacional de Datos Geneticos |
| Biblioteca Nacional |
| Fondo Nacional de las Artes |
| Instituto Nacional del Teatro |
| Teatro Nacional Cervantes |
| Instituto Nacional de Investigaciones y Desarrollo Pesquero |
| Instituto Nacional de Semillas |
| Instituto Nacional de Tecnologia Agropecuaria |
| Instituto Nacional de Vitivinicultura |
| Servicio Nacional de Sanidad y Calidad Agroalimentaria |
| Instituto de Ayuda Financiera para Pago de Retiros y Pensiones Militares |
| Instituto de Investigaciones Científicas y Técnicas para la Defensa |
| Instituto Geográfico Nacional |
| Secretaría Nacional de Ninez, Adolescencia y Familia |
| Instituto Nacional de Asociativismo y Economía Social |
| Instituto Nacional de Asuntos Indígenas |
| Administración Federal de Ingresos Públicos |
| Comisión Nacional de Valores |
| Superintendencia de Seguros de la Nacion |
| Tribunal Fiscal de la Nación |
| Comisión Nacional de Evaluación y Acreditación Universitaria |
| Fundación Miguel Lillo |
| Administración de Parques Nacionales |
| Instituto Nacional de la Propiedad Industrial |
| Instituto Nacional de Tecnología Industrial |
| Dirección Nacional de Migraciones |
| Direccion Nacional del Registro Nacional de las Personas |
| Caja de Retiros, Jubilaciones y Pensiones de la Policía Federal Argentina |
| Instituto Nacional contra la Discriminación, la Xenofobia y el Racismo |
| Comisión Nacional de Energía Atómica |
| Dirección Nacional de Vialidad |
| Fondo Fiduciario Federal de Infraestructura Regional |

| |
|---|
| Comisión Nacional de Comunicaciones |
| Ente Nacional Regulador de la Electricidad |
| Ente Nacional Regulador del Gas |
| Comisión Nacional de Regulación del Transporte |
| Administración Nacional de Aviación |
| Junta de Investigaciones de Accidentes de Aviacion Civil |
| Organismo Regulador del Sistema Nacional de Aeropuertos |
| Tribunal Nacional de Defensa de la Competencia |
| Instituto Nacional de Recursos de la Seguridad Social |
| Servicio Meteorológico Nacional |
| Agencia Nacional de Seguridad Vial |
| Oficina Nacional de Control Comercial Agropecuario |
| Instituto Nacional de Promoción Turística |
| Agencia de Planificacion |
| Direccion General de Fabricaciones Militares General |
| Delegacion Tecnico Administrativa |
| Unidad Auditoria Interna |
| Direccion de Comunicacion Social |
| Direccion Nacional de Inteligencia Estrategica Militar |
| Coordinadora de Ceremonial |
| Estado Mayor Conjunto de las Fuerzas Armadas |
| Estado Mayor General de la Armada |
| Estado Mayor General de la Fuerza Aerea |
| Estado Mayor General del Ejercito |
| Agencia Nacional de Seguridad Vial |
| Ente Cooperador Penitenciario |
| Organo de Control de Concesiones Viales |
| Auditoria General de la Nacion |
| Fondo del Bicentenario para el Desendeudamiento y la Estabilidad Económica |
| Fondo Nacional de la Vivienda |
| Fondo Federal Solidario |
| Comision Federal de Impuestos |
| Fondo de Garantia de Sustentabilidad |
| Fondo Fiducarío para el Desarrollo |
| Fondo Fiducario de Reconstruccion de Empresas |
| Fondo Financiero para el Desarroloo de la Cuenca del Plata |
| Fondo Unificado de Cuentas Corrientes Oficiales |
| Agencia Nacional de Desarrollo de Inversiones - ProsperAr |
| Area de Origen de Mercaderias |
| Centro do Economia Internacional |
| Comision de Seguimiento del Sector de la Construccion |
| Consejo Federal Pesquero |

| |
|---|
| Direccion de Competencia Desleal |
| Direccion Nacional de Politica Comercial Externa |
| Oficina Nacional de Contrataciones |
| Zonas Francas |
| Fondo Fiduciario del Sistema de Infraestructura de Transporte |
| Fideicomiso Sistema Vial Integrado |
| Sistema Ferroviario Integrado |
| Fondo Nacional de Energia Electrica |
| Fondo Fiduciario para el Transporte Electrico Federal |
| Fondo Fiduciario para la Reconstruccion de Empresas |
| Fondo Fiduciario para Atender Inversiones en Transporte y Distribucion de Gas |
| Fondo Fiduciario para el Desarrollo Provincial |
| Fondo Fiduciario de Desarrollo de Infraestructura Regional |
| Tesoraria General de la Nacion |
| **II.  Entities in which Argentina has an ownership interest** |
| Lotería Nacional |
| Polo Tecnológico Constituyente |
| EDUC.AR |
| Administración General de Puertos |
| Entidad Binacional Yacyreta |
| Nucleoeléctrica Argentina |
| Correo Oficial de la República Argentina |
| Casa de Moneda |
| Banco de Inversión y Comercio Exterior |
| Banco de la Nación Argentina |
| Agua y Saneamientos Argentinos |
| Construcción de Viviendas para la Armada SE |
| DIOXITEK |
| Empresa Argentina de Soluciones Satelitales |
| Energía Argentina |
| Yacimientos Carboníferos Río Turbio |
| Yacimientos Mineros de Agua de Dionisio |
| Líneas Aéreas Federales |
| Aerolíneas Argentinas |
| Nación Administradora de Fondos de Jubilaciones y Pensiones |
| Talleres Navales Dársena Norte SACIyN |
| Agencia de Noticias Oficial de la República Argentina |
| Fabrica Militar de Aviones |
| Planta Papelera Quilmes |
| Terminal de Cargas Argentina |
| Innovaciones Tecnológicas Agropecuarias |
| Unidad Especial Sistema de Transmisión Yacyretá |

| |
|---|
| Emprendimientos Energéticos Binacionales |
| TELAM SE |
| Radio y Televisión Argentina |
| Administración de Infraestructura Ferroviarias |
| INTERCARGO S.A.C. |
| Operadora Ferroviaria |
| Dirección General de Fabricaciones  Militares |
| Aerohanding |
| Austral Cielos del Sur |
| Editorial Universitaria de Buenos Aires SEM |
| Emprendimiento Productivo y Educativo La Gleba |
| Energía Argentina Servicios |
| Fábrica Argentina de Aviones « Brigadier San Martín » |
| Jet Paq |
| Nación Bursátil Sociedad de Bolsa |
| Nación Factoring |
| Nación Fideicomiso |
| Nación Leasing |
| Nación Seguros |
| Nación Seguros de Retiro |
| Nación Servicios |
| Optar |
| Parque Tecnológico del Litoral Centro SAPEM |
| Pellegrini SA Gerente de Fondos Comunes de Inversión |
| Vehículo Espacial de Nueva Generación |
| Vientos de la Patagonia I |
| Autoridad Interjurisdiccional de la Cuenca del Río Limay |
| YPF |

## ATTACHMENT D:  Data Elements of Payment Transactions and Instructions

| | |
|---|---|
| Transaction Description[1] | Credit Party ID |
| Transaction Date | Credit Party Name |
| Transaction Amount | Credit Party Address (Lines, 1,2,3,4) |
| Message Type | Credit Party Country |
| Currency | Originating Bank |
| SWIFT BIC | Origianting Bank Country |
| Originating Party ID | Beneficiary Bank |
| Originating Party Name | Beneficiary Bank Country |
| Originating Party Address (Lines 1,2,3,4) | Sending Bank |
| Originating Party Country | Sending Bank Country |
| Beneficiary Party ID | Receiving Bank |
| Beneficiary Party Name | Receiving Bank Country |
| Beneficiary Party Address (Lines 1,2,3,4) | Intermediary Bank |
| Beneficiary Party Country | Intermediary Bank Country |
| Reference Number | Bank to Bank Information |
| SWIFT 20 | Originator to Beneficiary Information |
| SWIFT 21 | Bank to Bank Intermediary Information |
| By Order Party ID | Bank to Bank Beneficiary Information |
| By Order Party Name | Reference for the Beneficiary |
| By Order Party Address (Lines 1,2,3,4) | Debit Party ID |
| By Order Party Country | Debit Party Name |
| Instructing Party ID | Debit Party Address (Lines 1,2,3,4) |
| Instructing Party Name | Debit Party Country |
| Instructing Party Address (Lines 1,2,3,4) | |
| Instructing Party Country | |

---

[1] Fed In, Fed Out, CHIPS In, CHIPS Out, SWIFT In, SWIFT Out, Book-transfers in and out

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

| | |
|---|---|
| NML CAPITAL, LTD., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| THE REPUBLIC OF ARGENTINA, | : |
| | : |
| Defendant. | : |
| | : |

03 Civ. 8845 (TPG)
05 Civ. 2434 (TPG)
06 Civ. 6466 (TPG)
07 Civ. 1910 (TPG)
07 Civ. 2690 (TPG)
07 Civ. 6563 (TPG)
08 Civ. 2541 (TPG)
08 Civ. 3302 (TPG)
08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

------------------------------------------------------- x

## NOTICE OF SUBPOENA

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE

NOTICE THAT pursuant to Rule 45 of the Federal Rules of Civil Procedure, NML Capital, Ltd.,

plaintiff in the above-captioned actions, is requesting that BNP Paribas produce at the offices of

Hoffner PLLC, 325 Broadway, Suite 505, New York, NY 10007, on or before May 14, 2013, all

documents and things in its custody, possession, or control as specified in Attachment A to the

subpoena, a copy of which is annexed hereto as Exhibit A.

Dated: New York, New York
       May 1, 2013

HOFFNER PLLC

By: _____

David S. Hoffner
hoffner@hoffnerpllc.com
325 Broadway, Suite 505
New York, New York
Telephone: (917) 881-1039
Facsimile: (646) 810-4031

*Attorneys for Plaintiff*
*NML Capital, Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

| | |
|---|---|
| NML CAPITAL, LTD., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| THE REPUBLIC OF ARGENTINA, | : |
| | : |
| Defendant. | : |
| | : |

03 Civ. 8845 (TPG)
05 Civ. 2434 (TPG)
06 Civ. 6466 (TPG)
07 Civ. 1910 (TPG)
07 Civ. 2690 (TPG)
07 Civ. 6563 (TPG)
08 Civ. 2541 (TPG)
08 Civ. 3302 (TPG)
08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

---------------------------------------------------------- x

## SUBPOENA DUCES TECUM

**TO:**   BNP Paribas
787 Seventh Avenue
New York, NY 10019

YOU ARE HEREBY COMMANDED, pursuant to Rule 45 of the Federal Rules of Civil
Procedure, to produce for inspection and copying no later than May 14, 2013 at the offices of
Hoffner PLLC, 325 Broadway, Suite 505, New York, NY 10007, New York, NY 10007, all
documents concerning the subjects identified in Attachment A hereto, in accordance with the
Definitions and Instructions set out in Attachment A hereto.

This subpoena has been issued by the United States District Court for the Southern
District of New York. Your failure to produce documents as described in this subpoena may be
punishable as contempt of that court.

Pursuant to the requirements of Rule 45(a)(1)(A)(iv) of the Federal Rules of Civil Procedure, the text of Rule 45(c) and (d) of the Federal Rules of Civil Procedure is reproduced in Attachment B.

Dated: New York, New York
May 1, 2013

HOFFNER PLLC

By: _____
David S. Hoffner
hoffner@hoffnerpllc.com
325 Broadway, Suite 505
New York, New York
Telephone: (917) 881-1039
Facsimile: (646) 810-4031

*Attorneys for Plaintiff*
*NML Capital, Ltd.*

-2-

## ATTACHMENT A

### DEFINITIONS

1.      The term **"Argentina"** means the Republic of Argentina, as well as its ministries, political subdivisions, representatives, and assigns, and all other persons acting or purporting to act for or on Argentina's behalf, whether or not authorized to do so. For the avoidance of any doubt, "Argentina" includes, but is not limited to, the entities identified in Attachment C.

2.      The term **"CHIPS"** means Clearing House Interbank Payments System.

3.      The term **"communication"** means the transmittal of information (in the form of facts, ideas, inquiries or otherwise). Local Civil Rule 26.3(c)(1).

4.      The term **"concerning"** means relating to, referring to, describing, evidencing or constituting. Local Civil Rule 26.3(c)(7).

5.      The term **"document"** (or **"documents"**) is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilation, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term. Fed. R. Civ. P. 34(a); Local Civil Rule 26.3(c)(2).

6.      The term **"DTC"** means the Depository Trust Company, its parents, subsidiaries, and affiliates.

7.      The term **"FEDWire"** means the Federal Reserve Wire Network.

8.      The term **"identify,"**

-3-

(a)   when used with respect to a person, means to give, to the extent known: (i) the person's full name; (ii) the person's present or last known address; and (iii) when referring to a natural person, additionally, the person's present or last known place of employment. Local Civil Rule 26.3(c)(3).

(b)   when used with respect to a document, means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, you may produce the document, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d). Local Civil Rule 26.3(c)(4).

9.     The term **"person"** means any natural person, or any business, legal, or governmental entity, or association. Local Civil Rule 26.3(c)(6).

10.    The terms **"Relevant Time Period"** means January 1, 2011 through and including the date on which you produce documents in response to this Subpoena Duces Tecum.

11.    The term **"SWIFT"** means the Society for World Interbank Financial Telecommunication.

12.    The terms **"you" and "your"** mean BNP Paribas, its parents, subsidiaries, and affiliates, as well as its officers, directors, principals, agents, representatives, and all other persons acting or purporting to act for or on its behalf, whether or not authorized to do so.

## INSTRUCTIONS

1.     Documents referred to herein are to include all portions, or pages of each document referred to, and all attachments, enclosures, appendices, and supporting documentation, including, without limitation, originals, copies, non-identical copies (that may contain handwritten notes, markings, stamps, interlineations or electronic information), drafts, working papers, routing slips, and similar materials.

2.     A document is deemed in your actual or constructive possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by control, contract, statute,

-4-

order, or otherwise, to use inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document upon any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so. For the avoidance of doubt, a document is deemed in your actual or constructive possession, custody, or control if it is accessible on a network or server that you maintain.

3.      The specifications of this subpoena are to be construed as being inclusive rather than exclusive. Thus, use of the singular form of any word includes the plural and vice versa; words importing one gender includes both genders; the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents that might otherwise be construed to be outside of its scope; the words "all," "any," and "each" shall each be construed as encompassing "any and all." Local Civil Rule 26.3(d).

4.      In producing responsive documents, you should furnish all documents in your possession, custody, or control, regardless of whether such documents are possessed directly by you or by your agents, employees, or representatives, including your attorneys or their agents, employees, or representatives.

5.      You are to produce any and all drafts and copies of each document that is responsive to any specification of this subpoena and all copies of each such document that are not identical in any respect, including but not limited to handwritten notes, markings, stamps, interlineations, and electronic information.

6.      With respect to Electronically Stored Information ("ESI"):

    a.)      All electronic records including all payment transactions and instructions, mail, and spreadsheets responsive to this subpoena that are maintained in the

usual course of business in electronic format are to be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

b.)     Electronic payment records and instructions that are responsive to this subpoena processed through CHIPS, FEDWire, SWIFT, and Book-transfers shall include the descriptive field name and not the numeric tag for all data elements contained in the electronic record.  Include all relevant data elements contained in Attachment D and any other data fields that are contained in the electronic records responsive to this subpoena.

c.)     All other documents responsive to this subpoena that are maintained in the usual course of business in electronic format are to be produced in properly utilized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

c.)     All documents responsive to this subpoena are to be produced with the metadata normally contained within such documents, and the necessary Concordance or Introspect load files.  If such metadata is not available, each document is to be accompanied by a listing of all file properties relating to such document, including, but not limited to, all information relating to the date(s) the document was last accessed, created, modified or distributed, and the author(s) and recipient(s) of the document.

d.)     Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use.  ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means.  Databases or underlying data should not be produced without first discussing production format issues with Plaintiff's counsel.  If you decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden of cost you claim is associated with the search or production of such ESI.

7.     All documents that are physically attached to each other when located for production are to be left so attached when produced.  Documents that are segregated or separated from other documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs or any other method, are to be left so segregated or separated when produced.  Documents are to be produced in the order in which they were maintained and in the files in which they were found.

8.      If any document, or any part of a document, called for by this subpoena has been destroyed, discarded, lost, or otherwise disposed of or placed beyond your custody or control, you are to furnish a list identifying each such document by:  (i) date, (ii) author; (iii) recipient(s); (iv) type of document (e.g., letter, memorandum, chart, e-mail, etc.); (v) general subject matter; (vi) the document's present or last-known location or custodian; (vii) the date of the document's destruction or other disposition; (viii) the reason for such destruction or other disposition; and (ix) the person authorizing such destruction or other disposition.

9.      Each specification of this subpoena requires production in full, without abbreviation, redaction, or expurgation, of any responsive documents.  If any responsive document is not or cannot be produced in full, produce it to the extent possible, indicating which document, or portion of that document is being withheld, and the reason(s) it is being withheld.

10.     Documents not otherwise responsive to specifications of this subpoena are to be produced if such documents mention, discuss, refer to, or explain the documents which are responsive to this subpoena, or if such documents are attached to documents responsive to this subpoena and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

11.     If in responding to this subpoena, you encounter any ambiguity in construing it or any definitions and instructions relevant to it, set forth the matter or term deemed "ambiguous" and the construction used in responding to the subpoena.

12.     If a privilege is claimed as the basis for not producing any document, you are to furnish a privilege log setting forth, for each such document:  (i) nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; (ii) the type of document, e.g., letter,

memorandum, etc.; (iii) the general subject matter of the document; (iv) the date of the document; and (v) the author of the document, the addressees and any other recipients of the document and, where not apparent, the relationship of the author, addressees, and recipients to each other.  Local Civil Rule 26.2(a).

## DOCUMENTS TO BE PRODUCED

1.      All documents concerning any transfer, in which you had any involvement and within the Relevant Time Period, of any monies or financial instruments to, from, or through accounts owned or controlled by Argentina.  For the avoidance of any doubt and without limiting the foregoing, this includes, but is not limited to, the entire text of communications transmitted through systems such as SWIFT, CHIPS, FEDWire, DTC, and any similar system.  For the further avoidance of any doubt and without limiting the foregoing, data concerning transactions with a counterparty should include fields corresponding to the counterparty, including but not limited to account number, ABA routing number, and SWIFT code.

2.      Documents sufficient to identify all property, assets, or accounts of any type held by you during the Relevant Time Period—including the current value, account owners, and co-signers of interest of such property, assets, or accounts—for which Argentina is, in whole or in part, the owner, beneficiary, or a signatory.

-8-

## ATTACHMENT B: Rule 45 Federal Rules of Civil Procedure, Parts C & D

(c) Protecting a Person Subject to a Subpoena.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction-- which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

### ATTACHMENT C:  Non-Exclusive List of Persons Included Definition of "Argentina"

| I.  Governmental Entities |
|---|
| República Argentina |
| Estado Nacional |
| Administracion Central |
| Administracion Publica Nacional |
| Nacion Argentina |
| Presidencia de la Nacion |
| Vicepresidente |
| Ministerio de Defensa |
| Ministerio de Desarrollo Social |
| Ministerio de Economia y Finanzas Publicas |
| Ministerio de Educacion |
| Ministerio de Ciencia, Tecnologia e Innovacion Productiva |
| Ministerio de Justicia y Derechos Humanos |
| Ministerio de Planificacion Federal, Inversion Publica y Servicios |
| Ministerio de Relaciones Exteriores, Comercio Internacional y Culto |
| Ministerio de Salud |
| Ministerio de Trabajo, Empleo y Seguridad Social |
| Ministerio del Interior |
| Ministerio de Turismo |
| Ministerio de Industria |
| Ministerio de Agricultura, Ganaderia y Pesca |
| Ministerio de Seguridad |
| Coordinación General de Asuntos Técnicos de la Unidad Presidente |
| Coordinación General de Asuntos Político-Institucionales de la Unidad Presidente |
| Secretaría General |
| Subsecretaría General |
| Subsecretaría de Relaciones con la Sociedad Civil |
| Subsecretaría de Coordinacion |
| Secretaría Legal y Tecnica |
| Subsecretaría Tecnica |
| Subsecretaría de Asuntos Legales |
| Secretaría de Inteligencia |
| Subsecretaría de Inteligencia |
| Secretaría de Programacion para la Prevencion de la Drogadiccion y la Lucha contra el Narcotrafico |
| Subsecretaría Técnica de Planeamiento y Control del Narcotráfico |
| Subsecretaría de Planificación, Prevención y Asistencia |

| |
|---|
| Secretaría de Cultura |
| Subsecretaría de Gestión Cultural |
| Subsecretaría de Industrias Culturales |
| Casa Militar |
| Secretaría de Ambiente y Desarrollo Sustentable |
| Subscretaria de Control y Fiscalizacion Ambiental y Prevencion de la Contaminacion |
| Subscretaria de Coordinacion de Politicas Ambientales |
| Subscretaria de Planificacion de Politica Ambiental |
| Subsecretaría de Promocion del Desarrollo Sustentable |
| Secretaría de Coordinación Administrativa y Evaluación Presupuestaria |
| Subsecretaría de Evaluacion de Presupuesto Nacional |
| Subsecretaría de Evaluación de Proyectos con Financiamiento Externo |
| Subsecretaría de Coordinación Administrativa |
| Secretaría de Relaciones Parlamentarias |
| Subsecretaría de Relaciones Institucionales |
| Secretaría de la Gestion Publica |
| Subsecretaría de Gestión y Empleo Publico |
| Subsecretaría de Tecnologías de Gestión |
| Secretaría de Medios de Comunicacion |
| Subsecretaría de Gestion de Medios |
| Subsecretaría de Comunicacion y Contendios de Difusion |
| Subsecretaría de Comunicacion Estrategica |
| Secretaría de Gabinete |
| Subsecretaría para la Reforma Institucional y Fortalcimiento de la Democracia |
| Secretaría de Integración Nacional |
| Subsecretaría de Planificación y Gestión para la Integración Nacional |
| Subsecretaría de Ejecución Operativa |
| Secretaría de Politica Economica |
| Subsecretaría de Coordinación Económica |
| Subsecretaría de Programacion Económica |
| Secretaría de Comercio Interior |
| Subsecretaría de Defensa del Consumidor |
| Secretaría de Finanzas |
| Subsecretaría de Servicios Financieros |
| Subsecretaría de Financiamiento |
| Secretaría de Hacienda |
| Subsecretaría de Presupuesto |
| Subsecretaría de Relaciones con Provincias |
| Subsecretaría de Ingresos Públicos |

| |
|---|
| Secretaría Legal y Administrativa |
| Subsecretaría Legal |
| Subsecretaría de Administración y Normalización Patrimonial |
| Subsecretaría de Relaciones Institucionales |
| Secretaría de Asuntos Militares |
| Subsecretaría de Asuntos Técnico Militares |
| Subsecretaría de Formación |
| Secretaría de Planeamiento |
| Subsecretaría de Planificación Logística y Operativa de la Defensa |
| Subsecretaría de Innovación Científica y Tecnológica |
| Subsecretaría de Asuntos Internacionales de la Defensa |
| Subsecretaría de Coordinacion |
| Secretaría de Interior |
| Subsecretaría de Interior |
| Secretaría de Asuntos Politicos |
| Subsecretaría de Asuntos Politicos y Electorales |
| Secretaría de Provincias |
| Subsecretaría de Desarrollo y Fomento Provincial |
| Secretaría de Asuntos Municipales |
| Subsecretaría de Gestión Municipal |
| Subsecretaría de Coordinacion |
| Agencia Nacional de Gestión Informática |
| Secretaría de Politica, Regulacion e Institutos |
| Subsecretaría de Gestión de Servicios Asistenciales |
| Subsecretaría de Políticas, Regulación y Fiscalización |
| Secretaría de Promocion y Programas Sanitarios |
| Subsecretaría de Salud Comunitaria |
| Subsecretaría de Prevención y Control de Riesgos |
| Secretaría de Determinantes de la Salud y Relaciones Sanitarias |
| Subsecretaría de Relaciones Sanitarias e Investigación |
| Secretaría de Coordinacion |
| Subsecretaría de Coordinacion Administrativa |
| Subsecretaría de Planificacion Territorial de la Inversion Publica |
| Subsecretaría de Coordinación y Control de Gestión |
| Subsecretaría Legal |
| Secretaría de Obras Publicas |
| Subsecretaría de Desarrollo Urbano y Vivienda |
| Subsecretaría de Coordinacion de Obra Publica Federal |
| Subsecretaría de Recursos Hídricos |
| Subsecretaría de Obras Publicas |
| Secretaría de Comunicaciones |
| Secretaría de Energia |

| |
|---|
| Subsecretaría de Energía Electrica |
| Subsecretaría de Combustibles |
| Secretaría de Minería |
| Secretaría de Transporte |
| Subsecretaría de Puertos y Vías Navegables |
| Subsecretaría de Transporte Ferroviario |
| Subsecretaría de Transporte Aerocomercial |
| Subsecretaría de Transporte Automotor |
| Secretaría de Relaciones Exteriores |
| Subsecretaría de Relaciones Institucionales |
| Subsecretaría de Política Latinoamericana |
| Subsecretaría de Política Exterior |
| Secretaría de Coordinación y Cooperación Internacional |
| Subsecretaría Legal, Tecnica y Administrativa |
| Secretaría de Comercio y Relaciones Economicas Internacionales |
| Subsecretaría de Integracion Economica Americana y MERCOSUR |
| Subsecretaría de Comercio Internacional |
| Subsecretaría de Desarrollo de Inversiones |
| Secretaría de Culto |
| Subsecretaría de Culto |
| Subsecretaría de Programación Técnica y Estudios Laborales |
| Subsecretaría de Coordinacion |
| Secretaría de Trabajo |
| Subsecretaría de Relaciones Laborales |
| Subsecretaría de Fiscalización del Trabajo y de la Seguridad Social |
| Secretaría de Empleo |
| Subsecretaría de Políticas de Empleo y Formación Profesional |
| Subsecretaría de Promoción del Sector Social de la Economía |
| Secretaría de Seguridad Social |
| Subecretaría de Politicas de la Seguridad |
| Subsecretaría de Coordinacion e Innovcacion |
| Subsecretaría de Planificación Estratégica |
| Secretaría de Justicia |
| Subsecretaría de Asuntos Penitenciarios |
| Subsecretaría de Política Criminal |
| Subsecretaría de Relaciones con el Poder Judicial |
| Secretaría de Asuntos Registrales |
| Subsecretaría de Asuntos Registrales |
| Secreteria de Seguridad Interior |
| Subsecretaría de Seguridad Ciudadana |
| Subsecretaría de Seguridad en los Espectáculos Futbolísticos |
| Secretaría de Derechos Humanos |

| |
|---|
| Subsecretaría de Protección de Derechos Humanos |
| Subsecretaría de Promoción de Derechos Humanos |
| Secretaría de Educacion |
| Subsecretaría de Equidad y Calidad Educativa |
| Subsecretaría de Planeamiento Educativo |
| Secretaría de Politicas Universitarias |
| Subsecretaría de Coordinación Administrativa |
| Secretaría de Coordinación y Monitoreo Institucional |
| Subsecretaría de Comercialización de la Economía Social |
| Secretaría de Economia Social |
| Subsecretaría de Fortalecimiento Institucional |
| Subsecretaría de Organización de Ingresos Sociales |
| Secretaría de Organización y Comunicación Comunitaria |
| Subsecretaría de Organización y Capacitación Popular |
| Secretaría de Gestion y Articulacion Institucional |
| Subsecretaría de Abordaje Territorial |
| Subsecretaría de Políticas Alimentarias |
| Secretaría Nacional de Niñez, Adolescencia y Familia |
| Subsecretaría de Derechos para la Niñez, Adolescencia y Familia |
| Subsecretaría de Desarrollo Institucional e Integración Federal |
| Secretaría de Deportes |
| Subsecretaría de Planeamiento y Gestión Deportiva |
| Subsecretaría de Recursos Deportivos |
| Subsecretaría de Coordinacion |
| Secretaría de Turismo |
| Subsecretaría de Desarrollo Turístico |
| Subsecretaría de Promoción Turística Nacional |
| Subsecretaría de Coordinacion Administrativa |
| Secretaría de Planeamiento y Politicas de Ciencia, Tecnologia e Innovacion |
| Subsecretaría de Estudios y Prospectiva |
| Subsecretaría de Politicas de Ciencia, Tecnologia e Innovacion Productiva |
| Secretaría de Articulacion Cientifico Tecnologia |
| Subsecretaría de Coordinacion Institucional |
| Subsecreteria de Evaluacion Institucional |
| Subsecretaría de Coordinacion |
| Secretaria de Industria y Comercio |
| Subsecretaría de Industria |
| Subsecretaría de Política y Gestión Comercial |
| Secretaría de la Pequena y Mediana Empresa y Desarrollo Regional |
| Subsecretaría de Política y Gestión de la Pequeña y Mediana Empresa y del Desarrollo |
| Subsecretaría de Promoción al Financiamiento de la Pequeña y Mediana Empresa |
| Subsecretaría de Coordinacion Tecnica y Administrativa |

| |
|---|
| Secretaría de Agricultura, Ganaderia y Pesca |
| Subsecretaría de Agricultura |
| Subsecretaría de Ganaderia |
| Subsecretaría de Lechería |
| Subsecretaría de Pesca y Acuicultura |
| Secretaria de Desarrollo Rural y Agricultura Familiar |
| Subsecretaría de Desarrollo de Economías Regionales |
| Subsecretaría de Agricultura Familiar |
| Secretaría Relaciones Institucionales |
| Subsecretaría de Coordinacion Institucional |
| Subsecretaría de Comunicación Institucional |
| Unidad de Planificacion y Evaluacion de la Educacion |
| Consejo Nacional de Coordinacion de Politicas Sociales |
| Secretaría de Politicas Sociales y Desarrollo Humano |
| Secretaría del Consejo Federal de Educacion |
| Secretaría de Estrategia y Asuntos Militares |
| Banco Central de la Republica Argentina |
| Fondo Fiduciario Anticiclico |
| Procuracion del Tesoro de la Nacion |
| Comision Nacional de Museos y Monumentos Historicos |
| Instituto Nacional Browniano |
| Instituto Nacional Newberiano |
| Instituto Nacional de Investigaciones Historicas Eva Peron |
| Instituto Nacional de Investigaciones Historicas Juan M de Rosas |
| Instituto Nacional Belgranio |
| Insituto Nacional Sanmartiniano |
| Comision Nacional Protectora de Bibliotecas Populares |
| Museo Nacional de Bellas Artes |
| Agencia Nacional de Promoción Científica y Tecnológica |
| Comision Nacional de Pensiones Asistenciales |
| Comision Nacional de Coordinacion del Programa de Promocion del Microcredito para el Desarrollo de la Economia Social |
| Instituto Nacional de Educación Tecnológica National |
| Instituto Nacional de Formación Docente |
| Archivo Nacional de la Memoria |
| Servicio Penitenciario Federal National Penitentiary Service |
| Policia de Seguridad Aeroportuaria |
| Órgano de Control de Concesiones Viales |
| Organismo Nacional de Administracion de Bienes |
| Instituto Nacional del Cáncer |
| Prefectura Naval Argentina |
| Policia Federal Argentina |

-15-

| |
|---|
| Gendarmeria Nacional |
| Comision Nacional de Defensa de la Competencia |
| Comision Nacional de Comercio Exterior |
| Instituto Nacional de Estadistica y Censo |
| Comisión Nacional de Tierras para el Hábitat Social. "Padre C. Mugica" |
| Comisión Nacional Coordinadora de Políticas Públicas en Materia de Prevención y Control del Tráfico Ilícito de Estupefacientes, la Delincuencia Organizada Transnacional y la Corrupción |
| Consejo Nacional de Investigaciones Científicas y Técnicas |
| Banco Nacional de Datos Geneticos |
| Biblioteca Nacional |
| Fondo Nacional de las Artes |
| Instituto Nacional del Teatro |
| Teatro Nacional Cervantes |
| Instituto Nacional de Investigaciones y Desarrollo Pesquero |
| Instituto Nacional de Semillas |
| Instituto Nacional de Tecnologia Agropecuaria |
| Instituto Nacional de Vitivinicultura |
| Servicio Nacional de Sanidad y Calidad Agroalimentaria |
| Instituto de Ayuda Financiera para Pago de Retiros y Pensiones Militares |
| Instituto de Investigaciones Científicas y Técnicas para la Defensa |
| Instituto Geográfico Nacional |
| Secretaría Nacional de Ninez, Adolescencia y Familia |
| Instituto Nacional de Asociativismo y Economía Social |
| Instituto Nacional de Asuntos Indígenas |
| Administración Federal de Ingresos Públicos |
| Comisión Nacional de Valores |
| Superintendencia de Seguros de la Nacion |
| Tribunal Fiscal de la Nación |
| Comisión Nacional de Evaluación y Acreditación Universitaria |
| Fundación Miguel Lillo |
| Administración de Parques Nacionales |
| Instituto Nacional de la Propiedad Industrial |
| Instituto Nacional de Tecnología Industrial |
| Dirección Nacional de Migraciones |
| Direccion Nacional del Registro Nacional de las Personas |
| Caja de Retiros, Jubilaciones y Pensiones de la Policía Federal Argentina |
| Instituto Nacional contra la Discriminación, la Xenofobia y el Racismo |
| Comisión Nacional de Energía Atómica |
| Dirección Nacional de Vialidad |
| Fondo Fiduciario Federal de Infraestructura Regional |

| |
|---|
| Comisión Nacional de Comunicaciones |
| Ente Nacional Regulador de la Electricidad |
| Ente Nacional Regulador del Gas |
| Comisión Nacional de Regulación del Transporte |
| Administración Nacional de Aviación |
| Junta de Investigaciones de Accidentes de Aviacion Civil |
| Organismo Regulador del Sistema Nacional de Aeropuertos |
| Tribunal Nacional de Defensa de la Competencia |
| Instituto Nacional de Recursos de la Seguridad Social |
| Servicio Meteorológico Nacional |
| Agencia Nacional de Seguridad Vial |
| Oficina Nacional de Control Comercial Agropecuario |
| Instituto Nacional de Promoción Turística |
| Agencia de Planificacion |
| Direccion General de Fabricaciones Militares General |
| Delegacion Tecnico Administrativa |
| Unidad Auditoria Interna |
| Direccion de Comunicacion Social |
| Direccion Nacional de Inteligencia Estrategica Militar |
| Coordinadora de Ceremonial |
| Estado Mayor Conjunto de las Fuerzas Armadas |
| Estado Mayor General de la Armada |
| Estado Mayor General de la Fuerza Aerea |
| Estado Mayor General del Ejercito |
| Agencia Nacional de Seguridad Vial |
| Ente Cooperador Penitenciario |
| Organo de Control de Concesiones Viales |
| Auditoria General de la Nacion |
| Fondo del Bicentenario para el Desendeudamiento y la Estabilidad Económica |
| Fondo Nacional de la Vivienda |
| Fondo Federal Solidario |
| Comision Federal de Impuestos |
| Fondo de Garantia de Sustentabilidad |
| Fondo Fiducario para el Desarrollo |
| Fondo Fiducario de Reconstruccion de Empresas |
| Fondo Financiero para el Desarroloo de la Cuenca del Plata |
| Fondo Unificado de Cuentas Corrientes Oficiales |
| Agencia Nacional de Desarrollo de Inversiones - ProsperAr |
| Area de Origen de Mercaderias |
| Centro do Economia Internacional |
| Comision de Seguimiento del Sector de la Construccion |
| Consejo Federal Pesquero |

| |
|---|
| Direccion de Competencia Desleal |
| Direccion Nacional de Politica Comercial Externa |
| Oficina Nacional de Contrataciones |
| Zonas Francas |
| Fondo Fiduciario del Sistema de Infraestructura de Transporte |
| Fideicomiso Sistema Vial Integrado |
| Sistema Ferroviario Integrado |
| Fondo Nacional de Energia Electrica |
| Fondo Fiduciario para el Transporte Electrico Federal |
| Fondo Fiduciario para la Reconstruccion de Empresas |
| Fondo Fiduciario para Atender Inversiones en Transporte y Distribucion de Gas |
| Fondo Fiduciario para el Desarrollo Provincial |
| Fondo Fiduciario de Desarrollo de Infraestructura Regional |
| Tesoraria General de la Nacion |
| **II.  Entities in which Argentina has an ownership interest** |
| Lotería Nacional |
| Polo Tecnológico Constituyente |
| EDUC.AR |
| Administración General de Puertos |
| Entidad Binacional Yacyreta |
| Nucleoeléctrica Argentina |
| Correo Oficial de la República Argentina |
| Casa de Moneda |
| Banco de Inversión y Comercio Exterior |
| Banco de la Nación Argentina |
| Agua y Saneamientos Argentinos |
| Construcción de Viviendas para la Armada SE |
| DIOXITEK |
| Empresa Argentina de Soluciones Satelitales |
| Energía Argentina |
| Yacimientos Carboníferos Río Turbio |
| Yacimientos Mineros de Agua de Dionisio |
| Líneas Aéreas Federales |
| Aerolíneas Argentinas |
| Nación Administradora de Fondos de Jubilaciones y Pensiones |
| Talleres Navales Dársena Norte SACIyN |
| Agencia de Noticias Oficial de la República Argentina |
| Fabrica Militar de Aviones |
| Planta Papelera Quilmes |
| Terminal de Cargas Argentina |
| Innovaciones Tecnológicas Agropecuarias |
| Unidad Especial Sistema de Transmisión Yacyretá |

-18-

| |
|---|
| Emprendimientos Energéticos Binacionales |
| TELAM SE |
| Radio y Televisión Argentina |
| Administración de Infraestructura Ferroviarias |
| INTERCARGO S.A.C. |
| Operadora Ferroviaria |
| Dirección General de Fabricaciones  Militares |
| Aerohanding |
| Austral Cielos del Sur |
| Editorial Universitaria de Buenos Aires SEM |
| Emprendimiento Productivo y Educativo La Gleba |
| Energía Argentina Servicios |
| Fábrica Argentina de Aviones « Brigadier San Martín » |
| Jet Paq |
| Nación Bursátil Sociedad de Bolsa |
| Nación Factoring |
| Nación Fideicomiso |
| Nación Leasing |
| Nación Seguros |
| Nación Seguros de Retiro |
| Nación Servicios |
| Optar |
| Parque Tecnológico del Litoral Centro SAPEM |
| Pellegrini SA Gerente de Fondos Comunes de Inversión |
| Vehículo Espacial de Nueva Generación |
| Vientos de la Patagonia I |
| Autoridad Interjurisdiccional de la Cuenca del Río Limay |
| YPF |

## ATTACHMENT D:  Data Elements of Payment Transactions and Instructions

| | |
|---|---|
| Transaction Description[1] | Credit Party ID |
| Transaction Date | Credit Party Name |
| Transaction Amount | Credit Party Address (Lines, 1,2,3,4) |
| Message Type | Credit Party Country |
| Currency | Originating Bank |
| SWIFT BIC | Origianting Bank Country |
| Originating Party ID | Beneficiary Bank |
| Originating Party Name | Beneficiary Bank Country |
| Originating Party Address (Lines 1,2,3,4) | Sending Bank |
| Originating Party Country | Sending Bank Country |
| Beneficiary Party ID | Receiving Bank |
| Beneficiary Party Name | Receiving Bank Country |
| Beneficiary Party Address (Lines 1,2,3,4) | Intermediary Bank |
| Beneficiary Party Country | Intermediary Bank Country |
| Reference Number | Bank to Bank Information |
| SWIFT 20 | Originator to Beneficiary Information |
| SWIFT 21 | Bank to Bank Intermediary Information |
| By Order Party ID | Bank to Bank Beneficiary Information |
| By Order Party Name | Reference for the Beneficiary |
| By Order Party Address (Lines 1,2,3,4) | Debit Party ID |
| By Order Party Country | Debit Party Name |
| Instructing Party ID | Debit Party Address (Lines 1,2,3,4) |
| Instructing Party Name | Debit Party Country |
| Instructing Party Address (Lines 1,2,3,4) | |
| Instructing Party Country | |

---

[1] Fed In, Fed Out, CHIPS In, CHIPS Out, SWIFT In, SWIFT Out, Book-transfers in and out