UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                          :    03 Civ. 8845 (TPG)

NML CAPITAL, LTD.,                     :    05 Civ. 2434 (TPG)

                                            :    06 Civ. 6466 (TPG)

                    Plaintiff,          :    07 Civ. 1910 (TPG)

                                            :    07 Civ. 2690 (TPG)

          -against-                   :    07 Civ. 6563 (TPG)

                                          :    08 Civ. 2541 (TPG)

THE REPUBLIC OF ARGENTINA,        :    08 Civ. 3302 (TPG)

                                          :    08 Civ. 6978 (TPG)

               Defendant.         :    09 Civ. 1707 (TPG)

                                          :    09 Civ. 1708 (TPG)

------------------------------------------------------------------ X

**CORRECTED MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN SUPPORT OF ITS MOTION TO QUASH PLAINTIFF'S SUBPOENAS**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

Of Counsel:

Jonathan I. Blackman
Carmine D. Boccuzzi

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 3

ARGUMENT ..................................................................................................................... 6

I.   THE SUBPOENAS FLOUT THE BASIC STANDARDS FOR
     POST-JUDGMENT DISCOVERY UNDER FEDERAL RULES 26 AND 69 ..... 6

     A.   The Subpoenas Violate The Federal Rules By Demanding
          Discovery Concerning Hundreds Of Separate Entities ................................... 6

     B.   The Subpoenas Are Otherwise Improper And Contrary To Law .................. 9

II.  THE SUBPOENAS VIOLATE SETTLED PRINCIPLES OF
     INTERNATIONAL LAW AND THE FSIA ............................................................. 13

     A.   The VCDR Prohibits Attachment And Discovery Of
          Assets Of Diplomatic Missions And Embassies ............................................. 14

     B.   The Subpoenas Target Military Property In Violation Of The
          FSIA And International Law ............................................................................ 17

     C.   The Subpoenas Further Violate The FSIA By Requiring
          Disclosure Concerning Property Categorically Immune From Execution ...... 18

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*767 Third Ave. Assocs. v. Permanent Mission of the Republic of Zaire*,
988 F.2d 295 (2d Cir. 1993)..............................................................................  14

*Abbot v. Abbot*,
130 S. Ct. 1983 (2010)......................................................................................  15

*Aeron Aviation Corp. v. Chemco Int'l Leasing Inc.*,
498 N.Y.S.2d 49 (2d Dep't 1986)......................................................................  8-9

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)..........................................................................................  19

*Aurelius Capital Partners v. Republic of Argentina*,
No. 07 Civ. 2715 (TPG), 2013 WL 857730 (S.D.N.Y. Mar. 7, 2013) ..............  *passim*

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,
499 F.3d 737 (7th Cir. 2007) ............................................................................  20

*Avelar v. J. Cotoia Constr., Inc.*,
No. 11-CV-2172, 2011 WL 5245206 (E.D.N.Y. Nov. 2, 2011)......................14-15, 16

*Ayyash v. Koleilat*,
957 N.Y.S.2d 574 (Sup. Ct. N.Y. Cnty. 2012) ..................................................  8

*Bettan v. Geico Gen. Ins. Co.*,
745 N.Y.S.2d 545 (2d Dep't 2002)....................................................................  9

*Colella v. Republic of Argentina*,
No. 07 Civ. 80084 (WHA), 2007 WL 1545204 (N.D. Cal. May 29, 2007) ......  18

*Costamar Shipping Co. v. Kim-Sail, Ltd.*,
No. 95 Civ. 3349 (KTD), 1995 WL 736907 (S.D.N.Y. Dec. 12, 1995)...........  10-11

*Editel v. Liberty Studios, Inc.*,
557 N.Y.S.2d 21 (1st Dep't 1990) .....................................................................  9

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007)..............................................................................  8, 13

*EM Ltd. v. Republic of Argentina*,
695 F.3d 201 (2d Cir. 2012)..........................................................................6, 7, 19, 20

*First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*,
462 U.S. 611 (1983)..........................................................................................  9

**Page(s)**

*GMA Accessories, Inc. v. Electric Wonderland, Inc.*,
No. 07 Civ. 3219 (PKC) (DF), 2012 WL 1933558 (S.D.N.Y. May 22, 2012).................. 10

*Herbert v. Lando*,
441 U.S. 153 (1979)........................................................................................... 6

*In re Papandreou*,
139 F.3d 247 (D.C. Cir. 1998), *superseded by statute on other grounds*,
28 U.S.C. § 1605(a)(7)....................................................................................... 4, 10

*Kiobel v. Royal Dutch Petroleum*,
133 S. Ct. 1659 (2013)....................................................................................... 19-20

*Lewis v. Hertz Corp.*,
597 N.Y.S.2d 368 (1st Dep't 1993) ................................................................... 9

*Liberian E. Timber Corp., v. Republic of Liberia*,
659 F. Supp. 606 (D.D.C. 1987) ........................................................................ 15

*Morrison v. Nat'l Australia Bank Ltd.*,
130 S. Ct. 2869 (2010)....................................................................................... 19

*NML Capital, Ltd. v. Banco Central De La República Argentina*,
652 F.3d 172 (2d Cir. 2011), *cert denied*, 133 S. Ct. 23 (2012)........................ 12, 13

*NML Capital, Ltd. v. Republic of Argentina*,
892 F. Supp. 2d 530 (S.D.N.Y. 2012)................................................................ 12

*NML Capital, Ltd. v. Republic of Argentina*,
No. 03 Civ. 8845 (TPG), 2011 WL 1533072 (S.D.N.Y. Apr. 22, 2011)........................ 11

*NML Capital, Ltd. v. Republic of Argentina*,
No. 09 Civ. 7013 (TPG), 2011 WL 524433 (S.D.N.Y. Feb. 15, 2011)............................ 11-12

*NML Capital, Ltd. v. Republic of Argentina*,
No. C 12-80185 JSW (MEJ), 2013 WL 655211 (N.D. Cal. Feb. 21, 2013)...................... 10

*Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*,
134 F. Supp. 2d 528 (S.D.N.Y. 2001).............................................................. 6, 11, 20

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
9 F. Supp. 2d 300 (S.D.N.Y. 1998).................................................................... 9

*Rossini v. Republic of Argentina*,
453 F. App'x 22 (2d Cir. 2011) ......................................................................... 8

**Page(s)**

*Rubin v. Islamic Republic of Iran,*
637 F.3d 783 (7th Cir. 2011), *cert denied*, 133 S. Ct. 23 (2012)....................................... 8, 20

*Sales v. Republic of Uganda,*
No. 90 Civ 3972 (CSH), 1993 WL 437762 (S.D.N.Y. Oct. 23, 1993)............................. 15

*Samantar v. Yousuf,*
130 S. Ct. 2278 (2010)......................................................................................................... 4, 9-10

*Seijas v. Republic of Argentina,*
No. 10 Civ. 4300 (TPG), 2011 WL 1137942 (S.D.N.Y. Mar. 28, 2011) .......................... 11

*Semtek Int'l Inc. v. Merkuriy Ltd.,*
No. 3607 (DRH), 1996 WL 238538 (N.D.N.Y. May 1, 1996)........................................... 8

*Strick Corp. v. Thai Teak Prods. Co.,*
493 F. Supp. 1210 (E.D. Pa. 1980) ................................................................................... 11

*Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.,*
148 F.R.D. 662 (M.D. Fla. 1993)......................................................................................... 11

*Uniden Corp. of Am. v. Duce Trading Co.,*
No. 89-CV-0878E, 1993 WL 286102, (W.D.N.Y. Jul. 19, 1993) ...................................... 10

*Vulcan Iron Works, Inc. v. Polish Am. Mach. Corp.,*
472 F. Supp. 77 (S.D.N.Y. 1979)......................................................................................... 15

*Walters v. Indus. & Commercial Bank of China, Ltd.,*
651 F.3d 280 (2d Cir. 2011)................................................................................................. 19, 20

*Wood v. Capital One Servs., LLC.,*
No. 5:09 Civ. 1445 (NPM/DEP), 2011 WL 2154279 (N.D.N.Y. Apr. 15, 2011) .............. 7-8

**Rules and Statutes**

28 U.S.C. § 1603 .................................................................................................................. 12

28 U.S.C. §§ 1609, 1610(a) ................................................................................................. 20

28 U.S.C. § 1611(b)(2) ........................................................................................................ 17

Fed. R. Civ. P. 26(b)(1)......................................................................................................... 6

Fed. R. Civ. P. 26(b)(2)(C)(iii) ............................................................................................ 6

Fed. R. Civ. P. 45 (c)(3)(A) ................................................................................................. 9

**Page(s)**

Fed. R. Civ. P. 45(c)(3)(A)(iv) ........................................................ 6

Fed. R. Civ. P. 69(a)(1) .................................................................. 19

Fed. R. Civ. P. 69(a)(2) .................................................................. 6, 19

**Other Authorities**

6 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE ¶ 69.04 (3d ed. 1999) ............. 11

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ........................... 17, 20

Hazel Fox, *In Defence of State Immunity: Why the UN Convention on State Immunity Is Important*, 55 INT'L & COMP. L.Q. 399 (2006) .................................................... 13

State Immunity Act, 1978, c. 33 (Eng.), *reprinted in* 17 I.L.M. 1123 (1978) ................... 13

United Nations Convention on the Law of the Sea, Dec. 10, 1982, 1833 U.N.T.S. 3 ........ 18

Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 ........ 14-15

Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 9 .................................................................. 14

Xiaodong Yang, STATE IMMUNITY IN INTERNATIONAL LAW (Cambridge University Press 2012) ..................................................... 13

Defendant the Republic of Argentina (the "Republic") respectfully submits this memorandum of law in support of its motion to quash 13 subpoenas dated April 15, 2013, and May 1, 2013, (the "Subpoenas") purportedly served by plaintiff NML Capital, Ltd. ("NML") on non-parties BNP Paribas, BNP Paribas Fortis, Citibank, N.A., Deutsche Bank AG, HSBC Holdings PLC, HSBC Bank USA, N.A., JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Standard Chartered PLC, Standard Chartered Bank, UBS AG, Wells Fargo & Co. and Wells Fargo Bank, N.A. (the "Non-Party Banks"), pursuant to Rule 45 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Court should quash the 13 impermissibly overbroad Subpoenas served by NML on the Non-Party Banks.  The Court has repeatedly recognized that discovery requests must be tailored to seek information that will lead to attachable assets of the Republic.  Less than three months ago, the Court held that similar subpoenas served on non-party banks by the *Aurelius* plaintiffs appeared to fail this requirement because, among other reasons, they sought information concerning the property of hundreds of independent entities not liable for the Republic's debts.  NML's Subpoenas, which likewise seek discovery concerning the property of hundreds of entities that are separate from the Republic, and contain no geographical limitation, are equally overbroad and irrelevant, and should accordingly be quashed.

*First*, the Subpoenas demand excessively broad, open-ended categories of documents of 392 entities with no geographical limitation, and thus can in no sense be described as relevant, prudential, or appropriately tailored.  Such sweeping discovery is not relevant to attachable assets of the Republic. The Subpoenas are thus not only improper under the precedent

of this Court and the Second Circuit, but fail to satisfy the most elementary requirements of Federal Rules 26 and 69.

*Second*, the definition of "Argentina" is overbroad and unworkable on its face, as the Subpoenas seek documents concerning all worldwide assets and the business activities of *392* entities, the vast majority of them separate from the Republic, including entities already deemed by this Court to be separate from the Republic and not liable for its debts. The Subpoenas far exceed the scope of permissible discovery under the Federal Rules, which limit disclosure to relevant information concerning the *judgment debtor's* assets.

*Third*, the Subpoenas seek information about diplomatic and military property of the Republic, which are afforded protections from enforcement measures by the Foreign Sovereign Immunities Act ("FSIA") and international law, including as codified in the Vienna Convention on Diplomatic Relations and the Vienna Convention on Consular Relations. Because the Subpoenas do not recognize diplomatic or military immunity, purportedly reaching "all property" of the "Republic," which is defined to include even the Ministry of Foreign Affairs and the Joint Chief of Staff of the Armed Forces, they are improper as a matter of law.

*Finally*, by requiring disclosure concerning property located outside of the United States and disclosure that is otherwise untethered to any specific immunity determination, the discovery sought by NML further violates the FSIA. The Republic has petitioned for a writ of certiorari of the Second Circuit's affirmance of this Court's ruling requiring Banco de la Nación Argentina ("BNA") and Bank of America, N.A. to produce information concerning purported sovereign assets located outside of the United States (and therefore categorically immune under the FSIA), and the Supreme Court called for the views of the Solicitor General on April 15,

2013.  The Republic briefly restates why the FSIA prohibits NML's Subpoenas so as to preserve all arguments and objections under the FSIA.

## BACKGROUND

Plaintiff NML, a hedge fund established exclusively to purchase distressed Republic debt, is a judgment creditor of the Republic.[1]  On April 15, 2013, and May 1, 2013, NML served the Republic with notice of 13 subpoenas it purportedly served on the following non-party banks:[2]

- BNP Paribas

- BNP Paribas Fortis

- Citibank, N.A.

- Deutsche Bank AG

- HSBC Holdings PLC

- HSBC Bank USA, N.A.

- JPMorgan Chase & Co.

- JPMorgan Chase Bank, N.A.

- Standard Chartered PLC

- Standard Chartered Bank

- UBS AG

---

[1] NML has brought 11 total lawsuits against the Republic based on its beneficial interest in defaulted Republic bonds, which it acquired at a deep discount both immediately preceding and well after the Republic suspended payments on its unsustainable debt burden in December of 2001.  NML has obtained five judgments against the Republic, totaling over $1.6 billion.  The remaining six pre-judgment cases involve a total principal amount of approximately $900 million.  Although there is no basis for asset discovery of a judgment debtor *before* there is a judgment against it, the Subpoenas completely fail to distinguish between NML's pre-judgment and post-judgment cases.

[2] The Republic has been unable to confirm proper service of certain of these subpoenas, but nonetheless moves to quash each so as to preserve the grounds for objection stated here.

- Wells Fargo & Co.

- Wells Fargo Bank, N.A.

NML's Subpoenas broadly define "Argentina" to include, without exception, all "ministries, political subdivisions, representatives, and assigns, and all other persons acting or purporting to act for or on Argentina's behalf, whether or not authorized to do so." *See, e.g.*, Citibank, N.A. Subpoena at 4, ¶ 1 (Ex. D).[3]  NML's broad definition is not limited to this host of entities, however, as the Subpoenas also define "Argentina" to encompass all entities and individuals identified in Attachment B to the Subpoenas, which lists 392 entities and individuals, including, *inter alia*:

- the President and Vice President of Argentina;[4]

- *82* majority-owned stock corporations and/or otherwise independent instrumentalities not liable for the Republic's debts, including entities that *have already been adjudicated* to be separate from the Republic and not its alter-egos, such as Aerolíneas Argentinas S.A., the Argentine commercial airline; Energía Argentina S.A. ("ENARSA"), the state-owned Argentine energy company; Empresa Argentina de Soluciones Satelitales, S.A. ("AR-SAT"), a state-owned Argentine satellite stock corporation; and BNA, Argentina's largest commercial bank;

- *25* corporate entities in which the Republic has less than 50% direct ownership interest (and in some cases no ownership interest at all), and which are unquestionably separate from the Republic;

- *50* military or diplomatic entities; and

---

[3] All exhibits, including the 13 Subpoenas, are attached to the declaration of Carmine D. Boccuzzi.  As NML served substantially identical Subpoenas on the Non-Party Banks, the Republic generally cites to the Citibank, N.A. Subpoena throughout this memorandum of law for ease of reference.

[4] As the Supreme Court has made clear, high foreign officials are entitled to common law sovereign immunity.  *Samantar v. Yousuf*, 130 S. Ct. 2278, 2285-93 (2010).  Such officials are also owed the comity and respect commensurate with that afforded U.S. government officials.  *See In re Papandreou*, 139 F.3d 247, 254 (D.C. Cir. 1998), *superseded by statute on other grounds*, 28 U.S.C. § 1605(a)(7) (granting mandamus) ("Principles of comity dictate that we accord the same respect to foreign officials as we do to our own.  Thus, absent some showing of need for oral testimony from [Greek cabinet ministers], the district court erred in authorizing their depositions.").

- *127* under-secretariats of the government which presumptively do not operate outside of Argentina or have accounts outside of Argentina; including, for example, the "Under-Secretariat of Municipal Management" and the "Under-Secretariat of Milking."

The Subpoenas seek extensive information concerning purported assets of this slew of entities and individuals, including documents identifying "*all* property, assets, or accounts of *any type* held by" the Republic during the nearly two and a half year period prior to service, and "[a]ll documents concerning any transfer . . . of any monies or financial instruments to, from, or through accounts owned or controlled by Argentina." *See, e.g.*, Citibank, N.A. Subpoena at 9, Requests Nos. 1 and 2 (Ex. D) (emphasis added).  Regarding its request for transfers, NML also seeks documents encompassing "the entire text of communications transmitted through systems such as SWIFT, CHIPS, FEDWire [and] DTC . . ." and further demands that such information include, with respect to transactions involving any counterparty, "fields . . . including . . . account number, ABA routing number, and SWIFT code" pertaining to that counterparty.  *See id.* at 9, Request No. 1.  This request is exceedingly burdensome on its face: SWIFT averaged over 19 million messages per day spanning 10,000 live users, generating over 1.2 billion messages within the first three months of 2013,[5] and in 2012 alone, CHIPS cleared and settled an average of $1.5 *trillion* in payments daily.[6]

---

[5] *See* SWIFT in Figures (Mar. 2013), *available at* http://www.swift.com/assets/swift_com/documents/about_swift/SIF_2013_03.pdf; *see also* SWIFT in Figures (Dec. 2012), *available at* http://www.swift.com/assets/swift_com/documents/about_swift/SIF_2012_12.pdf (providing year-end data for 2012 showing over 4.5 billion messages sent during that year).

[6] *See* About Chips, THE CLEARING HOUSE, http://www.chips.org/about/pages/033738.php.

## ARGUMENT

## POINT I

## THE SUBPOENAS FLOUT THE BASIC STANDARDS FOR POST-JUDGMENT DISCOVERY UNDER FEDERAL RULES 26 AND 69

The Court "should not neglect [its] power to restrict discovery . . . [and] exercise appropriate control over the discovery process." *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (citation omitted).  That power is derived from the Federal Rules' framework, which permits courts to exercise considerable discretion in limiting discovery.  *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012).  Under that framework, discovery must be limited where "the burden or expense . . . outweighs its likely benefit," Fed. R. Civ. P. 26(b)(2)(C)(iii), where the information sought is not  relevant to a party's claims, *see* Fed. R. Civ. P. 26(b)(1), and where the requested discovery "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iv).  Where, as here, subpoenas propounded on a third party seek "excessively broad" or "irrelevant" "information about [a party's] financial affairs," that party has standing to move to quash such subpoenas.  *Aurelius Capital Partners v. Republic of Argentina*, No. 07 Civ. 2715 (TPG), 2013 WL 857730, at *2 (S.D.N.Y. Mar. 7, 2013); *see also Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*, 134 F. Supp. 2d 528, 530 (S.D.N.Y. 2001) (party has standing to challenge non-party subpoena seeking information about its activities).

A.    **The Subpoenas Violate The Federal Rules By Demanding Discovery Concerning Hundreds Of Separate Entities**

NML's Subpoenas fail to satisfy the threshold requirements imposed by Rule 26, which limits discovery to "any nonprivileged matter that is *relevant* to any party's claim or defense," Fed. R. Civ. P. 26(b)(1) (emphasis added), and Rule 69, which provides that discovery in post-judgment proceedings is limited to the judgment debtor's assets, Fed. R. Civ. P. 69(a)(2)

("[*i*]*n aid of the judgment or execution*, the judgment creditor . . . may obtain discovery . . .  as provided in these rules or by the procedure of the state where the court is located") (emphasis added); *see also EM Ltd.*, 695 F.3d  at 207 (allowing discovery of "information pertaining to the *judgment debtor's* assets") (emphasis added).  The Subpoenas, which include no discernible limiting principle, further violate the Federal Rules in that they are neither prudential nor proportionate.

   *First*, the sheer scope of the Subpoenas' open-ended document requests, coupled with the fact that each request purports to apply to 392 entities included in the definition of "Argentina," makes them disproportionate and overbroad under any analysis.  The Subpoenas seek documents concerning, *inter alia*, "*all* property, assets or accounts" "of any type" as well as *all* documents concerning any transfer of property "to, from, or through accounts owned or controlled by Argentina."  *See* Citibank, N.A. Subpoena at 9, Request Nos. 1 and 2 (Ex. D) (emphasis added).  This is precisely the type of all-encompassing discovery this Court has previously denied.  *See, e.g.*, Hr'g Tr. at 52, *Seijas v. Republic of Argentina*, No. 04 Civ. 400 (TPG) (S.D.N.Y. Apr. 30, 2008) (the Court stating:  "I cannot just order a foreign country to give discovery willy-nilly.") (Ex. T).

   *Second*, the discovery demands have no geographical limitation whatsoever, thus presumably including even discovery concerning property in Argentina within their ambit.  *See* Citibank, N.A. Subpoena (Ex. D).  This is plainly improper and, as recently stated by this Court, runs afoul of the FSIA.  *Aurelius*, 2013 WL 857730, at *2 ("[D]iscovery should not be targeted to assets located in Argentina, as the FSIA would clearly not allow plaintiffs to seize these assets.").  Courts routinely prohibit asset discovery that fails to include reasonable limitations, including geographical restrictions, as overly broad.  *See, e.g., Wood v. Capital One Servs.*,

*LLC.*, No. 5:09 Civ. 1445 (NPM/DEP), 2011 WL 2154279, at *10 (N.D.N.Y. Apr. 15, 2011) (denying plaintiff's discovery request because it did not "place any limits, either geographically or temporally, on the information sought"); *Semtek Int'l Inc. v. Merkuriy Ltd.*, No. 3607 (DRH), 1996 WL 238538, at *3 (N.D.N.Y. May 1, 1996) (quashing a subpoena where the requests went "well beyond any reasonable attempt to identify assets").

  *Finally*, the overall breadth of NML's demands only underscores its "scattershot" approach to discovery, which is in no way proportionate and geared toward no assets in particular. *See Ayyash v. Koleilat*, 957 N.Y.S.2d 574, 580-82 (Sup. Ct. N.Y. Cnty. 2012) (noting "scattershot nature" of plaintiff's demands and rejecting worldwide discovery propounded on non-party banks). As the Court has recognized, where there is no basis to believe that discovery will lead to attachable assets, such discovery is improper. *See Aurelius*, 2013 WL 857730, at *3 ("As this court has previously stated, the discovery needs to be tailored to *seek only information regarding assets that could realistically be seized* by plaintiffs.") (emphasis added); *Rossini v. Republic of Argentina*, 453 F. App'x 22, 25 (2d Cir. 2011) (affirming the Court's denial of discovery); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) (same); *see also Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 796 (7th Cir. 2011), *cert denied*, 133 S. Ct. 23 (2012) ("Discovery orders that are broad in scope and thin in foundation" are improper).

  Accordingly, NML's demands, which encompass overbroad categories of information about hundreds of entities with no discernible limiting principle, utterly fail to meet the requirement that discovery be relevant to potentially attachable assets. Under these circumstances, the Subpoenas must be "vacated rather than pruned, as it is counsel's burden to draft and serve proper interrogatories and demands, and the courts will not correct palpably bad ones." *Aeron Aviation Corp. v. Chemco Int'l Leasing Inc.*, 498 N.Y.S.2d 49, 50 (2d Dep't

1986); *accord* Fed. R. Civ. P. 45 (c)(3)(A) (court "must quash" improper subpoena); *Bettan v. Geico Gen. Ins. Co.*, 745 N.Y.S.2d 545, 547 (2d Dep't 2002) ("The Supreme Court properly vacated the plaintiff's discovery notice, as most of the demands contained therein were palpably improper, in that they either sought irrelevant information, were vague, or were of an overbroad and burdensome nature."); *Editel v. Liberty Studios, Inc.*, 557 N.Y.S.2d 21, 22 (1st Dep't 1990) ("[A] substantial portion [of the document demands and interrogatories] is overbroad, burdensome, or calls for irrelevant materials or conclusions.  Under these circumstances, the remedy is not judicial pruning but vacatur of the entire demand and interrogatories."); *Lewis v. Hertz Corp.*, 597 N.Y.S.2d 368 (1st Dep't 1993) (same).

**B.      The Subpoenas Are Otherwise Improper And Contrary To Law**

The Subpoenas target dozens of juridically separate entities that plainly qualify as agencies or instrumentalities under Section 1603 of the FSIA and thus are entitled to a strong presumption of separateness, *see First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 624-27 (1983); *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 9 F. Supp. 2d 300, 305 (S.D.N.Y. 1998) ("[T]he presumption against breaching the corporate independence of government instrumentalities . . . should not be easily defeated."), including, *inter alia*, (1) Argentine companies in which the Republic holds an ownership interest and (2) Argentine companies in which the Republic is not even a shareholder at all.[7]  Further, the Subpoenas seek private financial information of indisputably separate individuals entitled to common law sovereign immunity and comity under both U.S. law and the most fundamental principles of international law, such as the Republic's President and Vice President.  *Samantar v.*

---

[7] This includes, *inter alia,* Polo Tecnológico Constituyente, Aerohanding [sic], DIOXITEK and Nación Factoring (entities in which the Republic does not have any equity interest).  *See* Citibank, N.A. Subpoena, Attachment B (Ex. D).

*Yousuf*, 130 S. Ct. 2278, 2285-93 (2010); *In re Papandreou*, 139 F.3d 247, 254 (D.C. Cir. 1998).

NML has failed to articulate any basis that would permit discovery of the assets or business

activities of these separate entities or individuals.  *See GMA Accessories, Inc. v. Electric*

*Wonderland, Inc.*, No. 07 Civ. 3219 (PKC) (DF), 2012 WL 1933558, at *5 (S.D.N.Y. May 22,

2012) (stating that post-judgment discovery concerning the assets of a non-party is not

contemplated by Rule 69(a)); *Uniden Corp. of Am. v. Duce Trading Co.*, No. 89-CV-0878E,

1993 WL 286102, at *1 (W.D.N.Y. Jul. 19, 1993) (noting that post-judgment discovery

concerning the assets of a non-party requires a "heightened showing of necessity and

relevance").

   Simply labeling hundreds of entities and individuals as "Argentina" is patently

insufficient to justify the expansive discovery that NML seeks here.  NML has failed to

demonstrate that *any* of these entities is liable for the debts of the Republic, under an "alter ego"

theory or otherwise.  NML's demand for discovery concerning these entities' assets without any

such showing fails the Federal Rules' basic relevancy requirements.  As Chief Magistrate Judge

Maria-Elena James of the District Court for the Central District of California correctly

recognized when denying NML's attempt to compel similar asset discovery from a third party

concerning the Republic's agency or instrumentality YPF (which NML includes here in its

definition of "Argentina"), before a judgment creditor is entitled to discovery on an alter ego

theory it must make a threshold showing by putting "facts before the Court to show the basis for

the allegation."  *NML Capital, Ltd. v. Republic of Argentina*, No. C 12-80185 JSW (MEJ), 2013

WL 655211, at *1 (N.D. Cal. Feb. 21, 2013), *objection filed* Mar. 7, 2013; *accord Costamar*

*Shipping Co. v. Kim-Sail, Ltd.*, No. 95 Civ. 3349 (KTD), 1995 WL 736907, at *3 (S.D.N.Y. Dec.

12, 1995) (denying asset discovery because "the mere allegation of an alter ego relationship is

insufficient; it must be supported by facts showing the basis for the assertion" and because "[non-parties] cannot be required to disclose their own assets"); *Olympic Chartering*, 134 F. Supp. 2d at 530 (rejecting jurisdictional discovery as to the Central Bank of Jordan ("CBJ") because the petitioner "made no allegation that CBJ is an alter ego of the judgment debtor"); *Strick Corp. v. Thai Teak Prods. Co.*, 493 F. Supp. 1210, 1218 (E.D. Pa. 1980) (rejecting alter ego discovery where "the [targeted third party's] only connection with the judgment debtor is the alleged alter ego relationship. *No facts are before the court to show the bases for this allegation.*") (emphasis added); *Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993) ("When the ground for the discovery is an alleged alter ego relationship with the judgment debtor, there *must be facts before the Court* to show the basis for the allegation.") (emphasis added); 6 James Wm. Moore et al., *Moore's Federal Practice* ¶ 69.04 (3d ed. 1999) ("If the judgment creditor fails to demonstrate a sufficient relationship between the judgment debtor and the third person as well as some additional justification . . . discovery readily will be denied."). The Subpoenas should be quashed for this reason alone.

Indeed, NML's list in Attachment B includes entities that have *already* been deemed by the Court to be separate from the Republic. *Compare* Citibank, N.A. Subpoena, Attachment B (Ex. D) (seeking information as to BNA, AR-SAT, ENARSA, and Aerolíneas Argentinas S.A.), *with Seijas v. Republic of Argentina*, No. 10 Civ. 4300 (TPG), 2011 WL 1137942 (S.D.N.Y. Mar. 28, 2011) (commercial bank BNA is not the Republic's alter ego); *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG), 2011 WL 1533072, at *5 (S.D.N.Y. Apr. 22, 2011) (majority-owned satellite company AR-SAT is not liable for the Republic's debts); *NML Capital, Ltd. v. Republic of Argentina*, No. 09 Civ. 7013 (TPG), 2011

11

WL 524433 (S.D.N.Y. Feb. 15, 2011) (majority-owned energy company ENARSA is not an alter

ego of the Republic); *NML Capital, Ltd. v. Republic of Argentina*, 892 F. Supp. 2d 530

(S.D.N.Y. 2012) (ENARSA is not otherwise a "part of" the Republic or liable for its debts);

Order, *Seijas v. Republic of Argentina*, No. 04 Civ. 400 (TPG) (S.D.N.Y. Aug. 19, 2009)

(majority-owned airline Aerolíneas Argentinas is not liable for the Republic's debts) (Ex. R).

Such far-reaching discovery concerning assets of these entities, which are entitled to sovereign

immunity in their own right, *see* 28 U.S.C. § 1603, cannot, as a matter of law, lead to the

attachment of Republic assets, and thus is plainly improper.

That the Subpoenas are not properly tailored, and thus violate the clear directive

of this Court, *see Aurelius*, 2013 WL 857730, at *3,  is made even clearer by the fact that they

target the assets and activities of BCRA, the Central Bank of the Republic.  *See* Citibank, N.A.

Subpoena, Attachment B (listing BCRA in the definition of "Argentina") (Ex. D).  The Second

Circuit, relying on Section 1611(b)(1) of the FSIA, which provides specific protection for

foreign central bank property, has now twice *rejected* NML's improper attachments of BCRA's

reserves at the Federal Reserve Bank of New York, holding in the second case that even if NML

could prove an alter ego relationship, that would not vitiate those statutory protections.  *See NML*

*Capital, Ltd. v. Banco Central De La República Argentina*, 652 F.3d 172, 188 (2d Cir. 2011),

*cert denied*, 133 S. Ct. 23 (2012) ("[F]oreign central banks are not treated as generic 'agencies

and instrumentalities' of a foreign state under the FSIA; they are given 'special protections'

befitting the particular sovereign interest in preventing the attachment and execution of central

bank property); *id.* at 187-88 ("§ 1611(b)(1) immunizes property of a foreign central bank or

monetary authority held for its own account without regard to whether the bank or authority is

independent from its parent state");[8] *EM Ltd.*, 473 F.3d at 485 ("Section 1611(b)(1) provides a central bank with special protections from a judgment creditor").

The United States is not alone in recognizing the immunity of foreign central bank property. *See, e.g.*, State Immunity Act, 1978, c. 33, §14(4) (Eng.), *reprinted in* 17 I.L.M. 1123 (1978) ("Property of a State's central bank . . . shall not be regarded…as in use or intended for use for commercial purposes"); United Nations Convention on Jurisdictional Immunities of States and Their Property (the "2004 UN Convention"), Annex Art. 21(1)(c), U.N. Doc. A/RES/59/38 (Dec. 2, 2004) (exempting central bank property of a state from enforcement measures).[9]  Because BCRA's assets enjoy immunity from attachment and execution, any discovery as to BCRA, either in the United States or abroad, would not only be improper as a matter of law, but futile harassment.  *See Aurelius*, 2013 WL 857730, at *3 (discovery should only target information about assets that can plausibly be seized).

## POINT II

## THE SUBPOENAS VIOLATE SETTLED PRINCIPLES OF INTERNATIONAL LAW AND THE FSIA

The Subpoenas, to the extent they purport to target information about diplomatic or military property or activities, also should be quashed as violative of international law,

---

[8] A plaintiff maintains the ability to "rebut [the presumption of immunity] by demonstrating *with specificity* that the funds are not being used for central banking functions as such functions are normally understood . . . ."  *NML*, 652 F.3d at 194 (emphasis added) – showings NML has not even attempted to make here.

[9] The 2004 UN Convention, although not yet in force, codifies existing international custom, representing "*the culmination of over a century's practice*," *see* Xiaodong Yang, STATE IMMUNITY  IN INTERNATIONAL LAW 35 (Cambridge University Press 2012) (emphasis added), which "even unratified . . . is likely to consolidate the customary status of its rules on immunity."  Hazel Fox, *In Defence of State Immunity: Why the UN Convention on State Immunity Is Important*, 55 INT'L & COMP. L.Q. 399, 405 (2006).

including the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500

U.N.T.S. 9 (the "VCDR"), as well as the FSIA.

A.    **The VCDR Prohibits Attachment And Discovery Of Assets Of Diplomatic Missions And Embassies**

To the extent the Subpoenas seek information concerning all property and

transfers of various Argentine diplomatic entities, and in particular the Ministry of Foreign

Affairs, NML's discovery demands are barred by the VCDR.  The Ministry of Foreign Affairs is

tasked with overseeing all matters related to the foreign relations of the Republic, including its

missions in foreign jurisdictions and other international organizations.  *See* Law No. 26,338, Art.

18 (Ex. U).  The VCDR expressly prohibits enforcement processes directed at such entities,

including discovery and attachment, by placing various obligations on all state parties to the

treaty, including according "full facilities for the performance of functions of the mission,"

VCDR Art. 25, and providing immunity from civil and administrative jurisdiction to diplomatic

agents and to administrative or technical staff, *id.* at Art. 31, 37.

The VCDR further provides that archives, documents, and correspondence of

diplomatic missions or embassies are "inviolable."  *Id.* at Art. 24, 27.  As a result of these and

other provisions, numerous courts have recognized that diplomatic missions and embassies are

immune from process.  *See, e.g.*, *767 Third Ave. Assocs. v. Permanent Mission of the Republic of

Zaire*, 988 F.2d 295, 300 (2d Cir. 1993) (VCDR "was intended to and did provide for the

inviolability of mission premises, archives documents, and official correspondence," and

"recognized no exceptions to mission inviolability");[10] *Avelar v. J. Cotoia Constr., Inc.*, No. 11-

---

[10] The Second Circuit noted in *767 Third Avenue* that various other treaties, including the United Nations Charter, the Agreement Between the United Nations and the United States of America Regarding the Headquarters of the United Nations, and the Convention on the Privileges and Immunities of the United Nations all "support the notion that the United States and the United Nations recognize extensive immunity and independence for diplomats, consulates and missions abroad."  988 F.2d at 298.

CV-2172, 2011 WL 5245206, at *4 (E.D.N.Y. Nov. 2, 2011) ("Bank accounts used by the

mission for diplomatic purposes are immune from execution under [Article 25], as facilities

necessary for the mission to function."); *Sales v. Republic of Uganda*, No. 90 Civ. 3972 (CSH),

1993 WL 437762, at *1 (S.D.N.Y. Oct. 23, 1993) (same); *Vulcan Iron Works, Inc. v. Polish Am.*

*Mach. Corp.*, 472 F. Supp. 77, 79-80 (S.D.N.Y. 1979) (VCDR excuses staff's failure to appear at

depositions); *cf. Liberian E. Timber Corp.*, *v. Republic of Liberia*, 659 F. Supp. 606, 610 n.5

(D.D.C. 1987) (obtaining discovery regarding diplomatic accounts would be "a difficult task at

best").  The United States Government, whose "interpretation of a treaty 'is entitled to great

weight,'" *Abbot v. Abbot*, 130 S. Ct. 1983, 1993 (2010), has similarly taken the position that the

VCDR bars attachment and discovery of the assets of diplomatic missions and embassies.  *See*

Brief of the United States as *Amicus Curiae* in Support of Reversal at 3, 13-14, *Thai-Lao Lignite*

*(Thailand) Co. Ltd., v. Gov't of the Lao People's Democratic Republic*, No. 13-495-cv(L) (2d

Cir. May 20, 2013) ("Thai-Lao Amicus") (Ex. A); *see also id.* at 20 (explaining that "the

expression 'inviolable' was deliberately chosen by the International Law Commission to convey

both that the receiving State must abstain from any interference through its own authorities and

that it owes a duty of protection of the archives in respect of unauthorized interference . . . by

others.") (internal quotation marks omitted).

   That NML has served its Subpoenas on third parties rather than the Republic itself

does not, and cannot, negate the widely-recognized obligations set forth in the VCDR.  United

States law dictates that the protections noted above must be afforded embassies and missions, as

well as their personnel, records, and correspondence.  The intrusive discovery NML demands

here is an obvious attempt to make an end-run around these explicit restrictions.  And in any

---

Additionally, The Vienna Convention on Consular Relations, to which 175 countries are a party, *see*
Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261, provides
protections for consulates similar to those afforded missions and embassies in the VCDR.

event, the case law is clear that the VCDR immunizes diplomatic property, *see Avelar*, 2011 WL 5245206, at *4, and thus the Subpoenas are plainly not tailored to seek only that information that will lead to attachable assets, *see, e.g.*, *Aurelius*, 2013 WL 857730, at *1.

   The same is true with regard to the Subpoenas' demands for information concerning diplomatic property and transfers wherever located throughout the world.  188 nations are parties to the VCDR.  *See* United Nations Treaty Collection, http://treaties.un.org/ pages/ViewDetails.aspx?src=TREATY&mtdsg_no=III-3&chapter=3&lang=en.  As explained by the International Court of Justice, the VCDR and the Vienna Convention on Consular Relations codify "the law of diplomatic and consular relations" and reflect "principles and rules essential for the maintenance of peaceful relations between States and accepted throughout the world." *See United States Diplomatic and Consular Staff in Tehran (United States v. Iran)* at 24, 1980 I.C.J. 3 (May 24) (Ex. W).  The requests are thus also an end-run around the VCDR as applied to the Republic's diplomatic missions and embassies in each of its 188 member countries, particularly where discovery of such entities could not lead to the attachment of diplomatic assets in these nations in any event.  Indeed, every attempt by NML to attach diplomatic property in a foreign jurisdiction has been rejected, including for violating the VCDR and customary international law.  *See, e.g.*, *Republic of Argentina v. NML Capital, Ltd.*, Cour de Cassation [Cass.] [Belgian Court of Cassation] Brussels, Nov. 22, 2012, No. C.11.0688.F (Belg.) (Ex. O); *NML Capital, Ltd. v. Republic of Argentina*, Cour d'appel [CA] [regional court of appeal] Paris, 4e pôle 8e ch., Oct. 1, 2009, No. 09/14114 (Fr.) (Ex. Q), *aff'd* on grounds of customary international law, *NML v. Republic of Argentina*, Cour de Cassation [Cass.] [Supreme Court for Judicial Matters] 1e ch., Sept. 28, 2011(Fr.) (Ex. P); *Lydia Scheck v. Republic of Argentina,* Bundesverfaussungsgericht [BVerfG] [Federal Constitutional Court] Dec. 6, 2006, No. 2 BvM

16

9/03 (Ger.) (Ex. V).  NML's inclusion of diplomatic entities in its Subpoenas plainly fails to

properly limit its discovery demands to anything that could reasonably lead to the attachment of

Republic assets.

**B.      The Subpoenas Target Military Property In Violation Of The FSIA And
International Law**

The Subpoenas must also be quashed because they run afoul of the FSIA and

international law by seeking disclosure concerning the property of military entities, including the

Joint Chief of Staff of the Armed Forces, which oversees all Argentine military activity.  The

FSIA specifically provides for the immunity of military property, stating that the property of a

foreign state is immune from attachment and execution if it "is, or is intended to be, used in

connection with a military activity and (A) is of a military character, or (B) is under the control

of a military authority or defense agency."  28 U.S.C. § 1611(b)(2).  By targeting such military

entities, the Subpoenas not only plainly violate the FSIA and could not lead to attachable assets

here, but undermine the express purpose of the military exemption, which aims to "avoid the

possibility that a foreign state might permit execution on military property of the United States

abroad under a reciprocal application of the [FSIA]."  H.R. Rep. No. 94-1487 (1976), at 31,

*reprinted in* 1976 U.S.C.C.A.N. at 6630.

Recognized principles of international law provide further protections from

creditor process for the military property of sovereign nations, reflecting the widely-held view

that special immunity be afforded such property.  *See, e.g.*, International Law Association,

*Report of the Sixty-Sixth Conference held at Buenos Aires* at 493, August 14-20, 1994

(attachment or execution shall not be permitted if the property of a sovereign is of a military

character or used or intended for use for military purposes); *Scheck,* No. 2 BvM 9/03, at *20

(recognizing special status of "government vessels and aircraft or material of the armed forces"

under public international law) (Ex. V); *Colella v. Republic of Argentina*, No. 07 Civ. 80084

(WHA), 2007 WL 1545204, at *7-8 (N.D. Cal. May 29, 2007) (rejecting attempt to attach the

Republic's presidential aircraft because, *inter alia*, it was military property).  The 2004 UN

Convention, reflecting customary international law, expressly provides immunity for sovereign

"property of a military character or used or intended for use in the performance of military

functions."  2004 UN Convention Art. 21(b); *see also*, , United Nations Convention on the Law

of the Sea Art. 29, 32, Dec. 10, 1982, 1833 U.N.T.S. 3 (providing immunity for ships belonging

to a nation's armed forces).  In light of these special protections, NML's discovery demands

cannot, in any sense, be relevant to attachable assets.  *See Aurelius Capital Partners v. Republic

of Argentina*, No. 07 Civ. 2715 (TPG), 2013 WL 857730, at *3 (S.D.N.Y. Mar. 7, 2013).

**C.     The Subpoenas Further Violate The FSIA By Requiring Disclosure Concerning
        Property Categorically Immune From Execution**

As set forth in the Republic's briefing before the Second Circuit in *EM Ltd. v.

Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012), the FSIA requires that discovery be tailored

to verify allegations of specific facts crucial to an immunity determination, and prohibits

discovery requests that seek information concerning property of a sovereign that is categorically

immune from execution.  *See generally* Brief of the Republic of Argentina, *NML Capital, Ltd. v.

Republic of Argentina*, No. 11-4065-cv (2d Cir. Nov. 18, 2011); Reply Brief of the Republic of

Argentina, *NML Capital, Ltd. v. Republic of Argentina*, No. 11-4065-cv (2d Cir. Dec. 13, 2011);

Petition for Rehearing En Banc of the Republic of Argentina, *NML Capital, Ltd. v. Republic of

Argentina*, No. 11-4065-cv (2d Cir. Sept. 4, 2012).  The Subpoenas violate each of these

requirements.  In light of the Court's prior rejection of the FSIA's application to discovery

requests, the Republic briefly summarizes why the FSIA governs discovery in aid of a judgment

against a foreign sovereign and bars the Subpoenas here, and incorporates its more fulsome

arguments before the Second Circuit in *EM Ltd.* and its certiorari petition so as to preserve its arguments and objections.

*First*, discovery is not a freestanding right belonging to a party, but rather requires the exercise of judicial power, governed by federal statute. *See* Fed. R. Civ. P. 69(a)(1) ("proceedings supplementary to and in aid of judgment or execution" governed by a federal statute to the extent it applies); *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 205 (2d Cir. 2012) (authority to grant post-judgment discovery derives from authority to conduct supplementary proceedings). Because the FSIA is the sole basis for obtaining and enforcing a judgment against a foreign sovereign, *see Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989), the FSIA, and specifically Sections 1609-1611, is the governing statute for all post-judgment proceedings against a foreign sovereign, including discovery.

*Second*, whether discovery is "[i]n aid of the judgment or execution," Fed. R. Civ. P. 69(a)(2), or "relevant" to the satisfaction of the judgment, Fed. R. Civ. P. 26(b)(1), is necessarily determined by what assets may eventually be subject to execution. In the United States, a court's jurisdiction over property of a foreign state is indisputably restricted by the FSIA. *See, e.g.*, *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 287 (2d Cir. 2011). It would be anomalous to conclude that discovery ordered by a federal court in New York is more limited with regard to assets located in the United States than assets located extraterritorially. Such a conclusion is in fact squarely foreclosed by binding precedent of the United States Supreme Court, which requires courts to apply a presumption against the extraterritorial reach of statutes unless Congress explicitly provided otherwise. *See Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877, 2881 (2010); *Kiobel v. Royal Dutch Petroleum*,

133 S. Ct. 1659, 1664 (2013); *see also Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 750 (7th Cir. 2007).

*Third*, *EM Ltd.* rested on the erroneous proposition that subpoenas directed to third parties do not implicate the FSIA because their "compliance with subpoenas will cause Argentina no burden and no expense."  695 F.3d at 210.  But the Subpoenas will undoubtedly subject the Republic to the intrusive inquiries that the FSIA was enacted to prevent, *see Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 796-97 (7th Cir. 2011); *Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*, 134 F. Supp. 2d 528, 530 (S.D.N.Y. 2001) (FSIA "immunity provides protection from . . . the burdens of discovery."), as well as to myriad costs, such as the baseless *ex parte* attachment orders obtained in Switzerland on diplomatic bank accounts, which the Swiss Court later vacated.  Moreover, sovereign immunity inheres in the property itself.  *Walters*, 651 F.3d at 292; *see also, Rubin*, 637 F.3d at 799.  It is the sovereign nature of foreign state property and its use that provide immunity, *not* what entity is served with discovery or even who raises the immunity claim.

Based on the above, "the FSIA plainly applies [to] and limits the discovery process" in post-judgment enforcement proceedings against a foreign sovereign.  *Rubin*, 637 F.3d at 795.  A court's authority to order such discovery is therefore circumscribed by Section 1610 to property of the sovereign located "in the United States" and "used for a commercial activity" here.  *See* 28 U.S.C. §§ 1609, 1610(a); H.R. Rep. No. 94-1487, at 28 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6627 ("The term 'attachment in aid of execution' [in § 1610(a)] is intended to include attachments, garnishments, and supplemental proceedings available under applicable Federal or State law to obtain satisfaction of a judgment.  See Rule 69, Fed. R. Civ. P.").  By demanding information concerning (1) purported sovereign assets located outside the

United States, (2) assets for which there has been *no* showing of commercial use in the United States, and (3) assets *not* of the Republic (*see* Point I, *supra*), NML's Subpoenas violate the FSIA.

The Republic's position on sovereign discovery is fully consistent with United States policy, which the Government has reiterated in numerous filings as *amicus curiae* throughout the country, including as recently as last week.  *See, e.g.*, Thai-Lao Amicus at 11, n.3 ("[B]efore discovery is permitted against a foreign state, the court should require the judgment creditor to demonstrate that the proposed discovery is directed toward assets for which there is a reasonable basis to believe that an exception to immunity applies.") (Ex. A); Brief of the United States as *Amicus Curiae* at 11, *Rubin v. Islamic Republic of Iran*, No. 11-431, 2012 WL 1891593 (May 25, 2012) ("To permit burdensome discovery into a foreign state's property without regard to whether that property might fall within an exception to immunity would vitiate the FSIA's protections"); Brief of the United States as *Amicus Curiae* in Support of Affirmance at 24 n.5, *Peterson v. Islamic Republic of Iran*, No. 08-17756 (9th. Cir. June 25, 2009) ("It is one thing for a U.S. court to order discovery for the purpose of enforcing U.S. regulatory norms that are intended by Congress to apply to conduct abroad, but quite another to order worldwide discovery in an effort to further the enforcement in a foreign court of a private litigant's civil judgment.") (Ex. S).

The Republic thus expressly preserves all arguments and objections here concerning the FSIA's limitations on NML's asset discovery demands.

## CONCLUSION

For the foregoing reasons, the Court should grant the Republic's motion to quash the Subpoenas directed to the Non-Party Banks.

Dated:  New York, New York
        June 17, 2013

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:   ____/s/ Carmine Boccuzzi_____
     Jonathan I. Blackman (jblackman@cgsh.com)
     Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, NY 10006
(212) 225-2000

Attorneys for the Republic of Argentina