# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

LAURENT ALPERT
VICTOR I LEWKOW
LESLIE N SILVERMAN
ROBERT L TORTORIELLO
LEE C BUCHHEIT
JAMES M PEASLEE
ALAN L BELLER
THOMAS J MOLONEY
JONATHAN I BLACKMAN
MICHAEL L RYAN
ROBERT P DAVIS
YARON Z REICH
RICHARD S LINCER
JAIME A EL KOURY
STEVEN G HOROWITZ
JAMES A DUNCAN
STEVEN M LOEB
CRAIG B BROD
MITCHELL A LOWENTHAL
EDWARD J ROSEN
LAWRENCE B FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E AUSTIN
SETH GROSSHANDLER
WILLIAM A GROLL
HOWARD S ZELBO
DAVID E BRODSKY
MICHAEL R LAZERWITZ
ARTHUR H KOHN
RICHARD J COOPER
JEFFREY S LEWIS
FILIP MOERMAN
PAUL J SHIM
STEVEN L WILNER
ERIKA W NIJENHUIS
LINDSEE P GRANFIELD
ANDRES DE LA CRUZ
DAVID C LOPEZ

CARMEN A CORRALES
JAMES L BROMLEY
MICHAEL A GERSTENZANG
LEWIS J LIMAN
LEV L DASSIN
NEIL Q WHORISKEY
JORGE U JUANTORENA
MICHAEL D WEINBERGER
DAVID LEINWAND
JEFFREY A ROSENTHAL
ETHAN A KLINGSBERG
MICHAEL J VOLKOVITSCH
MICHAEL D DAYAN
CARMINE D BOCCUZZI JR
JEFFREY D KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J RAYMOND
LEONARD C JACOBY
SANDRA L FLOW
FRANCISCO L CESTERO
FRANCESCA L ODELL
WILLIAM L MCRAE
JASON FACTOR
MARGARET S PEPONIS
LISA M SCHWEITZER
JUAN G GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S PEACE
MEREDITH E KOTLER
CHANTAL E KORDULA
BENET J O'REILLY
DAVID AMAN
ADAM E FLEISHER
SEAN A O'NEAL
GLENN P MCGRORY
MATTHEW P SALERNO
MICHAEL J ALBANO
VICTOR L HOU

ROGER A COOPER
AMY R SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A BAREFOOT
PAMELA L MARCOGLIESE
PAUL M TIGER
JONATHAN S KOLODNER
   RESIDENT PARTNERS

SANDRA M ROCKS
S DOUGLAS BORISKY
JUDITH KASSEL
DAVID E WEBB
PENELOPE L CHRISTOPHOROU
BOAZ S MORAG
MARY E ALCOCK
DAVID H HERRINGTON
HEIDE H ILGENFRITZ
HUGH C CONROY JR
KATHLEEN M EMBERGER
WALLACE L LARSON JR
JAMES D SMALL
AVRAM E LUFT
DANIEL ILAN
ANDREW WEAVER
HELENA K GRANNIS
GRANT M BINDER
MEYER H FEDIDA
CAROLINE F HAYDAY
JOHN V HARRISON
   RESIDENT COUNSEL

LOUISE M PARENT
   OF COUNSEL

June 23, 2014

BY HAND AND ECF

Honorable Thomas P. Griesa
United States District Court for
the Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *NML Capital, Ltd. v. Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG) and 09 Civ. 1708 (TPG); and related cases

Dear Judge Griesa:

I write to follow up on my report to the Court during last Wednesday's conference that the Republic of Argentina (the "Republic") is willing to negotiate in good faith. The Republic respectfully requests a stay of the Amended Injunctions to allow the Republic to engage in a dialogue with the plaintiffs in a reasonable timeframe for these kinds of negotiations.

The Republic has recently successfully settled major disputes, including the one with Repsol, which had a claim for $10 billion before ICSID for the expropriation of 51% of YPF S.A. shares, $9.7 billion in claims held by the nations that comprise the Paris Club, and hundreds of millions of dollars of ICSID arbitral awards. These recent settlements – which were the product of lengthy negotiations and resulted in necessary haircuts, maturity extensions, and interest rate reductions in line with the Republic's capacity to pay – were breakthroughs that reflect Argentina's focus on emerging from the crisis of 2001 and normalizing its relationship

with its creditors. These settlements were voluntary and, therefore, equitable for the parties involved. Argentina wants to emerge from the litigation that has burdened both it and the courts. Hence, the Republic respectfully requests that Your Honor stay the Amended Injunctions. A stay would provide shelter (a legal umbrella) for negotiations to take place in light of the legal and financial complexity inherent to the process.

The Second Circuit's decision requires Argentina, when it makes an interest payment on restructured debt, to pay full principal and interest to all holders of defaulted debt. The Republic cannot afford to do this, nor can it pay some creditors in full and not others. The total amount due to holdouts from the Republic's debt restructuring exceeds half the country's reserves. No country could pay half of its reserves, and Argentina cannot afford to be left without the means to manage its currency or handle the rest of its economy, including meeting the needs of its citizenry. Nor can Argentina ignore the Rights Upon Future Offers clause (the "RUFO" clause) governing its New York-law restructured debt, which expires on December 31, 2014, as it could give rise to litigation in other jurisdictions that could destroy the successful restructuring of 92% of the Republic's defaulted debt. *See* Exhibit A (example RUFO clause). Argentina is also subject, as a sovereign nation, to its own Constitutional processes and the laws concerning debt restructuring enacted by its Congress.

Argentina is therefore committed to engaging in a dialogue with plaintiffs that can lead to the resolution of this litigation, if the right circumstances for negotiation contemplating the interests of 100% of its creditors are established as the Republic requests here.

In sum, the Republic is committed to a dialogue that will be followed by what the Republic intends to be a resolution of this litigation and the entirety of its outstanding debt burden, which is a matter of public interest to all Argentine citizens. The Republic has honored its obligations, including to the restructured bondholders, and wants to continue doing so with 100% of its creditors. The Republic accordingly respectfully asks that Your Honor grant this stay to allow for the commencement of good faith negotiations between Argentina and its creditors.

Respectfully submitted,

Carmine D. Boccuzzi Jr.

cc: Counsel of Record (by email)

# Exhibit A

THIS GLOBAL SECURITY (THIS "SECURITY") IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF THE BANK OF NEW YORK DEPOSITARY (NOMINEES) LIMITED, AS NOMINEE OF THE COMMON DEPOSITARY FOR EUROCLEAR BANK S.A./N.V., AS OPERATOR OF THE EUROCLEAR SYSTEM ("EUROCLEAR") AND CLEARSTREAM BANKING, SOCIÉTÉ ANONYME ("CLEARSTREAM, LUXEMBOURG").  THIS SECURITY MAY NOT BE EXCHANGED, IN WHOLE OR IN PART FOR A SECURITY REGISTERED, AND NO TRANSFER OF THIS SECURITY IN WHOLE OR IN PART MAY BE REGISTERED, IN THE NAME OF ANY PERSON OTHER THAN THE COMMON DEPOSITARY OR A NOMINEE THEREOF, EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE.

REGISTERED GLOBAL SECURITY

No. 2

ISIN: XS0501194756
Common Code: 050119475

representing

U.S. Dollar-Denominated 8.28% Discount Bonds due 2033

Original Principal Amount U.S. $92,729,033.00

THE REPUBLIC OF ARGENTINA (the "Republic"), for value received, hereby promises to pay to The Bank of New York Depositary (Nominees) Limited or registered assigns, the Adjusted Principal Amount (as defined below) hereof, in twenty semi-annual installments on June 30 and December 31 of each year commencing on June 30, 2024 (each such date, a "Principal Payment Date").  The amount of each such principal payment shall equal the Adjusted Principal Amount of this Security outstanding as of any such Principal Payment Date, divided by the number of principal installments from and including such Principal Payment Date to and including December 31, 2033.

The Republic further unconditionally promises to pay interest at the rate of 8.28% per annum on the Adjusted Principal Amount of this Security outstanding from time to time, which interest shall accrue from and including the most recent date to which interest has been paid, capitalized or duly provided for, or, if no interest has been paid, capitalized or duly provided for, from and including December 31, 2009 to, but excluding, the date on which payment of said principal sum has been made or duly provided for.

Interest shall be payable in arrears on each June 30 and December 31 of each year (each such date, an "Interest Payment Date") commencing on June 30, 2010; *provided* that (i) interest payable in cash for the period from and including December 31, 2009 to but excluding June 30, 2010 shall be payable on September 24, 2010 and (ii) interest for the period from and including June 30, 2010 to but excluding December 31, 2010 shall be payable on the second Interest

any) or interest on, any such Performing Public External Indebtedness having an aggregate principal amount of U.S. $30,000,000 (or its equivalent in other currencies) or more, shall occur when and as the same shall become due and payable, if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(iv)   Moratorium: a moratorium on the payment of principal of, or interest on, the Performing Public External Indebtedness of the Republic shall be declared by the Republic; or

(v)   Validity: the validity of the Securities shall be contested by the Republic.

(b)   Upon the occurrence and during the continuance of an Event of Default, the Holders of at least 25% in aggregate principal amount of the Securities then Outstanding may by written notice given to the Republic (with a copy to the Trustee) declare the Securities to be immediately due and payable; and upon such declaration the principal amount of the Securities and the accrued interest on the Securities will become immediately due and payable upon the date that such written notice is received at the office of the Trustee, unless prior to such date all Events of Default in respect of the Securities have been cured. Notwithstanding the foregoing, in the case of an Event of Default specified in clauses (ii) or (v) of Paragraph 5(a), the principal amount of and the accrued interest on the Securities may only be declared immediately due and payable if such event is materially prejudicial to the interests of the Holders of the Securities. The right to give such acceleration notice will terminate if the event giving rise to such right has been cured before such right is exercised. Holders holding in the aggregate at least 50% in principal amount of the then Outstanding Securities may waive any existing defaults, and rescind or annul any notice of acceleration, on behalf of all Holders of Securities, if (A) following the declaration of the Securities due and payable immediately, the Republic has deposited with the Trustee an amount sufficient to pay all overdue installments of principal, interest and Additional Amounts in respect of the Securities (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal of each of the Securities at the rate of interest applicable thereto, to the date of such payment) as well as the reasonable fees and compensation of the Trustee; and (B) all other Events of Default have been remedied. In the event of a declaration of acceleration because of an Event of Default set forth in clause (iii) of Paragraph 5(a), such declaration of acceleration shall be automatically rescinded and annulled if the event triggering such Event of Default pursuant to such clause (iii) shall be remedied, cured or waived by the holders of the relevant indebtedness, within 60 days after such event.

(c)   Upon the occurrence of an Event of Default under Paragraph 5(a), the Republic shall give written notice promptly after becoming aware thereof to the Trustee. Within 15 days after becoming aware of the occurrence of an event which with the giving of notice or lapse of time or both would, unless remedied, cured or waived, become an Event of Default under Paragraph 5(a), the Republic shall give written notice thereof to the Trustee.

6.   <u>Rights upon Future Offers</u>. (a) Subject to Paragraph 6(b) below, if at any time on or prior to December 31, 2014, the Republic voluntarily makes an offer to purchase or exchange (a "<u>Future Exchange Offer</u>"), or solicits consents to amend (a "<u>Future Amendment Process</u>"), any outstanding securities of the Republic listed in Schedule B hereto ("<u>Non-Performing Securities</u>"), other than any Future Exchange Offer or Future Amendment Process on terms

substantially the same as, or less favorable than, the Republic's April 30, 2010 invitation to holders of certain eligible securities to exchange such eligible securities for certain new securities (the "2010 Exchange Offer"), each Holder of Securities shall have the right, for a period of 30 calendar days following the announcement of any such Future Exchange Offer or Future Amendment Process, to exchange any of such Holder's Securities for (as applicable):

   (i) the consideration in cash or in kind received by holders of Non-Performing Securities in connection with any such Future Exchange Offer, or

   (ii) debt obligations having terms substantially the same as those resulting from any such Future Amendment Process,

in each case in accordance with the terms and conditions of such Future Exchange Offer or Future Amendment Process. For purposes of receiving the consideration or debt obligations specified in clauses (i) and (ii) above, each such Holder's Securities shall be treated as though they were Non-Performing Securities (x) denominated in the same currency as such Securities, and (y) that had a principal amount outstanding as of December 31, 2001, together with any accrued and unpaid interest up to by excluding December 31, 2001, equal to the outstanding principal amount of such Securities (calculated without giving effect to any Capitalization Amounts or Exchange Capitalization Amount) multiplied by 2.96735905. The Republic covenants and agrees to take all steps necessary, including making any required filings with regulatory authorities, in order to enable Holders to participate in any Future Exchange Offer or Future Amendment Process as provided in this Paragraph 6.

   (b) Each Holder's right to participate in any Future Exchange Offer or Future Amendment Process as provided in Paragraph 6(a), and the Republic's obligation to take all actions necessary to enable such participation, shall be conditioned upon such Holder (i) surrendering to the Trustee, for cancellation, a principal amount of the Republic's U.S. Dollar-Denominated 8.75% Global Bonds due 2017, ISIN XS0501195480 (the "2017 Globals") equal to the principal amount of 2017 Globals originally issued together with the principal amount of Securities such holder wishes to exchange and (ii) either (A) surrendering to the Trustee, for cancellation, GDP-linked Securities in a notional amount equal to (x) the principal amount of the Securities (calculated without giving effect to any Capitalization Amounts or Exchange Capitalization Amount) such Holder wishes to exchange pursuant to or in connection with such Future Exchange Offer or Future Amendment Process, multiplied by (y) 2.96735905; or (B) paying cash to the Republic in an amount equal to the market price of such GDP-linked Securities calculated on the Market Observation Date (as defined below) that is at least one month before but closest to the announcement of such Future Exchange Offer or Future Amendment Process, as the case may be; *provided* that, with respect to clause (b)(ii)(B) above, the Holder may pay such cash to the Republic in lieu of surrendering to the Trustee the GDP-linked Securities specified in clause (b)(ii)(A) above, only if an active trading market and published secondary market price quotations exist for GDP-linked Securities. "Market Observation Date" means, in respect of any GDP-linked Securities, the last day of each month, as of which dates the Trustee shall calculate the market price of such GDP-linked Securities for purposes of this Paragraph 6(b)(ii). "GDP-Linked Securities" means, for purposes of this Paragraph 6(b), U.S. Dollar-Denominated GDP-Linked Securities governed by New York law issued by the Republic (ISIN US040114GM64 or ISIN XS0501197262).

COPY