UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NML CAPITAL, LTD.

                                    Plaintiff,

        -against-

THE REPUBLIC OF ARGENTINA,

                                    Defendant.

08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

---

AURELIUS CAPITAL MASTER, LTD. And
ACP MASTER, LTD.,

                                    Plaintiffs,

        -against-

THE REPUBLIC OF ARGENTINA,

                                    Defendant.

09 Civ. 8757 (TPG)
09 Civ. 10620 (TPG)

---

AURELIUS OPPORTUNITIES FUND II, LLC
and AURELIUS CAPITAL MASTER, LTD.,

                                    Plaintiffs,

        -against-

THE REPUBLIC OF ARGENTINA,

                                    Defendant.

10 Civ. 1602 (TPG)
10 Civ. 3507 (TPG)
10 Civ. 3970 (TPG)
10 Civ. 8339 (TPG)

*(captions continue on following page)*

---

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES EURO BONDHOLDERS'
EMERGENCY MOTION FOR CLARIFICATION**

BLUE ANGEL CAPITAL I LLC,

                       Plaintiff,

  -against-

THE REPUBLIC OF ARGENTINA,

                       Defendant.

10 Civ. 4101 (TPG)
10 Civ. 4782 (TPG)

---

OLIFANT FUND, LTD.,

                       Plaintiff,

  -against-

THE REPUBLIC OF ARGENTINA,

                       Defendant.

10 Civ. 9587 (TPG)

---

PABLO ALBERTO VARELA, et al.,

                       Plaintiff,

  -against-

THE REPUBLIC OF ARGENTINA,

                       Defendant.

10 Civ. 5338 (TPG)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .....................................................................................................................5

I.    THE FOREIGN THIRD PARTIES THAT PROCESS PAYMENTS ON THE
      EURO BONDS ARE BEYOND THE JURISDICTION OF U.S. COURTS.....................9

II.   THE FOREIGN THIRD PARTIES THAT PROCESS PAYMENTS ON THE
      EURO BONDS CANNOT COMPLY WITH THE INJUNCTIONS UNDER
      FOREIGN LAW ...........................................................................................................14

CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aurelius Capital Partners, LP v. Republic of Argentina*,
  No. 07 Civ. 2715, 2010 WL 768874 (S.D.N.Y. Mar. 5, 2010) .................................................. 13

*Canterbury Belts, Ltd. v. Lane Walker Rudkin, Ltd.*,
  869 F.2d 34 (2d Cir. 1989) ........................................................................................................ 12

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ................................................................................................ 3, 9, 10, 17

*Dow Jones & Co., Inc. v. Harrods*,
  237 F. Supp. 2d at 413 ............................................................................................................... 15

*Dunlop Tires Operations, S. A. v. Brown*,
  131 S. Ct. 2846 (2011) ................................................................................................................ 3

*Hilao v. Estate of Marcos (In re: Estate of Marcos Human Rights Litig.)*,
  94 F.3d 539 (9th Cir. 1996) ....................................................................................................... 12

*In re Sealed Case*,
  825 F.2d 494 (D.C. Cir. 1987) ................................................................................................... 14

*Laker Airways, Ltd. v. Sabena, Belgian World Airlines*,
  731 F.2d 909 (D.C. Cir. 1984) ................................................................................................... 12

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) ........................................................................................................ 13

*Motorola Credit Corp. v. Uzan*,
  388 F.3d 39 (2d Cir. 2004) ........................................................................................................ 14

*Motorola Credit Corp. v. Uzan*,
  288 F.Supp.2d 558 (S.D.N.Y. 2003) ......................................................................................... 13

*National Union Fire Insurance Company of Pittsburgh, Pa. v. Advanced Employment Concepts, Inc.*,
  269 A.D.2d 101 (1st Dep't 2000) .............................................................................................. 13

*Nguyen Thang Loi v. Dow Chem. Co. (In re Agent Orange Prod. Liab. Litig.)*,
  373 F. Supp. 2d 7 (E.D.N.Y. 2005) ........................................................................................... 14

*NML Capital Ltd. v. Republic of Argentina*,
  699 F.3d 246 (2d Cir. 2012) ........................................................................................................ 6

*NML Capital Ltd. v. Republic of Argentina*,
    727 F.3d 230 (2d Cir. 2013) ................................................................... 1, 2, 4, 8, 12

*Perkins v. Benguet Consol. Mining Co.*,
    342 U. S. 437 (1952) ........................................................................................... 9

*Reebok Int'l v. McLaughlin*,
    49 F.3d 1387 (9th Cir. 1995) .................................................................. 14, 15, 16

*Regal Knitwear Co. v. N.L.R.B.*,
    324 U.S. 9 (1945) ................................................................................................ 4

*Seijas v. Republic of Argentina*,
    No. 04 Civ. 400 (TPG) (S.D.N.Y. Apr. 30, 2008) ................................................ 7

*Sonera Holding B.V. v. Cukurova Holding A.S*,
    2014 U.S. App. LEXIS 7809 (2d Cir. Apr. 25, 2014) ..................................... 10, 17

*United States v. Davis*,
    767 F.2d 1025 (2d Cir. 1985) ............................................................................ 11

*Vanity Fair Mills, Inc. v. T. Eaton Co.*,
    234 F.2d 633 (2d Cir. 1956) .............................................................................. 14

## OTHER AUTHORITIES

11A C. Wright & A. Miller, Federal Practice and Procedure § 2960 ........................... 12

## RULES

Fed. R. Civ. P. 65 ................................................................................................... 1, 4

Fed. R. Civ. P. 65(d) ................................................................................................ 12

Fed. R. Civ. P. 65(d)(2) .............................................................................. 2, 11, 13, 16

The Euro Bondholders,[1] interested non-parties, respectfully submit this memorandum of law in support of their emergency motion for clarification regarding the application of this Court's November 21, 2012 injunctions ("Injunctions") to the Euro Bonds (as defined below).  In those Orders, this Court stated that any non-party that requires clarification regarding the scope of the Injunctions may make an application and "[s]uch clarification will be promptly provided." Injunctions at 6-7 [Dkt. No. 425].  Similarly, the Second Circuit instructed that "when questions arise as to who is bound by an injunction though operation of Rule 65, district courts will not 'withhold a clarification in the light of a concrete situation' . . . [and] [t]he doors of the district court obviously remain open for such applications."  *NML Capital Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013) ("*NML II*").[2]

## PRELIMINARY STATEMENT

The Euro Bondholders are a group of investors that hold euro-denominated bonds ("Euro Bonds") issued by the Republic of Argentina (the "Republic") pursuant to a June 2, 2005 Indenture, as supplemented on April 30, 2010 ("Indenture").  The Euro Bonds are governed by the laws of England and Wales, and the they are paid in euro, by foreign entities that are outside of this Court's jurisdiction, and through a payment process that does not flow through the U.S.

---

[1] The Euro Bondholders are Knighthead Capital Management, LLC, Redwood Capital Management, LLC, Perry Capital LLC, VR Global Partners, LP, Monarch Master Funding 2 (Luxembourg) S.à r.l., Silver Point Capital LP, QVT Fund IV LP, QVT Fund V LP, Quintessence Fund LP, and Centerbridge Partners LP (each on behalf of itself or one or more investment funds or accounts managed or advised by it).

[2] At a hearing on June 27, 2014, counsel for the Euro Bondholders briefly addressed certain of the issues raised by this motion.  Although the Court reiterated that Argentina is bound by the Injunctions, it noted that "there may be a need for a sort of special language in any order" regarding the foreign third parties that process payments on Euro Bonds. June 27, 2014 Hr. Transcript at 31.  The Euro Bondholders respectfully request such modification of the Injunctions through this motion.

At no point in the Euro Bonds' payment chain do funds comprise U.S. dollars, enter the U.S., or flow through U.S. entities.

Relying on plaintiffs' inexact statements about the payment process for exchange bonds generally, this Court specifically named in the Injunctions certain foreign third parties that process payments on the Euro Bonds.  Since that time, however, clarifications to the factual record and intervening decisions of the U.S. Supreme Court and the U.S. Court of Appeals for the Second Circuit, make clear that the foreign third parties that process payments on the Euro Bonds cannot be bound either by the Injunctions themselves or pursuant to Rule 65(d)(2).

When issuing the Injunctions, this Court relied on plaintiffs' incorrect allegations to conclude that "[t]he process … involved in making payments on the Exchange Bonds" involved steps that "without question take[] place in the United States."  November 21, 2012 Order at 10 & n.2 [Dkt. No. 425].  Whether or not that is accurate with respect to the U.S. dollar-denominated bonds governed by New York law ("USD Bonds"), the payments on the English law-governed Euro Bonds do not touch the U.S. during the payment process.  As explained, *infra*, the undisputed record evidence establishes that the payment process for the Euro Bonds involves only foreign entities exchanging foreign currency on foreign soil.  As the Second Circuit itself recognized, if "the payment process for [the Euro Bonds] takes place entirely outside the United States, then the district court *misstated that . . . the Exchange Bond payment 'process, without question takes place in the United States.*'"  *NML II*, 727 F.3d at  244 (emphasis added).  That misstatement led this Court to specifically list parties outside its jurisdiction within the scope of its Injunctions.

Intervening decisions of the Supreme Court and Second Circuit have established that this Court lacks jurisdiction over the foreign parties listed in the Injunctions.  On January 14, 2014,

the Supreme Court expressly made clear (i) that foreign subsidiaries of a United States parent corporation are not amenable to suit in state court on claims unrelated to any activity of the *subsidiaries* in the forum State, and (ii) foreign parents are not subject to suit in state court on the basis of the actions of their subsidiaries in that forum state. *See generally Daimler AG v. Bauman*, 134 S. Ct. 746 (2014); *see id.* at 757 (discussing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011)). Rather, the Supreme Court held that U.S. courts have general jurisdiction over foreign corporations almost exclusively *only* where those corporations are incorporated or have their principal place of business. *Id.* at 761, n.19. Under the Supreme Court's standard in *Daimler,* it is now clear that various foreign parties named in the Injunctions, along with others involved in the Euro Bond payment process, are beyond the jurisdiction of U.S. courts. The Second Circuit's own recent application of the *Daimler* standard reinforces that jurisdiction over the foreign parties was inappropriate here.

Finally, the Injunctions directly conflict with the obligations of certain foreign parties under the law of their home forums, making the Injunctions unenforceable against them. For example, the Injunctions are unenforceable against Euroclear and Clearstream under Belgian and Luxembourgian laws, respectively, that were specifically enacted to protect Euroclear, Clearstream, and other financial institutions from foreign court orders attempting to enjoin payment transfers. *Daimler* explicitly criticized courts for failing to pay "heed to the risks to international comity" that follow from attempts to enjoin foreign parties. This Court should follow suit and clarify that the foreign third parties subject to those laws are exempt from the Injunctions. That result is particularly warranted because it will not diminish the force and effect of this Court's equitable remedy, in light of the substantial amount of dollar-denominated exchange bonds for which the payment process does pass through the United States.

\*                          \*                          \*

The Euro Bondholders bring this motion in response to this Court's invitation for non-parties to file motions for clarification regarding the scope of the Injunctions and promise that "[s]uch clarification will be promptly provided."[3]  November 21, 2012 Order at 6-7 [Dkt. No. 425].  The Euro Bondholders raised the issues identified in this motion to the Second Circuit and the Supreme Court, but neither of those courts resolved these questions and the Second Circuit advised that they should be raised in the district court.

On June 27, 2014, this Court held a hearing during which it was disclosed that, on June 26, 2014, Argentina made an interest payment in Argentina to The Bank of New York (Luxembourg) S.A. ("BNY Luxembourg") for the benefit of the Euro Bondholders.  As funds held outside the United States, by a foreign entity, and in a trust that is governed by the laws of England and Wales, this Court does not have jurisdiction to order BNY Luxembourg to do anything with those funds.  Under the Indenture and applicable law, BNY Luxembourg is obligated to pass through payment to the Euro Bondholders.  If this Court does not clarify that the Injunctions do not apply to the parties who process payment on the Euro Bonds, the substantial holdings of the Euro Bondholders will be at risk and the foreign third parties that process Euro Bond payments may be subject to significant liability overseas.[4]  Although counsel

---

[3] Similarly, the Second Circuit instructed that "the Supreme Court has expressed its expectation that, when questions arise as to who is bound by an injunction though operation of Rule 65, district courts will not 'withhold a clarification in the light of a concrete situation' . . . [and] [t]he doors of the district court obviously remain open for such applications."  *NML II*, 727 F.3d at 243 (quoting *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15 (1945)).

[4] On June 23, 2014, this Court appointed a Special Master "to conduct and preside over settlement negotiations between and among the parties to this litigation."  [Dkt. 530].  The Euro Bondholders welcome the appointment of the Special Master, and believe that a negotiated solution will be beneficial for all the parties and that the Exchange Bondholders' Rights Upon Future Offers ("RUFO") provision should not be an impediment to such a settlement.  We do

for the Euro Bondholders raised these issues during the June 27 hearing, this Court held only that the Injunctions bound Argentina and did not clarify whether the Injunctions bind parties *other than Argentina* which are themselves foreign entities presently in receipt of trust money belonging to the Euro Bondholders, pursuant to an Indenture governed by foreign law, and for which the payment process does not enter the United States.  Because a foreign entity presently holds funds to which the Euro Bondholders are entitled, this Court's immediate guidance on the scope of its orders is imperative.[5]

## BACKGROUND[6]

On February 23, 2012, this Court entered injunctions that enjoined Argentina from making further payment on its Exchange Bonds until it concurrently or in advance made a ratable payment to Plaintiffs ("February 23 Orders").  [Dkt. 371.]  The February 23 Orders further prohibited "all parties involved, directly or indirectly, in advising upon, preparing, processing or facilitating any payment on the Exchange Bonds" from "aiding and abetting any violation . . . including any further violation by the Republic . . . such as any effort to make payments under the . . . Exchange Bonds" without also making a ratable payment to Plaintiffs. The February 23 Orders did not specifically name any third parties to which it purported to apply.

---

note however that any such negotiated solution may take time to implement and thus believe it important to clarify the parties to whom the injunction applies.

[5] On June 27, 2014, this Court granted Citibank N.A.'s motion for clarification, recognizing the urgent need for third parties to have clarity on their obligations, if any, under the Injunctions. Notably, the reasons for excluding Citibank and the Argentine Law Bonds from the scope of the Injunctions apply *equally* to the third parties that process payments on the Euro Bonds:  both sets of bonds are paid by Argentina outside of the U.S. and are governed by foreign law, and the foreign parties that process the Euro Bond payments will face exposure in their home forums if they comply with the Injunctions.

[6] The Euro Bondholders presume that the Court is familiar with the background of this case and will not recite the details in full here.

The Republic appealed the February 23 Orders to the Second Circuit, which affirmed the Orders but expressed "concerns" with their "application to third parties," and remanded the case to this Court to, among other things, "more precisely determine the third parties to which [the injunction would] apply before [this Court could] decide whether [its] application to them is reasonable." *NML Capital Ltd. v. Republic of Argentina*, 699 F.3d 246, 264 (2d Cir. 2012) ("*NML I*").

On remand, the Bank of New York Mellon filed a declaration explaining the payment process for the different series of Exchange Bonds. *See* November 16, 2012 Declaration of Kevin F. Binnie ("Binnie Declaration."), attached to the Declaration of Christopher J. Clark ("Clark Decl.") as Exhibit A.  The Binnie Declaration clearly shows that the payment process for the Euro Bonds is completely different than the one for the USD Bonds.  Pursuant to the Indenture, the Bank of New York Mellon ("BNY Mellon"), the Indenture Trustee, has appointed The Bank of New York (Luxembourg) S.A. ("BNY Luxembourg") as the "trustee paying agent" for the Euro Bonds.  *Id*. ¶ 7, n.2.  To make payments on the Euro Bonds, the Republic transfers funds to a euro deposit account in the name of BNY Luxembourg at Banco Central de la Republica de Argentina ("Banco Central") in Argentina.  *Id*. ¶ 10.  The funds are then transferred from Banco Central to "a Deutsche Bank account in Frankfurt, Germany, in the name of The Bank of New York Mellon S.A. N.V.," a Belgian entity ('BNYM Brussels').  *Id*. ¶ 10.  Next, "BNYM Brussels transfers the funds to Euroclear or Clearstream for distribution to its participants, who then distribute the funds to beneficial holders."  *Id*.  Euroclear and Clearstream are foreign clearinghouses located in Belgium and Luxembourg, respectively.  *Id*. ¶ 8.  The entire payment process for the Euro Bonds never enters the U.S. and it involves only foreign banks and

other financial institutions.  No party—including the plaintiffs—has disputed the description of the Euro Bond payment process as detailed in the Binnie Declaration.

This Court never addressed the extraterritorial payment chain for the Euro Bonds, in part because that fact was obscured by plaintiffs who specifically argued in their brief on remand that Argentina relies on payment systems in the U.S. and entities in New York to make payments on *all* of the Exchange Bonds, *see* Pltfs' November 19, 2012 Reply Br. at 12-16.  [Dkt. 420].  As the Binnie Declaration makes clear, however, that unequivocally is not true for the Euro Bonds.[7] Plaintiffs also erroneously stated, without support, that "all arguments pertaining to [Depository Trust Company (the clearing system for the USD Bonds)] apply to [Euroclear and Clearstream] equally," failing to acknowledge that Euroclear and Clearstream are foreign entities beyond the Court's jurisdiction.  *Id*. at 17, n.12.  In short, plaintiffs offered no evidence that the payments for the Euro Bonds are processed through entities in the United States.  Indeed, they are not.

On November 21, 2012, after expedited briefing and without a hearing, this Court issued the amended Injunctions that largely tracked the language of the February 23 Orders.  The Court also specifically identified certain third parties purportedly subject to the Injunctions, including Euroclear, Clearstream, BNY Luxembourg, and Bank of New York Mellon (London)—all of which are foreign entities outside the jurisdiction of the district court.[8]

---

[7] The documents that plaintiffs submitted in support of that point relate to the USD Bonds only. *See* Nov. 13, 2012 Cohen Declaration, Exs. S-W, Y-Z AA-BB [Dkt. 391].

[8] In a previous case, when the facts were made clear to the Court, this Court acknowledged that it lacked jurisdiction over Euroclear and Clearstream and denied injunctive relief against them as a result.  This Court previously held, "*I have no jurisdiction over property that is solely in a foreign country.  I just don't, period … I have a document on its face which has requests for injunctive relief about trust bonds held in Belgium and Germany.  I can't do that.*"  April 30, 2008 Hr'g Tr. at 51:11-13, 52:7-9, *Seijas v. Republic of Argentina*, No. 04 Civ. 400 (TPG) (S.D.N.Y. Apr. 30, 2008) (emphasis added) [Dkt. 100].

This Court also issued an opinion regarding the Injunctions on November 21, 2012 ("Nov. 21. Op").  [Dkt. 424].  The Court purported to describe the payment process for all of the Exchange Bonds, but discussed only the entities that process the payments for the USD Bonds and omitted any discussion of the foreign entities that process payments for the Euro Bonds.  *See* Nov. 21 Op. at 10.  Although the Court acknowledged that there was a dispute regarding whether the initial payment (for the USD Bonds) takes place in Argentina or the United States, it concluded that "[t]*he rest of the process, without question takes place in the United States*."  *Id.* at 10 n.2 (emphasis added).  That statement, however, does not reflect the undisputed record with respect to the Euro Bonds, for which the payment process takes place exclusively outside the U.S.

The Republic appealed a second time.  The Euro Bondholders filed a motion to intervene on appeal, which was granted by the Second Circuit on December 6, 2012.  Dec. 6, 2012 Order, No. 12-105 [Dkt. 552].  On August 23, 2013, the Second Circuit affirmed the amended injunctions.  The panel noted, however, that the if "the payment process for [the Euro Bonds] takes place entirely outside the United States, then the district court *misstated that . . . the Exchange Bond payment 'process, without question takes place in the United States.*'"  *NML II*, 727 F.3d at 244) (emphasis added).  The panel also held that the foreign third parties were not bound by the Injunction and would have an opportunity to challenge the injunctions' extraterritorial scope in the district court.  *Id.*

Argentina filed a petition for writ of certiorari to the United States Supreme Court on February 18, 2014.  On June 16, 2014, the Supreme Court denied Argentina's petition for certiorari and, on June 18, 2014, the Second Circuit lifted the stay of the Injunctions.

On June 27, 2014, this Court held a hearing during which it was disclosed that Argentina has made an interest payment in Argentina to BNY Luxembourg for the benefit of the Euro Bondholders.  Under the Indenture, BNY Luxembourg is obligated under foreign law to make payment of those funds so that they are received by the Euro Bondholders.  During the June 27 hearing, counsel for the Euro Bondholders identified the unique position of the foreign entities that process payments on the Euro Bonds.  This Court reiterated that *"[t]he Republic* is within the jurisdiction of the Court," but did not clarify whether this Court's injunction—either directly or by Rule 65—purports to order foreign third parties who receive money from Argentina, outside the United States, to violate their obligations under foreign law to pass through the money to Euro Bondholders.[9]  The instant memorandum seeks clarification of that question.

## ARGUMENT

## I.      THE FOREIGN THIRD PARTIES THAT PROCESS PAYMENTS ON THE EURO BONDS ARE BEYOND THE JURISDICTION OF U.S. COURTS.

After this Court issued the Injunctions in November 2012, the U.S. Supreme Court expressly resolved the question of when a foreign corporation is subject to general jurisdiction in the U.S.  In *Daimler*, the Supreme Court held that, barring exceptional circumstances not applicable here,[10] a foreign corporation may be subject to general personal jurisdiction only where its "affiliations with the State are so continuous and systematic as to render it essentially

---

[9] This Court acknowledged that "there may be a need for a sort of special language in any order." June 27, 2014 Hr. Transcript at 31.  To the extent this Court was acknowledging that there is a need for clarification of the scope of this Court's Injunctions to account for the parties involved in the payment process on the Euro Bonds, Euro Bondholders would welcome that clarification.

[10] The Court left open the possibility that general jurisdiction might also be available in "exceptional circumstances" not present here, such as if a foreign corporation temporarily moved its operations to a U.S. state during a time of military occupation in their place of incorporation. *Daimler*, 134 S.Ct. at 756 (describing *Perkins v. Benguet Consol. Mining Co.*, 342 U. S. 437 (1952)).

*at home* in the forum State."  134 S. Ct. at 761 (2014)  (emphasis added).  The Court further clarified that, other than in an "exceptional" case, a corporation is "at home" *only* in the forum where it is incorporated or has its principal place of business.  *Id*. at 761, n.19.  The Second Circuit confirmed these principles in its recent decision in *Sonera Holding B.V. v. Cukurova Holding A.S*, where it applied the *Daimler* standard and found that "even a company's 'engagement in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum" other than its country or state of incorporation and the principal place of its business.  2014 U.S. App. LEXIS 7809 (2d Cir. Apr. 25, 2014).

Under *Daimler*, this Court unambiguously does not have jurisdiction over the foreign third parties that process the Euro Bond payments and that were specifically named in the Injunctions.  For example, it is undisputed that Euroclear is a commercial bank and securities settlement system incorporated in Belgium, with its principal place of business also in Belgium. *See* Jan. 3, 2013 Euroclear Br. at 1-2, attached to Clark Decl. as Exhibit B.  Euroclear's registered office is located in Brussels, Belgium, and the entity is regulated by the National Bank of Belgium.  *Id*. at 1.  Euroclear is not incorporated in the United States, nor does it have its principal place of business in the United States.  In fact, Euroclear has no operations in the United States at all, thus it cannot be considered "at home" here.[11]  *See Daimler*, 134 S. Ct. at 761.  In short, there is no basis on which to find that this Court has general jurisdiction over Euroclear.  Likewise, Clearstream, another European clearinghouse, is not incorporated in the United States and does not have its principal place of business there.  Similarly, BNY Luxembourg and BNYM Brussels are incorporated in Luxembourg and Belgium, respectively,

---

[11] Although Euroclear maintains a small representative office in New York for client relationship and support purposes, that does not subject it to jurisdiction in the United States according to the Supreme Court's holding in *Daimler*.

and have their principal places of business in those respective countries.[12]  Thus, under the

dictates of *Daimler* and *Cukurova*, this Court lacks jurisdiction over all of those entities. [13]

In the Second Circuit, plaintiffs also contended that the Injunctions are proper because

federal courts can "enjoin conduct [] that 'has or is intended to have a substantial effect within

the United States.'"  Aurelius Br. at 33 (quoting *United States v. Davis*, 767 F.2d 1025, 1036 (2d

Cir. 1985)).  But here, the uncontroverted record shows that payments on the Euro Bonds are

routed through foreign parties, do not involve U.S. currency, and never flow through the U.S. at

all.  Payments on the Euro Bonds are made as follows:  (1) The Republic transfers funds to

Banco Central in Argentina for the benefit of BNY Luxembourg; (2) the funds are then

transferred to Deutsche Bank in Germany for the benefit of BNYM Brussels; (3) the funds are

transferred to clearinghouses Euroclear (Belgium) or Clearstream (Luxembourg) who distribute

them to their participant banks for the beneficial owners.  *See* Binnie Decl. ¶ 10.  The conduct of

these foreign parties processing payments on the Euro Bonds has *no effect*—let alone a

substantial one—within the U.S.

On appeal, the Second Circuit explained that it understood the Injunctions to directly

enjoin only Argentina, but acknowledged that the district court understood Rule 65(d)(2) to

extend the force and effect of the injunction to "foreign payment system participants (such as

---

[12] The Bank of New York Mellon (Luxembourg) S.A. is incorporated in Luxembourg as a
société anonyme and has its registered office at 2-4 rue Eugène Ruppert, L-2453, Luxembourg.
The Bank of New York Mellon SA/NV is incorporated in Belgium as a société
anonyme/naamloze venootschap and has its statutory address at 46 Rue Montoyerstraat, B-1000
Brussels, Belgium.

[13] On appeal, plaintiffs conceded that these entities are not U.S. corporations.  "[The Injunctions]
specifically name[] entities – Clearstream Banking S.A., Euroclear Bank S.A./N.V., The Bank of
New York (Luxembourg) S.A., . . . *that are not American corporations*."  Jan. 25, 2013 Aurelius
Br. at 33, No. 12-105 [Dkt. 820] (emphasis added).  Plaintiffs went on to argue that this Court
has jurisdiction over those entities based on law that has since been superseded by *Daimler* and
*Cukurova*.  *See id.* at 34.

Clearstream Banking S.A., Euroclear Bank S.A./N.V., and Bank of New York (Luxembourg) S.A)." *NML II*, 727 F.3d at 244 (emphasis added).  The Second Circuit also made clear that "when questions arise as to who is bound by an injunction . . . district courts will not withhold a clarification." *Id*. at 243.  Lacking jurisdiction over those foreign entities, this Court should now clarify that they are not subject to the Injunctions either directly or by operation of Rule 65(d)(2).

It is well-established that "[i]njunctions operate only on the parties within the personal jurisdiction of the courts." *Laker Airways, Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984).  "A district court cannot exercise personal jurisdiction over a nonparty to a litigation, on the basis that the nonparty is acting 'in active concert or participation', within the meaning of Fed. R. Civ. P. 65(d), with a party who is subject to an injunction, unless personal jurisdiction is established over the nonparty." *Canterbury Belts, Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 40 (2d Cir. 1989); *see also* 11A C. Wright & A. Miller, Federal Practice and Procedure § 2960, at 377 (1995).  The requirement that the district court establish jurisdiction is in turn tied to the principle that "[a] court should not issue an unenforceable injunction." *Hilao v. Estate of Marcos (In re: Estate of Marcos Human Rights Litig*.), 94 F.3d 539, 545 (9th Cir. 1996).  For this reason, courts properly reject calls to enjoin non-parties over which they cannot obtain personal jurisdiction.  *See id.*, 94 F.3d at 545 ("an injunction against [the target] in the absence of personal jurisdiction over it would be futile, as the court would be powerless to enforce its injunction").

For identical reasons, this Court cannot order a foreign third party over which it lacks jurisdiction to repay money in an account outside of the U.S. to Argentina.  During the June 27 hearing, it was disclosed that Argentina has made payment on the Euro Bonds in Argentina to BNY Luxembourg.  Because BNY Luxembourg is a foreign entity that is incorporated and has

its principal place of business in Luxembourg, this Court has no jurisdiction over BNY
Luxembourg, and therefore cannot order it to return trust property to Argentina that BNY
Luxembourg is obligated by the Indenture and foreign law to transfer on to the beneficial
holders.[14]

Here, plaintiffs have markedly failed to satisfy their burden to establish that this Court
has jurisdiction to issue and enforce an injunction applying to the foreign third parties that
process payments on the Euro Bonds.  *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84
F.3d 560, 566-67 (2d Cir. 1996) (burden is on the proponent of the injunction to establish
jurisdiction over parties named in the injunction).  Nor has this Court ever made any findings to
that effect.  Indeed, this Court (encouraged by the plaintiffs) apparently was under the mistaken
impression—as noted by the Second Circuit—that payments on the Euro Bonds pass through the
U.S.  They do not.  The Injunctions are therefore unenforceable against the foreign third parties
that process payment on the Euro Bonds (including Euroclear, Clearstream, BNYM Brussels,
and BNYM Luxembourg), either directly or by operation of Rule 65(d)(2).  This Court should
clarify that those parties are not within its scope.

---

[14] According to the "separate entity rule," this Court cannot reach the funds held by BNY
Luxembourg, even though it may have jurisdiction over Bank of New York Mellon.  The
"separate entity rule" provides that "each branch of a bank is treated as a separate entity . . . in no
way concerned with accounts maintained by depositors in other branches or at a home office."
*Motorola Credit Corp. v. Uzan*, 288 F.Supp.2d 558 (S.D.N.Y. 2003) (citations omitted)  "Under
this doctrine, the 'mere fact that a bank may have a branch within New York is insufficient to
render accounts outside of New York subject to attachment.'"  *Id.* (citing *National Union Fire
Insurance Company of Pittsburgh, Pa. v. Advanced Employment Concepts, Inc.*, 269 A.D.2d 101
(1st Dep't 2000).  This Court has applied the "separate entity rule" and refused to restrain
property outside of the U.S. in this very litigation.  *See Aurelius Capital Partners, LP v. Republic
of Argentina*, No. 07 Civ. 2715, 2010 WL 768874 (S.D.N.Y. Mar. 5, 2010).

II.  **THE FOREIGN THIRD PARTIES THAT PROCESS PAYMENTS ON THE EURO BONDS CANNOT COMPLY WITH THE INJUNCTIONS UNDER FOREIGN LAW**

The Injunctions also should be modified because they purport to restrict certain foreign third parties from fulfilling their contractual and legal duties on foreign soil, under foreign law. "[I]t is well established that 'a state may not require a person to do an act in another state that is prohibited by the law of that state.'"  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60 (2d Cir. 2004) (quoting Restatement (Third) of Foreign Relations Law § 441 (1987)).  "[N]or can the person be required to refrain from an act that is required," in a foreign nation by that country's laws.  *Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1392 (9th Cir. 1995); *see also In re Sealed Case*, 825 F.2d 494, 498 (D.C. Cir. 1987) (rejecting "attempt by an American court to compel a foreign person to violate the laws of a different foreign sovereign on that sovereign's own territory").  Seeking to enjoin foreign parties from acting in a manner that contravenes their legal responsibilities under their own forum's law runs afoul of longstanding principles restraining courts from extraterritorial overreaching.  *See, e.g., Vanity Fair Mills, Inc. v. T. Eaton Co*., 234 F.2d 633, 647 (2d Cir. 1956) ("[C]ourts of one state are reluctant to impose liability upon a person who acts pursuant to a privilege conferred by the law of the place where the acts occurred.").

Indeed, the Second Circuit has warned that enjoining activities on foreign soil "should be exercised with great reluctance when it [would] be difficult to secure compliance … or when the exercise of such power is fraught with possibilities of discord and conflict with the authorities of another country." *Vanity Fair Mills*, 234 F.2d at 647; *see also Nguyen Thang Loi v. Dow Chem. Co.* (*In re Agent Orange Prod. Liab. Litig*.), 373 F. Supp. 2d 7, 45 (E.D.N.Y. 2005), aff'd 517 F.3d 104 (2d Cir. 2008) ("Requests for extraterritorial injunctions often raise serious concerns for sovereignty and enforceability which compel denial.").  Such concerns are particularly acute

when a court attempts to "arrogate to the federal courts the power to control the banking systems of other countries within their own territory."  *Reebok Int'l*, 49 F.3d, at 1395; *see also Harrods*, 237 F. Supp. 2d at 413.

Here, both Belgian and Luxembourgian law render unenforceable any court orders purporting to restrain clearing systems from their duty to process payments.   In response to a previous effort to enjoin Euroclear from distributing funds to the exchange bondholders of another nation's sovereign debt, the Belgian parliament enacted a law (colloquially known as the "Euroclear Law") in 2004 that expressly precludes enforcement of an injunction against Euroclear or other Belgian or foreign credit institutions acting as cash correspondents.   The law states:

> "Any cash settlement account maintained with the operator of a system or with a cash settlement agent, as well as any cash transfer, through a Belgian or foreign credit institution, to be credited to such cash settlement account, cannot be attached, put under sequestration or otherwise blocked by any means by a participant (other than the operator or the settlement agent), a counterpart or a third party."

Article 9 of the Belgian Act of April 28, 1999 implementing the EU Settlement Finality Directive as amended by Article 15 of the Law of November 19, 2004.

The purpose of the Belgian law is to safeguard the liquidity of the financial markets by ensuring that settlement accounts are free from obstruction.  In fact, the Belgian law was passed *specifically* in response to a previous effort to enjoin Euroclear from distributing funds to the exchange bondholders of Nicaragua's sovereign debt in 2003.  Thus, the Belgian legislature, faced with a situation almost identical to the present, decided that it was against Belgium's public policy to recognize or give effect to injunctions purporting to block the transfers and payments processed by Euroclear in Belgium.  The Euro Bondholders have initiated litigation in

15

Belgium against Euroclear and BNYM Brussels to obtain an order confirming that the Injunctions are unenforceable there.

Luxembourgian law likewise prohibits the enforcement of an injunction against funds passing through Clearstream.  Article 15 of the Luxembourg Securities Act states that "neither an attachment of, nor an enforcement against, nor a conservatory measure with respect to accounts to which securities accounts in the securities settlement system are booked are permitted."  *See* European Commission, EU Clearing and Settlement Legal Certainty Group Questionnaire Horizontal Answers 294 (Apr 24, 2006).  The Injunctions, therefore, conflict with the laws of Belgium and Luxembourg—both of which host third party financial intermediaries that process Argentina's payments on the Euro Bonds.

If interpreted to cover the foreign third parties processing payments on the Euro Bonds, the Injunctions would inappropriately attempt to forbid Euroclear and other foreign intermediaries operating in Belgium or Luxembourg from satisfying their legal obligations under foreign law.  See*, e.g., Reebok Int'l*, 49 F.3d, at 1392 (rejecting order restraining Luxembourg bank from releasing funds in Luxembourg based on the fact that "Luxembourg banking law normally compels … the release of depositors' funds on demand").  This, in turn, will make it impossible for these parties to comply simultaneously with the Injunctions and with their contractual obligations under governing foreign law, and would result in those foreign parties being subject to additional litigation and inconsistent judgments.  This Court can avoid those complications by clarifying that Euroclear, Clearstream, BNYM Brussels, and BNYM Luxembourg are excluded from the scope of  the Injunctions, and making clear that—whether directly or by operation of Rule 65(d)(2)—the Injunctions are not directed at the payment

process for the Euro Bonds, which involves only foreign parties, a foreign currency, and takes place outside the U.S.

Clarification is particularly warranted because the exclusion of the foreign parties involved in the Euro Bond payment process will not diminish the force and effect of this Court's equitable remedy.  As this Court has recognized, its Injunctions were not intended "literally to carry out the Pari Passu Clause, as would be done in a normal commercial situation, but to provide a remedy for Argentina's violation of the Clause."  November 21, 2012 Order at 6 [Dkt. No. 425].  The manifest objective of naming third parties in the Court's Injunctions was "to ensure enforcement of the Injunctions' requirement that payments are to be made on the Exchange Bonds only if appropriate payments are made concurrently or in advance to plaintiffs." *Id.* at 9.  Because the parties involved in making payment on over $10 billion of New York-governed, USD Bonds will still be subject to the Injunctions, there is no risk that excluding the foreign parties involved in the Euro Bond payment process will leave the Court's Injunctions without force or deny an adequate remedy to the plaintiffs.  To the contrary, clarifying that the Injunctions apply only to U.S. entities—not foreign third parties or foreign subsidiaries—will ensure that the Injunctions rest on solid legal ground in light of *Daimler* and *Cukurova.*

**CONCLUSION**

For the reasons stated above, this Court should clarify that the Injunctions do not apply to the foreign third parties that process payments on the Euro Bonds.

Dated:     June 29, 2014
         New York, New York

                        Respectfully submitted,

                        LATHAM & WATKINS LLP

                        By  /s/ Christopher J. Clark

                             Christopher J. Clark
                             Craig A. Batchelor
                             885 Third Avenue
                             New York, New York 10022
                             Tel: (212) 906-1200

                             *Attorneys for Non-Parties Euro*
                             *Bondholders*