UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NML CAPITAL, LTD.<br><br>                    Plaintiff,<br>     -against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | 08 Civ. 6978 (TPG)<br>09 Civ. 1707 (TPG)<br>09 Civ. 1708 (TPG) |
| AURELIUS CAPITAL MASTER, LTD. And<br>ACP MASTER, LTD.,<br><br>                    Plaintiffs,<br>     -against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | 09 Civ. 8757 (TPG)<br>09 Civ. 10620 (TPG) |
| AURELIUS OPPORTUNITIES FUND II, LLC<br>and AURELIUS CAPITAL MASTER, LTD.,<br><br>                    Plaintiffs,<br>     -against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                    Defendant. | 10 Civ. 1602 (TPG)<br>10 Civ. 3507 (TPG)<br>10 Civ. 3970 (TPG)<br>10 Civ. 8339 (TPG)<br><br>*(captions continue on following page)* |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES
EURO BONDHOLDERS' EMERGENCY MOTION FOR STAY**

| | |
|---|---|
| BLUE ANGEL CAPITAL I LLC,<br><br>                              Plaintiff,<br><br>     -against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                              Defendant. | 10 Civ. 4101 (TPG)<br>10 Civ. 4782 (TPG) |
| OLIFANT FUND, LTD.,<br><br>                              Plaintiff,<br><br>     -against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                              Defendant. | 10 Civ. 9587 (TPG) |
| PABLO ALBERTO VARELA, et al.,<br>                              Plaintiff,<br><br>     -against-<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                              Defendant. | 10 Civ. 5338 (TPG) |

**PRELIMINARY STATEMENT**

This Court favors a negotiated settlement to this litigation. At the July 22, 2014 hearing, Your Honor stated, "If the end of July comes and there is a default, that will be very, very sad and unfortunate. We want to do everything we can to avoid that. And that means settlement." July 22, 2014 Hr'g Tr. at 48, Ex. A to the Declaration of Christopher J. Clark ("Clark Decl.").

The Euro Bondholders[1] share the Court's desire for a negotiated resolution. They have offered their assistance to Special Master Daniel Pollack and the parties to assist in any way possible. As they previously noted to this Court, the Euro Bondholders would be willing to waive the Rights Upon Future Offers ("RUFO") clause that the Republic of Argentina (the "Republic") has stated is an impediment to settlement. To that end, in just the last few days the Euro Bondholders have been in touch with other interested bondholders who also would be willing to waive the RUFO clause. Together, the Euro Bondholders and these aligned investors hold over €5.2 billion of the Republic's euro-denominated exchange bonds. Their expressed willingness to waive the RUFO clause is a clear signal that the Republic may be able to obtain a waiver under the Indenture, opening up a path to settlement.

Obtaining a waiver of the RUFO clause, however, will take time. The Republic will need to undertake a consent solicitation—complying with the securities laws of the U.S., U.K., Japan, and Argentina—seeking a waiver from its Exchange Bondholders. As a practical matter, the Republic cannot undertake such a solicitation for all series of its Exchange Bonds and obtain a waiver prior to July 30, 2014, thus making a settlement less likely and placing the Republic in imminent danger of a potential default.

---

[1] The Euro Bondholders are Knighthead Capital Management, LLC, Redwood Capital Management, LLC, Perry Capital LLC, VR Global Partners, LP, Monarch Master Funding 2 (Luxembourg) S.à r.l., QVT Financial LP, and Centerbridge Partners LP (each on behalf of itself or one or more investment funds or accounts managed or advised by it).

This Court can facilitate a settlement—and avoid a potential default—by issuing a temporary stay of the Amended February 23, 2012 orders (the "Injunctions"). A stay will either moot the RUFO clause, because it expires at the end of 2014, or give the Republic additional time to obtain a waiver. Either way, a stay will promote and encourage a global settlement. A stay will not prejudice the plaintiffs, or anyone else, because it will maintain the status quo while the parties deal with the RUFO clause, increasing the chance of a negotiated resolution in the near future. Conversely, refusing to issue a stay may lead to a sovereign default, causing serious and unpredictable harm to millions of innocent citizens of Argentina, the plaintiffs, the Exchange Bondholders (who already accepted significant reductions in the value of their bonds), and the global economy. Moreover, a default would undo much of the work this Court has accomplished over the last ten years and extend litigation here and around the world for years on end.

The Euro Bondholders respectfully submit that a temporary stay of the Injunctions is the best way for this Court to promote a negotiated settlement of this case and avoid a default.

## ARGUMENT

**I.    A STAY WILL ALLOW THE PARTIES TO RESOLVE ISSUES PERTAINING TO THE RUFO CLAUSE**

The Exchange Bonds contain a RUFO clause that that states if, prior to December 31, 2014, Argentina "voluntarily makes an offer to purchase or exchange . . . or solicits to amend . . . any outstanding Non-Performing Securities," the Exchange Bondholders have the right to exchange their bonds for the same consideration or terms that were provided to the holders of the Non-Performing Securities. *See, e.g.* Euro-Denominated Par Bond due 2038 at Section 8, Clark Decl. Ex. B. As many have noted, the RUFO clause may be implicated by a negotiated resolution of this case. For example, if Argentina offers to settle with the plaintiffs by

exchanging their Non-Performing Securities for new bonds with better terms than those offered in the 2005 and 2010 exchanges, the RUFO provision may allow Exchange Bondholders to demand similar terms. In that case, the Republic could owe its Exchange Bondholders additional billions, and it would have the effect of undoing the 2005 and 2010 exchanges.

The potential implication of the RUFO clause apparently is making settlement difficult.[2] There are at least two ways, however, that the potential impact of the RUFO clause can be avoided. First, the Republic could undertake a consent solicitation, seeking a waiver of the RUFO clause from the Exchange Bondholders. The Euro Bondholders previously have stated to this Court that they would consider a fair and effective waiver of the RUFO clause if it would lead to a negotiated settlement, and they would be willing to work with the parties and Special Master Pollack on a resolution. Indeed, on July 26, 2014, the Euro Bondholders sent a letter to Special Master Pollack and counsel for the Republic, informing them that the Euro Bondholders and other interested bondholders—together holding over €5.2 billion of euro-denominated bonds—would be willing to waive the RUFO clause.[3] July 26, 2014 letter, Clark Decl. Ex. C. The substantial holdings of this group indicates that the Republic may be able to obtain a waiver from its Exchange Bondholders per the terms of the Indenture.

Although there is momentum among the Exchange Bondholders to waive the RUFO clause, from a practical standpoint, the Republic will not be able to complete a consent solicitation and receive a waiver from all of the Exchange Bondholders prior to July 30, 2014. That process could take weeks, if not longer. Moreover, although plaintiffs claim that a

---

[2] Argentina's Economy Minister has stated that a settlement with plaintiffs could result in "claims of approximately *$120 billion more* under the RUFO clause." *See* Translation of June 26, 2014 Press Conference, attached as Exhibit B to the June 27, 2014 Declaration of Robert Cohen [Dkt. 542]  (emphasis added).

[3] This group also holds significant U.S. dollar-denominated bonds and would be amenable to waiving RUFO for those bonds as well.

solicitation could be performed directly by depositories and clearing systems in the U.S. it is unclear whether such a process could be performed by the foreign entities involved in the payment process for the bonds issued in foreign denominations.  For these reasons, a temporary stay of the Injunctions will allow the Republic to seek a waiver of the RUFO clause, thus clearing a path to settlement.

Second, even if the Republic cannot obtain a waiver of the RUFO clause from the Exchange Bondholders, the RUFO clause will not be an obstacle to settlement after December 31, 2014, when it expires.  Given that it could take weeks or even months to undertake a consent solicitation, the simpler approach may be to stay the Injunctions until the RUFO clause expires, so that the parties can complete a negotiated settlement after that time.

Each of the above solutions to the RUFO clause issue requires that this Court stay the enforcement of its Injunctions.  The Euro Bondholders have made considerable progress in a very short time toward finding Exchange Bondholders who are willing to waive the RUFO clause, but they need additional time to complete that process.  Absent a stay, the RUFO clause may prevent a negotiated resolution of this case and lead to a potential default.  This Court can avoid that outcome with a temporary stay of the Injunctions.

## II. A STAY IS IN THE PUBLIC INTEREST BECAUSE IT WILL AVOID A POTENTIAL DEFAULT AND THE COLLATERAL DAMAGE IT WOULD CAUSE

A district court has "broad discretion" in deciding whether to issue a stay.  *See Clinton v. Jones*, 520 U.S. 681, 706 (1997).  "[T]he power to stay proceedings in incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Here, a stay of the Injunctions is clearly in the public interest. As noted above, a temporary stay will give the parties additional time to resolve issues pertaining to the RUFO clause and negotiate a settlement, which this Court, the Euro Bondholders, and many other interested parties favor. It will also allow this Court to decide the pending motions for clarification in a considered manner so that if the Injunctions have to go into effect, the parties (and non-parties) will know to whom they apply.

A temporary stay to resolve issues pertaining to RUFO clause will maintain the status quo and will not harm plaintiffs. At the July 22 hearing, Your Honor stated that "the problem with the so-called stay application was that it would take away the rights . . . It really wouldn't be a stay in the sense of holding the status quo." July 22 Hr'g Tr. at 54; Clark Decl. Ex. A. However, a temporary stay—to allow the parties to complete a settlement—does not take away *any* of plaintiffs' rights. After the expiration of the stay, the Injunctions will go back into effect, plaintiffs will still have a claim for the full amount of the Ratable Payment that this Court ordered is due to them, and the Republic will be at risk of default if it does not pay them. The only difference is that the RUFO clause, a technical obstacle to settlement, would be removed. A stay would not affect plaintiffs at all, since they have not been paid since 2001 and have been litigating this case for many years. *See Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 272 (5th Cir. 1994) (stay "could not possibly have caused 'substantial harm' to [plaintiff], in light of the fact that controversy . . . ha[d] been going on for more than ten years").

Conversely, if this Court does not grant a stay of the Injunctions to promote settlement, the Republic faces a potential default, which would have severe negative consequences on the citizens of Argentina, investors worldwide, and the global economy. As Your Honor has recognized, "[*A default*] *is about the worst thing that, sitting here, I can envision. I don't want*

*that to happen. People will be hurt by that, real hurt.*" July 22 Hr'g Tr. at 55, Clark Decl. Ex. A (emphasis added). A default would also severely punish the Exchange Bondholders, who already took a substantial haircut on their bonds during the 2005 and 2010 exchanges and have been working diligently to help the parties reach a settlement, and the plaintiffs who are on the verge of recovery after years of litigation. Moreover, a default would result in a flood of new litigation in the U.S., the U.K., Japan, and Argentina, and reverse much of the work that this Court has done for the past ten years, extending the cases in front of Your Honor indefinitely.

In short, a default would bring *irreversible and unpredictable harm* to millions of people, but a stay would avoid that harm while prejudicing no one. It is difficult to think of any compelling reason not to issue a stay at this point, especially in light of the catastrophic consequences of a sovereign default. At the last hearing, this Court stated that "a default . . . will be very, very sad and unfortunate . . . [and] *[w]e want to do everything we can to avoid that*." *Id*. at 48 (emphasis added). This Court can single-handedly avoid a default by granting a temporary stay of the Injunctions so that all of the parties can resolve complicated issues hindering a settlement.

## CONCLUSION

For the foregoing reasons, this Court should issue a temporary stay of the Injunctions until January 1, 2015, after the RUFO clause expires, or, in the alternative, for 90 days so that the Republic can obtain a waiver of the RUFO clause.

Dated: July 29, 2014
New York, New York

    Respectfully submitted,

    LATHAM & WATKINS LLP

    By  /s/ Christopher J. Clark

        Christopher J. Clark
        Craig A. Batchelor
        885 Third Avenue
        New York, New York 10022
        Tel: (212) 906-1200

        *Attorneys for Non-Parties Euro Bondholders*