UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| --------------------------------------------------------- x | | 03 Civ. 8845 (TPG) |
| NML CAPITAL, LTD., | : | 05 Civ. 2434 (TPG) |
| | : | 06 Civ. 6466 (TPG) |
| Plaintiff, | : | 07 Civ. 1910 (TPG) |
| | : | 07 Civ. 2690 (TPG) |
| v. | : | 07 Civ. 6563 (TPG) |
| | | 08 Civ. 2541 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | 08 Civ. 3302 (TPG) |
| | : | 08 Civ. 6978 (TPG) |
| Defendant. | : | 09 Civ. 1707 (TPG) |
| --------------------------------------------------------- x | | 09 Civ. 1708 (TPG) |


**NML'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION BY ORDER TO
SHOW CAUSE TO COMPEL DISCOVERY FROM CITIBANK, N.A.**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ................................................................................................3

      A.     Citibank Claims That It Faces Retaliation From Argentina Should It
             Refuse To Make Payments On The Argentine Law Exchange Bonds ...................3

      B.     NML's August 15, 2014 Subpoena ...................................................................7

ARGUMENT .................................................................................................................9

I.      THE SUBPOENAED INFORMATION IS RELEVANT AND NECESSARY................9

II.     CITIBANK'S OBJECTIONS ARE MERITLESS .........................................................12

      A.     The Subpoena Requests Are Appropriately Tailored ...........................................12

      B.     The Pending Appeal Does Not Stay Discovery, And In Fact Requires
             Expedited Discovery...........................................................................................13

      C.     Citibank Must Produce Documents Within Its Actual Control, Including
             From Citibank Argentina ...................................................................................14

      D.     Citibank's Remaining Objections Have Been Previously Rejected By This
             Court And Can Be Swiftly Rejected Again .........................................................15

CONCLUSION..............................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Aurelius Capital Master, Ltd. et al. v. Republic of Argentina,*
   No. 14-2689 (L) (2d Cir. Aug. 18, 2014)..............................................................6

*First Am. Corp. v. Price Waterhouse LLP,*
   154 F.3d 16 (2d. Cir. 1998)...............................................................................16

*Greenbaum v. Handlesbanken,*
   26 F. Supp. 2d 649 (S.D.N.Y. 1998)..................................................................15

*Matter of Liquidation of the New York Agency and Other Assets of Bank of Credit and*
   *Commerce Int'l, S.A.,*
   90 N.Y.2d 410 (1997) ........................................................................................15

*NML Capital, Ltd. v. Republic of Argentina,*
   2013 WL 491522 (S.D.N.Y. Feb. 8, 2013)..........................................................15

*NML Capital, Ltd. v. Republic of Argentina,*
   No. 14-2702 (2d Cir. August 13, 2014) ............................................................6, 12

*Oppenheimer Fund, Inc. v. Sanders,*
   437 U.S. 340 (1978)............................................................................................9

*Schoolcraft v. City of New York,*
   10 CIV. 6005 RWS, 2012 WL 2161596 (S.D.N.Y. June 14, 2012).........................9

*Societe Nationale Industreille Aerospatiale v. U.S. Dist. Court for S. Dist. Of Iowa,*
   482 U.S. 522 (1987)...........................................................................................16

### <u>Statutes</u>

Fed. R. Civ. P. 26(b)(1)...........................................................................................9

Fed. R. Civ. P. 37(a)(1)...........................................................................................9

Plaintiff NML Capital, Ltd. ("NML"), through its attorneys, Quinn Emanuel Urquhart & Sullivan LLP, respectfully submits this Memorandum of Law in support of its motion by order to show cause to compel the production of documents and a witness for deposition in response to the subpoena dated August 15, 2014 (the "Subpoena"), that was served on Citibank, N.A. ("Citibank").

## PRELIMINARY STATEMENT

By this motion, NML seeks to compel discovery from third-party Citibank concerning Citibank's allegations that the Republic of Argentina ("Argentina") has threatened Citibank's Argentine branch ("Citibank Argentina") with punitive measures if Citibank complies with this Court's orders by not processing Argentina's payments on Exchange Bonds unless Argentina has made a corresponding ratable payment to NML.  This request is urgent, time-sensitive and critical to the proper functioning of this Court's *pari passu* orders.

Argentina's obligation to make ratable payments to NML derives from an order issued by the Court on February 23, 2012, and amended on November 21, 2012.  On July 28, 2014, this Court issued an order clarifying that Citibank was prohibited (other than for a one-time exception on July 30, 2014) from effecting any payment on behalf of Argentina to holders of U.S. Dollar-denominated Exchange Bonds issued by Argentina and governed by Argentine law, unless Argentina also made a ratable payment to NML concurrent with or in advance of such payments. Citibank and Argentina have appealed the July 28 order, and Citibank has argued in its appeal that compliance with the order will place Citibank in a "dangerous position" and subject it to "grave sanctions" at the hands of the Argentine government, including the possible imprisonment of its officers and expulsion of its business from the country.  Citibank has invoked this purported pressure as a reason that it should be exempted from compliance with the July 28, 2014 order and the amended February 23, 2012 order.  If, indeed, Argentina has made

such threats—a position that can be viewed with certain skepticism given the deep and long-standing ties between Citibank and Argentina—and those threats successfully convince Citibank to process Argentina's illegal payments (which Citibank has reportedly assured Argentina that it will), *Argentina will have succeeded in evading this Court's orders with the assistance of Citibank*.

To obtain a full and fair picture of any coercion to which Citibank may have been subjected, on August 15, 2014, NML served a subpoena on Citibank requesting the production of documents, and a witness for deposition, pertaining to the Argentine threats to which Citibank has frequently referred.   The requested information speaks directly to Citibank's extraordinary request to exempt it from following this Court's orders, and is needed on an urgent basis in light of the expedited schedule of the pending appeal.

Indeed, Citibank itself has unfairly put *selectively chosen new factual material* before the Second Circuit on appeal, purportedly evidencing Argentina's threats, by way of a letter to the Second Circuit Clerk, and is now seeking to block NML's attempts to discover what other relevant evidentiary material Citibank may have on this subject that has not yet been brought to light.  In effect, Citibank is seeking to have the Second Circuit rely on the evidence of "coercion" that it wants the Second Circuit to see, while simultaneously refusing to allow NML or the courts to see any information that may cast these contentions in a different light. Citibank cannot have it both ways: having put certain purported evidence of "threats" at issue in the appeal, it cannot now shield itself from discovery on this same topic.

Notwithstanding the obvious relevance of the information sought, however, Citibank has refused to comply with NML's subpoena—raising a host of meritless objections, many of which this Court has previously rejected.  This Court's intervention is needed to compel Citibank's

2

compliance.  Accordingly, NML seeks an order from this Court compelling Citibank to produce a witness for deposition and all responsive documents starting immediately upon the issuance of the Court's order and, in any event, to be completed by no later than September 15, 2014, which is three days before the argument on Citibank's appeal will be heard by the Second Circuit.

**STATEMENT OF FACTS**

A.   **Citibank Claims That It Faces Retaliation From Argentina Should It Refuse To Make Payments On The Argentine Law Exchange Bonds**

On February 23, 2012, this Court issued an order (as subsequently amended on November 21, 2012, the "Amended February 23 Order") requiring Argentina to make ratable payments to NML whenever it pays any amounts due under the terms of the bonds issued pursuant to Argentina's 2005 or 2010 exchange offers (collectively, the "Exchange Bonds"). (Dkt. No. 252).[1]  This order further stated that Rule 65(d)(2) of the Federal Rules of Civil Procedure prohibited all participants in the Exchange Bonds payment process—including Citibank—from assisting Argentina's violation of the order.  (*Id.*)  Accordingly, should Citibank assist Argentina in making any payments on the Exchange Bonds without also making ratable payments to NML, Citibank would be in violation of the Amended February 23 Order.

Citibank renewed its motion for clarification of the Amended February 23 Order, asserting that it should not be prohibited under that order from processing Argentina's payments pursuant to the terms of Peso- and U.S. Dollar-denominated bonds issued by Argentina in 2005 and 2010 that are governed by Argentine Law and payable in Argentina (the "Argentine Law Exchange Bonds").  On June 27, 2014, the Court granted Citibank's motion, ruling that the Amended February 23 Order "do[es] not as a matter of law prohibit payments by Citibank,

---

[1]   Unless otherwise noted, all docket citations herein are to the docket for Case No. 1:09-cv-01708-TPG.

N.A.'s Argentine branch on Peso- and U.S. Dollar-denominated bonds—governed by Argentine law and payable in Argentina—that were issued by the Republic of Argentina in 2005 and 2010 to customers for whom [Citibank] acts as custodian in Argentina." (Dkt. No. 347) (the "June 27 Order").

On July 10, 2014, NML and others filed a motion for partial reconsideration of the June 27 Order.  That motion requested reconsideration of the Court's ruling that the U.S. Dollar-denominated Argentine Law Exchange Bonds (the "Argentine Law U.S. Dollar Exchange Bonds") were exempt from the Amended February 23 Order in light of the undisputed fact that the Argentine Law U.S. Dollar Exchange Bonds, in contrast to the Peso-denominated Argentine Law Exchange Bonds, constituted "External Indebtedness" of Argentina under the Equal Treatment clause of the Fiscal Agency Agreement ("FAA") governing Plaintiffs' bonds, and therefore are subject to the Equal Treatment injunction in the Amended February 23 Order.

In its opposition to this motion, Citibank asserted that Citibank Argentina and its employees and officers would face "severe civil, regulatory and criminal risks" at the hands of the Argentine government by virtue of its position as an entity governed by the laws of Argentina and subject to its control and regulation, should the Argentine Law U.S. Dollar Exchange Bonds be held to be subject to the Amended February 23 Order and should Citibank elect not to process Argentina's illegal payment on those bonds.  (Dkt. No. 370 at 4-5 (citing the "severe consequences to which Citibank Argentina would be exposed if the Orders were not clarified to exempt the Argentine Law [Exchange] Bonds.")).

After this Court held a hearing on the fully-briefed motions, Argentina and Citibank asserted for the first time, in a series of post-hearing letters to the Court, that the Argentine Law U.S. Dollar Exchange Bonds included not only Exchange Bonds, but also bonds that did not fit

within the definition of Exchange Bonds—including, for example, bonds issued by Argentina in settlement of litigation with Repsol YPF, S.A. (the "Repsol Bonds")—and that at least one series of those non-Exchange Bonds had been issued with the same International Securities Identification Number ("ISIN") as the Argentine Law U.S. Dollar Exchange Bonds. (Dkt. Nos. 380, 382, 384). Accordingly, Citibank asserted that it would be "operationally impossible" for it to comply with the Amended February 23 Order and withhold payment on the Argentine Law U.S. Dollar Exchange Bonds while at the same time honoring payment on the non-Exchange Bonds with the same ISIN. (*Id.*).

On July 28, 2014, the Court issued a further order clarifying the scope of the Amended February 23 Order (the "July 28 Order"). Solely based on Citibank's professed inability to withhold payment on the Argentine Law U.S. Dollar Exchange Bonds without upsetting the Repsol settlement, the Court permitted Citibank to process a one-time payment prior to July 30, 2014, on both the Repsol Bonds and the Argentine Law Exchange Bonds—including the Argentine Law U.S. Dollar Exchange Bonds. However, the Court prohibited Citibank from processing any further payments on the Argentine Law U.S. Dollar Exchange Bonds unless Argentina concurrently makes a corresponding ratable payment to NML pursuant to the Amended February 23 Order, and instructed the parties to devise a way to distinguish the Argentine Law U.S. Dollar Exchange Bonds from the Repsol Bonds. (Dkt. No. 386).

Citibank and Argentina have since appealed the July 28 Order, seeking its reversal insofar as it subjects the Argentine Law U.S. Dollar Exchange Bonds to the Amended February 23 Order. On appeal, Citibank has argued that it cannot comply with the Amended February 23 Order and the July 28 Order due to threats from Argentina to force Citibank Argentina to process payments on the Argentine Law U.S. Dollar Exchange Bonds, notwithstanding the fact that

5

Argentina has no intention of making a corresponding ratable payment to NML.  Citibank's appeal brief is rife with contentions that Argentina's "demand[s]" that Citibank Argentina effect such payments places Citibank Argentina in "jeopardy" and "risk of grave sanctions" if it refuses to process Argentina's illegal payments.  *See, e.g.,* Br. of Movant-Interested Party-Appellant Citibank, N.A., *Aurelius Capital Master, Ltd. et al. v. Republic of Argentina*, No. 14-2689(L), at 2-3, 9-10 (2d Cir. Aug. 18, 2014) ("Citibank Appeal Br.").

In support of this position, Citibank also submitted a letter to the Second Circuit attaching correspondence from Argentina's Secretary of Finance to Citibank Argentina demanding that Citibank Argentina follow Argentine law and make full payments on the Argentine Law Exchange Bonds, including in respect of the next scheduled interest payment on September 30, 2014—*which letter had not been previously submitted to this Court nor known to NML.   See* Letter of Karen E. Wagner to Catherine O'Hagan Wolfe, Clerk of Court, U.S. Court of Appeals for the Second Circuit, at Exhibit B, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-2702 (2d Cir. August 13, 2014) (D.E. 47).  In the letter, the Argentine official criticized Citibank's application to this Court for clarification of the Amended February 23 Order, demanding that Citibank "refrain from submitting requests for new clarifications that only confuse the market and the Bondholders regarding the scope of their rights and the effects of the *pari passu* measures adopted by Judge Griesa" and instead "continue acting in favor and for the protection of the Holders of the Argentine Exchange Bonds, who are not affected by the aforementioned court orders."  *Id.*

Aside from this letter, Citibank has proffered no evidence of Argentine threats since the Amended February 23 Order took effect in June, nor has NML had any opportunity to discover what other documents or communications Citibank may have that corroborates or disproves this

evidence of purported threats.  Indeed, given Citibank's close and long-standing working relationship with Argentina—including, for example, serving as the underwriter on the 2010 bond exchange offer—it defies credulity that Argentina would indeed not only make such drastic threats, but would actually enforce them, against a banking institution with such deep historical roots in the country, when doing so could impose great costs on Argentina itself.

This appeal is scheduled to be heard on September 18, 2014, with a decision expected to be rendered in advance of September 30, 2014, when the next scheduled interest payment on the Argentine Law Exchange Bonds is due. *See* Declaration of Kevin S. Reed ("Reed Decl.") ¶¶ 6, 8.

**B.    NML's August 15, 2014 Subpoena**

In light of Citibank's arguments concerning Argentina's threats, on August 15, 2014, NML served a subpoena on Citibank (the "Subpoena") requesting information concerning Argentina's actions, including any purported pressure that Argentina has placed on Citibank Argentina to pay the Argentine Law U.S. Dollar Exchange Bonds notwithstanding this Court's orders.  Specifically, the Subpoena requested production of documents and communications between Citibank and Argentina, during a three-month period, related to Citibank's June 19, 2014 Motion for Clarification of the Amended February 23 Order, NML's July 10, 2014 Motion for Reconsideration of the June 27 Order, and the payment of the Argentine Law Exchange Bonds.  *See* Reed Decl., Ex. A at 3 (Request Nos. 1-3).  The Subpoena also requested all documents related to any "[r]equests, demands, inducements or other efforts by Argentina to cause Citibank either to make payment on the Argentine Law [Exchange] Bonds, or to cause payment on the Argentine Law [Exchange] Bonds to be made, on or before September 30, 2014."  *Id.* at 9 (Request No. 4).   In addition, the Subpoena commanded the appearance of the person most knowledgeable to be deposed on the same topics as the requests address.  *Id.* Because this discovery is critical to testing the nature and veracity of arguments for reversal of

this Court's order that Citibank itself has put at issue in this Court and on appeal, NML requested expedited production of documents and a witness by August 22, 2014, and September 5, 2014, respectively. *Id.*

On August 22, 2014, Citibank served Objections and Responses to the Subpoena, refusing to produce any documents on any of the requested topics or to produce a witness for deposition. NML thereafter met and conferred with Citibank on August 26, 2014, regarding its objections. Citibank declined at the meet and confer to augment or modify its position on its objections, but indicated that it would consider the Subpoena further and revert with a response. On the morning of August 28, 2014, Citibank sent an email to counsel for NML, tellingly representing that "the only written communication from the Republic of Argentina to Citibank Argentina regarding the September 30, 2014 payment on the Argentine Law Bonds is the letter dated August 6, 2014 from Finance Secretary Lopez of which you are already aware." Reed Decl. ¶ 12. The careful wording of this statement speaks volumes. For one thing, it fails to address the existence or non-existence of written communications between Citibank and Argentina regarding any payments other than the September 30 payment on the Argentine Law Exchange Bonds. Nor does it address written communications concerning Citibank's motion for clarification and NML's motion for reconsideration, thereby implying by omission that such documents actually exist. Neither does this representation address the existence or non-existence of any oral communications bearing on these matters, for which a deponent is needed to give testimony. Indeed, given that Citibank made claims of Argentine threats in its papers before this Court preceding the July 28 Order—before the August 6, 2014 letter from Argentina's Finance Secretary was sent to Citibank Argentina—it stands to reason that additional evidence of such

threats must exist.  Apart from this singular representation, Citibank asserted that it intended to stand on its objections with respect to the Subpoena.  *Id.*

In light of Citibank's refusal to cooperate with NML's discovery efforts, NML now seeks the Court's urgent intervention to compel Citibank to produce documents and a deponent in response to the Subpoena.

## ARGUMENT

"A party may move for an order compelling disclosure or discovery," *see* Fed. R. Civ. P. 37(a)(1), where the discovery is reasonable and relevant.  Relevance is defined as "regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).  "The boundaries of Rule 26 have 'been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Schoolcraft v. City of New York*, 10 CIV. 6005 RWS, 2012 WL 2161596 (S.D.N.Y. June 14, 2012) *reconsideration denied,* 10 CIV. 6005 RWS, 2012 WL 2958176 (S.D.N.Y. July 20, 2012) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)).

## I.     THE SUBPOENAED INFORMATION IS RELEVANT AND NECESSARY

The Subpoena seeks information that directly pertains to allegations that Argentina is attempting to evade the judgments of this Court by threatening Citibank in a manner intended to induce Citibank to process payments on the Exchange Bonds in violation of the Amended February 23 and July 28 Orders.  Citibank—which maintains locally-regulated banking operations in Argentina—contends that it is caught in an untenable position, subject to conflicting "directives—one from a United States court and one from the sovereign state in

which its branch operates." Citibank Appeal Br. at 2.   Assuming the veracity of Citibank's claims, Citibank's concerns result not from this Court's lawful orders, but rather from Argentina's refusal to heed the results of an adjudication to which Argentina unquestionably consented.

   To the extent that Citibank contends it is facing threats and coercive tactics from Argentina to ensure its payment of the Argentine Law Exchange Bonds in derogation of the Amended February 23 Order, NML is entitled to discovery on such threats and on the measures that Argentina has taken, or has threatened to take, against Citibank to evade that Order.  Indeed, the Amended February 23 Order, by its terms, "PROHIBIT[S] [Argentina] from taking action to evade the directives of this ORDER, render it ineffective, or to take any steps to diminish the Court's ability to supervise compliance with the ORDER" (Dkt. 252 at ¶ 4), which is precisely what Citibank now alleges that Argentina is doing by way of threats.

   By the same token, to the extent that Citibank is assisting Argentina's violation of the Amended February 23 Order by acting in concert with Argentina to evade restrictions on Citibank Argentina's payment of the Argentine Law Exchange Bonds, NML is equally entitled to discovery into this relationship.  (*See id.* at ¶¶ 3-4 ).  The Amended February 23 Order explicitly entitles NML to take discovery on these matters.  (*See id.* at ¶ 3 ("NML shall be entitled to discovery to confirm the timing and amounts of the Republic's payments under the terms of the Exchange Bonds; the amounts the Republic owes on these and other obligations; and such other information as appropriate to confirm compliance with this ORDER.")).

   Citibank has no valid basis for refusing to comply with this requested discovery.   Indeed, this discovery is all the more appropriate because Citibank injected the issues covered by the Subpoena into proceedings before this Court and the Second Circuit as a justification for

exempting itself and the Argentine Law Exchange Bonds from the Amended February 23 Order. In light of the arguments that Citibank itself has raised, it cannot now seek to shield itself from NML's efforts to test the scope and veracity of its assertions.

Furthermore, this discovery is urgently needed given the pendency of these issues on appeal in the Second Circuit.  The briefing in the Second Circuit is scheduled to be complete on September 5, and the appeal is to be argued on September 18, 2014.  Even if NML does not receive the requested discovery by the close of briefing—which seems likely given Citibank's recalcitrance—it may bring any relevant information to the Second Circuit's attention either prior to or following oral argument by way of a letter under Rule 28(j) of the Federal Rules of Appellate Procedure.   However, given that Citibank has requested a decision to be issued before the next scheduled payment date of September 30, NML urgently needs access to the information that bears directly on Citibank's asserted reasons for non-compliance with the Amended February 23 Order on appeal.

This information is critical to the Second Circuit's evaluation of the merits of Citibank's arguments and of Argentina's continued attempts to evade this Court's judgments.  Moreover, the narrow time period called for by the Subpoena—which requests responsive, non-privileged documents only from June 16, 2014, to the present—should not result in a time-intensive or burdensome collection and production.  The discrete topics noticed for deposition also require little preparation and are expected to result in a short and limited deposition for which extended advance notice is not needed.

Given the urgency of the need for the requested information and Citibank's unwillingness to comply with the Subpoena, this Court's intervention is necessary.  Accordingly, the Court should order Citibank to fully comply with the Subpoena by producing a witness for deposition

and all responsive documents starting immediately upon the issuance of the Court's order and, in any event, to be completed by no later than September 15, 2014, which is three days before the argument on Citibank's appeal will be heard by the Second Circuit.

## II.   CITIBANK'S OBJECTIONS ARE MERITLESS

The objections that Citibank has raised in response to the Subpoena do not support its failure to comply.  To the contrary, each objection can and should be swiftly and soundly rejected.

### A.   The Subpoena Requests Are Appropriately Tailored

Citibank objects to the Subpoena on the ground that the requests are "not tailored to lead to the discovery of information reasonably relevant to the satisfaction of Plaintiffs judgments." *See* Reed Decl., Ex. B (General Obj. 2; Responses to Request Nos. 1-4; Objections to Topic Nos. 1-4.)  This is a distraction.[2]  As Citibank is well aware, these requests go directly to Citibank's recent assertions that Argentina has threatened punitive measures if Citibank complies with the Amended February 23 Order, pursuant to which NML is entitled to payment by Argentina.   It is therefore appropriately tailored to lead to information that is directly relevant to the satisfaction of Plaintiffs' claims.

In any event, the Amended February 23 Order explicitly grants NML the right to discovery relating to the enforcement of and compliance with that order.  (*See* Dkt. No. 252 at ¶ 3.)  That is precisely what NML is seeking here.  Citibank has asserted in briefing to this Court and to the Second Circuit that it is being threatened with "grave sanctions" by Argentina if it

---

[2]   To the extent that Citibank contends that the requests are "overbroad and unduly burdensome" (Reed Decl., Ex. B (General Obj. 5; Responses to Request Nos. 1-4;  Objections to Topic Nos. 1-4)), this is belied by the discrete set of topics and narrow time period called for in the requests.  Further, NML attempted to limit the burden on the bank by noting the limited initial scope, and offering to discuss the narrowing of the subpoena.  *See* Reed Decl. ¶ 12.

complies with the Amended February 23 Order.  If true, Argentina's conduct certainly

constitutes an effort to "evade the directives of" the Amended February 23 Order.  (Dkt. No. 252

at ¶ 4.)  This discovery is therefore not only relevant, it is critical to the proper and expeditious

enforcement of that Order in the face of the impending payment on the Argentine Law Exchange

Bonds on September 30, which Argentina has threatened to attempt to make to the Exchange

Bondholders without ratable payment to NML.

**B.**       **The Pending Appeal Does Not Stay Discovery, And In Fact Requires**
          **Expedited Discovery**

Citibank's objection that "production of documents at this time is unwarranted and

unnecessary due to the pendency in the Second Circuit of Citibank's appeal from the July 28

Order" is misguided.  Reed Decl., Ex. B (General Obj. 1; Responses to Request Nos. 1-4;

Objections to Topic Nos. 1-4.)  In fact, precisely the opposite is true.  Not only is the pendency

of the appeal an invalid basis to delay production—no party has moved for nor obtained a stay of

proceedings in this Court pending appeal—but the pendency of the appeal counsels *in favor* of

expedited production here.

As described above, the Subpoena requests information that is directly relevant to

Citibank's contentions that it should not be required to comply with the Amended February 23

Order and July 28 Order.  It has put these reasons front and center in its appeal of the July 28

Order.  Indeed, Citibank has selectively placed *new factual material* before the Second Circuit

via its August 13, 2014 Rule 28(j) submission, which it expects the Second Circuit to rely on

without giving NML the benefit of discovering what other factual material Citibank may have on

this subject.  *See* Letter of Karen E. Wagner to Catherine O'Hagan Wolfe, Clerk of Court, U.S.

Court of Appeals for the Second Circuit, *NML Capital, Ltd. v. Republic of Argentina*, No. 14-

2702 (2d Cir. August 13, 2014) (D.E. 47).  NML is not only entitled to obtain discovery into the

nature and veracity of Citibank's assertions, but also is entitled to do so, at a minimum, equally as expeditiously as Citibank's appeal is scheduled to be decided.  It is Citibank who has fast-tracked its appeal in order to obtain a decision in advance of the scheduled September 30 payment on the Argentine Law U.S. Dollar Exchange Bonds.  Reed Decl. ¶¶ 5-6, 8.  NML should not be prejudiced in that appeal by virtue of Citibank's refusal to provide information on a similarly expedited timeline.

C.   **Citibank Must Produce Documents Within Its Actual Control, Including From Citibank Argentina**

Citibank's objection that the Subpoena calls for production of documents from overseas branches, including its Argentine branch, is equally unavailing.  *See* Reed Decl., Ex. B (General Obj. 9; Objections to Definition 2).  That objection has been repeatedly raised in the past and rejected by this Court.   Indeed, the Court has already ruled that Citibank must produce documents and information from Citibank's corporate affiliates within its actual control.  *See* Dkt No. 314-2 at 7; *see also* Dkt. No. 317-2 at 15:21-16:15.  In its September 25, 2013 order compelling compliance with bank subpoenas issued by the Aurelius Plaintiffs, the Court explicitly rejected the extraterritoriality objection raised by those banks in ruling that "the head office of a bank with foreign operations can obtain information from its foreign operations and, therefore, can be subject to discovery" and ordering the banks to produce documents "wherever in the world [discovery] may be located."   *See* Dkt. No. 317-2 at 32:20-33:1; Dkt. No.  301 at ¶ 5; *see also* Dkt. No. 317-14 at 2  ("Since plaintiffs have served a subpoena on Citibank, N.A., a New York-based institution, Citibank N.A. is required to produce information within its control, regardless of where the information is physically located.").

The Court's prior rulings on this issue are particularly applicable in the case of Citibank Argentina, which Citibank itself has conceded is not a separately-incorporated entity, but rather

"an Argentine branch of a U.S. financial institution" and "a branch of Citibank located in Buenos Aires."  Citibank Appeal Br. at 5, 8.  *See also generally Greenbaum v. Handlesbanken*, 26 F. Supp. 2d 649, 653 (S.D.N.Y. 1998) ("New York has long adhered to the general rule that 'when considered with relation to the parent bank, [branches] are not independent agencies; they are, what their name imports, merely branches, and are subject to the supervision and control of the parent bank, ....'"); *Matter of Liquidation of the New York Agency and Other Assets of Bank of Credit and Commerce Int'l, S.A.,* 90 N.Y.2d 410, 422 (1997) ("A branch or agency of a bank is not a separate entity."). Documents located at Citibank Argentina are therefore unquestionably under Citibank's control, and must be produced in response to the Subpoena.

### D. Citibank's Remaining Objections Have Been Previously Rejected By This Court And Can Be Swiftly Rejected Again

Citibank also makes a number of other, equally unavailing, objections that can and should be swiftly rejected.

*First*, Citibank objected on the grounds that the Subpoena seeks documents (a) from jurisdictions subject to foreign bank secrecy laws, (b) regarding property located outside the United States, and (c) that must be procured pursuant to the Hague Convention. *See* Reed Decl., Ex. B (General Objs. 6-9, 12).   These objections have each been considered and rejected by the Court in prior rulings involving third-party bank subpoenas issued by NML and the Aurelius Plaintiffs.

Indeed, any purported objection based on foreign bank secrecy laws is, at this point, nothing but a red herring.  The Court conducted a thorough analysis of the foreign laws of particular countries raised by BNA in response to the 2010 subpoenas and concluded, upon a weighing of all relevant factors, that discovery of foreign documents was warranted.  *See NML Capital, Ltd. v. Republic of Argentina*, 2013 WL 491522, at *12 (S.D.N.Y. Feb. 8, 2013)

(concluding that "compliance with the subpoena is warranted in this case even if it is in violation of foreign countries' laws."). Citibank has identified no new arguments in this regard that would exempt it from the Court's prior rulings on this issue.

Similarly, Citibank's objection that the Subpoena seeks disclosure of information regarding assets held in foreign jurisdictions ignores the Court's repeated rulings that NML may seek discovery regarding Argentine assets anywhere in the world. *See*, *e.g.*, Dkt. No. 317-15 33:6-34:4 ("[W]here you've got . . . judgments issued in this Court, and the possibility of enforcing those judgments in a foreign country, I would think that there should be discovery here. . . . So, it would be my ruling that they are entitled, in principle, to reasonable discovery about assets in foreign countries."); Dkt. No. 317-16 at 13:22-14:3 ("I have expanded the discovery to include foreign countries.").

The Court has also already ruled that the banks, including Citibank, are required to produce information in response to subpoenas issued in this action without requiring resort to the Hague Convention. *See* Dkt. No. 317-5 at 56:5-62:2 (counsel arguing in response to the 2010 subpoenas to Bank of America and BNA that the Hague Convention applies); Dkt. No. 188 (order compelling production in response to the 2010 subpoenas over such objection); Dkt. No. 317-2 at 17:25-18:10  (discussing objection based on the Hague Convention); Dkt. No. 301 (compelling production in response to Aurelius Subpoenas and denying Argentina's motions to quash the Aurelius and NML Subpoenas over such objection).  No different result is warranted here.  *See also Societe Nationale Industreille Aerospatiale v. U.S. Dist. Court for S. Dist. Of Iowa*, 482 U.S. 522, 539-45 (1987) (explicitly rejecting argument that parties seeking documents and information held abroad must first resort to the Hague Convention before initiating discovery procedures under the Federal Rules of Civil Procedure); *First Am. Corp. v. Price*

16

*Waterhouse LLP*, 154 F.3d 16, 21-23 (2d. Cir. 1998) (declining to "adopt a rule mandating primary resort to the Hague Conventions as the means of obtaining discovery" from a foreign non-party).

*Second*, Citibank objects on the grounds that response to the Subpoena might (a) "require the production of documents or information in respect of which Citibank owes a duty of nondisclosure to a third party," (b) seek the production of documents protected by the attorney client privilege, the undefined "right to privacy,"  or "any privilege," or (c) seek the production of documents that contain "confidential, nonpublic, competitively sensitive business information."  Reed Decl., Ex. B (General Objs. 12-14).    As an initial matter, the Subpoena does not call for the production of attorney-client privileged documents, and NML is not seeking such documents.  NML rather expects Citibank to adhere to the ordinary protocol of withholding privileged documents and including them on a privilege log.  With respect to confidentiality concerns, as this Court is aware, there is a confidentiality order in place in these cases to protect against disclosure to third parties.  Accordingly, these boilerplate objections do not raise a hurdle to compliance here.

## CONCLUSION

For the foregoing reasons, NML respectfully requests that the Court order Citibank to comply fully with the Subpoena on an expedited basis by producing a witness for deposition and all responsive document by no later than September 15, 2014.

DATED:        August 28, 2014

                                   Respectfully submitted,

                                   */s/ Kevin S. Reed*
                                   Kevin S. Reed
                                   kevinreed@quinnemanuel.com
                                   QUINN EMANUEL URQUHART
                                   & SULLIVAN
                                   51 Madison Avenue, 22nd Floor
                                   New York, NY 10010
                                   Telephone:  (212) 849-7000

                                   *Counsel for Plaintiff NML Capital, Ltd.*