UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NML CAPITAL, LTD.,

                Plaintiff,

      - against -

THE REPUBLIC OF ARGENTINA,

                Defendant.

03 Civ. 8845 (TPG)
05 Civ. 2434 (TPG)
06 Civ. 6466 (TPG)
07 Civ. 1910 (TPG)
07 Civ. 2690 (TPG)
07 Civ. 6563 (TPG)
08 Civ. 2541 (TPG)
08 Civ. 3302 (TPG)
08 Civ. 6978 (TPG)
09 Civ. 1707 (TPG)
09 Civ. 1708 (TPG)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF CITIBANK, N.A.'S
CROSS-MOTION TO QUASH, MODIFY, OR FOR A PROTECTIVE ORDER
AND IN OPPOSITION TO NML'S MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

P<small>AGE</small>

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ........................................................................................................1

      A.      Citibank's First Motion, Made More Than Fifteen Months Ago, Alerted NML to the Severe Risks Its Argentine Branch Faces ...........................................1

      B.      NML Never Challenged Citibank's Evidence Regarding the Severe Risks Citibank Argentina Faces...........................................................................................2

      C.      NML Itself Introduced Evidence of the Severe Risks Citibank Argentina Faces ........................................................................................................................3

      D.      Citibank's Expedited Appeal to the Second Circuit .................................................4

      E.      The Subpoena.............................................................................................................5

ARGUMENT ...........................................................................................................................7

I.      NML IS NOT ENTITLED TO DISCOVERY TO SUPPLEMENT THE RECORD ON APPEAL...............................................................................................................7

II.     THE SUBPOENAED INFORMATION IS IRRELEVANT AND UNNECESSARY.......9

III.    CITIBANK CANNOT BE COMPELLED TO PRODUCE A WITNESS FOR DEPOSITION ..............................................................................................................12

IV.    THE SUBPOENA SERVES NO PURPOSE OTHER THAN TO HARASS CITIBANK AND DISTRACT IT FROM ITS EXPEDITED APPEAL TO THE SECOND CIRCUIT........................................................................................................15

CONCLUSION.......................................................................................................................17

# TABLE OF AUTHORITIES

### CASES

PAGE(S)

*Bersch v. Drexel Firestone, Inc.*,
519 F.2d 974 (2d Cir. 1975).........................................................................8

*In re Biovail Corp. Sec. Litig.*,
247 F.R.D. 72 (S.D.N.Y. 2007) ..................................................................12

*Braham v. Clancy*,
425 F.3d 177 (2d Cir. 2005), *overruled on other grounds as recognized by,*
*Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007) .............................................8

*Corbett v. eHome Credit Corp.*,
No. 10-cv-26, 2010 WL 3023870 (E.D.N.Y. Aug. 2, 2010) ....................9, 10

*Cummings v. Gen. Motors Corp.*,
No. 00-cv-1562, 2002 WL 32713320 (W.D. Okla. June 18, 2002)............13

*Deer Park Spring Water, Inc. v. Appalachian Mountain Spring Water Co.*,
No. 89 Civ. 4029, 1991 WL 73840 (S.D.N.Y. Apr. 29, 1991)..................16

*Dictograph Prods. Co. v. Sonotone Corp.*,
231 F.2d 867 (2d Cir. 1956).........................................................................8

*Garcia v. Bloomberg*,
No. 11 Civ. 6957, 2012 WL 3127173 (S.D.N.Y. July 27, 2012) .............9

*Estate of Klieman v. Palestinian Authority*,
293 F.R.D. 235 (D.D.C. 2013)....................................................................14

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982)........................................................................................9

*Int'l Bus. Machs. Corp. v. Edelstein*,
526 F.2d 37 (2d Cir. 1975)...........................................................................8

*Kirschner v. Klemons*,
No. 99-cv-4828, 2005 WL 1214330 (S.D.N.Y. May 19, 2005) .............10

*Koch v. Pechota*,
No. 10-cv-9152, 2012 WL 4876784 (S.D.N.Y. Oct. 12, 2012)...............................................11

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
No. 03-cv-1382, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ...........................................10

*NML Capital, Ltd. v. Republic of Argentina*,
No. 03 Civ. 8845 (TPG), 2011 WL 3897828 (S.D.N.Y. Sept. 2, 2011)................................13

*NML Capital Ltd. v. Republic of Argentina*,
No. 2:14-cv-492, 2014 WL 3898021 (D. Nev. Aug. 11, 2014)..............................................14

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)...........................................................................................................7, 16

*Polanco v. NCO Portfolio Mgmt., Inc.*,
No. 11-cv-7177, 2013 WL 3733391 (S.D.N.Y. July 15, 2013).............................................13

*Price Waterhouse LLP v. First Am. Corp.*,
182 F.R.D. 56 (S.D.N.Y. 1998) ...........................................................................................15

*In re Six Grand Jury Witnesses*,
979 F.2d 939 (2d Cir. 1992)..................................................................................................16

*Sokolow v. Palestine Liberation Org.*,
No. 04-cv-397, 2012 WL 3871380 (S.D.N.Y. Sept. 6, 2012) ..............................................14

*In re Tremont Sec. Law, State Law, and Ins. Litig.*,
No. 08 Civ. 11117, 2013 WL 795974 (S.D.N.Y. Mar. 1, 2013) .............................................8

*Trs. of Columbia Univ. v. Betancourt*,
No. 04 Civ. 3638, 2005 WL 2007890 (S.D.N.Y. Aug. 22, 2005) ...........................................8

*United States v. Hicks*,
278 F. App'x 976 (11th Cir. 2008) ..........................................................................................7

*Wells v. Varner*,
No. 03-727, 2006 WL 3742743 (E.D. Pa. Dec. 15, 2006).......................................................9

*Wultz v. Bank of China, Ltd.*,
298 F.R.D. 91 (S.D.N.Y. 2014) ............................................................................................15

STATUTES & RULES

Fed. R. App. P. ...................................................................................................7

Fed. R. Civ. P. 26 ...............................................................................................1

Fed. R. Civ. P. 26(b) ...............................................................................9, 10, 12

Fed. R. Civ. P. 26(g) ..........................................................................................16

Fed. R. Civ. P. 30 ..............................................................................................12

Fed. R. Civ. P. 30(b) ..........................................................................12, 13, 14, 15

Fed. R. Civ. P. 45 ..............................................................................1, 13, 14, 15

Fed. R. Civ. P. 45(c) ....................................................................................13, 15

Fed. R. Civ. P. 45(d) ....................................................................................12, 14

Non-party Citibank, N.A. ("Citibank") respectfully submits this Memorandum of Law in support of its cross-motion, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, to quash, modify, or for a protective order with respect to the subpoena *duces tecum* and *ad testificandum* dated August 15, 2014 (the "Subpoena") that was served on Citibank by counsel for Plaintiff NML Capital, Ltd. ("NML"), and in opposition to NML's motion by order to show cause to compel the production of documents and a witness for deposition in response to the Subpoena.

## PRELIMINARY STATEMENT

NML seeks expedited discovery from non-party Citibank relating to an order that is now on appeal.  The Federal Rules of Appellate Procedure have no provision for discovery.  The Federal Rules of Civil Procedure likewise have no provision for discovery relating to an order on appeal.  The discovery sought by NML is entirely inappropriate, and the fact that NML used the pendency of the appeal as a basis for moving *ex parte* to seek expedition demonstrates that this motion was brought only to harass Citibank.

## STATEMENT OF FACTS

### A.    Citibank's First Motion, Made More Than Fifteen Months Ago, Alerted NML to the Severe Risks Its Argentine Branch Faces

On May 22, 2013—more than fifteen months ago—Citibank moved for clarification of the order entered by this Court on February 23, 2012 and subsequently amended on November 21, 2012 (as amended, the "Amended February 23 Order").  In support of its motion, Citibank submitted expert declarations detailing the grave regulatory, civil, and criminal risk to which its branch in Argentina ("Citibank Argentina") and the branch's employees would be exposed if the Amended February 23 Order were construed to apply to payments on certain bonds issued by the Republic of Argentina (the "Republic")—governed by Argentine law and payable in

Argentina—for which Citibank Argentina acts as custodian (the "Argentine Law Bonds").  *See* Declaration of Federico Elewaut, May 22, 2013 (Dkt. No. 461); Declaration of Manuel Beccar Varela, May 21, 2013 (Dkt. No. 462); Declaration of Maximiliano D'Auro, May 21, 2013 (Dkt. No. 463).[1]

At that time, this Court declined to entertain Citibank's motion due to the then-pendency of an appeal from the Amended February 23 Order.  Order, May 24, 2013 (Dkt. No. 464).

NML never sought any discovery relating to Citibank's initial motion.

## B.   NML Never Challenged Citibank's Evidence Regarding the Severe Risks Citibank Argentina Faces

On June 19, 2014, after the Supreme Court denied the Republic's petition for *certiorari,* Citibank renewed its motion for clarification of the Amended February 23 Order.  Relying on the same expert declarations it had submitted to the Court in May 2013, Citibank once again outlined the grave regulatory, civil, and criminal risk to which Citibank Argentina and its employees would be exposed if the Amended February 23 Order were construed to apply to payments on the Argentine Law Bonds.  *See* Memorandum of Law in Support of Citibank's Renewed Motion, June 19, 2014, at 7–8 (Dkt. No. 550).

In its opposition to Citibank's motion for clarification, NML characterized Citibank's evidence of the risks faced by Citibank Argentina as "speculat[ive]," but did not offer any evidence to refute Citibank's assertions.  Plaintiffs' Opposition, June 26, 2014, at 21 (*Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 09 Civ. 8757 (TPG) ("*Aurelius*"), Dkt. No. 396).  Once again, NML did not seek discovery.

---

[1] Unless otherwise indicated, "Dkt. No." refers to the assigned docket number in *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG).

On June 27, 2014, the Court granted Citibank's motion and issued an order (the "June 27 Order") clarifying that the Amended February 23 Order did not as a matter of law prohibit payments by Citibank Argentina on the Argentine Law Bonds.  Order, June 27, 2014 (Dkt. No. 547).

NML then moved for partial reconsideration of the June 27 Order.  Citibank opposed that motion, arguing, *inter alia*, that NML had failed to refute or even address the uncontradicted evidence submitted by Citibank regarding the potential consequences to Citibank Argentina and its employees of violating Argentine law.  *See* Citibank's Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Reconsideration, July 17, 2014, at 6 (Dkt. No. 591).  NML failed yet again to seek discovery or to refute Citibank's evidence.

On July 28, 2014, the Court granted in part NML's motion for partial reconsideration and rescinded the June 27 Order as to future payments on U.S. Dollar-denominated Argentine Law Bonds.  Order, July 28, 2014 (Dkt. No. 613) (the "July 28 Order").

Citibank filed a notice of appeal from the July 28 Order the following day.  Notice of Appeal, July 29, 2014 (Dkt. No. 618).

**C.     NML Itself Introduced Evidence of the Severe Risks Citibank Argentina Faces**

On August 8, 2014, NML submitted to the Court a letter dated August 6, 2014 from the Republic's Secretary of Finance to Citibank Argentina (the "Finance Secretary Letter").  Letter from Robert A. Cohen to Hon. Thomas P. Griesa, Aug. 8, 2014, Ex. A (Dkt. No. 635).  The Finance Secretary Letter reminded Citibank Argentina of its obligations, as a financial institution licensed in Argentina, to comply with Argentine law and to meet its obligations to its clients.  *See id.*  The Finance Secretary Letter also made clear that the Republic expects its banks,

3

including Citibank Argentina, to comply with Argentine law at all times, and that the Republic

will enforce Argentine law within its sovereign territory.  *Id.*  Counsel for NML understood the

import of the Finance Secretary letter.  As he told this Court:

> Argentina told Citibank that it intends to defy the Court's orders
> when the next interest payment is due (the "upcoming payment"),
> and wants assurances from Citibank that it will defy the Court's
> pari passu injunction.

*Id.* at 1.

On August 21, NML and other plaintiffs submitted another letter to the Court, this time

attaching a transcript of an August 19, 2014 speech by President Cristina Fernández de Kirchner

(the "President's Speech").  Letter from Matthew McGill to Hon. Thomas P. Griesa, Aug. 21,

2014 (*Aurelius*, Dkt. No. 483).  In the Speech, the President stated that Citibank Argentina "is an

Argentine bank that has to comply with Argentine laws," and noted that if Citibank Argentina is

unable to "extract itself from the[] circumstances of illegality and illegitimacy" surrounding this

Court's orders, it might "los[e] its ability to exercise its authority as a bank, here in the Argentine

Republic."  *Id.*, Ex. A at 6.  Plainly, once again, counsel for plaintiffs understood that the

President's Speech was intended to put pressure on Citibank Argentina to obey the laws of

Argentina.

### D.  Citibank's Expedited Appeal to the Second Circuit

Citibank Argentina also recognized that it will face conflicting obligations when, on

September 30, the Republic makes payments that it expects Citibank Argentina to transfer to its

customers.  Therefore, Citibank requested that the Second Circuit expedite briefing and argument

of its appeal of the July 28 Order.  NML and the other plaintiffs opposed Citibank's motion.

On August 13, 2014, pursuant to Federal Rule of Appellate Procedure 28(j), Citibank submitted to the Second Circuit a copy of the Finance Secretary Letter—*the very same letter that NML had submitted to this Court five days earlier.*[2]  Letter from Karen E. Wagner to Catherine O'Hagan Wolfe, *Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 14-2689(L), filed Aug. 13, 2014, Ex. A (Dkt. No. 46).  Citibank also submitted a translation of Citibank Argentina's response to the Finance Secretary Letter.  *Id.*, Ex. C.

The Second Circuit granted Citibank's motion to expedite the next day, on August 14, 2014, and set the following schedule: Citibank's principal brief was due by August 15, 2014; the principal briefs of NML and the other appellees were due by August 29, 2014; Citibank's reply brief is due by September 5, 2014; and oral argument will be held on September 18, 2014.  Expedited Scheduling Order, *Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 14-2689(L), Aug. 14, 2014 (Dkt. No. 56).

### E.     The Subpoena

On August 15, 2014—*the day after the Second Circuit granted Citibank's motion to expedite*—NML served the Subpoena.  The Subpoena demanded production of documents on August 22, 2014, just seven days after it was served, and a deposition on September 5, 2014, the due date specified by the Second Circuit for Citibank's reply brief.  *See* Declaration of Kevin S. Reed in Support of NML's Motion ("Reed Decl."), Aug. 28, 2014 (Dkt. No. 656), Ex. A at 1.

The Subpoena demanded documents and testimony regarding the following categories of documents:

---

[2] NML's contention that this "letter had not been previously submitted to this Court nor known to NML" is a blatant falsehood.  NML's Mem. Law in Support of its Motion, Aug. 28, 2014, at 6 (Dkt. No. 655) ("NML Br.").

1.    All documents generated during the Relevant Time Period containing or reflecting communications with Argentina concerning payments on the Argentine Law Bonds.

2.    All documents containing or reflecting communications with Argentina concerning the Citibank Motion for Clarification or the June 27 Order.

3.    All documents containing or reflecting communications with Argentina concerning the Motion for Reconsideration or the July 28 Order.

4.    All documents containing, reflecting or concerning requests, demands, inducements or other efforts by Argentina to cause Citibank either to make payment on the Argentine Law Bonds, or to cause payment on the Argentine Law Bonds to be made, on or before September 30, 2014.

*Id.* at 8-9.

Citibank timely served objections to the Subpoena on August 22, 2014.  *Id.*, Ex. B.  At NML's request, a meet and confer was then scheduled for August 26, 2014.  During the meet and confer, NML's counsel focused solely on Request No. 4 in the Subpoena.  NML's counsel stated that he was aware of the Finance Secretary Letter, but wanted to know whether there were other communications from the Republic demanding that Citibank Argentina make payment on the Argentine Law Bonds—i.e., discovery *to confirm undisputed facts already in the appellate record*.

Counsel for NML asked that Citibank respond within two days.  Counsel for Citibank emailed counsel for NML on August 28, 2014, as requested, to confirm that "the only written communication from the Republic of Argentina to Citibank Argentina regarding the September 30, 2014 payment on the Argentine Law Bonds" was the Finance Secretary Letter.  *Id.* ¶ 12. NML did not respond to Citibank's email, or otherwise attempt to continue to meet and confer. Instead, NML sought from this Court an order to show cause why Citibank should not be compelled to comply with the Subpoena.

6

## ARGUMENT

NML argues that its document and deposition requests are "urgently needed given the pendency of these issues on appeal in the Second Circuit."  NML Br. at 11.  But NML is not entitled to discovery with respect to Citibank's pending appeal to the Second Circuit.  Nor is it entitled to discovery of information that is irrelevant to its claims and is, indeed, undisputed and already in the record.  Finally, NML is not entitled to the deposition testimony it seeks.[3]

"In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978).  Here, NML's stated purpose for its Subpoena does not come within the discovery rules.  The Subpoena's only true purpose is to harass Citibank and distract it from the expedited appeal.  This Court should deny NML's motion and grant Citibank's cross-motion to quash, modify, or for a protective order.

## I.     NML IS NOT ENTITLED TO DISCOVERY TO SUPPLEMENT THE RECORD ON APPEAL

Throughout its motion, NML complains that urgent discovery is necessary to "bring any relevant information to the Second Circuit's attention."  NML Br. at 11.  But NML cites no authority suggesting it can seek such discovery, and indeed, there is no mechanism in the Federal Rules of Appellate Procedure for discovery in aid of an appeal.  *See generally* Fed. R. App. P.; *see also, e.g.*, *United States v. Hicks*, 278 F. App'x 976, 976 (11th Cir. 2008) (denying motions to compel because "the Federal Rules of Appellate Procedure [do not] authorize discovery on appeal").

---

[3] Additional reasons why the Subpoena should be quashed and NML's motion should be denied are set forth in Citibank's objections to the Subpoena, which are incorporated herein by reference.  *See* Reed Decl., Ex. B.

This is unsurprising, given that the Courts of Appeals generally "will not consider material not included in the record on appeal." *Braham v. Clancy*, 425 F.3d 177, 184 (2d Cir. 2005), *overruled on other grounds as recognized by*, *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007); *accord Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 998 n.55 (2d Cir. 1975), *abrogated on other grounds by Morrison v. Nat'l Bank of Australia Ltd.*, 561 U.S. 247 (2010) ("These papers were not called to the attention of the district court and thus are not properly before us."); *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975) ("[A]bsent extraordinary circumstances, federal appellate courts will not consider rulings or evidence which are not part of the trial record."); *Dictograph Prods. Co. v. Sonotone Corp.*, 231 F.2d 867, 867 (2d Cir. 1956) (per curiam) ("On this appeal we may not consider depositions or other evidence that were not filed in the district court when [the District Judge] decided the motion.").[4]

Realizing that the Second Circuit would not entertain its inappropriate request, NML instead asks this Court to approve its appellate discovery. This Court, however, has traditionally been reluctant to interfere with matters pending before the Second Circuit. *See* Order, May 24, 2013 (Dkt. No. 464) ("The District Court declines to make any further comment on matters now before the Court of Appeals."); *see also In re Tremont Sec. Law, State Law, and Ins. Litig.*, No. 08 Civ. 11117, 2013 WL 795974, at *2 (S.D.N.Y. Mar. 1, 2013) (Griesa, J.) ("[B]ecause [the class members] have appealed the final judgment in this case . . . the court is not able to grant the motion under any circumstances."); *Trs. of Columbia Univ. v. Betancourt*, No. 04 Civ. 3638, 2005 WL 2007890, at *1 (S.D.N.Y. Aug. 22, 2005) (Griesa, J.) (explaining that "[j]urisdiction

---

[4] Although Citibank submitted the Finance Secretary Letter and Citibank Argentina's response to the Second Circuit in a Rule 28(j) letter, it did so to demonstrate the urgency requiring expedited treatment of its appeal. Those letters are not necessary to resolve the merits of Citibank's appeal.

follows the mandate" and that this Court's full jurisdiction was restored only after the Second Circuit issued its mandate with respect to each defendant's appeal).

This Court's reluctance is well-founded.  "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).  When a party moves in the District Court to compel discovery during the pendency of an appeal involving the same matters, the District Court thus lacks jurisdiction to entertain the motion.  *See Garcia v. Bloomberg*, No. 11 Civ. 6957, 2012 WL 3127173, at *1 (S.D.N.Y. July 27, 2012) (denying request for discovery related to pending appeal); *Wells v. Varner*, No. 03-727, 2006 WL 3742743, at *2 (E.D. Pa. Dec. 15, 2006) ("[U]nder *Griggs*, this Court lacks jurisdiction to rule on petitioner's Motion [seeking production of documents].").

Because the Second Circuit has exclusive jurisdiction over these matters, NML is precluded from seeking in this Court discovery in aid of its arguments on appeal, which in any case will not be considered by the Court of Appeals.

## II.     THE SUBPOENAED INFORMATION IS IRRELEVANT AND UNNECESSARY

The Federal Rules of Civil Procedure only permit discovery of information that is "relevant to a[] party's claim or defense,"  Fed. R. Civ. P. 26(b)(1), and "the burden is on the party issuing the subpoena to demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings."  *Corbett v. eHome Credit Corp.*, No. 10-cv-26, 2010 WL 3023870, at *2 (E.D.N.Y. Aug. 2, 2010) (internal quotation marks omitted); *accord Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03-cv-1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003).

In assessing whether the requesting party has met its burden, courts must consider whether "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and whether "the burden or expense of the proposed discovery outweighs its likely benefit" based on "the importance of the proposed discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C). "'A subpoena that pursues material with little apparent or likely relevance to the subject matter is likely to be quashed as unreasonable even where the burden of compliance would not be onerous' particularly where, as here, the person or entity on whom the demand is made is not a party to the action."  *Corbett*, 2010 WL 3023870, at *3 (quoting *Kirschner v. Klemons*, No. 99-cv-4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005)).

The information sought by the Subpoena is wholly irrelevant to the appeal, or to anything else.

*First*, NML has no basis for seeking discovery relating to "a full and fair picture of any coercion to which Citibank may have been subjected," NML Br. at 2, so that it may bring that picture "to the Second Circuit's attention," *id.* at 11.  As demonstrated above, such information will not be considered by the Court of Appeals, so it is irrelevant.  Moreover, in the response brief it filed in the Second Circuit on August 29—the day *after* seeking an order to show cause in this Court—NML stated that the Finance Secretary Letter "does not reflect any new development, but merely reiterates the Republic's existing view that Argentine law requires Citibank to facilitate payments on the Exchange Bonds at issue despite the [Amended February 23 Order]."  Response Br. of Plaintiff-Appellees NML Capital, Ltd. & Olifant Fund, Ltd., *Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 14-2689(L), filed Aug. 29, 2014, at

51 (Dkt. No. 130); *see also id.* at 39 (arguing that Citibank's "intentions . . . make no difference" to the issues on appeal).  NML has thus conceded that the discovery it seeks is irrelevant.

*Second*, as the above makes plain, the undisputed fact that Citibank is under pressure from the Republic to make payments to bondholders is already in the appellate record.  Further evidence would be cumulative.  *See Koch v. Pechota*, No. 10-cv-9152, 2012 WL 4876784, at *3 (S.D.N.Y. Oct. 12, 2012) (quashing non-party subpoena when evidence was already in the record and thus plaintiffs failed to "demonstrated that any additional [discovery] would reveal material and relevant information").

*Third*, NML has known since at least May 2013 of the risks to which Citibank Argentina and its employees would be exposed if the Amended February 23 Order were construed to apply to payments on the Argentine Law Bonds.  NML has never disputed those risks, or sought any discovery about those risks, before now.  To the contrary, *NML itself* introduced into the record before this Court concrete evidence of those risks in the form of the Finance Secretary Letter and the President's Speech.

*Fourth*, to the extent that NML is asserting that it seeks discovery relating to any potentially contumacious conduct by the Republic, the Court has already ruled that "it does not add anything to the scales of settlement to make a finding of contempt" against the Republic.  Aug. 21, 2014 Hr'g Tr. at 25:6-7.  Nor is there any basis for NML's absurd charge that Citibank may be "assisting Argentina's violation of the Amended February 23 Order."  NML Br. at 10.

*Finally*, NML's claim that the Amended February 23 Order explicitly entitles NML to take discovery on these matters, NML Br. at 10, is wrong.  The "explicit" language of the Order allows discovery from *the Republic*, not Citibank:

> NML shall be entitled to discovery to confirm the timing and amounts of the Republic's payments under the terms of the Exchange Bonds; the amounts the Republic owes on these and other obligations; and such other information as appropriate to confirm compliance with this ORDER.

Amended February 23 Order ¶ 3 (Dkt. No. 425); *see also* Fed. R. Civ. P. 26(b)(2)(C) (requiring that discovery be limited to the "more convenient, [or] less burdensome" source); Fed. R. Civ. P. 45(d)(3) (providing that subpoena causing "undue burden" to non-party must be quashed unless serving party "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship"); *In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) (where discovery "is sought from third parties, the Court must weigh the probative value of the information against the burden on production on said non-parties").  To Citibank's knowledge, NML has sought no discovery from the Republic.

## III.   CITIBANK CANNOT BE COMPELLED TO PRODUCE A WITNESS FOR DEPOSITION

To the extent that the Subpoena purports to notice a deposition, it is defective and unenforceable because it does not comply with the Federal Rules of Civil Procedure.

*First*, Rule 30 of the Federal Rules of Civil Procedure provides that a notice of deposition must specify "the deponent's name and address," or "[i]f the name is unknown, the notice must provide a general description sufficient to identify the person or the particular class or group to which the person belongs."  Fed. R. Civ. P. 30(b)(1).  Alternatively, Rule 30 provides that a subpoena "may name as the deponent a public or private corporation," in which case the "subpoena *must* advise a nonparty organization of its duty to . . . designat[e]" one or more persons to testify on its behalf.  Fed. R. Civ. P. 30(b)(6) (emphasis added).

The Subpoena does not comply with these requirements.  It does not identify or describe the person whom NML wishes to depose, and it was not issued pursuant to Rule 30(b)(6).  Citibank informed NML of these defects in the objections it served on August 22.  *See* Reed Decl., Ex. B at 2, 11-13.  NML has not corrected them.  The Subpoena must therefore be stricken.  *See, e.g., Polanco v. NCO Portfolio Mgmt., Inc.*, No. 11-cv-7177, 2013 WL 3733391, at *1 (S.D.N.Y. July 15, 2013) (striking deposition notice that was "improper on its face" because it failed to comply with Rule 30(b)(1)); *Cummings v. Gen. Motors Corp.,* No. 00-cv-1562, 2002 WL 32713320, at *4-6 (W.D. Okla. June 18, 2002), *aff'd*, 365 F.3d 944 (10th Cir. 2004) (granting motion for protective order where notice of deposition was not labeled as arising under Rule 30(b)(6)).

*Second*, the persons knowledgeable about the topics for deposition listed in the Subpoena cannot be compelled to testify in New York.  Rule 45 of the Federal Rules of Civil Procedure provides that "a subpoena may command a person to attend a . . . deposition *only* . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A) (emphasis added).  As this Court explained in quashing a subpoena served by NML on another non-party, the Bank for International Settlements:

> Rule 45 provides that "the issuing court must quash or modify a subpoena that . . . requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person."

*NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG), 2011 WL 3897828, at *3 (S.D.N.Y. Sept. 2, 2011) (Griesa, J.) (quoting former Fed. R. Civ. P. 45(c)(3)(A)(ii) (ellipsis in

original)); *see also* Fed. R. Civ. P. 45(d)(3)(A)(ii).[5]  Any "oral communications bearing on the[] matters" identified in the Subpoena, NML Br. at 8, would require testimony from employees of Citibank Argentina located *in Argentina*—thousands of miles from New York.

Nor can Citibank be compelled to "create a witness" within the territorial restrictions of Rule 45 to testify about the out-of-district matters sought in the Subpoena.  For example, in *Estate of Klieman v. Palestinian Authority*, 293 F.R.D. 235, 238 (D.D.C. 2013), the plaintiffs had issued a subpoena under Rules 30(b)(6) and 45 on the Washington, D.C. bureau office of the non-party British Broadcasting Company (the "BBC").  *Id.* at 238.  The BBC moved to quash on the grounds that there were no employees within the 100 mile territorial restriction set forth in Rule 45 who were knowledgeable regarding the subpoena's topics.  *Id.* at 239.  The plaintiffs argued that the BBC was "required to *create* a witness or witnesses located with 100 miles of [the] Court with responsive knowledge."  *Id.* (emphasis in original).  The court rejected this argument and held that "under Rule 45 this Court must quash a subpoena where a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles of the district."  *Id.*

Here, similarly, non-party Citibank cannot be made to undertake the burden of educating an uninformed witness.  The Subpoena should therefore be quashed.  *See id.*; *see also Sokolow v. Palestine Liberation Org.*, No. 04-cv-397, 2012 WL 3871380, at *4 (S.D.N.Y. Sept. 6, 2012)

---

[5] *NML Capital Ltd. v. Republic of Argentina*, No. 2:14-cv-492, 2014 WL 3898021 (D. Nev. Aug. 11, 2014) is not to contrary.  Although the magistrate judge in that case granted NML's motion to compel a Rule 30(b)(6) deponent to travel more than 100 miles, the court made clear that its determination rested on the fact that the subpoenaed non-parties were shell corporations.  *Id.* at *11-12.  In that case, NML had also established that the particular testimony sought was both "necessary" and "impossible to obtain elsewhere," *id.* at *12, which is plainly not the case here.

(quashing a Rule 30(b)(6) deposition subpoena served on the BBC in New York because "the BBC ha[d] asserted it does not have any witnesses in the United States who may speak to the" deposition topics); *Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 62–63 (S.D.N.Y. 1998) ("[A]llowing a subpoena served pursuant to Rule 30(b)(6) to evade the proscriptions of Rule 45(c) would render Rule 45 surplusage and subject nonparties to the same level of burdensome discovery that can be imposed upon a party."); *cf. Wultz v. Bank of China Ltd.*, 298 F.R.D. 91, 102-03 (S.D.N.Y. 2014) (denying motion to quash where testimony sought related to an issue "critical to the case," "directly relevant to the claims and defenses," and where the subpoenaing party could "only obtain th[e] information from [the non-party bank]").

## IV.   THE SUBPOENA SERVES NO PURPOSE OTHER THAN TO HARASS CITIBANK AND DISTRACT IT FROM ITS EXPEDITED APPEAL TO THE SECOND CIRCUIT

Having failed to prevent Citibank's appeal from being expedited, NML served the Subpoena the next day—the  same day that Citibank's opening brief was due—even though NML had been aware of the risks to Citibank Argentina since May 2013, had never disputed those risks or previously sought any discovery about them, and had itself submitted the Finance Secretary Letter to this Court one week earlier.

The Subpoena purported to require disclosures within seven days and to notice a deposition on September 5—the same day that Citibank's reply brief is due to the Second Circuit.  *See* Reed Decl., Ex. A at 1; *id.*, Ex. B at 2.  Despite Citibank's good-faith efforts to meet and confer with NML regarding the Subpoena, NML moved for an order to show cause that was issued on August 29—the same day Citibank received NML's opposition brief in the appeal. The overlap of these dates is not coincidental.

NML is plainly attempting to distract Citibank from pursuing its expedited appeal, rather than to obtain relevant discovery.  "[D]iscovery should be denied when a party's aim is to delay . . . or embarrass or harass the person from whom he seeks discovery."  *Oppenheimer Fund, Inc.*, 437 U.S. at 352 n.17.; *see also In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) ("Limitations are imposed on discovery sought in bad faith, [or] to harass or oppress the party subject to it . . . ."); *Deer Park Spring Water, Inc. v. Appalachian Mountain Spring Water Co.*, No. 89 Civ. 4029, 1991 WL 73840, at *2 (S.D.N.Y. Apr. 29, 1991) ("[A] party's conduct of discovery is always subject to the requirement, *inter alia*, that requests 'not [be] interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" (quoting Fed. R. Civ. P. 26(g)) (second alteration in original)); *see also* Fed. R. Civ. P. 26(g)(1)(B)(ii) (discovery may not be sought "for [an] improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

Accordingly, this Court should deny the motion to compel and quash the Subpoena.  *See Oppenheimer Fund, Inc.*, 437 U.S. at 352 n.17.

## CONCLUSION

For the foregoing reasons, Citibank's cross-motion to quash, modify, or for a protective order should be granted, and NML's motion to compel should be denied.

Dated:   New York, New York
            September 5, 2014

DAVIS POLK & WARDWELL LLP

By:   /s/ Karen E. Wagner
        Karen E. Wagner
        James L. Kerr
        Matthew B. Rowland
        Lindsey T. Knapp

        450 Lexington Avenue
        New York, New York  10017
        Telephone:   (212) 450-4000
        Facsimile:    (212) 701-5800

        *Counsel to Non-Party Citibank, N.A.*

17