UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
                             :

NML CAPITAL, LTD.,              :

        Plaintiff,          :

v.                              :    08 Civ. 6978 (TPG)
                                 :    09 Civ. 1707 (TPG)
THE REPUBLIC OF ARGENTINA,  :    09 Civ. 1708 (TPG)

        Defendant.      :

-------------------------------------------------------- x
                              :

AURELIUS CAPITAL MASTER, LTD. and  :
ACP MASTER, LTD.,          :

        Plaintiffs,      :

v.                              :    09 Civ. 8757 (TPG)
                                 :    09 Civ. 10620 (TPG)
THE REPUBLIC OF ARGENTINA,  :

        Defendant.      :

-------------------------------------------------------- x
                              :

AURELIUS OPPORTUNITIES FUND II, LLC  :
and AURELIUS CAPITAL MASTER, LTD.,  :

        Plaintiffs,      :

v.                              :    10 Civ. 1602 (TPG)
                               :    10 Civ. 3507 (TPG)
THE REPUBLIC OF ARGENTINA,  :

        Defendant.      :

                            :   **(captions continued on next page)**
-------------------------------------------------------- x

## <u>MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY CITIBANK, N.A.'S MOTION BY ORDER TO SHOW CAUSE TO VACATE THE JULY 28, 2014 ORDER OR TO MODIFY THE INJUNCTION, AND FOR A STAY</u>

```
------------------------------------------------   x
AURELIUS CAPITAL MASTER, LTD. and              :
AURELIUS OPPORTUNITIES FUND II,                :
LLC,                                           :
                                               :
          Plaintiffs,                          :
                                               :
v.                                             :   10 Civ. 3970 (TPG)
                                               :   10 Civ. 8339 (TPG)
THE REPUBLIC OF ARGENTINA,                     :
                                               :
          Defendant.                           :
------------------------------------------------   x
BLUE ANGEL CAPITAL I LLC,                      :
                                               :
          Plaintiff,                           :
                                               :
v.                                             :   10 Civ. 4101 (TPG)
                                               :   10 Civ. 4782 (TPG)
THE REPUBLIC OF ARGENTINA,                     :
                                               :
          Defendant.                           :
------------------------------------------------   x
OLIFANT FUND, LTD.,                            :
                                               :
          Plaintiff,                           :
                                               :
v.                                             :   10 Civ. 9587 (TPG)
                                               :
THE REPUBLIC OF ARGENTINA,                     :
                                               :
          Defendant.                           :
------------------------------------------------   x
PABLO ALBERTO VARELA, et al.,                  :
                                               :
          Plaintiff,                           :
                                               :
v.                                             :   10 Civ. 5338 (TPG)
                                               :
THE REPUBLIC OF ARGENTINA,                     :
                                               :
          Defendant.                           :
------------------------------------------------   x
```

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    A.    The Court Issues An Injunction Affecting All Bonds Issued In The 2005 And 2010 Exchanges ..................................................... 2

    B.    The Court Permits Payments On U.S.-Dollar Argentine-Law Exchange Bonds Despite Citibank's Admission That Those Bonds Are Exchange Bonds .......................................................... 3

    C.    This Court Agrees That The U.S.-Dollar Argentine-Law Exchange Bonds Are Covered By The Injunction ...................... 4

    D.    Argentina And Citibank Concede On Appeal That The U.S.-Dollar Argentine-Law Exchange Bonds Were Issued In The 2005 And 2010 Exchanges .............................................. 5

    E.    Argentina Attempts To Evade The Injunction By Placing The Exchange Bonds' Payment Chain In Argentina ........................ 6

ARGUMENT ...................................................................................................... 6

    I.    The U.S.-Dollar Argentina-Law Bonds Are Subject To The Injunction Because They Are Exchange Bonds. .............................. 6

    II.    Non-Party Citibank Cannot Seek Modification Of The Injunction, But Must Raise Any Challenges To Its Application In Contempt Proceedings. ......... 10

    III.    There Is No Basis For Modifying The Injunction To Exclude U.S.-Dollar Argentine-Law Exchange Bonds. ......................................... 11

        A.    The Injunction Need Not Be Confined To External Indebtedness As Defined In The FAA, But In Any Event The U.S.-Dollar Argentine-Law Exchange Bonds Do Constitute External Indebtedness .............................................. 12

        B.    No Other Difference Between U.S.-Dollar Argentine-Law Exchange Bonds And Others Justifies Excluding Argentine-Law Bonds From The Injunction. ...................................... 18

        C.    Comity Does Not Permit Third Parties To Aid And Abet Argentina's Defiance Of Federal Judicial Authority. ................ 19

**TABLE OF CONTENTS**
*(continued)*

**Page**

D.    This Court Has Authority, Under Federal Rule 65(d), To Bar Citibank From Facilitating Exchange-Bond Payments In Active Concert With Argentina. .................................................................... 20

E.    The Injunction Governs The U.S.-Dollar Argentine-Law Exchange Bonds Regardless of Whether Other Irrelevant Bonds Are Not Exchange Bonds. ............................................................................. 21

IV.    Citibank's Motion Seeks To Erode The Injunction And Threatens To Further Argentina's Unlawful Attempts To Evade Its Enforcement. ................... 23

V.    A Stay Is Unwarranted. ....................................................................... 24

CONCLUSION .......................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance Pharm., Inc. v. United States,*
    391 F.3d 377 (2d Cir. 2004)........................................................................... 10

*Baum v. Blue Moon Ventures, LLC,*
    513 F.3d 181 (5th Cir. 2008) ................................................................... 10, 11

*City of New York v. Mickalis Pawn Shop, LLC,*
    645 F.3d 114 (2d Cir. 2011).......................................................................... 7

*Corning Inc. v. PicVue Elec., Ltd.,*
    365 F.3d 156 (2d Cir. 2004)...................................................................... 7, 14

*Eli Lilly & Co. v. Gottstein,*
    617 F.3d 186 (2d Cir. 2010)........................................................................ 21

*Estate of Shefner ex rel. Shefner v. Beraudiere,*
    __ F. App'x __, 2014 WL 4067184 (2d Cir. Aug. 19, 2014) ................................. 10

*Eyewonder, Inc. v. Abraham,*
    293 F. App'x 818 (2d Cir. 2008) .................................................................. 14

*Goldic Elec. Inc v. Loto Corp. U.S.A.,*
    27 F. App'x 71 (2d Cir. 2001) .................................................................... 14

*Gucci America, Inc. v. Bank of China,*
    __ F.3d __, 2014 WL 4629049 (2d Cir. Sept. 17, 2014) ................................. 19, 20

*Johnson v. Holder,*
    564 F.3d 95 (2d Cir. 2009)...................................................................... 12, 13

*Motorola Credit Corp. v. Uzan,*
    561 F.3d 123 (2d Cir. 2009)..................................................................... 11, 12

*N. Mariana Islands v. Millard,*
    287 F.R.D. 204 (S.D.N.Y. 2012) .................................................................. 25

*Nat'l Acceptance Co. of Am. v. Frigidmeats, Inc.,*
    627 F.2d 764 (7th Cir. 1980) ...................................................................... 10

*NML Capital Ltd. v. Republic of Argentina,*
    699 F.3d 236 (2d Cir. 2012)...................................................................... 3, 13

## TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

*NML Capital Ltd. v. Republic of Argentina,*
  727 F.3d 230 (2d Cir. 2013) .......................................................................... passim

*Norton v. Sam's Club,*
  145 F.3d 114 (2d Cir. 1998) ................................................................................ 19

*Nw. Nat'l. Ins. Co. v. Alberts,*
  937 F.2d 77 (2d Cir. 1991) .................................................................................. 11

*Peters v. Bain,*
  133 U.S. 670 (1890) ............................................................................................ 22

*Petrello v. White,*
  533 F.3d 110 (2d Cir. 2008) .................................................................................. 7

*Sierra Club v. U.S. Army Corps of Eng'rs,*
  732 F.2d 253 (2d Cir. 1984) ................................................................................ 11

*Tire Eng'g & Dist. L.L.C. v. Bank of China Ltd.,*
  740 F.3d 108 (2d Cir. 2014) ................................................................................ 25

*United States v. Melendez-Carrion,*
  820 F.2d 56 (2d Cir. 1987) .................................................................................. 12

*United States v. Spallone,*
  399 F.3d 415 (2d Cir. 2005) .................................................................................. 7

*United States v. Wilkerson,*
  361 F.3d 717 (2d Cir. 2004) ................................................................................ 12

## Other Authorities

Austin W. Scott, *The Right to Follow Money Wrongfully Mingled with Other Money,*
  27 Harv. L. Rev. 125 (1913) ............................................................................... 22

C. Wright et al., *Federal Practice & Procedure* (3d ed. updated 2014) ............... 10, 11

Katia Porzecanski, *Argentina's Lopez Said to Meet With Investors Over Debt Swap,*
  Bloomberg (Sept. 4, 2014) .................................................................................... 6

## Rules

Fed. R. Civ. P. 60 ..................................................................................................... 10

**TABLE OF AUTHORITIES**
***(continued)***

<u>**Page(s)**</u>

Fed. R. Civ. P. 65 .................................................................................................................. 7, 21

## INTRODUCTION

By its express terms, this Court's November 21, 2012, order (the "Injunction") applies to all "Exchange Bonds."  Citibank and Argentina now argue that the Injunction should not apply to certain Exchange Bonds.  But the bonds they seek to exclude, like the other Exchange Bonds, were "issued pursuant to the Republic's 2005 and 2010 Exchange Offers," Injunction ¶ 2(a), as Citibank and Argentina have conceded on numerous occasions.  Thus, as Judge Parker stated in the expedited appeal last week, "the injunction is pellucid that it covers" the bonds at issue.  That is the end of the matter—Citibank's motion must be denied.

Citibank and Argentina try to confuse the issue by arguing about *other* bonds, like bonds issued to Repsol, that are not Exchange Bonds.  *But those other bonds have nothing to do with the September 30 payment.*  It is undisputed that the only U.S.-dollar Argentine-law bonds to be paid on September 30 are Exchange Bonds.  The rush to implicate these other bonds is entirely manufactured; this Court has until December 30 to decide what action, if any, is appropriate after taking proper evidence (which Citibank and Argentina have thus far refused to produce) about those other bonds.  In any event, the Republic has a 30-day grace period for the September 30 payment so there is simply no reason to rush to judgment on an incomplete record.

Apart from the simple reason that the bonds at issue are Exchange Bonds and thus squarely within the terms of the Injunction, there are numerous other reasons why the Court should deny Citibank's motion:

- Granting the motion could make it easier to for Argentina to route its other Exchange Bonds through Argentina, thus evading the Injunction.  It would also open the floodgates for others to request carve-outs, killing the Injunction by a thousand cuts and straining the Court's resources.

- The facts and law have not changed, so the Injunction cannot be modified.

- Citibank is not a party (or a party's legal representative), so it cannot seek to modify the

Injunction.  It is far too late for Argentina to raise these arguments, and it cannot do so by relying on Citibank as its proxy.

- Non-parties like Citibank may challenge the Injunction's application to them under Rule 65(d)(2) only in contempt proceedings, as the Second Circuit has held.

- The various arguments about "Domestic Foreign Currency Indebtedness" are irrelevant, forfeited, and wrong.

- Citibank can comply with its obligations simply by sending a letter to Caja de Valores instructing Caja not to forward Argentina's illegal payment.

Citibank's motion, at bottom, is an attack on this Court's twice-affirmed Injunction.  And Argentina's clear aim in supporting it is to leave the Injunction a dead letter.  This Court should not entertain such efforts and should deny the motion.

## BACKGROUND

### A.   The Court Issues An Injunction Affecting All Bonds Issued In The 2005 And 2010 Exchanges

In 1994, Argentina issued bonds under a Fiscal Agency Agreement ("FAA").  A provision of the FAA promised that Argentina would "rank" its "payment obligations" "at least equally" with "all present and future … External Indebtedness" ("Equal-Treatment Provision").  FAA ¶ 1(c) (Ex. A).[1]  The FAA defined External Indebtedness to include a broad swath of bonds issued under foreign currency (regardless of what law governs it), except for a narrow category of foreign-currency debt called Domestic Foreign Currency Indebtedness ("DFCI").  *Id.* at 16-17.

After concluding that Argentina had breached the Equal-Treatment Provision, this Court issued an injunction on February 23, 2012, prohibiting Argentina from "making any payment under the terms of the Exchange Bonds without … concurrently or in advance making a Ratable

---

[1]  "Ex. __" refers to exhibits to the Declaration of Christopher B. Leach, dated September 25, 2014.  D.E." refers to docket entries in Case No. 1:08-cv-6978-TPG, unless otherwise indicated. "Argentina Ex. __" refers to exhibits to the Declaration of Carmine D. Boccuzzi, dated September 23, 2014 (D.E. 672).

Payment" to Plaintiffs.  D.E.371 ¶ 2(d).  This prohibition affected a subset of Argentina's performing debt—the Exchange Bonds—which the Injunction defines as "the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange offers, or any subsequent exchange or substitution for the 2005 and 2010 Exchange offers that may occur in the future."  *Id.* ¶ 2(a).  The definition of Exchange Bonds admits no exceptions, and does not limit its terms to bonds governed by any particular law or payable under any particular currency.  The Second Circuit affirmed the February 23, 2012, order, but remanded for clarification on two minor issues.  *See NML Capital Ltd. v. Republic of Argentina (NML I)*, 699 F.3d 236 (2d Cir. 2012).  On remand, this Court clarified those issues by issuing an amended order (the "Injunction") on November 21, 2012.  D.E. 425.  Argentina again appealed, and the Second Circuit again affirmed.  *NML Capital Ltd. v. Republic of Argentina (NML II)*, 727 F.3d 230 (2d Cir. 2013).

> **B.    The Court Permits Payments On U.S.-Dollar Argentine-Law Exchange Bonds Despite Citibank's Admission That Those Bonds Are Exchange Bonds**

While Argentina's second appeal was pending, non-party Citibank filed a motion for clarification in May 2013 regarding its duties under "U.S. Dollar-denominated bonds governed by Argentine law and payable in Argentina that were issued by [Argentina] in 2005 and 2010." *See* D.E.460.  Although this motion put Argentina on notice that the Injunction might cover Argentine-law bonds, Argentina never suggested to this Court, the Second Circuit, or the Supreme Court that the Injunction did not reach these bonds.[2]

On June 19, 2014, after the Supreme Court denied certiorari in the second appeal, Citi-

---

[2] In its brief to this Court on remand from the Second Circuit's October 26, 2012, decision the Bank of New York Mellon specifically advised that "BNY Mellon serves as trustee only for those bonds that are expressly governed by the Indenture.  In this regard, *BNY Mellon does not serve as trustee for all of the bonds issued in the 2005 and 2010 exchanges*."  D.E. 396 at 5 n.5.  Argentina never disputed this statement, nor did it take any action to suggest—as Citibank does now—that the Injunction does not apply to Exchange Bonds for which BNY Mellon is not the Indenture Trustee.

bank renewed its motion for clarification, arguing that the U.S.-dollar Argentine-law Exchange Bonds for which it acted as a custodian should not be subject to the Injunction.  Citibank nevertheless conceded that the "Argentine Law Bonds" as to which it sought clarification nevertheless "*are ... Exchange Bonds*," D.E.550 at 4 (emphasis added), and did not dispute that the bonds at issue are External Indebtedness.  After a hearing, this Court issued an order "clarify[ing]" that the Injunction does not "prohibit payments by Citibank, N.A.'s Argentine branch on Peso- and U.S. Dollar-denominated" Argentine-law Exchange Bonds.  D.E.547 (the "June 27 Order").

### C. This Court Agrees That The U.S.-Dollar Argentine-Law Exchange Bonds Are Covered By The Injunction

Plaintiffs promptly sought partial reconsideration of the June 27 Order, arguing that the U.S.-dollar Argentine-law Exchange Bonds at issue were subject to the Injunction because they were issued in the 2005 and 2010 exchanges.  D.E.586.  Plaintiffs explained that the bonds were External Indebtedness, and thus Argentina's pattern of honoring obligations under those bonds, but not under the FAA Bonds, breached the Equal-Treatment Provision.  *Id.* at 9-10.  In their response briefs, neither Citibank nor Argentina argued that the U.S.-dollar Argentine-law Exchange Bonds were issued outside of the 2005 and 2010 exchanges or are not External Indebtedness.  D.E.591 at 3-4; D.E.602 at 9-12.  And Citibank conceded at a hearing that the U.S.-dollar Argentine-law Exchange Bonds in dispute "are exchange bonds" and "were part of the 2005 or the 2010 exchanges."  July 22, 2014 Tr. 22:8-10; 23:2-4 (Ex. B).  In post-hearing letters, however, both Citibank and Argentina asserted for the first time that *some* Argentine-law bonds were not issued in the 2005 and 2010 exchanges.  D.E.605; D.E.609.  They also claimed that one bond series, issued in connection with Argentina's April 2014 settlement with Repsol, shared an ISIN with another bond series, and that Citibank could not distinguish between the two.  D.E.605.

On July 28, 2014, this Court granted Plaintiffs' motion for partial reconsideration (the

"July 28 Order") and rescinded the June 27 Order "with regard to the dollar-denominated exchange bonds." D.E.613. In light of the confusion regarding the status of the bonds issued to Repsol, however, the Court permitted Argentina to make a one-time payment, but ordered the parties "to devise a way to distinguish between the Repsol bonds and the exchange bonds." *Id.*

### D. Argentina And Citibank Concede On Appeal That The U.S.-Dollar Argentine-Law Exchange Bonds Were Issued In The 2005 And 2010 Exchanges

Citibank and Argentina immediately appealed from the July 28 Order. They requested expedited treatment, but neither sought or obtained a stay. On appeal, Citibank submitted to the Second Circuit correspondence between the Republic and Citibank, which had never been presented to this Court—including an August 6, 2014 letter from Argentina threatening to sanction Citibank if it refused to process Argentina's illegal payment, and an August 11, 2014 letter from Citibank suggesting that it would process Argentina's payment.[3] Seeking to learn more about these threats, Plaintiffs sought discovery from Citibank, which declined to cooperate. D.E.665.[4]

The Second Circuit panel judges repeatedly expressed their view that the Injunction clearly covers the U.S.-dollar Argentine-law Exchange Bonds here. *See* 2d Cir. Tr. 10:10-11, 13:8-10, 15:6-7 (Ex. C). And both Argentina and Citibank again conceded that those bonds were issued in the 2005 and 2010 Exchanges.[5] On September 19, the Second Circuit dismissed both appeals, agreeing with Plaintiffs that this Court's July 28 Order was a non-appealable clarifica-

---

[3] *See* Ltr. from Karen E. Wagner to Catherine O'Hagan Wolfe, Exs. A, C, No. 14-2689 (2d Cir. Aug. 13, 2014) (D.E.46).

[4] In response to the Court's July 28 Order, Plaintiffs sent a letter to counsel for Argentina and Citibank on August 29, asking them to provide information relevant to the bonds issued to Repsol and the other Argentine law bonds first identified in Argentina's post-hearing submission. Citibank responded that it had no responsive information. Argentina has refused to respond at all.

[5] 2d Cir. Tr. 13:11-13 (Citibank's counsel: "Obviously our bonds were issued in the exchanges"); *id.* at 51:7-13 (Argentina's counsel acknowledging that Argentina "conceded in [its] brief that the Argentine indebtedness arose in connection with the 2005 and 2010 exchange offers").

tion of the Injunction, not a modification.  D.E.667.  In the wake of that ruling, Citibank filed the present motion again challenging application of the Injunction to certain bonds.

### E.    Argentina Attempts To Evade The Injunction By Placing The Exchange Bonds' Payment Chain In Argentina

Throughout these proceedings, Argentina has developed and announced several schemes to evade and to violate this Court's Injunctions.  The week that the Supreme Court denied Argentina's certiorari petition in June 2014, Argentina announced a plan "to carry out a debt exchange to pay exchange bondholders in Argentina under Argentine law."  D.E.527.  It then attempted to make a prohibited payment on the Exchange Bonds—which was thwarted only because the Bank of New York Mellon ("BNY"), which acts as indenture trustee under the New York- and English-law Exchange Bonds, refused to forward Argentina's illegal payment.  *See* D.E.633.  Then, in August, Argentina announced—and has subsequently enacted—legislation to remove BNY as the indenture trustee in favor of an institution affiliated with the Argentine government and to facilitate the debt exchange announced earlier this summer.  *See* Ley 26984, Art. 3, 7 (Ex. D).  Argentine officials have met with investors behind closed doors to gauge interest in the new debt exchange.[6]  And as recently as September 23, 2014, Argentina acted on the legislation by placing advertisements in major newspapers to inform Exchange Bondholders that Argentina "has formally requested … [BNY] to tender its resignation" as the trustee.  *See* Ex. E.

### ARGUMENT

### I.    The U.S.-Dollar Argentina-Law Bonds Are Subject To The Injunction Because They Are Exchange Bonds.

A.    "Court orders are construed like other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court."  *United States v. Spal-*

---

[6]  *See* Katia Porzecanski, *Argentina's Lopez Said to Meet With Investors Over Debt Swap*, Bloomberg (Sept. 4, 2014), http://tinyurl.com/mte39a3.

*lone*, 399 F.3d 415, 424 (2d Cir. 2005).  To discern that intent, the order "must ordinarily be interpreted by examination of only the four corners of the document."  *Id.* (internal quotation marks omitted).  A court may look beyond an order's text only if that text is ambiguous.  *See id.*

That is especially true of injunctions, which are explicitly required by Federal Rule 65 to specify the "acts restrained or required" in "reasonable detail" and may not simply "refer[] to … other document[s]."  Fed. R. Civ. P. 65(d)(1)(C).  "Rule 65(d) is satisfied only if the enjoined party"—here, Argentina—"'can ascertain from the four corners of the order precisely what acts are forbidden' or required."  *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008) (citation omitted).  This "four corners" rule serves both "'to prevent uncertainty and confusion on the part of those to whom the injunction is directed,' and to ensure 'that the appellate court knows precisely what it is reviewing.'"  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (citation omitted).  Neither an enjoined party nor a court should "have to resort to extrinsic documents to comply with the order's commands."  *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004).  For the same reasons, a court interpreting an injunction—especially one an appellate court has already affirmed—should hew to its four corners.

**B.**     The Injunction's text unambiguously covers the U.S.-dollar Argentine-law Exchange Bonds that Citibank asks this Court to deem exempt.  The Injunction requires Argentina to make a ratable payment to Plaintiffs "[w]henever the Republic pays any amount due under" the "Exchange Bonds," and bars Argentina from "making any payment under the terms of the Exchange Bonds without" *also* making a ratable payment to Plaintiffs.  D.E.425, at 4-5.  And it defines "Exchange Bonds" simply as "the *bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers*, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future."  *Id.* at 4 (emphasis added).  This

Court recently made clear (and Citibank conceded) that the Injunction "did not make any exceptions" excluding any subset of bonds.  July 22, 2014, Tr. 23:25-24:2.  The Second Circuit affirmed the Injunction applicable to Exchange Bonds thus defined.  *NML II*, 727 F.3d at 237-38.

The U.S.-dollar Argentine-law Exchange Bonds fall squarely within that definition, as the July 28 Order held.  D.E.613, at 4.  Indeed, Citibank itself previously *admitted* in this Court, and does not deny now, that the bonds in dispute were issued in the 2005 or 2010 exchanges.  In its prior filings, Citibank asked the Court to deem exempt from the Injunction certain "Exchange Bonds" that "were issued by the Republic of Argentina in 2005 and 2010."  D.E.460, at 1, 4.  And in open court, its counsel conceded that the bonds at issue "are exchange bonds" and "were part of the 2005 or the 2010" exchanges, and reiterated those concessions on appeal.[7]

The Second Circuit panel itself confirmed, through its words and action, its agreement with Citibank's concessions.  Judge Parker explained that "the injunction is pellucid that it covers all exchange bonds," and "d[id not] know how [Citibank] could seriously argue that the Argentine bonds aren't covered by the definition" of Exchange Bonds in the Injunction.  2d Cir. Tr. 10:10-11, 13:8-10.  Judge Raggi agreed that this view is "correct."  *Id.* at 15:6-7.  The Second Circuit's ruling erases any doubt.  It held that the July 28 Order "is a clarification, not a modification," of the Injunction.  D.E.667.  In doing so, it necessarily concluded that the existing Injunction already reaches the U.S.-dollar Argentine-law Exchange Bonds.  As Citibank admitted, the holding that this Court's July 28 Order did not modify the Injunction compels the conclusion that "the original injunction covered" such bonds already.  2d Cir. Tr. at 17:16-19.

    **C.**    The existing Injunction also clearly encompasses the conduct in which Citibank

---

[7]  July 22, 2014, Tr. 22:8-10 ("The Court:  They were part of the 2005 or the 2010 [exchanges] or both, right?  Ms. Wagner:  Yes."); 2d Cir. Tr. 13:12-13 ("Obviously our bonds were issued in the exchanges."); *see also id.* at 9:17-19, 10:3-5, 15:18-19, 16:1-3, 71:12-14.

seeks to engage:  processing payments on Exchange Bonds.  The Injunction bars all "participants in the payment process of the Exchange Bonds" from "aiding and abetting any violation of" the Injunction, including "mak[ing] payments" on Exchange Bonds.  Injunction ¶ 2(e).  And it defines "participants" as "persons or entities who act in active concert or participation with the Republic, to assist the Republic in fulfilling its payment obligations under the Exchange Bonds." *Id.* ¶ 2(f).  That aptly describes Citibank's role.  Indeed, Citibank serves as the depositary for Euroclear and Clearstream—in effect, Euroclear and Clearstream hold these bonds through Citibank—and both Euroclear and Clearstream *are* explicitly named as "participants" under Paragraph 2(f) of the Injunction.  By enabling Argentina's payments to reach the Exchange Bondholders, it "assist[s] the Republic in fulfilling its payments obligations."  *Id.*

Citibank rejoins that it does not "'assist the Republic in fulfilling its payment obligations under the Exchange Bonds'" because, by the time funds for such payments are received by Citibank, Argentina has already "fulfill[ed] its obligations."  Citi Mem. 11.  This argument is irrelevant—the scope of Rule 65(d)(2) does not turn on whether Argentina has breached its contracts with Exchange Bondholders but on the practical question whether Citi is helping Argentina accomplish a prohibited objective.  Moreover, Citibank never raised this contention its May 2013, June 2014, or July 2014 filings, so it is plainly forfeited.  In any event, it is meritless.  Citing its own attorney's declaration, Citibank asserts that, "[a]s a matter of Argentine law, the Republic's payment is complete when funds reach the CRYL in Argentina."  *Id.* at 5 (citing D'Auro Decl. ¶ 10).  But the declaration in fact says something very different:  payment is *not* considered complete until *Citibank* "receives such payments on behalf of its Custody Account Customers." D'Auro Decl. ¶ 10.  And as the Declaration of Ronald Mann explains, Citibank can ensure that it does not receive any illicit payment by "send[ing] a notice this week rejecting any transfer" from

the Bonds' payor.  Decl. of Ronald Mann ¶ 9, dated September 25, 2014.

## II.    Non-Party Citibank Cannot Seek Modification Of The Injunction, But Must Raise Any Challenges To Its Application In Contempt Proceedings.

Recognizing that the Injunction covers the U.S.-dollar Argentine-law Exchange Bonds, Citibank seeks to change the Injunction.  Indeed, it invites the Court to "modify" the existing Injunction, and alternatively requests that the court "vacate" its July 28 Order.  Citi Mem. 1.[8]

Those requests are doomed because Citibank, a *non-party*, cannot seek modification of the Injunction.  "[T]he appropriate vehicle for modifying a permanent injunction that has prospective effect" is a motion for relief under Federal Rule 60(b)(5).[9]  Under that Rule's plain terms, "only '*a party or its legal representative*' may seek relief pursuant to Rule 60(b)."[10]  Citibank is neither.  It freely admits that it is a "[n]on-party," Citi Mem. 1, and does not purport to be Argentina's legal representative.  It thus "lacks standing to make [a Rule 60(b)] motion."[11]

Instead, the proper course for non-parties such as Citibank to challenge the Injunction's application to specific conduct is to assert such challenges "*if and when* [they] are summoned" to this Court to show cause why they should not be held in contempt "for having assisted Argentina in violating" the Injunction.  *NML II*, 727 F.3d at 244 (emphasis added).  If Citibank insists on aiding the Republic in defying or evading this Court's orders, it must wait to raise any defenses until it violates the Injunction and is called to answer for contempt.[12]  The reason that these ar-

---

[8]  Citibank mistakenly describes the July 28 Order as a separate injunction, but the Second Circuit correctly held that the Order merely "clarifi[ed]" the Injunction.  D.E.667.

[9]  *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 (5th Cir. 2008); *see also Advance Pharm., Inc. v. United States*, 391 F.3d 377, 400-01 (2d Cir. 2004).

[10]  *Estate of Shefner ex rel. Shefner v. Beraudiere*, __ F. App'x __, 2014 WL 4067184, at *2 (2d Cir. Aug. 19, 2014) (emphasis added) (quoting Fed. R. Civ. P. 60(b)).

[11]  *Nat'l Acceptance Co. of Am. v. Frigidmeats, Inc.*, 627 F.2d 764, 766 (7th Cir. 1980); *see also* 11 C. Wright et al., *Federal Practice & Procedure* § 2865 (3d ed. updated 2014); *NML II*, 727 F.3d at 243 ("the district court has issued injunctions against no one except Argentina").

[12]  Citibank cryptically invokes Federal Rule 54, without elaboration.  Citi Mem. 1.  Argentina
*(Cont'd on next page)*

guments are being impermissibly offered by a non-party is that it is far too late for Argentina to raise them.  Plaintiffs spent more than two years litigating the validity of this injunction.  Argentina had every opportunity to raise these arguments and failed to do so.  For example, Plaintiffs long ago asserted that "[t]here is no question that the 2005 and 2010 debt issued by Argentina"— no matter which law governs it—"meets the FAA's definition of External Indebtedness."  Summary Judgment Mem. at 12, *Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 09-cv-8757 (Oct. 26, 2011) (D.E.148).  Argentina never countered that statement.  It cannot try to do so nearly three years later by using Citibank or some other proxy.

## III.   There Is No Basis For Modifying The Injunction To Exclude U.S.-Dollar Argentine-Law Exchange Bonds.

There is no basis for the drastic revision of the Injunction that Citibank seeks and Argentina unsurprisingly supports.  "[A] court may modify a final or permanent injunction only where conditions have so changed as to make such relief equitable, *i.e.*, a significant change in the law or facts."  *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984).  And the litigant seeking modification—Citibank—bears the burden of "demonstrat[ing] exceptional circumstances" that warrant it.  *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009).

Citibank's motion identifies no relevant change that could support modification here.  To the contrary, all of the reasons that it asserts for modifying the Injunction existed when the In-

---

*(Cont'd from previous page)*

argues that the Court can revise the Injunction under Rule 54(b) because it is interlocutory.  Arg. Mem. 4.  But "[t]he provisions of Civil Rule 54(b), governing the finality of orders that finally dispose of less than all the claims as to all of the parties in multiclaim or multiparty litigation, do not" apply to "orders granting or denying permanent injunctions."  16 C. Wright, et al., *Federal Practice and Procedure* § 3921 (3d ed. updated 2014).  Courts thus treat motions to modify injunctions as requests for *post*-judgment relief, *see, e.g.*, *Nw. Nat'l. Ins. Co. v. Alberts*, 937 F.2d 77, 81 (2d Cir. 1991), and have held that a motion under Rule 60(b)(5) is the "appropriate vehicle for modifying a permanent injunction that has prospective effect," *Baum*, 513 F.3d at 190.

junction was issued.  Indeed, some of those reasons were squarely rejected by the Second Circuit in the prior appeals of the Injunction, and those rulings are both binding precedent and the law of this case.  *See United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004); *United States v. Melendez-Carrion*, 820 F.2d 56, 60 n.1 (2d Cir. 1987).  And all of the reasons that Citibank now raises were "ripe for review at the time of" the previous appeals of the Injunction, yet "w[ere] nonetheless foregone" in those appeals, and so must now be "considered waived" and "bar[red]." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (punctuation omitted).

In any event, Citibank fails to demonstrate legally or factually that any of the alleged grounds for modification justifies the drastic alteration of the Injunction that it requests.  Unable to carry its burden, Citibank seeks to shift it onto Plaintiffs, faulting them for the absence of evidence regarding Citibank's forfeited claims.  Citi Mem. 1, 9.  The law is clear, however:  Because the Injunction applies to the conduct Citibank seeks to exempt, *Citibank* (if it could seek modification at all) must prove that altering that Injunction is warranted.  *See Uzan*, 561 F.3d at 126.

### A.  The Injunction Need Not Be Confined To External Indebtedness As Defined In The FAA, But In Any Event The U.S.-Dollar Argentine-Law Exchange Bonds Do Constitute External Indebtedness.

Citibank's and Argentina's main argument for narrowing the Injunction is that the Injunction cannot apply to conduct that would not violate Argentina's contractual duties in the FAA, and that payments on the U.S.-dollar Argentine-law Exchange Bonds do not violate the FAA's Equal-Treatment Provision because it covers only External Indebtedness—which (they say) excludes the U.S.-dollar Argentine-law Exchange Bonds.  This claim, never properly raised in the appeals of the Injunction or in this Court, is now foreclosed.  In any event, this claim is baseless.

**1.**  Citibank's and Argentina's contention that the Injunction must apply only to payments made on External Indebtedness as defined in the FAA is forfeited.  That argument—

purportedly based on the text of the FAA and the Injunction—was available from the date the Injunction was issued and was plainly "ripe for review at the time of" both previous appeals. *Johnson*, 564 F.3d at 99. As Judge Parker noted, it is "an issue which [Argentina] should have brought to [the Second Circuit] in connection with [its] first appeal." 2d Cir. Tr. 26:12-14. Yet Argentina, the only party enjoined by the Injunction, never challenged this aspect of the Injunction's scope in either of the appeals from the issuance of the Injunction. And Citibank—unlike other third-party intermediaries, who did participate in the Second Circuit proceedings to oppose certain features of the Injunction, *see, e.g.*, *NML II*, 727 F.3d at 242-45—chose not to take part in the appeals *at all*. Having elected to forgo this argument while the court of appeals was reviewing the Injunction, both have "waived" it (*Johnson*, 564 F.3d at 99) and cannot resurrect it now.[13]

**2.** Citibank's and Argentina's External Indebtedness argument is also meritless. Their starting premise—that the Injunction cannot reach beyond literal performance of the underlying contract—was squarely rejected by the Second Circuit: "Once the district court determined that Argentina had breached the [Agreement] and that injunctive relief was warranted, the court had considerable latitude" to craft an appropriate remedy, and "[t]he performance required by a decree *need not ... be identical* with that promised in the contract." *NML I*, 699 F.3d at 261 (emphasis added). This Court was therefore free to adopt "an order of specific performance" that goes beyond the Equal-Treatment Provision's literal terms "so long as it achieves a fair result under the totality of the circumstances." *Id.* (internal quotation marks omitted). Here, there is no credible argument that fairness requires confining equitable relief to the underlying contract's

---

[13] The Second Circuit's observation that "nothing in [the September 19] order is intended to preclude Citibank from seeking further relief from the district court" (Sept. 19 Order 2) does nothing to revive any arguments that Citibank or Argentina already had waived. That remark merely means that the Second Circuit's dismissal of the improper appeal for lack of jurisdiction does not by itself preclude any arguments that otherwise might be available.

terms.  To the contrary, as explained below, *see* Part IV, *infra*, applying the Injunction as written to all Exchange Bonds—regardless of the law that governs them or where they are paid—is essential to prevent Argentina from further attempts to evade enforcement of the Injunction.[14]

   **3.**   In any event, the U.S.-dollar Argentine-law Exchange Bonds at issue *are* External Indebtedness.  The FAA defines External Indebtedness as debt payable in a currency other Argentine pesos.  FAA at 16.  The U.S. Dollar-denominated Argentine-law Exchange Bonds plainly fit this description.   The only exception is for "Domestic Foreign Currency Indebtedness" ("DFCI"), which consists of four specific categories of bonds:  (i) specific debt issued under particular Argentina decrees predating the 1994 FAA ("Category i");[15] (ii) "any indebtedness issued in exchange, or as replacement," for debt in Category (i) ("Category ii"); (iii) non-peso debt that is (a) "offered exclusively within the Republic of Argentina" ("Category iii(a)"), or (b) "issued in payment, exchange, substitution, discharge or replacement of" peso-denominated debt ("Category iii(b)").  *Id.* at 17.  To constitute DFCI, a bond denominated in U.S. Dollars must fall into one of those four Categories.  Citibank and Argentina have failed to show that the U.S.-dollar Argentine-law Exchange Bonds fall under *any* of them.

   ***Category (i):***  The U.S.-dollar Argentine-law Exchange Bonds were issued after Argenti-

---

[14]  Contrary to Argentina's and Citibank's suggestions (Arg. Mem. 3; Citi Mem. 9), the Injunction's references to ¶ 1(c) of the FAA does not implicitly incorporate any limitation in the FAA, including its definition of External Indebtedness.  Rule 65(d), by its text, requires that an injunction *itself* specify the conduct prohibited *without* reliance on "extrinsic documents," like the FAA.  *See Corning*, 365 F.3d at 158; *see, e.g.*, *Eyewonder, Inc. v. Abraham*, 293 F. App'x 818, 820 (2d Cir. 2008); *Goldic Elec. Inc. v. Loto Corp. U.S.A.*, 27 F. App'x 71, 74 (2d Cir. 2001).

[15]  These bonds are:  "(a) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1703/91, (b) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (c) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (d) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería a 5 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (f) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92 and (g) Bonos de Consolidación de Regalías de Hidrocarburos a 16 Años de Plazo issued under Decree No. 2284/92 and Decree No. 54/93."  FAA at 17.

na executed the 1994 FAA.  There is no dispute that none was issued under the pre-1994 decrees.

***Category (ii):***  Citibank and Argentina contend that the U.S.-dollar Argentine-law Exchange Bonds fall into Category (ii) because, although they were issued in the 2005 or 2010 exchanges, they were issued in *exchange* for Category (i) bonds.  But neither one substantiates this claim.  Citibank does not attempt to identify any U.S.-dollar Argentine-law Exchange Bonds for which it acts as custodian that were issued in exchange for Category (i) bonds.  Citi Mem. 10.  Nor does Citibank even explain which Category (i) bonds were eligible to participate in the 2005 or 2010 exchanges.  Argentina, for its part, points to similarities in generic *names* of some of securities that could be tendered in the 2005 or 2010 exchanges to the generic names of some Category (i) bonds.  Arg. Mem. 5.  That superficial comparison is hardly sufficient to prove that any of the Exchange Bonds in dispute were issued in exchange for Category (i) bonds.[16]

Citibank and Argentina also argue that the U.S.-dollar Argentine-law Exchange Bonds in dispute constitute DFCI because they were "issued in exchange for Domestic Foreign Currency Indebtedness" *generally*.  Citi Mem. 10; *see also* Arg. Mem. 5.  That is incorrect.  Under the FAA, a bond is *not* DFCI under Category (ii) just because it was exchanged for a bond that was DFCI under *any* of the four Categories; it must have been issued in exchange for a *Category (i)* bond.

This distinction makes a tremendous difference because the U.S.-dollar Argentine-law Exchange Bonds would not be considered DFCI merely because *some* of the defaulted debt tendered in exchange for them fell within Category (i).  Under the plain terms of the FAA, only

---

[16]  For example, that a bond is a "Consolidation Bond" does not mean it is a "Bono[] de Consolidación *issued under Law No. 23,982 and Decree No. 2140/91*," which is what the definition of Category (i) requires.  FAA at 17 (emphasis added).  Page A-10 of the 2005 Prospectus Supplement, which Argentina cites, shows why this approach is improper:  The first listed Eligible Security—Debt Consolidation Bonds, U.S. dollar 3rd Series (Pro 6), ISIN ARARGE043851—was issued pursuant to resolutions issued in 1998.  2005 Prospectus Supplement, A-10 (Ex. F).

bonds that are issued in exchange for bonds in Category (i) remain DFCI under Category (ii).  The FAA does not say that bonds issued "in part" in exchange for Category (i) bonds remain DFCI; only bonds issued entirely in exchange for Category (i) bonds remain DFCI under Category (ii).  The U.S.-dollar Argentine-law Bonds were issued in exchange not just for Category (i) bonds, but for non-Category (i) bonds as well.  In fact, Category (i) bonds represent only a tiny fraction of the bonds that were eligible to be exchanged into U.S.-dollar Argentine-law Bonds.  Plaintiffs have calculated that of the $10.6 billion Eligible Amount of U.S.-dollar Argentine-law bonds that were eligible to participate in the 2005 exchange, only approximately 7% were Category (i) bonds.[17]  If Argentina had wanted to ensure that Category (i) bonds remained DFCI after the exchange, it should have provided that they would be exchanged into a separate bond series, not comingled with bonds outside of Category (i).  It did not do so, and thus, none of the U.S.-dollar Argentine-law Bonds are DFCI within the meaning of Category (ii).

*Category (iii)(a):*  Contrary to Argentina's and Citibank's claims (Arg. Mem. 5-6; Citi Mem. 9), the U.S.-dollar Argentine-Law Exchange Bonds do not fall within Category (iii)(a) of the definition of DFCI because they were not "offered exclusively within [Argentina]."

- **The bonds were issued as part of Exchange Offers that were made around the world, including in the United States.**  This is evidenced by the Republic's extensive SEC filings, which make clear that all holders of Eligible Securities—not just Argentine persons—could obtain U.S.-dollar Argentine-law Exchange Bonds.[18]  Indeed, the Regis-

---

[17]  *See* 2005 Prospectus Supplement at Annex C.  Plaintiffs have determined that the Eligible Securities with the following ISINs were Category (i) bonds:  ARP04981DG19, ARARGE043901, ARARGE044032, ARARGE044198, ARP04981BA66, ARARGE043927, ARARGE044008, ARARGE044164, ARARGE030114, ARARGE044081, ARARGE043992, ARARGE044156, ARARGE030056.

[18]  *See* 2005 Prospectus Supplement at Cover, iii, S-11, S-37; *see also id.*at S-95-100 (listing "JURISDICTIONAL RESTRICTIONS" for who may enter the Exchange, with no prohibition on non-Argentines' obtaining Argentine-law Exchange Bonds).  Argentina is wrong that the Prospectus Supplements do not govern the Argentine-law Exchange Bonds.  The Prospectus Supplements provide the terms of the exchange of Argentine-law bonds, list the bonds eligible to be exchanged, and detail the bonds that Argentina provided in exchange.  *See, e.g.*, 2005 Prospectus
*(Cont'd on next page)*

tration Statement the Republic filed with the SEC specifically said that the securities is-sued thereunder would be governed by "New York law, English law, or *Argentine law.*"[19]

- **The U.S.-dollar Argentine-law Exchange Bonds share the same prospectus with the other Exchange Bonds.** Argentina asserts (without any citation) that, "[c]onsistent with the local nature of the offerings, they were treated as offshore securities offerings for Se-curities Act purposes, and were not registered with the SEC under the Securities Act." Arg. Mem. 6. But the Prospectus Supplements make clear that Argentina issued the U.S.-dollar Argentine-law Bonds through its registration statement filed with the SEC. *See* 2005 Prospectus Supplement at ii.

- **The holders of many bonds eligible to be exchanged for U.S.-dollar Argentine-law Exchange Bonds in the 2005 and 2010 exchanges were in fact located outside Argen-tina.** Eligible bonds could be held through accounts at the European clearing agencies Euroclear and Clearstream, and they were listed on foreign exchanges. When holders of such bonds were exchanged, the offer took place outside of Argentina.[20]

- **Many of the investors who were offered U.S.-dollar Argentine-law Bonds were lo-cated outside of Argentina.** Investors were told, for example, that they could hold an in-terest in U.S.-dollar Argentine-law Bonds if they had an account with Euroclear or Clear-stream, and could tender their bonds through any of several American or European clear-ing agencies. *See* 2005 Prospectus Supplement at S-20. And the very decrees under which Argentina claims its Argentine-law securities were issued list non-Argentine enti-ties—Barclays Capital Inc., Deutsche Bank Securities Inc., and Citibank N.A.—as the underwriters. Argentina Ex. J, at 3, 5-6.

- **Citibank currently transfers the funds it receives from the Republic to Euroclear and Clearstream for distribution outside Argentina.** Both Euroclear and Clearstream filed motions for clarification when they received funds from Citibank in June 2014. *See* D.E. 556; D.E. 566. The fact that many current beneficial holders of the U.S.-dollar Ar-gentine-law Bonds are located outside of Argentina is yet further evidence that those bonds were offered outside of the Argentina in the first instance.

Argentina has no answer to these facts. Instead, it cites various other attributes of the

U.S.-dollar Argentine-law Exchange Bonds—none of which has bearing on the critical issue of

---

*(Cont'd from previous page)*

Supplement at S-9, S-17, S-20, S-21, S-33, S-70-71, S-104-05, A-1-A11; *see also* Argentine Presidential Decree No. 1735/2004, dated Dec. 9, 2004 (Argentina Ex. P), at Ex. III ("This doc-ument complements what is set forth in the Prospectus Supplement and the Applicable Operating Procedure in the Republic of Argentina as it relates to the applicable conditions of bonds issued under the laws of the Republic of Argentina, and should be analyzed in conjunction with the aforementioned documents.").

[19]   Registration Statement, Mar. 18, 2010 at 14, http://tinyurl.com/kph52to.

[20]   *See* Ex. G at 4; Ex. H at 13; Ex. I at 4; Ex. J at 16.

*to whom they were offered* (and *where*).   That the U.S.-dollar Argentine-law Exchange Bonds were issued under presidential decrees, not a Trust Indenture (Arg. Mem. 6), is beside the point. The decrees Argentina cites are generic authorizations for the Economy Ministry to perform the exchange, and neither state nor suggest that these bonds were offered only within Argentina.[21]

Argentina also contends that the security for the U.S.-dollar Argentine-law Exchange Bonds was "issued 'to the order of the Central Bank of the Republic of Argentina.'"  Arg. Mem. 6.  This too is irrelevant.  Where the security for a bond was lodged has no bearing on *to* whom it was offered, which is central to whether bonds constitute DFCI under Category (iii)(b).

**Category (iii)(b):**  Neither Citibank nor Argentina has attempted to show that the U.S.-dollar Argentine-law Exchange Bonds are DFCI under Category (iii)(b) (bonds issued in exchange for *peso*-denominated debt).

\* \* \*

Citibank and Argentina, in short, have failed to carry their burden of showing that *any* of the U.S.-dollar Argentine-law Exchange Bonds constitute DFCI, and, in any event, the Injunction would be equitable even if some of the Exchange Bonds were not External Indebtedness.

**B.    No Other Difference Between U.S.-Dollar Argentine-Law Exchange Bonds And Others Justifies Excluding Argentine-Law Bonds From The Injunction.**

Citibank and Argentina argue that various differences between the U.S.-dollar Argentine-law Exchange Bonds that Citibank seeks to exclude and other Exchange Bonds justifies excluding the former from the Injunction:  that these Exchange Bonds were issued under presidential decrees rather than a trust indenture; that they are paid through Caja de Valores S.A. rather than BNY; that they lack various contractual protections for those Exchange Bondholders; that their ISINs use a different ISIN prefix; and that they lack a provision expressly consenting to jurisdic-

---

[21]   *See* Argentine Presidential Decree No. 1735/2004, dated Dec. 9, 2004 (Argentina Ex. P); Argentine Presidential Decree No. 563/2010, dated Arp. 26, 2010 (Argentina Ex. J).

tion in New York's courts.  *See* Citi Mem. 10-11; Arg. Mem. 6-7.  None the purported differences rests on any change in the relevant law or facts.  None, moreover, makes it any less equitable to hold Argentina to its promise to treat its obligations to Plaintiffs equally with its other debts, or to prevent third parties from aiding Argentina in breaching that pledge.

### C.  Comity Does Not Permit Third Parties To Aid And Abet Argentina's Defiance Of Federal Judicial Authority.

Citibank further argues that faithfully applying the Injunction by its terms to payments on the U.S.-dollar Argentine-law Exchange Bonds would violate principles of comity.  Citi Mem. 12-13.  Citibank cursorily claims that comity requires excusing it from respecting the Injunction because "Citibank Argentina must obey Argentine banking law, which requires Citibank Argentina to transfer the September 30 Payments to its customers."  *Id.* at  13.  This claim is baseless.[22]

Citibank's sole authority, *Gucci America, Inc. v. Bank of China*, __ F.3d __, 2014 WL 4629049 (2d Cir. Sept. 17, 2014), lends no support to its position.  In *Gucci*, a U.S. branch of a Chinese bank had attempted to demonstrate that compliance with an order freezing assets abroad would violate general Chinese banking law.  *Id.* at *2-3.  The Second Circuit noted that the district court should "consider the Bank's legal obligations pursuant to foreign law before compelling it to comply," based on "the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."  *Id.* at *13.[23]

---

[22]  In a footnote, Citibank mentions various related doctrines, which it addressed in a motion filed months ago, from the act-of-state doctrine to the separate-entity rule.  Mot. 12 n.4.  Citibank's attempted "incorporat[ion] by reference" (*ibid.*) of arguments not developed is insufficient to preserve them for review by this Court or on appeal.  *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).  To the extent Citibank is permitted to rely on these arguments advanced elsewhere, Plaintiffs rely here on their previous responses to them.  *See* Appellee NML Br. 43-54, No. 14-2689 (2d Cir. Aug. 29, 2014) (D.E. 130).

[23]  *Gucci*'s discussion of comity, moreover, was dictum:  Vacatur was required in *Gucci* because the district court asserted personal jurisdiction over the third party on a theory since abrogated by new case law.  *Id.* at *4, *9-13.  The Second Circuit explained that it "need not reach this issue"

*(Cont'd on next page)*

Here, in contrast, Citibank is a U.S.-based bank, seeking protection for a foreign branch. And the foreign-law obligations and sanctions that Citibank purportedly will face were contrived *by the defendant*—Argentina—with the specific aim of inducing third parties' aid in evading the Injunction entered by this Court and affirmed by the Second Circuit.  Comity assuredly does not require "permit[ting] Argentina's threats to punish third parties to dictate the availability or terms of relief under Rule 65." *NML II*, 727 F.3d at 242.  Unlike the foreign state in *Gucci*, moreover, Argentina voluntarily submitted to this Court's jurisdiction in the FAA, and has forfeited any claim to reciprocal respect or "cooperation" by brazenly defying federal-court authority.

### D. This Court Has Authority, Under Federal Rule 65(d), To Bar Citibank From Facilitating Exchange-Bond Payments In Active Concert With Argentina.

Citibank next suggests (Citi Mem. 13-14) that the Injunction cannot lawfully apply to Citibank, a non-party, because courts of equity cannot enjoin or impose liability on third parties who act independently of a party who has done wrong.  This contention likewise is not premised on any significant change in facts or law arising since the Injunction was entered.  Indeed, it was considered and rejected by the Second Circuit in its prior opinion, which affirmed the Injunction's application, by "automatic operation of Rule 65," to third-party financial institutions like Citibank.  *See NML II*, 727 F.3d at 244.  The Second Circuit affirmed this Court's finding that, "to prevent Argentina from avoiding its obligations to plaintiffs," the Injunction "must reach the process by which Argentina pays Exchange Bondholders," and therefore it must cover "foreign payment system participants" who facilitate that process at Argentina's behest.  *Id.*

Even if the issue were still open, Citibank's argument is meritless.  By processing forbidden payments on U.S.-dollar Argentine-law Exchange Bonds, Citibank does *not* act "inde-

---

*(Cont'd from previous page)*

of comity, and merely offered "guidance to the district court" for remand. *Id.* at *13.

pendently," but in active concert or participation with Argentina.  One whose actions in fact assist a violation of an injunction—even if his purported *reasons* for acting are "independent" of any desire to assist a violation—is "not *acting* independently," "which is the end of the matter." *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 193 (2d Cir. 2010) (emphasis added).  The Rule 65(d) inquiry, in short, "is directed to the actuality of concert or participation, without regard to the motives that prompt the concert or participation."  *Id.* (quotation marks omitted).  Citibank is indisputably aware that Argentina may not make payments on Exchange Bonds.  And Citibank's processing of payments at Argentina's behest is part and parcel of Argentina's violation of the Injunction.  Citibank is thus properly forbidden from taking such steps by Federal Rule 65(d)(2).

Nor does the Injunction's application by "automatic operation of Rule 65," *NML II,* 727 F.3d at 244, impermissibly "trea[t]" Citibank "as if [it] had been … found liable."  Citi Mem. 13. Neither the Injunction nor Rule 65 directly imposes any liability on third parties.  They merely preclude such third parties from taking action to facilitate violations.  Citibank faces no liability from this Court's orders unless and until it aids Argentina in evading the Injunction.

### E.    The Injunction Governs The U.S.-Dollar Argentine-Law Exchange Bonds Regardless of Whether Other Irrelevant Bonds Are Not Exchange Bonds.

Citibank and Argentina assert that the U.S.-dollar Argentine-law Exchange Bonds should be exempted from the Injunction because many of the U.S.-dollar Argentine-law bonds that the Republic has issued were not "issued in connection with any exchange offer."  Citi Mem. 14; *see also* Arg. Mem. 7-9.  Neither one offers any evidence to support its claims.  In any event, these assertions are wholly irrelevant.  Both the Injunction itself and the July 28 Order clarifying it pertain only to bonds that *are* "Exchange Bonds."  Injunction ¶ 2(a); July 28 Order 4.  It is undisputed that bonds that are *not* Exchange Bonds do not implicate the September 30 payment.

Nor does Argentina's and Citibank's claim that the Repsol bonds—issued by Argentina

21

in April 2014, using the same identification number (the ISIN) as certain U.S.-dollar Argentine-law Exchange Bonds—cannot be distinguished from other bonds support excluding U.S.-dollar Argentine-law Exchange Bonds from the Injunction altogether.  Neither Argentina nor Citibank proves that it is actually impossible "to devise a way to distinguish between" the Repsol bonds and other bonds.  July 28 Order 4.  Both instead rely on a conclusory, unexplained assertion by one of Citibank Argentina's own officers that distinguishing the two categories of bonds is "operationally impossible."  *See* Citi Mem. 15; Arg. Mem. 8 n.7.[24]  That falls far short of the mark.

   In any event, the burden of any purported difficulty in distinguishing between the Repsol bonds and Exchange Bonds should be borne by the Republic, not Plaintiffs.  Argentina chose to issue the Repsol bonds using a common ISIN long after the Injunction was issued, and nearly a year after Citibank's May 2013 motion for clarification put the Republic on notice that those bonds might be (and indeed, *are*) covered by the Injunction.  Arg. Mem. 8 n.7.  Argentina did so deliberately to make the Repsol bonds "an easily transferrable, liquid asset"—in other words, more valuable.  *Id.*  The fact that Argentina chose to commingle its debts and make Exchange Bonds more difficult to distinguish hardly justifies excusing Argentina from the Injunction's unambiguous terms.  Traditional principles of equity suggest exactly the opposite.[25]  And the alleged consequence—that holders of Repsol bonds would be harmed—is merely another attempt by the Republic to use "threats to punish third parties to dictate the availability or terms of relief under Rule 65," which the Second Circuit has repudiated.  *NML II*, 727 F.3d at 242.

---

[24]  As noted above, *supra* n. 4, Argentina did not respond to our August 29 request for information relevant to the issuance of the bonds to Repsol and the other category of Argentine-law bonds mentioned for the first time in Argentina's post-hearing submission.  Notably, Argentina does not deny that the Repsol settlement will in no way be affected by the Injunction.  The settlement has been final for many months, since Repsol successfully sold all of the relevant bonds in May, and buyers of those bonds were fully aware that they were subject to the Injunction.

[25]  *See Peters v. Bain*, 133 U.S. 670, 693-94 (1890); Austin W. Scott, *The Right to Follow Money Wrongfully Mingled with Other Money*, 27 Harv. L. Rev. 125, 125-29, 138 (1913).

Again, these issues are far from urgent.  No payments are due on these commingled bonds on September 30, 2014; the next payment is due December 31, 2014.[26]  And there is a 30-day grace period for the September 30 payment; there is thus no reason why Argentina must force this Court to decide this issue on a hugely expedited basis—particularly where the record is so woefully inadequate to justify the dramatic relief that is being sought.  That is all the more reason why the Court should permit discovery to test Argentina's and Citibank's claims.

## IV.   Citibank's Motion Seeks To Erode The Injunction And Threatens To Further Argentina's Unlawful Attempts To Evade Its Enforcement.

Modifying the Injunction is not only unwarranted, but also would encourage attempts by Argentina to circumvent the Injunction in several ways, possibly rendering "entirely for naught" the time and effort the federal judiciary has brought to bear in this litigation.  D.E. 424, at 9.

*First*, exempting third parties based in Argentina from obligations under the Injunction would encourage Argentina's efforts to replace law-abiding financial institutions—such as BNY—with pliant institutions in Argentina that will unquestioningly assist Argentina's illegal payments.  When Argentina attempted to make an illegal payment in June 2014, BNY complied with this Court's order and refused to forward the payment.  *See* D.E. 633.  Argentina, however, has now taken steps—first by enacting, and then by implementing, legislation—to remove BNY as the bonds' indenture trustee and replace BNY with an Argentine entity wholly owned by the Argentine government.[27]  If this Court excuses Citibank from obeying the Injunction, Argentina is much more likely to attempt such a scheme.  Indeed, under Citibank's logic, *any* Argentine institution could claim to be exempt from the Injunction based on Argentina's threats to enforce

---

[26]  *See* 2005 Prospectus Supplement at  S-5 (noting that interest payments on "Discount" bonds are due only on June 30 and December 31 of each year); *id.* at S-105 (identifying the bonds at issue—with ISIN ARARGE03E113—as Discount Bonds).

[27]  *See* Ex. D, Art. 3; Ex. E (advertisement in the New York Times informing Exchange Bond-holders that Argentina had purportedly acted to remove BNY as trustee).

23

its self-serving laws.  If Argentina succeeds in replacing non-Argentine institutions with those based in Argentina, then, according to Citibank's reasoning, *all* institutions that process Argentina's illegal payments would be excused from complying with the Injunction.

*Second*, exempting the U.S.-dollar Argentine-law Exchange Bonds from the Injunction altogether—because Argentina has commingled them with bonds subsequently issued to Repsol (or in any other issuance) using a common ISIN—would give Argentina yet another incentive to attempt to evade the Injunctions.  Argentina's most recent scheme would allow Exchange Bondholders to exchange non-Argentine-law bonds for new bonds governed by Argentine law.  *See* Ex. D, Art. 7.  To be sure, these new bonds would constitute "Exchange Bonds" under the Injunctions, as they would have been issued "pursuant to … any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future."  Injunction ¶ 2(a).

*Third*, accepting Citibank's invitation to retroactively modify the Injunction would open the floodgates to similar requests from other third parties—some acting to further Argentina's interests, and some acting to further their own.  In just the last several days, this Court already has received several "me too" requests from other actors in the payment chain.  And there is no reason to expect that tide to turn.  It is clear that Argentina has no incentive to resolve this matter if there is hope that the Injunction may be diluted by still further requests to carve one piece or another.  The Injunction was perfectly clear when first entered.  Anyone had the opportunity to challenge various aspects of it, and this Court and the Second Circuit properly rejected those attempts.  Re-opening that exercise could have untold and serious consequences.

## V.    A Stay Is Unwarranted.

Citibank's request for a stay pending resolution of its motion is meritless.  Its does not mention the well-settled stay criteria—likelihood of success on the merits, irreparable harm, injuries to others, and the public interest, *see Nken v. Holder*, 556 U.S. 418, 426 (2009)—much less

demonstrate that they are satisfied.  Nor can it.  As explained above, Citibank cannot remotely make a "strong showing" (*id.*) that it will succeed on the merits.  Nor has it shown that it will be irreparably injured absent a stay.  Indeed, there is virtually no record evidence of Citibank's purported harm if made to comply with the Injunction.  All it offers is untested, self-serving assertions.  In fact, compliance with the Injunction requires Citibank only to send a simple letter to Caja de Valores—which Citibank could do *today* if it wished to comply.  *See* Mann Decl. ¶ 9.[28]

The risks that Citibank now supposedly faces, in short, are risks it assumed eyes-open—by electing to "do[] business in many jurisdictions, [thereby] subject[ing] itself to potentially conflicting laws."[29]  Those risks that it knowingly assumed cannot be viewed as stay-worthy irreparable harm.  And its alleged harms are not irreparable, as it still may choose to violate the Injunction and raise any available defense in opposing contempt.  *See NML II*, 727 F.3d at 244.

In contrast, a stay would substantially injure the Plaintiffs—providing yet another opportunity for Argentina to seek to evade the Injunction and its contractual commitments.  It also would injure the public interest.  If Argentina has indeed threatened Citibank (and others) simply for complying with this Court's orders, judicial acquiescence will only encourage more misbehavior.  Granting Citibank a stay also would give Argentina what it will view as a clear path to evade the Injunction, in turn will reducing Argentina's incentive to return to the negotiating table and resolve this dispute voluntarily.  These outcomes certainly do not serve the public interest.

## CONCLUSION

For these reasons, Citibank's motion should be denied in its entirety.

---

[28] Any possible hardship is largely a problem of Citibank's own making, as it did not seek a stay of the July 28 Order while it pursued  its improper appeal, nor did it take any steps to prepare to comply with the Injunction in the event that its appeal failed.  *See* 2d Cir. Tr. 77:9-80:12.

[29] *N. Mariana Islands v. Millard*, 287 F.R.D. 204, 214 n.75 (S.D.N.Y. 2012); *see also Tire Eng'g & Dist. L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 117 (2d Cir. 2014).

## CONCLUSION

For these reasons, Citibank's motion should be denied in its entirety.

Dated:   September 25, 2014

Respectfully submitted,

By: _Matthew D. McGill_

Theodore B. Olson
(tolson@gibsondunn.com)
Matthew D. McGill
(mmcgill@gibsondunn.com)
Jason J. Mendro
(jmendro@gibsondunn.com)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
(202) 955-8500

*Attorneys for Plaintiff NML Capital, Ltd.*

Leonard F. Lesser
(llesser@simonlesser.com)
SIMON LESSER, P.C.
355 Lexington Avenue
New York, N.Y. 10017
(212) 599-5455

*Attorney for Plaintiff Olifant Fund, Ltd.*

Edward A. Friedman
(efriedman@fklaw.com)
Daniel B. Rapport
(drapport@fklaw.com)
FRIEDMAN KAPLAN SEILER
& ADELMAN LLP
7 Times Square
New York, N.Y. 10036
(212) 833-1100

Lawrence S. Robbins
(lrobbins@robbinsrussell.com)
Mark T. Stancil
(mstancil@robbinsrussell.com)
ROBBINS, RUSSELL, ENGLERT, ORSECK
UNTEREINER & SAUBER LLP
1801 K Street, N.W.
Washington, D.C. 20006
(202) 775-4500

*Attorneys for Plaintiffs Aurelius Capital Master, Ltd., Aurelius Opportunity Fund II, LLC, ACP Master, Ltd., Blue Angel Capital I LLC*

Michael C. Spencer
MILBERG LLP
(MSpencer@milberg.com)
One Pennsylvania Plaza
New York, N.Y. 10119
(212) 594-5300

*Attorney for Plaintiffs Pablo Alberto Varela, et al.*