UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------- x
```
NML CAPITAL, LTD.,                              :
                                                :    08 Civ. 6978 (TPG)
                            Plaintiff,          :    09 Civ. 1707 (TPG)
                                                :    09 Civ. 1708 (TPG)
                v.                              :
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                            Defendant.          :
```
--------------------------------------------------------- x
```
                                                :
AURELIUS CAPITAL MASTER, LTD., and              :
ACP MASTER, LTD.,                               :    09 Civ. 8757 (TPG)
                                                :    09 Civ. 10620 (TPG)
                            Plaintiffs,         :
                                                :
                v.                              :
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                            Defendant.          :
                                                :
```
--------------------------------------------------------- x
```
                                                :
AURELIUS OPPORTUNITIES FUND II, LLC             :
and AURELIUS CAPITAL MASTER, LTD.,              :    10 Civ. 1602 (TPG)
                                                :    10 Civ. 3507 (TPG)
                            Plaintiffs,         :
                                                :
                v.                              :
                                                :
THE REPUBLIC OF ARGENTINA,                      :
                                                :
                            Defendant.          :
                                                :    **(captions continued on next page)**
```
--------------------------------------------------------- x
```

## DECLARATION OF RONALD MANN

```
-------------------------------------------------------  x
AURELIUS CAPITAL MASTER, LTD., and       :
AURELIUS OPPORTUNITIES FUND II, LLC,    :        10 Civ. 3970 (TPG)
                                         :        10 Civ. 8339 (TPG)
                         Plaintiffs,     :
                                         :
            v.                           :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                         Defendant.      :
-------------------------------------------------------  x
BLUE ANGEL CAPITAL I LLC,                :
                                         :
                         Plaintiff,      :        10 Civ. 4101 (TPG)
                                         :        10 Civ. 4782 (TPG)
            v.                           :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                         Defendant.      :
-------------------------------------------------------  x
OLIFANT FUND, LTD.,                      :
                                         :
                         Plaintiff,      :        10 Civ. 9587 (TPG)
                                         :
            v.                           :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                         Defendant.      :
-------------------------------------------------------  x
PABLO ALBERTO VARELA, et al.,            :
                                         :
                         Plaintiff,      :        10 Civ. 5338 (TPG)
                                         :
            v.                           :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                         Defendant.      :
-------------------------------------------------------  x
```

Pursuant to 28 U.S.C. § 1746, I, Ronald Mann, hereby declare that the following is true and correct:

1.      I am the Albert E. Cinelli Enterprise Professor of Law at Columbia Law School, where I am the co-Director of the Charles E. Gerber Program in Transactional Studies.  I previously have held tenured positions at the law schools at the University of Texas, the University of Michigan, and Washington University in St. Louis.  I also have taught courses in commercial transactions as a visitor at Harvard Law School and at the Faculty of Law at Tokyo University.

2.      I hold a B.A. (1978) from Rice University in History (Magna Cum Laude) and a J.D. from the University of Texas, where I was first in my class and managing editor of the *Texas Law Review*.  I subsequently clerked for Joseph T. Sneed on the United States Court of Appeals for the Ninth Circuit and Lewis F. Powell, Jr., on the United States Supreme Court.  I also served for three years as an Assistant to the Solicitor General in the United States Department of Justice.

3.      The study of payment systems has been a focal point of my research and teaching for the last fifteen years.  I regularly have taught courses in payments systems and am the author of a widely adopted casebook on that subject (*Payment Systems and Other Financial Transactions* (5th ed. Wolters Kluwer 2011)).  Those materials are distinctive (as compared to most law school courses) for their relatively heavy emphasis on wire transfers.  The methodology for preparing (and updating) the course and casebook involves a continuing set of interviews with industry participants about their ordinary operating procedures and the reasoning that supports them.

4.       I served as Reporter for the Drafting Committee that prepared the two most recent sets of amendments to UCC Articles 3, 4, and 4A (which include domestic legal rules for wire transfers).

5.       Counsel for Plaintiffs have asked me to consider whether it is possible for Citibank Argentina to forestall the transfer of funds sent to Citibank Argentina for the purpose of making payments to its customers on the so-called "Argentine law bonds."  More specifically, they have asked me to consider the likelihood that

> (a)       There is no mechanism by which Citibank Argentina can reject the incoming transfers (so that it never receives the funds in question); and
>
> (b)       It is not practical for Citibank Argentina to identify the relevant incoming transfers out of the large volume of incoming wire transfers.

6.       In general, it is my opinion that the ordinary and routine procedures for funds-transfer systems would make it simple for Citibank Argentina to identify and reject the incoming transfers.

7.       It is basic to the concept of wire-transfer systems that the banks that receive such transfers have no obligation to accept them.  Concerns about the probity and liquidity of correspondent institutions have made it important, since the rise of large-dollar wire-transfer systems late in the last century, for banks to retain the right to choose the banks with which they will do business.

8.       In the funds-transfer context, those concerns have led to broad discretion for a bank to reject any incoming transfer.  A bank rejects a transfer by sending a notice of rejection to the sender at some point before the receiving bank accepts the transfer.

9.      If the receiving bank sends a notice of rejection before it accepts the transfer, then no later action by the sender can lead to an acceptance; a timely notice of rejection typically precludes any acceptance of a transfer.  Accordingly, Citibank Argentina could send a notice this week rejecting any relevant transfer through Caja de Valores S.A. (the "Caja") from the payor of the bonds (which I understand to be the Central de Registro y Liquidación de Instrumentos de Endeudamiento Publico (the "CRYL")).  If Citibank Argentina sent such a notice, then under ordinary procedures Citibank Argentina would not "accept" (and thus not receive) any such transfer even if the CRYL (and the Caja) disregarded the notice and purported to send the transfer.

10.     To be sure, in some funds-transfer systems (normally central bank systems that provide real-time gross settlement), funds are credited to the receiving bank at the moment of the transfer, and thus acceptance in the ordinary course occurs immediately and automatically at the moment of transfer.  But even in those systems, a rejection of the transfer that predated the transfer should preclude any acceptance of a transfer purportedly sent in violation of a preexisting rejection.

11.     Similarly, it is not plausible that Citibank Argentina cannot identify the relevant incoming transfers.  Under ordinary operating procedures, large commercial banks regularly screen incoming transfers using software filters that identify in real time (that is, as the transfers are sent) transfers that are suspect for any number of reasons – potential fraud, money-laundering, and terrorist-related activity being among the most common.

12.     Ordinarily, those procedures rely on software products that identify particular transactions by the identity of the sender or ultimate beneficiary, the amount of the transfer, or any number of other objective characteristics.

13.     One reason that procedures for identifying and rejecting individual transfers are so routinized is that most large banks are subject to rules that obligate them to reject transfers sent from (or to) certain disfavored entities.  In the United States, for example, this includes not only specific countries identified under statutes such as the Export Administration Act, but also individuals and entities identified on frequently updated lists circulated by the Office of Foreign Assets Control in the Department of the Treasury.

14.     Although I am not familiar with the particular ownership structure of Citibank Argentina, it is likely that it maintains the capability to identify and reject transfers in the ordinary course of its business, because the OFAC rules summarized above ordinarily apply to all entities that are "owned or controlled by" the American bank that is directly responsible. *E.g.*, 31 C.F.R. §§ 515.201(a)(1) & .329(d) (Cuba); 535.201 & .329(d) (Iran).

15.     The ability to identify and reject the transfer should not depend on whether the CRYL sends a single transfer of funds through the Caja (which Citibank Argentina distributes to the customers holding interests of record in the relevant bonds) or separate transfers of funds to particular holders of beneficial interests known to the payor of the bonds.  If the CRYL sends a single transfer, it would be readily identifiable based on the sender, amount, and date.  *See* D'Auro Declaration ¶¶ 7-11 (suggesting a single global transfer); Elewaut Declaration ¶¶ 6-11 (same).[1]  If the CRYL sends multiple transfers, then Citibank Argentina need only generate a list of the bondholders and send a notice rejecting all transfers sent from the CRYL to pay those bonds.

---

[1] Docket Entries 463 and 461, respectively, in *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (S.D.N.Y.).

16.    In sum, it is so common for a bank to reject an incoming wire transfer that banks typically maintain the systems and procedures that make it routinely practical for them to identify and reject particular transfers of concern.

Dated: September 25, 2014
        New York, New York

_____
RONALD MANN

7