# EXHIBIT C

1

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------------------:
AURELIUS CAPITAL MASTER, : No. 14-2689
LTD., ET AL.,            :
                        :
   Plaintiffs-Appellees, : HON. REENA RAGGI
                        :
            v.          : HON. ROSEMARY POOLER
                        :
REPUBLIC OF ARGENTINA,   : HON. BARRINGTON PARKER
                        :
   Defendant-Appellant.  :
------------------------:


                              New York, New York

                    Thursday, September 18, 2014


        The hearing in the above-entitled matter

was heard at the United States Court of Appeals

for the Second Circuit, Thurgood Marshall United

States Courthouse, 40 Foley Square, New York,

New York 10007, when were present on behalf of

the respective parties:

2

```
 1              A P P E A R A N C E S

 2   On behalf of Plaintiffs-Appellees:

 3        KAREN WAGNER, ESQ.
          Davis Polk & Wardwell, LLP
 4         450 Lexington Avenue
           New York, NY 10017
 5
          ROY ENGLERT, ESQ.
 6        Robbins Russell Englert Orseck & Untereiner,
           LLP
 7        1801 K Street NW, Suite 411
          Washington, D.C. 20006
 8
     On behalf of Defendant-Appellant:
 9
          CARMINE BOCCUZZI, ESQ.
10        Cleary Gottlieb
          One Liberty Plaza
11        New York, NY 10006

12

13

14

15

16

17

18

19

20

21

22
```

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

3

1                    C O N T E N T S

2

  Karen Wagner,
3        Counsel for Citibank                    4

4  Carmine Boccuzzi,
         Counsel for Republic of Argentina     19

5

  Roy Englert,
6        Counsel for Funds                     31

7  Mr. Boccuzzi,
         Rebuttal                             46

8

  Ms. Wagner,
9        Rebuttal                             64

10  Mr. Englert,
          Rebuttal                            84

11

12

13

14

15

16

17

18

19

20

21

22  (No exhibits marked.)

4

```
 1                P R O C E E D I N G S

 2           CLERK OF COURT:  Judges of the United

 3   States Court of Appeals for the Second Circuit.

 4   Hear ye, hear ye, hear ye.  All persons having

 5   business before this, a stated term of the United

 6   States Court of Appeals for the Second Circuit

 7   draw near, give your attention and ye shall be

 8   heard.

 9           JUDGE POOLER:  Thank you.  Good

10   afternoon.  Please be seated.  I am informed that

11   all parties are here.  We have several matters,

12   several docket numbers.  The movant, I think, is

13   Citibank.  Is that correct?

14           MS. WAGNER:  Yes, Your Honor.

15           JUDGE POOLER:  You may take the podium.

16           MS. WAGNER:  Thank you, Your Honor.

17   Good afternoon, Your Honors.  May it please the

18   Court, my name is Karen Wagner.  I'm a member of

19   the firm of Davis Polk & Wardwell, and I'm here

20   representing Citibank.

21           JUDGE PARKER:  Now, do you represent

22   Citibank Argentina?
```

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

5

1            MS. WAGNER:  Yes, I do, Your Honor.

2  Your Honor, thank you -- Your Honors, thank you

3  very much for hearing us on an expedited basis.

4  As we have explained to the Court, Citibank

5  Argentina faces serious and imminent hazard.  On

6  or before September 30, 12 days from now, Citibank

7  Argentina will undoubtedly receive a payment

8  through Argentina and that payment as a matter of

9  Argentine law will have to be paid on to Citibank

10  Argentina's customers.

11            JUDGE RAGGI:  May I ask why you have to

12  accept the money?  I mean, what would -- what's

13  your ability to say please don't transfer that

14  money to us unless it can -- unless it's

15  accompanied by a showing of compliance with the

16  District Court's injunction?

17            MS. WAGNER:  Your Honor, we have

18  accounts for customers, and the system is pretty

19  much automated at this point.  The money will just

20  come in.  It will come in from Argentina, through

21  the central bank, to the Caja de Valores and --

22            JUDGE RAGGI:  Right.  But the question

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

6

1   is can you stop it.  Can you?

2           MS. WAGNER:  To the best of my

3   understanding, Your Honor, we cannot stop it

4   unless --

5           JUDGE RAGGI:  Ever?

6           MS. WAGNER:  We have to move customer

7   accounts in order to stop it.

8           JUDGE RAGGI:  Customers?

9           MS. WAGNER:  Customers have to be the

10  ones to move their account.

11          JUDGE RAGGI:  So you would have to tell

12  your customers, look --

13          MS. WAGNER:  Yes.

14          JUDGE RAGGI:  We are going to tell

15  Argentina we can't accept this money without a

16  showing.

17          MS. WAGNER:  Correct.

18          JUDGE RAGGI:  If that's not -- if that's

19  troubling to you, you're going to have to move

20  your accounts.

21          MS. WAGNER:  Correct, Your Honor.

22          JUDGE RAGGI:  Okay.  So it can be done.

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

7

1          MS. WAGNER:  It can be done.

2          JUDGE RAGGI:  It's just a matter that it

3  involves several steps.

4          MS. WAGNER:  It involves several steps,

5  and it's not entirely in Citibank's control. But

6  yes, it can be done.

7          JUDGE RAGGI:  Well, it's entirely within

8  your control to say don't send us the money and

9  then to give your customers notice of it, or am I

10  missing something?

11          MS. WAGNER:  Your Honor, given our

12  obligations to customers, I don't think it's

13  within our power to say don't send us the money

14  until our customers have moved their account.

15          JUDGE RAGGI:  All right.  So it's just a

16  matter of which comes first in terms of the notice

17  or the -- I ask this because we've seen a lot in

18  your papers about fear that you're going to be

19  criminally held accountable in Argentina, and I'm

20  trying to see what steps you could take that would

21  avoid that problem for you.  So that's why I ask

22  these questions. All right.

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

8

1            MS. WAGNER:  Perfectly reasonable, Your

2    Honor, and just to be clear about one thing, we

3    would not be able to take these steps in time to

4    deal with the payment that is coming on September

5    30.  Those are steps that would take about 90 days

6    at the least.  So we could not do anything between

7    now and September 30 to alleviate this situation.

8            JUDGE RAGGI:  But that goes to the

9    question of that you haven't so far either and

10   whether that weighs against you in this -- in any

11   balance that might be struck here.

12           MS. WAGNER:  That's correct, Your Honor.

13           JUDGE PARKER:  So it's not your position

14   that the -- that Judge Griesa's order -- the

15   February 12th order, covers U.S.-denominated

16   Argentine law exchange bonds?

17           MS. WAGNER:  Your Honor, it is our

18   position that the order that was issued in

19   connection with the injunction here only covers

20   Bank of New York bonds, bonds for which Bank of

21   New York is indenture trustee.  It is very clear,

22   I think, from the record that supports the

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

9

1   issuance of the original injunction no other bonds

2   were considered and therefore we do not believe

3   our bonds were considered.

4           JUDGE PARKER:  So what's unclear about

5   the injunction?  The injunction covers exchange

6   bonds under both 2005 and 2010.

7           MS. WAGNER:  Correct, Your Honor, and

8   that is exactly why we took the judge's invitation

9   to make sure we understood correctly that in fact

10  it did not cover our bonds.  We thought that the -

11  -

12          JUDGE RAGGI:  So you concede that they

13  are exchange bonds?

14          MS. WAGNER:  Your Honor, I did say that

15  to the District Court.  I then corrected myself.

16          JUDGE RAGGI:  I understand --

17          MS. WAGNER:  Some of them are exchange

18  bonds, Your Honor, in the sense that they were

19  issued pursuant to the exchanges.

20          JUDGE RAGGI:  I understand we have a

21  number that covers both exchange and non- exchange

22  bonds.  But some of the bonds that you are seeking

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

10

1  to pay you concede are exchange bonds.  Is that

2  right?

3          MS. WAGNER:  Some of the bonds that we

4  are speaking about at Citibank Argentina were

5  issued in exchanges.  We do not concede that they

6  are exchange bonds as defined in the injunction

7  because we believe the exchange bonds as defined

8  in the injunction relate only to the Bank of New

9  York bonds.

10         JUDGE PARKER:  Although the injunction

11  is pellucid that it covers all exchange bonds,

12  it's your position that this was some sort of

13  mistake or inadvertence?

14         MS. WAGNER:  Your Honor, it's our

15  position that the opinion explained the injunction

16  and the opinion clearly describes the bonds upon

17  which the injunction is based and it is very clear

18  that the bonds that Citibank Argentina holds for

19  its customers are entirely different from the

20  bonds that were at issue in that litigation.

21         JUDGE POOLER:  Counsel, you're here

22  seeking relief from a motion to compel discovery.

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

11

1  Is that correct?

2           MS. WAGNER:  No, Your Honor.  We are

3  here today only seeking relief from an order which

4  compels Citibank to make the payments on these

5  bonds.

6           JUDGE POOLER:  And that's the July 28th

7  order or the June 27?

8           MS. WAGNER:  July 28th.

9           JUDGE POOLER:  In which the judge said

10 that you couldn't make a payment after July 30th?

11          MS. WAGNER:  That's correct, Your Honor.

12          JUDGE PARKER:  But Citibank --

13          JUDGE POOLER:  Is that a modification of

14 any previous order?

15          MS. WAGNER:  We believe, Your Honor,

16 that it is a modification of the original

17 injunction, just to take you --

18          JUDGE POOLER:  The September 2012

19 injunction?

20          MS. WAGNER:  Yes.  Yes, Your Honor.

21          JUDGE RAGGI:  But you did not --

22          JUDGE POOLER:  Well, why is it a

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

12

1  modification?  Why is it not --

2        MS. WAGNER:  Because, Your Honor, the

3  September injunction applied only to the Bank of

4  New York bonds.  That was confirmed by the judge's

5  June order in which he said the injunction does

6  not cover the Citibank Argentina bonds, and then

7  in the later order he said it will cover now these

8  bonds.  He did not take back his original legal

9  analysis which is that as a matter of law the

10  injunction could not apply to the bonds that we

11  hold.  Rather, as best one can interpret the

12  order, he said he decided it should apply to a

13  great new number of bonds.

14        JUDGE POOLER:  So he changed -- he

15  changed his view on what they were.

16        MS. WAGNER:  He changed his view, but

17  not I think his legal analysis or at least he did

18  not articulate a change in his legal analysis. So

19  we are of the view, Your Honor, this was -- this

20  injunction is a contractual injunction. It is an

21  injunction issued to enforce contracts, and there

22  is the contracts that were at issue in the hearing

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

13

1  before --

2         JUDGE PARKER:  The injunction define

3  exchange bonds to mean, quote, "The bonds or other

4  obligations entered pursuant to the Republic's

5  2005 or 2010 exchange offers or any subsequent

6  exchange or substitution."

7         MS. WAGNER:  Correct.

8         JUDGE PARKER:  I don't know how you

9  could seriously argue that the Argentine bonds

10  aren't covered by the definition.

11         MS. WAGNER:  Your Honor, we sought

12  clarification for exactly that reason. Obviously

13  our bonds were issued in the exchanges.

14         JUDGE PARKER:  Right.

15         MS. WAGNER:  But they had nothing --

16  they are totally different from the bonds that

17  were issued in the hearing in very material legal

18  ways.

19         JUDGE RAGGI:  How do we know that?  How

20  do we know they're different?

21         MS. WAGNER:  We know that because we put

22  in affidavits that describe the bonds and we

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

14

1  described the fact that they were issued locally.

2  They were not issued pursuant to the indenture.

3  They are based on Argentine law and not New York

4  law.  The Republic has not submitted jurisdiction

5  as to those bonds.

6          JUDGE RAGGI:  Are they dollar-

7  denominated or peso-denominated?

8          MS. WAGNER:  The ones at issue right now

9  are dollar-denominated because the appellees have

10  declined to pursue --

11          JUDGE RAGGI:  So why isn't -- why

12  doesn't it fall under the definition of external

13  indebtedness, which I have in front of me?

14          MS. WAGNER:  Your Honor, it is our view

15  that the bonds do not fall under the definition of

16  external indebtedness but I think more relevant to

17  this particular hearing is what was enjoined was

18  payments on external -- sorry, on exchange bonds,

19  not on external debt.

20          JUDGE RAGGI:  But the exchange bonds, as

21  you conceded, it's in document 205, I believe --

22  215, in this record.  These were bonds in exchange

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

15

1  for the original indebtedness on which Argentina

2  did submit to jurisdiction and which is the basis

3  of the injunction, right?

4          MS. WAGNER:  No, Your Honor.  That is

5  not correct.

6          JUDGE RAGGI:  Well, I think it is

7  correct so you'd better tell me why not.

8          MS. WAGNER:  I will tell you why I think

9  not.  The bonds that Citibank Argentina is holding

10  were issued in exchange only for other local law

11  bonds as to which there was no submission of

12  jurisdiction which were only issued in Argentina

13  and which were very much like these bonds and are

14  capped at external indebtedness.

15          JUDGE RAGGI:  That goes to how it was

16  affected.  They fit within the definition of the

17  2005 and 2010 exchange bonds, right?

18          MS. WAGNER:  Your Honor, they were

19  issued in the exchanges.

20          JUDGE RAGGI:  So what, did you make a

21  mistake when you conceded in the District Court

22  that they weren't exchange bonds?

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

16

1            MS. WAGNER:  Your Honor, what I was

2   intending to concede was they were issued in

3   exchanges.  I did not mean to suggest that they

4   were exchange bonds as defined by the injunction

5   and further I followed it up with a letter to the

6   judge before he ruled after we discovered that

7   many of the bonds held by Citibank Argentina were

8   not issued in exchanges.

9            JUDGE RAGGI:  Well, you know, you asked

10  the District Court for clarification.

11           MS. WAGNER:  I did.

12           JUDGE RAGGI:  And the District Court

13  clarified and said, no, these are exchange bonds,

14  and you are now --

15           MS. WAGNER:  Well, his first

16  clarification was no.

17           JUDGE RAGGI:  You are now -- let me ask

18  my question.

19           MS. WAGNER:  Sorry, Your Honor.

20           JUDGE RAGGI:  And you're now saying that

21  he modified it.  So it seems to me your whole

22  jurisdictional argument is based on whether it was

17

1  a modification or whether it wasn't a

2  modification.  Am I right?

3           MS. WAGNER:  Then, yes, Your Honor --

4           JUDGE RAGGI:  So if we don't agree with

5  you that this was a modification, do we have

6  jurisdiction to do any of the, you know, balancing

7  analysis or to fret about any of that?  That seems

8  to me to be something you would raise in the

9  District Court.

10          MS. WAGNER:  Your Honor, I think you

11 absolutely have jurisdiction because it's a

12 modification but also because it's a --

13          JUDGE RAGGI:  Well, what if we don't

14 agree with you?  That's what I'm asking you to

15 consider.

16          MS. WAGNER:  If you don't agree with me

17 that it's a modification, I think you have to

18 conclude that somehow the original injunction

19 covered bonds other than the bonds addressed at

20 the hearing, and I think it's unlikely you will

21 reach that conclusion, especially as the Court

22 ruled in June that our bonds were not covered.  So

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

18

1  therefore, that ruling in July that now they were

2  going to be covered --

3          JUDGE POOLER:  So one of them ruled --

4          MS. WAGNER:  -- has to be a modification

5  of the original injunction.  There's no other way

6  --

7          JUDGE POOLER:  One of them, either the

8  June or the July order, is a modification.

9          MS. WAGNER:  Is a modification, yes,

10  Your Honor.  I believe that must be the case.

11          JUDGE PARKER:  So you haven't -- at this

12  point, you haven't been ordered to do anything,

13  correct?

14          MS. WAGNER:  We have been enjoined by

15  the most recent order from making any further

16  payments.

17          JUDGE PARKER:  You're not a party to

18  this.

19          MS. WAGNER:  We're a nonparty but now we

20  are directed by a specific injunction directed to

21  us saying you may not make any more payments.

22          JUDGE RAGGI:  So is this -- is your

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

19

1  complaint right?

2          MS. WAGNER:  I think it is extremely

3  right because it's going to become extremely

4  relevant in 12 days when we get funds and when the

5  District Court has said we cannot pay them out.  I

6  think it is absolutely right.  It's a final order.

7  There are no further proceedings going on in the

8  District Court relating to this injunction, and we

9  are bound by it right now, and so, we need

10  immediate relief from this Court.

11          JUDGE RAGGI:  All right. Thank you.

12  We'll hear from the Republic.

13          MS. WAGNER:  Thank you.

14          JUDGE RAGGI:  You've reserved some time

15  for rebuttal.

16          MR. BOCCUZZI:  Good afternoon, Your

17  Honors.  Carmine Boccuzzi from Cleary Gottlieb on

18  behalf of the Republic of Argentina.  The District

19  Court --

20          JUDGE PARKER:  So in the spring, you

21  went into the Supreme Court and you told the

22  Supreme Court that, to be clear, absent relief,

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

20

1   Argentina will comply with the orders under

2   review.

3           MR. BOCCUZZI:  Yes, Your Honor.

4           JUDGE PARKER:  And then shortly

5   thereafter, you took steps that were palpably in

6   violation of the injunction, right?

7           MR. BOCCUZZI:  The Republic did, yes,

8   Your Honor.

9           JUDGE PARKER:  So how are we to -- I

10  mean, what are we to make of these

11  representations?  You told the Supreme Court you

12  were going to comply, then as soon as you didn't

13  get what you wanted out of the Supreme Court, you

14  disregarded the representation and went on your

15  merry way.

16          MR. BOCCUZZI:  Our understanding when we

17  wrote to the Supreme Court was that that's how

18  things would unfold and then, following the denial

19  of cert, the Republic acting at the highest levels

20  chose to act otherwise.

21          As I explained to the District Court,

22  the officials charged with overseeing these bonds

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

21

1  at the Ministry of Economy, given current

2  legislation, themselves faced criminal prosecution

3  in Argentina if they did not process the payment

4  without some change in Argentine law, which had

5  not occurred.

6          As to these bonds, Your Honor, these

7  Argentine law-governed bonds, Judge Griesa never

8  found that that payment to Citibank was in

9  violation of any of his orders because following

10 Ms. Wagner's motion for clarification, he said,

11 and I think he was absolutely right, these bonds

12 have always been treated differently, and there's

13 a reason why these bonds, the Citibank bonds, have

14 always been treated differently.  They're governed

15 by Argentine law.

16          JUDGE RAGGI:  This is the June 27th

17 order?

18          MR. BOCCUZZI:  Correct, the response to

19 Ms. Wagner's motion for clarification.

20          JUDGE RAGGI:  Treated differently by

21 whom?

22          MR. BOCCUZZI:  By the Court, and I think

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

22

1  that was --

2         JUDGE RAGGI:  Have they ever been at

3  issue in anything other than a discovery dispute

4  in the Court?

5         MR. BOCCUZZI:  Other Argentine law-

6  related bonds, so-called BODENs, had been subject

7  to attachment efforts by these plaintiffs based on

8  arguments --

9         JUDGE RAGGI:  Right, and the attachment

10  and the efforts to secure property have not

11  succeeded for various reasons.  But what perplexes

12  me here with respect to Argentina is what the

13  plaintiffs came in to enforce was a ratable

14  payment provision which might be construed to

15  apply to any other bonds of Argentina.

16         But the injunction the District Court

17  entered really limits it to the 2005 and 2010

18  exchange bonds.  So the only question is whether

19  the District Court injunction applies to these

20  exchange bonds issued under Argentine law rather

21  than under -- or the consent to agree the United

22  States law.

23

1                 MR. BOCCUZZI:  I would say there's --

2                 JUDGE RAGGI:  The District Court said it

3  did.

4                 MR. BOCCUZZI:  Well, there are two

5  questions --

6                 JUDGE RAGGI:  Whether they got treated

7  differently or not in other circumstances, the

8  only question is whether they are part of the

9  2005, 2010 exchange bonds.

10                MR. BOCCUZZI:  Well, there's a question

11  that precedes that which is any bond that is

12  caught up in these injunctions has to be external

13  indebtedness, and that's clear --

14                JUDGE RAGGI:  Yes, I understand that.

15                MR. BOCCUZZI:  -- from the lead-in to

16  paragraph two in the injunction, which talks about

17  the enforcement of the pari passu clause.

18  External indebtedness has a carve-out from the

19  definition, so-called domestic foreign currency

20  indebtedness, and that's indebtedness that is

21  denominated in a currency other than Argentine

22  pesos, so in dollars.

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

24

1            JUDGE RAGGI:  And the ones we're talking

2   about here are the ones payable in United States

3   dollars.

4            MR. BOCCUZZI:  Correct, yes, because --

5            JUDGE RAGGI:  So we're over that hurdle.

6            MR. BOCCUZZI:  Right, because -- well,

7   no actually.  If we're over the hurdle in terms of

8   United States dollars, that means we can fit

9   within the definition of domestic foreign currency

10  indebtedness which is an exception to external

11  indebtedness as covered by the parties.

12           JUDGE RAGGI:  I'm sorry.  You've lost

13  me. I thought that the definition of external

14  indebtedness was instruments payable in the

15  currency -- in a currency other than Argentina's.

16  Did I miss something?

17           MR. BOCCUZZI:  That's correct, except

18  the definition of external indebtedness shall not

19  include DFCI, domestic foreign currency

20  indebtedness, and the reason for that is domestic

21  foreign currency indebtedness, like the bonds

22  we're dealing with here, are issued solely in

## Capital Reporting Company
## Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

25

1  Argentina under Argentine law and the FAA -- the

2  fiscal agency agreement -- the document under

3  which plaintiffs have asserted their pari passu

4  rights, has as part of the definition of foreign

5  currency indebtedness a list -- it's A through G -

6  - of different types of Argentine law bonds that

7  qualify as DFCI or anything exchanged for those

8  bonds.

9           JUDGE POOLER:  So even if bonds were

10  part of the exchange of 2005 and 2010, they could

11  still not come under the September 12 injunction?

12           MR. BOCCUZZI:  Correct, Your Honor,

13  because there were two --

14           JUDGE POOLER:  Well --

15           MR. BOCCUZZI:  It's easiest to think

16  about it as essentially two exchanges.  There is

17  an international exchange, and Your Honors allude

18  to this at least somewhat in your prior decisions.

19  You talk about how folks who had defaulted FAA

20  bonds could get for those defaulted FAA bonds

21  exchange bonds.  The bonds that we're talking

22  about today, Argentine law bonds, if you had a

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

26

1  defaulted Argentine law bond, you could not get

2  those exchange bonds.

3         You could get other Argentine law debt,

4  and so, it's really on two parallel tracks and

5  what's important for our consideration of the

6  coverage of these bonds by this injunction is that

7  this track, the Argentine law bonds, in fact fit

8  quite nicely within the definition of DFCI which

9  is an exception --

10        JUDGE POOLER:  What does this --

11        JUDGE PARKER:  This isn't an issue you

12  should -- explain to me this is not an issue which

13  you should have brought to us in connection with

14  your first appeal.  What your dispute --

15        JUDGE POOLER:  What does this --

16        JUDGE PARKER:  What your dispute is --

17  what your dispute of fact is, is that there is a

18  certain class of bonds that should not be covered

19  by the definition of exchange offers. So but you

20  had an -- you had an injunction that broadly

21  defined exchange bonds and arguably covers at

22  least the dollar- denominated Argentine bonds.  If

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

27

1  you thought that the injunction cut too broadly in

2  that respect, weren't you obligated to seek relief

3  before Judge Griesa under rule 60(b)?

4           MR. BOCCUZZI:  Two responses, Your

5  Honor. That definition is always cabined by the

6  lead- in to paragraph 2(a), and the lead-in talks

7  about you have to perform -- the Republic must

8  specifically perform its obligations under

9  paragraph 1(c) of the FAA.  1(c) of the FAA, the

10 pari passu provision, speaks only in terms of

11 external indebtedness.

12          So you coupled that, which is the

13 universe which could really only be the subject of

14 a pari passu injunction, is that external

15 indebtedness with the fact that the plaintiffs

16 themselves always highlight in looking back in the

17 record the Bank of New York trust bonds --

18          JUDGE POOLER:  I'm sorry --

19          MR. BOCCUZZI:  It makes it clear that's

20 what they were asking for.

21          JUDGE POOLER:  You always thought these

22 were not included but it only came up when

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

28

1  Citibank got into this position where they might

2  have to break Argentinian law in order to pay the

3  money?

4         MR. BOCCUZZI:  Correct.  So Citi raised

5  the -- and just the -- and if you look at A- 1390

6  in the record, you'll see form of notes are put in

7  by the plaintiffs as supporting their pari passu

8  injunction.  They're all the form of the notes

9  where Bank of New York acts as a trustee.

10         So that was the ask and the ask also,

11  they were very clear, they weren't going after

12  even all external indebtedness, and so, it was

13  this specific universe that was at issue.

14  Citibank, when the litigation was going on, then

15  made their motion to say just to be clear, we

16  don't want to be held in contempt. We don't want

17  any problems.  Judge, please tell us that our

18  bonds are outside the scope of that.

19         JUDGE RAGGI:  All right, Mr. --

20         JUDGE POOLER:  And this was all made

21  clear to Judge Griesa?

22         MR. BOCCUZZI:  I'm sorry?

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

29

1          JUDGE POOLER:  This was all made clear

2  to Judge Griesa?

3          MR. BOCCUZZI:  Well, what happened

4  before Judge Griesa is that their motion for

5  clarification was fully briefed on June 26th,

6  within a week.  The next day we had the hearing

7  which covered about five different motions.  The

8  judge granted their motion.

9          JUDGE POOLER:  Right.

10          MR. BOCCUZZI:  There was then a motion

11  for clarification, and in the course of that

12  motion for clarification bubbling up to the

13  surface came all these additional issues without -

14  -

15          JUDGE PARKER:  Right, but Citibank asked

16  for clarification long before that, didn't they?

17  Wasn't it in May of 2013?

18          MR. BOCCUZZI:  And the judge said let's

19  wait, because at that point the second round of

20  the appeals was before Your Honors, and so the

21  judge said let's wait and see what they do.  If

22  Your Honors had struck down the injunctions,

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

30

1  modified them --

2          JUDGE RAGGI:  But you didn't come to us

3  and say there's this class of bonds that will also

4  be at issue.  There wasn't a peep about Citibank

5  from you all when you were before us.

6          MR. BOCCUZZI:  No, because our focus was

7  on what they were asking for, which was --

8          JUDGE RAGGI:  I have a different

9  question for you, but I want to make sure we're

10  not being -- using a shorthand here.  You refer to

11  this as a pari passu clause injunction. There's a

12  pari passu clause in the FAA. There's a ratable

13  payment obligation.

14          The injunction, as I understand it,

15  relates to the ratable payment obligation, and is

16  that language that you cited to us about these

17  distinguishing these bonds in the ratable payable

18  obligation?

19          MR. BOCCUZZI: It should be in both

20  sections.

21          JUDGE RAGGI:  I thought that reached

22  more broadly to promise that you would -- that

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

31

1   Argentina would not treat any other bond, give any

2   other bond priority over the bonds that were the

3   subject of the FAA.

4           MR. BOCCUZZI:  I don't believe so, Your

5   Honor.  I call it the pari passu clause.

6   Plaintiffs call it equal treatment provision. It's

7   all 1(c) in the FAA and it has two --

8           JUDGE RAGGI:  Right.  So there does seem

9   to be two issues.  But I'm sure your adversaries

10  will tell us their views on that, okay?

11          MR. BOCCUZZI:  Okay.  I do think it's

12  all linked to external indebtedness.

13          JUDGE POOLER:  Counsel, you've reserved

14  two minutes for rebuttal.

15          MR. BOCCUZZI:  Thank you, Your Honor.

16          JUDGE POOLER:  We'll hear from the

17  funds.

18          MR. ENGLERT:  May it please the Court.

19  Roy Englert, appearing on behalf of all the

20  plaintiff appellees today.  This Court's opinion

21  in United States v. Spallone makes the point that

22  all Court orders are to be interpreted within

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

32

1   their four corners. Nowhere is that principle more

2   important than with regard to injunctions, which

3   are required by rule 65 to state clearly what acts

4   are enjoined.

5          As Judge Parker said from the bench this

6   morning, paragraph 2(a) of the injunction is

7   pellucid.  It defines exchange bonds solely in

8   terms of whether the bonds were issued pursuant to

9   the Republic's 2005 or 2010 exchange offers.  It

10  does not differentiate between bonds based on who

11  processes the payments.  It does not differentiate

12  between bonds based on what law applies to the

13  bonds.

14         To succeed on this appeal, Citibank and

15  Argentina nevertheless must persuade this Court

16  that failure to read such unstated limitations

17  into paragraph 2(a) was such a major and radical

18  change in the injunctions that it amounted to

19  modification and not mere clarification.

20  Otherwise, there's no appellate jurisdiction, and

21  then, Argentina and Citibank face another

22  herculean task. They must persuade this Court that

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

33

1  it was an abuse of discretion to hold Argentina to

2  its equal treatment promise with respect to

3  obligations that do constitute external

4  indebtedness under the contract and do constitute

5  exchange bonds under the injunctions.

6          JUDGE POOLER:  We just heard that there

7  was not -- they don't meet the test of external

8  indebtedness because of the carve- out.  Is that

9  correct?  I mean, that's correct what we heard.

10         MR. ENGLERT:  Their position is not

11  correct.  But it was also not litigated in the

12  District Court, which is another problem with

13  being here today on this expedited appeal.

14         JUDGE POOLER:  So, I'm reading it.  It

15  does say provided that no domestic foreign

16  currency indebtedness as defined below shall

17  constitute external indebtedness, and what I heard

18  counsel say was that this is domestic foreign

19  currency indebtedness.

20         MR. ENGLERT:  That's being raised.  That

21  was raised for the first time in a July 27th

22  letter after a July 22nd hearing on a May 2013

34

1   motion.  But none of this matters and let me

2   explain very precisely why none of this matters.

3          JUDGE POOLER:  Tell me why.

4          MR. ENGLERT:  At 600 F.3d at 261 in this

5   Court's first opinion and Argentina's first

6   appeal, this Court wrote, "Once the District Court

7   determined that Argentina had breached the FAA and

8   an injunctive relief was warranted, the Court had

9   considerable latitude in fashioning that relief.

10  The performance required by a decree need not, for

11  example, be identical with that proposed in the

12  contract."

13         So number one, the external indebtedness

14  definition fell out once an injunction was issued.

15  Number two, as a matter of appellate procedure,

16  this is not the time to be raising these

17  arguments.  This case ended --

18         JUDGE RAGGI:  Well, let me ask you about

19  the first point you made.  As I understood Mr.

20  Boccuzzi's argument, it's that the District Court

21  may have had broad powers but it only exercised

22  them to the extent the FAA referenced them, and

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

35

1  the FAA has a carve-out, he says, for domestic

2  foreign currency indebtedness.

3        So I construed that argument by

4  Argentina to be within the four corners of this

5  injunction.  It doesn't reach these instruments.

6  So you have to tell us why you think it does.

7        MR. ENGLERT:  Yes, Judge Raggi.  Mr.

8  Boccuzzi is relying on paragraph 1 of the

9  injunction.

10        JUDGE RAGGI:  Right.

11        MR. ENGLERT:  Prefatory language, the

12  whereas clauses that state why the Court is

13  issuing the order.  The operative provisions are

14  in paragraph 2.  The actual terms of the

15  injunction, fulfilling the obligation under rule

16  65 to state what Argentina is enjoined from doing

17  are in paragraph 2, and both paragraph 2(a) and

18  paragraph 2(f) pellucidly cover the bonds at issue

19  here, and by the way, Citibank has not been

20  enjoined.

21        As Judge Parker's opinion for this Corut

22  in the second appeal pointed out quite clearly,

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

36

1  this injunction runs only against Argentina.  The

2  carve-out sought here was not a party-specific

3  carve-out, nor would a party- specific carve-out

4  make any sense given the way rule 65(d)(2)

5  operates.  The carve-out that was sought here was

6  for Argentine law bonds.  What is the textual

7  basis for carving out Argentine law bonds?  Zero,

8  none at all. There is no textual basis.  The basis

9  that's advanced is Argentine law bonds were not

10  specifically put into the record or mentioned in

11  Judge Griesa's opinion.

12          That doesn't matter.  What matters is

13  the terms of the injunction that Judge Griesa

14  issued and equally important, the terms of the

15  injunction that this Court affirmed.  It's equally

16  important because if domestic foreign currency

17  indebtedness mattered, Argentina had an obligation

18  to raise that on appeal to this Court.

19          JUDGE POOLER:  Why isn't the June 27th

20  order a modification of the September injunction?

21          MR. ENGLERT:  It's easy.  It was a

22  modification.  He made a mistake.  He modified the

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

37

1   injunction and had he not reversed himself on our

2   motion for reconsideration, we would have had a

3   good appeal to this Court, and let me explain why

4   it's terribly, terribly important in practical

5   terms, not just legal terms, not to carve out

6   Argentine law bonds.

7          Last week, the legislature of Argentina

8   passed a statute designed to circumvent this

9   Court's orders and the legislature did not mince

10  words:  "The purpose of this law is to implement

11  legal instruments that will allow for receipt of

12  service payments on 100 percent of the debt

13  securities issued within the framework of the

14  2005, 2010 sovereign debt restructuring in

15  response to the illegitimate and illegal

16  obstruction of the means to receive the funds paid

17  to the Argentine Republic -- paid by the Argentine

18  Republic on June 26, 2014, pursuant to judicial

19  orders issued by the Southern District Court of

20  the City of New York in the cuaase NML Capital,

21  Ltd. v. Republic of Argentina, which are

22  impossible to carry out as written and violate

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

38

1  both the sovereignty and the immunity of the

2  Argentine Republic as well as the rights of third

3  parties."

4          This is the Argentine law that you're

5  being asked to defer to, not just this statute but

6  the entire purpose of the Argentine law, by which

7  the Republic is trying to evade orders that have

8  been issued by the District Court to whose

9  jurisdiction Argentina submitted, affirmed twice

10  by this Court and denied review by the Supreme

11  Court of the United States.

12          JUDGE RAGGI:  Even if we were

13  sympathetic to your argument that Argentina

14  deserves no deference here, with respect to

15  Citibank, let me ask you what do you expect

16  Citibank to do?

17          MR. ENGLERT:  Citibank should be on our

18  side of the v., not on Argentina's side of the v.

19  It should be --

20          JUDGE RAGGI:  But what does that

21  practically mean?  What should they do here? I

22  mean, you know, I asked about declining to accept

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

39

1   they money.  They tell us that that can't

2   practically be done in the time allowed, that once

3   they receive the money, if they don't pay it to

4   the client to whom it is directed, they are in

5   violation of Argentina law.  I mean, tell me what

6   you expect Citibank to do to comply with this

7   injunction by the end of the month.

8           MR. ENGLERT:  I expect Citibank to

9   behave exactly like Bank of New York and obey the

10  Court's injunction and --

11          JUDGE RAGGI:  By doing what?

12          MR. ENGLERT:  By refusing to violate and

13  to act --

14          JUDGE RAGGI:  No, I understand that's

15  the legal term.  But what do you expect them to

16  do?  To refuse to accept the money?  What are they

17  supposed to do practically?

18          MR. ENGLERT:  They could refuse the

19  money or they could do what Bank of New York has

20  done, which is they could accept the money and

21  then go to Judge Griesa and seek interpleader or

22  some other of form of judicial --

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

40

1              JUDGE RAGGI:  All right.  The

2  circumstance that's somewhat different is Bank of

3  America is receiving that money, as I understand

4  it, here in this country.  So there's no sovereign

5  that's going to prosecute it for doing that.

6  Citibank says it's in a different position because

7  it's in Argentina. So again, practically, what do

8  you expect them to do?

9              MR. ENGLERT:  I expect them to do what

10  they have to do when confronted with a sovereign

11  that is trying to punish them for obeying this

12  Court's orders.

13              JUDGE RAGGI:  Which is what?

14              MR. ENGLERT:  Well, it's a tough

15  position, Judge Raggi.  There's no question that

16  it's a tough position created by the misconduct of

17  Argentina, not my anything my clients have done

18  wrong.

19              JUDGE RAGGI:  I understand that and,

20  again, putting aside whatever grievances you might

21  want to, you know, say are Argentina's fault.  To

22  the extent Citibank does not want to find itself

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

41

1  held in contempt, what do you expect it to do?

2          MR. ENGLERT:  I expect it to go to Judge

3  Griesa and say, tell us what to do with this money

4  if we receive it.  I expect it to refuse the

5  money.  I expect it to bring action against

6  Argentina.  I expect it ultimately if it has to

7  cease doing business with Argentina.

8          But I don't expect it to give Argentina

9  an opportunity to evade this Court's orders by

10  carving something out.  This is the evasion plan

11  that the president announced on June 16th, was to

12  convert everything to Argentine law bonds.  This

13  is the evasion plan enacted by the legislature of

14  Argentina last week.

15          JUDGE POOLER:  But --

16          MR. ENGLERT:  By the way, if I may,

17  Judge Pooler, I'm sorry --

18          JUDGE POOLER:  Yes, you can.

19          MR. ENGLERT:  But Bank of New York has

20  been punished.  Section 3 of this legislation,

21  with lots of inflammatory language about Bank of

22  New York, removes Bank of New York -- purports to

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

42

1  remove Bank of New York as trustee and to take

2  away Bank of New York's license.

3          JUDGE POOLER:  But --

4          MR. ENGLERT:  Argentina will not -- I'm

5  sorry, Judge Pooler.

6          JUDGE POOLER:  So rather than

7  converting, what we heard today is these were

8  always Argentinian bonds and they're not

9  converting them.  This is what they always were.

10         MR. ENGLERT:  No, Judge Pooler.  I'm

11  sorry if I didn't make myself clear.  The bonds at

12  issue in this appeal today are Argentine law

13  bonds, pellucidly covered by paragraph 2(a) of the

14  injunction.

15         JUDGE POOLER:  Right.

16         MR. ENGLERT:  Argentina wants Argentine

17  law bonds not to be covered by the injunction. If

18  it wins this appeal, that would be the result, and

19  then the evasion plan would be aided and abetted

20  by this Court's rulings because Argentina wants to

21  convert bonds to Argentina law instead of New York

22  law so that it can continue thumbing its nose at

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

43

1  the orders of the District Court and this Court.

2          JUDGE POOLER:  But aren't the Argentine

3  law bonds not covered by the injunction?

4          MR. ENGLERT:  The Argentine law bonds

5  are absolutely covered by the injunction.  The

6  injunction is pellucid in paragraph 2(a) and

7  paragraph 2(f), absolutely pellucid, and the time

8  to make an argument to the contrary was not when

9  it was made in the District Court. The time to

10  make an argument to the contrary was when the

11  injunction was being formulated and when it was

12  being appealed to this Court. By the way, it's not

13  as if --

14          JUDGE RAGGI:  I want to give you an

15  opportunity to respond how I think Argentina is

16  challenging that, which is not simply by reference

17  to paragraph 2 of the injunction -- paragraph 1

18  but also by paragraph 2.

19          If I understood the argument, it is that

20  because that paragraph starts with -- let me get

21  it in front of me -- the phrase, "The Republic is

22  permanently ordered to specifically perform its

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

44

1  obligations under paragraph 1(c) as follows," that

2  paragraph 1(c) in its definition of domestic

3  foreign currency indebtedness, that carve-out

4  necessarily informs everything that follows. That

5  was the argument that I think I heard. What's your

6  response to it?

7          MR. ENGLERT:  My response is the words

8  as follows in accordance with the way rule 65 is

9  supposed to operate explained what the District

10 Court thought was meant by that language of what's

11 covered by paragraph 1(c) of the FAA, and there

12 are six lettered provisions, A through F, designed

13 to tell Argentina and the rest of the world

14 exactly what is enjoined.

15         If anybody had an objection to A, B, C,

16 D, E or F as not consistent with 1(c) of the FAA,

17 the place to raise that and the time to raise that

18 was on appeal to this Court in the main appeal,

19 not in response to a clarification motion file

20 after judgment.

21         By the way, let me mention with regard

22 to jurisdiction, there are 71 docket numbers in

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

45

1  this Court pertaining to five appeals that have

2  been taken from every order Judge Griesa has

3  issued since June 16th that is adverse to anyone

4  other than the plaintiffs.

5         JUDGE POOLER:  But Counsel, if the other

6  side, Citibank and the Republic, always thought

7  those bonds were not part of the injunction, why

8  would they even have to tell anyone?  They always

9  thought they were separate.

10        MR. ENGLERT:  They were wrong because

11 they didn't read the language of the injunction to

12 read what it says, and it's not as if this Court

13 didn't hear from interested third parties on the

14 second appeal especially.

15        JUDGE POOLER:  We heard from Bank of New

16 York Mellon and others.  But we never heard from

17 Citibank.

18        MR. ENGLERT:  You heard from the

19 American Bankers Association on the second appeal.

20 You heard from the clearinghouse on the first

21 appeal and the second appeal.  You heard from

22 exchange bondholders.  You heard from Eurobond

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

46

1   holders.  There was no dearth of efforts to raise

2   issues in this Court.

3           Citibank, aside from any participation

4   it may have had in the American Bankers

5   Association and clearinghouse briefs, Citibank sat

6   on its hands and said we'll raise this issue

7   later.  That is not proper procedure. It's

8   especially not proper procedure in the face of an

9   injunction that is, if I may borrow Judge Parker's

10  work again, as pellucid as paragraph 2(a) of this

11  one is.

12          JUDGE POOLER:  All right.

13          MR. ENGLERT:  Thank you.

14          MR. BOCCUZZI:  Just briefly, on the

15  language of the pari passu clause, Judge Raggi,

16  the second sentence, which has been called the

17  ratable payment sentence, has the reference to

18  external indebtedness.  It says the --

19          JUDGE RAGGI:  It says what with respect

20  to external indebtedness?

21          MR. BOCCUZZI:  I'm sorry?

22          JUDGE RAGGI:  It says what with respect

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

47

1  to external indebtedness?

2          MR. BOCCUZZI:  It references.  So on

3  page A-377 in the appendix, the payment

4  obligations -- so I'm reading from 1(c) -- the

5  payment obligations of the Republic under the

6  security shall at all times rank at least equally

7  with all of its other present and future unsecured

8  and unsubordinated external indebtedness,

9  parentheses, (as defined in the agreement), and

10 then when you go to later in the agreement, which

11 is on -- excuse me -- A-392 and 391, there's the

12 definition of external indebtedness and it says at

13 the end provided that no domestic foreign currency

14 indebtedness as defined below shall constitute

15 external indebtedness.

16          JUDGE PARKER:  But this is all getting -

17 -

18          JUDGE RAGGI:  Right, but this isn't

19 domestic currency indebtedness.

20          MR. BOCCUZZI:  No, this is domestic

21 foreign currency indebtedness we're talking about.

22          JUDGE RAGGI:  I thought you said it

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

48

1  doesn't apply to domestic currency.  I'm sorry

2  that I don't have this language in front of me,

3  but --

4          MR. BOCCUZZI:  So pari passu applies to

5  external indebtedness as defined.

6          JUDGE RAGGI:  Right.

7          MR. BOCCUZZI:  External indebtedness --

8          JUDGE RAGGI:  So the definition of

9  external indebtedness that you just read.

10          MR. BOCCUZZI:  External indebtedness in

11  turn says -- means obligations for borrowed money

12  or evidence by debentures, et cetera, in a

13  currency other than the lawful currency of the

14  Republic provided that no domestic foreign

15  currency indebtedness as defined below shall

16  constitute external indebtedness, so --

17          JUDGE RAGGI:  All right, and then we

18  have to look to how domestic foreign currency is

19  defined.

20          MR. BOCCUZZI:  Right, and as to that,

21  it's the list of Argentine law bonds, which are

22  brought out and anything exchanged for them, and

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

49

1  so remember, no FAA debt to exchanged or defaulted

2  FAA debt in the 2005 or 2010 exchange offer, that

3  could not get you Argentine law debt.  The only

4  way to get that Argentina law debt was to tender

5  other Argentina law debt, and so the paragraph --

6          JUDGE RAGGI:  Where is this argument of

7  tracking this language made to Judge Griesa in

8  this last round of modification/clarification

9  arguments?

10         MR. BOCCUZZI:  The tracking language was

11  not raised in that --

12         JUDGE RAGGI:  Right, so this was never

13  raised in the District Court.

14         MR. BOCCUZZI:  Well, the issue of DFCI

15  did come through during the clarification process.

16         JUDGE RAGGI:  Well, it seems to me like

17  the critical argument for why these bonds are not

18  covered by this injunction and yet it's not

19  presented to the District Court.

20         MR. BOCCUZZI:  Well, the important fact

21  for --

22         JUDGE RAGGI:  Because the arguments

50

1  presented to the District Court was this

2  injunction only applies to the Bank of New York

3  Mellon bonds.  That's a different argument than

4  the one you're now advancing in this Court.

5          MR. BOCCUZZI:  However, for the

6  plaintiffs to change -- and if you read the

7  injunction and we're not just relying on prefatory

8  language, paragraph 1 talks about the ongoing

9  violations of paragraph 1(c) of the FAA.  That's

10 repeated.  Two, has the lead- in about paragraph

11 1(c), and as Mr. Englert said, it then goes on in

12 several paragraphs to talk about exactly what's

13 enjoined.

14         JUDGE RAGGI:  Right, but you're here

15 telling us the District Court erred and you're

16 telling us it erred for a reason you didn't argue

17 in the District Court.

18         MR. BOCCUZZI:  But in --

19         JUDGE RAGGI:  So we consider that

20 forfeiture.

21         MR. BOCCUZZI:  It's not forfeiture, Your

22 Honor, because they had the burden to show that

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

51

1  this injunction, which always by its plain terms

2  and by how they litigated it, applied to the Bank

3  of New York debt applied here and they didn't --

4            JUDGE PARKER:  Even if --

5            MR. BOCCUZZI:  And they didn't establish

6  that.

7            JUDGE PARKER:  This argument just seems

8  too contrived to me because you conceded in your

9  brief that the Argentine indebtedness arose in

10  connection with the 2005 and 2010 exchange offers.

11  You said that.

12            MR. BOCCUZZI:  We said it was -- but it

13  was two separate exchanges.

14            JUDGE PARKER:  You said the Republic

15  issued 2.3 billion worth of Argentine law bonds in

16  connection with its 2005 and 2006 exchange offers,

17  and you mashed that up with the broad language

18  we've been vetting that's in the injunction.  So

19  it seems to me -- explain what I'm missing.

20            If you thought that there were some

21  bonds that were exchanged that should not have

22  been covered by the injunction, then you run right

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

52

1  up against rule 60 problems.  You had an

2  obligation to go to the District Court and try to

3  get the judgment amended because of some confusion

4  or mistake or the normal grounds that would

5  justify relief.

6          MR. BOCCUZZI:  But Judge Parker, we have

7  to go back to what we were discussing earlier,

8  which is the plain terms of this injunction talk

9  about Bank of New York, and in this paragraphs in

10  2(a), they list four Bank of New York entities who

11  are enjoined.  Not one of them is involved with

12  the payment of the Argentine law bonds.  The other

13  folks who were here in the second round,

14  Euroclear, Clearstream, everybody who was here

15  were folks who were specifically named in this

16  injunction.

17          JUDGE RAGGI:  As illustrative.  The

18  language is including.  It doesn't say that this

19  is the extent of it.

20          MR. BOCCUZZI:  But it's still --

21          JUDGE RAGGI:  But now you're switching

22  to the argument you did raise in the District

53

1   Court.  It's just the Bank of New York.  My

2   concern is with your other argument.  It seems to

3   me that's forfeited and it's forfeiture in

4   circumstances where to the District Court,

5   Citibank acknowledged that these were exchange

6   bonds.  So it seems to me, I mean, how do we find

7   fault with what the District Court did in light of

8   a concession and a forfeiture?

9           MR. BOCCUZZI:  I don't think there's a

10  forfeiture because, again, he granted the motion

11  originally.  We were in the context of

12  reconsideration.  They had the importance of

13  understanding the terms of the injunction from the

14  starting point as that they were basically seeking

15  additional relief.  So it really should be thought

16  of as a failure of proof on their point -- on

17  their part as to showing --

18          JUDGE POOLER:  To expand the injunction?

19          MR. BOCCUZZI:  Exactly, to expand the

20  injunction to cover these bonds which had never

21  been mentioned, never been litigated before, and

22  Citi, while at first making statements about

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

54

1  exchange bonds, in the end it was clear.  No one

2  disputes that at least 72 percent of the Argentine

3  law bonds -- so we're talking about a universe of

4  $8 billion -- at least 72 percent, even under

5  their definition of exchange bonds, are not

6  exchange bonds.

7           JUDGE RAGGI:  That's because you put the

8  same serial number on tem, right?

9           MR. BOCCUZZI:  Well --

10          JUDGE RAGGI:  Which Argentina did after

11 the injunction was entered.

12          MR. BOCCUZZI:  That's only 1.75 billion

13 for the Repsol bond.  We settled that.

14          JUDGE RAGGI:  Well, you know, it's 1.7

15 here and there, yes.  But the point is Argentina

16 put the same number on these bonds after it knew

17 it was going to be enjoined.  Is that right?

18          MR. BOCCUZZI:  It is -- it is not right

19 for --

20          JUDGE RAGGI:  So to the extent they

21 can't be -- parent can't be segregated, you might

22 understand why there's not a lot of sympathy for

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

55

1  you on that.

2          MR. BOCCUZZI:  Just to be clear, Judge

3  Raggi, 4.3 billion of that was issued in local

4  issuances before pari passu motion was ever

5  brought, and then the --

6          JUDGE RAGGI:  The same number?

7          MR. BOCCUZZI:  Yes, Your Honor.

8          JUDGE RAGGI:  Why?  Because there wasn't

9  another number available?

10          MR. BOCCUZZI:  No, you want to have

11  issuances to share a number because that makes it

12  so they can trade.  That helps fungibility of

13  bonds.  It's like getting the same widget. So you

14  put them, depending on if they're pars or quasi-

15  pars or whatever the lingo is, into a limited set

16  of ISIN numbers.  Otherwise, you have a bunch of

17  ISINs.  People don't match them up and it's harder

18  for them to trade. This actually benefits

19  bondholders.

20          JUDGE RAGGI:  And it has to be the same

21  as a bond that is subject to a ratable payment

22  limitation.  So to that extent, I mean, they would

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

56

1   be -- they will be traded the same. That's what

2   Argentina wants and that's what Argentina may get.

3           MR. BOCCUZZI:  Well, Your Honor, I think

4   that would be unfortunate, and again, the way the

5   record was developed here, it happened rapidly.

6   It happened after the judge had ruled and stated

7   on the record a perfectly correct conclusion, one

8   that I agree with and that Ms. Wagner agrees with,

9   that these bonds are different.

10          It's against the litigation context

11  where it was litigated it was the Bank of New York

12  bonds, and this language, while it's illustrative

13  for who's involved in the Bank of New York

14  payment, that's not the Citibank Argentine law

15  bond payment stream.  So given all that and the

16  need -- these bonds are -- these injunctions are

17  very unique in terms of their effect on third

18  parties, on financial institutions like Citi, on

19  bondholders, and so I think there it really is in

20  the interest of everybody to really try to get

21  this as right as we can.

22          JUDGE RAGGI:  Let me ask you this.  If

57

1  we don't agree with you and the injunction stands,

2  is Argentina going to obey this one?

3        MR. BOCCUZZI:  I think, Your Honor, I

4  don't have a crystal ball.  I will be honest with

5  Your Honor.  They have made statements that they

6  really need to pay their debt.  But I have not

7  been told by them that they're going to make the

8  payment and I just don't know.

9        JUDGE RAGGI:  Because we've stood and

10  talked like this before and the question is

11  whether we should be hearing a party complain

12  about an injunction at the same time that it's

13  telling us that if it does not succeed it will

14  violate the injunction.

15        MR. BOCCUZZI:  I understand, Your Honor,

16  and it is not a happy situation.  It is an

17  extremely fraught situation and so that's why --

18        JUDGE RAGGI:  Well, shouldn't we expect

19  you to tell us that it will be obeyed and give us

20  more assurances than apparently you were able to

21  give the Supreme Court before we expend a lot of

22  energy figuring out whether you -- whether you

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

58

1  were wronged here or not? I mean, doesn't the

2  Court have a right to expect that once it decides,

3  the party asking for relief will abide by the

4  decision.

5           MR. BOCCUZZI:  I think the issues that

6  are before us today takes us back to an earlier

7  point, which is should there even be an order as

8  to these bonds in the first place, and it seems

9  like I understand relationship that has gone on

10  with the Republic and this Court to date.  But if

11  we decide that it should be enjoined --

12           JUDGE RAGGI:  Right.  If you win, I know

13  you'll be happy to abide by the Court's order. But

14  the concern I have is with a party saying to us

15  give us relief and we'll obey but if you don't

16  give us relief, we'll just ignore you.

17           MR. BOCCUZZI:  All I can say further, as

18  to that, Your Honor, is that the Republic is not

19  the only entity with very large interest in this -

20  -

21           JUDGE RAGGI:  Right, and the other

22  interests of the other party is that you're going

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

59

1   to try and proceed against it criminally or pull

2   its license or do all kinds of other horrible

3   things.  Can you assure us you won't do that?

4            JUDGE POOLER:  As attorney for

5   Argentina, are you going to prosecute Citibank?

6            MR. BOCCUZZI:  I'm not.  I'm not an

7   Argentina lawyer --

8            JUDGE POOLER: Oh, but --

9            MR. BOCCUZZI:  And I am not a part of

10  the criminal and the regulatory body of Argentina.

11  They don't consult me on that.

12            JUDGE POOLER:  So you don't know if

13  they're going to go after Citibank on September

14  30th.

15            MR. BOCCUZZI:  I don't know.  All I know

16  is that those are decisions that are relegated to

17  those law enforcement bodies which as their New

18  York lawyer I'm not involved with.

19            JUDGE RAGGI:  Right.  But you speak here

20  for a client and the question I asked you is, is

21  your client in asking for this relief and not

22  telling us whether it's going to obey the order

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

60

1   itself, able to tell us that it will not impose

2   these sanctions on Citibank if it obeys the Court

3   order.

4           MR. BOCCUZZI:  As an officer of this

5   Court, I am not able to make a representation

6   about what the Republic of Argentina is going to

7   do.

8           JUDGE RAGGI:  Okay.

9           MR. BOCCUZZI:  And --

10          JUDGE PARKER:  And just to follow up on

11  Judge Raggi's question, at this point, we're just

12  simply left to speculate about whether the orders

13  that this Court issues, the judgments of this

14  Court, the orders of Judge Griesa will be

15  respected by your client.

16          MR. BOCCUZZI:  Excuse me, Your Honor.

17  On -- yes, all I can say is that these orders have

18  an enormous impact on the Republic, its citizens,

19  the bondholders.  It's been taken up the highest

20  levels, the president, the ministry and we're just

21  in a situation where they want to resolve.  They

22  do want to resolve their outstanding debt issuance

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

61

1   and these defaults.

2          JUDGE PARKER:  But not under New York

3   law, on their own terms.

4          MR. BOCCUZZI:  They want to reach

5   something that will be -- it has to be voluntary

6   on their part and the part of the plaintiffs.  We

7   have learned since --

8          JUDGE PARKER:  Well, why is --

9          JUDGE RAGGI:  You were given -- you were

10  given time by Judge Griesa to try and work

11  something out.  So it's not as if you've been

12  rushed to this.  Judge Griesa delayed because he

13  thought that there were negotiations going on.

14         MR. BOCCUZZI:  And hopefully there may

15  be negotiations.  One issue that was vetted with

16  Judge Griesa is the exchange bondholders have in

17  their bonds the so-called right upon future offer

18  provision.  That entitles them, if an offer that

19  qualifies under that clause is made, to hold out

20  debtors, creditors, to receive the difference, the

21  better deal, and so, that is a serious constraint

22  on Argentina's ability to resolve anything.  That

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

62

1   clause sunsets at the end of this year.

2          So we had asked the Court to give more

3   time, to let that sunset, to let things happen in

4   the fullness of time with the hope that we'd

5   resolve it.  There was no stay available. We

6   couldn't agree to one with the plaintiffs. So now,

7   we're in a situation where we're in this window

8   period.  There certainly is a desire obviously to

9   resolve this and move on the way these sovereign

10  debt situations are often done.

11         Here we're just talking about so much

12  debt and now these pari passu injunctions which,

13  by their terms, give anybody a right to say give

14  me what that person had, and so, we're talking

15  about a huge amount of money and it's something

16  that as a macroeconomic matter has to be dealt

17  with by the Republic.  I think that they're trying

18  to resolve it.  But we have these constraints.

19         But one thing in terms of this motion

20  and that Ms. Wagner has brought to the floor is I

21  think while that gets worked out, to the best that

22  we can, if we can have the injunctions tailored in

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

63

1   an appropriate way to track the contracts, I think

2   that can only help the situation and not make it

3   worse.  These Argentine law bonds we're talking

4   about are at least $8 billion.  They already have

5   enjoined payments on $28 billion, so adding --

6           JUDGE RAGGI:  I'm not sure why we're

7   listening to this.  Your client is basically the

8   person or the entity holding the gun to Ms.

9   Wagner's client's head because but for that, she

10  wouldn't have any argument here about the harm to

11  Citibank, and you're not -- you're not offering

12  here to take -- to remove the gun.  So to that

13  extent, I'm not sure why are we interested in

14  hearing from your client? Your client didn't move

15  for rule 60 relief. Your client isn't telling us

16  it's going to comply with the order.  Your client

17  is the person with the gun.

18          MR. BOCCUZZI:  I think my client, while

19  the so-called gun is their laws and regulations.

20  I hear you.  Citibank has made the motion.  But I

21  think the Republic as a sovereign nation really

22  has an interest in trying to get this resolved and

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

64

1  all I'm saying is that I don't think adding these

2  bonds into the mix will help get this resolved.

3          JUDGE POOLER:  And it's your position

4  that these bonds are not in the mix, right?

5          MR. BOCCUZZI:  They should not -- well,

6  now they're in the mix because of the July order.

7          JUDGE POOLER:  But they shouldn't be?

8          MR. BOCCUZZI:  All along -- my position

9  is all along they weren't, they shouldn't and they

10  shouldn't be.

11          JUDGE PARKER:  Arguments not raised

12  below?

13          MR. BOCCUZZI:  Arguments that were

14  raised below but not fleshed out to the extent we

15  did today, Your Honor.

16          JUDGE POOLER:  Counsel, Ms. Wagner?

17          MS. WAGNER:  Thank you, Your Honor.

18          JUDGE POOLER:  So what are you going to

19  do on September 30th?

20          MS. WAGNER:  Your Honor, we will obey

21  the order of this Court. But if we do obey the

22  order of this Court and if this Court does not

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

65

1  reverse the order of the District Court, we are

2  likely to suffer very serious damage and we

3  believe there is no justification for imposing

4  that on Citibank, and if I may explain for just a

5  minute, Citibank is not a party to the contact

6  here that was the origin of the pari passu order.

7  That is the contract.

8        That is an order that is supposed to

9  enforce a contract for the benefit of the

10  plaintiffs, and Citibank Argentina then is of

11  course the other party to the contract.  We are a

12  custodian.  We hold bonds.  We don't have a -- we

13  don't determine what bonds to hold.  We are not

14  party to a contract with Argentina.  We are not

15  indentured trustee like Bank of New York.  We just

16  hold bonds that are bought by other people.

17        JUDGE POOLER:  Isn't your position

18  analogous to Bank of New York?

19        MS. WAGNER:  It is not at all analogous.

20        JUDGE POOLER:  Why not?

21        MS. WAGNER:  Bank of New York has a

22  contract with Argentina and Bank -- and it has

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

66

1  obligations to its bondholders, all kinds of

2  obligations.  We have no obligations under any

3  contract with Argentina.  We have only contracts

4  with our customers.  We get paid.

5          JUDGE POOLER:  Your customers are the

6  bondholders?

7          MS. WAGNER:  Our customers are -- some

8  of them hold the Argentine law bonds.  But we get

9  paid by them.  We get paid by them no matter what

10  they hold.  It just is totally independent of the

11  contract at issue here which is the contract this

12  Court enforced.

13          JUDGE RAGGI:  So you're not paid in any

14  way by Argentina.

15          MS. WAGNER:  No, we are not.

16          JUDGE RAGGI:  Do you have an argument

17  that you're not a party covered by the injunction

18  here?

19          MS. WAGNER:  I think we do have an

20  argument to that effect, Your Honor.

21          JUDGE RAGGI:  But you haven't made that

22  argument to the District Court.  It would seem to

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

67

1  me that would be the clarification that would be

2  most important to you, to suggest that whatever

3  your financial arrangements are and however

4  downstream you are, that you don't fall within the

5  injunction.

6           MS. WAGNER:  Your Honor --

7           JUDGE RAGGI:  And I'm not saying I've

8  reached that as a conclusion.  I'm saying that

9  isn't that an argument you should be making to the

10 District Court.

11          MS. WAGNER:  Your Honor, we did make

12 that argument to the District Court and I believe

13 that was part at least of the reason why the

14 District Court issued an opinion saying that we

15 were not bound by the injunction.

16          JUDGE RAGGI:  I thought it was that the

17 argument was that the bonds were different, not

18 that you were not a party covered by the

19 injunction.

20          MS. WAGNER:  Oh, no, Your Honor.  Your

21 Honor, we absolutely took the position that we

22 were not covered as a party.  There were two parts

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

68

1  to our argument.  One is that we are different and

2  one is that the bonds are different.

3           JUDGE POOLER:  That was the genesis of

4  the June 27th order?

5           MS. WAGNER:  That's correct, Your Honor.

6           JUDGE RAGGI:  The June 27th order though

7  is not based on a finding that you are not a

8  party, right, because then it wouldn't matter that

9  you can't -- you're not covered by the injunction

10  because then you wouldn't care whether the bonds

11  were or were not exchange bonds.  You wouldn't be

12  covered.  That's not the basis for any order of

13  the District Court.

14           MS. WAGNER:  Your Honor, that's -- the

15  District Court made a ruling that payments by

16  Citibank Argentina on the Argentine law bonds were

17  not covered.  I think there is two parts to that,

18  and I think both of those parts are no longer in

19  effect as a result of the later order.  So I think

20  both of these arguments were made and they were

21  successful on the first order.

22           If I may also just mention once again

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

69

1   the original injunction, while there is a lot of

2   discussion here about how pellucid the order is,

3   it cannot be read independently of the opinion

4   that explained it, which wasdescribed by both the

5   District Court and this Court in its affirmance.

6   Part of that opinion says the process and the

7   parties involved in making payments on the

8   exchange bonds are as follows, and then there's a

9   big description of the payment system, the payment

10  stream on the Bank of New York bonds.

11          That has absolutely nothing to do with

12  the payments stream on the Argentine law bonds and

13  Bank of New York Mellon is in no way comparable to

14  a custodian in Argentina.  These are completely

15  different and there was no reason for us to think

16  we were bound by this.

17          Now, there was a sufficient incongruity

18  between the terms of the injunction and this

19  opinion that we went to the judge in an effort to

20  be as clear as we could and we said basically you

21  didn't mean to cover us and you didn't mean to

22  cover these bonds, right, and we gave a lot of

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

70

1  arguments why as a legal entity Citibank Argentina

2  could not be bound by such an injunction and we

3  also argued that then we had evidence that the

4  bonds were different from the bonds that were

5  covered here.

6          The Court accepted our argument and then

7  in the motion for reconsideration it's not totally

8  clear what caused the reconsideration. But part of

9  it was, according to the Court's order itself, was

10 new information.  Well, what was the new

11 information?  The new information was that many,

12 many, many Argentine law bonds were actually not

13 issued in the exchange at all.  So they couldn't

14 possibly be covered by --

15          JUDGE POOLER:  Those are Repsol bonds?

16 Is that what these were?

17          MS. WAGNER:  It's not only Repsol.  It's

18 other bonds that were not issued in exchanges. The

19 other piece of information was that these bonds

20 were completely fungible.  So you couldn't tell

21 one from the other and Citibank put in a

22 declaration saying it would be operationally

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

71

1  impossible to figure out which bonds to pay and

2  which bonds not to pay.

3          JUDGE PARKER:  But you conceded below

4  that some of the bonds were covered.

5          MS. WAGNER:  I did, Your Honor.  I

6  conceded that they were issued in connection --

7          JUDGE PARKER:  So what was Judge Griesa

8  to do in light of that concession --

9          MS. WAGNER:  Your Honor, I told --

10         JUDGE PARKER:  Which is essentially what

11  your adversaries were arguing.

12         MS. WAGNER:  Your Honor, I told the

13  Court that some of the bonds we held were issued

14  in connection with the exchanges, and to that

15  extent, that's why we asked for clarification. But

16  I always took the position they had nothing to do

17  with the bonds about which the opinion was issued,

18  and after I said that to the Court, I then wrote

19  letters to the Court explaining before the Court

20  ruled that many of the bonds that we held were not

21  issued in the exchanges at all and we couldn't

22  tell one from another.

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

72

1           So we couldn't possibly obey an

2   injunction that applied to this -- to these bonds

3   without withholding payment on bonds that are not

4   exchange bonds and that are not external

5   indebtedness and there is absolutely no argument

6   under the contract that those bonds shouldn't be

7   paid.

8           JUDGE RAGGI:  Right, unless where Judge

9   Griesa left you was figure out a way between now

10  and the next payment to do it.

11          MS. WAGNER:  Sure.

12          JUDGE RAGGI:  So you can go back and

13  tell Judge Griesa that you can't do it and

14  Argentina refuses to do it. I mean, there's still

15  the opportunity to be heard on that.

16          MS. WAGNER:  Your Honor, there may or

17  may not be opportunity to be heard but we have

18  very little time left and before we left Judge

19  Griesa, all parties, including our colleagues

20  here, told Judge Griesa there was no way of doing

21  it.  So it seems that Judge Griesa -- it would be

22  hard to say what view he would take at this point.

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

73

1  But there was no dispute that there's no --

2          JUDGE PARKER:  It seems to me the record

3  on that is very undeveloped.  We have letters from

4  counsel.  But there's no record that establishes

5  that.

6          JUDGE POOLER:  Are you asking us to

7  remand to Judge Griesa to clarify his

8  clarification?  I mean, it belongs first there to

9  decide some of these issues, doesn't it?

10         MS. WAGNER:  Your Honor, I think we have

11  argued strenuously that as a matter of law his

12  injunction cannot apply to us and cannot apply to

13  the Argentine law bonds.  If it is the view of

14  this Court that there is more factual development

15  necessary on those issues and you wish to remand,

16  then of course that's up to the Court.

17         But I would then respectfully request

18  that the Court issue a stay of the application of

19  this order to Citibank and to these bonds because

20  there is not enough time to get this done before

21  this extremely small payment coming up applies a

22  total disaster for our client -- my client.

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

74

1            JUDGE POOLER:  Versus we heard from Mr.

2   Boccuzzi why they had the same ISIN number.  But

3   that's not evidence.  I mean, he told us at

4   argument that they have to be fungible.  But that

5   wasn't before the Court, was it?

6            MS. WAGNER:  It was before the Court,

7   Your Honor.  I believe it was in letters.   But

8   there was no dispute about it.   There was no

9   dispute that there were very, very many Argentine

10  law bonds.   They were not exchange bonds and that

11  there was no way of telling one from another.   So

12  I think since there was no dispute, we could

13  develop the record but I think there still would

14  be no dispute.

15           JUDGE POOLER:  But he told you to work

16  it out.

17           MS. WAGNER:  He did, and we inquired

18  whether anybody else had any thoughts about how we

19  would do this.  We had already put in evidence

20  with an affidavit that it was operationally

21  impossible.  Nobody else has advised us that it is

22  possible and we do not think that it is.

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

75

1             JUDGE POOLER:  So let's go back to the

2    thing that brings us here today.  I think you were

3    served with an order to show cause for discovery.

4             MS. WAGNER:  Your Honor, we were served

5    with an order to show cause for discovery. But

6    that's not an issue that is before the Court at

7    the moment.  Judge Griesa reserved decision on

8    that question and --

9             JUDGE POOLER:  He didn't decide that?

10             MS. WAGNER:  He did not decide that.

11             JUDGE PARKER:  Are these bonds paid

12    quarterly or semiannually or what?

13             MS. WAGNER:  Semiannually.  There's two

14    tranches of them.

15             JUDGE PARKER:  June and September?

16             MS. WAGNER:  It's June and September for

17    one set and whatever the other quarters are for

18    the other ones, December --

19             JUDGE POOLER:  Well, unless we make a

20    decision today, you are asking us to stay the June

21    28th order so that you can make that small payment

22    and buy us another three months?

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

76

1          MS. WAGNER:  If Your Honors are inclined

2   not to reverse the injunction and reinstate the

3   clarification order, which is what I would ask you

4   to do, but if you are inclined not to do that,

5   then I would please ask you, yes --

6          JUDGE PARKER:  But isn't the tradition -

7   - these things are -- these matters are

8   complicated because, you know, we have a party

9   that will not conform itself to the law.  But the

10  traditional path is for you to raise these --

11  since you're not a party, to raise these in

12  contempt proceedings.

13         MS. WAGNER:  Your Honor --

14         JUDGE PARKER:  And then you have -- you

15  know, you have -- you've got an impossibility

16  defense.  You've got other arguments you could

17  make.

18         MS. WAGNER:  Your Honor, two answers I

19  think to that.  One, the District Court invited

20  clarification requests.  We made that request.  We

21  got the clarification and then it got reversed.

22  We think that is a record that mandates an appeal

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

77

1   to this Court.  Number two, just to be clear,

2   we're not going to be in contempt.  We're going to

3   obey.  But if we obey, as Judge Raggi said, we

4   have a gun to our head and the gun will probably

5   go off, and I question this Court, what purpose

6   will be served by that?  It won't change what

7   Argentina does.  It will not benefit appellees.

8   It won't benefit anybody.  But it will hurt us.

9           JUDGE RAGGI:  Well, you know, you tell

10  us that there's no time to comply.  But let me ask

11  you, why has Citibank not communicated with its

12  customers that -- its bondholder customers, that

13  is -- that it has been now ordered by a Court not

14  to pay absent proof of the compliance with the

15  ratable payment notice and that way you would be

16  ready if this Court denies your application to

17  tell the paying party not to transfer the money to

18  you.

19          I mean, it seems to me that once you

20  were under an injunction, you were obliged to take

21  steps to assure your ability to comply with it,

22  not to do nothing and come up to us and say, gee,

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

78

 1  now we can't -- now we don't have enough time.

 2          MS. WAGNER:  Your Honor, until the end

 3  of July, we have an order confirming that we are

 4  not subject to the injunction.  By the end of --

 5          JUDGE RAGGI:  Right, but since the end

 6  of July, you have had an order that tells you that

 7  you will have to comply --

 8          MS. WAGNER:  Correct.

 9          JUDGE RAGGI:  And yet you have don't

10  nothing in the six weeks since then to put

11  yourselves in position to comply, so --

12          MS. WAGNER:  Your Honor --

13          JUDGE POOLER:  Did you bring on this

14  expedited appeal?

15          MS. WAGNER:  I beg your pardon?

16          JUDGE POOLER:  Did you bring on this

17  expedited appeal?

18          MS. WAGNER:  Yes, we brought on the

19  expedited appeal, of course --

20          JUDGE RAGGI:  But you've done nothing to

21  make -- put yourself in a position where you could

22  comply.  We're not talking about refusing money.

79

1  We're talking about notifying your clients that

2  you may not be able to transfer the money to --

3        MS. WAGNER:  Your Honor, we have had

4  communications with our clients, and I would also

5  suggest to you that this injunction --

6        JUDGE RAGGI:  Oh, so you are in a

7  position to now refuse to take payment of the

8  money?

9        MS. WAGNER:  We are --

10       JUDGE RAGGI:  Well, if you have given

11  notice to your clients, why not?

12       MS. WAGNER:  We have not given notice to

13  our clients pursuant to any agreement or anything

14  like that.  They are aware of what the situation

15  is.  But there are two issues that we need to

16  confront.  One is we cannot achieve the objective

17  in the time we have. Number two, the injunction

18  also says that people who are bound by it cannot

19  change the payments under it.

20       So if we are bound by it, then it's a

21  little difficult for us to say, don't make the

22  payment because then they will say we should be in

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

80

1   contempt because we did that.  So we are in a bit

2   of a bind.  There is very little we can do --

3           JUDGE RAGGI:  Well, you haven't asked

4   Judge Griesa whether if you did that you would be

5   in contempt.

6           MS. WAGNER:  We have not, Your Honor.

7           JUDGE RAGGI:  Okay.  But you could.

8           MS. WAGNER:  We could, Your Honor.  But

9   we are -- until very recently, as I said, we

10  believed that we were not bound.  Then we made an

11  expedited appeal to this Court and hopefully we

12  will -- hopefully you'll see it my way.

13          If I may make one other point too about

14  the domestic foreign currency indebtedness, when

15  we -- when the motion for reconsideration was

16  made, appellees excluded from their motion peso-

17  denominated bonds because they are domestic

18  foreign currency indebtedness.  But that in fact

19  is not the distinction that is relevant.  The

20  distinction, as Mr. Boccuzzi was saying, is were

21  these bonds issued in connection with -- were

22  these bonds exchanged for bonds that already  were

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

81

1  domestic foreign currency indebtedness or not.

2  U.S.-dollar bonds are part of domestic foreign

3  currency indebtedness.  So obviously appellees

4  understood that the pellucid nature of the

5  definition of external indebtedness did not

6  include at least this part of domestic foreign --

7          JUDGE RAGGI:  Yeah, but again, I didn't

8  understand this to be your argument to Judge

9  Griesa.  Did I miss it somewhere in the papers you

10  filed?  Because my understanding of the argument

11  to Judge Griesa was the injunction only covers

12  Bank of New York bonds.

13          MS. WAGNER:  That was our principal

14  argument, Your Honor, and because it only covered

15  those bonds, this whole discussion of external --

16          JUDGE RAGGI:  Right.  Did anybody tell

17  Judge Griesa this concern about what is and is not

18  included within domestic foreign currency bonds?

19          MS. WAGNER:  No, Your Honor, because the

20  hearing before Judge Griesa in connection with the

21  injunction concerned only Bank of New York bonds

22  which clearly are all external indebtedness.

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

82

1              JUDGE RAGGI:  Right.  So why should we

2   hear you on this argument now?

3              MS. WAGNER:  Because the original

4   injunction did not bind us and that is what Judge

5   Griesa ruled.  Now it does bind us but there is no

6   record whatsoever suggesting why it should bind

7   us.

8              JUDGE RAGGI:  Right, but when he -- when

9   Judge -- when you argued to Judge Griesa the

10   original injunction doesn't bind us, it was

11   because these are not Bank of New York bonds, not

12   because these are domestic foreign currency bonds

13   falling within an exception.

14              MS. WAGNER:  Correct, Your Honor.

15              JUDGE RAGGI:  Okay.

16              MS. WAGNER:  It did not seem relevant to

17   the argument given the record below.  We also did

18   argue it's because we are Citibank and there is no

19   entity like Citibank in the proceeding on these

20   bonds, and I would just respectfully suggest that

21   if you read the opinion, both that judge's and

22   this Court's, you refer specifically to the

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

83

1  payments and the people involved and the entities

2  involved in this and they do not include Citibank

3  or the Argentine law bonds.

4          JUDGE RAGGI:  So you argued that it was

5  because you were Citibank and not Bank of New

6  York, not because Citibank was not an entity such

7  as was defined in the injunction because the

8  injunction draws a distinction between different

9  entities depending on where you are in the stream.

10  That argument you never made to Judge Griesa,

11  right?

12          MS. WAGNER:  We did, Your Honor.  We

13  said there was no entity before the Court in

14  connection with the Bank of New York --

15          JUDGE RAGGI:  I'm not making myself

16  clear, but that's all right.

17          MS. WAGNER:  Your Honor, Citibank is a

18  very different entity from anyone that was before

19  the Court in connection with the Bank of New York

20  argument, and we made that argument to Judge

21  Griesa when we requested a ruling that we were not

22  bound by the injunction.

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

84

1            JUDGE POOLER:  Thank you all.  We'll

2  reserve decision.  Yes, sir?

3            MR. ENGLERT:  In light of the length of

4  the rebuttal, may I be heard for a few minutes?

5            JUDGE POOLER:  Ordinarily we don't do it

6  but you can take a minute.

7            MR. ENGLERT:  This Court's opinion, 727

8  F.3d at 244 says the way to test these legal

9  propositions is to go in contempt and then take an

10  appeal, not the procedure sitting before the

11  Court.  The ISIN 113 bond, as Ms. Wagner said

12  several times, there was undisputed evidence

13  before the District Court. Not true.  The ISIN 113

14  bonds were raised in post-hearing letters for the

15  first time.  The hearing was July 22nd.  It was

16  all about exchange bonds.  The letters came in

17  July 23rd and July 27th.  A stay would be a

18  terrible problem for my clients.  The request for

19  a stay comes way too late and it --

20            JUDGE POOLER:  Why is it a terrible

21  problem?

22            MR. ENGLERT:  Because it would feed

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

85

1  Argentina's efforts to evade.  It would make it

2  easier for Argentina to carry out the evasion

3  schemes that its president has been announcing

4  since minutes, hours, the same day after the

5  Supreme Court denied cert.

6         Finally, we do not concede that peso-

7  denominated bonds are domestic foreign currency

8  indebtedness.  We do not concede that anything at

9  issue here or in the future is domestic foreign

10  currency indebtedness.  We made the tactical

11  decision after Judge Griesa ruled against us on

12  July 27th to seek reconsideration only with

13  respect to dollar- denominated bonds, not peso-

14  denominated bonds because peso-denominated bonds

15  are not within the definition of external

16  indebtedness.  It is our position that the

17  injunction goes beyond external indebtedness, but

18  having lost before Judge Griesa, we decided we

19  would pick our fight only on U.S. dollar-

20  denominated bonds, not on peso-denominated bonds.

21         JUDGE RAGGI:  If Citibank isn't being

22  paid by Argentina in any respect with respect to

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

86

1   this transaction, how are their actions in active

2   concert or participation with the Republic, which

3   is who the participants are who are covered by the

4   injunction rather than third parties acting solely

5   in their capacity as an intermediary bank?

6           MR. ENGLERT:  They are not within the

7   definition of intermediary bank, which is a term

8   borrowed from article 4A of the UCC. It's an

9   electronic funds transfer term.  It doesn't have

10  anything to do with Citibank's situation.  They

11  are in active concert or participation because

12  they are helping Argentina to evade the injunction

13  by passing on money -- first of all, accepting

14  money and then passing on money to customers in

15  direct violation of Judge Parker's injunction.  If

16  you start saying, with respect, Your Honors, that

17  third parties who are not the real wrongdoers here

18  may do things that are forbidden by the injunction

19  because you feel they're in a tough spot, the

20  injunction will unravel.

21          JUDGE RAGGI:  But if the money comes

22  from another entity that now can no longer give it

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

87

1  back to Argentina and -- because that's what

2  they're saying, that there are intermediaries and

3  they are getting this money from an intermediary,

4  right?  They don't get paid by Argentina.  They

5  get paid by CIYM or whatever the entity is.

6        MR. ENGLERT:  Oh gosh, there's a whole

7  chain of entities.  I can't keep track of all of

8  them.

9        JUDGE RAGGI:  Right, and so at that

10  point where they are no longer Argentina's agent,

11  how are they in active concert with Argentina?

12        MR. ENGLERT:  Your Honor, there is an

13  old saying that the chain is only as strong as its

14  weakest link.

15        JUDGE RAGGI:  But this is the argument

16  that was not made to the District Court, right?

17  The argument was we're Citibank, we're not Bank of

18  New York, not we don't fall within the definition

19  of participant.

20        MR. ENGLERT:  Well, I agree with you.

21        JUDGE RAGGI:  Or was that made to Judge

22  Griesa?

88

1            MR. ENGLERT:  The argument that they are

2  not a participant under 2(f) I don't recall being

3  made to Judge Griesa.  But even if it was, Your

4  Honor, this Court should reject it. It's very

5  important that this Court reject it because a

6  chain is only as strong as its weakest link.  If

7  Argentina can pass money to --

8            JUDGE RAGGI:  We've kept you a long time

9  and if it wasn't made to Judge Griesa, I'm not

10  sure we're going to entertain --

11            MR. ENGLERT:  All right.  One final very

12  last point.  The 113 bonds that are at issue in

13  the Repsol and the third category raised by

14  Argentina in its July 27th have no payments due

15  until December.  The September 30th thing, that

16  doesn't involve 113 ISIN bonds.

17            JUDGE POOLER:  Thank you.  Thank you all

18  very much.  We'll reserve decision.

19            CLERK OF COURT: Court stands adjourned.

20            (Whereupon, the proceedings concluded.)

21

22

Capital Reporting Company
Aurelius Capital Master, Ltd., et al. v. Republic of Argentina  09-18-2014

89

1              CERTIFICATE OF TRANSCRIBER

2

3

4       I, BENJAMIN GRAHAM, do hereby certify that

5   this transcript was prepared from audio to the

6   best of my ability.

7

8       I am neither counsel for, nor party to this

9   action nor am I interested in the outcome of this

10  action.

11

12

13

14

15
    _____        _____
16  09/23/14                Benjamin Graham

17

18

19

20

21

22