New York      Paris
Menlo Park    Madrid
Washington DC Tokyo
São Paulo     Beijing
London        Hong Kong

**Davis Polk**

**Karen E. Wagner**

Davis Polk & Wardwell LLP       212 450 4404 tel
450 Lexington Avenue            212 701 5404 fax
New York, NY 10017              karen.wagner@davispolk.com

March 2, 2015

Re:  *NML Capital, Ltd. v. Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ.
     1707 (TPG), 09 Civ. 1708 (TPG), and related cases

Hon. Thomas P. Griesa
United States District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Dear Judge Griesa:

   We write on behalf of Citibank in advance of tomorrow's hearing to respond to the points raised in Plaintiffs' letter of February 26, 2015, as well as the new arguments they made in their supplemental brief.

   The hearing tomorrow is vitally important to Citibank and its Argentine branch, Citibank Argentina. Citibank Argentina's license and very existence are in jeopardy and its employees are at risk of criminal liability. We appreciate there are larger issues involving the Republic and Plaintiffs with which the Court is concerned, but the hearing tomorrow is not about the Republic. There is simply no basis in the FAA or otherwise to place Citibank Argentina and its employees in such danger. The Argentine Law Bonds are not subject to the *Pari Passu* Clause and the Injunction does not cover them or Citibank Argentina (Plaintiffs have not met the burden of proof required to modify the Injunction and to extend it to cover the Argentine Law Bonds and Citibank Argentina, and we have demonstrated that the Argentine Law Bonds are not External Indebtedness).

   **The Injunction Did Not Cover the Argentine Law Bonds, So No Modification of the Injunction Is Sought and Citibank Will Not and Need Not Go into Contempt to Be Heard**

   As a threshold matter—underscoring how tenuous each of Plaintiffs' substantive arguments is—Plaintiffs cling to the notion that the previously issued Injunction covers the Argentine Law Bonds and Citibank Argentina. Indeed, Plaintiffs boldly admonish the Court that its intent and clear statements in this regard are inconsequential and irrelevant because, in their view, the Court should be bound by Plaintiffs' sweeping interpretation of the Injunction.

From this novel position,[1] Plaintiffs urge this Court to find that Citibank has no right to be heard—despite this Court's express invitation—and that Citibank should be required to go into contempt if it wants to address the Court on this matter.  The notion that a highly regulated bank must go into contempt to be heard is beyond unreasonable, and has no legal basis.  *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 130 & n.9 (2d Cir. 2014); *see also Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 14-2689 (2d Cir. Sept. 19, 2014) (Dkt. No. 167) ("[N]othing in this Court's order is intended to preclude Citibank from seeking further relief from the district court.").  Citibank will not disobey an order of this Court and will not go into contempt.

**Argentine Law Bonds Are Domestic Foreign Currency Indebtedness**

*Pesificación*

The complete factual record demonstrates that the Argentine Law Bonds are not External Indebtedness.  They are all available only in Argentina, are payable only in Argentina, and have been considered internal indebtedness of the Republic by the bond market because they are subject to Argentine law, have lesser protections than External Indebtedness, and therefore carry greater risks.  As the Court has said repeatedly:  "It was my view and still is my view that the Argentine law bonds issued in Argentina, payable in Argentina, subject to Argentine law, are different from the bonds subject to the February 23 order."[2]

Plaintiffs' February 26 letter suggests that, even if the Argentine Law Bonds were exchanged for bonds redenominated into pesos, those bonds were not actually paid in anything but dollars until they were exchanged for Argentine Law Bonds, when they were again paid in dollars.  They are wrong.  As established by the Duggan declaration submitted herewith, some pesified bonds were paid, and they were paid in pesos.  *See* Supplemental Declaration of Juan Duggan, dated March 1, 2015 (attached hereto as Ex. A) ¶¶ 5–11.  And those bonds that were not tendered in the 2005 and 2010 Exchanges continue to be payable only in pesos.

But more importantly, the FAA defines Domestic Foreign Currency Indebtedness as that issued in exchange for bonds "payable" in the currency of the Republic.  Plaintiffs do not dispute that the pesified bonds were "payable" by their terms in pesos.  That is exactly what *Pesificación* did—i.e., made them *payable* in pesos.  Consequently, Argentine Law Bonds acquired in exchange for pesified bonds fit squarely within subsection (iii)(b) of the FAA's definition of Domestic Foreign Currency Indebtedness.

The Republic's conversion of these bonds into pesos in no way rewrites the FAA or breaches its obligations under the *Pari Passu* Clause.  The *Pesificación* only applied to indebtedness governed exclusively by Argentine law—including several bonds that Plaintiffs concede are specifically enumerated in the definition of Domestic Foreign Currency Indebtedness.  They were converted into pesos when the Republic could not acquire sufficient foreign currency to pay its debts.  *See* Duggan Supp. Decl. ¶¶ 15–20.  But the Republic never attempted to pesify bonds governed by foreign law, like Plaintiffs' FAA Bonds, which remained payable in foreign currencies.  *See* Duggan Decl. (Dkt. No. 742) ¶¶ 6–7.

**Offered Exclusively**

Plaintiffs offer supposedly new facts in support of their construction of the phrase "offered exclusively," but their "new" facts have been known all along, and their position misses the mark

---

[1] Contrary to Plaintiffs' position, the Second Circuit is of the view that the intent of the issuing court is paramount.  *See United States v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2005) (holding that the "determining factor" in construing court orders is the intent of the issuing court).

[2] Sept. 19, 2014 Conference Tr. (Dkt. No. 690) at 7:16–19.

Hon. Thomas P. Griesa                                     3                                     March 2, 2015

because it entirely ignores the fact that the focus of the FAA is on the "indebtedness" being offered, and it is governed by New York law, not the federal securities laws.[3]  Plaintiffs cannot dispute the following facts with respect to the *indebtedness*:

1. the global certificates are all registered *exclusively in Argentina* (in the name of *CRYL*),
2. the global certificates are all deposited *exclusively in Argentina* (at *CRYL*),
3. the beneficial owners can only hold their interests in the Argentine Law Bonds through accounts *exclusively in Argentina* (directly or indirectly at *CRYL*),
4. they are all payable *exclusively in Argentina* (through a payment process that can only be executed through *CRYL* and *Caja* in Argentina),
5. they were all issued *exclusively under Argentine* decrees,
6. their terms are all governed *exclusively by Argentine* law, and
7. the Republic submitted to the jurisdiction of courts *exclusively in Argentina* with respect to disputes about the Argentine Law Bonds.

The fact that all of the steps related to the issuance and payment of these bonds occur exclusively in Argentina makes clear that they were offered exclusively within Argentina, and that they were internal indebtedness of Argentina clearly carved out from the definition of External Indebtedness and, thus, the *Pari Passu* Clause.  The way in which Argentine Law Bonds were offered and their characteristics are very different from the Foreign Law Bonds where:

1. the global certificates are all registered in the names of entities *outside of Argentina* (Cede & Co. or BNY Depositary (Nominees) Ltd.),
2. the global certificates are all deposited at institutions *outside of Argentina* (an affiliate of DTC and a common depositary of Euroclear and Clearstream),
3. the beneficial owners can hold their interests in Foreign Law Bonds through accounts *outside of Argentina* (directly or indirectly through DTC, Euroclear or Clearstream),
4. they are all payable *outside of Argentina* (through a payment process that can only be executed through BNY, DTC, Euroclear, and Clearstream),
5. they were all issued pursuant to indentures, *not Argentine* decrees,
6. their terms are all governed by foreign law, *not Argentine* law, and
7. the Republic submitted to the jurisdiction of courts *outside of Argentina* with respect to disputes about the Foreign Law Bonds.

These facts establish that the Argentine Law Bond *indebtedness* was "offered exclusively within the Republic of Argentin[a]," which is the issue—and the only issue—under Section (iii)(a) of the FAA's definition of Domestic Foreign Currency Indebtedness.

### Plaintiffs' Distortion of Citibank Argentina's Role Cannot Satisfy Federal Rule of Civil Procedure 65(d)(2)

Plaintiffs now argue, without any evidence and in a blatant effort to mislead the Court, that Citibank Argentina should be bound as a "Participant" under the Injunction because it acts as a "depositary" for Clearstream and Euroclear with respect to Argentine Law Bonds.  While payments on Argentine Law Bonds fall outside the Injunction for all the reasons Citibank has set forth, Citibank Argentina also falls outside the Injunction's scope because it is not the holder of the global certificate for the bonds, and thus has no indispensable or formal institutional role in paying those bonds.

---

[3] In any event, Plaintiffs' argument applies only to the 28% of Argentine Law Bonds that were issued in the exchanges—i.e., the same 28% that were issued in exchange for "pesified" bonds.  Plaintiffs do not seriously dispute that the remaining 72% of Argentine Law Bonds were offered exclusively in Argentina.

On October 26, 2012, the Second Circuit remanded the Injunction to this Court with instructions that it should, *inter alia*, "more precisely determine the third parties to which the Injunction[] will apply."[4] In response, Plaintiffs argued that, consistent with Federal Rule of Civil Procedure 65(d)(2), only entities that served "particular institutional roles" in the payment process for Exchange Bonds should be bound by the Injunction—"agents of Argentina, who receive monetary payment for their role under the Exchange Bonds under contracts with Argentina, or those who are in active concert with Argentina under the Exchange Bonds."[5] Notably, Plaintiffs' proposed scope of third parties bound by the Injunction encompassed the Indenture Trustee (BNY) and the payment chain down to the relevant clearing systems, but did not seek to include financial institutions that received funds from those clearing systems or entities further down the payment chain. This Court agreed with Plaintiffs' proposal,[6] and the Second Circuit affirmed:

> [T]he amended injunctions cover Argentina, the indenture trustee(s), the registered owners, and the clearing systems. *The amended injunctions explicitly exempt . . . financial institutions receiving funds from the DTC.*[7]

Plaintiffs in their brief on remand identified "depositary" as one of the "institutional roles" in the payment process for Exchange Bonds, and defined a "depositary" as an entity that "h[as] agreed to hold each of the physical Global Securities."[8] Citibank Argentina does not hold the Global Securities for Argentine Law Bonds and is therefore not a "depositary." On this basis alone, Plaintiffs' new argument must be rejected.

There is no dispute that the depositary holding the global certificates for Argentine Law Bonds is *CRYL*, and the designated clearing system for those bonds is *Caja*, not Clearstream and Euroclear. *See generally* Ex. B (describing the payment systems for Foreign Law Bonds and Argentine Law Bonds). As financial institutions receiving funds from the relevant clearing system, neither Citibank Argentina nor its customers Euroclear and Clearstream are Participants involved in paying Argentine Law Bonds. Citibank is therefore entitled to confirmation that it is not bound by the Injunction as a downstream entity.

Plaintiffs advance the alternative argument that *any* entity "helping the Republic make payment" to the ultimate owners of beneficial interests in Argentine Law Bonds—regardless of where they fall in the payment chain—should be bound by the Injunction. (Pls.' Supp. Br. at 35.) But this argument directly contradicts the definition of Agents and Participants proposed by Plaintiffs in obtaining the Injunction, which as explained above made clear that the Injunction did not apply to financial institutions downstream from the clearing systems.

More importantly, Plaintiffs' proposed expansion of the Injunction would extend far beyond the permissible scope of Rule 65(d)(2). Plaintiffs have previously acknowledged that the Republic's payment obligations are satisfied by the time the payment has been made to the relevant clearing system (which is undoubtedly why they did not request that financial institutions downstream of the clearing systems be enjoined).[9] Citibank Argentina, which is only one of several custodians receiving payments from *Caja*, therefore does not "'assist the Republic in

---

[4] *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 264 (2d Cir. 2012).

[5] Pls.' Br. in Resp. to Remand, filed Nov. 14, 2012 (Dkt. No. 302) at 15–16.

[6] Nov. 21, 2012 Op. (Dkt. No. 424) at 11 ("It would appear that plaintiffs have requested that a reasonable set of parties be bound by the Injunctions, and this is in compliance with Rule 65(d).").

[7] *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 239 (2d Cir. 2013) (citation omitted and emphasis added).

[8] Pls.' Br. in Resp. to Remand, filed Nov. 14, 2012 (Dkt. No. 302) at 11.

[9] Pls.' Reply Br. in Resp. to Remand, filed Nov. 20, 2012 (Dkt. No. 310) at 13 ("Argentina's obligation to pay the Exchange Bonds is not satisfied until BNY forwards this payment on to DTC.").

Hon. Thomas P. Griesa                               5                                March 2, 2015

fulfilling its payment obligations'" on the Argentine Law Bonds, because those obligations have already been fulfilled before payment reaches Citibank Argentina.  (Pls.' Supp. Br. at 35.)

In short, Citibank Argentina is in precisely the same position as the downstream financial institutions that were expressly exempted from the Court's injunction—as consented to by Plaintiffs and affirmed by the Second Circuit—and should be accorded precisely the same treatment.

***************************************

Lastly, Plaintiffs continue to assert without any supporting evidence during the last eight months that "Citibank has not demonstrated that the Republic will actually impose any sanctions on it if it is [sic] decides to comply with this Court's orders."  (Pls.' Supp. Br. at 37.)  To the contrary, Plaintiffs themselves have submitted evidence to this Court *confirming* those risks.  That evidence shows that officials of the Republic with authority over Citibank Argentina have "demand[ed] that [Citibank Argentina] continue acting to further and to protect the interests of the Holders of the Argentine [Law] Bonds," and that failure to do so because of the Injunction would violate Argentine law and "undermin[e] the Argentine legal system."[10]  Indeed, when the Second Circuit asked the Republic's counsel for assurance that the Republic would not "proceed against [Citibank Argentina] criminally or pull its license or do all kinds of other horrible things," counsel responded that "[a]s an officer of this Court, I am not able to make a representation about what the Republic of Argentina is going to do."  Pls.' Ex. 8 (Dkt. No. 746-2) at 59:1–3, 60:4–7.  As we have demonstrated, and as further amplified in The Clearing House's *amicus* brief, principles of comity and the separate entity doctrine protect Citibank Argentina from such consequences.

Whatever legitimate complaint Plaintiffs may have against the Republic as a result of its contractual obligations under the FAA, Plaintiffs' position as to Citibank Argentina and the Argentine Law Bonds is not only wrong, but would lead to an entirely unfair and extremely harmful result for Citibank, an undisputed innocent non-party, and its employees.


Very respectfully yours,

/s/ Karen E. Wagner
Karen E. Wagner

By ECF
cc:     All counsel of record (via ECF)

---

[10] Letter from Ministry of Econ. & Pub. Fin. to Citibank Argentina, dated Aug. 6, 2014 (attached, with translation, as Exs. A & B to Letter from Robert A. Cohen to Hon. Thomas P. Griesa, dated Aug. 8, 2014 (Dkt. No. 635)); *see also* President Cristina Fernández de Kirchner, Speech on Nat'l Radio from the Presidential Office in the Casa Rosada (Aug. 19, 2014) (translation attached as Ex. A to Letter from Matthew D. McGill to Hon. Thomas P. Griesa, filed Aug. 21, 2014, *Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 09 Civ. 8757 (Dkt. No. 483)).