# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------ x
NML CAPITAL, LTD.,                   :
            Plaintiff,               :
        - against -                  :   No. 08 Civ. 6978 (TPG)
THE REPUBLIC OF ARGENTINA,           :   No. 09 Civ. 1707 (TPG)
            Defendant.               :   No. 09 Civ. 1708 (TPG)
                                     :
------------------------------------ x
AURELIUS CAPITAL MASTER, LTD. and    :
ACP MASTER, LTD.,                    :
            Plaintiffs,              :
        - against -                  :   No. 09 Civ. 8757 (TPG)
THE REPUBLIC OF ARGENTINA,           :   No. 09 Civ. 10620 (TPG)
            Defendant.               :
                                     :
------------------------------------ x
AURELIUS OPPORTUNITIES FUND II, LLC  :
and AURELIUS CAPITAL MASTER, LTD.,   :
            Plaintiffs,              :   No. 10 Civ. 1602 (TPG)
        - against -                  :   No. 10 Civ. 3507 (TPG)
THE REPUBLIC OF ARGENTINA,           :   No. 10 Civ. 3970 (TPG)
            Defendant.               :   No. 10 Civ. 8339 (TPG)
                                     :
------------------------------------ x
BLUE ANGEL CAPITAL I LLC,            :
            Plaintiff,               :
        - against -                  :   No. 10 Civ. 4101 (TPG)
THE REPUBLIC OF ARGENTINA,           :   No. 10 Civ. 4782 (TPG)
            Defendant.               :
                                     :
------------------------------------ x   (captions continue on following page)
```

**SUPPLEMENTAL DECLARATION OF JUAN DUGGAN**

```
------------------------------- x
OLIFANT FUND, LTD.,              :
            Plaintiff,           :
      - against -                :
                                 :   No. 10 Civ. 9587 (TPG)
THE REPUBLIC OF ARGENTINA,       :
            Defendant.           :
                                 :
------------------------------- x
                                 :
PABLO ALBERTO VARELA, et al.,    :
            Plaintiffs,          :
      - against -                :
                                 :   No. 10 Civ. 5338 (TPG)
THE REPUBLIC OF ARGENTINA,       :
            Defendant.           :
                                 :
------------------------------- x
```

Pursuant to 28 U.S.C. § 1746, I, Juan Duggan, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a partner in the law firm Hope, Duggan & Silva, and am duly admitted to practice law in the City of Buenos Aires, Republic of Argentina. Information about my main areas of expertise was previously provided in my Declaration dated February 16, 2015 (the "**February 16 Declaration**"), which is incorporated here by reference.

2. I understand that, on the evening of February 26, 2015, Plaintiffs submitted a letter to the Court responding to Citibank's discussion of *Pesificación*. The letter states, "[t]he Republic made clear in its moratorium that it never intended to make payment on the defaulted bonds; thus, according to the Republic, the defaulted bonds were not 'payable' at all, let alone payable in Pesos." *See* Ltr. at 2; *see also id.* (arguing that the defaulted bonds "were paid in U.S. Dollars until the Republic issued a moratorium on its debts in 2001").

1

3.       I have been asked to address Plaintiffs' position regarding *Pesificación*, a process that I described in the February 16 Declaration. Plaintiffs' position is unsupported and, in fact, misstates not only the basic facts regarding *Pesificación*, but also the effect of *Pesificación* on the nature and payment of the Republic's debt under Argentine law. As detailed below, *Pesificación* was not rendered an illusory event because of the general moratorium on payments; indeed, under Argentine law, debt subject to the *Pesificación* ("**pesified debt**") became payable only in pesos, remains so to this day, and certain pesified debt was, in fact, paid in pesos despite the moratorium.

I.      **The Moratorium and *Pesificación* of the Argentine Public Debt**

4.       Decree No. 471/2002, by which Argentina converted into Pesos all U.S. Dollar denominated indebtedness governed by Argentine law and due by the Republic, the Provinces and the Municipalities, is dated March 8, 2002.[1] The moratorium on Argentine public debt was officially implemented by the Ministry of Economy of the Argentine Government on April 25, 2002, through the issuance of Resolution No. 73/2002[2] ("**Resolution 73**").[3]

A.      **Bonds Subject to the *Pesificación* Were Paid in Pesos**

5.       Pursuant to Resolution 73, Resolution No. 158/2003 of the Ministry of Economy[4] ("**Resolution 158**") and the annual Federal Budget Laws for Fiscal Years 2004

---

[1] Published in the Official Gazette on March 13, 2002.

[2] Published in the Official Gazette on April 30, 2002.

[3] Budget Law No. 25,565, approving the budget for Fiscal Year 2002 (published in the Official Gazette on March 21, 2002), had granted powers to the Executive Power (acting through the Ministry of Economy and Infrastructure) to "defer totally or partially payments of services under the public debt in order to look after the basic functions of the National State." The moratorium was officially implemented by Resolution 73 issued by the Ministry of Economy.

[4] Published in the Official Gazette on March 13, 2003.

2

and 2005,[5] Argentina deferred payment on public indebtedness of the National Government originally incurred prior to December 31, 2001 or under rules issued prior to such date, until (in the case of Resolution 73 and Resolution 158) the end of the then-current fiscal year or (in the case of the relevant Federal Budget Laws) until such time as the Executive Branch of Government has declared the completion of the restructuring process.

6. Each of these regulations, however, lists exceptions that applied to certain Argentine Law Eligible Securities, although these exceptions varied from year to year.[6]

7. In the "*Tapella*" case,[7] the Federal Supreme Court agreed with the Court's Attorney General that a certain type of Argentine Law Eligible Security (bonds denominated "*Bocones Previsionales 2° Serie*") held by a person who was more than 75 years of age should be paid to that person pursuant to a deferment exception applicable in Fiscal Years 2004, 2005 and 2006, even though that deferment exception had been terminated with respect to such securities from Fiscal Year 2007 and onwards.

8. In the "*Tapella*" case, the Court's Attorney General had indicated that it was the Government's common practice in numerous other similar cases to pay Argentine securities if they qualified for a deferment exception:

> The National Government paid the services of the debt when it included the holders of the securities in any one of the exceptions to the payment deferral contemplated in various rules, without interrupting compliance with such obligation on account of the expiry of the fiscal year or because of the issuance of a new budgetary law, as evidenced by the great number of similar

---

[5] Law No. 25,827 published in the Official Gazette on December 22, 2003; Law No. 25,967 published in the Official Gazette on December 16, 2004.

[6] Examples of deferment exceptions are (i) certain designated securities, including securities issued in connection with social security liabilities, and (ii) certain other designated securities held by individuals who are 75 years of age or more, or acquired with the proceeds obtained as indemnification for labor related accidents or received as indemnification for expropriations.

[7] "*Tapella, Nestor Carlos y otro c/ EN. Bocones Previsionales s/ amparo ley 16.986*", Federal Supreme Court docket No. T. 394, XLIV, September 27, 2011.

dockets in which this Attorney General has participated and are presently under review of the Court.

9. Following "*Tapella*", I have identified several cases[8] where the Federal Supreme Court upheld the decisions of lower courts to order the payment of Argentine Law Eligible Securities under applicable deferment exceptions, and to order that such payment be made in Pesos pursuant to Decree No. 471/2002.

10. Annex J to each of the Investment Accounts[9] for fiscal years 2004[10] and 2005[11] prepared by the "*Contaduría General de la Nación*," which describe the financial activities performed by the National Treasury during each relevant period, indicates that Argentina made payments under its deferred public indebtedness pursuant to applicable deferment exceptions.

11. Based on all of the above, I conclude that some Argentine Law Eligible Securities, which had been converted into Pesos pursuant to Decree No. 471/2002, were paid in Pesos by the National Government pursuant to the deferment exceptions in the Federal Budget Laws.

### B. The Moratorium Was Not Permanent

12. Two things are made clear under all regulations dealing with the moratorium prior to the 2005 Exchange: (a) the deferment of payments was a temporary measure, with each deferment set to expire by the earlier of a certain date or the completion of the

---

[8] See, e.g, "*Barbeito Giomar y oreo c/Estado Nacional s/amparo*", Federal Supreme Court docket B.492.XLVII; "*Balestrelli, Juan Domingo y otra c/EN-ME s/amparo*", Federal Supreme Court docket B.493.XLVII.

[9] The Investment Accounts are prepared annually by the "*Contaduría General de la Nacion*" as contemplated in Section 91 of Law No. 24,156 and submitted to Congress for its approval as established in Section 75(8) of the Constitution of Argentina.

[10] Available in Spanish language at http://www.mecon.gov.ar/hacienda/cgn/cuenta/2004/archivos/sep.pdf.

[11] Available in Spanish language at http://www.mecon.gov.ar/hacienda/cgn/cuenta/2005/archivos/sdp.pdf.

4

restructuring of Argentina's public debt; and (b) notwithstanding the moratorium, there would be exceptions to the deferment under certain circumstances.

13.    In the "*Galli*" case that upheld the constitutionality of Decree No. 471/2002, it was said that it should be stressed that "the Argentine Republic has not repudiated its public debt."[12]

14.    Therefore it is not true that the moratorium indicated that Argentina "never intended to make payment on the defaulted bonds," as the Plaintiffs say in their letter. As a matter of fact, the moratorium on servicing Argentina's public indebtedness was always conceived as a temporary measure.

## II.    The *Pesificación* Was Not a Contrivance by the Republic

### A.    The *Pesificación* Protected the Solvency of the Argentine Economy

15.    As explained in the February 16 Declaration, the Convertibility Regime, pursuant to which the Peso was fully convertible into the U.S. dollar at a one-to-one exchange rate, had become economically unsustainable by the end of 2001[13] and it was abolished in the Public Emergency Act (Ex. A to the February 16 Declaration). The collapse of the Convertibility Regime and the subsequent devaluation of the Peso threatened to bring about the insolvency of many individuals and institutions owing foreign currency

---

[12] *See* Votes of Justices Maqueda and Highton de Nolasco in the "Galli" case, cited in footnote 23 of the February 16 Declaration.

[13] As a result of a major local economic recession that began in 1999, confidence in the banking sector began to erode, triggering a significant run on deposits in 2001. By December 31, 2001, total bank deposits (in Pesos and in U.S. Dollars) had declined 23.2% from the level on December 31, 2000, thus threatening the liquidity of the system. To reduce the danger of a collapse of the banking sector, the Argentine Government on December 1, 2001 froze all U.S. Dollar and Peso denominated deposits permitting only the withdrawal of certain weekly maximum amounts.

denominated debts in Argentina.[14]  The Public Emergency Act declared the existence of a state of "*public emergency*" in social, economic, administrative, financial and exchange matters and delegated powers to the President to establish conditions for economic growth that were sustainable and compatible with the restructuring of the public indebtedness and to issue rules to restructure the obligations affected by the new foreign exchange regime.

16. The Argentine Government took various steps in this regard, including converting substantially all current Argentine private and public indebtedness (including Argentine law-governed securities) that were denominated in non-Argentine currency into Pesos.  This process is known in Argentina as the *Pesificación* and was explained in greater detail in the February 16 Declaration.

17. The Argentine Government also took various other steps to address this crisis, including:

- nullifying all contractual provisions adjusting prices thereof to the evolution of any type of index or to the evolution of the exchange rate of foreign currency;
- converting all prices and tariffs under all agreements entered into by the Federal Public Administration expressed in a foreign currency into Pesos at an exchange rate of 1 Peso per U.S. Dollar, and forbidding the contractors from suspending or varying the performance of their obligations under those agreements;
- amending the Central Bank's charter[15] to allow the Central Bank to print Pesos in excess of its international reserves;
- imposing a severe exchange control regime, the breach of which could give rise to penalties of a criminal nature; and

---

[14] See Registration Statement, filed with the SEC on July 2, 2004, at p. 97, *available at* https://www.sec.gov/Archives/edgar/data/914021/000095012304008163/y98698svb.htm.

[15] As per the provisions of Law No. 25,562 (published in the Official Gazette on February 8, 2002) and Decree No. 401/2002 (published in the Official Gazette on March 5, 2002).

- freezing and rescheduling term deposits, extending their maturity, and ordering that they be repaid in installments.[16]

### B. The *Pesificación* Led to Protests and Legal Challenges by Argentine Residents

18. The *Pesificación* and the National Government's other measures resulted in depositors protesting in the streets and triggered widespread riots and protests. Appendix A to this Declaration contains photographs from some of these protests.

19. Residents also brought thousands of cases before the Argentine courts demanding the return of the original value of their deposits from financial institutions and/or the Argentine Government.[17]

20. The constitutionality of the *Pesificación* of bank deposits, pursuant to Decree No. 214/2002, was judicially challenged by many depositors, giving rise to protracted litigation all through the years 2002-2006. In the "*Massa*" case[18] the Federal Supreme Court refused to confirm the earlier decision of an appellate court to declare the unconstitutionality of the *Pesificación* of bank deposits.[19] The Federal Supreme Court revoked the ruling of the

---

[16] *See* Decree No. 71/2002 dated January 9, 2002; Resolutions of the Ministry of Economy No. 6 dated January 9, 2002 (published in the Official Gazette on January 10, 2002), as amended by Resolution No. 9 dated January 10, 2002 (published in the Official Gazette on January 11, 2002), No. 18 dated January 17, 2002 (published in the Official Gazette on January 18, 2002), No. 23 dated January 21, 2002 (published in the Official Gazette on January 22, 2002) and No. 46 dated February 6, 2002 (published in the Official Gazette on February 7, 2002); *see also* Registration Statement, filed with the SEC on July 2, 2004, at p. 96, *available at* https://www.sec.gov/Archives/edgar/data/914021/000095012304008163/y98698svb.htm.

[17] *See* Registration Statement, filed with the SEC on July 2, 2004, at p. 97, *available at* https://www.sec.gov/Archives/edgar/data/914021/000095012304008163/y98698svb.htm.

[18] "*Massa, Juan Agustín c/Poder Ejecutivo Nacional – dto. 1570/01 y otro s/amparo ley 19986*", Federal Supreme Court docket No. M. 2771, XLI, December 27, 2006.

[19] The Court took into account that various other emergency regulations between 2002 and the date of the Court's ruling mitigated the effect of the *Pesificación* and showed that no harm was caused to the property rights of the depositors.

appellate court, resolving that the depositors should collect in Pesos their U.S. Dollar denominated deposits.

Dated: March 1, 2015
      Buenos Aires, Argentina

                                                              _____
                                                                     Juan Duggan

# Appendix A



Available at http://en.wikipedia.org/wiki/Corralito#mediaviewer/
File:Cacerolazo_Argentina_2001-2002.jpg



Available at http://commons.wikimedia.org/wiki/File:Buenos_Aires_-_Manifestaci%C3%B3n_contra_el_Corralito_-_20020206-25.JPG



Available at http://estaticos.elperiodico.com/resources/jpg/1/7/1322767912571.jpg?_ga=1.265458895.1537453712.1424715476