UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
NML CAPITAL, LTD.,                                       :
                                                         :
        Plaintiff,                                       :
                                                         :   08 Civ. 6978 (TPG)
        v.                                               :   09 Civ. 1707 (TPG)
                                                         :   09 Civ. 1708 (TPG)
THE REPUBLIC OF ARGENTINA,                               :
                                                         :
        Defendant.                                       :
-------------------------------------------------------- x
                                                         :
AURELIUS CAPITAL MASTER, LTD. and                        :
ACP MASTER, LTD.,                                        :
                                                         :
        Plaintiffs,                                      :
                                                         :   09 Civ. 8757 (TPG)
        v.                                               :   09 Civ. 10620 (TPG)
                                                         :
THE REPUBLIC OF ARGENTINA,                               :
                                                         :
        Defendant.                                       :
                                                         :
-------------------------------------------------------- x
                                                         :
AURELIUS OPPORTUNITIES FUND II, LLC                      :
and AURELIUS CAPITAL MASTER, LTD.,                       :
                                                         :
        Plaintiffs,                                      :
                                                         :   10 Civ. 1602 (TPG)
        v.                                               :   10 Civ. 3507 (TPG)
                                                         :
THE REPUBLIC OF ARGENTINA,                               :
                                                         :
        Defendant.                                       :
                                                         :   **(captions continued on**
-------------------------------------------------------- x   **next page)**

**<u>OPINION</u>**

```
-------------------------------------------------- x
AURELIUS CAPITAL MASTER, LTD. and                  :
AURELIUS OPPORTUNITIES FUND II,                    :
LLC,                                               :
                                                   :
                Plaintiffs,                        :
                                                   :   10 Civ. 3970 (TPG)
        v.                                         :   10 Civ. 8339 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                Defendant.                         :
                                                   :
-------------------------------------------------- x
BLUE ANGEL CAPITAL I LLC,                          :
                                                   :
                Plaintiff,                         :
                                                   :
        v.                                         :   10 Civ. 4101 (TPG)
                                                   :   10 Civ. 4782 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                Defendant.                         :
-------------------------------------------------- x
OLIFANT FUND, LTD.,                                :
                                                   :
                Plaintiff,                         :
                                                   :
        v.                                         :
                                                   :   10 Civ. 9587 (TPG)
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                Defendant.                         :
-------------------------------------------------- x
PABLO ALBERTO VARELA, *et al.*,                    :
                                                   :
                Plaintiff,                         :
                                                   :
        v.                                         :   10 Civ. 5338 (TPG)
                                                   :
THE REPUBLIC OF ARGENTINA,                         :
                                                   :
                Defendant.                         :
-------------------------------------------------- x
```

Citibank, N.A. ("Citibank") has a bank branch located in Buenos Aires. This branch is a custodian for certain "exchange bonds" issued by the Republic of Argentina ("the Republic") and governed by Argentine law. Citibank has moved, by order to show cause, to vacate this court's order of July 28, 2014, which clarified that an injunction issued against the Republic prohibits Citibank from processing payments on the "dollar-denominated exchange bonds." *See* Order of July 28, 2014 at 4. For the following reasons, the court denies Citibank's motion to vacate the July 28, 2014 order.

## Background

In 1994, the Republic issued bonds pursuant to a Fiscal Agency Agreement ("FAA"). The FAA provided that the Republic's payment obligations on the 1994 bonds "shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness." FAA ¶ 1(c). This clause of the FAA has become known as the "Equal Treatment Provision." The FAA also contained provisions whereby, in the event litigation arose regarding the 1994 bonds, the Republic agreed to the jurisdiction of any state or federal court in New York City. *Id.* ¶¶ 22–23.

From 1994 until 2001, it appears the Republic made timely interest payments on the 1994 bonds. However, in 2001 the Republic experienced a severe economic crisis. The Republic stopped making interest payments on its public debt, including the 1994 bonds.

In 2002, holders of the 1994 bonds began filing lawsuits against the Republic in this court. The court issued judgments in some of these cases in

1

favor of the bondholders, but the bondholders struggled to enforce those judgments. They were unable to seize the Republic's assets or otherwise collect payment.

### A. The 2005 and 2010 Exchanges and Citibank's Role in the Payment Process

In 2005, the Republic issued an exchange offer (the "2005 Exchange") inviting creditors, including holders of the 1994 bonds, to exchange their old bonds for newly issued bonds worth 25%–29% of the original bonds' value. Approximately 72% of the Republic's creditors accepted this offer. In 2010, the Republic issued another exchange offer (the "2010 Exchange") with terms substantially identical to the 2005 exchange offer. The 2010 Exchange garnered some additional interest. All told, an estimated 93% of the Republic's creditors accepted the 2005 or 2010 exchange offers.

The 2005 and 2010 exchange offers created new types of bonds, including: (1) bonds governed by New York law; (2) bonds governed by English law; and (3) bonds governed by Argentine law.

The payment process on the dollar-denominated exchange bonds governed by Argentine law is as follows: the Republic sends the interest payments to an entity named *Central de Registro y Liquidación de Instrumentos de Endeudamiento Publico* ("CRYL"). CRYL forwards those payments to another entity named *Caja de Valores, S.A.* ("Caja"). Caja forwards the payments to Citibank's Argentine branch. Citibank's Argentine branch then transmits the payments to its customers, including the clearinghouses Euroclear and

Clearstream. Euroclear and Clearstream then distribute their portion of the interest payments to bondholders.

The exchange bonds governed by Argentine law are denominated in U.S. dollars and in Argentine pesos. Only the dollar-denominated bonds, amounting to $2.3 billion, are at issue in the instant motion. These bonds were assigned five International Securities Identification Numbers ("ISINs"): ARARGE03E097, ARARGE03E113, ARARGE03E154, ARARGE03G688, and ARARGE03G704.

**B. The Injunction and the Orders of June 27, 2014 and July 28, 2014**

Plaintiffs in this case hold bonds issued pursuant to the FAA. Plaintiffs rejected both the 2005 and 2010 exchange offers, opting instead to seek payment on the terms agreed to in the FAA. Plaintiffs sued the Republic in this court and obtained judgments. However, like other 1994 bondholders, plaintiffs found it impossible to collect on their judgments.

On February 23, 2012, this court issued an order prohibiting the Republic from making payments on the exchange bonds without also making a ratable payment to plaintiffs on their bonds. This order was amended and supplemented on November 21, 2012. As amended, the February 23, 2012 order has become known as "the Injunction."

The Injunction provides: "Whenever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers . . . the Republic shall concurrently or in advance make a 'Ratable Payment' to NML." Injunction ¶ 2(a). The Injunction provides further that: "the Republic is ENJOINED from . . . making any payment under

3

the terms of the Exchange Bonds without complying with its obligation . . . [under] the FAA by concurrently or in advance making a Ratable Payment to NML." *Id.* ¶ 2(d).

The Injunction also prohibits "participants in the payment process of the Exchange Bonds . . . . from aiding and abetting any violation of this ORDER." *Id.* ¶ 2(e). The term "participants" "refer[s] to those persons and entities who act in active concert *or* participation with the Republic, to assist the Republic in fulfilling its payment obligations under the Exchange Bonds." *Id.* ¶ 2(f) (emphasis added) (listing several examples of participants). Finally, the Injunction provides that non-parties may seek clarification from the court of their duties, if any, under the Injunction. *Id.* ¶ 2(h).

In 2013, Citibank filed a motion asking the court to clarify whether the Injunction prohibits its handling of payments on the exchange bonds governed by Argentine law. The court initially deferred action on the motion pending appeal of the Injunction to the Court of Appeals for the Second Circuit. The Court of Appeals affirmed the Injunction in August of 2013, and the Supreme Court denied *certiorari* in June of 2014.

With the appeals of the Injunction having concluded, the court revisited Citibank's motion for clarification. On June 27, 2014, the court issued an order ("June 27th Order") providing that the Injunction does "not as a matter of law prohibit payments by Citibank['s] . . . Argentine branch on Peso- and U.S. Dollar-denominated bonds—governed by Argentine law and payable in Argentina—that were issued by the Republic of Argentina in 2005 and 2010 to customers for

4

whom it acts as custodian in Argentina." Order of June 27, 2014. Plaintiffs filed a motion for partial reconsideration of the June 27th Order.

On July 28, 2014, the court issued an order ("July 28th Order") allowing Citibank to make a one-time payment on the dollar-denominated exchange bonds governed by Argentine Law. However, the court clarified that the Injunction would prohibit Citibank from processing payments on the dollar-denominated exchange bonds going forward.

Citibank appealed the July 28th Order to the Court of Appeals for the Second Circuit. The Court of Appeals denied the appeal on jurisdictional grounds, but noted that "nothing in this Court's order is intended to preclude Citibank from seeking further relief from the district court." Thus, on September 22, 2014, Citibank filed a motion, by order to show cause, to vacate the July 28th Order. It is this motion that is the subject of the present opinion.

The court held hearings on Citibank's motion on September 28, 2014 and March 3, 2015. The court, on consent of plaintiffs, allowed Citibank to process payments at the end of September and the end of December on the dollar-denominated exchange bonds governed by Argentine law. Citibank's Argentine branch is expected to receive another interest payment on those bonds on March 31, 2015. Plaintiffs have not consented to Citibank's processing of that payment.

Discussion

Citibank and the Republic have advanced three primary arguments in support of vacating the July 28th Order: (1) the exchange bonds governed by Argentine law should not be subject to the Injunction because they are not

5

"external indebtedness" of the Republic; (2) Citibank's Argentine branch should not be considered a "participant in the payment process" and therefore its dealings in Argentina should not implicate the Injunction; and (3) principles of comity weigh in favor of vacating the July 28th Order.

1. **Whether the Injunction Prohibits Citibank's Processing of Payments on the Exchange Bonds Governed by Argentine Law**

Citibank argues that the exchange bonds governed by Argentine law should fall outside the scope of the Injunction because those bonds do not qualify as external indebtedness of the Republic.

The operative paragraphs of the Injunction do not speak in terms of "external indebtedness." Rather, the Injunction prohibits "participants in the payment process" from assisting the Republic in making payments on *exchange bonds*. *See* Injunction ¶ 2(a),(d),(e). Thus the Injunction by its terms does not, in and of itself, refer to external indebtedness as a condition for its application.

However, the Injunction effectuates the Equal Treatment Provision of the FAA. *See, e.g.*, Injunction ¶ 1(d). The Equal Treatment Provision *does* speak in terms of external indebtedness, providing that "The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness." FAA ¶ (1)(c). Thus there is an issue about whether the Injunction, in light of the FAA, prohibits the Republic from making, and "participants" from assisting in, payments on external indebtedness (unless of course a ratable payment is made to plaintiffs holding 1994 bonds).

6

The FAA defines "external indebtedness" as "obligations . . . for borrowed money . . . payable . . . in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness, as defined below, shall constitute External Indebtedness." FAA at 16. Since the exchange bonds at issue here are denominated in dollars, they qualify as "external indebtedness" of the Republic unless the carve-out for Domestic Foreign Currency Indebtedness ("DFCI") applies.

The FAA defines DFCI in three ways. *See* FAA at 17. First, DFCI includes seven specifically named bonds issued between 1991 and 1993. *Id.* Second, DFCI includes any debt issued in replacement for one of those seven specific bonds. Third, DFCI includes any foreign currency indebtedness "offered exclusively within the Republic of Argentina" or "issued in . . . substitution . . . or replacement of indebtedness payable in the lawful currency of Argentina." *Id.*

The first and second types of DFCI do not apply here. No one suggests that the exchange bonds, issued in 2005 and 2010, could have been specified in the FAA, which was drafted more than a decade earlier. The parties do, however, agree that a small fraction (3%-17%) of the exchange bonds governed by Argentine law were issued as replacements for one of the seven bonds specified in the definition of DFCI. Thus, if the operative paragraphs of the Injunction spoke in terms of external indebtedness, it could be argued that this 3%–17% would qualify as DFCI. The vast majority, however, would not qualify as DFCI.

The parties sharply dispute whether the exchange bonds governed by Argentine law were "offered exclusively within the Republic of Argentina" and

7

thus qualify as DFCI under the third category. The court has reviewed hundreds of documents going to this question, and held two hearings where this question was debated. The evidence produced is overwhelming: the exchange bonds governed by Argentine law were, like all the other exchange bonds, offered in many countries, not exclusively in Argentina. *See, e.g.*, 2005 Prospectus Supplement at (iii), S-95, *see also* 2010 Prospectus Supplement at (v).

The Republic argues that the exchange bonds governed by Argentine law were offered locally because they were registered at and payable through CRYL, an Argentine entity. *See* Republic's Supp. Mem. L. at 19. But this argument goes to where the transactions were consummated, or in the parlance of contract law, where the exchanges were "accepted." It does not go to where the exchange bonds were *offered*.

The final type of DFCI, also falling under the third category, is foreign currency indebtedness "issued in . . . substitution . . . or replacement of indebtedness payable in the lawful currency of Argentina." FAA at 17. Citibank argues that in 2002, the Republic passed a series of measures converting all of its public debts payable in foreign currencies into debts payable in Argentine pesos. Thus, Citibank contends that the exchange bonds governed by Argentine law were replacing debts payable in Argentine pesos, and qualify as DFCI under the third category.

It appears that in 2002 the Argentine President, with authorization from the Argentine National Congress, "pesified" its public debts. *See* Duggan Decl. ¶ 6. However, when the exchange bonds were created in 2005, the Republic

expressly preserved the foreign currency status of debts that may have been "pesified," stating: "Solely for the purposes of the [exchange] Offer, Eligible Securities originally denominated in a currency other than pesos and governed by Argentine law will be treated as if they were denominated in the currency in which they were originally issued." 2005 Prospectus Supplement at S-9, S-40. Thus, the exchange bonds governed by Argentine law and denominated in dollars do not qualify as DFCI because they replaced bonds that were treated as payable in a foreign currency, making the third category inapplicable here.

As discussed, the operative paragraphs of the Injunction do not speak in terms of "external indebtedness," and as a result, Citibank's participation in making payments on exchange bonds is prohibited. This is true whether or not the exchange bonds are external indebtedness. Nonetheless, the court finds that the vast majority of exchange bonds governed by Argentine law and payable in U.S. dollars would not constitute DFCI, but rather would qualify as external indebtedness of the Republic. Thus, payment on these exchange bonds would violate the Equal Treatment Provision of the FAA, providing an additional reason as to why the Injunction applies.

### 2. Whether Citibank is a "Participant in the Payment Process"

Citibank argues that it does not participate in the payment process of the exchange bonds, and thus should not be subject to the Injunction.

"Participant" within the meaning of the Injunction refers to "persons and entities who act in active concert *or* participation with the Republic, to assist the Republic in fulfilling its payment obligations under the Exchange Bonds."

9

Injunction ¶ 2(f) (emphasis added). The Injunction lists a number of entities that are participants, such as trustees, depositaries, clearing systems, settlement agents, transfer agents, *et cetera*. *Id.* ¶2(f)(1)–(5). This list is illustrative, not exclusive. *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 244 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014). As the court made clear in paragraph two of the Injunction, a participant in the payment process is *any* entity that participates with or assists the Republic in fulfilling its exchange bond obligations.

Citibank asserts that payments on the exchange bonds governed by Argentine law are "complete" when those payments reach CRYL, and thus by processing those payments after they have been transferred, Citibank is not assisting the Republic in fulfilling its payment obligations. Hr'g Tr. Mar. 3, 2015 at 24–26. This argument is unavailing. Citibank is not an exchange bondholder, but rather a financial institution that processes payments initiated by the Republic and intended for and terminating with exchange bondholders. By crediting those payments to customer accounts, including the accounts of large clearinghouses, Citibank is assisting the Republic in fulfilling its payment obligations on the exchange bonds. To rule otherwise, this court would have to adopt an overly narrow and technical reading of the term "participants," one at odds with the clear language of the Injunction and at odds with the court's intent in fashioning that Injunction.

### 3. Whether Principles of Comity Weigh in Favor of Allowing Citibank to Process Payments on the Dollar-denominated Exchange Bonds Governed by Argentine Law

Citibank argues that principles of comity weigh in favor of allowing it to process payments on the dollar-denominated exchange bonds governed by Argentine law.

In *Gucci America, Inc. v. Weixing Li*, the Court of Appeals considered whether to uphold an injunction won by luxury goods companies which froze assets in accounts of the New York branch of the Bank of China, and also purported to freeze assets in Bank of China accounts worldwide. 768 F.3d 122, 126–27 (2d Cir. 2014). The Bank of China, owned in "major part" by the Chinese government, was not incorporated or headquartered anywhere in the United States, and only a small fraction of its thousands of bank branches were located in the United States. *Id.*

The Court of Appeals held that the injunction against the defendant was valid, and operated to forbid non-parties from "assisting in its violation." *Id.* at 130. However, the Court of Appeals reasoned that before the injunction could be *enforced* against non-parties such as the Bank of China, the district court must ensure that it has personal jurisdiction or specific jurisdiction over the foreign entity. *Id.* at 134. Since the Bank of China was headquartered outside of the forum, and because its contacts with the forum appeared remote, the Court of Appeals held that the district court lacked general jurisdiction over the bank, and remanded the case to the district court to determine whether it could exercise specific jurisdiction. *Id.* at 136–37.

The *Gucci* court also suggested that district courts consider notions of comity in rendering decisions affecting sovereign interests. *Id.* at 138–39. "'Comity is . . . the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.'" *Id.* at 139 (quoting *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895)). In conducting a comity analysis, the Court of Appeals suggested that lower courts address the factors provided in § 403 of the Restatement (Third) of Foreign Relations Law. *Id.* These factors include considerations of whether the court's exercise of jurisdiction over a foreign entity is reasonable; the extent to which an activity takes place within the regulating state's territory; the importance of the regulation to the international political, legal or economic system; the other state's interest in the regulating activity; and the likelihood of conflict with regulation by another state. *See* Restatement (Third) of Foreign Relations Law § 403 (a)–(h).

The concerns over jurisdiction present in the *Gucci* case are absent here. Unlike the Bank of China, which was headquartered outside of the United States and had only minimal contacts with the forum, Citibank's global headquarters is located in New York. Citibank merely maintains a branch in Argentina. Moreover, just as in *Gucci*, this court's injunction is not directed at Citibank, but at defendant the Republic of Argentina. Third parties like Citibank are not directly enjoined, but rather indirectly prohibited from assisting the Republic in meeting its exchange bond obligations.

The court is mindful that considerations of comity play a role when deciding matters involving foreign sovereigns. *See Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014). The Republic of Argentina, as a foreign sovereign, is entitled to a degree of grace and comity. *Id.* But comity is a two-way street. The Republic, in a contract of its own signing, irrevocably acceded to the jurisdiction of United States courts for disputes arising under that contract. *See* FAA ¶ 22 ("The Republic hereby irrevocably and unconditionally waives, to the fullest extent permitted by law, any objection . . . ."). When those courts issued judgments, the Republic refused to honor them. Comity would have urged the opposite.

By observing the Injunction, Citibank asserts that it risks sanction in Argentina. However, if Citibank processes payments on exchange bonds, it violates the Injunction issued by this court. Neither option is appealing. *See* Restatement (Third) of Foreign Relations Law 403(2)(h) (referring to "the likelihood of conflict with regulation by another state."). But if Citibank's predicament is a matter of comity, it is only because the Republic has refused to observe the judgments of the court to whose jurisdiction it acceded. Comity does not suggest abrogating those judgments, or creating exceptions to the Injunction designed to enforce them. Rather, comity suggests that the Republic not penalize third parties, like Citibank, who *must* observe the orders of United States courts.

The court has long urged the Republic to participate in negotiating a resolution to the claims in this case, and has appointed a Special Master to

13

facilitate that process. The court urges the Republic, once again, to avail itself of the Special Master's services.

## Conclusion

For the reasons given above, the court denies Citibank's motion, by order to show cause, to vacate the July 28th Order.

SO ORDERED.

Dated: New York, New York
March 12, 2015

_____
Thomas P. Griesa
United States District Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/12/15
```

14