UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                        :
NML CAPITAL, LTD.,                                      :   03 Civ. 8845 (TPG)
                                                        :   05 Civ. 2434 (TPG)
                Plaintiff,                              :   06 Civ. 6466 (TPG)
                                                        :   07 Civ. 1910 (TPG)
        v.                                              :   07 Civ. 2690 (TPG)
                                                        :   07 Civ. 6563 (TPG)
THE REPUBLIC OF ARGENTINA,                              :   08 Civ. 2541 (TPG)
                                                        :   08 Civ. 3302 (TPG)
                Defendant.                              :   08 Civ. 6978 (TPG)
                                                        :   09 Civ. 1707 (TPG)
                                                        :   09 Civ. 1708 (TPG)
                                                        :
--------------------------------------------------------x


### MEMORANDUM OF LAW IN SUPPORT OF NML CAPITAL, LTD.'S MOTION FOR DISCOVERY SANCTIONS


DECHERT LLP                          GIBSON, DUNN & CRUTCHER LLP

Robert A. Cohen                      Theodore B. Olson
Debra D. O'Gorman                    Matthew D. McGill
Collin F. Hessney                    Jason J. Mendro
1095 Avenue of the Americas          Christopher B. Leach
New York, N.Y. 10036                 1050 Connecticut Avenue, N.W.
Telephone:    212.698.3500           Washington, D.C. 20036
Facsimile:    212.698.3599           Telephone:    202.955.8500
                                     Facsimile:    202.467.0539

*Attorneys for Plaintiff NML Capital, Ltd.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................2

    A.    NML Serves Discovery Requests Regarding Argentina's Assets And Alter Egos.................................................................................................................2

    B.    The District Court Issues The Discovery Order, Ordering Argentina To Comply With The Discovery Requests.....................................................................3

    C.    The Supreme Court Rejects Argentina's Claim Of Immunity From Discovery. .........................................................................................................4

    D.    The Second Circuit Affirms The Discovery Order...................................................5

    E.    Argentina Refuses To Comply With The Affirmed Discovery Order....................6

ARGUMENT ............................................................................................................7

    A.    Argentina Has Willfully Violated The Discovery Order Since Its Issuance In 2013. ........................................................................................................8

    B.    Argentina's Misconduct Warrants Sanctions........................................................9

        1.    The Court Should Preclude Argentina From Contesting NML's Alter-Ego Claims And From Asserting Immunities, And It Should Rule that NML Has Established Facts That It Sought To Prove Through Discovery. .......................................................11

        2.    This Court Should Deem Argentina's Privileges Against Production, Including The Attorney-Client Privilege, Waived Because Argentina Failed To Produce A Privilege Log. ...................................................................................................16

        3.    This Court Must, Pursuant To Rule 37(b)(2)(C), Order Argentina And Its Attorneys To Compensate NML For The Cost Of Securing Argentina's Compliance With The Discovery Order...............................................................................18

CONCLUSION.........................................................................................................21

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adrian Shipholding Inc. v. Lawndale Grp. S.A.*,
   No. 08 Civ. 11124, 2012 WL 104939 (S.D.N.Y. Jan. 13, 2012),
   *report and recommendation adopted*, 2012 WL 407475 (S.D.N.Y. Feb. 9, 2012)................. 13

*Aurelius Capital Master, Ltd. v. Republic of Argentina*,
   No. 13-4054, 2014 WL 7272279 (2d Cir. Dec. 23, 2014)........................... 5, 6, 8, 9, 10, 17, 19

*Aurelius Capital Partners, LP v. Republic of Argentina*,
   No. 07-cv-2715(TPG) (S.D.N.Y. May 29, 2009).................................................... 2

*Bobal v. Rensselaer Polytechnic Inst.*,
   916 F.2d 759 (2d Cir.1990) ...................................................................... 9

*Burgie v. Euro Brokers, Inc.*,
   05 CIV. 968, 2006 WL 845400 (E.D.N.Y. Mar. 30, 2006),
   *aff'd* 05 CIV. 0968, 2007 WL 1704178 (E.D.N.Y. June 12, 2007) ....................................... 20

*Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*,
   425 F. Supp. 234 (S.D.N.Y. 1977) ................................................................ 20

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
   602 F.2d 1062 (2d Cir. 1979) .................................................................. 18

*Daval Steel Prods. v. M/V Fakredine*,
   951 F.2d 1357 (2d Cir. 1991) .......................................................... 7, 9, 11, 12, 18

*Dimensional Sound, Inc. v. Rutgers University*,
   No. 92 Civ. 2350, 1996 WL 11244 (S.D.N.Y. Jan. 10, 1996) ................................. 18

*EM Ltd. v. Republic of Argentina*,
   695 F.3d 201 (2d Cir. 2012) .................................................................. 3

*FDIC v. Connor*,
   20 F.3d 1376 (5th Cir. 1994) ................................................................. 20

*FG Hemisphere Associates, L.L.C. v. Republique Du Congo*,
   No. 01 CIV. 8700, 2005 WL 545218 (S.D.N.Y. Mar. 8, 2005) .............................. 17

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
   603 F. Supp. 2d 1 (D.D.C. 2009),
   *aff'd FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
   637 F.3d 373 (D.C. Cir. 2011).............................................................. 21

*Flaherty v. Filardi*,
    No. 03 CIV. 2167, 2009 WL 3762305 (S.D.N.Y. Nov. 10, 2009) ........................................... 20

*Funnekotter v. Republic of Zimbabwe*,
    No. 09 Civ. 08168, 2011 WL 5517860 (S.D.N.Y. Nov. 10, 2011) .......................................... 12

*In re 650 Fifth Ave. & Related Properties*,
    No. 08 CIV. 10934, 2013 WL 4774720 (S.D.N.Y. Sept. 4, 2013) ........................................... 18

*In re Sept. 11th Liab. Ins. Coverage Cases*,
    243 F.R.D. 114 (S.D.N.Y. 2007) ............................................................................................. 14

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) ................................................................................................ 13, 14, 15

*Kim v. Kum Gang, Inc.*,
    No. 12 CIV. 6344, 2014 WL 2081775 (S.D.N.Y. May 12, 2014) ........................................... 19

*Klein v. Torrey Point Group, LLC*,
    979 F. Supp. 2d 417 (S.D.N.Y. 2013) ..................................................................................... 19

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998),
    *overruled on other grounds*, *Rotella v. Wood*,
    528 U.S. 549 (2000) ................................................................................................................ 14

*Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*,
    No. 02-cv-795, 2005 WL 1026461 (S.D.N.Y. May 2, 2005) .................................................. 15

*McNamee v. Clemens*,
    No. 09 CIV. 1647, 2014 WL 1338720 (E.D.N.Y. Apr. 2, 2014) ........................................... 16

*Metro Found. Contractors, Inc. v. Arch Ins. Co.*,
    No. 09 CIV 6796, 2011 WL 70561 (S.D.N.Y. Jan. 6, 2011) .................................................. 19

*Nat'l Hockey League v. Met. Hockey Club, Inc.*,
    427 U.S. 639 (1976) .................................................................................................................. 9

*NML Capital, Ltd. v. Republic of Argentina*,
    727 F.3d 230 (2d Cir. 2013) ..................................................................................................... 5

*NML Capital, Ltd. v. Republic of Argentina*,
    No. 08-cv-6978 (TPG) (S.D.N.Y. Sept. 29, 2014) ................................................................ 10

*Nnebe v. Daus*,
    No. 06 CIV. 4991, 2007 WL 1310140 (S.D.N.Y. May 3, 2007) ........................................... 16

*Novak v. Wolpoff & Abramson LLP*,
  536 F.3d 175 (2d Cir. 2008) ................................................................. 18

*Pension Comm'n of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  685 F. Supp. 2d 456 (S.D.N.Y. 2010),
  *abrogated on other grounds by Chin v. Port Authority of New York & New Jersey*,
  685 F. 3d 135 (2d Cir. 2012) ................................................................. 10

*Reilly v. Natwest Markets Group Inc.*,
  181 F.3d 253 (2d Cir. 1999) ................................................................. 9

*Republic of Argentina v. NML Capital, Ltd.*,
  134 S. Ct. 2250 (2014).................................................. 4, 5, 9, 10, 14, 20

*Republic of Austria v. Altmann*,
  541 U.S. 677 (2004) ................................................................. 9

*S.E.C. v. Syndicated Food Serv. Int'l, Inc.*,
  No. 04 Civ. 1303, 2014 WL 1311442 (E.D.N.Y. Mar. 28, 2014) ......................... 11

*S.E.C. v. Yorkville Advisors, LLC*,
  300 F.R.D. 152 (S.D.N.Y. 2014) ................................................................. 16

*Sang Lan v. Time Warner, Inc.*,
  No. 11 CIV. 2870, 2015 WL 480378 (S.D.N.Y. Feb. 5, 2015)........................... 19

*Servaas Inc. v. Republic of Iraq*,
  No. 09 CIV. 1862, 2014 WL 279507 (S.D.N.Y. Jan. 24, 2014) ......................... 20

*Short v. Manhattan Apartments, Inc.*,
  286 F.R.D. 248 (S.D.N.Y. 2012).................................................................. 19

*Silva v. Cofresi*,
  No. 13 CIV. 3200, 2014 WL 3809095 (S.D.N.Y. Aug. 1, 2014)........................... 19

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
  118 F.3d 955 (2d Cir. 1997) ................................................................. 11

*Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*,
  No. 10 CIV. 5256, 2011 WL 4111504 (S.D.N.Y. Sept. 13, 2011)..................... 20, 21

*Vaccaro v. Waterfront Homes Marina*,
  No. 10 Civ. 4288, 2011 WL 5980997 (S.D.N.Y. Nov. 30, 2011)........................... 11

**Statutes**

28 U.S.C. § 1610................................................................................. 13

iv

**Rules**

Fed. R. Civ. P. 26 ...................................................................................................................... 16

Fed. R. Civ. P. 26(b)(5) ........................................................................................................... 16

Fed. R. Civ. P. 37(b)(2) ......................................................................................................... 7, 21

Fed. R. Civ. P. 37(b)(2)(A)(i) ................................................................................................. 8, 13

Fed. R. Civ. P. 37(b)(2)(A)(ii) ........................................................................................ 8, 11, 12, 13

Fed. R. Civ. P. 37(b)(2)(C) ..................................................................................................... 8, 18

Local Civil Rule 26.2(a)(2)(A) ................................................................................................ 16

## PRELIMINARY STATEMENT

The Republic of Argentina ("Argentina") should be sanctioned under Rule 37 of the Federal Rules of Civil Procedure for willfully disregarding this Court's September 25, 2013 order compelling it to produce discovery (the "Discovery Order").  The Discovery Order's terms were clear:  Argentina was obliged to produce documents and respond to interrogatories propounded by Plaintiff NML Capital, Ltd. ("NML"), except as to one discrete topic.  The Second Circuit unambiguously affirmed that Discovery Order "in all respects."  Argentina has nonetheless willfully and resolutely refused to comply.  Instead, it has stubbornly persisted in its refusal to produce *any* documents or to answer *any* of NML's interrogatories.

This Court has wide discretion to craft sanctions under Rule 37.  Under the circumstances here—where Argentina has deliberately obstructed NML's efforts to learn information necessary to locate attachable assets and to demonstrate that certain instrumentalities of Argentina are its alter egos—this Court should prohibit Argentina from contesting the facts that NML sought to prove through this discovery and rule that NML has established those facts.  Specifically, this Court should prohibit Argentina from contesting that its property is being used for a commercial activity in the United States whenever NML relies on any of 28 U.S.C. § 1610(a)'s exceptions to immunity from attachment or execution, and from contesting that three purportedly separate entities are alter egos of Argentina; this Court further should find outright that Argentina's property in the United States is being used for a commercial activity in the United States and that those three entities are Argentina's alter egos.  Additionally, as a sanction for Argentina's abusive and unfounded assertions of privilege from discovery, this Court should enter an order deeming Argentina to have waived any privilege that might otherwise excuse it from producing documents responsive to NML's discovery request.  Finally, this Court should order Argentina and its counsel to compensate NML for the expense, including attorneys' fees, of bringing

Argentina into compliance with the Discovery Order.  These sanctions are appropriate in the circumstances presented here, where Argentina persistently has defied unambiguous binding discovery orders.

## BACKGROUND

**A.     NML Serves Discovery Requests Regarding Argentina's Assets And Alter Egos.**

NML holds judgments against Argentina worth $1.8 billion in connection with Argentina's failure to pay principal and interest on bonds that it issued prior to its 2001 default. As this Court is aware, Argentina refuses to honor those judgments and NML has spent more than a decade searching for assets to satisfy them.  To locate such assets, NML has sought discovery—discovery that Argentina has ignored or resisted.[1]

This motion concerns discovery requests that NML served on August 14, 2012.  NML served Interrogatories and Document Requests (the "Requests") to Argentina seeking two categories of information.  First, the Requests sought information concerning Argentina's assets:

- "accounts maintained inside the United States in whole or in part in the name of Argentina";

- "commercial or standby letters of credit in which Argentina is listed as the applicant or beneficiary";

- "any outstanding loans . . . for which Argentina is listed as the borrower or guarantor";

- "any asset or property of any kind whatsoever located in whole or in part inside the United States, which Argentina owns directly or indirectly"; and

- "any asset or property of any kind whatsoever located in whole or in part inside the United States, which Administración Nacional de Seguridad Social ("ANSES") owns directly or indirectly."

---

[1]   Indeed, this Court has previously held Argentina in contempt for failing to obey discovery orders.  *See* Order *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07-cv-2715 (TPG) (S.D.N.Y. May 29, 2009).

Cohen Decl. Ex. A, at 6-7.[2]

Second, the Requests sought information about Argentina's relationships with certain entities that may be Argentina's alter egos, the assets of which may be available to satisfy NML's judgments.  These entities are *Banco Central de la República Argentina* ("BCRA"), *Banco de la Nación Argentina* ("BNA"), *Energía Argentina Sociedad Anónima* ("ENARSA"), and *Yacimientos Petroliferos Fiscales* ("YPF").  The Requests seek information concerning, among other things, the internal organization of the alter egos and their relationships with Argentina and with one another; the circumstances under which Argentina is responsible for the obligations of the alter egos and vice versa; Argentina's role in determining the policies of the alter egos; and Argentina's role in reviewing, negotiating, approving, guaranteeing, and/or paying the obligations of the alter egos.  *Id.* at 7-10.

**B.    The District Court Issues The Discovery Order, Ordering Argentina To Comply With The Discovery Requests.**

As detailed in NML's June 2013 motion to compel (D.E. 552), Argentina served written Responses and Objections on September 27, 2012, largely refusing to comply with NML's Requests.  Argentina insisted that it was not required to disclose information related to assets it believes are immune from execution under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "FSIA"), despite a then-recent decision from the U.S. Court of Appeals for the Second Circuit holding that the FSIA did not immunize Argentina against post-judgment discovery, *see EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012).  Cohen Decl. Ex. B, at 4-5 (General Objection No. 12).  Argentina also refused to produce documents regarding its relationship with the alter ego entities on the basis of its assertion that those entities were not its alter egos.  *Id.* at 3 (General Objection No. 8).

---

[2]  Citations to "Cohen Decl." refer to the Declaration of Robert A. Cohen filed concurrently with this memorandum of law.

On September 3, 2013, this Court held a hearing and observed that NML's discovery "has surely been refined in response to what has gone on with the Court" and "reasonably reflect[s] the facts of this case." Cohen Decl. Ex. C, at 31:16-21. On September 25, 2013, this Court issued an order (the "Discovery Order") providing, in relevant part:

> 1. The NML Motion to Compel is granted, and the Republic's NML Motion is denied, except that the Republic need not provide information regarding BNA in response to the alter ego sections of the NML Requests.
>
> * * *
>
> 4. The Republic shall produce all information responsive to the NML Requests . . . within 30 days of the date of this Order [*i.e.*, October 25, 2013].

Cohen Decl. Ex. D, at 5-6 (also available at D.E. 564).

Rather than comply with the Discovery Order—and without seeking a stay of discovery—Argentina appealed from the Discovery Order.

## C.     The Supreme Court Rejects Argentina's Claim Of Immunity From Discovery.

The Second Circuit delayed oral argument while the U.S. Supreme Court considered a different case in which Argentina has asserted that the FSIA prohibited certain post-judgment discovery. In June 2014, the Court issued its decision in *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014) ("*NML*"), rejecting Argentina's claim to immunity from post-judgment discovery. In that case, NML and other creditors had issued subpoenas to third-party banks seeking information regarding Argentina's financial assets; Argentina moved to quash the subpoenas (and opposed NML's motion to compel) on the ground that the FSIA rendered a foreign sovereign immune from discovery about all assets except those established to be attachable by a U.S. court. *Id.* at 2254. Argentina appealed from this Court's order compelling the discovery, lost before the Second Circuit, and sought review by the Supreme Court, which affirmed the Second Circuit's decision. *Id.* The Supreme Court explained that, because the

4

FSIA is silent as to a foreign sovereign's immunity from discovery, a foreign sovereign that consents to the jurisdiction of U.S. courts is not immune from post-judgment discovery. *Id.* at 2257.

**D.    The Second Circuit Affirms The Discovery Order.**

After the Supreme Court issued *NML*, the court of appeals calendared Argentina's appeal from the Discovery Order for oral argument. At the outset of oral argument—recalling Argentina's counsel's promise that Argentina would not "voluntarily obey" the *pari passu* injunction this Court has issued, *see NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 238 (2d Cir. 2013), *cert denied*, 134 S. Ct. 2819 (2014)—a member of the panel asked Argentina's counsel, if the Court "affirm[s] Judge Griesa's rulings, are you and your clients going to obey the order?" Cohen Decl. Ex. E, at 3. Counsel responded: "I can't answer that standing here today. I don't have instructions on that." *Id.* at 3-4.

On December 23, 2014, the Second Circuit issued a summary order affirming the Discovery Order. *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16 (2d Cir. 2014) ("*Aurelius*"). After noting that the Federal Rules of Civil Procedure permit "broad post-judgment discovery in aid of execution," the Second Circuit rejected each of Argentina's specific objections to the Discovery Order: First, the FSIA does not "prohibit[] discovery of sovereign property that is potentially immune from attachment." *Id.* at 17 (citing *NML*, 134 S. Ct. at 2250). Second, two international treaties that protect attachment of diplomatic property and discovery of diplomatic documents did not provide blanket immunity from discovery based solely on Argentina's "self-serving legal assertion" of immunity. *Id.* (internal quotation marks omitted). If Argentina wishes to withhold particular documents, the Second Circuit explained, "Argentina should present its objections to the district court in the form of assertions of privilege or inviolability" through "particularized claims" of privilege. *Id*. at 17-18. Third, the court

rejected similar arguments that NML could not seek discovery about assets held in the name of military agencies or instrumentalities. *Id.* at 18. The court suggested that "modify[ing] usual [*in camera*] procedures to accommodate" future privilege claims regarding specific documents would alleviate such concerns. *Id.* Finally, the court of appeals concluded that this Court did not abuse its discretion in ordering discovery with respect to potential alter egos. *Id.*

After explaining the grounds for affirming the Discovery Order "in all respects," the Second Circuit noted that "Argentina—like all foreign sovereigns—is entitled to a degree of grace and comity. These considerations are of particular weight when it comes to a foreign sovereign's diplomatic and military affairs." *Id.* (citation omitted). Accordingly, the Court of Appeals instructed this Court to "closely consider Argentina's sovereign interests in managing discovery, and to prioritize discovery of those documents that are unlikely to prove invasive of sovereign dignity." *Id.*

**E.      Argentina Refuses To Comply With The Affirmed Discovery Order.**

After the mandate returned to this Court, on January 23, 2015, NML sent Argentina a letter demanding the discovery that the Discovery Order obliged Argentina to produce. Cohen Decl. Ex. F. NML's letter "ask[ed] that Argentina prioritize its production to first provide information that is readily available to it and not subject to any legitimate claim of privilege." *Id.* at 3. NML noted, however, that it would "seek an order holding Argentina in contempt and for sanctions in the event that Argentina does not commence its document production within ten days of [the] letter and complete the production (including the provision of a log to the extent documents are withheld on a claim of privilege) expeditiously." *Id.* at 4.

In response, Argentina again refused to produce any responsive documents based on vague assertions of privilege. In a letter dated January 30, 2015, Argentina cited the Second Circuit's instruction that "the district court . . . closely consider Argentina's sovereign interests in

managing discovery, and to prioritize discovery of those documents that are unlikely to prove invasive of sovereign dignity," and accused NML of "hav[ing] made no attempt to tailor [its] discovery requests in light of the Second Circuit's admonishment."  Cohen Decl. Ex. G, at 1. Argentina thus made clear that it was withholding documents in reliance not only on privilege, *id.* at 2 ("the Republic's privileged documents, which of course are exempt from discovery"), but also on its belief that "[g]race and comity require actual revision to plaintiffs' discovery requests," *id.* (internal quotation marks omitted).

The parties met and conferred regarding this issue on February 6, 2015, and Argentina again signaled that it would refuse to produce any documents.  On February 17, 2015, after receiving no further response, NML's counsel again queried Argentina's counsel regarding "its intention to produce any additional documents or information in response to the discovery served by NML and by Aurelius/Blue Angel and, if so, what and when it intends to make the production."  Cohen Decl. Ex. H.  Argentina responded to this email with a promise to "aim to have a response to you by later this week or early next week."  Cohen Decl. Ex. I.  There has been no further response from Argentina, and Argentina still refuses to produce discovery as required by the Discovery Order.

**ARGUMENT**

Rule 37 of the Federal Rules of Civil Procedure authorizes sanctions against a party that "fails to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2).  "Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order."  *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991).  Once a violation is established, Rule 37 specifies several permissible sanctions, including:  "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the

prevailing party claims," or "prohibiting the disobedient party from supporting or opposing designated claims or defenses."  Fed. R. Civ. P. 37(b)(2)(A)(i), (ii).  In addition to (or instead of) issuing such sanctions, Rule 37(b) obliges this Court to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey a court order], unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

A.      **Argentina Has Willfully Violated The Discovery Order Since Its Issuance In 2013.**

This Court should sanction Argentina.  Argentina's conduct certainly satisfies the threshold requirement for Rule 37 sanctions—it has violated the Discovery Order.  NML served its discovery requests in 2012, and Argentina refused to comply from the outset.  As entered, the Discovery Order obliged Argentina to produce documents in response to each of NML's discovery demands and to answer each of NML's interrogatories, except for Requests going to the allegation that BNA is an alter ego of Argentina.  Cohen Decl. Ex. D, at 5.  That Order was never stayed.  The Second Circuit affirmed the Discovery Order "in all respects," concluding that this Court did not abuse its discretion and rejecting each of Argentina's blanket assertions of immunity against the discovery sought.  *Aurelius*, 589 F. App'x at 18.  Yet, when asked to produce documents and answer interrogatories in accordance with the now-affirmed Discovery Order, Argentina has refused to comply.  *See* Cohen Decl. Ex. G (letter from Argentina refusing to comply with discovery request).

In its January 30, 2015 letter, Argentina asserted that the Discovery Order no longer binds Argentina because the Second Circuit's decision "admonish[ed]" this Court "to closely consider Argentina's sovereign interests in managing discovery."  Cohen Decl. Ex. G at 1 (quoting *Aurelius Capital*, 589 F. App'x at 18).  Argentina is wrong.  The Second Circuit was unequivocal as to its holding:  it "affirm[ed] the district court's order in all respects."  *Aurelius*

*Capital*, 589 F. App'x at 18.  It did not remand for further consideration of the Discovery Order. The Discovery Order is thus fully operative and binding on Argentina.  Instead, the Second Circuit's decision makes clear that its instruction regarding "Argentina's sovereign interests" would not affect the propriety of the Discovery Order itself, but only proceedings regarding disputes that may occur once Argentina has complied with the Order.[3]  For example, the Second Circuit explained that this Court might need to deviate from standard *in camera* review practices in an "effective and respectful" manner if Argentina asserts privilege over specific documents. *See id.*  These instructions regarding future proceedings thus did not relieve Argentina of its obligation to comply with the Discovery Order, which Argentina has unquestionably violated.

**B.      Argentina's Misconduct Warrants Sanctions.**

Whether acting pursuant to Rule 37 or its inherent authority, this Court has "wide discretion in imposing sanctions, including severe sanctions."  *Daval Steel*, 951 F.2d at 1365; *see also Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."); *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir.1990).  The purpose of such sanctions is to "penalize recalcitrant parties and deter others from similar conduct."  *Daval Steel*, 951 F.2d at 1365 (citing *Nat'l Hockey League v. Met. Hockey Club, Inc.,* 427 U.S. 639, 642 (1976) (per curiam)).  Severe sanctions are appropriate "[w]hen a party seeks to frustrate [the discovery process] by disobeying orders, thereby preventing disclosure of facts essential to an adjudication on the merits."  *Id.*

---

[3]  Indeed, the Second Circuit's remark may have been designed to entice Argentina to comply with the district court's order.  At oral argument, members of the Second Circuit panel asked Argentina's counsel whether Argentina "would comply" with the court's eventual decision "if it is a sufficiently sensitive opinion." Ex. E at 35.  Argentina's counsel responded "I think there is no doubt that a more sensitive opinion is, in this case, a more effective opinion.  It really is, Your Honor." *Id.*

Although there are no uniform standards for determining what conduct is sanctionable, courts generally require that the sanctioned party have a "culpable mental state" akin to "bad faith." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 467, 470 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Authority of New York & New Jersey*, 685 F. 3d 135 (2d Cir. 2012).  Argentina easily satisfies this standard, because it has willfully and obdurately refused to comply with discovery orders of the Court that are clear and unequivocal.  This Court's Discovery Order, in force since its issuance in 2013, was unambiguous:  NML's motion to compel was granted and Argentina was required to produce the discovery NML had requested (except for discovery relating to allegations that BNA is an alter ego).  The Second Circuit's decision was equally clear:  The Discovery Order was "affirmed in all respects."  *Aurelius*, 589 F. App'x at 18.  The Supreme Court, moreover, has rejected conclusively the contention at the core of Argentina's refusal to participate in discovery—that, as a foreign sovereign, it is immune from providing discovery that it would rather not provide.  *See NML*, 134 S. Ct. at 2257-58.[4]

As a result, NML respectfully requests that the Court sanction Argentina by: (1) prohibiting Argentina from raising certain defenses or arguments that NML sought discovery to rebut and rule that NML has established the facts that it set out to prove through that discovery; (2) deem waived any privilege that might have excused Argentina from producing documents responsive to NML's discovery requests; and (3) awarding attorneys' fees to compensate NML for the cost of bringing Argentina into compliance with the Discovery Order.

---

[4]  Argentina's bad faith is not confined merely to its discovery practices.  For example, Argentina has repeatedly violated the Court's *pari passu* Injunctions, and was recently held in contempt for its misconduct.  Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08-cv-6978 (TPG) (S.D.N.Y. Sept. 29, 2014).

1.      **The Court Should Preclude Argentina From Contesting NML's Alter-Ego Claims And From Asserting Immunities, And It Should Rule that NML Has Established Facts That It Sought To Prove Through Discovery.**

a.      This Court should preclude Argentina from opposing NML's alter-ego claims and from claiming immunity from attachment of its property.  Rule 37(b) permits courts to preclude a party who "fails to obey an order to provide or permit discovery" from "supporting or opposing designated claims or defenses."  Fed. R. Civ. P. 37(b)(2)(A)(ii); *see Daval Steel*, 951 F.2d at 1367; *Vaccaro v. Waterfront Homes Marina*, No. 10 Civ. 4288, 2011 WL 5980997, at *3 (S.D.N.Y. Nov. 30, 2011).  A preclusion order may be "strong medicine," but "such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators."  *Daval Steel*, 951 F.2d at 1367.

In deciding whether to issue a preclusion order as a discovery sanction, courts consider "'(1) the [offending] party's explanation for the failure to comply with the discovery order; (2) the importance of the . . . precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance.'"  *S.E.C. v. Syndicated Food Serv. Int'l, Inc.*, No. 04 Civ. 1303, 2014 WL 1311442, at *4 (E.D.N.Y. Mar. 28, 2014) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)).

The facts here amply justify a preclusion order:  Argentina has advanced no plausible basis for its refusal to obey the Discovery Order.  The information sought by NML is important, as it goes directly to the core of its alter-ego claims and could answer whether there is property in the United States that is being used in a commercial activity that could satisfy the judgments against Argentina.  Indeed, Argentina's failure to participate in discovery is all the more galling because it is Argentina's persistent refusal to honor this Court's judgments that necessitated

11

NML's discovery efforts in the first place.  Argentina has more than earned these proposed sanctions.

As to the precise contours of an appropriate preclusion order, this Court is guided by two considerations:  the preclusion must be "just" and it must "relate to the particular claim to which the discovery order was addressed."  *Daval Steel*, 951 F.2d at 1366.  Under this standard, this Court can preclude Argentina from asserting arguments that NML would have had the opportunity to prove but for Argentina's refusal to obey the Discovery Order.  Accordingly, NML respectfully requests preclusion in two distinct areas.

*First*, this Court should preclude Argentina from presenting evidence on or opposing the claim that BCRA, ENARSA, or YPF are its alter egos.  NML's discovery requests sought information that would help determine whether those entities are Argentina's alter egos.  Because Argentina has for years thwarted this inquiry by willfully withholding information that goes to the heart of the alter-ego question, preclusion on that issue is just here.  Courts in this Circuit have entered similar rulings against foreign governments.  For example, in *Funnekotter v. Republic of Zimbabwe*, No. 09 Civ. 08168, 2011 WL 5517860 (S.D.N.Y. Nov. 10, 2011), the district court sanctioned the Republic of Zimbabwe under Rule 37 by prohibiting Zimbabwe from denying its alter-ego relationship with certain commercial entities where Zimbabwe failed to comply with court-ordered discovery in aid of post-judgment execution.  *Id.* at *4; *see also Daval Steel*, 951 F.2d at 1363 (holding that preclusion, under Rule 37(b)(2)(A)(ii), of corporation from presenting evidence on issue of alter-ego liability was warranted where corporation failed to comply with clearly articulated court order requiring specified discovery); *Adrian Shipholding Inc. v. Lawndale Grp. S.A.*, No. 08 Civ. 11124, 2012 WL 104939, at *6-8 (S.D.N.Y. Jan. 13, 2012), *report and recommendation adopted*, 2012 WL 407475 (S.D.N.Y.

Feb. 9, 2012) (precluding, under Rule 37(b)(2)(A)(ii), defendant from contesting personal jurisdiction where it failed to comply with order to prepare corporate designee for deposition to explore whether personal jurisdiction was proper).

*Second*, for precisely the same reason, this Court should preclude Argentina from arguing that its property is not being used for a commercial activity in the United States whenever NML relies on any of 28 U.S.C. § 1610(a)'s exceptions to immunity from attachment or execution. In addition to the alter-ego discovery, NML also sought information and documents regarding the location and use of Argentina's accounts and property—a fundamental right accorded to any judgment creditor. Once armed with that information, as the circumstances and evidence warranted, NML could have located Argentina's assets and attached the property that is being used for a commercial activity in the United States. *See* 28 U.S.C. § 1610. Argentina's intransigence has hampered NML's ability to locate assets and to argue that those assets are being used for a commercial activity in the United States. This Court should make clear that Argentina's misbehavior will no longer be tolerated, and bar Argentina from contesting these key points when NML eventually locates Argentine property.

        b.      The Court also should rule that NML established certain facts that it sought to prove through the discovery requests that Argentina disregarded. Rule 37 permits courts "to direct[] that the matters embraced in the [discovery] order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed R. Civ. P. 37(b)(2)(A)(i). In finding that facts have been established as a discovery sanction, the Court is guided by the same two considerations applicable to preclusion orders: the factual finding must be "just" and "related to the particular 'claim' which was at issue in order to provide discovery." *Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). The

"justness" inquiry considers whether the sanctioned party's misconduct warrants a sanction.  *Id.*
And the "relatedness" inquiry asks what the party seeking discovery sought to prove through that
discovery.  If the sanctioned party's failure to produce prevented its adversary from proving its
case, then a factual finding is appropriate.  *Id.* at 709.  The party seeking sanctions need not show
that the withheld documents are favorable or would have definitively proven the finding sought.
*Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998), *overruled on other grounds*, *Rotella*
*v. Wood*, 528 U.S. 549 (2000).  That is because, "[i]n cases involving spoliated or unavailable
evidence, the negligent or willful party bears the risk that the evidence was adverse to it."  *In re*
*Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007).

     Argentina's misconduct clearly makes the entry of factual findings "just."  Argentina has
refused to comply with the clear terms of the Discovery Order in force—an order that NML
sought only because Argentina has for more than a decade refused to honor its obligations under
NML's defaulted bonds, refused to honor lawful money judgments issued by this Court, and
obstructed NML and other creditors from learning the location of its attachable assets, a
fundamental right accorded to all judgment creditors.  *See NML*, 134 S. Ct. at 2254.  Moreover,
Argentina subjected NML to the cost of litigating Argentina's appeal from the Discovery Order,
when Argentina clearly had no intention of complying with the Discovery Order if it were
affirmed.  Sanctioning this misconduct surely is "just."

     NML's requested factual findings—which would bind Argentina in these post-judgment
enforcement proceedings—are related to the discovery that Argentina has refused to produce.
The Requests fell under two broad categories:  First, the Requests sought information to locate
assets held by Argentina, with the hope of eventually attaching them.  Second, the Requests
sought information about Argentina's control over, and involvement in the operations of, certain

entities affiliated with Argentina, with the hope of demonstrating that those entities are

Argentina's alter egos. Argentina's refusal to produce documents or provide any information

whatsoever regarding either category of information prejudices NML's ability to make its case.

Establishing these facts as true would "restor[e] the evidentiary balance" that Argentina's

intransigence has upset. *See Lyondell-Citgo Refining, LP v. Petroleos de Venezuela, S.A.*, No.

02-cv-795, 2005 WL 1026461, at *4 (S.D.N.Y. May 2, 2005).

This Court thus should take the following facts as established in these actions:

1. Argentina's property in the United States is being used for a commercial
   activity in the United States;

2. High-ranking officials of Argentina also act as high-ranking officers,
   directors, or employees of BCRA, ENARSA, and YPF, and vice versa;

3. BCRA, ENARSA, and YPF report to Argentina and act on its behalf, and
   vice versa;

4. BCRA, ENARSA, and YPF use their assets for the benefit of each other
   and the benefit of Argentina;

5. BCRA, ENARSA, and YPF are responsible for the debts and obligations
   of Argentina, and vice versa;

6. Argentina determines all the important policies of BCRA, ENARSA, and
   YPF, including policies related to borrowing, repayment of debts, interest
   rate setting, lending guidelines, monetary policy, and the accumulation of
   foreign reserves; and

7. Argentina regularly reviews, negotiates, approves, guarantees, and pays
   the debts and obligations of BCRA, ENARSA, and YPF, and vice versa.

It is of no moment that these factual findings touch on Argentina's potential immunities

under the FSIA. The Supreme Court has squarely held that, where a party engages in

sanctionable conduct that would otherwise warrant a factual finding, "[t]hat a particular legal

consequence . . . follows from this, does not in any way affect the appropriateness of the

sanction." *Ins. Corp. of Ireland*, 456 U.S. at 709 (affirming Rule 37 factual finding establishing

that the sanctioned party was subject to the district court's personal jurisdiction).  Argentina has

made its own bed when it violated the Discovery Order; this Court has ample authority to compel

Argentina to lie in it.

> **2.     This Court Should Deem Argentina's Privileges Against Production, Including The Attorney-Client Privilege, Waived Because Argentina Failed To Produce A Privilege Log.**

Argentina has attempted to frustrate NML's discovery with sweeping claims of

"privilege" that are unfounded in law and unsubstantiated by any privilege log.  This Court also

should sanction Argentina for this misconduct by deeming Argentina's asserted privileges

waived for all documents and information responsive to the Requests.

Under Federal Rule of Civil Procedure 26(b), a party who asserts privilege over

otherwise discoverable information must "(i) expressly make the claim; and (ii) describe the

nature of the documents, communications, or tangible things not produced or disclosed—and do

so in a manner that, without revealing information itself privileged or protected, will enable other

parties to assess the claim."  Fed. R. Civ. P. 26(b)(5).  Local Civil Rule 26.2(a)(2)(A) further

provides that a party who asserts privilege over a document must disclose "(i) the type of

document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the

date of the document; and (iv) the author of the document, the addressees of the document, and

any other recipients, and, where not apparent, the relationship of the author, addressees, and

recipients to each other."  Failure to produce a detailed privilege log "subjects the party to

sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege."  Fed. R. Civ. P.

26, Advisory Committee Notes (1993 Amendments, Subdivision (b)).  Indeed, courts in this

Circuit have consistently held that the unjustified failure to provide a privilege log amounts to a

waiver of privilege.  *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 167-68 (S.D.N.Y.

2014); *McNamee v. Clemens*, No. 09 CIV. 1647, 2014 WL 1338720, at *3 (E.D.N.Y. Apr. 2,

2014); *Nnebe v. Daus*, No. 06 CIV. 4991, 2007 WL 1310140, at *1 (S.D.N.Y. May 3, 2007); *FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, No. 01 CIV. 8700, 2005 WL 545218, at *5-7 (S.D.N.Y. Mar. 8, 2005).

Argentina certainly has failed to comply with Rule 26(b)(5) privilege-log requirement.  In its January 30, 2015 letter, Argentina made clear that it was refusing to produce documents based on purported privileges from discovery:  both a generic "privilege[]," apparently a reference to recognized privileges such as the attorney-client privilege; and a further (unrecognized) privilege based on the "grace and comity" to be afforded to Argentina in light of its "sovereign dignity." Cohen Decl. Ex. G, at 1 (internal quotation marks omitted).  Yet Argentina has to date declined to provide a log explaining the nature, general subject matter, or other identifying information about the withheld documents, to determine the validity of Argentina's privilege assertions.  This conduct certainly violates the Federal Rules, and moreover ignores entirely the Second Circuit's admonition that such blanket assertions of privilege are improper.  *See Aurelius*, 589 F. App'x at 17 ("Argentina should present its objections to the district court in the form of assertions of privilege or inviolability."); *id.* at 17-18 ("[I]t is entirely speculative whether documents Argentina regards as  privileged or inviolable will be responsive to appellees' discovery requests and, if so, whether appellees will persist in demanding such documents in the face of particularized claims of privilege or inviolability by Argentina.").

In light of its failure to provide a privilege log, the Court should deem waived any privilege Argentina may have had over documents and information responsive to NML's discovery request.

* * *

These are significant sanctions, but "[s]evere sanctions are justified . . . when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Daval Steel*, 951 F.2d at 1367.  Because Argentina must not be permitted to profit from its own obstinate refusal to obey this Court's Discover Order, and from further hamstringing NML's attempts to collect on lawful judgments, the sanctions sought by NML should be imposed.  *See Dimensional Sound, Inc. v. Rutgers Univ.*, No. 92 Civ. 2350, 1996 WL 11244, at *3 (S.D.N.Y. Jan. 10, 1996) ("[S]anctions are intended to ensure that a party does not benefit from its failure to comply" with a discovery request.).

3.      **This Court Must, Pursuant To Rule 37(b)(2)(C), Order Argentina And Its Attorneys To Compensate NML For The Cost Of Securing Argentina's Compliance With The Discovery Order.**

In light of Argentina's longstanding and continuous violation of the Discovery Order, Rule 37 requires that this Court compel Argentina and its counsel, Cleary Gottlieb Steen and Hamilton LLP, to pay attorney's fees and all the other costs NML incurred in its effort to bring Argentina into compliance with the Discovery Order.  Rule 37 provides:

> Instead of or in addition to [other enumerated sanctions], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).  Because cost-shifting is the "mildest" of Rule 37's sanctions, *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979), cost shifting is *mandatory* "unless one of the two exceptions—substantial justification or other circumstances—applies," *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008); *see also In re 650 Fifth Ave. & Related Properties*, No. 08 CIV. 10934, 2013 WL 4774720, at *10 (S.D.N.Y. Sept. 4, 2013).  And this "substantial justification" exception applies only if "there was a genuine dispute or if reasonable people could differ as to the appropriateness

of the contested action." *Sang Lan v. Time Warner, Inc.*, No. 11 CIV. 2870, 2015 WL 480378, at *3 (S.D.N.Y. Feb. 5, 2015) (quoting *Klein v. Torrey Point Group, LLC*, 979 F. Supp. 2d 417, 442 (S.D.N.Y. 2013)).

Neither Argentina nor its counsel can satisfy this burden.  *See Sang Lan*, 2015 WL 480378, at *3 (imposing burden of showing justification on the noncompliant party); *Silva v. Cofresi*, No. 13 CIV. 3200, 2014 WL 3809095, at *5 (S.D.N.Y. Aug. 1, 2014) (same).  There is no dispute here (genuine or otherwise) as to Argentina's obligations under the Discovery Order—the Discovery Order obliged Argentina to answer NML's interrogatories and to produce documents NML had requested; that Order was "affirm[ed] in all respects." *Aurelius*, 589 F. App'x at 18.  Nor could reasonable people differ as to the propriety of Argentina's refusal to comply with the Discovery Order, because Argentina continues to refuse to provide any discovery based on the same objections—its status as a foreign government—that the Second Circuit explicitly rejected.  *Id.* at 17.  With no justification excusing its conduct, Argentina's decision to flout the Discovery Order obliges this Court to order Argentina and its counsel to compensate NML for securing Argentina's compliance with the Discovery Order.

This fee award—in addition to the factual findings and prohibitions on raising certain arguments—would require Argentina and its counsel to pay NML's expenses in seeking Argentina's compliance with the Discovery Order.  Courts in this circuit routinely issue such orders to compensate parties for the legal fees and other expenses incurred to compel compliance with the relevant court order.  *See, e.g.*, *Sang Lan*, 2015 WL 480378, at *4; *Silva*, 2014 WL 3809095, at *6; *Kim v. Kum Gang, Inc.*, No. 12 CIV. 6344, 2014 WL 2081775, at *4 (S.D.N.Y. May 12, 2014); *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 255 (S.D.N.Y. 2012); *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, No. 09 CIV 6796, 2011 WL 70561, at *2

19

(S.D.N.Y. Jan. 6, 2011); *Flaherty v. Filardi*, No. 03 CIV. 2167, 2009 WL 3762305, at *6 (S.D.N.Y. Nov. 10, 2009); *see also, e.g.*, *Burgie v. Euro Brokers, Inc.*, 05 CIV. 968, 2006 WL 845400, at *17 (E.D.N.Y. Mar. 30, 2006), *aff'd* No. 05 CIV. 0968, 2007 WL 1704178 (E.D.N.Y. June 12, 2007) (sanctioning counsel); *Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*, 425 F. Supp. 234, 237-38 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1977) (sanctioning counsel); *FDIC v. Connor*, 20 F.3d 1376, 1382-83 (5th Cir. 1994) (affirming sanction against counsel).

Although Rule 37 obliges this Court to order Argentina and its lawyers to compensate NML for its costs incurred as a result of Argentina's decision to violate the Discovery Order, there can be no doubt that such a sanction is appropriate here. NML has spent considerable sums in its effort to force Argentina to comply with the Discovery Order precisely because the information that Argentina likely possesses will lead to additional attachable assets. Argentina's refusal to provide this information has prejudiced NML by depriving it of key tools to enforce this Court's lawful judgments. Argentina—a G-20 nation with billions of dollars of liquid currency reserves—and its counsel—a profitable global law firm—surely have sufficient funds to compensate NML for its expenses.

Argentina's status as a foreign sovereign does not prohibit this Court from ordering Argentina to compensate NML for the costs it incurred to bring Argentina into compliance with the Discovery Order. The FSIA does not explicitly prohibit Rule 37 discovery sanctions, which means that foreign sovereigns are not immune from them. *See NML*, 134 S. Ct. at 2256-57. Indeed, this Court has imposed similar sanctions on foreign governments on several occasions. *See, e.g.*, *Servaas Inc. v. Republic of Iraq*, No. 09 CIV. 1862, 2014 WL 279507, at *5 (S.D.N.Y. Jan. 24, 2014); *Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*, No. 10 CIV. 5256, 2011 WL 4111504, at *10 (S.D.N.Y. Sept. 13, 2011). Other federal

courts have relied on Rule 37 to do the same.  *See, e.g.*, *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 603 F. Supp. 2d 1, 3 (D.D.C. 2009) (imposing monetary sanctions on foreign sovereign under Rule 37(b)(2)), *aff'd*, 637 F.3d 373, 380 (D.C. Cir. 2011). This Court should treat Argentina as it would any other litigant, and sanction Argentina's misconduct.

Accordingly, NML respectfully requests that this Court order Argentina and its counsel to pay to NML (1) the attorney's fees and other costs associated with prosecuting this sanction motion, and (2) all other expenses associated with NML's efforts to bring Argentina into compliance with the Discovery Order.  *See Thai Lao Lignite*, 2011 WL 4111504, at *10 (ordering foreign sovereign to pay "the reasonable expenses and attorneys' fees Petitioners incurred as a result of [foreign sovereign's] failure to comply with [a discovery order,]" including fees and costs associated with "(1) Petitioners' efforts to obtain a response to the discovery request at issue . . . ; and (2) the sanctions motion itself"); *FG Hemisphere*, 603 F. Supp. 2d at 3 (ordering that, "pursuant to Fed. R. Civ. Pro. 37(b)(2), [the Democratic Republic of Congo] shall pay to plaintiff the reasonable expenses, including attorney's fees, plaintiff incurred in making this motion, as well as all other costs and expenses incurred by plaintiff that were caused by DRC's failure to comply with the Court's [discovery orders]").  Should this Court grant NML's motion for costs, NML would submit an itemized list of legal fees, costs, and expenses for this Court's review.  *See Thai Lao Lignite*, 2011 WL 4111504, at *10 (ordering plaintiff to "submit a fee application"); *FG Hemisphere*, 603 F. Supp. 2d at 3 (same).

## CONCLUSION

For the foregoing reasons, NML requests that this Court enter an order (1) precluding Argentina from raising the arguments set forth in Argument Section B.1.a, *supra*, and establishing facts as true as set forth in Argument Section B.1.b, *supra*; (2) deeming all of

Argentina's privileges against discovery with respect to documents responsive to the Requests waived; and (3) ordering Argentina and its counsel to compensate NML for the expense incurred in forcing Argentina to comply with the Discovery Order, in an amount to be determined by the Court.

Dated:   New York, New York
         June 17, 2015

                                        Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP             DECHERT LLP

Theodore B. Olson
Matthew D. McGill                       By:  /s/ Robert A. Cohen
Jason J. Mendro
Christopher B. Leach                    Robert A. Cohen
1050 Connecticut Avenue, N.W.           Debra D. O'Gorman
Washington, D.C. 20036                  Collin F. Hessney
Telephone:  202.955.8500                1095 Avenue of the Americas
Facsimile:  202.467.0539                New York, N.Y. 10036
                                        Telephone:  212.698.3500
                                        Facsimile:  212.698.3599

        *Attorneys for Plaintiff NML Capital, Ltd.*