

The Chrysler Building
405 Lexington Avenue, NY, NY 10174-1299
Tel: 212.554.7800    Fax: 212.554.7700
www.mosessinger.com

Philippe A. Zimmerman
Direct: 212.554.7895  Fax: 917.206.4395
pzimmerman@mosessinger.com

July 6, 2015

**VIA ECF**

Honorable Thomas P. Griesa
Daniel Patrick Moynihan
United States Courthouse
Southern District of New York
Courtroom 26B
500 Pearl Street
New York, NY 10007-1312

      Re:   *NML Capital, Ltd.  v. The Republic of Argentina*, 08 Civ. 6978 (TPG) and
           related matters
           *Aurelius Capital Master, Ltd., et al. v. The Republic of Argentina*, 09 Civ. 8757
           (TPG) and related matters
           *Aurelius Opportunities Fund II, LLC, et al. v. The Republic of Argentina*, 10
           Civ. 1602 (TPG) and related matters
           *Aurelius Capital Master, Ltd., et al. v. The Republic of Argentina*, 10 Civ. 3970
           (TPG) and related matters
           *Blue Angel Capital I LLC v. The Republic of Argentina*, 10 Civ. 4101 (TPG)
           and related matters
           *Pablo Alberto Varela, et al. v. The Republic of Argentina*, 10 Civ. 5338 (TPG)
           *Olifant Fund, Ltd. v. The Republic of Argentina*, 10 Civ. 9587 (TPG)

Dear Judge Griesa:

      We represent non-parties Deutsche Bank AG – New York branch, Deutsche Bank
Americas Holding Corp. (subpoenaed as "Deutsche Bank America Holding Corp."), Deutsche
Bank Securities Inc., Deutsche Bank Trust Company Americas and DB USA Corporation (f/k/a
Taunus Corporation) (collectively, "DB") in the above-referenced matters.  Pursuant to Rule 2(A)
of Your Honor's Individual Practices and Rule 37.2 of the Local Rules of the U.S. District Court
for the Southern District of New York, we write to request a pre-motion discovery conference in
connection with an anticipated motion: (i) to quash the subpoena duces tecum ad testifcandum,
dated May 5, 2015 (the "Subpoena"), served on DB by plaintiffs NML Capital, Ltd. and certain of
its affiliates (collectively, "NML") on their behalf and purportedly on behalf of Aurelius Capital
Master Ltd. and certain of its affiliates (collectively, "Aurelius"), Pablo Alberto Varela, et al.
("Varela"), and Olifant Fund, Ltd. ("Olifant"; together with NML, Aurelius and Varela, "Plaintiffs");
and (ii) to modify the Stipulations and Orders Governing Confidential Material (the
"Confidentiality Orders") in the above-referenced matters.  A copy of the Subpoena is attached
hereto as Exhibit A.  DB and Plaintiffs have met and conferred regarding DB's objections to the



Hon. Thomas P. Griesa
July 6, 2015
Page 2

Subpoena, including Plaintiffs' abuse of the discovery process, but have been unable to resolve Plaintiffs' objections.

Non-party DB has been served with dozens of subpoenas over the past few years related to judgments and pending actions filed against the Republic of Argentina (the "Republic"). DB has spent substantial time and expense responding in good faith to these subpoenas. It is now evident that the subpoenas being issued by NML, Aurelius and other plaintiffs are less an effort to obtain information to locate and ultimately seize attachable assets of the Republic and more a tool under the auspices of the Court to punish entities and affiliates of entities that are identified as having played a role in financial transactions with the Republic and to instigate press reports intended to suggest that such entities or their affiliates have acted illegally or otherwise improperly in being involved in such transactions— despite the fact that Your Honor and Plaintiffs have previously acknowledged that there is no general prohibition on the Republic raising capital in the financial markets.

DB submits that any doubt as to Plaintiffs' true purpose in issuing subpoenas has been removed by (1) the false statements made by NML's counsel on behalf of NML and Aurelius to the Court at an emergency hearing held on April 22, 2015, statements NML has refused to correct despite DB's repeated demands that it do so, (2) Plaintiffs' failure to properly treat information that was produced in response to subpoenas and designated as "Confidential" pursuant to the Confidentiality Orders entered in the relevant proceedings, (3) a "public notice" issued by Aurelius that threatened to "bring suit" against, among others, financial institutions that participated in an auction of BONAR 2024 bonds in Argentina that occurred in April 2015, and (4) Plaintiffs' disingenuous use, in violation of the Confidentiality Orders, of press reports, which include Confidential information that appears to have been leaked to the media, and information that was shared with other plaintiffs in filings to this Court. Evidently frustrated that their prior actions and threats have not bullied non-parties into not engaging in lawful activity with the Republic, Plaintiffs issued the Subpoena (and served similar subpoenas on other entities reputed to have purchased bonds or played a role in connection with the April 2015 BONAR 2024 auction in Argentina).

1.     In support of its request to obtain expedited discovery related to the Bonar 2024 bonds, at the April 22nd Hearing, NML's counsel, Robert Cohen of Dechert LLC, represented to the Court that there were media reports identifying an unidentified DB entity *in New York* as having subscribed to $1 billion of the BONAR 2024 bonds. NML has now confirmed that no such media reports exist. Specifically, Mr. Cohen, speaking on behalf of both NML and Aurelius, represented to Your Honor, "[w]e understand that **two banks in New York** have subscribed to this offering which is now reported to be almost one and a half billion dollars." (Transcript of Hearing of April 22, 2015 ("Tr.") at 4: 4-6, a copy of which is attached hereto as Exhibit B) (emphasis added).) After identifying DB and BBVA as the banks in New York to which he was referring, Mr. Cohen continued, "[a]nd the information we have is that Deutsche Bank has subscribed either on behalf of itself or customers for about a billion dollars of these bonds...." (Tr. at 4: 20-22.) When pressed by Your Honor to explain the discovery being requested, Mr. Cohen represented, without qualification, "Here **we know** that Deutsche Bank **in New York** is buying these bonds." (Tr. at 19: 5-6 (emphasis added).) In response to



Hon. Thomas P. Griesa
July 6, 2015
Page 3

the Court's question as to "[w]hat information do you have **about Deutsche Bank in New York**?" (Tr. at 19: 13-14) (emphasis added), Mr. Cohen stated, again without qualification, "That these are the buyers of these bonds." (Tr. at 19: 15.)  Based, at least, in part on these statements by Mr. Cohen, the Court directed DB to provide NML and Aurelius with information concerning the April BONAR 2024 auction.  As directed, and as discussed more below, on behalf of DB, I provided NML's and Aurelius' counsel with information related to the BONAR 2024 auction, which was expressly designated "Confidential."[1]

Not only were the purported representations of fact made by Mr. Cohen false, but his co-counsel for NML, Keven Reed of Quinn Emanuel, has confirmed that the represented media reports do not exist.  There were no media reports linking Deutsche Bank in New York with the BONAR 2024 auction.  Following the April 22nd Hearing, we repeatedly requested copies of the media reports and further requested that, if such reports could not be provided, NML and Aurelius immediately inform the Court that the alleged basis presented to justify expedited discovery did not exist.  These requests were made during an April 22nd meet and confer and reiterated in e-mails and telephone calls throughout April and May 2015.  On May 18, 2015, counsel for NML finally admitted during a meet and confer related to the Subpoena that no such media reports exist.  Confronted with this admission, DB immediately renewed its request that NML and Aurelius correct their misstatements to the Court.  NML and Aurelius have refused to make any corrections.

2.    DB is also aware of at least two egregious violations of the Confidentiality Orders, which further reveal Plaintiffs' actual purpose in seeking discovery.  First, on April 23, 2015, I provided counsel for NML and Aurelius with information concerning various bids placed at the BONAR 2024 auction by Deutsche Bank Argentina (SA) on behalf of Deutsche Bank AG - London Branch ("DB AG - London") for certain of its customers, whose identities were not provided.  Among the bids, I imprecisely identified a bid for $834 million of the bonds as a single bid by a single bidder at a single price.  This amount in fact referred to the aggregate amount of bids that were made at the same price by all the customers bidding through Deutsche Bank in the auction.  Shortly after that incorrect information was made available exclusively to NML and Aurelius, DB became aware of media reports in the Argentine press referring to alleged bids of US $830 and US $840 million by a single entity, Marathon Asset Management ("Marathon").  As no bid approaching US $830 or US $840 million was actually made on behalf of Marathon or any other single customer at the auction, it strongly suggests, to put it lightly, that someone with access to the incorrect information provided by DB to NML and Aurelius violated the Confidentiality Orders by leaking that information to the media.  No other credible explanation for the false press reports exists.

---

[1] Remarkably, the only support presented by NML and Aurelius of their request for expedited discovery was Mr. Cohen's oral representations to the Court.  No papers were filed with the Court or served on non-party DB or BBVA from whom discovery was demanded.  Further evidence that Plaintiffs are more interested in getting press coverage to support their efforts against the Republic than obtaining useful information, is that Plaintiffs provided DB with only about an hour's notice of the emergency hearing, while press reports of a hearing, obviously made after leaks from Plaintiffs, were circulating about 2 ½ hours before the hearing.



Hon. Thomas P. Griesa
July 6, 2015
Page 4


Second, on May 11 and 12, 2015, plaintiffs Aurelius, Olifant and NML filed Motions for Leave to Amend their Complaints with supporting declarations attaching documents produced by DB in February and March 2015, which had been marked "Confidential", and deposition testimony of Jeanmarie Genirs on behalf of DB from February 26, 2015, which was designated "Confidential."  This information was provided after NML and Aurelius orally requested and were granted an emergency hearing for expedited discovery.  The docket numbers in which expedited discovery was sought (and, for NML, pursuant to which the Court's February 25, 2015 order was issued) were only NML and Aurelius actions, including 03-cv-8845, 05-cv-2434, 06-cv-6466, 07-cv-1910, 07-cv-2690, 07-cv-6563, 08-cv-2541, 08-cv-3302, 08-cv-6978, 09-cv-1707, 09-cv-1708, 07-cv-2715, 07-cv-11327, 07-cv-2693, 10-cv-4101, 10-cv-4782, 09-cv-8757, 09-cv-10620, 10-cv-1602, 10-cv-3507, 10-cv-3970 and 10-cv-8339.  Olifant did not issue a subpoena in February and DB did not produce any information to Olifant at that time.  Nevertheless, Olifant's motion for leave to amend includes Confidential material produced by DB to NML and Aurelius, including excerpts of the Confidential deposition testimony of Ms. Genirs.  *See Olifant Fund, Ltd. v. The Republic of Argentina*, 10 Civ. 9587 (TPG), ECF No. 241.

During a meet and confer on May 18, 2015, I asked counsel for NML and Aurelius how Olifant's counsel obtained DB's Confidential material.  Counsel for NML and Aurelius refused to answer.  The next day, I received an e-mail from Olifant's lawyer, Simon Lesser, referencing my question and suggesting that his possession of the Confidential material was justified by the Court's April 22, 2015 minute order.  I responded to Mr. Lesser, asking how the Court's April 22nd direction was relevant to the documents produced by DB in February and early March.  Having not heard back from Mr. Lesser, I sent him a second e-mail on May 21, 2015, specifically requesting how and from whom Olifant obtained DB's Confidential material.  On May 26, 2015, Mr. Lesser advised me by telephone that in late February, NML's counsel, Mr. Reed, provided him with copies of the Confidential material that DB produced to NML at about that time, along with Ms. Genirs' deposition transcript.  The provision of DB's Confidential material is a clear violation of the Confidentiality Orders.  NML did not have the right to share DB's Confidential material with a plaintiff in another matter.  Under the Confidentiality Orders, access to Confidential material is restricted and may only be used in connection with the matter in which it has been produced.  Here, NML ignored the Confidentiality Orders and shared the material with Olifant, a plaintiff in another matter.

3.     The "Public Notice" issued by Aurelius in April 2015 is a transparent effort to threaten third parties that they should not have any role in connection with transactions with the Republic, even clearly legal ones.  In light of Your Honor's prior  discussion of what "evading" the "pari passu" order would mean (*see* Exhibit B at 20:23 - 21:2) and despite the fact that no credible interpretation of the Court's orders generally bars capital raising by the Republic (or financial intermediary involvement in such a transaction), Aurelius' claim that it believes that the BONAR 2024 auction was intended to "hinder, delay or defraud Aurelius" and that it intends to bring fraudulent transfer or other clams against persons that purchase such bonds (or play any role in connection with the sale of such bonds) is, as Justice Scalia recently wrote, "pure applesauce."  The Public Notice confirms that Aurelius is playing a public game of trying to intimidate parties to lawful transactions.



Hon. Thomas P. Griesa
July 6, 2015
Page 5


4.      As noted above, information that was designated by DB as Confidential appears to have been shared with both members of the press and at a minimum one other Plaintiff in violation of the Confidentiality Orders.  Remarkably, not only has plaintiff Olifant used the information that it was improperly provided in an application to this Court (*see Olifant Fund, Ltd.*, 10 Civ. 9587 (TPG), ECF No. 241), but Plaintiffs have even pointed to articles in the Argentine press, which are based on leaked information to support their applications.  See *Aurelius Capital Master, Ltd., et al. v. The Republic of Argentina*, 09 Civ. 8757 (TPG), ECF No. 580, Ex. 46; *Olifant Fund, Ltd.*, 10 Civ. 9587 (TPG), ECF No. 241, Ex. 39.


*                    *                    *


Not only should the Subpoena be quashed because of the misconduct detailed above, including NML's and Aurelius' misrepresentations to the Court, but because, by the Subpoena, Plaintiffs seeks discovery from non-parties in violation of Fed. R. Civ. P. 45 and 69 and CPLR §§ 5223 and 5224.  On May 5, 2015, Plaintiffs served the Subpoena on DB requesting, in the broadest of terms, documents, communications and testimony related to the contemplated or actual offering, purchase or sale of BONAR 2024 bonds, as well as documents, communications and testimony related to the purchase or sale of BODEN 2015 bonds.  Despite DB's prior productions of information related to the BONAR 2024 bonds, and despite the fact that DB has even been subjected to a Fed. R. Civ. P. 30(b)(6) deposition related to the BONAR 2024 bonds, the Subpoena demanded that DB produce documents on or before May 19, 2015, and a witness for deposition on May 22, 2015.  On May 15, 2015, Plaintiffs agreed to extend DB's time to produce documents until June 2, 2015 and adjourned the deposition until June 9, 2015.  The deadlines have been extended several times to permit the parties to meet and confer.  Unfortunately, it is now clear that Plaintiffs will not agree to any meaningful limitations on the Subpoena or to otherwise protect DB from Plaintiffs' violations of the Confidentiality Orders, which are discussed above.

Pursuant to Fed. R. Civ. P. 45(d)(3)(iv), a court "must quash or modify a subpoena that … subjects a person to undue burden."  The Subpoena is clearly unduly burdensome to the extent it is duplicative of (i) the February 9, 2015 subpoena served on DB by plaintiff NML; (ii) the Court's Order, dated February 25, 2015; (iii) the February 26, 2015 subpoena served on DB by plaintiff Aurelius, all of which relate to the purchase and sale of the BONAR 2024 bonds; and (iv) the Court's direction that DB provide NML and Aurelius with certain information on April 22, 2015.  See, e.g., *AP Links, LLC v. Russ*, 299 F.R.D. 7, 14 (E.D.N.Y. 2014) (subpoena requests regarding invoices of non-party attorney were duplicative, and thus such subpoena would be quashed, since law firm already provided court with non-party attorney's unredacted invoices pursuant to court order); *Asset Value Fund Ltd. P'ship v. Care Grp., Inc.*, No. 97 CIV. 1487 (DLC)(JCF), 1997 WL 706320, at *9 (S.D.N.Y. Nov. 12, 1997) ("A court may quash discovery requests that are unreasonably duplicative or cumulative.").  Indeed, DB has already produced 2,920 pages of documents and a witness for deposition (Jeanmarie Genirs) related to the contemplated purchase and sale of the BONAR 2024 bonds.  Prior to the issuance of the current Subpoena, NML and Aurelius never indicated that DB's production was incomplete nor



Hon. Thomas P. Griesa
July 6, 2015
Page 6

sought a meet and confer concerning the completeness of DB's production or testimony.  In addition, following the Court's April 22, 2015 hearing on NML and Aurelius' request for expedited discovery related to an auction of the BONAR 2024 bonds (the "April 22nd Hearing"), on April 23, 2015, DB's counsel orally provided NML's and Aurelius' counsel with detailed information concerning the BONAR 2024 bonds, including the anticipated flow of funds as understood by DB and information concerning the amounts of various bids that had been made, and sent an email to NML's and Aurelius' counsel further discussing the bidding process.  Plaintiffs' offer during the parties' meet and confer to "excuse" DB from producing previously provided information was hardly a meaningful narrowing of the Subpoena sufficient to remedy the Subpoena's undue burden.

Pursuant to Fed. R. Civ. P. 69, "[a] judgment creditor ... may obtain discovery … as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).  The procedure for enforcing judgments in New York State is found in Article 52 of the CPLR.  CPLR § 5223 speaks to post-judgment disclosure and provides that "[a]t any time before a judgment is satisfied or vacated, the judgment creditor may compel disclosure of all matter *relevant to the satisfaction of the judgment*, by serving upon any person a subpoena...." CPLR § 5223 (emphasis added).  "[I]nformation subpoenas, served on an individual or entity other than the judgment debtor, may be served on an individual, corporation, partnership or sole proprietorship only if the judgment creditor or the judgment creditor's attorney has a *reasonable belief* that the party receiving the subpoena has in their possession information about the debtor that will assist the creditor in collecting his or her judgment."  CPLR § 5224 (emphasis added). Further, CPLR § 5224 requires information subpoenas to be accompanied by a certification stating that the judgment creditor or his or her attorney possess the requisite reasonable belief. *See* CPLR § 5224.

Plaintiffs have not demonstrated and cannot demonstrate a reasonable belief that this most recent discovery attempt will lead to relevant information pertaining to the Republic's attachable assets.  Not surprisingly, the Subpoena lacks the requisite certification that any of Plaintiffs or their counsel have such a reasonable belief.  Rather, the fact that all of the documents produced to date concerning the BONAR 2024 bonds (and otherwise) have not led to the discovery of material attachable assets underscores that Plaintiffs' true motivation is not discovery of relevant information but harassment of financial intermediaries.

Even assuming, *arguendo*, that Plaintiffs had not abused the discovery process and were not motivated by an improper purpose, the Subpoena is the most recent voyage on a long-running fishing expedition consisting of numerous subpoenas from NML and Aurelius to DB (and other non-parties) seeking discovery in the broadest of terms.  Notwithstanding Your Honor's endorsement of broad discovery in this and related matters, while a judgment creditor is permitted to look for assets, "[t]hat is not to say … that the plaintiff may embark on a fishing expedition."  *D'Avenza S.p.A. in Bankruptcy v. Garrick & Co., Ltd.*, No. 96 CIV. 0166 (DLC)(KNF), 1998 WL 13844, at *3 (S.D.N.Y. Jan. 15, 1998) (finding discovery requests overbroad and modifying requests to permit disclosure of only those documents which appeared to be reasonably related to ascertaining the status or whereabouts of judgment debtor's assets). *See also Rossini v. Republic of Argentina*, 453 Fed.Appx. 22, 24-25 (2d Cir. 2011) ("It is not an



Hon. Thomas P. Griesa
July 6, 2015
Page 7

abuse of discretion to limit discovery to that reasonably related to the discovery of attachable assets.") (citing *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007)); *GMA Accessories, Inc. v. Elec. Wonderland, Inc., et al.*, No. 07 Civ. 3219 PKC DF, 2012 WL 1933558, at *6 (S.D.N.Y. May 22, 2012) (plaintiff may not embark on a fishing expedition and must tailor its requests appropriately) (citation omitted); *Jacobson v. Moller & Moller, Inc.*, No. CV 2002-6316 (ERK)(MDF), 2007 WL 1989260, at *1 (E.D.N.Y. July 5, 2007) ("plaintiff may not 'embark on a fishing expedition'") (citation omitted); *Riggi v. Riggi*, 177 A.D.2d 788, 576 N.Y.S.2d 399, 400 (3d Dep't 1991) ("reasonable relation to the subject matter under investigation [must] be demonstrated") (citation omitted).  Without any reasonable belief that the documents and testimony sought will lead to relevant assets, the Subpoena goes substantially beyond the scope of non-party discovery permitted by the CPLR and should not be allowed.

In addition, to the extent that DB is ultimately required to produce further information, the existing Confidentiality Orders should include an "Attorneys' Eyes Only" designation, which would permit DB to limit the disclosure of additional documents or testimony to Plaintiffs' outside litigation counsel, their experts or consultants, the Court, court reporters and copy services. Notably, in a further showing of Plaintiffs' true purpose in seeking the subpoenaed information, Aurelius' counsel had flatly rejected modifying the existing Confidentiality Orders to permit the produced information to be designated "Attorneys' Eyes Only."

Non-party DB understands that the litigation between Plaintiffs and the Republic has been protracted and hotly contested.  DB does not, however, understand that litigation to have resulted in any order precluding the Republic from raising capital or barring financial intermediaries from participating in such efforts on behalf of their investor clients or the Republic.  While Plaintiffs would obviously prefer that financial intermediaries (including affiliates of DB) not participate in any such activities of the Republic, punishing DB for the lawful activities of its affiliates is not appropriate.  No matter how bitter or protracted the litigation, Plaintiffs' preference does not justify abusive discovery obtained as a result of false representations to the Court, violations of Confidentiality Orders, leaks to the press of Confidential material or the subsequent use of improperly shared and/or leaked material to bolster litigation positions.

Respectfully submitted,

/s/ Philippe A. Zimmerman

Philippe A. Zimmerman

Encs.

cc:      All Counsel of Record