# Exhibit B

1

F4M7NMLC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   NML CAPITAL, LTD.,

4                   Plaintiff,

5           v.                          08 Civ 6978 (TPG)

6   THE REPUBLIC OF ARGENTINA,

7                   Defendant.

8   ------------------------------x
                                        New York, N.Y.
9                                       April 22, 2015
                                        1:00 p.m.
10
    Before:
11
                    HON. THOMAS P. GRIESA
12
                                        District Judge
13
                        APPEARANCES
14
    DECHERT LLP
15      Attorneys for Plaintiff NML Capital LLC
    BY:  ROBERT COHEN
16
    FRIEDMAN KAPLAN SEILER & ADELMAN LLP
17      Attorneys for Plaintiffs Aurelius Capital Master, Ltd.
    BY:  EDWARD FRIEDMAN
18       DANIEL RAPPORT

19  SIMON LESSOR P.C.
        Attorneys for Plaintiff Olifant Fund, Ltd.
20  BY:  LEONARD LESSER

21  CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Attorneys for Defendant The Republic of Argentina
22  BY:  JONATHAN BLACKMAN
         CARMINE BOCCUZZI
23       EZEQUIEL HERRERA
         KRISTIN BRESNAHAN
24

25

2

F4M7NMLC

1    APPEARANCES (Continued)

2    MOSES & SINGER
          Attorneys for nonparty Deutsche Bank
3    BY:  PHILIPPE ZIMMERMAN
          VALERIA CASTERARO

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

F4M7NMLC

```
 1              (Case called)

 2              (In open court)

 3              THE COURT:  NML asked for this meeting, so would you

 4       lead off, please.

 5              MR. COHEN:  Yes, your Honor.  Good afternoon, your

 6       Honor.  Robert Cohen from Dechert on behalf of NML and speaking

 7       for the moment on behalf of the other plaintiffs with pari

 8       passu injunctions.

 9              Your Honor, we are here to ask for an order to show

10       cause with a requirement that Argentina and two banks provide

11       to us on an urgent immediate yet basis information with respect

12       to a bond offering that Argentina announced on Tuesday that

13       will we think close perhaps tomorrow, maybe on Friday.

14              Now, your Honor, you will remember that we were before

15       you in February in a similar situation where we asked for

16       expedited discovery from two banks, and you allowed us to have

17       that discovery, and in response to that that offering was

18       canceled.

19              The headline in an Argentine newspaper on Tuesday says

20       "Government Issues Debt of U.S. $500 million Domestically Today

21       In Order to Evade Griesa."

22              Now, there are several other articles that indicate

23       that the way that this offering is structured is somehow

24       designed to evade this court's orders.  We are not suggesting,

25       your Honor, that Argentina may not raise new money.  We are
```

4

F4M7NMLC

1   suggesting, your Honor, that they may not do things in the

2   course of that that facilitate the evasion of your injunctions,

3   and they may not do it in a way that is designed to prevent

4   creditors of Argentina from having opportunities to perhaps,

5   for example, attach the proceeds of those offerings.

6           We understand that two banks in New York have

7   subscribed to this offering which is now reported to be almost

8   one and a half billion dollars.

9           THE COURT:  What bank has subscribed?

10          MR. COHEN:  We understand that Deutsche Bank and a

11  bank whose acronym is BBVA.  It's a foreign bank with a

12  presence in New York.  And perhaps other banks.

13          THE COURT:  Give me those initials again.

14          MR. COHEN:  BBVA.

15          THE COURT:  You have to say it again.

16          MR. COHEN:  B as in boy, B as in boy, V as in Victor,

17  A as in Alpha.

18          THE COURT:  And is it your information that that is a

19  bank?

20          MR. COHEN:  Yes, your Honor.  And the information we

21  have is that Deutsche Bank has subscribed either on behalf of

22  itself or customers for about a billion dollars of these bonds,

23  and that BBVA has subscribed for as much as $400 million

24  dollars.  Those numbers are reported in the press.  We are not

25  vouching for them, but that's what we understand.

5

F4M7NMLC

1          THE COURT:  And the amount of the bond offering again

2    is what?

3          MR. COHEN:  It could be up to a billion five.  So, we

4    think that might be substantially all that has been subscribed.

5    But we have had other reports that it's even bigger and that

6    there are aspects of this offering that are being done in

7    Europe.  We have heard that JP Morgan may be involved.  We're

8    not sure.  But we do have unreasonably good authority that at

9    least those two banks are involved, Deutsche Bank and BBVA.

10          What we are asking for, your Honor, is that you

11    require Argentina to tell us about this transaction.  By that I

12    mean we want to know how the money is flowing to Argentina.

13          THE COURT:  How what?

14          MR. COHEN:  How the money that is going to Argentina

15    to buy these bonds will flow, if Deutsche Bank or BBVA is going

16    to be buying these bonds, how do they send the money to

17    Argentina.  We may hear that that's a transaction that takes

18    place solely in Argentina, and there is nothing to do with New

19    York, and this is entirely within Argentina, so there is

20    nothing for this court to do and nothing for those banks to

21    tell us.  That may be the case.  If that were the case, maybe

22    we will have wasted our time and the court's time.

23          But we would like to have under oath answers to those

24    questions.  We have had discovery outstanding with Argentina

25    for many months, actually years.  Your Honor ordered them to

6

F4M7NMLC

1    provide to us.  The Second Circuit affirmed that we should have

2    that discovery, set deadlines; we never got it.  We are

3    skeptical that we are going to get anything in response to the

4    documents requests if you allow us to serve them.  And we may

5    have to come back to the court and say, your Honor, if they

6    won't give us this information, you may have to suspend the

7    closing of this transaction -- which may happen tomorrow or the

8    day after -- until we have an opportunity to understand exactly

9    what is happening here.

10          That's our request:  Let us serve discovery on

11   Argentina, with a very, very short return time.  I would like

12   to have it this evening or late tonight.  This is a transaction

13   that is in the works as we speak, so the idea that those

14   documents are not available is not a believable or acceptable

15   answer.  And to serve Deutsche Bank and BBVA, to get

16   information from them on a reasonable timetable for them,

17   hopefully today, if not tomorrow morning, so that we can have

18   that information in time to do something about it.

19          THE COURT:  Now, look, what is it that could involve

20   the jurisdiction of this court?  And I am talking about the

21   proposed new bond offering.  What about that new bond offering

22   could invoke the jurisdiction of this court?  And what could

23   reasonably be opposed by you as some step that this court could

24   take in regard to the new bond offering?

25          MR. COHEN:  With respect to jurisdiction, your Honor,

F4M7NMLC

1    of course Argentina is before the court and is subject to the

2    court's jurisdiction and injunctions and directions.

3             THE COURT:  I have no problem with personal

4    jurisdiction.  Well, I won't go even that far.  But, anyway, I

5    want to hear from you in response to my questions.

6             MR. COHEN:  Sure.  And with respect to the other two

7    banks, there is jurisdiction because they are here.  And, for

8    example, if they owed a debt to Argentina --

9             THE COURT:  Actually, I'm really talking about subject

10   matter jurisdiction right now.  That's what I'm talking about.

11            MR. COHEN:  OK.  Your Honor, the dispute that we have

12   with Argentina extends to, for example, post-judgment

13   enforcement actions.  So if we were able to find that a debt

14   was due from Deutsche Bank, or BBVA, to Argentina as a result

15   of this transaction, you could allow us to attach that debt in

16   New York, being used for commercial activity in New York, to

17   partially satisfy our debt.  So that's one easy product of this

18   discovery if we get it.

19            THE COURT:  When you refer to your debt, you're

20   referring to this long-standing debt --

21            MR. COHEN:  Our judgment.

22            THE COURT:  -- including judgments.

23            MR. COHEN:  Judgment enforcement debt, your Honor.

24   Yes, enforcement of our judgments.  Not the pari passu clause,

25   but we are owed close to $3 billion by Argentina, and we have

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F4M7NMLC

1    judgments.

2            THE COURT:  That's what I'm talking about.  In other

3    words, you have this debt that really relates back to the

4    default on the 1994 bond issue, right?

5            MR. COHEN:  Yes, your Honor.

6            THE COURT:  And that debt has been outstanding now for

7    what, a dozen years or how long.

8            MR. COHEN:  Yes, your Honor.  The default was in 2001;

9    we have judgments that go back to the early 2000s.

10           THE COURT:  So, you've got debt which is now about 14

11   years old, right?

12           MR. COHEN:  Roughly, your Honor, yes.

13           THE COURT:  Roughly, 13 or 14.

14           Now, I go back to my question you started to answer

15   when I interrupted you.  What is it that you believe could even

16   potentially be done by this court in connection with the debt

17   we are talking about?  Obviously I'm talking about something

18   relating to the new debt.

19           MR. COHEN:  Yes, this bond offering that's about to

20   happen, what could the court do?  What relief could you give

21   us?  One example is discovery from the banks as to how the

22   transaction is going to unfold, and when they will owe money to

23   Argentina, and where that money is.

24           THE COURT:  OK, list that again.  Discovery on what

25   points?

9

F4M7NMLC

1          MR. COHEN:  How the transaction works.  By that I mean

2    when do they get their bonds and when do they have to tender

3    their money in exchange for those bonds.  How does that

4    transaction work?  And is there a time when they owe money to

5    Argentina while the money has not yet gone to Argentina in

6    payment of those bonds?  And if we can find that moment -- they

7    bought the bonds, they haven't yet paid for them -- we should

8    be able to attach that debt to Argentina to satisfy our debt.

9          So, if Deutsche Bank is buying a million dollars of

10   these bonds, and hasn't yet paid for them but is obligated to

11   do so, we can say don't pay Argentina, pay NML.

12          That's how a standard attachment would work.  We would

13   have to satisfy you that we meet all the tests in the Foreign

14   Sovereign Immunities Act about that debt, that it's in the

15   U.S., that the obligation is an obligation of Argentina's and

16   it's being used for commercial activity and all of those

17   things, but we don't get there until we get to discovery and

18   see whether or not there is the possibility of doing that.

19          There are other things, I think, your Honor, that I

20   think would be very useful as this matter unfolds.  When we

21   were dealing with the Citibank case, you remember there was

22   this issue about ISINs, what number were attached to certain

23   bonds, and that complicated things.  We would like to know

24   whether they are trying to do that again, trying to complicate

25   things by using ISINs that were previously applied to exchange

F4M7NMLC

1    bonds.

2             THE COURT:  What are those initials again?

3             MR. COHEN:  ISIN.  And we would like to know if there

4    is a plan afoot to evade.  The headlines say that this is a

5    transaction that was done in order to evade Griesa.  Now, we

6    don't know exactly what that means.  We would like to get

7    communications between Argentina and people who might be

8    interested in this transaction, to find out if they are trying

9    to find ways to get around the injunction, possibly making the

10   existing injunction of relatively little value if they can find

11   ways around New York and this court.  So, tell us how this deal

12   works, what is the deal dynamic and how did it come about.

13   That's what we answer, your Honor.

14            THE COURT:  OK.  I guess we ought to hear from The

15   Republic.

16            MR. BLACKMAN:  Thank you, your Honor.  Jonathan

17   Blackman for Republic of Argentina.

18            First of all, your Honor, there is no emergency

19   whatever here.  Argentina has entered into similar issuances of

20   new debt for many years and did so last year with exactly the

21   same bonds that we are talking about now.

22            Mr. Cohen admitted to you -- as he had to do -- that

23   there is nothing in the 1994 Fiscal Agency Agreement, nothing

24   in the court's injunctions, nothing anywhere else that forbids

25   Argentina from borrowing new money from people.  So, Argentina,

F4M7NMLC

1   like any state, is allowed to borrow money and finance itself,

2   and it has been doing so on a regular basis for over a decade.

3   Just as the United States sells treasury bills in auctions

4   every week, Argentina has done an auction of new debt.  It's a

5   purely domestic transaction; it has no road show externally; it

6   has no external offering documents.  So, there is nothing

7   unusual and there is nothing --

8            THE COURT:  Let me interrupt you there.  You are

9   talking about what method of raising money.

10           MR. BLACKMAN:  Correct.

11           THE COURT:  Just expand on that.

12           MR. BLACKMAN:  I'm saying that not only, as Mr. Cohen

13   admits, is there nothing unlawful about Argentina raising new

14   money, but the particular way it is raising new money here does

15   not implicate in any way the pari passu clause, because this is

16   a purely internal domestic Argentine debt offering of a kind

17   that Argentina has done repeatedly over many years, so it

18   doesn't involve so-called external indebtedness, which might

19   raise an issue under the pari passu clause, and it certainly

20   doesn't involve exchange bonds which were the subject of the

21   court's injunction.

22           THE COURT:  Let me interrupt you.

23           I'm not sure whether this has significance or not, but

24   I'm going to ask it.  What you say is over these years

25   Argentina has raised money through debt, right?

F4M7NMLC

1           MR. BLACKMAN:  Correct, your Honor.

2           THE COURT:  And has that been a form of debt like U.S.

3    treasury notes?  Or has it been bonds?  What has gone on?

4    Because right now apparently there are bonds contemplated.  So

5    what is going on over the years?

6           MR. BLACKMAN:  What has gone on over the years I

7    believe is a variety of instruments.  These particular

8    instruments are called BONARS, and they are domestic debt.

9    Whether you call them a bond, or whether they are the

10   equivalent of a T-bill, I can't answer that question

11   definitively, but they are debt.  They are not short-term debt

12   like a T-bill, they are longer term debt.

13          But the important point to be paid legally is these

14   are domestic debt that Argentina uses to finance itself.  This

15   particular debt will be used for infrastructure in Argentina;

16   it will be used to pay social charges in Argentina.  It's

17   general obligation bonds, if you will, but purely internal, not

18   external indebtedness.

19          THE COURT:  When you say purely internal, what do you

20   mean?

21          MR. BLACKMAN:  Offered exclusively in Argentina and

22   therefore not falling within the definition in the 1994 Fiscal

23   Agency Agreement of external indebtedness that was the subject

24   of the court's pari passu decisions and the subject of the

25   injunction.

13

F4M7NMLC

1          So, for Mr. Cohen to say this is "evading any order of
2     the court" is just flat out wrong.  The Argentine press prints
3     a lot of things, and some of them are planted by his client.
4     But there is no evasion.
5          THE COURT:  In fairness to Mr. Cohen, I think he was
6     quoting the press but not adopting the press.
7          MR. BLACKMAN:  Well, I don't know why he quoted it
8     then, because the fact is this couldn't possibly evade the
9     court's injunctions, because the court's injunctions involve
10    payment on exchange bonds which are a form of external
11    indebtedness, and these are not exchange bonds, not external
12    indebtedness.  And, as he began by saying, and as I began by
13    saying, even if they were, borrowing new money doesn't violate
14    the court's injunctions, doesn't violate the pari passu clause.
15    So what he wants to do is fish.  He wants to fish.
16         THE COURT:  He wants what?
17         MR. BLACKMAN:  He wants to fish.  He is hoping to find
18    something here to attach.
19         Well, the fact of the matter is this is a purely
20    internal transaction.  There is not going to be any money owed
21    in the United States to Argentina, and if there were, that debt
22    would not be used for commercial activity in the United States,
23    as the Sovereign Immunities Act requires; it would be a debt to
24    purchase domestic bonds in Argentina by a financial institution
25    that has gone to Argentina to purchase those bonds.  So, there

F4M7NMLC

1      is no basis that has been shown here for emergency discovery.

2              And now we turn to not only is there no emergency, but

3      what is being asked for here is on its face -- with all respect

4      to Mr. Cohen -- ridiculous.  He says in his order that he wants

5      us to produce documents by 6 p.m.  That's four and a half hours

6      from now, in response to a document request that hasn't even

7      been served.  That just is obviously not doable.

8              And what he said earlier was quite revealing.  He

9      said, well, if that ridiculous deadline isn't met, he will ask

10     the court to enjoin or stop this transaction.  And your Honor

11     quite rightly asked how do you have jurisdiction to do that.

12     And you don't.  Argentina agreed to jurisdiction for suits

13     under the FAA bonds.  There is no case that I am aware of, and

14     no legal basis on which your Honor could enjoin somebody from

15     going to Argentina to buy Argentina domestic debt.  That would

16     in effect be telling your court that you can shut down the

17     Argentine economy.

18             The pari passu injunctions have been much debated and

19     litigated -- I'm not going to go into them here -- but they

20     have nothing whatsoever to do with what is now being proposed

21     by Mr. Cohen, which is to try to interfere with a local debt

22     offering in Argentina.

23             There is no evidence whatsoever of any property in the

24     United States that could be covered or attached.  And, your

25     Honor, this issue came up in the Rossini case before your

F4M7NMLC

```
 1   Honor, another one of our Argentine debt cases.  And the
 2   Rossini plaintiffs tried to attack and to get discovery of a
 3   local debt offering.  Your Honor said, no, that's outside the
 4   scope of what is permissible, and the Second Circuit affirmed
 5   you.
 6            So, this is not, you know, a new theory or new ground.
 7   It has been attempted before, and it has been attempted
 8   unsuccessfully, because there is simply no basis for what is
 9   being sought.
10            The idea that this transaction can be interfered with
11   on a half a day's notice, or should be the basis for emergency
12   discovery, when this is a transaction like many others that
13   have occurred over the years, just has no foundation.
14            THE COURT:  Look, the problem is that there is a large
15   debt that has been owed by The Republic to various parties
16   dating back 13 years or so.  And I'm not trying to get into the
17   complications, because there are complications.  There is debt
18   that originated in the 1994 bonds and have been the subject of
19   exchange bonds and so forth.
20            But I'm just speaking in a very general way, and, that
21   is, there is a very substantial debt that has been unpaid for
22   all these years and remains unpaid.  There is nothing more to
23   be done on that debt in the way of -- I'm speaking a little
24   inaccurately but substantially -- there is no real function for
25   additional judgments, additional orders of the court in
```

F4M7NMLC

```
1     response to motions; that's all over with.
2             What remains is taking care of the debt as it exists,
3     subject to the injunction, etc.  I have appointed a special
4     master to help negotiate a settlement of that debt, and I hope
5     The Republic at long last will be willing to negotiate.
6             As far as Mr. Cohen's presence here today and the new
7     bond offering, essentially what Mr. Cohen is seeking is
8     information that might lead him to a way to find assets that
9     could be applied to his debt.  Right, Mr. Cohen?
10            MR. COHEN:  Yes, your Honor.
11            THE COURT:  OK.  Now, that is a very legitimate
12    inquiry.  It is a very legitimate quest.  And his inquiry today
13    is occasioned by the new bond offering which both of you have
14    discussed.
15            I don't know whether the new bond offering follows a
16    pattern of financings that have occurred over the last ten
17    years or so.  I don't know.  But there is apparently this new
18    bond offering, and there is enough information about it, even
19    from your statement, to indicate that something will take
20    place.
21            Now, what does the court do in response to Mr. Cohen's
22    request and your objections?  We start with jurisdiction.  This
23    court had jurisdiction over the earlier financing because
24    jurisdiction of the court was agreed to in the basic debt
25    instrument.  There is no such instrument to my knowledge now.
```

17

F4M7NMLC

1          MR. BLACKMAN:  That's correct.

2          THE COURT:  And there is no indication or claim by

3     anybody that the new debt is issued pursuant to the old debt

4     instrument.

5          MR. BLACKMAN:  Correct.

6          THE COURT:  Mr. Cohen, let me go back to you.  What is

7     the basis that you say -- if you do say -- what do you say

8     about subject matter jurisdiction?

9          MR. COHEN:  This is post-judgment enforcement

10    discovery, your Honor.  As you described it, we have judgments.

11         THE COURT:  I'm not hearing you very well.

12         MR. COHEN:  This is post-judgment enforcement

13    discovery.  As your Honor recited, we have had judgments for

14    many, many years.  We think we may have an asset that is

15    attachable in this jurisdiction, and you have jurisdiction in

16    assisting us to gathering information, discovery, with respect

17    to potential assets.

18         THE COURT:  You are asserting subject matter

19    jurisdiction on the basis that has been asserted over the

20    years.  You are attempting to recover on those earlier --

21         MR. COHEN:  -- judgments.

22         THE COURT:  -- judgments, about which jurisdiction has

23    long since been recognized.

24         MR. COHEN:  Yes, your Honor.

25         THE COURT:  So you are attempting to recover on that,

F4M7NMLC

1   and I would think that it would not -- I would hold without any

2   question that the court has subject matter jurisdiction on

3   legitimate efforts to recover on that former indebtedness.

4        MR. COHEN:  Yes, your Honor.

5        THE COURT:  So it seems to me you properly asserted

6   subject matter jurisdiction because of what you are seeking.

7        You asked me to sign an order to show cause?

8        MR. ZIMMERMAN:  Your Honor, before considering the

9   order to show cause, on behalf of Deutsche Bank we would like

10  to be heard regarding the expedited nature.

11       THE COURT:  I just have to take it one step at a time,

12  and I am sure there are other people to be heard from.

13       If you could go back to the lectern, Mr. Cohen.  Now,

14  in paragraph 2, numbered paragraph 2 of the proposed order to

15  show cause, you refer to various Deutsche Bank entities.  What

16  is the basis for referring to those entities?

17       MR. COHEN:  Press reports, your Honor, that they have

18  subscribed to purchase about a billion dollars worth of these

19  bonds.

20       THE COURT:  Well, that answers the question.

21       Can you describe -- maybe you have already done it,

22  but I need repetition.  What information are you seeking in

23  discovery?

24       MR. COHEN:  Your Honor, generally it is how this

25  transaction works.  Argentina has invited the market to buy its

F4M7NMLC

1    bonds.  We don't know exactly where people have to be to accept

2    those offers.  We have heard Mr. Blackman represent, for

3    example, that this is entirely within Argentina.  Now, we heard

4    that from Citibank, you may remember, that the offering on

5    certain bonds were entirely within Argentina.  Here we know

6    that Deutsche Bank in New York is buying these bonds.

7              THE COURT:  Is what?

8              MR. COHEN:  Is buying these bonds.  So, are they being

9    offered exclusively in Argentina?  Or are they being offered

10   outside of Argentina?  I mean that issue is important, but it's

11   really quite honestly for another day.  It's not going to

12   assist us in the attachment.

13             THE COURT:  What information do you have about

14   Deutsche Bank in New York?

15             MR. COHEN:  That they are buyers of these bonds.  In

16   fact, calls have been made to some of the plaintiffs by

17   Deutsche Bank to buy the bonds in New York.  So, we know

18   they're out there trying to buy them and resell them to other

19   people and in effect making a market in these bonds.  We would

20   like to understand how that works.

21             We'd like to understand from the discovery to

22   Argentina why it was structured this way.  Is it being done the

23   way Mr. Blackman represents it's been done forever, or is it

24   being done as a way to evade this court?  Is this a path toward

25   future evasion?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F4M7NMLC

1           Have there been discussions with people about how we

2    can structure bond offerings that will successfully avoid this

3    court's jurisdiction?  In which case we may see a migration of

4    some of the exchange bonds into a different form.

5           But that will all become known to us if they give us

6    the deal documents, show us how it's done, and the

7    correspondence with the people to whom they are trying to sell

8    it.  And they must have that stuff because it is happening as

9    we speak.  This is not an ancient transaction; it's happening

10   right now.  It's supposed to close tomorrow.

11          THE COURT:  I do not take seriously the press remark

12   about evading what I have ruled, although maybe there is

13   something to it.

14          MR. COHEN:  Your Honor, may I just say something on

15   that point?  None of the other bond offerings that we were

16   aware were done in two days.  This is the first time that we

17   know of an offering by Argentina that was announced and closed

18   within two days.

19          Now, you can draw whatever conclusions you want from

20   that, but it may be that it was done so that this court and

21   Argentina's creditors would not have an opportunity to find out

22   what is going on and see if there are opportunities to attach.

23          THE COURT:  Let me just say this:  That's something

24   different from evading what I have previously ordered.  Evading

25   what I previously ordered, that is -- if evading has any

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    meaning at all, it would be some kind of fraud that I can't

2    even conceive of what it would be.  But I think right now I

3    don't have anything before me -- that doesn't mean that it

4    couldn't happen -- but I don't have anything before me with any

5    factual indication that The Republic is trying to evade prior

6    orders.

7           Now, that doesn't solve the problem, because the

8    problem you're really raising is how do you enforce the

9    judgments, and can this new bond offering have a relationship

10   to enforcing your judgments.  And that is a legitimate inquiry

11   and a legitimate question, because enforcing your judgments,

12   unless The Republic pays voluntarily, means finding something

13   to attach or some way to obtain money that The Republic has

14   refused to pay voluntarily, despite all of these years of its

15   debt.

16          So, what I'm trying to say -- and I'm going to have to

17   conclude this shortly -- as this court has expressed on

18   numerous occasions, and everybody knows, The Republic has a

19   long indebtedness, which it was obligated to pay, and it has

20   not paid.  And the plaintiffs have been compelled to resort to

21   various difficult ways of finding assets or methods of

22   obtaining payment, and that has occupied the court and counsel

23   over many years, and I hope that can draw to a close through

24   the efforts of the special master and so forth.

25          Now, I believe that the parties you represent are

F4M7NMLC

1   entitled to discovery about this new financing.  I believe and

2   I'm ruling that the plaintiffs are entitled to discovery to

3   determine if the new financing will produce assets which are

4   available to satisfy in whole or in part the plaintiffs'

5   long-standing unsatisfied debt.

6       I don't think the discovery can take place by 6 p.m.

7   tonight or anything like that, but there is -- despite what I

8   just said -- merit to the plaintiffs' assertion that this new

9   financing might very quickly assume forms that might not be

10  there now but might be used to insulate the proceeds of the

11  transaction from any possible legitimate use to satisfy your

12  judgment.

13      So, what to do?  Mr. Cohen has a legitimate need for

14  very prompt information.  Mr. Blackman has always been

15  cooperative with the court in any legitimate needs.

16      What I would ask is, Mr. Cohen, if you present

17  Mr. Blackman -- you can do it informally or through writing or

18  whatever you feel -- but if you would specify to him the

19  information you need -- you say you need -- and not just all

20  about the transaction but what specifically do you need.  And I

21  would expect Mr. Blackman, as he has always done, to respond

22  promptly and reasonably with that request.  Farther I'm not

23  going to go right now; I can't.

24      MR. COHEN:  Just one question, your Honor.  May we do

25  the same with the two banks I mentioned?  We will work with

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

F4M7NMLC

```
 1    them to get just what we need?
 2              THE COURT:  Absolutely.  What I'm trying to say --
 3    because I have a trial going on, and I just have to have
 4    everybody understand that there has to be some cooperation now.
 5    But you are entitled to know the information about the
 6    transaction, the proceeds, the geography, etc., etc., what you
 7    have talked about, and you are entitled to have that about from
 8    whatever banks are involved.  And I will expect the relevant
 9    lawyers to meet together.  You can use my jury room or confer
10    wherever you want to, but I think you've got to get to work
11    right now.  And if there is a problem, I'm here.
12              MR. COHEN:  Thank you, your Honor.
13              THE COURT:  OK.  With that, we will recess, we will
14    adjourn.
15              MR. ZIMMERMAN:  Your Honor, on behalf of Deutsche
16    Bank, while we are certainly prepared to cooperate, we think
17    it's unfortunate we are not provided an opportunity to speak
18    when we are dragged down here without any papers, any evidence.
19    Mr. Cohen makes certain statements representing what they have
20    read concerning this transaction -- or have been told.  We
21    believe that information should be submitted in writing to the
22    court, and allow us to respond.
23              THE COURT:  I didn't mean to not hear you.
24              MR. ZIMMERMAN:  Essentially on behalf of the Deutsche
25    Bank entities that have been brought down here, we are
```

F4M7NMLC

```
 1    certainly prepared to cooperate, but we find it's unfortunate
 2    and frankly troubling that the plaintiffs failed to provide us
 3    any documents or information supporting their claims.  Their
 4    representations concerned alleged New York subscriptions to
 5    this transaction -- which are inconsistent with what I have
 6    been advised by the client -- we think the plaintiffs rather
 7    than just showing us here, and making statements, dragging us
 8    down one hour before today's hearing, even though they had time
 9    to issue a press release or get press coverage about this an
10    hour and a half before.  They should certainly present
11    evidence.
12              THE COURT:  I understand your point, but the point is
13    that if the plaintiff has information about some activities of
14    Deutsche Bank, then it would be a good idea for you to
15    participate in any discussion.  That's all I can say.  All
16    right.
17              MR. ZIMMERMAN:  Thank you.  We would just like to see
18    the information.
19                              * * *
20
21
22
23
24
25
```