WOLLMUTH MAHER & DEUTSCH LLP

500 FIFTH AVENUE

NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

July 6, 2015

BY HAND DELIVERY

Honorable Thomas P. Griesa
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1630
New York, New York 10007-1312

Re: *NML Capital, Ltd. v. The Republic of Argentina*,
Nos. 08 Civ. 6978, 09 Civ. 1707, 09 Civ. 1708; and related cases

Dear Judge Griesa:

My firm, along with Christopher J. Clark of Latham & Watkins, represent non-parties Fintech Advisory, Inc. ("Fintech"), [redacted] [redacted], in connection with subpoenas served on them on March 27 and March 30, 2015 (the "Subpoenas") by plaintiff NML Capital, Ltd. ("NML" or "Plaintiff"). Pursuant to Your Honor's Individual Practices, we write to request a conference for permission to make a discovery motion (i) seeking to quash the Subpoenas to the extent they seek testimony of [redacted] [redacted], and (ii) for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure. In response to the Subpoenas, our clients conducted searches for relevant documents in their possession, including all Fintech internal emails and personal devices, and made a full good-faith production of documents to NML on April 24, 2015. NML, however, continued to pursue improper, intrusive and overbroad discovery demands. In the interest of cooperation, we have made good-faith efforts to meet and confer with NML to avoid the need for this court's intervention, including multiple telephone conversations and email exchanges over the past several weeks, as well as sharing of documents and emails on key issues of asserted importance to NML. Despite these efforts, NML insists on continuing efforts to harass our clients, requiring the relief sought below.

In sum, Fintech, a private investment manager that manages its own investments, already has searched for documents concerning so-called "Evasion Plans" and has agreed to search for documents in its possession, if any, concerning Argentina's assets, "financial circulatory system"

and planned or actual structure of Argentina's international bond issues. Fintech also is prepared to produce a corporate representative for a deposition. Despite this, NML seeks to delve into Fintech's private business by seeking discovery beyond the foregoing, and

Accordingly, Fintech, seek permission to move to quash and for a protective order. Fintech has had to go down this road before. For the court's reference, Fintech previously filed a motion to quash a subpoena served by Plaintiff in December of 2012 (Docket Nos. 444-47) as part of an effort by Plaintiff to blanket the financial community with subpoenas. This court directed that efforts to pursue that discovery "should be entirely discontinued." Fintech, are entitled to similar relief again.

I. NML's Improper Document Requests Requiring a Protective Order

Fintech is an investment advisor that manages its own investments and has no involvement with the flow of Argentina's assets. Fintech is a direct competitor of the Plaintiff in these actions, including NML, its parent company Elliott Management, and Aurelius. Fintech and the plaintiffs in these matters often target the same assets and investments, and sharing strategies and analysis with them would harm Fintech.

NML's Subpoenas at issue here sought 63 categories of documents. Within 30 days of being served, Fintech, complied with NML's demands by running searches for relevant documents in its possession, including all internal Fintech emails and personal devices, and making a complete good-faith production of all documents to which NML is entitled. Indeed, our clients have produced documents in response to every request in the Subpoenas except for those concerning "Financing Arrangements." NML's requests for "Financing Arrangements," however, are a pure fishing expedition seeking private information unrelated to "Evasion Plans"[1] or judgment collection.

Fintech requested that NML clarify and justify such an overbroad request. Indeed, during a previous discovery hearing on April 22, 2015 in which NML sought discovery from non-party Deutsche Bank, the court directed Plaintiff to "specify . . . the information you need -- you say you need -- and not just all about the transaction but what specifically do you need." Transcript of Oral Argument at 22, *NML Capital, Ltd. v. The Republic of Argentina* (No. 08 Civ. 6978).

NML responded trying to justify its overbroad and harassing demand by saying it is entitled to documents regarding Argentina's assets, "financial circulatory system" and the structure of Argentina's bond financing. Accordingly, in an effort to compromise, even though Fintech is not a bank and is not involved with the flow of Argentina's assets, Fintech agreed to

[1] In response to the Subpoenas, Fintech, agreed to search for documents in connection with any "Evasion Plan," defined as "any plan or course of action—whether pursued directly by Argentina or through any representative, agent, instrumentality, political subdivision, or other Person or entity whether or not acting on Argentina's behalf—to evade or attempt to evade the purposes and directives of the Amended February 23 Order, to render or attempt to render that Order ineffective, or to diminish or attempt to diminish the Court's ability to supervise compliance with the Amended February 23 Order without prior approval of the Court."

search for and produce documents in its possession, if any, concerning the location of Argentina's assets, Argentina's "financial circulatory system" and planned or actual structure of Argentina's international bond issues. However, betraying its true intention to harass and delve into private matters not proper for discovery in this case, NML has indicated that it will not accept documents related to financing arrangements that could shed some light into Argentina's assets or its financial circulatory system. NML instead seeks to pursue a nebulous, overbroad concept of "Financing Arrangements" knowing that such a broad concept would certainly pick up transactions that are unrelated to the case at hand, where it has an adversarial interest, and that would not be relevant for purposes of judgment collection.

Indeed, Plaintiff's requests for documents concerning "Financing Arrangements" exceed the permissible scope of discovery in connection with the enforcement of a judgment, which they purport to be undertaking. Discovery under Federal Rule of Civil Procedure 69(a)(2) must be calculated to assist in collection on a judgment, and limited to a search for the judgment debtor's—here, Argentina's—assets. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012); *GMA Accessories v. Elec. Wonderland, Inc.*, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012); *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977) (finding that FRCP 69(a) only authorized discovery by a judgment creditor for the purpose of discovering any concealed or fraudulently transferred assets held by the judgment debtors). The Second Circuit has similarly limited the scope of permissible discovery from non-parties under CPLR 5223 to only that which "is relevant to the judgment debtor's income and property." *Rossini v. Republic of Argentina*, 453 F. App'x 22, 24-25 (2d Cir. 2011); *see also Parts Auth., Inc. v. Eagle Serv. Station, Inc.*, 10 Misc. 3d 1066(A), 814 N.Y.S.2d 563 (Civ. Ct. 2005) (finding that disclosure under CPLR 5223 "does have its limits and a court has broad discretionary power to control and regulate enforcement procedures in order to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts"). Fintech has agreed to produce such documents, if any, in its possession, but NML wants to pry further. It is not entitled to do this. If a private individual or entity has any communications about that person's or entity's private business in a particular market, such discussions are not subject to discovery. Thus, Fintech, [REDACTED] are entitled to a protective order to prevent disclosure concerning "Financing Arrangements" beyond information pertaining to Argentina's assets, "financial circulatory system" or the structure of Argentina's international bond issues.

II. Motion to Quash Depositions of [REDACTED]





[redacted]

III. Protective Order as to [redacted]

[redacted]

[redacted]

---

[redacted]

We look forward to the opportunity to confer with the court regarding Fintech's request to move to quash and for a protective order.

Respectfully submitted,

William F. Dahill

Christopher J. Clark /WFD

cc: Dennis Hranitzky, Esq. (By Hand)
Debra O'Gorman, Esq. (By Hand)