UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
             :

NML CAPITAL, LTD.,
             :

          Plaintiff,
            :     08 Civ. 6978 (TPG)

            :
        v.
            :

THE REPUBLIC OF ARGENTINA,
            :   **SECOND AMENDED AND**
          Defendant.
           :   **SUPPLEMENTAL COMPLAINT**

            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

       Plaintiff, NML Capital, Ltd., ("NML"), by its undersigned counsel, as and for its

Second Amended and Supplemental Complaint against Defendant Republic of Argentina

("Argentina"), alleges as follows:

## NATURE OF THE ACTION

       1.     This is a breach of contract action arising from Argentina's failure to make

contractually-mandated principal and interest payments on certain bonds issued by Argentina

and held by NML.  The bonds in question were issued pursuant to a Fiscal Agency Agreement,

dated October 19, 1994 (the "FAA") between Argentina and Bankers Trust Company, as Fiscal

Agent.  For its relief, NML seeks payment of the principal amount of the bonds together with

any accrued and unpaid interest, as provided for in the FAA.  A true and accurate copy of the

FAA is attached as Exhibit A.

       2.     In this pleading, Plaintiff is asserting two additional claims for declaratory

and injunctive relief.  The two new claims concern bonds bearing ISIN ARARGE03H413 (the

"BONAR 2024 Bonds") and Argentina's other existing and future External Indebtedness (other

than the Exchange Bonds which are already the subject of declaratory and injunctive relief issued

by this Court).  Plaintiff is requesting: (i) a declaratory judgment that the BONAR 2024 Bonds are External Indebtedness within the meaning of the FAA, and (ii) specific performance of the Republic's obligations under the Equal Treatment Provision in the FAA by preliminarily and permanently enjoining the Republic from making payments of interest and/or principal on the existing and future BONAR 2024 Bonds and other External Indebtedness unless a "Ratable Payment" is made in respect of Plaintiff's defaulted bonds.

3.      This action also seeks relief based on Argentina's continuing breach of the Equal Treatment Provision of the FAA, paragraph 1(c) of the FAA, which provides for equal treatment in terms of rank and priority of payment for holders of bonds issued under the FAA with respect to any unsecured and unsubordinated External Indebtedness as defined in the FAA (the "Equal Treatment Provision").  Under color of Law 26,017 passed in 2005 and Law 26,547 passed in 2009, Argentina issued bonds in its 2005 and 2010 Bond Exchanges with payment obligations that rank higher than those issued under the FAA and held by NML.  The bonds issued in the Exchanges are External Indebtedness. Argentina's issuance of these higher ranking bonds, its continuing payment of semi-annual interest to the holders of the bonds issued in the 2005 Bond Exchange and its anticipated payment of interest to the holders of the bonds issued in the 2010 Bond Exchange, while paying nothing to NML and other bondholders who did not participate in the Exchanges, violate the Equal Treatment Provision of the FAA.  To prevent further violations, NML seeks specific enforcement of the Equal Treatment Provision.

4.      Beginning in May 2014, the Republic began issuing the BONAR 2024 Bonds and has made payments on them all while paying nothing to plaintiff and other bondholders who did not participate in the 2005 and 2010 Bond Exchanges—in violation of the Equal Treatment Provision.  Accordingly, to remedy this violation and prevent further violations,

plaintiff seeks in its Ninth Claim for Relief specific enforcement of the Equal Treatment Provision with respect to the BONAR 2024 Bonds.

## THE PARTIES

5.      Plaintiff NML is a corporation organized and existing under the laws of the Cayman Islands.

6.      Defendant Republic of Argentina is a Foreign State as defined in 28 U.S.C. § 1603.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1330, as Argentina is a Foreign State which has explicitly and unconditionally waived sovereign immunity with respect to actions arising out of the FAA by holders of bonds issued thereunder and is, therefore, not entitled to immunity under 28 U.S.C. §§ 1605-07 or under any applicable international agreement.

8.      In addition, Argentina consented in the FAA to submit to the jurisdiction of this Court in respect to actions arising out of the FAA or bonds issued thereunder.  Pursuant to Section 22 of the FAA, Argentina appointed Banco de la Nación Argentina, 299 Park Avenue, New York, New York 10171, as its authorized agent for service of process.  Section 23 of the FAA provides that the FAA shall be "governed by, and interpreted in accordance with, the laws of the State of New York."

9.      Venue is proper in this district by agreement of the parties and pursuant to 28 U.S.C. § 1391(f).

## FACTUAL ALLEGATIONS

The 11% Global Bonds

10.     Plaintiff is the holder of $225,000 principal amount of 11% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114AN0 (the "11% Bonds").  A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated October 13, 2010, which shows Plaintiff's current ownership of $9,698,000 principal amount of the 11% Bonds, among other bonds issued by Argentina, is attached as Exhibit B.  The $9,698,000 principal amount of 11% Bonds referenced in Exhibit B includes:  (1) the $225,000 principal amount of 11% Bonds at issue in this action; (2) the $6,031,000 principal amount of 11% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in the Court as action 07 Civ. 1910 (TPG) and (3) the $3,442,000 principal amount of 11% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 09 Civ. 1708.

11.     Plaintiff acquired $225,000 of the 11% Bonds in one transaction on July 7, 2008.  A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 11% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

12.     The 11% Bonds are a Series of Securities under the terms of the Agreement.

13.     The 11% Bonds matured on October 9, 2006, at which time the entire principal amount of the 11% Bonds became due and payable.

The 11.75% Global Bonds

14.     Plaintiff is the holder of $11,290,000 principal amount of 11.75% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114BE9 (the "11.75% Bonds").  A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated October 13, 2010, which shows Plaintiff's current ownership of $27,989,000 principal amount of the 11.75%

Bonds, among other bonds issued by Argentina, is attached as Exhibit B.   The $27,989,000 principal amount of 11.75% Bonds referenced in Exhibit B includes:   (1) the $11,290,000 principal amount of 11.75% Bonds at issue in this action; (2) the $1,360,000 principal amount of 11.75% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 07 Civ. 1910 (TPG) and (3) the $15,339,000 principal amount of 11.75% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 09 Civ. 1708.

15.     Plaintiff acquired $11,290,000 of the 11.75% Bonds in five transactions: $100,000 on July 7, 2008, $690,000 on July 8, 2008, $5,000,000 on July 10, 2008, $500,000 on July 14, 2008 and $5,000,000 on July 24, 2008.   A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 11.75% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

16.     The 11.75% Bonds are a Series of Securities under the terms of the FAA.

17.     The 11.75% Bonds matured on April 7, 2009.

<u>The 11.375% Global Bonds</u>

18.     Plaintiff is the holder of $10,260,000 principal amount of 11.375% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114FC9 (the "11.375%% Bonds"). A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated October 13, 2010, which shows Plaintiff's current ownership of $22,005,000 principal amount of the 11.375% Bonds, among other bonds issued by Argentina, is attached as Exhibit B.   The $22,005,000 principal amount of 11.375% Bonds referenced in Exhibit B includes:   (1) the $10,260,000 principal amount of 11.375% Bonds at issue in this action; (2) the $6,280,000 principal amount of 11.375% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*,

brought in this Court as action 07 Civ. 1910 (TPG) and (3) the $5,465,000 principal amount of 11.375% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 09 Civ. 1708.

19.     Plaintiff acquired $10,260,000 of the 11.375% Bonds in two transactions: $260,000 on July 7, 2008 and $10,000,000 on July 21, 2008.   A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 11.375% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

20.     The 11.375% Bonds are a Series of Securities under the terms of the FAA.

21.     The 11.375% Bonds matured on March 15, 2010.

The 12.375% Global Bonds

22.     Plaintiff is the holder of $10,500,000 principal amount of 12.375% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114GD6 (the "12.375% Bonds").   A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated October 13, 2010, which shows Plaintiff's current ownership of $20,429,000 principal amount of the 12.375% Bonds, among other bonds issued by Argentina, is attached as Exhibit B.   The $20,429,000 principal amount of 12.375% Bonds referenced in Exhibit B includes:   (1) the $10,500,000 principal amount of 12.375% Bonds at issue in this action; (2) the $1,720,000 principal amount of 12.375% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 07 Civ. 1910 (TPG) and (3) the $8,209,000 principal amount of 12.375% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 09 Civ. 1708.

23.     Plaintiff acquired $10,500,000 of the 12.375% Bonds in two transactions: $500,000 on July 14, 2008 and 10,000,000 on July 24, 2008.   A true and correct copy of the

Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 12.375% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

24.     The 12.375% Bonds are a Series of Securities under the terms of the FAA.

25.     The 12.375% Bonds mature on February 21, 2012.

The 11-3/8% Global Bonds

26.     Plaintiff is the holder of $42,155,000 principal amount of 11-3/8% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114AR1 (the "11-3/8% Bonds").   A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated October 13, 2010, which shows Plaintiff's current ownership of $71,788,000 principal amount of the 11-3/8% Bonds, among other bonds issued by Argentina, is attached as Exhibit B.  The $71,788,000 principal amount of 11-3/8% Bonds referenced in Exhibit B includes:  (1) the $42,155,000 principal amount of 11-3/8% Bonds at issue in this action; (2) the $14,332,000 principal amount of 11-3/8% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 07 Civ. 1910 (TPG) and (3) the $15,301,000 principal amount of 11-3/8% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 09 Civ. 1708.

27.     Plaintiff acquired $42,155,000 of the 11-3/8% Bonds in six transactions: $2,000,000 on June 9, 2008, 9,000,000 on June 24, 2008, 5,000,000 on June 27, 2008, 2,500,000 on June 30, 2008, 8,000,000 on July 15, 2008 and 15,655,000 on July 18, 2008.   A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 11-3/8% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

28.     The 11-3/8% Bonds are a Series of Securities under the terms of the FAA.

29.     The 11-3/8% Bonds mature on January 30, 2017.

The 12% Global Bonds

30.     Plaintiff is the holder of $1,100,000 principal amount of 12% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114FB1 (the "12% Bonds").  A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated October 13, 2010, which shows Plaintiff's current ownership of $61,942,000 principal amount of the 12% Bonds, among other bonds issued by Argentina, is attached as Exhibit B.  The $61,942,000 principal amount of 12% Bonds referenced in Exhibit B includes:  (1) the $1,100,000 principal amount of 12% Bonds at issue in this action; (2) the $60,244,000 principal amount of 12% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 03 Civ. 8845 (TPG); (3) the $300,000 principal amount of 12% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 07 Civ. 6563 (TPG) and (4) the $298,000 principal amount of 12% Bonds at issue in *NML Capital, Ltd. v. The Republic of Argentina*, brought in this Court as action 09 Civ. 1708.

31.     Plaintiff acquired $1,100,000 of the 12% Bonds in one transaction on July 16, 2008.  A true and correct copy of the Consolidated Settlement ITD Report statements showing Plaintiff's purchase of the 12% Bonds, among other bonds issued by Argentina, is attached as Exhibit C.

32.     The 12% Bonds are a Series of Securities under the terms of the FAA.

33.     The 12% Bonds mature on February 1, 2020.

The 9.75% Global Bonds

34.     Plaintiff is the holder of $5,550,000 principal amount of 9.75% Global Bonds issued by the Republic of Argentina, CUSIP No. 040114AV2 (the "9.75% Bonds").  A true and correct copy of the JP Morgan Global Settled Holdings COB Report, dated October 13,

2010, which shows Plaintiff's current ownership of $26,438,000 principal amount of the 9.75%

Bonds, among other bonds issued by Argentina, is attached as Exhibit B.  The $26,438,000

principal amount of 9.75% Bonds referenced in Exhibit B includes:  (1) the $5,550,000 principal

amount of 9.75% Bonds at issue in this action; (2) the $4,598,000 principal amount of 9.75%

Bonds that is at issue in *NML Capital, Ltd. v. The Republic of Argentina*, 07 Civ. 1910; and (3)

the $16,290,000 principal amount of 9.75% Bonds at issue in *NML Capital, Ltd. v. The Republic*

*of Argentina*, brought in this Court as action 09 Civ. 1708.

35.     Plaintiff acquired $5,550,000 of the 9.75% Bonds in four transactions:

$600,000 on July 7, 2008, 1,000,000 on July 15, 2008, 2,000,000 on July 17, 2008 and 1,950,000

on July 21, 2008.  A true and correct copy of the Consolidated Settlement ITD Report statements

showing Plaintiff's purchase of the 9.75% Bonds, among other bonds issued by Argentina, is

attached as Exhibit C.

36.     The 9.75% Bonds are a Series of Securities under the terms of the FAA.

37.     The 9.75% Bonds mature on September 19, 2027.

The Republic of Argentina's Default

38.     Pursuant to Section 12 of the FAA, the following occurrences, among

others, constitute Events of Default:

> (a) Non-Payment:  the Republic fails to pay any principal amount
> of any of the Securities of such Series when due or payable or fails
> to pay any interest on any of the Securities of such Series when
> due and payable and such failure continues for a period of 30 days;
> or
>
> *     *     *
>
> (d) Moratorium:  a moratorium on the payment of principal of, or
> interest on, the Public External Indebtedness of the Republic shall
> be declared by the Republic.

39.     Upon the occurrence of an Event of Default described in Section 12(a) or 12(d) of the FAA, Section 12 further provides that each bondholder may, by notice in writing to the office of the Fiscal Agent, declare the principal amount of the bonds held by it to be due and payable immediately, together with all accrued and unpaid interest.

40.     On December 24, 2001, Argentina declared a moratorium on the payment of principal and interest with respect to all of its foreign debt.

41.     Since then, Argentina has failed to make payments of interest owed on the 11% Bonds, the 11.75% Bonds, the 11.375% Bonds, the 12.375% Bonds, the 11-3/8% Bonds, the 12% Bonds, or the 9.75% Bonds.

42.     Argentina failed to make the interest payments due on the 11% Bonds on April 9, 2002, October 9, 2002, April 9, 2003, October 9, 2003, April 9, 2004, October 9, 2004, April 9, 2005, October 9, 2005, April 9, 2006, October 9, 2006, April 9, 2007, October 9, 2007, April 9, 2008, October 9, 2009, April 9, 2009, October 9, 2009, April 10, 2010 and October 9, 2010, as required by the terms of the 11% Bonds.

43.     Argentina failed to make the interest payments due on the 11.75% Bonds on April 7, 2002, October 7, 2002, April 7, 2003, October 7, 2003, April 7, 2004, October 7, 2004, April 7, 2005, October 7, 2005, April 7, 2006, October 7, 2006, April 7, 2007, October 7, 2007, April 7, 2008, October 7, 2008, April 7, 2009, October 7, 2009, April 7, 2010 and October 7, 2010, as required by the terms of the 11.75% Bonds.

44.     Argentina failed to make the interest payments due on the 11.375% Bonds on March 15, 2002, September 15, 2002, March 15, 2003, September 15, 2003, March 15, 2004, September 15, 2004, March 15, 2005, September 15, 2005, March 15, 2006, September 15, 2006, March 15, 2007, September 15, 2007, March 15, 2008, September 15, 2008, March 15,

2009, September 15, 2009, March 15, 2010 and September 15, 2010, as required by the terms of the 11.375% Bonds.

45.     Argentina failed to make the interest payments due on the 12.375% Bonds on February 21, 2002, August 21, 2002, February 21, 2003, August 21, 2003, February 21, 2004, August 21, 2004, February 21, 2005, August 21, 2005, February 21, 2006, August 21, 2006, February 21, 2007, August 21, 2007, February 21, 2008, August 21, 2008, February 21, 2009, August 21, 2009, February 21, 2010 and August 21, 2010, as required by the terms of the 12.375% Bonds.

46.     Argentina failed to make the interest payments on the 11-3/8% Bonds on January 30, 2002, July 30, 2002, January 30, 2003, July 30, 2003, January 30, 2004, July 30, 2004, January 30, 2005, July 30, 2005, January 30, 2006, July 30, 2006, January 30, 2007, July 30, 2007, January 30, 2008, July 30, 2008, January 30, 2009, July 30, 2009, January 30, 2010 and July 30, 2010, as required by the terms of the 11-3/8% Bonds.

47.     Argentina failed to make the interest payments due on the 12% Bonds on February 25, 2002, August 25, 2002, February 25, 2003, August 25, 2003, February 25, 2004, August 25, 2004, February 25, 2005, August 25, 2005, February 25, 2006, August 25, 2006, February 25, 2007, August 25, 2007, February 25, 2008, August 25, 2008, February 25, 2009, August 25, 2009, February 25, 2010 and August 25, 2010, as required by the terms of the 12% Bonds.

48.     Argentina failed to make the interest payments due on the 9.75% Bonds on March 19, 2002, September 19, 2002, March 19, 2003, September 19, 2003, March 19, 2004, September 19, 2004, March 19, 2005, September 19, 2005, March 19, 2006, September 19, 2006, March 19, 2007, September 19, 2007, March 19, 2008, September 19, 2008, March 19,

2009, September 19, 2009, March 19, 2010 and September 19, 2010, as required by the terms of

the 9.75% Bonds.

<u>The Republic of Argentina's Violations of the Equal Treatment Provision</u>

       49.    The FAA contains an Equal Treatment Provision which states:

> a.    The Securities will constitute… direct, unconditional, unsecured and unsubordinated obligations of the Republic …. **The payment obligations of the Republic under the Securities shall at all times rank at least equally with all of other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement)**.

FAA at ¶1(c) (emphasis supplied).

       50.    According to its plain language, the Equal Treatment Provision means that

Argentina may not make a payment to a holder of External Indebtedness without a ratable

payment being made at the same time to NML.

       51.    As the Second Circuit has held, the first sentence of the Equal Treatment

Provision "prohibits Argentina, as bond *issuer*, from formally subordinating the bonds by issuing

superior debt. The second sentence . . . prohibits Argentina, as bond *payor*, from paying on other

bonds without paying on the FAA Bonds."  *NML Capital, Ltd. v. Republic of Argentina*, 699

F.3d 246, 259 (2d Cir. 2012).

       52.    In 2005, Argentina restructured its debt by offering a bond exchange to all

holders of non-performing external debt (the "2005 Exchange").

       53.    Holders of approximately 25% of Argentina's external debt did not

participate in the 2005 Exchange ("Non-tendering Bondholders").

       54.    NML did not participate in the 2005 Exchange.

       55.    Bondholders who participated in the 2005 Exchange received bonds

scheduled to pay semi-annual interest.

56.   In 2005, Argentina began making semi-annual interest payments to holders of bonds issued in the 2005 Exchange (such bonds, the "2005 Exchange Bonds," and such holders, the "2005 Exchange Bondholders").

57.   Argentina paid all subsequent interest due on the 2005 Exchange Bonds until the payment that came due on June 30, 2014.  On June 26, 2014 Argentina attempted to initiate payment to certain holders of 2005 Exchange Bonds by transmitting funds to the Bank of New York Mellon ("BNY") as trustee.  By reason of Orders issued by the Court, BNY did not further transmit these funds to holders of the 2005 Exchange Bonds.  *NML Capital, Ltd v. The Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 6, 2014) (ECF No. 633).Upon information and belief, Argentina intends to continue paying or attempting to pay interest on all 2005 Bonds as it becomes due.

58.   To facilitate the 2005 Bond Exchange, the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,017 ("the Lock Law") on February 9, 2005.  A copy of Law 26,017 and a certified translation are annexed hereto as Exhibit D.

59.   In its January 28, 2010 Prospectus, Argentina explained the purpose and effect of the Lock Law as follows:

> In an effort to reassure tendering Bondholders and increase the level of participation on the 2005 debt exchange, Congress subsequently passed Law 26,017, known as the "Lock Law."  The Lock Law prohibited the Executive Branch from reopening the Debt Exchange without Congressional approval **and also prohibited any type of settlement involving untendered securities that were eligible to participate in the 2005 Debt Exchange….**

(Emphasis supplied).

60.   The assurances to tendering bondholders provided by Law 26,017 facilitated Argentina's completion of the 2005 Bond Exchange.

61.     Article 1 of Law 26,017 provided that Bonds not tendered in the 2005 Exchange would be subject to the following provisions:

    a.    Article 2 – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.

    b.    Article 3 - The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.

    c.    Article 4 - The national Executive Power must – within the framework of the terms of the issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions – order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

62.     In 2009, in preparation for another bond exchange in 2010, the Senate and Chamber of Deputies of the Argentine Nation passed Law No. 26,547 which, among other things, suspended the Lock Law for purposes of the 2010 Exchange. A copy of Law 26,547 and a certified translation are annexed hereto as Exhibit E.

63.     Law 26,547 provided:

    a.    Article 1.  The operation of Articles 2, 3, and 4 of Law No. 26,017 is suspended until 31 December 2010, or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the public instruments covered by said law is completed, whichever occurs first.

    b.    Article 3.  The financial terms and conditions that may be offered may not be equal to or better than those offered to creditors in the debt restructuring established by Decree No. 1735/04.

    c.    Article 5.  It is forbidden to offer to the holders of public debt that have brought judicial, administrative, or

> arbitration proceedings or any other type of proceeding treatment more favorable than the treatment afforded to holders who did not bring such proceedings.

64.    The prospectus for Argentina's 2010 Exchange stated:

> Eligible Securities in default that are not exchanged pursuant to the Invitation may remain in default indefinitely.  In light of its financial and legal constraints, *Argentina does not expect to resume payments on any eligible Securities in default that remain outstanding following the expiration of the Invitation*.  Argentina has opposed vigorously, and intends to continue to oppose, attempts by holders who did not participate in its prior exchange offers to collect on its defaulted debt through . . . litigation . . .  and other legal proceedings against Argentina.  Argentina remains subject to significant legal constraints regarding its defaulted debt. . . .
> Consequently, if you elect not to tender your Eligible Securities in default pursuant to the Invitation *there can be no assurance that you will receive any future payments or be able to collect through litigation in respect of your Eligible Securities in default.*

65.    NML did not participate in the 2010 Exchange (NML and other Argentine bond holders that participated in neither the 2005 Exchange nor the 2010 Exchange, the "Non-tendering Bondholders").

66.    In 2013, Argentina enacted Law 26,886 purportedly to reopen the bond exchange on the same terms that had been repeatedly rejected by plaintiff.  While Law 26,886 suspends certain provisions of the Lock Law, this suspension has no practical effect, because Law 26,886 "forbid[s]" Argentina from paying NML according to its contract, and only allows Argentina to pay NML on terms that are no "more favorable" than the terms of the original Exchange Offer.  A copy of Law 26,886 and a certified translation are annexed hereto as Exhibit F.

67.    Argentine courts have held that the Lock Law and the Moratorium prevent them from recognizing and enforcing Non-tendering Bondholders' New York judgments.

68.     Argentina violated the Equal Treatment Provision of the FAA by relegating NML's Bonds to a non-paying class pursuant to Law 26,517.

69.     In 2010, Argentina began making semi-annual interest payments to holders of bonds issued in the 2010 Exchange (such bonds, the "2010 Exchange Bonds," and such holders, the "2010 Exchange Bondholders.").

70.     Argentina paid all interest due on the 2010 Exchange Bonds until the payment due on June 30, 2014.  On June 26, 2014 Argentina attempted to initiate payment to certain holders of 2010 Exchange Bonds by transmitting funds to BNY as trustee.  By reason of Orders issued by the Court, BNY did not further transmit those funds to holders of the 2010 Exchange Bonds.  *NML Capital, Ltd v. The Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 6, 2014) (ECF No. 633).

71.     Upon information and belief, Argentina intends to continue paying or attempting to pay interest on all 2010 Exchange Bonds as it becomes due.

72.     Upon information and belief, Argentina will continue to pay nothing to NML.

73.     NML and the other non-tendering bondholders have been damaged as a result of these violations and will continue to be damaged by the continuing violations of the Equal Treatment Provision.

74.     In October 2010, NML sought specific performance of the Equal Treatment Provision in this and two other pre-judgment cases.[1]

75.     On December 7, 2011, the Court held that Argentina's actions, as described in paragraphs 56-71, *supra*, violated the Equal Treatment Provision of the FAA and

---

[1]     *NML Capital, Ltd v. The Republic of Argentina* 08 Civ. 6978, 09 Civ. 1707, 09 Civ. 1708 ("Pre-judgment Cases").

granted partial summary judgment to NML on claims for specific performance of the Equal Treatment Provision.  A true and correct copy of the Court's December 7, 2011 Order is annexed hereto as Exhibit G.

76.    On February 23, 2012, the Court:

a.    held that NML had no adequate remedy at law and that, absent equitable relief, NML would suffer irreparable harm;

b.    held that the equities strongly supported injunctive relief;

c.    held that Argentina had the financial wherewithal to meet its payment obligations to NML in those cases; and

d.    issued an injunction to remedy Argentina's continuing violations of the Equal Treatment Provision, which required Argentina to specifically perform its obligations under the Equal Treatment Provision by making ratable payment to NML whenever it paid the 2005 or 2010 Exchange Bondholders the amounts due on their bonds.

77.    A true and correct copy of the Court's February 23, 2012 Order is annexed hereto as Exhibit H.

78.    On October 26, 2012, the Second Circuit affirmed the Court's February 23, 2012 Order, but remanded the injunction for clarification.  *NML Capital, Ltd v. The Republic of Argentina*, No. 12-105(L) (2d Cir. Oct. 26, 2012) (ECF No. 442).

79.    Although the Second Circuit's judgment was not final, Argentina petitioned for a writ of certiorari to the United States Supreme Court on October 7, 2013.  The petition was denied.  *Republic of Argentina v. NML Capital, Ltd., et al.*, No. 12-1494 (S. Ct. Oct. 7, 2013).

80.     On November 21, 2012, the Court issued an Amended Order requiring Argentina to specifically perform its obligations under the Equal Treatment Provision by making ratable payment to NML whenever it paid the 2005 and 2010 Exchange Bondholders the amounts due on their bonds.  A true and correct copy of the Court's November 21, 2012 Order (the "Amended February 23 Order") is annexed hereto as Exhibit I.

81.     In response to the Orders of the Court and the affirmances of the Second Circuit in NML's Pre-judgment Cases, Argentine officials, including President Kirchner, have repeatedly stated that Argentina has no intention of ever paying NML.

82.     For example, in November 2012, after the Second Circuit affirmed the February 23, 2012 Order and remanded the injunction for clarification, President Kirchner stated that Argentina was going to pay the Exchange Bonds, but "not one dollar to the 'vulture funds.'"

83.     During the oral argument of the appeal from the Court's Amended February 23 Order, Argentina's counsel told the Second Circuit Court of Appeals that Argentina would not voluntarily obey any order requiring ratable payment to NML.

84.     On August 23, 2013, the Second Circuit affirmed the Amended February 23 Order.  *NML Capital, Ltd v. The Republic of Argentina*, No. 12-105(L) (2d Cir. Aug. 23, 2012) (ECF No. 1001).

85.     Shortly thereafter, President Kirchner announced that Argentina would offer a new bond exchange that would replace the New York law-governed Exchange Bonds with new bonds governed by Argentine law and payable in Argentina.  This plan to evade the rulings of United States courts evidences Argentina's continuing intention not to fulfill its obligations pursuant to the Equal Treatment Provision.

86.     Argentina subsequently filed another petition for a writ of certiorari, seeking review by the Supreme Court of the Second Circuit's affirmance of the Amended February 23 Order.   That petition was also denied.   *Exchange Bondholder Group v. NML Capital, Ltd., et al.*, No. 13-991 (S. Ct. June 16, 2014).

87.     After this second petition for writ of certiorari was denied, Argentina's Economy Minister Axel Kicillof announced a plan—nearly identical to the plan announced in August 2013 by President Kirchner—to evade the Court's Amended February 23 Order by swapping the Exchange Bonds for new bonds payable in Argentina and outside the Court's reach.

88.     On June 20, 2014, the Court promptly issued an Order ruling that Minister Kicillof's proposed bond swap was in violation of the Court's Orders.   A true and correct copy of the Court's June 20, 2014 Order is annexed hereto as Exhibit J.

89.     Six days later, on June 26, 2014, Argentina attempted to initiate payment to certain holders of the Exchange Bonds by transmitting funds to BNY as trustee, without making ratable payment to NML.

90.     On August 6, 2014, the Court issued an Order finding that the June 26, 2014 payment by Argentina to BNY was illegal and in violation of the Court's previous Orders. A true and correct copy of the Court's August 6, 2014 Order is annexed hereto as Exhibit K.

91.     Argentina's President Kirchner subsequently announced that Argentina would enact legislation to change the manner in which it makes payments on the Exchange Bonds, such that BNY would be removed as trustee for certain Exchange Bonds and all Exchange Bonds would be paid from a single account in Argentina through a financial institution called *Nación Fideicomisos* that Argentina controls.   Argentina has taken steps to carry out this

plan.  The "Legal Notice" published in The New York Times on September 22, 2014, is attached as Exhibit L hereto.  These actions are another attempt by Argentina to evade the rulings of the Court and to flout its obligations under the Equal Treatment Provision.

92.     As a result of these flagrant and unlawful activities, NML moved by order to show cause to hold Argentina in civil contempt of court.  On September 29, 2014, the Court issued an Order holding Argentina in civil contempt; and on October 3, 2014, the Court issued an Amended and Supplemental Order regarding Argentina's civil contempt.  A true and correct copy of the Court's September 29, 2014 Order is annexed hereto as Exhibit M, and a true and correct copy of the Court's October 3, 2014 Order is annexed hereto as Exhibit N.

93.     Since May 2014, the Republic began issuing bonds the "BONAR 2024 Bonds, which like the bonds issued in the 2005 and 2010 Bond Exchanges are also External Indebtedness.  Argentina has made payments on the BONAR 2024 Bonds, and on information and belief, it will continue to make payments on and issue more BONAR 2024 Bonds – all while paying nothing to NML and other bondholders who did not participate in the 2005 and 2010 Bond Exchanges – in violation of the Equal Treatment Provision.

94.     In May 2014, Argentina initially offered and eventually issued $3.25 billion of BONAR 2024 Bonds to the Spanish oil company, Repsol S.A., to settle claims Repsol had asserted against Argentina, including claims pending in New York and Spanish courts.

95.     Argentina structured the offer to facilitate the issuance of the BONAR 2024 Bonds to Repsol and other international investors.  As part of the settlement agreement with Repsol, Argentina agreed that the BONAR 2024 Bonds would clear through Euroclear, which would make the bonds more attractive to international investors.  JPMorgan also conducted a "shadow bookbuilding process" to ensure that the bonds could be immediately

distributed to international investors interested in purchasing the newly-issued BONAR 2024 Bonds immediately after Repsol received those bonds. Accordingly, just days after Argentina delivered the BONAR 2024 Bonds, Repsol sold them all to JPMorgan Securities PLC, JPMorgan's London-based broker-dealer.  Since their original issuance, the BONAR 2024 Bonds have been actively traded in the over-the-counter market in the United States.

96.     In December, 2014, Argentina issued approximately $650 million additional BONAR 2024 Bonds.  Approximately $380 million of these BONAR 2024 Bonds offered in December 2014 were issued in exchange for BODEN 2015 bonds, with the rest a new issuance of bonds. ██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████

97.     In February 2015, Argentina planned to issue more BONAR 2024 Bonds through an underwriting by JPMorgan and Deutsche Bank. ███████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████

98.     ██████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

99.    █████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████

100.    Argentina "suspended" the issuance on February 26, 2015, after this Court

compelled JPMorgan and Deutsche Bank to provide discovery about the transaction, ████████

███████████████████████████████████████████

███████████████████████████████████████████

Argentina resumed the issuance process by announcing on April 21 that it would issue more

BONAR 2024 Bonds, in a transaction that would settle just two days later.

101.    As it had since February, Deutsche Bank continued to play a key role in

the offering, again, on information and belief, as Argentina's agent or in concert with Argentina.

Deutsche Bank's New York syndicate desk immediately notified investors that it was taking

orders. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ The Spanish

bank BBVA also accounted for a major portion of the BONAR 2024 Bonds issued in April.  In all, Argentina sold over $1.4 billion principal amount of BONAR 2024 Bonds in the April 2015 issuance, the majority of which was placed by Deutsche Bank.

102.    Argentina tried to create a false appearance that the BONAR 2024 Bonds issued in April 2015 were offered exclusively within Argentina.  As an example, Argentina announced that orders could only be placed through a lengthy list of eligible institutional purchasers in Argentina.

103.    In reality, affiliates of international banks purchased and re-sold internationally almost the entire offering.

104.    Notwithstanding these efforts to disguise the nature of the April 2015 issuance, Argentina targeted international investors and took regulatory steps to encourage their participation.  For example, Argentina enacted regulatory changes which made it easier for foreign purchasers to receive their bonds.  Moreover, on the day Argentina accepted bids for the offering, the Buenos Aires Securities Market, "Merval," issued a notice to its agents that they could "use transfers to Merval's account [in] NY as a means of payment" for the BONAR 2024 Bonds.  Almost all of the bonds were sold to international investors.  Argentina's leaders then publicly trumpeted the offering as evidence of Argentina's ability to tap into the international markets.

105.    Since May 2014, Argentina has issued approximately $5.3 billion of BONAR 2024 Bonds.

106.    In violation of its obligations under the Equal Treatment Provision of the FAA, Argentina made its first payment on the BONAR 2024 Bonds on November 7, 2014, and its second payment on May 7, 2015.

107.    Upon information and belief, Argentina intends to make all payments due under the terms of the BONAR 2024 Bonds.

108.    Upon information and belief, Argentina intends to issue additional External Indebtedness in the future.

109.    Upon information and belief, Argentina intends to make all payments due under the terms of any other existing or future External Indebtedness.

110.    In addition to the bonds issued in the 2005 and 2010 Bond Exchanges and the BONAR 2024 Bonds, Argentina has issued other External Indebtedness, made payments on such External Indebtedness and on information and belief, it will continue to make payments on and issue more of such External Indebtedness.

111.    Argentina's issuance of and payments on the BONAR 2024 Bonds and other External Indebtedness constitute additional violations of the Equal Treatment Provision of the FAA.

112.    NML now seeks payment of the principal amount of NML's Bonds together with any accrued and unpaid interest and specific performance of the Equal Treatment Provision in this case with respect to its beneficial holdings of bonds issued pursuant to the FAA.  NML also seeks specific enforcement of the Equal Treatment Provision with respect to the BONAR 2024 Bonds and with respect to all External Indebtedness.

### FIRST CLAIM FOR RELIEF
(For Breach of Contract on the 11% Bonds)

113.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 112 herein.

114.    The 11% Bonds matured on October 9, 2006, at which time the entire principal amount of the Bonds became due and payable.

115.     On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was demanding immediate payment of the $225,000 principal amount of the 11% Bonds held by Plaintiff together with any accrued and unpaid interest.

116.     Argentina has failed to make any payments of principal or interest on the 11% Bonds to the Plaintiff.

117.     By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $225,000, together with prejudgment interest at the statutory rate.

## SECOND CLAIM FOR RELIEF
(For Breach of Contract on the 11.75% Bonds)

118.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 117 herein.

119.     Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 11.75% Bonds entitling Plaintiff to declare the principal amount of the 11.75% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

120.     On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $11,290,000 principal amount of the 11.75% Bonds held by Plaintiff, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

121.     Despite this notice, Argentina has failed to make any payments of principal or interest on the 11.75% Bonds to the Plaintiff.

122.    By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $11,290,000, together with any accrued and unpaid interest due under the terms of the 11.75% Bonds.

## THIRD CLAIM FOR RELIEF
(For Breach of Contract on the 11.375% Bonds)

123.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 122 herein.

124.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 11.375% Bonds entitling Plaintiff to declare the principal amount of the 11.375% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

125.    On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $10,260,000 principal amount of the 11.375% Bonds Plaintiff holds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

126.    Despite this notice, Argentina has failed to make any payments of principal or interest on the 11.375% Bonds to the Plaintiff.

127.    By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $10,260,000, together with any accrued and unpaid interest due under the terms of the 11.375% Bonds.

## FOURTH CLAIM FOR RELIEF
(For Breach of Contract on the 12.375% Bonds)

128.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 127 herein.

129.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 12.375% Bonds entitling Plaintiff to declare the principal amount of the 12.375% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

130.    On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $10,500,000 principal amount of the 12.375% Bonds Plaintiff holds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

131.    Despite this notice, Argentina has failed to make any payments of principal or interest on the 12.375% Bonds to the Plaintiff.

132.    By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $10,500,000, together with any accrued and unpaid interest due under the terms of the 12.375% Bonds.

### FIFTH CLAIM FOR RELIEF
(For Breach of Contract on the 11-3/8% Bonds)

133.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 132 herein.

134.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 11-3/8% Bonds entitling Plaintiff to declare the principal amount of the 11-3/8% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

135.    On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $42,155,000 principal amount of the 11-3/8% Bonds Plaintiff holds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

136.    Despite this notice, Argentina has failed to make any payments of principal or interest on the 11-3/8% Bonds to the Plaintiff.

137.    By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $42,155,000, together with any accrued and unpaid interest due under the terms of the 11-3/8% Bonds.

## SIXTH CLAIM FOR RELIEF
(For Breach of Contract on the 12% Bonds)

138.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 137 herein.

139.    Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 12% Bonds entitling Plaintiff to declare the principal amount of the 12% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

140.    On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $1,100,000 principal amount of the 12% Bonds Plaintiff holds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

141.    Despite this notice, Argentina has failed to make any payments of principal or interest on the 12% Bonds to the Plaintiff.

28

142.   By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $1,100,000, together with any accrued and unpaid interest due under the terms of the 12% Bonds.

### SEVENTH CLAIM FOR RELIEF
(For Breach of Contract on the 9.75% Bonds)

143.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 142 herein.

144.   Pursuant to Sections 12(a) and (d) of the FAA, the declaration of a moratorium and the nonpayment of interest constitute Events of Default on the 9.75% Bonds entitling Plaintiff to declare the principal amount of the 9.75% Bonds it holds, together with any accrued and unpaid interest, to be due and payable immediately.

145.   On or about August 1, 2008, Plaintiff advised Argentina, by written notice to Argentina's Fiscal Agent, that it was declaring $5,550,000 principal amount of the 9.75% Bonds Plaintiff holds, together with any accrued and unpaid interest, immediately due and payable pursuant to Section 12 of the FAA.

146.   Despite this notice, Argentina has failed to make any payments of principal or interest on the 9.75% Bonds to the Plaintiff.

147.   By reason of the foregoing Argentina has breached its contractual obligations to Plaintiff, and Argentina is liable to Plaintiff for damages in amount to be determined at trial, but not less than $5,500,000, together with any accrued and unpaid interest due under the terms of the 9.75% Bonds.

### EIGHTH CLAIM FOR RELIEF
(For Specific Enforcement of the Equal Treatment Provision and for Injunctive Relief)

148.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 147 herein.

149.    Pursuant to ¶ 1(c) of the FAA, Argentina provided that its bonds issued pursuant to the FAA would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without preference among themselves . . . ." and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness…."

150.    Argentina, therefore, may not make any payment of its External Indebtedness without also making a ratable payment at the same time to NML.

151.    Through the passage of Law 26,017, Argentina issued a new series of bonds with payment obligations that rank higher than those held by NML and other non-tendering Bondholders in violation of the Equal Treatment Provision.

152.    Through the passage of Law 26,547 Argentina issued a new series of bonds with payment obligations that rank higher than those held by NML and other non-tendering Bondholders in violation of the Equal Treatment Provision.

153.    The bonds issued in the Exchanges are External Indebtedness and their issuance violated the Equal Treatment Provision.

154.    Argentina's past payment of interest to 2005 Bondholders, while paying nothing to NML and other non-tendering bondholders, violated the Equal Treatment Provision.

155.    Argentina's continuing payments of interest to 2005 Bondholders will be a continuing violation of the Equal Treatment Provision.

156.   Argentina's payment of the scheduled interest to 2010 Bondholders will be a continuing violation of the Equal Treatment Provision.

157.   NML has suffered irreparable injury from Argentina's violation of the Equal Treatment Provision and will continue to suffer such injury unless the Court specifically enforces that Provision with a mandatory injunction requiring Argentina to pay NML ratably whenever it pays interest to 2005 or 2010 Bondholders.

158.   Remedies available at law are inadequate to compensate for such injury.

159.   NML has performed its part of the contract with Argentina.

160.   Argentina is capable of performing its obligations pursuant to the Equal Treatment Provision.

161.   The balance of the equities tips toward the issuance of an injunction.

162.   The public interest would not be disserved by a permanent injunction.

### NINTH CLAIM FOR RELEIF
**(For Specific Enforcement of the Equal Treatment Provision and
for Injunctive Relief With Respect to the BONAR 2024 Bonds)**

163.   NML repeats and realleges the allegations set forth in paragraphs 1 through 162 herein.

164.   Pursuant to section 1(c) of the Fiscal Agency Agreement, the Argentina provided that its bonds issued pursuant to the Fiscal Agency Agreement would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without preference among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

165.  Argentina, therefore, may not make any payment of its External Indebtedness without also making a ratable payment at the same time to NML.  Any payment of External Indebtedness where Argentina does not also make a ratable payment at the same time to NML constitutes a violation of the Equal Treatment Provision.

166.  With the issuance of the BONAR 2024 Bonds, Argentina issued a new series of bonds with payment obligations that rank higher than those held by NML and other non-tendering bondholders in violation of the Equal Treatment Provision.

167.  The BONAR 2024 Bonds are External Indebtedness.  The issuance of the BONAR 2024 Bonds to date and future issuances of these bonds has violated and will violate the Equal Treatment Provision.

168.  Argentina's past payments to the holders of the BONAR 2024 Bonds, while paying nothing to NML and other non-tendering bondholders, violated the Equal Treatment Provision.

169.  Argentina's continuing payments to the holders of the BONAR 2024 Bonds will be a continuing violation of the Equal Treatment Provision.

170.  NML has suffered irreparable injury from Argentina's violation of the Equal Treatment Provision and will continue to suffer such injury unless the Court specifically enforces that Provision with a mandatory injunction requiring Argentina to pay NML ratably whenever it pays interest to the holders of the BONAR 2024 Bonds.

171.  Remedies available at law are inadequate to compensate for such injury.

172.  NML has performed its part of the contract with Argentina.

173.  Argentina is capable of performing its obligations pursuant to the Equal Treatment Provision.

174.  The balance of the equities tips toward the issuance of an injunction.

175.  The public interest would not be disserved by a permanent injunction.

**TENTH CLAIM FOR RELEIF**
**(For Specific Enforcement of the Equal Treatment Provision and**
**for Injunctive Relief With Respect to All External Indebtedness)**

176.  NML repeats and realleges the allegations set forth in paragraphs 1 through 175 herein.

177.  Pursuant to section 1(c) of the Fiscal Agency Agreement, Argentina provided that its bonds issued pursuant to the Fiscal Agency Agreement would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without preference among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

178.  Argentina, therefore, may not make any payment of its External Indebtedness without also making a ratable payment at the same time to NML.  Any payment of External Indebtedness where the Republic of Argentina does not also make a ratable payment at the same time to NML constitutes a violation of the Equal Treatment Provision.

179.  The Republic of Argentina has issued—and, on information and belief, will issue in the future—External Indebtedness in violation of the Equal Treatment Provision.

180.   Argentina's past payments to the holders of External Indebtedness, while paying nothing to NML and other non-tendering bondholders, violated the Equal Treatment Provision.

181.  Argentina's continuing payments to the holders of External Indebtedness—including External Indebtedness that the Republic of Argentina will issue in the future—will be a continuing violation of the Equal Treatment Provision.

182.  NML has suffered irreparable injury as a result of Argentina's violation of the Equal Treatment Provision and will continue to suffer such injury unless the Court specifically enforces that Provision with a mandatory injunction requiring Argentina to pay NML ratably whenever it pays interest to the holders of External Indebtedness (including, for the avoidance of doubt, any bonds with the ISIN ARARGE03H413, whether issued before or after the entry of the injunction) or holders of "Replacement Obligations" (meaning bonds or other obligations issued, whether before or after entry of the injunction, in exchange, substitution, restructuring, refinancing or satisfaction of any BONAR 2024 Bonds or other Replacement Obligations).

183.  Remedies available at law are inadequate to compensate for such injury.

184.  NML has performed its part of the contract with Argentina.

185.  Argentina is capable of performing its obligations pursuant to the Equal Treatment Provision.

186.  The balance of the equities tips toward the issuance of an injunction.

187.  The public interest would not be disserved by a permanent injunction.

WHEREFORE, Plaintiff NML demands judgment against the Republic of Argentina, as follows:

a.      On the First Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $225,000, together with prejudgment interest at the statutory rate.

b.      On the Second Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $11,290,000, together with any accrued and unpaid interest due under the terms of the 11.75% Bonds.

c.      On the Third Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $10,260,000, together with any accrued and unpaid interest due under the terms of the 11.375% Bonds.

d.      On the Fourth Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $10,500,000, together with any accrued and unpaid interest due under the terms of the 12.375% Bonds.

e.      On the Fifth Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $42,155,000, together with any accrued and unpaid interest due under the terms of the 11-3/8% Bonds.

f.      On the Sixth Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $1,100,000, together with any accrued and unpaid interest due under the terms of the 12% Bonds.

g.      On the Seventh Claim for Relief, awarding Plaintiff a money judgment in an amount to be determined at trial, but not less than $5,500,000, together with any accrued and unpaid interest due under the terms of the 9.75% Bonds.

h.      On the Eighth Claim for Relief, an Order specifically enforcing the Equal Treatment Provision with respect to all outstanding External Indebtedness and to all External Indebtedness that the Republic of Argentina will issue in the future by requiring ratable payment to NML whenever Argentina makes or attempts to make payments on the 2005 and 2010 Exchange Bonds..

i.          On the Ninth Claim for Relief, an Order specifically enforcing the Equal Treatment Provision with respect to the BONAR 2024 Bonds;

j.          On the Tenth Claim for Relief, an Order specifically enforcing the Equal Treatment Provision with respect to all External Indebtedness; and

k.          Awarding Plaintiff its costs, prejudgment interest, attorneys' fees and such other and further relief as the Court shall deem just and proper.

Dated: New York, New York
      July 20, 2015

DECHERT LLP

By: /s/ Robert A. Cohen
Robert A. Cohen
(robert.cohen@dechert.com)
Dennis H. Hranitzky
(dennis.hranitzky@dechert.com)

1095 Avenue of the Americas
New York, NY  10036-6797
Telephone (212) 698-3500
Facsimile (212) 698-3599

*Attorneys for Plaintiff NML Capital, Ltd.*