UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
NML CAPITAL, LTD.,                                         :   03 Civ. 8845 (TPG)
                                                           :   05 Civ. 2434 (TPG)
                        Plaintiff,                         :   06 Civ. 6466 (TPG)
                                                           :   07 Civ. 1910 (TPG)
v.                                                         :   07 Civ. 2690 (TPG)
                                                           :   07 Civ. 6563 (TPG)
THE REPUBLIC OF ARGENTINA,                                 :   08 Civ. 2541 (TPG)
                                                           :   08 Civ. 3302 (TPG)
                        Defendant.                         :   08 Civ. 6978 (TPG)
                                                           :   09 Civ. 1707 (TPG)
                                                           :   09 Civ. 1708 (TPG)
                                                           :
-----------------------------------------------------------x


# REPLY MEMORANDUM OF LAW IN SUPPORT OF NML CAPITAL, LTD.'S MOTION FOR DISCOVERY SANCTIONS


DECHERT LLP                                   GIBSON, DUNN & CRUTCHER LLP

Robert A. Cohen                               Theodore B. Olson
Debra D. O'Gorman                             Matthew D. McGill
Collin F. Hessney                             Jason J. Mendro
1095 Avenue of the Americas                   Christopher B. Leach
New York, N.Y. 10036                          1050 Connecticut Avenue, N.W.
Telephone:    212.698.3500                    Washington, D.C. 20036
Facsimile:    212.698.3599                    Telephone:    202.955.8500
                                              Facsimile:    202.467.0539

*Attorneys for Plaintiff NML Capital, Ltd.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

    I.    Argentina Violated The Discovery Order. ............................................................2

    II.    The Proposed Sanctions Are Just And Specifically Related To The Facts That NML Sought To Prove Through Discovery. ..................................................3

        A.    The Court Should Preclude Argentina From Arguing That Its Property Is Immune From Attachment Or That It Is Not An Alter Ego Of BCRA, ENARSA, and YPF............................................3

        B.    This Court Should Hold That NML Established That Argentina's Property In The United States Is Being Used For A Commercial Activity. ..................................................................4

        C.    This Court Should Hold That NML Established Facts Supporting The Claim That Argentina Is An Alter Ego Of BCRA, ENARSA, And YPF. ..................................................................7

    III.    Argentina Waived Any Privileges Against Production. ...........................................8

    IV.    Rule 37(b)(2)(C) Requires An Award Of Expenses. ...............................................9

    V.    Local Rule 37.2 Does Not Bar NML's Relief. .......................................................10

CONCLUSION ...................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adrian Shipholding Inc. v. Lawndale Grp. S.A.*,
  No. 08 Civ. 11124, 2012 WL 104939 (S.D.N.Y. Jan. 13, 2012) .................................................. 4

*Aurelius Capital Master, Ltd. v. Republic of Argentina*,
  589 F. App'x 16 (2d Cir. 2014) .................................................................................................. 2

*Aurelius Capital Partners, LP v. Republic of Argentina*,
  584 F.3d 120 (2d Cir. 2009) ....................................................................................................... 6

*Aurelius Capital Partners, LP v. Republic of Argentina*,
  No. 07-cv-2715, 2012 WL 983564 (S.D.N.Y. Mar. 22, 2012) ................................................... 6

*Funnekotter v. Republic of Zimbabwe*,
  No. 09 Civ. 08168, 2011 WL 5517860 (S.D.N.Y. Nov. 10, 2011) ............................................ 4

*Harley v. Nesby*,
  No. 08-CIV-5791, 2011 WL 6188718 (S.D.N.Y. Dec. 12, 2011) ............................................ 10

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) ................................................................................................................... 5

*Kaplan v. S.A.C. Capital Advisors., L.P.*,
  No. 12-cv-9350 (S.D.N.Y. July 21, 2015) ................................................................................. 9

*Lyondell-Citgo Ref., LP v. Petroleos de Venezuela, S.A.*,
  No. 02-cv-795, 2005 WL 1026461 (S.D.N.Y. May 2, 2005) ..................................................... 4

*Novak v. Wolpoff & Abramson LLP*,
  536 F.3d 175 (2d Cir. 2008) ....................................................................................................... 9

*Republic of Argentina v. NML Capital, Ltd.*,
  134 S. Ct. 2250 (2014) ............................................................................................................ 5, 9

*Smith ex rel. Smith v. Islamic Emirate of Afghanistan*,
  262 F. Supp. 2d 217 (S.D.N.Y. 2003) ........................................................................................ 5

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................................ 9

Fed. R. Civ. P. 37 ........................................................................................................................ 3, 9

**Other Authorities**

Restatement (Second) of Judgments ................................................................................................ 8

Vienna Convention on Diplomatic Relations,
  23 U.S.T. 3227 ............................................................................................................................. 6

Case 1:08-cv-06978-TPG   Document 811   Filed 07/31/15   Page 4 of 15

**INTRODUCTION**

The Republic of Argentina ("Argentina") has willfully and persistently violated this Court's 2013 order (the "Discovery Order") compelling Argentina to produce discovery in response to NML Capital, Ltd.'s ("NML") discovery requests (the "Requests"). That violation—which Argentina does not dispute—warrants sanctions under Federal Rule of Civil Procedure 37. Argentina's arguments to the contrary are meritless and distort both the text and spirit of the Federal Rules of Civil Procedure.

According to Argentina's opposition ("Opp."), this Court cannot sanction Argentina for defying the Discovery Order because NML (so far) has not been able to enforce its judgments against Argentina or to prove what is contained in the documents Argentina has refused to produce. In essence, Argentina argues that its bad faith excuses its bad faith. That is not the law.

Argentina's remaining arguments are equally flawed. The Foreign Sovereign Immunities Act of 1976 ("FSIA") does not prohibit the Court from using ordinary discovery sanctions to allow parties to establish certain facts relevant to whether a foreign sovereign's property is immune from attachment. Argentina mischaracterizes NML's motion as a request that the Court refrain from analyzing whether Argentina's property is immune from attachment, when, in fact, NML only seeks findings as to factual matters that Argentina's refusal to provide discovery has impeded NML from proving. That the factual findings NML seeks are relevant to attachment of Argentina's property does not infringe Argentina's immunities under the FSIA.

Nor would the proposed sanctions violate the rights of third parties. The sanctions would have no effect on any party other than Argentina.

Finally, Argentina's last-ditch resort to the conferral provisions of the local rules as a means of escaping its blatant violation of the Federal Rules is as flawed as it is ironic. This Court has made clear in recent years that the parties need not request pre-motion conferences

prior to filing discovery motions in this matter, and, in any event, requiring one here would only unnecessarily delay resolution of this dispute and undermine the litigation efficiencies that the rule promotes.  Argentina has made it crystal clear that it does not intend to comply with this Court's discovery orders.  NML's motion for sanctions should be granted.

## ARGUMENT

I.       **Argentina Violated The Discovery Order.**

Argentina does not seriously dispute that it has violated, and *continues to violate*, this Court's Discovery Order.  The Discovery Order granted NML's June 27, 2013 Motion to Compel and commanded Argentina to "produce all information responsive to the NML Requests . . . within 30 days of the date of [the] Order."  Decl. of Robert A. Cohen, Ex. D, at 5-6, No. 03-cv-8834, D.E. 603-1 (S.D.N.Y. June 17, 2015).  The Court of Appeals affirmed the Order "in all respects."  *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014).  Yet Argentina has done next to nothing to answer NML's three-year-old Requests.

Argentina protests that it has "produced responsive answers and documents to plaintiffs . . . ." Opp. 5.  But Argentina cites its September 27, 2012 "Responses and Objection" to NML's Interrogatories and Requests for Production.  Opp. 5-6.  This Court already found those responses inadequate when it granted NML's motion to compel in the Discovery Order.  *See* Cohen Decl., *supra*, Ex. B.

Argentina further asserts that it "has in fact made an additional production to plaintiffs consisting of a variety of responsive documents." Opp. 9.  But Argentina made this "additional production" on July 15, 2015—*two days* before Argentina filed its opposition, and weeks after NML moved for sanctions.  The production of these documents—nearly all of which appear to be minutes from board-of-director meetings or other publicly available documents, and appear only to relate to alter ego discovery regarding Yacimientos Petrolíferos Fiscales S.A. ("YPF")

2

and Energía Argentina S.A. ("ENARSA"), and do not even begin to satisfy Argentina's discovery obligations under the Discovery Order—does not demonstrate that Argentina has been cooperating with NML's Requests in good faith. Instead, by confirming that its meager production is responsive to NML's Requests, Argentina has merely demonstrated that it *was* withholding responsive information when NML moved for sanctions. And Argentina has not argued—and certainly has not demonstrated—that it is not withholding additional responsive information. Its thirteenth-hour production is cynical gamesmanship.[1]

## II.     The Proposed Sanctions Are Just And Specifically Related To The Facts That NML Sought To Prove Through Discovery.

NML seeks two related sanctions: (1) that Argentina be ***precluded from arguing*** that (a) its property is immune from attachment under FSIA Section 1610(a), and (b) Banco Central de la República Argentina ("BCRA"), ENARSA, and YPF are not its alter egos, Mem. of L. in Supp. of NML Capital, Ltd.'s Mot. for Discovery Sanctions 12-13 ("NML Mot."); and (2) that the Court hold that NML has established that (a) Argentina's property in the United States is being used for commercial activity and (b) Argentina dominates and controls BCRA, ENARSA, and YPF in the ways enumerated in NML's motion, NML Mot. 15. Rule 37(b)(2)(A) contemplates both sanctions, and Argentina's opposition confirms they are appropriately imposed here.

### A.     The Court Should Preclude Argentina From Arguing That Its Property Is Immune From Attachment Or That It Is Not An Alter Ego Of BCRA, ENARSA, and YPF.

Argentina opposes precluding it from raising immunity and alter ego arguments on only one ground: that this sanction does not relate to a "claim" under Rule 37(b)(2)(A)(ii). Opp. 13.

---

[1] Argentina does not contend that its January 30, 2015 letter satisfied its obligations under the Discovery Order, and it plainly did not. Opp. 7. And Argentina's complaints regarding NML's efforts to obtain discovery from third parties are deeply ironic, Opp. 3-4, since Argentina's defiance of its own discovery obligations has only heightened NML's need to seek information from others.

3

That contention is meritless.  Courts construe the term "claim" broadly, and they recognize that it includes a party's contentions that an entity is a defendant's alter ego, *Funnekotter v. Republic of Zimbabwe*, No. 09 Civ. 08168, 2011 WL 5517860, at *3-4 (S.D.N.Y. Nov. 10, 2011), and that the court has personal jurisdiction over a defendant, *Adrian Shipholding Inc. v. Lawndale Grp. S.A.*, No. 08 Civ. 11124, 2012 WL 104939, at *6-8 (S.D.N.Y. Jan. 13, 2012).  NML's contention that Argentina's property is attachable is plainly a claim for purposes of the sanctions it seeks.  Because Argentina will not cooperate with NML's discovery concerning the location and use of its assets and its relationships with various state-owned entities, it is entirely appropriate that Argentina be precluded from advancing arguments on those issues.  What is more, it is consistent with Argentina's existing obligations:  Argentina expressly agreed when it issued the bonds underlying NML's judgments that it had "irrevocably agreed not to claim" any immunity "from attachment in aid of execution of judgment."  Decl. of Robert A. Cohen, Ex. A, at A-18 (July 31, 2015).  This sanction is, thus, entirely just.

        **B.**        **This Court Should Hold That NML Established That Argentina's Property In The United States Is Being Used For A Commercial Activity.**

NML sought discovery regarding assets located in the United States to demonstrate that any property so discovered could be attached under one of Section 1610(a)'s exceptions to immunity.  NML Mot. 3, 14-15.  Argentina's refusal to produce discovery has prejudiced NML's ability to make these arguments, and this Court should "restor[e] the evidentiary balance," *Lyondell-Citgo Ref., LP v. Petroleos de Venezuela, S.A.*, No. 02-cv-795, 2005 WL 1026461, at *4 (S.D.N.Y. May 2, 2005), by holding that NML established the facts necessary to prove one such exception:  that Argentina uses its property in the United States for a commercial activity.

        1.        Argentina erroneously contends that this sanction violates the FSIA because it "violate[s] the Court's obligation under § 1610 to determine whether particular sovereign proper-

4

ty is in fact immune from attachment" or because "discovery sanctions are not an independent basis for attaching, arresting, or executing upon sovereign property." Opp. 11-12, 14. But NML is not asking the Court to forgo determining whether any particular property of Argentina is immune from attachment; NML merely seeks to fill the evidentiary gulf created by Argentina's refusal to obey this Court's discovery orders so that the Court may properly conduct the immunity analysis that Section 1610 contemplates. Because Argentina refuses to disclose the assets it has in the United States and to disclose information concerning the use of those assets, when NML *does* discover property in the United States, it is appropriate for this Court, in considering the immunity of that property from attachment, to hold that NML has established its use for a commercial activity in the United States.

Contrary to Argentina's contentions, the FSIA does not limit this Court's authority to issue discovery sanctions plainly available under the Federal Rules of Civil Procedure. The Supreme Court has made clear that "any sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall." *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2256 (2014). Here, because the FSIA provides no immunity defense from discovery sanctions, Argentina is subject to the same potential sanctions as other civil litigants, including adverse fact findings. *See id.* at 2256-57; *Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F. Supp. 2d 217, 224 (S.D.N.Y. 2003) (declining plaintiff's request "to suspend the rules of evidence" in case against a foreign sovereign). And since it is settled that a court may sanction a party by finding that its opponent has established the factual predicates necessary to the *constitutional* requirements for personal jurisdiction, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982), there can be no doubt that

5

this Court may award a sanction holding that NML established the factual predicates for satisfying the FSIA's statutory test for attachment.[2]

2.      Argentina also contends that the proposed sanction would contradict prior findings from this Court and from "every other court" that "purported Argentine property is 'used for a commercial activity in the United States.'"  Opp. 17.  Argentina is wrong.  First, NML has "twice successfully attached and executed on" Argentina's property on the basis that the property was being used for a commercial activity in the United States.  Opp. 3 n.1.  Second, the cases Argentina cites do not remotely establish that *none* of Argentina's property in the United States is being use for a commercial activity, Opp. 17-18; at most, they address the sufficiency of allegations or limited evidence related only to particular uses of particular property—allegations that were pleaded, or evidence proffered, without the benefit of discovery to which NML is entitled.  *See, e.g.*, *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 129 (2d Cir. 2009) (nationalized retirement accounts not used for a commercial activity); *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07-cv-2715, 2012 WL 983564, at *1 (S.D.N.Y. Mar. 22, 2012) (patents, pending patent applications, and royalties generated by license agreements not used for a commercial activity).  A finding that bridges the evidentiary gap Argentina created would not be inconsistent with these rulings merely on the pleadings or limited evidence.[3]

3.      Argentina also perversely argues that this proposed sanction is "improper because [NML] ha[s] failed to offer any evidence that the unproduced documents would support" a conclusion that Argentina's property in the United States is being used for a commercial activity.

---

[2]  Argentina erroneously argues that NML's proposed findings contravene Rule 37(b)(2)(A)(ii) because it is "unrelated" to any "particular action."  *See* Opp. 13-14.  The proposed findings certainly are related to NML's efforts to enforce its judgments entered in these actions.
[3]  NML's proposed sanctions would not prohibit Argentina from asserting other defenses, including that the Vienna Convention on Diplomatic Relations protects diplomatic missions from attachment.  23 U.S.T. 3227, art. 22(3).

6

Opp. 21. But the Federal Rules of Civil Procedure do not require a litigant to offer "evidence" about the contents of "unproduced documents." Such a rule would allow a litigant's refusal to cooperate in discovery itself to be a shield from discovery sanctions. That is not the law. The law requires litigants to comply with court orders; Argentina admits it is flouting the Discovery Order; it admits it is withholding responsive documents. That is an adequate basis for the imposition of sanctions.

But, here, NML also has developed exactly the type of "evidence" Argentina claims is lacking. NML's independent investigation—including third-party discovery—suggests that Argentina may have yet-undisclosed attachable assets held by third parties that are being used for commercial activity. For example, NML learned through discovery that Argentina, through its space agency, had contracted with a private launch services provider, SpaceX, to launch satellites in 2015 and 2016—those launch services are property used for a commercial activity because private companies also engage SpaceX for similar services. *See* Reply Brief, *NML Capital Ltd. v. Republic of Argentina*, No. 15-5544 (9th Cir. July 23, 2015). And NML has previously uncovered two Argentine bank accounts used for commercial activity in the United States, which NML used to satisfy a small portion of its judgments. *See NML Capital Ltd. v. Republic of Argentina*, 680 F.3d 254 (2d Cir. 2012); *EM Ltd. v. Republic of Argentina*, 389 F. App'x 38 (2d Cir. 2010). With the benefit of the ordinary tools afforded under the Federal Rules, there is every reason to believe that NML would have a better chance of identifying additional assets.

> **C.     This Court Should Hold That NML Established Facts Supporting The Claim That Argentina Is An Alter Ego Of BCRA, ENARSA, And YPF.**

NML also sought discovery to prove that Argentina is the alter ego of three state-owned entities—BCRA, ENARSA, and YPF. NML Mot. 3. Argentina's recent pretextual production of documents only confirms that Argentina is wantonly violating the Court's order directing dis-

7

covery on NML's alter ego allegations and that this Court accordingly should hold that NML established the facts enumerated in NML's opening memorandum. NML Mot. 15.

    1.    Argentina argues that this sanction is improper because other courts have found that BCRA, ENARSA, and YPF are not Argentina's alter egos. Opp. 19-20; *see also* Ltr. from J. Neuhaus to Judge Griesa, at 3-4, No. 03-cv-8845, D.E. 608 (S.D.N.Y. July 17, 2015). As to BCRA, this is simply wrong—this Court has concluded that BCRA was Argentina's alter ego, *EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273, 301-02 (S.D.N.Y. 2010), and its ruling that plaintiffs' subsequent complaint stated an alter-ego claim against BCRA is on appeal, *EM Ltd. v. Republic of Argentina*, No. 13-3819 (2d Cir.). And as to ENARSA and YPF, NML's proposed factual findings regarding the relationship between Argentina and these entities would not resolve whether these entities are Argentina's alter egos—that legal conclusion regarding their alter ego status likely would be subject to additional analysis and any applicable defenses.

    2.    Argentina also contends that this sanction would impermissibly implicate the property of non-parties. Opp. 15; *see also* Ltr. from J. Neuhaus to Judge Griesa, at 2-3. Argentina is mistaken. NML's proposed sanctions would indeed bind *only Argentina*. If NML sought to attach assets in the hands of one of these purported alter egos, those third parties would remain free to enter appearances and to argue that attachment was improper.[4]

## III. Argentina Waived Any Privileges Against Production.

When a party fails to produce a privilege log in response to discovery, but nonetheless asserts privileges against production, the producing party waives those privileges for documents

---

[4] As a matter of black letter law, "[a] person who is not a party to an action is not bound by . . . the rules of *res judicata*," except in rare circumstances. Restatement (Second) of Judgments § 34(3). While the judgment NML seeks here would preclude Argentina from arguing that its assets cannot be used to satisfy YPF's, ENARSA's, or BCRA's debts to NML, YPF, ENARSA or BCRA still could argue that it is not precluded from arguing that its assets are not available to satisfy Argentina's debts to NML. And NML expects them to do so, as BCRA has done in the past.

that could have been produced. NML Mot. 16-17 (citing Fed. R. Civ. P. 26, Advisory Committee Notes (1993 Amendments, Subdivision (b))). Argentina does not contest that it did not produce a privilege log, and provides no sound argument why it should bear no consequences for its actions. Opp. 22. This sanction would not deprive Argentina of counsel, Opp. 22, but rather is a standard sanction to encourage litigants to "'enable other parties to assess the claim'" of privilege over each contested document. Mem. & Order 2, *Kaplan v. S.A.C. Capital Advisors., L.P.*, No. 12-cv-9350 (S.D.N.Y. July 21, 2015) (quoting Fed. R. Civ. P. 26(b)(5)(A)(ii)). Argentina's protest regarding its "grace and comity," Opp. 22, is beside the point because "grace and comity" is not a privilege against production. And, in any event, Argentina's refusal to provide a privilege log prevents NML or the Court from assessing whether Argentina has properly asserted privilege—whether it be attorney-client, work product, or its asserted "grace and comity" privilege—over particular responsive documents and this Court should accordingly waive Argentina's privilege for documents responsive to NML's Requests.

## IV. Rule 37(b)(2)(C) Requires An Award Of Expenses.

As NML explained in its opening memorandum, Rule 37 ***requires*** cost-shifting where a party violates a discovery order unless there is "substantial justification or other circumstances," which Argentina cannot show. NML Mot. 18 (quoting *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008)). Argentina's status as a foreign sovereign does not change this result, *see* Opp. 24—the FSIA is "silen[t]" as to fee shifting, and thus the normal rules apply. *Republic of Argentina*, 134 S. Ct. at 2256-57. Indeed, courts in this Circuit have imposed this sanction on foreign sovereigns, *see* NML Mot. 20-21 (citing cases), and all of Argentina's authorities pre-date the Supreme Court's decision in *Republic of Argentina*. *See* Opp. 24. As to sanctions against Argentina's counsel, Rule 37(b)(2)(C) plainly requires the Court to "order the disobedient party, ***the attorney advising that party, or both***" to pay NML's costs—while sanc-

9

tions certainly are appropriate when counsel has engaged in his own misconduct, *see* Opp. 24 (collecting cases), Rule 37's text does not limit costs shifting only to those circumstances.

V. **Local Rule 37.2 Does Not Bar NML's Relief.**

In a last gasp to avoid the consequences of its violation of the Discovery Order—and to further delay any meaningful response to NML's now three-year-old discovery requests—Argentina asserts that NML's motion should be denied because it did not request a pre-motion conference provided for in Local Rule 37.2. This argument has no merit. For many years, the standard practice in these actions has been to file discovery motions without moving for a pre-motion conference, as Argentina itself has done. *See, e.g.*, Argentina Mot. to Quash 5, No. 03-cv-8845, D.E. 308 (S.D.N.Y. May 17, 2010) (no docketed letter requesting conference). NML followed that standard practice. In any event, requiring a pre-motion conference here would undermine the purposes of Local Rule 37.2—"efficiency in litigation"—because the court has already "solve[d] essentially the same discovery dispute" when it entered the Discovery Order. *See Harley v. Nesby*, No. 08-CIV-5791, 2011 WL 6188718, at *8 (S.D.N.Y. Dec. 12, 2011). If, however, this Court would prefer to hold a pre-motion conference, NML hereby requests, in the alternative, that the Court construe NML's motion as requesting a pre-motion conference.

## CONCLUSION

For the foregoing reasons, NML respectfully requests that the Court enter the proposed sanctions outlined in NML's opening brief.

Dated: New York, New York
July 31, 2015

Respectfully submitted,

/s/ Robert A. Cohen

| | |
|---|---|
| Theodore B. Olson | Robert A. Cohen |
| Matthew D. McGill | Debra D. O'Gorman |
| Jason J. Mendro | Collin F. Hessney |
| Christopher B. Leach | DECHERT LLP |
| GIBSON, DUNN & CRUTCHER LLP | 1095 Avenue of the Americas |
| 1050 Connecticut Avenue, N.W. | New York, N.Y.  10036 |
| Washington, D.C.  20036 | Telephone:    212.698.3500 |
| Telephone:    202.955.8500 | Facsimile:     212.698.3599 |
| Facsimile:     202.467.0539 | |

*Attorneys for Plaintiff NML Capital, Ltd.*