UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
NML CAPITAL, LTD. and EM LTD.,                               :
                                                             :
                          Plaintiff,                         :
                                                             :
         -against-                                           :        03 Civ. 8845 (TPG)
                                                             :        06 Civ. 6466 (TPG)
THE REPUBLIC OF ARGENTINA,                                   :
                                                             :
                          Defendant.                         :
------------------------------------------------------------ X
                                                             :
NML CAPITAL, LTD.,                                           :
                                                             :        05 Civ. 2434 (TPG)
                          Plaintiff,                         :        07 Civ. 1910 (TPG)
                                                             :        07 Civ. 2690 (TPG)
         -against-                                           :        07 Civ. 6563 (TPG)
                                                             :        08 Civ. 2541 (TPG)
THE REPUBLIC OF ARGENTINA,                                   :        08 Civ. 3302 (TPG)
                                                             :        08 Civ. 6978 (TPG)
                          Defendant.                         :        09 Civ. 1707 (TPG)
                                                             :        09 Civ. 1708 (TPG)
------------------------------------------------------------ X
AURELIUS CAPITAL PARTNERS, LP, AURELIUS               :
CAPITAL MASTER, LTD., and NML CAPITAL, LTD.,          :
                                                      :
                          Plaintiffs,                 :
                                                      :
         -against-                                    :        07 Civ. 2715 (TPG)
                                                      :
THE REPUBLIC OF ARGENTINA,                            :
                                                      :
                          Defendant.                  :
------------------------------------------------------------ X        *(captions continue on following pages)*


**MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN OPPOSITION
TO PLAINTIFFS' MOTIONS FOR AN ORDER DEEMING WAIVER OF PRIVILEGES**

```
----------------------------------------------------------------- X
AURELIUS CAPITAL PARTNERS, LP, AURELIUS          :
CAPITAL MASTER, LTD., and BLUE ANGEL             :
CAPITAL I LLC,                                    :
                                                  :
                    Plaintiffs,                   :
                                                  :      07 Civ. 11327 (TPG)
              -against-                            :
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                    Defendant.                    :
----------------------------------------------------------------- X
BLUE ANGEL CAPITAL I LLC,                         
                                                  :
                    Plaintiff,                     :
                                                  :
              -against-                            :      07 Civ. 2693 (TPG)
                                                  :      10 Civ. 4101 (TPG)
THE REPUBLIC OF ARGENTINA,                        :      10 Civ. 4782 (TPG)
                                                  :
                    Defendant.                     :
----------------------------------------------------------------- X
AURELIUS OPPORTUNITIES FUND II, LLC              :
and AURELIUS CAPITAL MASTER, LTD.,                :
                                                  :
                    Plaintiffs,                    :
                                                  :
              -against-                            :      10 Civ. 1602 (TPG)
                                                  :
THE REPUBLIC OF ARGENTINA,                        :
                                                  :
                    Defendant.                     :
----------------------------------------------------------------- X
```

AURELIUS CAPITAL MASTER, LTD. and
AURELIUS OPPORTUNITIES FUND II, LLC,

                Plaintiffs,

         - against-

THE REPUBLIC OF ARGENTINA,

              Defendant.

10 Civ. 3507 (TPG)
10 Civ. 3970 (TPG)
10 Civ. 8339 (TPG)

-------------------------------------------------------------X

AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,

                Plaintiffs,

         - against-

THE REPUBLIC OF ARGENTINA,

              Defendant.

09 Civ. 8757 (TPG)
09 Civ. 10620 (TPG)

-------------------------------------------------------------X

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

    A.    The Republic's Privilege Log ................................................................ 2

    B.    Plaintiffs' Move for Wholesale Waiver and Production From Cleary
Gottlieb ................................................................................................ 4

ARGUMENT ....................................................................................................................... 7

    I.    THE REPUBLIC HAS NOT WAIVED ITS PRIVILEGE ................................. 8

        A.    The Republic Produced a Compliant Privilege Log ................................. 8

        B.    Plaintiffs' Complaints as to the Sufficiency of the Log Are Without
Merit and Otherwise Do Not Support Wholesale Waiver of
Privilege ............................................................................................. 14

        C.    Plaintiffs' Speculation Regarding Unlogged Documents Does Not
Support an Argument for Further Waiver ............................................... 21

    II.    SEEKING PRODUCTION OF PRIVILEGED COMMUNICATIONS
FROM CLEARY GOTTLIEB IS IMPROPER ................................................. 23

CONCLUSION .................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aurelius Capital Partners, LP v. Republic of Argentina*,
No. 07 Civ. 11327 (TPG), 2012 WL 983564 (S.D.N.Y. Mar. 22, 2012) .......................... 20

*Avent v. Solfaro*,
210 F.R.D. 91 (S.D.N.Y. 2002) ....................................................................... 10

*Bank of Am., N.A. v. Terra Nova Ins. Co.*,
212 F.R.D. 166 (S.D.N.Y. 2002) ..................................................................... 19

*Bey v. City of New York*,
No. 99 Civ. 3873 (LMM), 2007 WL 1893723 (S.D.N.Y. June 28, 2007)........................ 24

*Bruker v. City of New York*,
No. 93 Civ. 3848 (MGC), 2002 WL 484843 (S.D.N.Y. Mar. 9, 2002).............................. 12

*Chevron Corp. v. Donziger*,
No. 11 Civ. 0691 (LAK), 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013)......................... 25

*D 56, Inc. v. Zuckers Gifts, Inc.*,
No. 95 Civ. 9327 (AGS), 1996 WL 280797 (S.D.N.Y. May 24, 1996) ........................... 9

*Dawe v. Corr. USA*,
263 F.R.D 613 (E.D. Cal. 2009) ...................................................................... 16

*Doe v. United States (In re Grand Jury Subpoena Dated October 22, 2001)*,
 282 F.3d 156 (2d Cir. 2002)........................................................................... 9

*Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*,
232 F.R.D. 103 (S.D.N.Y. 2005) ...................................................................... 9

*FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*,
No. 01 Civ. 8700 (SAS), 2005 WL 545218 (S.D.N.Y. Mar. 8, 2005) ............................ 12-13

*G-Fours, Inc. v. Miele*,
496 F.2d 809 (2d Cir. 1974) .......................................................................... 15

*Grand Cent. P'ship. Inc. v. Cuomo*,
166 F.3d 473 (2d Cir. 1999)........................................................................... 21

*H.W. Carter & Sons, Inc. v. William Carter Co.*,
No. 95 Civ. 1274 (DC), 1995 WL 301351 (S.D.N.Y. May 16, 1995)............................... 14-15

**Page(s)**

*HSH Nordbank AG New York Branch v. Swerdlow,*
259 F.R.D. 64 (S.D.N.Y. 2009) .......................................................................... 19

*Hurst v. F.W. Woolworth Co.,*
No. 95 Civ. 6584 (CSH), 1997 WL 61051 (S.D.N.Y. Feb. 11, 1997)............................ 12

*In re Donald Sheldon & Co.,*
191 B.R. 39 (S.D.N.Y. 1996) .......................................................................... 15

*In re Gen. Motors LLC Ignition Switch Litig.,*
80 F. Supp. 3d 521 (S.D.N.Y. 2015)................................................................... 14

*In re Grand Jury Subpoena Duces Tecum,*
731 F.2d 1032 (2d Cir. 1984)........................................................................... 15

*In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129,*
902 F.2d 244 (4th Cir. 1990) .......................................................................... 19

*In re Honeywell Int'l, Inc. Sec. Litig.,*
230 F.R.D. 293 (S.D.N.Y. 2003) ................................................................. 10, 13

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.,*
898 F. Supp. 2d 584 (S.D.N.Y. 2012)................................................................. 21

*In re Pfizer Inc. Sec. Litig.,*
No. 90 Civ. 1260 (SS), 1993 WL 561125 (S.D.N.Y. Dec. 22, 1993) ............................ 20

*In re Richard Roe, Inc.,*
168 F.3d 69 (2d Cir. 1999)................................................................................. 7

*In re Six Grand Jury Witnesses,*
979 F.2d 939 (2d Cir. 1992)............................................................................ 14

*In re Steinhardt Partners, L.P.,*
9 F.3d 230 (2d Cir. 1993)................................................................................ 20

*In re Subpoena Issued to Dennis Friedman,*
350 F.3d 65 (2d Cir. 2003)............................................................................... 24

*Lavatec Laundry Tech., GmbH v. Lavatec, Inc.,*
No. 13 Civ. 0056 (SRU), 2014 WL 1665018 (D. Conn. Apr. 25, 2014)......................... 19-20

*Lee v. Kucker & Bruh, LLP,*
No. 12 Civ. 4662 (BSJ), 2013 WL 680929 (S.D.N.Y. Feb. 25, 2013)............................ 24

*McNamee v. Clemens,*
No. 09 Civ. 1647 (SJ), 2014 WL 1338720 (E.D.N.Y. Apr. 2, 2014) ............................. 12

Page(s)

*Monitcello Tobacco Co. v. Am. Tobacco Co.,*
12 F.R.D. 344 (S.D.N.Y. 1952) ........................................................... 15

*NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,*
262 F. Supp. 2d 134 (S.D.N.Y. 2003)................................................... 11

*NML Capital, Ltd. v. Space Exploration Techs. Corp.,*
No. 14 Civ. 2262 (SVW), 2015 WL 1334291 (C.D. Cal. Mar. 6, 2015)........... 11-12

*NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.,*
788 F. Supp. 2d 1111 (C.D. Cal. 2011) ................................................. 12

*OneBeacon Ins. Co. v. Forman Int'l Ltd.,*
No. 04 Civ. 2271 (RWS), 2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006) ......... 12

*Pem-Am., Inc. v. Sunham Home Fashions, LLC,*
No. 03 Civ. 1377 (JFK), 2007 WL 3226156 (S.D.N.Y. Oct. 31, 2007)........... 9-10

*Phillips v. C.R. Bard, Inc.,*
290 F.R.D. 615 (D. Nev. 2013).............................................................. 16

*PKFinans Int'l Corp. v. IBJ Schroder Leasing Corp.,*
No. 93 Civ. 5375 (SAS), 1996 WL 525862 (S.D.N.Y. Sept. 17, 1996)........... 13

*Pritchard v. County of Erie,*
473 F.3d 413 (2d Cir. 2007)................................................................. 9

*Raphael v. Shapiro,*
587 N.Y.S.2d 68 (Sup. Ct. N.Y. Cty. 1992) ........................................... 24

*Resolution Trust Corp. v. Diamond,*
773 F. Supp. 597 (S.D.N.Y. 1991) ........................................................ 7

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.,*
No. 09 Civ 3961 (BSJ), 2010 WL 481206 (S.D.N.Y. Jan. 13, 2010)............... 25

*Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.,*
254 F.R.D. 238 (E.D. Pa. 2008)........................................................... 16-17

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,*
No. 94 Civ. 5587 (PKL), 2003 WL 41996 (S.D.N.Y. Jan. 6, 2003)................. 10

*Rosen v. Nat'l Labor Relations Bd.,*
735 F.2d 564 (D.C. Cir. 1984) ............................................................. 7

*S.E.C. v. Yorkville Advisors, LLC,*
300 F.R.D. 152 (S.D.N.Y. 2014) .......................................................... 12

Page(s)

*Sadofsky v. Fiesta Prods., LLC,*
252 F.R.D. 143 (E.D.N.Y. 2008) ............................................................... 10

*Sheikhan v. Lenox Hill Hosp.,*
No. 98 Civ. 6468 (WHP), 1999 WL 386714 (S.D.N.Y. June 11, 1999) ........... 13

*Struogo v. BEA Assocciates,*
199 F.R.D. 515 (S.D.N.Y. 2001) ............................................................... 13

*Swidler & Berlin v. United States,*
524 U.S. 399 (1998).............................................................................. 7, 24

*Trudeau v. New York State Consumer Prot. Bd.,*
237 F.R.D. 325 (N.D.N.Y. 2006) ............................................................... 9

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO,*
No. 00 Civ. 4763 (RMB), 2002 WL 31093619 (S.D.N.Y. Sept. 17, 2002) ..................... 17-18

*United States v. Adlman,*
134 F.3d 1194 (2d Cir. 1998)................................................................... 18

*United States v. Constr. Prods. Research, Inc.,*
73 F.3d 464 (2d Cir. 1996)....................................................................... 12

*United States v. Deloitte LLP,*
610 F.3d 129 (D.C. Cir. 2010) ................................................................... 19

*United States v. Phillip Morris Inc.,*
314 F.3d 612 (D.C. Cir. 2003) ................................................................... 13

*United States v. Schwimmer,*
892 F.2d 237 (2d Cir. 1989)..................................................................... 19

*United States v. Stewart,*
287 F. Supp. 2d 461 (S.D.N.Y. 2003)......................................................... 20

*United States v. Turkish,*
623 F.2d 769 (2d Cir. 1980)...................................................................... 7

*United States v. Zolin,*
809 F.2d 1411 (9th Cir. 1987) ................................................................... 19

*Upjohn Co. v. United States,*
449 U.S. 383 (1981)........................................................................... *passim*

*Williams v. Bank Leumi Trust Co. of New York,*
No. 96 Civ. 6695 (LMM), 1998 WL 375559 (S.D.N.Y. June 7, 1999)............... 11

Page(s)

*Wise v. Consol. Edison Co. of New York*,
723 N.Y.S.2d 462 (1st Dep't 2001) ........................................................... 24

*Wultz v. Bank of China Ltd.*,
979 F. Supp. 2d 479 (S.D.N.Y. 2013) ........................................................ 18

**Rules and Statutes**

1993 Advisory Committee's Note to Fed. R. Civ. P. 26(b)(5) ..................... 14

Fed. R. Civ. P. 26(3)(A) ............................................................................... 18

Fed. R. Civ. P. 26(b)(5) ........................................................................ 8, 9, 16

Fed. R. Civ. P. 26(b)(5)(A)(ii) ..................................................................... 16

Fed. R. Civ. P. 37(a)(1) ............................................................................ 10-11

Individual Practices of Judge Thomas P. Griesa Rule 2.A ........................... 11

Local Civil Rule 26.2 ................................................................................. 9, 11

Local Civil Rule 26.2(a)(2) ....................................................................... 9, 16

Local Civil Rule 26.2(a)(2)(B)(i) .................................................................. 11

Local Civil Rule 26.2(c) ................................................................................ 15

Local Civil Rule 37.2 ..................................................................................... 11

N.Y. Jud. Law, App., Rules of Professional Conduct, Rule 1.6(a) ............... 24

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
§ 2016.1 (3d ed. 2010) ................................................................................... 8

Defendant the Republic of Argentina (the "Republic") submits this memorandum of law in opposition to plaintiffs' motions for an order deeming the Republic to have waived its privileges in the above-captioned actions ("Motions").  The Republic respectfully requests that the Court deny plaintiffs' motion and enter the Republic's Proposed Order.

## PRELIMINARY STATEMENT

In its August 13, 2015 Order, the Court correctly rejected plaintiffs' extraordinary request for an order deeming waived all of the Republic's privileges as a purported sanction for deficient discovery responses.  Plaintiffs are now back seeking the same relief.  This time plaintiffs claim that the Republic's detailed, 59-page privilege log is purportedly so deficient as to justify wholesale waiver of the Republic's privilege for every listed document.  Plaintiffs are not just wrong on the merits: their refusal to meet and confer in good faith over the contents of the log or to seek a mandatory pre-motion conference bars their motion and confirms that plaintiffs' intention has always been to improperly compel through waiver discovery of hundreds of indisputably privileged communications.  That is not the purpose of privilege logs, nor was it the purpose of the Court's August 13 Order.  The motion must be denied.

*First*, the waiver demand is wholly without merit.  The Republic complied with the August 13 Order and the Federal Rules by producing a privilege log that separately identifies and describes 502 privileged communications.  The log specifies the sender and recipient of every communication, the privilege asserted, and the subject matter of the legal advice sought or received.  Plaintiffs thus have all the information necessary to determine whether they have a valid basis to challenge the privileges asserted.  The law requires no more.

*Second*, even assuming that plaintiffs are entitled to additional information – which they are not – the proper means to obtain that information is through the meet and confer process.  As their own submission confirms, we have long made clear that to the extent plaintiffs believe they

need further details to evaluate the Republic's invocation of privilege, we would meet and confer

with plaintiffs and endeavor to resolve any disputes amicably.  Plaintiffs ignored that offer and

the required procedures and instead hastily moved (again) for blanket waiver.

Lacking any basis for their request, plaintiffs repeat throughout their brief vague and

unsupported accusations that Cleary Gottlieb has acted in bad faith.  These unwarranted attacks

plainly do not support granting the extraordinary relief that plaintiffs seek, are inappropriate, and

must stop.  Cleary Gottlieb has an ethical duty to preserve client confidences and it has at all

times throughout this litigation acted honestly and responsibly.

## BACKGROUND

**A.      The Republic's Privilege Log**

On June 17, 2015, plaintiffs moved for two sets of discovery sanctions against the

Republic.  As a sanction for not completing its document production in response to plaintiffs'

discovery requests,[1] plaintiffs sought an order (1) finding that property of the Republic in the

United States is being used for a commercial purpose in the United States; (2) finding that the

Banco Central de la República Argentina, Energía Argentina Socieda Anónima, and Yacimientos

Petrolíferos Fiscales are the Republic's alter egos; and (3) precluding the Republic from

contesting these points.  NML Br. at 7-16, No. 03 Civ. 8845 (TPG) (S.D.N.Y. June 17, 2015),

ECF No. 601.  In addition, plaintiffs claimed that the Republic had failed to support its

invocation of privilege by producing a privilege log, and requested an order "deeming

Argentina's asserted privileges waived."  *Id.* at 16-17.

---

[1] The *first* document demand, served by Aurelius and subsequently revised in briefing, sought documents sufficient to identify assets of the Republic outside of Argentina since 2009.  Aurelius Reqs. for Produc. at 4, 8-14, No. 07 Civ. 2715 (TPG) (S.D.N.Y. Dec. 13, 2011) (Bresnahan Decl. Ex. I); Reply Mem. of Law at 15-18, No. 07 Civ. 2715 (TPG) (S.D.N.Y. May 27, 2013) (Bresnahan Decl. Ex. G).  The *second*, served by NML, sought documents concerning assets then in existence with a connection to the United States, as well as documents dating back to 2001 purportedly related to its alter ego theories.  *See* NML Disc. Reqs. at 10-11, No. 03 Civ. 8845 (TPG) (S.D.N.Y. Aug. 14, 2012) (Bresnahan Decl. Ex. H).

Following argument on August 12, 2015, the Court held that the Republic had not complied with its production obligations.  Aug. 13 Order at 3 (Hessney Decl. Ex. A).[2]  The Court sanctioned the Republic by finding that "any property of the Republic in the United States except diplomatic or military property is deemed to be used for commercial activity."  *Id.*

By contrast, as to the separate question of privilege, the Court *rejected* plaintiffs' request for a finding that the Republic had waived its privileges.  The Court held that to the extent the Republic is claiming privilege as to documents or information responsive to plaintiffs' discovery requests, "it is directed to prepare and deliver within 10 days of today a privilege log on a document-by-document basis."  *Id.*[3]

The Court's determination that the Republic had not waived privilege was clearly correct.  The parties to these actions – including plaintiffs – have typically not produced or required a privilege log.  And while plaintiffs asked for a log as one of several requests in a letter dated January 23, 2015, they made no mention of privilege or the production of a privilege log during any of the parties' subsequent meet and confers – including with regard to other discovery requests for which the Republic invoked privilege – or in any of plaintiffs' numerous other communications.  Prior to plaintiffs' sanctions motion, the parties' common practice was to respect the invocation of privilege without further substantiation or itemization.

In light of the Court's August 13 Order, the Republic promptly undertook the tremendous effort of searching for, collecting, reviewing, and individually logging privileged communications responsive to plaintiffs' discovery requests.  As we explained to plaintiffs, we

---

[2] Exhibits are attached either to the Declaration of Collin F. Hessney, No. 08 Civ. 6978 (S.D.N.Y. Oct. 16, 2015), ECF No. 828, or to the Declaration of Kristin A. Bresnahan, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Oct. 30, 2015).

[3]  The Court later extended this deadline one week to August 31, 2015.  *See* So-Ordered Ltr. from C. Boccuzzi to J. Griesa, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Aug. 20, 2015), ECF No. 816.

consulted with individuals both internationally and in New York who potentially may have knowledge of the existence of documents responsive to plaintiffs' discovery requests based on plaintiffs' definition of Argentina.  *See* Ltr. from C. Boccuzzi to R. Cohen at 5, Sept. 25, 2015 (Hennessy Decl. Ex. J) ("September 25 Letter").  And although plaintiffs' asset discovery requests by and large were limited to property in existence after 2009, we did not use any time limitation in our searches in a good-faith effort to include all documents that could reflect property in existence during the relevant period.  The product was a detailed privilege log setting forth the document type, author, recipient, carbon copy recipient, date, privilege asserted, and subject matter description for 502 privileged communications dating back to 2003.

**B.    Plaintiffs' Move for Wholesale Waiver and Production From Cleary Gottlieb**

On September 14, 2015, plaintiffs wrote to the Republic identifying purported deficiencies with the Republic's log.  Ltr. from R. Cohen to C. Boccuzzi, Sept. 14, 2015 (Hessney Decl. Ex. I) ("Pl. Ltr.").  However, plaintiffs did not, as they falsely claim in their brief, "invite[] Argentina to proffer any supplemental evidence to validate its claims of privilege."  Pl. Br. at 11.  Instead, plaintiffs made the extraordinary assertion – repeated in this motion – that the Republic had waived privilege as to all documents identified on the log, and demanded their "immediate" production.  Pl. Ltr. at 1, 5.  Plaintiffs further claimed that "there is no opportunity to amend or supplement the Log."  *Id.* at 7 n.10.

By letter dated September 25, 2015, the Republic explained in detail its compliance with the Court's August 13 Order and the Federal Rules.  Sept. 25 Ltr. at 2-4.  Nevertheless, in response to plaintiffs' purported concerns and in a good-faith effort to resolve any dispute and avoid burdening the Court with needless motion practice, the September 25 Letter provided two appendices with additional information about the identities and affiliations of individuals on the log and the basis for invoking the deliberative process privilege (asserted for only six of the over

five hundred privileged communications).  *Id.* at 2-3, 4 n.2, apps. A-B.  The September 25 Letter further confirmed that while the exact identities of members of two email listservs created by Cleary Gottlieb to communicate with its client could not be reconstructed, at all times the groups included *only* Cleary Gottlieb and Republic personnel.  *Id.* at 3.  And while "discovery about discovery" is rarely appropriate, the September 25 Letter described the diligent efforts undertaken to complete the log, rebutting plaintiffs' purported reasons for being "highly skeptical" of the log's completeness.  *Id.* at 4-5.

Finally, the September 25 Letter emphasized, as the case law and Federal Rules make clear, that where a party claims a need for additional information to evaluate the invocation of privilege, the appropriate remedy is to seek such information through the meet and confer process.  Sept. 25 Ltr. at 4.  The Republic did not, as plaintiffs incorrectly assert, "refuse" anything.  Pl. Br. at 6.  Instead, the September 25 Letter made clear that we "are available to meet and confer on questions you have as to specific entries or additional information you believe is necessary to evaluate the claims of privilege."  Sept. 25 Ltr. at 4.

Plaintiffs did not respond to the September 25 Letter.  Nor did they request any additional information or accept the Republic's offer to meet and confer in an effort to resolve any disputes amicably.  Instead, just two months after the Court denied their motion for an Order finding that the Republic had waived its privileges, they again moved for the same relief on October 16 without first seeking a pre-motion conference as required by Local Rule 37.2 and Rule 2.A of the Court's Individual Practices.[4]  This time, plaintiffs claim that due to alleged technical deficiencies in the Republic's privilege log, 502 indisputably privileged communications must be

---

[4] Plaintiffs filed the Motions after-hours on Friday, October 16, 2015, and initially refused to give the Republic more than 7 days to respond, despite the fact that plaintiffs had waited three weeks from the date of the September 25 Letter to file the Motions.  After the Republic alerted the Court to plaintiffs' refusal, they agreed to provide the Republic two weeks to respond.

produced in full.  Yet even plaintiffs acknowledged (correctly) during the August 12 hearing that communications between the Republic and its attorneys concerning Republic property are privileged.  *See* Aug. 12, 2015 Hr'g Tr. 21:13-16 (Bresnahan Decl. Ex. A).

Plaintiffs also continue their attacks on Cleary Gottlieb.  In a transparent effort to interfere with the Republic and Cleary Gottlieb's attorney-client relationship, plaintiffs seek to compel Cleary Gottlieb to produce privileged communications with its client and its own work product from this litigation.  This is the latest in a series of attempts by plaintiffs to deprive the Republic of legal representation by serving improper discovery demands on its outside counsel. *See, e.g.*, NML Subpoena to Tannenbaum Helpern Syracuse & Hirschtritt LLP at 12-13, May 7, 2015 (Bresnahan Decl. Ex. E) (requesting, *inter alia*, "all Documents Concerning Argentina's authorization or approval of [the firm's] retention," all communications with two other law firms that represent the Republic, "All Documents Concerning Cleary's provision of legal services to [the Republic]," and "All Documents Concerning [legal] advice [given to the Republic by the firm]"); NML Subpoena to Bleichmar Fonti Tountas & Auld LLP, May 7, 2015 (Bresnahan Decl. Ex. D) (same); *see also* Letter from J. Stecher to D. O'Gorman, May 28, 2015 (Bresnahan Decl. Ex. B) (Plaintiffs have demanded "virtually every document created by [the law firms], or received by [them], in connection with [their] representation of the Republic, as if the privileges regularly attendant to the attorney-client relationship did not exist."); Letter from S. Tountas to D. O'Gorman, May 28, 2015 (Bresnahan Decl. Ex. C) (similar).

Moreover, plaintiffs repeat throughout their brief unsupported and baseless claims that Cleary Gottlieb has engaged in misconduct and acted in bad faith.  *See, e.g.*, Pl. Br. at 8 n.6, 13, 14 n.10; *see also generally id.* at 15-16 (criticizing Cleary Gottlieb's efforts in preparing the privilege log and in responding to plaintiffs' letter).  Unfortunately, this is not the first time that plaintiffs have made false accusations and insults against Cleary Gottlieb and its attorneys.  *See,*

*e.g.*, Aug. 8, 2014 Hr'g Tr. 13:15-16 (Bresnahan Decl. Ex. F) (the Court recognizing the improper attacks against Mr. Blackman by NML-sponsored organization).  That does not make this unbecoming tactic any more appropriate.

## ARGUMENT

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  It serves the "critical role in our judicial system" of encouraging full and frank communications between attorney and client, *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999), "thereby promot[ing] broader public interests in the observance of law and the administration of justice."  *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).  By exempting communications and information from discovery, the privilege necessarily precludes parties from obtaining relevant evidence.  *See, e.g.*, *United States v. Turkish*, 623 F.2d 769, 775 (2d Cir. 1980).  But the law has long recognized that the benefits of the attorney-client privilege outweigh as a matter of law the need for evidence of any particular litigant.  *Swidler*, 524 U.S. at 406-08; *Rosen v. Nat'l Labor Relations Bd.*, 735 F.2d 564, 572 (D.C. Cir. 1984).  Accordingly, the privilege is commonly described as "absolute," *see, e.g.*, *Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597, 600 n.2, 601 (S.D.N.Y. 1991), with its few exceptions well-defined and narrowly construed.  *In re Richard Roe, Inc.*, 168 F.3d at 71; *In re St. Johnsbury Trucking Co.*, 176 B.R. 122, 125 (S.D.N.Y 1994) ("the attorney-client privilege is of crucial importance to our jurisprudence, and its derogation is not to be undertaken lightly"); *see also Upjohn*, 449 U.S. at 393 ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.").

The purpose of a privilege log is to describe withheld materials so that an adversary may, where appropriate, challenge privilege assertions in good faith and on the merits.  *See* Fed. R.

Civ. P. 26(b)(5) (party must describe withheld materials "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the [privilege claim]"); *see* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2016.1 (3d ed. 2010) (describing log as "prima facie" showing of privilege with eventual challenge of privilege's applicability where proper).  The Republic's log fully satisfies that objective.

## I.   THE REPUBLIC HAS NOT WAIVED ITS PRIVILEGE

### A.   The Republic Produced a Compliant Privilege Log

In the August 13 Order, the Court directed the Republic to provide a privilege log identifying on a document-by-document basis those communications for which it claimed privilege.  August 13 Order at 1 (Hessney Decl. Ex. A).  The Republic timely complied on August 31, 2015, producing to plaintiffs a 59-page log that describes in detail over 500 privileged communications.  The log separately identifies each privileged communication, represents that these communications were made for the purpose of requesting or providing legal advice, and describes the legal advice sought or provided.  Plaintiffs' claims of "deliberate defiance of the August 13 Order," Pl. Br. at 8, are thus wholly without merit.

Even a cursory review of the privilege log makes clear that it provides plaintiffs with sufficient detail to evaluate the claim of privilege, while not divulging the contents of the privileged communication.  *See* Fed. R. Civ. P. 26(b)(5).  For each entry, the log conforms with Local Rule 26.2 by providing the type of document withheld; the date, author, addressees, and other recipients; the privilege asserted; and a description of the communications' subject matter. *See* Local Rule 26.2(a)(2).  Moreover, each entry more than makes a prima facie showing that the asserted privilege applies.

For example, log entries #78 and #79 describe a commonplace, privileged exchange between attorney and client.  Republic Privilege Log (Hessney Decl. Ex. G).  On July 24, 2008, a

Republic official wrote to Carmine Boccuzzi, copying three other Cleary Gottlieb attorneys and two members of the Argentine Government, requesting legal advice regarding litigation over the attachment of property.  Mr. Boccuzzi wrote to the group that same day, providing legal advice regarding litigation strategy and defense of the enforcement proceeding.  Plaintiffs cannot seriously dispute that these communications fall under the attorney-client privilege and/or work product doctrine; by the log's plain language, they are confidential communications between attorney and client requesting or providing legal advice, *Pritchard v. County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007), and they were created in the midst of litigation, *Doe v. United States (In re Grand Jury Subpoena Dated October 22, 2001)*, 282 F.3d 156, 160 (2d Cir. 2002).  The same is true for the remaining entries on the log.

Plaintiffs are wrong to claim that the log suffers from procedural inadequacies.  *See infra* Point I.B.  But even if certain additional information were required, privilege logs are not a trap whereby any technical defect results in invasion of the privilege: a party may be deemed to have waived privilege by providing a deficient privilege log in rare and egregious circumstances, and ordinarily only after several opportunities to cure any deficiencies identified by an adversary or court.  *See, e.g.*, *Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 335 (N.D.N.Y. 2006) (waiver "too austere a remedy when the deficiencies can be readily rectified"); *D 56, Inc. v. Zuckers Gifts, Inc.*, No. 95 Civ. 9327 (AGS), 1996 WL 280797, at *1 (S.D.N.Y. May 24, 1996) (rejecting waiver based on lack of willful disregard for requirements and harm to opposing party); *see also Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 111 (S.D.N.Y. 2005) (instructing party to supplement deficient privilege log entries); *Pem-Am., Inc. v. Sunham Home Fashions, LLC*, No. 03 Civ. 1377 (JFK), 2007 WL 3226156, at *2 (S.D.N.Y. Oct. 31, 2007) (recognizing that "[o]nly flagrant violations of these rules should result in a waiver of privilege" and refusing to find waiver when a privilege log was not timely produced,

but where the party "consistently asserted the attorney-client privilege . . . and now provided an adequate privilege log"); *Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 154 (E.D.N.Y. 2008) (finding failure to provide a privilege log not a "flagrant violation" of the rules and directing that one be produced); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587 (PKL), 2003 WL 41996, at *3-4 (S.D.N.Y. Jan. 6, 2003) ("technical" violation of Rule 46 in failing to provide a timely privilege log did not result in waiver).

To the extent plaintiffs are in need of additional information to evaluate the privilege, their remedy is not waiver of the privilege and compelled disclosure of hundreds of indisputably privileged attorney-client communications.  Rather, plaintiffs' appropriate recourse is to seek such information through the meet and confer process.  *See, e.g.*, *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 300 (S.D.N.Y. 2003) (instructing parties to meet and confer concerning defendant's revised log descriptions); *see also* Fed. R. Civ. P. 37(a)(1) (motion for compelled disclosure "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."); *Avent v. Solfaro*, 210 F.R.D. 91, 94-95 (S.D.N.Y. 2002) (denying motion to compel and for sanctions based on failure to comply with meet and confer requirements).

We have made clear our intention to work with plaintiffs to resolve any disputes in good faith.  For example, plaintiffs requested additional information on the affiliation of individuals identified on the log and on six documents withheld as deliberative process privileged.  The September 25 Letter enclosed detailed appendices providing that information.  Sept. 25 Ltr. at 2-3, 4 n.2, apps. A-B.[5]  We further proposed to meet and confer on any questions plaintiffs have as

---

[5] Plaintiffs complain that the appendices do not include the job titles of individuals on the log, in purported violation of Local Rule 26.2.  Pl. Br. at  5, 9 n.8.  The Rule plainly includes no such requirement, instead calling for, "where not apparent, the relationship of the author, addressees, and

to specific entries or additional information plaintiffs believe is necessary to evaluate the claims of privilege.  *Id.* at 5.  Plaintiffs gave no response.  They have since refused to meet and confer based on vague and baseless allegations of misconduct by Cleary Gottlieb and the Republic.  Pl. Br. at 8 n.6.  The record proves otherwise.

Plaintiffs have further ignored their obligation to move for a pre-motion conference. Local Civil Rule 37.2 provides that "No motion under Rules 26 through 37 . . . shall be heard unless counsel for the moving party has first requested an informal conference with the Court by letter-motion for a pre-motion discovery conference."  Local Rule 37.2; *see also* Individual Practices of Judge Thomas P. Griesa Rule 2.A.  The purpose of pre-motion conferences are to avoid rash motion practice by sounding out the views of the parties and the Court in an effort to resolve discovery disputes amicably.  Had plaintiffs complied with the rules, the parties could have discussed with the Court plaintiffs' claimed need for additional details, and the Court could have either confirmed that the log is sufficient or that plaintiffs are entitled to certain additional information.  Instead, plaintiffs leapt to the extreme remedy of blanket waiver, making clear that it never had any intention of respecting the Republic's privilege or challenging its invocation in good faith and on the merits.  For this reason, too, the motion should be denied.  *See, e.g.*, *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 152 (S.D.N.Y. 2003) (failure to comply with Local Rule 37.2 requires that discovery motions be denied); *Williams v. Bank Leumi Trust Co. of New York*, No. 96 Civ. 6695 (LMM), 1998 WL 375559, at *1 (S.D.N.Y. June 7, 1999) (same).[6]

recipients to each other."  Local Civil Rule 26.2(a)(2)(B)(i).  The appendices provide that information, and plaintiffs fail to explain why they require more.

[6] Wholesale waiver would be inappropriate for the additional reason that several logged communications concern the Argentine space agency CONAE, an entity concerning which plaintiffs unsuccessfully sought discovery in the Central District of California, and which plaintiffs' have twice failed to hold liable for the debts of the Republic in that court.  *See NML Capital, Ltd. v. Space Exploration Techs. Corp.*, No. 14

The cases plaintiffs cite as purported support for a finding of waiver do not call for that extraordinary result here.  Instead, each finds waiver of privilege in extreme and inapposite circumstances, such as failure to produce any privilege log at all, failure to correct a deficient privilege log after being given the opportunity to, or blatant disregard for a timeframe agreed upon by the parties or set by a court.  *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162 (S.D.N.Y. 2014) (plaintiff produced vague descriptions such as name of defendant only and refused to supplement logs despite exchange of four letters with defendant and comment by Magistrate Judge that log was deficient); *McNamee v. Clemens*, No. 09 Civ. 1647 (SJ), 2014 WL 1338720, at *4 (E.D.N.Y. Apr. 2, 2014) (defendant provided patently insufficient log, waited months to remedy, produced revised log with descriptions such as "Discussion" or "Re: Hi Joe," and then failed to provide evidence supporting privilege); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996) (log included meaningless comments such as "Self-Explanatory" and defendant failed to provide any supporting information); *Bruker v. City of New York*, No. 93 Civ. 3848 (MGC), 2002 WL 484843, at *6 (S.D.N.Y. Mar. 9, 2002) (rejecting logging of privileges and documents eight months after court ordered deadline); *Hurst v. F.W. Woolworth Co.*, No. 95 Civ. 6584 (CSH), 1997 WL 61051, at *4 (S.D.N.Y. Feb. 11, 1997) (waiver for four documents after party represented at discovery conference it would produce log and plaintiff repeatedly requested log over eight month period); *OneBeacon Ins. Co. v. Forman Int'l Ltd.*, No. 04 Civ. 2271 (RWS), 2006 WL 3771010, at *8 (S.D.N.Y. Dec. 15, 2006) (party never produced privilege log, but court provided additional time to do so); *FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, No. 01 Civ. 8700 (SAS), 2005 WL

Civ. 2262 (SVW), 2015 WL 1334291, at *8 (C.D. Cal. Mar. 6, 2015); *NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1127 (C.D. Cal. 2011).  The latter of these actions is currently *sub judice* in the Court of Appeals for the Ninth Circuit.  The Court made clear during the August 12 hearing on plaintiffs' prior sanctions motion that it had no intention of interfering with or affecting litigation before other courts, including the CONAE litigation.  By requesting a blanket waiver of logged communications concerning that litigation, plaintiffs seek just that.

545218, at *6 (S.D.N.Y. Mar. 8, 2005) (party never produced privilege log); *PKFinans Int'l Corp. v. IBJ Schroder Leasing Corp.*, No. 93 Civ. 5375 (SAS), 1996 WL 525862, at *4 (S.D.N.Y. Sept. 17, 1996) (same); *Sheikhan v. Lenox Hill Hosp.*, No. 98 Civ. 6468 (WHP), 1999 WL 386714, at *2 (S.D.N.Y. June 11, 1999) (magistrate judge's finding of waiver not clearly erroneous because defendant "never provided a privilege log to its adversary").[7]

Nor are plaintiffs correct to claim that they have been "severely prejudiced" by the purported inadequacies in the log. Pl. Br. at 13-14. Plaintiffs repeat their arguments regarding the Republic's document production, *id.* at 14, but the Court resolved those complaints in prior proceedings by sanctioning the Republic with an adverse finding. August 13 Order at 1 (Hessney Decl. Ex. A) (holding that "any property of the Republic in the United States except diplomatic or military property is deemed to be used for commercial activity"). As to the distinct question of privilege, the Republic not only timely produced its privilege log in accordance with the August 13 Order, but promptly addressed the issues raised by plaintiffs in good faith. To the extent plaintiffs suggest that they have waited three years for a privilege log, Pl. Br. at 7, 9, 14, that claim is belied by the parties' prior respect for one another's invocation of privilege without itemization of withheld documents, *see supra* at 3. Even absent this course of dealing, the Republic had no obligation to search for and log responsive privileged documents while its challenge to the propriety of plaintiffs' discovery requests were pending. *See, e.g.*, *United States v. Phillip Morris Inc.*, 314 F.3d 612, 621 (D.C. Cir. 2003) ("In short, if a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections."); 1993 Advisory Committee's Note to Fed. R. Civ. P. 26(b)(5)

---

[7] *Struogo v. BEA Assocciates*, 199 F.R.D. 515, 523-24 (S.D.N.Y. 2001), and *In re Honeywell Sec. Litig.*, 230 F.R.D. at 300, *rejected* a claim of waiver based on inadequate log descriptions.

(explaining that court should first determine whether discovery is proper and then give party

opportunity to log responsive documents).

> **B.**   **Plaintiffs' Complaints as to the Sufficiency of the Log Are Without Merit and Otherwise Do Not Support Wholesale Waiver of Privilege**

Plaintiffs cite a litany of purported deficiencies in support of their argument for wholesale

waiver.  Not only are plaintiffs incorrect as a matter of law that the log is deficient, but plaintiffs

fail to justify a finding of waiver as a result of the procedural inadequacies on which they rely.

(1) *Substance of attorney-client communications.*  Plaintiffs wrongfully claim entitlement

to *all* communications that contain factual information on the grounds that such communications

are purportedly not privileged.  Pl. Br. at 1, 21-22.  The law is squarely to the contrary.  The

communication of information between client and attorney is precisely what the privilege

protects.  *See Upjohn*, 449 U.S. at 390-91; *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F.

Supp. 3d 521, 527 (S.D.N.Y. 2015) ("the privilege exists to protect not only the giving of

professional advice to those who can act on it but also the giving of information to the lawyer to

enable him to give sound and informed advice").

Thus, the Supreme Court has made clear that regardless of whether information conveyed

to or from counsel is fact or opinion, communications between attorney and client are privileged,

and plaintiffs may not inquire into their contents.  *See Upjohn*, 449 U.S. at 396 (rejecting

disclosure of factual questionnaires provided to attorney, noting that adversary may not ask

"What did you say or write to your attorney?"); s*ee also, e.g.*, *In re Six Grand Jury Witnesses*,

979 F.2d 939, 945 (2d Cir. 1992) (permitting the asking of questions to fact witnesses that seek

underlying factual information, but not those that might be understood to convey what witnesses

communicated to counsel); *H.W. Carter & Sons, Inc. v. William Carter Co.*, No. 95 Civ. 1274

(DC), 1995 WL 301351, at *2 (S.D.N.Y. May 16, 1995) ("An attorney may not be compelled to

disclose communications made to him or her by a client, even where those communications

contain purely factual material. Nor may an attorney be compelled to disclose facts that he or she

learns from a client."). [8]

Indeed, plaintiffs have already conceded the point. At the August 12, 2015 hearing,

counsel to plaintiff NML argued that a finding of waiver of privilege for failure to produce a

privilege log would permit plaintiffs to discover facts about Argentine property from Cleary

Gottlieb. Aug. 12, 2015 Hr'g Tr. 20:18-21:22 (Bresnahan Decl. Ex. A). Plaintiffs emphatically

did *not* argue – as they incorrectly do now – that any such documents were never privileged to

begin with. Such an absurd result would eviscerate the privilege and contravene controlling

Supreme Court precedent.

(2) *Separate logging of email attachments.* The log complies with the August 13 Order

by identifying in separate entries each communication, as opposed to grouping communications

by category, itself a common practice in the Southern District of New York. *See* Local Rule

26.2(c) (encouraging as more efficient assertion of privilege by category rather than

communication-by-communication). Plaintiffs' claim that the log must also contain separate

entries for any attachment to an email, Pl. Br. at 9-10, finds no support in the Federal Rules, and

rests on a fundamental misunderstanding of the attorney-client privilege.

The relevant documents to be logged as privileged are the "communications" between

attorney and client, *i.e.*, the email communications identified in the log. *Upjohn*, 449 U.S. at 395

(the privilege "protects disclosure of communications"); *In re Grand Jury Subpoena Duces

Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984) (same). Attachments to those communications, like

---

[8] Plaintiffs' cases do not hold to the contrary. Pl. Br. at 21-22. All but *Monitcello Tobacco Co. v. Am. Tobacco Co.*, 12 F.R.D. 344 (S.D.N.Y. 1952), involved the crime-fraud exception to privilege, while *Monticello* is a 63-year-old decision concerning property in the attorney's custody or control. *Id.* at 345. Moreover, *G-Fours, Inc. v. Miele*, 496 F.2d 809, 813 (2d Cir. 1974), and *In re Donald Sheldon & Co.*, 191 B.R. 39, 48-49 (S.D.N.Y. 1996), concern the inapposite marital privilege.

the body of the emails themselves, are simply a portion of the communication and are equally privileged as part of the request for or provision of legal advice. *See, e.g.*, *Upjohn*, 449 U.S. at 395 (finding privileged questionnaires completed by employees and transmitted to attorney). The log's descriptions set forth the subject matter of these communications, including the substance of any attachments, and thus provide plaintiffs with the information necessary to determine the basis for the privilege. Fed R. Civ. P. 26(b)(5). Plaintiffs have provided no explanation for why they require the separate logging of pieces of a single attorney-client communication in order to determine whether they have a good-faith basis to challenge on the merits the privilege's applicability, and the Republic is aware of none.

To the contrary, numerous courts have recognized that attachments to emails need not be logged in separate entries. *See, e.g.*, *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 641-42 (D. Nev. 2013) (separate entries or explanations for each portion of email chain and each attachment not required, because all are part of the e-mail communication); *Dawe v. Corr. USA*, 263 F.R.D 613, 621 (E.D. Cal. 2009) (prior messages in an email string "essentially, attachments" to later message and therefore privileged and properly logged in single entry). Moreover, it is black letter law that a party should not log information that would divulge the contents of the privileged communication. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii) (descriptions need not reveal privileged or protected information); *accord* Local Rule 26.2(a)(2). Plaintiffs' demand for separate logging of attachments to the logged communications would accomplish just that. Privilege logs are intended to provide information that "will enable other parties to assess the claim" of privilege, Fed. R. Civ. P. 26(b)(5)(A)(ii), not to give plaintiffs improper discovery into the nature of a client's communication with its attorney. *See, e.g.*, *Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 238, 240 (E.D. Pa. 2008) ("[T]he act of itemization might

force parties, by disclosing what was sent to the attorney, also to disclose the nature of the privileged information.").[9]

(3) *Inclusion of listserv email addresses.*  Plaintiffs next claim that they are entitled to wholesale production of 502 privileged communications because certain of the log entries include as recipients "Internal Cleary Gottlieb listserv" and "Republic of Argentina client listserv."  *See* Pl. Br. at 9.  But plaintiffs fail to articulate why that is so, offering nothing more than speculation that individuals who are *not* employees of Cleary Gottlieb or the Republic of Argentina might for some unexplained reason be included in those email groups.

For the avoidance of doubt, the September 25 Letter made clear that in the ordinary course of the provision of legal advice, Cleary Gottlieb and the Republic used email groups. Sept. 25 Ltr. at 3.  Although the precise members of those groups, which span over a decade and necessarily changed with personnel changes at the firm and the government, cannot be reconstructed, they were comprised *solely* of employees of Cleary Gottlieb involved in the legal representation of the Republic, and employees of the Republic necessary for the purpose of requesting and receiving legal advice.  *Id.*  The attorney-client privilege undoubtedly protects communications among such individuals, *see Upjohn*, 449 U.S. at 391-92, and plaintiffs do not and cannot make any cogent argument to the contrary.  *See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*, No. 00 Civ. 4763 (RMB), 2002 WL 31093619, at

---

[9] Plaintiffs' bizarre suggestion that the separate logging of attachments is required because it would "yield additional and distinct information" makes no sense, and in fact confirms plaintiffs' desire to obtain improper discovery of privileged communications.  Pl. Br. at 7.  Producing additional information about the legal advice provided from attorney to client by definition would yield additional information, just as producing an entire privileged communication would.  But that does not mean that such information is necessary to evaluate the assertion of privilege or that a plaintiff may invade the privilege and discover the substance of attorney-client communications.

*1 (S.D.N.Y. Sept. 17, 2002) (privilege log adequate where entries for author included only plaintiff "USIS" because individual author could not be ascertained).[10]

(4) *Work product, attorney-client, and deliberative process privileges.* The Republic's privilege log properly invokes the work product, attorney-client, and deliberative process privileges. The log provides for each entry the parties, date, privilege asserted, and subject matter of the communication in sufficient detail for plaintiffs to determine whether or not they have a good-faith basis to challenge privilege on the merits. Plaintiffs' cursory arguments to the contrary, Pl. Br. at 19-21, are without merit.

*First*, plaintiffs dispute the Republic's assertion of work product with the conclusory statement that the log fails to set forth facts establishing the protection. *Id.* at 19. But the law in the Second Circuit makes clear that the work product protection applies broadly to all documents "prepared or obtained *because* of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998); *see also* Fed. R. Civ. P. 26(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."). The Republic has defended itself in litigation stemming from its historic economic crisis throughout the time period reflected on the log. By representing that each communication was made for the purpose of requesting or providing legal advice, the subject matter descriptions of the log make clear that the communications were created in anticipation and for that litigation. That is precisely what the law requires.

---

[10] The sole case plaintiffs cite in support of their argument for waiver, *Wultz v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 497 (S.D.N.Y. 2013), is inapposite. There, the defendant's privilege log included internal communications among "*entire departments*" of a bank without indicating whether an attorney was involved. Further, the defendant's legal and compliance department included non-lawyers who provided business advice. Here, the sender of any communication is always identified; attorneys are on every communication; and the log descriptions make clear that the purpose of the communication was to request or provide legal advice on the described topics.

*Second*, the Republic did not waive the attorney-client privilege or work product

protection by sending a narrow subset of its logged communications to third parties.  Pl. Br. at

19-20.  The common interest prong of the attorney-client privilege protects all communications

with third parties who "share a common interest about a legal matter."  *United States v.*

*Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989).  No written agreement is required, *HSH*

*Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 72 n.12 (S.D.N.Y. 2009), and the

privilege applies regardless of whether "actual litigation [is] in progress."  *Schwimmer*, 892 F.2d

at 243-44.  Accordingly, plaintiffs claim that the privilege only applies to third party *co-*

*defendants* in *this* litigation is refuted by controlling Second Circuit precedent.  *Id.*; *accord In re*

*Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990)

("The district court's ruling, apparently based on the notion that the joint defense privilege is

limited to codefendants, was in error"); *United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir.

1987) (common interest applicable where non-party "has never been sued on the matter of

common interest and faces no immediate liability") (cited affirmatively by Second Circuit in

*Schwimmer*, 892 F.2d at 243-44).

Nor does a party waive work product protection merely by disclosing protected materials

to third parties.  *See, e.g.*, *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169

(S.D.N.Y. 2002) ("work product may be shown to others 'simply because there [is] some good

reason to show it' without waiving the protection" (quoting *Adlman*, 134 F.3d at 1200 n.4)).

Materials created in anticipation of litigation and shared with third parties remain protected,

provided that the disclosing party had a reasonable expectation of confidentiality.  *United States*

*v. Deloitte LLP*, 610 F.3d 129, 141 (D.C. Cir. 2010); *see also, e.g.*, *Lavatec Laundry Tech.,*

*GmbH v. Lavatec, Inc.*, No. 13 Civ. 0056 (SRU), 2014 WL 1665018, at *2  (D. Conn. Apr. 25,

2014) (work product waived only where "disclosure substantially increases the opportunity for

19

potential adversaries to obtain the information").  Unless the recipient of work product can be fairly said to be a conduit to an adversary, there is no waiver, and the work product protection applies.  *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS), 1993 WL 561125, at *6 (S.D.N.Y. Dec. 22, 1993); *see also In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (holding that waiver of work product upon disclosure "to an adversary" waives the protection as to other parties); *United States v. Stewart*, 287 F. Supp. 2d 461, 469 (S.D.N.Y. 2003) ("because the doctrine protects only against disclosure to adversaries, disclosure to third persons in no way indicated a party's intent to allow his adversary access to work product materials; waiver is therefore not warranted.").

Plaintiffs challenge the withholding of communications with the Frankfurt Book Fair, Commerzbank, and Deutsche Bank.  Pl. Br. at 19.  Each were the target of potential attachment litigation along with the Republic, and thus the Republic communicated with these entities confidentially and in anticipation of such litigation.  They undoubtedly were not a conduit of information to plaintiffs, and thus the work product protection applies.  Moreover, as potential co-defendants in litigation in 2009, the Frankfurt Book Fair and the Republic shared a common legal interest, and thus the attorney-client privilege protects their communications as well.[11]

*Third*, plaintiffs are wrong to demand production of six communications in the log that are deliberative process privileged.[12]  For each, the Republic has also asserted attorney-client privilege and work product, and thus the documents are in any event protected from disclosure.

___

[11] The attorney-client privilege also applies to the remaining third-party recipients of privileged communications for which it was invoked, including CONICET, an Argentine scientific research organization.  CONICET is an agency or instrumentality of the Republic that has been the target of plaintiffs' alter ego and attachment litigation, which the Court has rejected.  *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 11327 (TPG), 2012 WL 983564, at *1 (S.D.N.Y. Mar. 22, 2012).  Contrary to plaintiffs' assertion, Pl. Br. at 19, the Republic has *not* asserted the attorney-client privilege over communications with Commerzbank or Deutsche Bank, but only work product protection.

[12] The Republic withdrew its assertion of the deliberative process privilege for entry #140 in the September 25 Letter.  Sept. 25 Ltr. at 4 n.2.

But the log also properly asserts the deliberative process privilege, refuting plaintiffs' claim of waiver.

The deliberative process privilege protects government communications that are predecisional and deliberative. *Grand Cent. P'ship. Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999). To invoke the privilege, a party must produce a privilege log with sufficient detail to demonstrate that the protected communication meets these criteria. *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 898 F. Supp. 2d 584, 589 (S.D.N.Y. 2012). Deliberative process privilege assertions "should be evaluated not in a vacuum, but in light of information that the parties can be presumed to possess." *Id.* That includes the parties' common sense understanding that in response to plaintiffs' worldwide alter ego and attachment efforts, the Republic must deliberate on and determine its litigation strategy.

In each of the six communications for which the Republic has invoked the privilege, the log provides a detailed subject matter description reflecting the decision up for consideration. For example, entry #226 states that the communication provides legal advice regarding potential enforcement attempts on diplomatic property, and reflects internal deliberations concerning whether to purchase property. Republic Privilege Log (Hessney Decl. Ex. G). Entry #240 requests legal advice regarding attachment attempts by creditors of the Republic, and reflects internal deliberations concerning a potential response to the attachment of the Republic's diplomatic accounts. *Id.* Each of these entries plainly establishes that the communications reflect deliberations on a decision facing the Republic, and thus are privileged.

### C. Plaintiffs' Speculation Regarding Unlogged Documents Does Not Support an Argument for Further Waiver

Plaintiffs also demand a general finding of waiver as to any other responsive documents. Pl. Br. at 15. Plaintiffs claim entitlement to such an order, "for the avoidance of doubt," based

on pure conjecture that additional responsive, privileged documents *may* exist but were either deliberately or mistakenly not logged by "Argentina and Cleary." *Id.* Plaintiffs are not entitled to such a hypothetical, boundless order.

   *First*, plaintiffs wrongly claim that "Cleary [ ] failed to specifically address the questions in Plaintiffs' Counsel's September 14 Letter regarding the locations searched for documents and whether the responsiveness criteria applied when conducting such searches as consistent with the Discovery Order." Pl. Br. at 16. To the contrary, while making clear that plaintiffs' request for discovery about discovery was inappropriate, *see* Sept. 25 Ltr. at 5 (citing *Orillaneda v. French Culinary Inst.*, No. 07 Civ. 3206 (RJH), 2011 WL 4375365, at *9 (S.D.N.Y. Sept. 19, 2011), and *Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*, No. 11 Civ. 03684 (DMC), 2014 WL 1494517, at *4 (D.N.J. Apr. 16, 2014)), the September 25 Letter explained:

> [I]n preparing the log we consulted with the individuals internationally and in New York who would have knowledge of the existence of responsive documents, based on which we identified particular communications and searches. We then searched areas likely to have responsive information (which included foreign office documents), reviewed the documents for responsiveness based on the requests and your definition of Argentina, and logged the documents as appropriate.

*Id.*

   *Second*, plaintiffs claim "numerous months-long periods for which there are no entries at all" on the log, and "very few" entries in which Mr. Blackman or Mr. Boccuzzi are identified. Pl. Br. at 15. Mr. Blackman and Mr. Boccuzzi are specifically identified 72 times, which is hardly "few," and, as would be expected, have also long been included in the "Internal Cleary Gottlieb listserv." The vast majority of the purported "gaps" took place over eight years ago – a period to which plaintiffs' asset discovery requests do not apply – and the most recent period of Thanksgiving 2012 to mid-January 2013 not only spanned three federal holidays and the holiday season, but was a period when the parties were focused on the *pari passu* litigation before the

this Court and the Second Circuit.  Characterizing these facts as "weak excuses" does not alter reality, nor does it provide a reasonable basis to doubt the comprehensiveness of the log.

*Third*, plaintiffs claim that the Republic "admits" that it provided an incomplete log because the log does not mention legal proceedings in Ghana concerning the Argentine naval ship, the *Fragata Libertad*.  Not so.  With respect to assets outside the United States, the requests sought documents "*sufficient to identify*" the property, not all documents concerning such property.  NML's unlawful seizure of the *Fragata Libertad* occurred in Ghana.  The Republic has already provided to plaintiffs documents identifying the vessel and its prior presence in Ghana, including an affidavit from the Republic's Minister of Defense describing the vessel in detail, as well as in briefs before the Court of Appeals concerning the present discovery requests. Having identified to plaintiffs the *Fragata Libertad*, the Republic was under no obligation to also log privileged documents that would have done no more than repeat this identification.

## II.   SEEKING PRODUCTION OF PRIVILEGED COMMUNICATIONS FROM CLEARY GOTTLIEB IS IMPROPER

On August 18, 2015 and August 20, 2015, plaintiffs served on Cleary Gottlieb subpoenas demanding production of all documents in Cleary Gottlieb's possession, custody or control responsive to NML's August 14, 2012 and Aurelius's December 13, 2011 discovery requests. NML Subpoena to Cleary Gottlieb Steen & Hamilton LLP, Aug. 18, 2015 (Hessney Decl. Ex. E); Aurelius Subpoena to Cleary Gottlieb Steen & Hamilton LLP, Aug. 20, 2015 (Hessney Decl. Ex. D).  Plaintiffs now argue that Cleary Gottlieb must produce privileged communications in response to those subpoenas based on the Republic's alleged waiver of that privilege.  These subpoenas, along with the unjustified and unsubstantiated attacks on Cleary Gottlieb included in their motion papers, make transparent plaintiffs' efforts to improperly invade the attorney-client privilege.  Their inappropriate tactics must be rejected.

23

It is well-settled that serving subpoenas on opposing counsel is disfavored, *see In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71 (2d Cir. 2003) (citing *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991)), particularly where there is no reason to believe that the attorney has any independent knowledge of the issues in the case. *See, e.g.*, *Lee v. Kucker & Bruh, LLP*, No. 12 Civ. 4662 (BSJ), 2013 WL 680929, at *2 (S.D.N.Y. Feb. 25, 2013) ("Where the proposed deponent has no first-hand knowledge of any issue in the case, no deposition is justified."); *Bey v. City of New York*, No. 99 Civ. 3873 (LMM), 2007 WL 1893723, at *5 (S.D.N.Y. June 28, 2007). Indeed, attorneys have an ethical duty to maintain their clients' privileges and confidences. *See, e.g.*, N.Y. Jud. Law, App., Rules of Professional Conduct, Rule 1.6(a) ("A lawyer shall not knowingly reveal confidential information"); *Wise v. Consol. Edison Co. of New York*, 723 N.Y.S.2d 462, 463 (1st Dep't 2001) ("The ethical obligation to maintain the confidences and secrets of clients and former clients is broader than the attorney-client privilege, and exists without regard to the nature or source of information or the fact that others share the knowledge" (internal quotation marks omitted)).

Ignoring these principles, plaintiffs attack Cleary Gottlieb for complying with its ethical and professional obligations to preserve its client's privilege and keep its client's confidences, and try to portray Cleary Gottlieb as acting unlawfully or in bad faith. Plaintiffs have offered no support for these scurrilous attacks, and there is none. The attorney-client relationship depends wholly on an attorney's ability to keep the confidences of its client, and the attorney-client privilege and ethical rules exist for that very reason. *See Swidler*, 524 U.S. at 403; *Upjohn*, 449 U.S. at 389; *Raphael v. Shapiro*, 587 N.Y.S.2d 68, 70 (Sup. Ct. N.Y. Cty. 1992) ("The client's trust and confidence in his attorney are at the very core of the fiduciary relationship. Client security in the soundness of the fiduciary relationship is vital to the smooth functioning of our adversarial system of jurisprudence." (citing *Emle Indus. v Patentex, Inc.*, 478 F.2d 562, 575 (2d

24

Cir. 1973)); *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.,* No. 09 Civ 3961 (BSJ), 2010

WL 481206, at \*7 (S.D.N.Y. Jan. 13, 2010) (citing Rule 1.6(a)).

    Plaintiffs cite *Chevron Corp. v. Donziger* to support their argument that Cleary Gottlieb

should be ordered to produce Republic documents that are in its custody and control.  296 F.R.D.

168, 186 (S.D.N.Y. 2013).   The facts of and issues presented in *Chevron* bear no resemblance to

those presented here.  In *Chevron*, the law firm (Patton Boggs) from which Chevron sought

production was alleged to be a co-conspirator with a number of individuals and entities in fraud

and RICO violations against Chevron, *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK),

2013 WL 1087236, at \*6 (S.D.N.Y. Mar. 15, 2013); Patton Boggs had first-hand knowledge of

many of the relevant events, *id.* at \*30; and Chevron had shown probable cause that the crime-

fraud exception to the attorney-client privilege and work product doctrine applied, *id.* at \*9, n.78.

Of course, none of those facts are present here.  Plaintiffs have no basis to claim that Cleary

Gottlieb has perpetuated a fraud or otherwise acted inappropriately at any point in this litigation,

and Cleary Gottlieb has no independent or first-hand knowledge of any issue in these matters

outside of the scope of its representation of the Republic.

## CONCLUSION

    For the foregoing reasons, plaintiffs' motions for an order deeming the Republic to have

waived its privileges should be denied.

Dated:  New York, New York
        October 30, 2015

                              Respectfully submitted,

                              CLEARY GOTTLIEB STEEN & HAMILTON LLP


                              By:  _____ /s/ Jonathan Blackman _____
                                   Jonathan I. Blackman (jblackman@cgsh.com)
                                   Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

                              One Liberty Plaza
                              New York, New York 10006
                              (212) 225-2000
                              Attorneys for the Republic of Argentina

Of Counsel:

Daniel J. Northrop
Kristin A. Bresnahan