# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NML CAPITAL, LTD., | ) |
| Plaintiff, | ) |
| v. | ) 08 Civ. 6978 (TPG) |
| | ) 09 Civ. 1707 (TPG) |
| THE REPUBLIC OF ARGENTINA, | ) 09 Civ. 1708 (TPG) |
| Defendant | ) |
| ------------------------------------------------------------------ | ) |
| AURELIUS CAPITAL MASTER, LTD. and ACP MASTER, LTD., | ) 09 Civ. 8757 (TPG) |
| | ) 09 Civ. 10620 (TPG) |
| Plaintiffs, | ) |
| v. | ) |
| THE REPUBLIC OF ARGENTINA, | ) |
| Defendant | ) |
| ------------------------------------------------------------------ | ) |
| AURELIOUS OPPORTUNITIES FUND II, LLC and AURELIOUS CAPITAL MASTER, LTD., | ) 10 Civ. 1602 (TPG) |
| | ) 10 Civ. 3507 (TPG) |
| Plaintiffs, | ) |
| v. | ) |
| THE REPUBLIC OF ARGENTINA, | ) |
| Defendant | ) |
| ------------------------------------------------------------------ | ) |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## BBVA'S CROSS-MOTION TO QUASH AND FOR A PROTECTIVE ORDER

AURELIUS CAPITAL MASTER, LTD. and,
AURELIUS OPPORTUNITIES FUND II, LLC,

         Plaintiffs,

      v.

THE REPUBLIC OF ARGENTINA,

         Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)

10 Civ. 3970 (TPG)
10 Civ. 8339 (TPG)

----------------------------------------------------------------

BLUE ANGEL CAPITAL I LLC,

         Plaintiffs,

      v.

THE REPUBLIC OF ARGENTINA,

         Defendant

)
)
)
)
)
)
)
)
)
)
)
)

10 Civ. 4101 (TPG)
10 Civ. 4782 (TPG)

----------------------------------------------------------------

OLIFANT FUND, LTD.,

         Plaintiffs,

      v.

THE REPUBLIC OF ARGENTINA,

         Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)

10 Civ. 9587 (TPG)

----------------------------------------------------------------

PABLO ALBERTO VARELA, et al.,

         Plaintiffs,

      v.

THE REPUBLIC OF ARGENTINA,

         Defendant

)
)
)
)
)
)
)
)
)
)
)
)

10 Civ. 5338 (TPG)

----------------------------------------------------------------

Americas 90934934

Non-parties Banco Bilbao Vizcaya Argentaria, S.A., BBVA Compass Bancshares, Inc. and BBVA Securities, Inc. (collectively "BBVA") respectfully submit this Reply Memorandum of Law In Further Support Of BBVA's Cross-Motion To Quash And For A Protective Order to prohibit Plaintiffs from pursuing any further production of documents from BBVA, or any BBVA-related entity, in response to a Subpoena served by Plaintiffs on BBVA.

## PRELIMINARY STATEMENT

Plaintiffs' attempt to compel BBVA to produce documents responsive to the Subpoena from its affiliates located in Argentina is an impermissible overreach, regardless of the merit of Plaintiffs' claims against the Republic (or the lack thereof). While recognizing the applicable legal standards governing this Court's exercise of specific personal jurisdiction over BBVA, Plaintiffs fail to satisfy those standards by showing that documents relating to the conduct and activities of BBVA's Argentine affiliates bear a "substantial relationship" to BBVA's contacts with New York. Absent such a showing, BBVA cannot be compelled to bring such documents into this forum for production to Plaintiffs consistent with applicable precedent.

Further, Plaintiffs' reliance on the "practical ability to obtain" test is misplaced because that test applies only where the nonparty subpoena recipient is subject to general personal jurisdiction – which BBVA is not – and is inconsistent with controlling post-*Daimler* authority exercising specific personal jurisdiction. Moreover, principles of international comity warrant denial of Plaintiffs' motion or, at the least, entry of a protective order which would permit BBVA to produce information from within the forum relating to its customers in redacted form or on an "Attorneys' Eyes Only" basis.

For these reasons, Plaintiffs' motion to compel BBVA's further compliance with the Subpoena should be denied and BBVA's motion to quash and for a protective order prohibiting

Plaintiffs from pursuing any further production of documents from BBVA or any BBVA-related entity in response to the Subpoena should be granted.

## ARGUMENT

**I.      PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE DISCOVERY SOUGHT IS SUBSTANTIALLY RELATED TO BBVA'S CONTACTS WITH NEW YORK**

While Plaintiffs agree with BBVA as to the applicable legal standard governing this Court's exercise of personal jurisdiction over BBVA as a non-domiciliary corporation, the parties differ as to the application of that standard to the facts at bar.  Because Plaintiffs cannot show a substantial relationship between the discovery sought here – documents reflecting the activities of BBVA-related entities located in Argentina – and BBVA's contacts with New York, they have failed to carry their burden of establishing a basis for this Court's exercise of specific personal jurisdiction over BBVA so as to compel compliance with the Subpoena.  Further, Plaintiffs misapprehend the viability and applicability of the "practical ability to obtain" test in light of controlling precedent.  For these reasons, the Court should grant BBVA's motion to quash and for a protective order.

**A.      The parties agree on the applicable legal standard governing the exercise of personal jurisdiction over BBVA**

Plaintiffs generally concur with BBVA that, under *Daimler*, a court may not exercise general personal jurisdiction over a corporate entity where that entity is incorporated and has its principal place of business outside the forum, absent exceptional circumstances.[1]  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014).  However, Plaintiffs misstate BBVA's position by asserting that BBVA claims to be entirely immune to the jurisdiction of this Court.  Plaintiffs' (i) Reply Memorandum of Law in Further Support Their Motion to Compel the Banks to Produce

---

[1] Plaintiffs do not contend that any exceptional circumstances exist here which would justify deviation from the principles established by *Daimler*.

Documents Concerning the BONAR 2024 Bonds and (ii) Memorandum of Law in Opposition to the Banks' Motions to Quash ("Pls. Reply Br.") at 4.  To the contrary, BBVA concedes that its operations in New York subject it to the specific personal jurisdiction of this Court (with regards to those operations).  BBVA contends that the discovery sought by Plaintiffs is insufficiently related to BBVA's New York contacts and, as such, runs afoul of post-*Daimler* controlling authority governing a court's exercise of specific personal jurisdiction over a non-domiciliary corporation.  *See Gucci America, Inc. v. Weixing Li*, 2015 WL 5707135 at *4-5 (S.D.N.Y. Sept. 29, 2015) (requiring an "articulable nexus" or "substantial relationship" between the non-party's contacts with the forum and the discovery order at issue).[2]

Because the meager factual allegations put forth by Plaintiffs do not establish the requisite connection between BBVA's contacts with New York and the Argentina-based documents sought by the Subpoena, Plaintiffs have failed to satisfy their burden of showing that the Court's personal jurisdiction over BBVA extends to such documents.

> **B.      Plaintiffs have failed to show the necessary "substantial relationship" between BBVA's contacts with New York and documents relating to the activities of its Argentine affiliates justifying this Court's exercise of specific personal jurisdiction over BBVA**

In order for a court to exercise specific personal jurisdiction over a non-domiciliary nonparty corporation under New York's long-arm statute (C.P.L.R. § 302(a)(1)) in the subpoena context, the party seeking discovery must establish an "articulable nexus" or "substantial relationship" between "the nonparty's contacts with the forum and the discovery order at issue." *Gucci*, 2015 WL 5707135 at *4 (citations omitted).  The requisite connection between the

---

[2] Plaintiffs off-handedly assert that the Court need not consider the "fact" that BBVA consented to the Court's general personal jurisdiction by registering as a "foreign branch[ ]," Pls. Reply Br. at 4, without addressing any of the objections or legal authorities raised by BBVA in opposition to that conclusion.  *See* Memorandum of Law in Opposition to Plaintiffs' Motion to Compel and in Support of BBVA's Cross-Motion to Quash and for a Protective Order ("BBVA Op. Br.") at 7-14.  For the reasons stated in BBVA's Opposition to the Motion to Compel, Plaintiffs' contention is without merit.

discovery sought and the nonparty's forum contacts need not be causal, but nor can it be "merely coincidental." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2005); *see also LaChapelle v. Torres*, 1 F. Supp. 3d 163, 177 (S.D.N.Y. 2014).  There must exist, "at a minimum, a relatedness between the transaction and the legal claim [here, the discovery request] such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012).

Here, the sum total of Plaintiffs' factual showing of a "substantial relationship" between BBVA's New York contacts and documents relating to the conduct of its affiliates in Argentina consists of rank supposition derived from a mere three documents[3] previously produced by BBVA in response to the Subpoena.[4]  None of these documents evidences any activity on the part of BBVA personnel located in New York relating to the marketing of the BONAR 2024 Bonds outside of Argentina – the purported purpose for which Plaintiffs seek documents from BBVA entities located in Argentina.  Memorandum of Law in Support of Plaintiffs' Motion to Compel Deutsche Bank, JP Morgan and BBVA to Produce Documents Concerning the BONAR 2024 Bonds ("Pls. Mot. to Compel"), at 2-3 (subpoenaed discovery intended to "demonstrat[e] that Argentina did not offer the Bonds exclusively in Argentina, such that they are in fact External Indebtedness."); Pls. Reply Br. at 1 ("In order to present a full record to the Court

---

[3] Plaintiffs also cite the Republic's Answer to the Second Amended and Supplemental Complaint.  Pls. Reply Br. at 7.  The cited paragraph, however, establishes only that, in April 2015, the BONAR 2024 Bonds were "offered and issued … *exclusively in Argentina to Argentine entities* including" a BBVA Argentine affiliate.  Answer to Second Amended and Supplemental Complaint, ¶ 101 [Dkt. 818] (emphasis added).  This representation, made by the Republic not BBVA, in no way supports Plaintiffs' contention that BBVA New York personnel had any involvement in the BONAR 2024 offering.

[4] As set forth in BBVA's Opposition to the Motion to Compel, BBVA has already produced all documents responsive to the Subpoena within its possession, custody or control within the forum, BBVA Op. Br. at 1, except for certain responsive Bloomberg chats.  Contrary to Plaintiffs' assertion, Pls. Reply Br. at 16, BBVA withheld those chats during meet and confer negotiations, while counsel continued to negotiate the volume of documents to be produced.  BBVA subsequently offered to produce those documents in redacted form.  Similarly, Plaintiffs' assertion that BBVA refused to discuss search protocols with Plaintiffs is inaccurate as counsel for BBVA engaged in numerous meet and confer negotiations with Plaintiffs' counsel over that very issue (among others).  *See* Carberry Decl. ¶ 3.

demonstrating that the Bonds are External Indebtedness [i.e. were offered outside of Argentina], Plaintiffs served the Subpoenas on the Banks[.]").

Specifically, the documents cited by Plaintiffs consist of:

- BBVA_0000034-37 (Declaration of Marc Farris ("Farris Oct. 5 Decl."), dated October 5, 2015,  Ex. 34) – an email seeking to arrange a meeting between Gabriel Bochi, "head of the Latin America Debt Capital Markets team at BBVA" and Facundo Bocco, an official in Argentina's finance ministry to discuss "whatever may be deemed fit [for them to discuss]."  The document makes no mention of the BONAR 2024 Bonds or any efforts by BBVA in New York to assist in the marketing of any bond offering by the Republic outside of Argentina and specifically notes that Mr. Bochi leads "a team in charge of origination and execution of bond issues *both* in the international *and local bond markets*" (emphasis added);

- BBVA_0000038-39 (Farris Oct. 5 Decl., Ex. 33) – an email forwarding to Mr. Bochi (and others at BBVA) a request to BBVA for information concerning "a possible 2024 placement [of bonds]" received from an employee of Repsol.  Again, this document does not mention the BONAR 2024 Bonds or any efforts by BBVA in New York to assist in the marketing of any bond offering by the Republic outside of Argentina; and

- BBVA_0000187-190 (Farris Oct. 5 Decl., Ex. 22) – an email exchange between Mr. Bochi and a BBVA employee in London discussing a public announcement of the BONAR 2024 Bond offering and potential customer interest therein. Tellingly, Mr. Bochi informs the London employee that he is inquiring "with our guys in Argentina" *whether* BBVA customers can "participate through us" in the offering but that he didn't "have an answer yet."  If anything, this document establishes that Mr. Bochi (and the New York operations of BBVA) was not involved in the BONAR 2024 offering because, even in April 2015, he was still seeking advice from BBVA's Argentine affiliates as to whether he could become involved.  The absence of any additional documents or communications from Mr. Bochi (or anyone else at BBVA New York) indicating approval of his request to become involved in the offering – coupled with BBVA's explicit representation to Plaintiffs that BBVA's New York operations took no part in the offering, *see* Carberry Decl. ¶ 4 – compels the conclusion that such approval to participate was not forthcoming.  Moreover, in response to a customer question regarding the offering, Mr. Bochi specifically states that offers for the bonds must "go through local [i.e. Argentine] intermediaries who are registered locally [i.e. in Argentina]" which contradicts Plaintiffs' assertion that BBVA New York participated in the offering.

In sum, none of these documents establishes the requisite relatedness between BBVA's contacts with New York and the conduct or activities of BBVA's affiliates located in Argentina

Americas 90934934

5

relating to the offering of the BONAR 2024 Bonds, let alone the substantial relationship required by *Gucci*.[5]  Further discovery is therefore unwarranted.

Plaintiffs rely on *Gucci*, but that case is more helpful by contrast than application.  The conduct at issue in *Gucci* established a clear relationship between the discovery sought by plaintiff and the nonparty bank's contacts with the forum.  There, plaintiff sought discovery from Bank of China ("BOC") relating to wire transfers made by the defendant counterfeiters through a correspondent bank account maintained by BOC at JPMorgan Chase Bank ("Chase") in New York for the express purpose of facilitating such transfers between Chase customers in New York and BOC customers in China.  *Gucci*, 2015 WL 5707135 at *4-5.  Given these facts, the *Gucci* court had little difficulty determining that BOC's contacts with New York – particularly the maintenance of its correspondent bank account at Chase for the purpose of facilitating wire transfers between customers – were substantially related to plaintiff's subpoena requests seeking documents relating to defendants' use of that very correspondent bank account to transfer their ill-gotten gains out of the United States.  *Id.*  Moreover, the plaintiffs' discovery requests were narrowly-tailored to BOC's forum contacts in that they sought documents relating to nine specific BOC accounts for which plaintiff had evidence indicating use by the defendant counterfeiters.  *Id.* at *1.

In stark contrast, Plaintiffs' allegations here, concerning the connection between BBVA's contacts with New York and the activities of its Argentine affiliates with regard to the BONAR 2024 offering, do not come close to establishing the type of substantial relationship found in *Gucci*.  Further, rather than the narrowly-tailored approach utilized by the plaintiff in *Gucci*,

---

[5] Nor do these documents explain how the discovery sought by Plaintiffs – documents located in Argentina relating to the conduct and activities of BBVA personnel in Argentina – could reasonably be expected to shed light on the Republic's marketing activity *outside* of Argentina.  Logic would dictate that any evidence of such activity to be found in BBVA's documents responsive to the Subpoena would be located in BBVA's documents in New York – all of which (except as noted *supra*, at n.4) have already been produced to Plaintiffs.

Plaintiffs' documents requests go far beyond any possible connection that BBVA may have with this forum.  By their own admission, Plaintiffs seek "documents concerning how the Bond offerings were designed and conducted, including information about how Argentina, the Banks and third parties coordinated and arranged the offerings, the mechanics of and plans for the marketing and sale of the bonds, the manner in which those plans were executed, the persons and entities to which the bonds were marketed and sold, Argentina's knowledge and involvement in making those plans, Argentina's intentions in issuing the bonds and offering them for sale, and Argentina's coordination with any third parties to execute the offerings."  Pls. Reply Br. at 12-13.  Plaintiffs cannot dispute that the overbroad document requests of the Subpoena bear little, if any, relationship to BBVA's forum activities and, thus, extend far beyond the scope of nonparty discovery allowed in *Gucci*.

> C.     **The "practical ability to obtain" test is irrelevant here because the exercise of specific personal jurisdiction over BBVA to compel compliance with the Subpoenas requires a substantial relationship between BBVA's forum contacts and the documents to be produced**

Plaintiffs' insistence on the relevance and applicability of the "practical ability to obtain" test in light of *Daimler* is misplaced.  *Daimler* unequivocally established that, absent extraordinary circumstances, a corporation is not subject to general personal jurisdiction where it is not "at home," i.e. where it is incorporated or has its principal place of business.  134 S. Ct. at 760-61.  Accordingly, where, as here, a court exercises personal jurisdiction over a corporation that is not "at home" in the forum, that jurisdiction extends only so far as the corporation's contacts with the forum, i.e. specific personal jurisdiction.  *See Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 136 (2d Cir. 2014).

In the context of a document subpoena served on a nonparty, this means that the discovery sought must be substantially related to the corporation's contacts with the forum.

*Gucci*, 2015 WL 5707135 at \*8-9.  Whether the corporation has the "practical ability to obtain"

any particular document is, therefore, irrelevant; either the document is substantially related to

the corporation's forum contacts and, thus, subject to the jurisdiction of the court, or the

document is unconnected to those contacts and thus outside the court's jurisdiction.  *See id.*  Put

another way, where a corporation is subject only to specific personal jurisdiction, it cannot be

compelled to bring a document into the forum for production unless that document relates to the

corporation's contacts with the forum, even though it may have the practical ability to do so.

   The authorities cited by Plaintiffs are not inconsistent with this conclusion.  *See* Pls.

Reply Br. at 19-21.  Plaintiffs contend that *Gucci* (and *Daimler*) did not alter Federal Rule of

Civil Procedure 45 which governs the scope of production required by a properly served third-

party subpoena.  *Id.* at 20.  However, the application of Rule 45 to a nonparty subpoena recipient

requires a finding that the nonparty is subject to the court's personal jurisdiction.  *United States*

*Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("Federal

Rule of Civil Procedure 45 grants a district court the power to issue subpoenas as to witnesses

and documents, but the subpoena power of a court cannot be more extensive than its

jurisdiction."); *Gucci*, 2015 WL 5707135 at \*3 ("A district court must have personal jurisdiction

over a nonparty to compel it to comply with a Rule 45 subpoena.").  In the case of specific

jurisdiction, this means that the documents sought must be substantially related to the nonparty's

contacts with the forum.  Plaintiffs' interpretation of FRCP 45 would eviscerate the distinction

between general and specific personal jurisdiction – and would directly contradict the holdings

of *Daimler* and *Gucci* – by enabling a court possessed of only specific personal jurisdiction over

a nonparty to compel the production of documents wholly unrelated to that nonparty's forum

contacts based solely on the nonparty's practical ability to obtain control over the document. This result is not consistent with *Daimler* and, thus, cannot be the law.

**II.      BBVA JOINS IN THE ARGUMENTS PUT FORTH BY DEUTSCHE BANK AND JP MORGAN CHASE**

BBVA hereby incorporates by reference and joins the contentions made by the DB Entities concerning the application of principles of international comity in opposition to Plaintiffs' Motion to Compel.

BBVA also hereby incorporates by reference and joins the contentions made by JPMorgan Chase as to the overbreadth of and undue burden imposed by Plaintiffs' document requests.[6]

The above contentions of the DB Entities and JP Morgan Chase are incorporated herein and joined only to the extent that any and all such contentions are not inconsistent with BBVA's contentions herein.

## CONCLUSION

For the foregoing reasons, BBVA's Cross-Motion To Quash And For A Protective Order should be granted.

---

[6] Tellingly, Plaintiffs do not even attempt to refute BBVA's argument, BBVA Op. Br. at 4-5, that, given Plaintiffs' theory of what constitutes External Indebtedness, they may need to know the *location* of potential BBVA customers who may have considered participating in the BONAR 2024 offering – information which BBVA has offered to produce – but they do not need to know the *identity* of such customers.

Dated: New York, New York
         November 18, 2015

                                        Respectfully Submitted,

                                        WHITE & CASE LLP

                                        _____
                                        Kenneth A. Caruso
                                        Paul B. Carberry
                                        Evelyn A. Fanneron
                                        1155 Avenue of the Americas
                                        New York, New York 10036
                                        Tel:    (212) 819-8200

                                        *Attorneys for Banco Bilbao Vizcaya Argentaria,
                                        S.A., BBVA Compass Bancshares, Inc. and BBVA
                                        Securities, Inc.*