UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NML CAPITAL, | | |
| | Plaintiff, | 08 Civ. 6978 (TPG) |
| - against - | | 09 Civ. 1707 (TPG) |
| THE REPUBLIC OF ARGENTINA, | | 09 Civ. 1708 (TPG) |
| | Defendant. | |
| NML CAPITAL, | | |
| | Plaintiff, | |
| - against - | | 14 Civ. 8601 (TPG) |
| THE REPUBLIC OF ARGENTINA, | | |
| | Defendant. | |
| NML CAPITAL, | | |
| | Plaintiff, | |
| - against - | | 14 Civ. 8988 (TPG) |
| THE REPUBLIC OF ARGENTINA, | | |
| | Defendant. | *(captions continue on following pages)* |

**MEMORANDUM OF LAW IN SUPPORT OF THE REPUBLIC OF ARGENTINA'S MOTION, BY ORDER TO SHOW CAUSE, TO VACATE THE INJUNCTIONS ISSUED ON NOVEMBER 21, 2012, AND OCTOBER 30, 2015**

FFI FUND, LTD. and FYI LTD.,

                                    Plaintiffs,

              - against -                                    14 Civ. 8630 (TPG)

THE REPUBLIC OF ARGENTINA,

                                    Defendant.

AURELIUS CAPITAL MASTER, LTD. and ACP
MASTER, LTD.,

                                    Plaintiffs,
                                                             09 Civ. 8757 (TPG)
              - against -                                    09 Civ. 10620 (TPG)

THE REPUBLIC OF ARGENTINA,

                                    Defendant.

AURELIUS OPPORTUNITIES FUND II, LLC and
AURELIUS CAPITAL MASTER, LTD.,

                                    Plaintiffs,
                                                             10 Civ. 1602 (TPG)
              - against -                                    10 Civ. 3507 (TPG)

THE REPUBLIC OF ARGENTINA,

                                    Defendant.

AURELIUS CAPITAL MASTER, LTD. and
AURELIUS OPPORTUNITIES FUND II, LLC,

Plaintiffs,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

10 Civ. 3970 (TPG)
10 Civ. 8339 (TPG)

---

BLUE ANGEL CAPITAL I LLC,

Plaintiff,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

10 Civ. 4101 (TPG)
10 Civ. 4782 (TPG)

---

OLIFANT FUND, LTD.,

Plaintiff,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

10 Civ. 9587 (TPG)

---

PABLO ALBERTO VARELA, *et al.*,

Plaintiffs,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

10 Civ. 5338 (TPG)

PEREZ, *et al.*,

                  Plaintiffs,

        - against -                    14 Civ. 8242 (TPG)

THE REPUBLIC OF ARGENTINA,

                  Defendant.

---

AURELIUS CAPITAL PARTNERS, LP, *et al.*,

                  Plaintiffs,

        - against -                    14 Civ. 8946 (TPG)

THE REPUBLIC OF ARGENTINA,

                  Defendant.

---

BLUE ANGEL CAPITAL I LLC,

                  Plaintiff,

        - against -                    14 Civ. 8947 (TPG)

THE REPUBLIC OF ARGENTINA,

                  Defendant.

---

EM LTD.,

                  Plaintiff,

        - against -                    14 Civ. 8303 (TPG)

THE REPUBLIC OF ARGENTINA,

                  Defendant.

iv

LIGHTWATER CORPORATION LIMITED,

                                        Plaintiff,

- against -                                                    14 Civ. 4092 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

OLD CASTLE HOLDINGS, LTD.,

                                        Plaintiff,

- against -                                                    14 Civ. 4091 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

SETTIN,

                                        Plaintiff,

- against -                                                    14 Civ. 8739 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

CAPITAL VENTURES INTERNATIONAL,

                                        Plaintiff,

- against -                                                    14 Civ. 7258 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

ADAMI, *et al.*,

Plaintiffs,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

14 Civ. 7739 (TPG)

---

CAPITAL MARKETS FINANCIAL SERVICES INC., *et al.*,

Plaintiffs,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

15 Civ. 710 (TPG)

---

FOGLIA, *et al.*,

Plaintiffs,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

14 Civ. 8243 (TPG)

---

PONS, *et al.*,

Plaintiffs,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

13 Civ. 8887 (TPG)

GUIBELALDE, *et al.*,

                       Plaintiffs,

               - against -                       11 Civ. 4908 (TPG)

THE REPUBLIC OF ARGENTINA,

                       Defendant.

---

DORRA, *et al.*,

                       Plaintiffs,

               - against -                       14 Civ. 10141 (TPG)

THE REPUBLIC OF ARGENTINA,

                       Defendant.

---

BELOQUI, *et al.*,

                       Plaintiffs,

               - against -                       14 Civ. 5963 (TPG)

THE REPUBLIC OF ARGENTINA,

                       Defendant.

---

TORTUS CAPITAL MASTER FUND, LP,

                       Plaintiff,

               - against -                       14 Civ. 1109 (TPG)

THE REPUBLIC OF ARGENTINA,

                       Defendant.

TORTUS CAPITAL MASTER FUND, LP,

                                  Plaintiff,

                - against -                          14 Civ. 3127 (TPG)

THE REPUBLIC OF ARGENTINA,

                                Defendant.

---

TRINITY INVESTMENTS LIMITED,

                                    Plaintiff,

                - against -                          14 Civ. 10016 (TPG)

THE REPUBLIC OF ARGENTINA,

                                  Defendant.

---

MONTREUX PARTNERS, L.P.,

                                    Plaintiff,

                - against -                          14 Civ. 7171 (TPG)

THE REPUBLIC OF ARGENTINA,

                                  Defendant.

---

LOS ANGELES CAPITAL,

                                    Plaintiff,

                - against -                          14 Civ. 7169 (TPG)

THE REPUBLIC OF ARGENTINA,

                                  Defendant.

CORDOBA CAPITAL,

                    Plaintiff,

          - against -                    14 Civ. 7164 (TPG)

THE REPUBLIC OF ARGENTINA,

                  Defendant.

---

WILTON CAPITAL, LTD.,

                    Plaintiff,

          - against -                    14 Civ. 7166 (TPG)

THE REPUBLIC OF ARGENTINA,

                  Defendant.

---

MCHA HOLDINGS, LLC,

                    Plaintiff,

          - against -                    14 Civ. 7637 (TPG)

THE REPUBLIC OF ARGENTINA,

                  Defendant.

---

MCHA HOLDINGS, LLC,

                    Plaintiff,

          - against -                  14 Civ. 10064 (TPG)

THE REPUBLIC OF ARGENTINA,

                  Defendant.

ANDRAREX LTD.,

                                          Plaintiff,

            - against -                                        14 Civ. 9093 (TPG)

THE REPUBLIC OF ARGENTINA,

                                          Defendant.

CLARIDAE, *et al.*,

                                          Plaintiffs,

            - against -                                        14 Civ. 10201 (TPG)

THE REPUBLIC OF ARGENTINA,

                                          Defendant.

ARAG-A LIMITED, *et al.*,

                                          Plaintiffs,

            - against -                                        14 Civ. 9855 (TPG)

THE REPUBLIC OF ARGENTINA,

                                          Defendant.

ATTESTOR MASTER VALUE FUND LP,

                                          Plaintiff,

            - against -                                        14 Civ. 5849 (TPG)

THE REPUBLIC OF ARGENTINA,

                                          Defendant.

ANGULO, *et al.*,

                            Plaintiffs,

            - against -                  15 Civ. 1470 (TPG)

THE REPUBLIC OF ARGENTINA,

                           Defendant.

---

LAMBERTINI, *et al.*,

                            Plaintiffs,

            - against -                  15 Civ. 1471 (TPG)

THE REPUBLIC OF ARGENTINA,

                           Defendant.

---

HONERO FUND I, LLC,

                            Plaintiff,

            - against -                  15 Civ. 1553 (TPG)

THE REPUBLIC OF ARGENTINA,

                           Defendant.

---

TRINITY INVESTMENTS LIMITED,

                            Plaintiff,

            - against -                  15 Civ. 1588 (TPG)

THE REPUBLIC OF ARGENTINA,

                           Defendant.

BANCA ARNER S.A., *et al.*,

                                  Plaintiffs,

                - against -                         15 Civ. 1508 (TPG)

THE REPUBLIC OF ARGENTINA,

                                   Defendant.

---

TRINITY INVESTMENTS LIMITED,

                                    Plaintiff,

                - against -                         15 Civ. 2611 (TPG)

THE REPUBLIC OF ARGENTINA,

                                   Defendant.

---

TRINITY INVESTMENTS LIMITED,

                                    Plaintiff,

                - against -                         15 Civ. 5886 (TPG)

THE REPUBLIC OF ARGENTINA,

                                   Defendant.

---

MCHA HOLDINGS, LLC,

                                    Plaintiff,

                - against -                         15 Civ. 2577 (TPG)

THE REPUBLIC OF ARGENTINA,

                                   Defendant.

MCHA HOLDINGS, LLC,

Plaintiff,

- against -                                    15 Civ. 5190 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

---

ERCOLANI, *et al.*,

Plaintiffs,

- against -                                    15 Civ. 4654 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

---

FAZZOLARI, *et al.*,

Plaintiffs,

- against -                                    15 Civ. 3523 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

---

STONEHILL INSTITUTIONAL PARTNERS, L.P.,
*et al.*,

Plaintiffs,

- against -                                    15 Civ. 4284 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

WHITE HAWTHORNE, LLC,

                                        Plaintiff,

              - against -                          15 Civ. 4767 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

VR GLOBAL PARTNERS, LP,

                                        Plaintiff,

              - against -                          11 Civ. 8817 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

HONERO FUND I, LLC,

                                        Plaintiff,

              - against -                          15 Civ. 6702 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

PROCELLA HOLDINGS, L.P.,

                                        Plaintiff,

              - against -                          15 Civ. 3932 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

BYBROOK CAPITAL MASTER FUND LP, *et al.*,

                                               Plaintiffs,

               - against -                             15 Civ. 7367 (TPG)

THE REPUBLIC OF ARGENTINA,

                                           Defendant.

BYBROOK CAPITAL MASTER FUND LP, *et al.*,

                                               Plaintiffs,

               - against -                             15 Civ. 2369 (TPG)

THE REPUBLIC OF ARGENTINA,

                                           Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF THE REPUBLIC OF ARGENTINA'S MOTION, BY ORDER TO SHOW CAUSE, TO VACATE THE INJUNCTIONS ISSUED ON NOVEMBER 21, 2012, AND OCTOBER 30, 2015

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant The Republic of Argentina*

February 11, 2016

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ xvii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS .................................................................................... 3

    A.     The Injunctions ........................................................................... 3

    B.     The Court's Encouragement of Settlement ................................ 6

    C.     The New Government's Commitment to Resolving this Dispute .............. 7

    D.     The Settlements Reached To Date .............................................. 8

    E.     The Republic's Resolution Proposal ........................................... 9

ARGUMENT ...................................................................................................... 11

I.     THE COURT SHOULD ORDER THAT THE INJUNCTIONS BE
      DEEMED VACATED UPON THE OCCURRENCE OF THE
      PROPOSED CONDITIONS PRECEDENT. ........................................ 11

    A.     Legal Standard ........................................................................... 11

    B.     Applying the Injunctions Prospectively Is No Longer Equitable. ............ 13

    C.     The Proposed Modifications Are Necessary and Appropriate. ............... 15

II.    THE COURT HAS JURISDICTION TO HEAR THIS MOTION IN THE
      "ME TOO" ACTIONS NOTWITHSTANDING THE PENDING
      APPEAL. ............................................................................................. 16

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abaclat and Others v. Argentine Republic*,
    (ICSID Case No. ARB/07/05) (Italy/Arg.) .................................................................8

*Calderon v. Wambua*,
    No. 74 Civ. 4868 (LAP), 2012 WL 1075840 (S.D.N.Y. Mar. 28, 2012) ...................14

*Davis v. N.Y.C. Hous. Auth.*,
    278 F.3d 64 (2d Cir. 2002).......................................................................................12

*Grace v. Rosenstock*,
    228 F.3d 40 (2d Cir. 2000).......................................................................................11

*Horne v. Flores*,
    557 U.S. 433 (2009)................................................................................................14

*Jock v. Sterling Jewelers Inc.*,
    646 F.3d 113 (2d Cir. 2011).....................................................................................17

*In re Joint E. & S. Dists. Asbestos Litig.*,
    237 F. Supp. 2d 297 (E.D.N.Y. 2002) ......................................................................12

*Matarese v. Lefevre*,
    801 F.2d 98 (2d Cir. 1986).......................................................................................12

*N.Y. State Ass'n for Retarded Children v. Carey*,
    706 F.2d 956 (2d Cir. 1983).....................................................................................12

*NML Capital, Ltd. v. Republic of Argentina*,
    727 F.3d 230 (2d Cir. 2013)..................................................................................5, 13

*Rufo v. Inmates of Suffolk Cnty. Jail*,
    502 U.S. 367 (1992)......................................................................................12, 13, 14

*SEC v. Ahmed*,
    No. 3:15 Civ. 675 (JBA), 2016 WL 500436 (D. Conn. Jan. 11, 2016) ......................16

*Sierra Club v. U.S. Army Corps of Eng'rs*,
    732 F.2d 253 (2d Cir. 1984).................................................................................12, 13

*United States v. Eastman Kodak Co.*,
    63 F.3d 95 (2d Cir. 1995).........................................................................................12

*United States v. LoRusso*,
   695 F.2d 45 (2d Cir. 1982)......................................................................11

**Statutes & Rules**

Fed. R. App. P. 12.1 ...............................................................................16

Fed. R. App. P. 12.1(b) ..........................................................................16

Fed. R. Civ. P. 54(b) ...............................................................1, 2, 11, 17

Fed. R. Civ. P. Rule 60(b) ......................................................................17

Fed. R. Civ. P. 60(b)(5) ...................................................................passim

Fed. R. Civ. P. 60(b)(6) ...........................................................1, 2, 12, 17

Fed. R. Civ. P. 62.1 .................................................................................17

Fed. R. Civ. P. 62.1(a)(3) ...................................................................16, 17

Fed. R. Civ. P. 62.1(b) ............................................................................16

Law 26,017 (Arg.) "Lock Law" .........................................................passim

Law 26,984 (Arg.) "Sovereign Payment Law"...............................3, 9, 11, 17

Pursuant to Rules 54(b), 60(b)(5) and 60(b)(6) of the Federal Rules of Civil Procedure, and this Court's inherent equitable power, defendant the Republic of Argentina (the "Republic") respectfully submits this memorandum in support of its motion, by Order to Show Cause, to vacate the injunctions entered in the above-captioned matters on November 21, 2012 and October 30, 2015.

## PRELIMINARY STATEMENT

Last Friday, the Republic of Argentina announced a proposal to resolve the claims of all holders of Argentina's defaulted debt that, if accepted by plaintiffs in the above-captioned actions, would result in a total payment to plaintiffs of approximately $6.5 billion in cash.  The proposal, which Special Master Daniel A. Pollack called "an historic breakthrough", followed closely on the heels of agreements in principle with the plaintiffs in five of the above-captioned cases.  These events are the results of sustained efforts by Argentine President Mauricio Macri and his administration over his first two months in office to break from the policies of the previous government and reach a fair and final resolution of this long-standing dispute.

The proposal, as well as the agreements in principle that have been reached to date, are subject to what the Special Master has referred to as "two important conditions" that must be satisfied before a resolution can be reached.  The first is the approval of the proposal by the Congress of the Republic.  As part of his efforts to reach a resolution, President Macri will ask Congress to repeal legislation that was enacted under the auspices of the prior administration to prevent the Republic from making the payments necessary to resolve this dispute.

The second condition is vacatur of the "*pari passu*" injunctions entered by this Court on November 21, 2012 and October 30, 2015 (the "Injunctions").  The

Injunctions were put in place as a result of the prior government's ardent efforts to undermine the claims of the plaintiffs in these actions and to provide a strong incentive to Argentina to negotiate in good faith to resolve these claims.  That purpose has been accomplished, and dramatically so.  Now, however, the continued force of the Injunctions makes it difficult for Argentina to access the global capital markets to raise funds to complete the settlements, and it creates an incentive for the remaining holdout bondholders not to settle on reasonable terms, knowing that they derive leverage from the ability to prevent Argentina and the other bondholders from reaching any negotiated resolution.  The time has come for this Court to vacate the Injunctions, subject to certain conditions that will demonstrate the new government's resolve to act in accordance with its expressed mandate to settle these actions as this Court has urged.

Under Rule 54(b), this Court has the equitable discretion to vacate or modify an interlocutory order when justice so requires.  Similarly, under Rules 60(b)(5) and 60(b)(6), this Court is empowered to vacate or modify a permanent injunction when changed circumstances make prospective enforcement of the order "no longer equitable", or for "any other reason that justifies relief".  Those standards are met here.  Under the leadership of President Macri, the new administration has carried out a dramatic shift in policy toward this dispute and has made "enormous progress" toward a resolution over the last two months, culminating in the "historic" proposal released last week.  The Injunctions, which were necessary to bring about a resolution, are now an obstacle to finalizing those deals and similar settlements with debt holders.

Moreover, the Republic is proposing that the Court make vacatur of the Injunctions subject to the occurrence of two conditions precedent:  repeal by Argentina of

the legislative obstacles to settlement, and actual payment of the settlement amounts provided for in agreements in principle executed with any of the plaintiffs in the above-captioned actions on or before February 29, 2016. The occurrence of those conditions would represent yet another significant change in circumstances that would make continued enforcement of the Injunctions inequitable. The legislative condition would remove any legal impediment in Argentina to settlement, and the payment condition would result in both a complete resolution of the settling plaintiffs' claims and a demonstration to the remaining claimants and to this Court of the Republic's financial ability and willingness to resolve any remaining claims.

Accordingly, for the reasons stated further below, the Court should exercise its equitable discretion to order that the Injunctions be deemed vacated upon the occurrence of the following conditions precedent:

(1) the Republic of Argentina takes action necessary to repeal or otherwise abridge Law 26,017 (the "Lock Law") and Law 26,984 (the "Sovereign Payment Law"); and

(2) with respect to any of the parties in the above-captioned matters that enters into a settlement agreement with the Republic of Argentina on or before February 29, 2016 (each a "Settling Party"), payment is made by the Republic of Argentina to all such Settling Parties (in accordance with the specific terms of each such Settlement Agreement) and certification that such payment was received by each Settling Party is made by the Republic of Argentina to this Court with simultaneous notice to the Settling Party.

## STATEMENT OF FACTS

### A.  The Injunctions

In 1994, Argentina began issuing debt securities pursuant to a new Fiscal Agency Agreement (the "FAA Bonds"). (*See* Ex.[1] A.)  The FAA contains a provision,

---

[1] References to "Ex." are to the exhibits to the accompanying Declaration of Michael A. Paskin, executed on February 11, 2016.

referred to as the "*Pari Passu* Clause", providing that the securities "shall at all times

rank *pari passu* and without any preference among themselves" and that "[t]he payment

obligations of the Republic under the Securities shall at all times rank at least equally

with all its other present and future unsecured and unsubordinated External

Indebtedness".  (Ex. A ¶ 1(c).)

   In 2001, Argentina defaulted on its external indebtedness, including the

FAA bonds.  In each of 2005 and 2010, Argentina offered holders of the defaulted bonds

new exchange bonds (the "Exchange Bonds") and began making payments to the holders

of those bonds without making payments to persons who continued to hold defaulted

bonds, including the FAA Bonds.  On February 23, 2012, in certain of the above-

captioned actions (the "*Pari Passu* Actions")[2], this Court issued an injunction providing,

among other things, that

> "[w]henever the Republic pays any amount due under
> terms of the bonds or other obligations issued pursuant to
> the Republic's 2005 or 2010 Exchange Offers, or any
> subsequent exchange of or substitution for the 2005 and
> 2010 Exchange Offers that may occur in the future . . . the
> Republic shall concurrently or in advance make a 'Ratable
> Payment' . . . to NML".  (Ex. B ¶ 2(a).)

On November 21, 2012, the Court issued a revised injunction in the *Pari Passu* Actions,

sometimes referred to as the "Amended February 23, 2012 Order" (collectively with the

February 23, 2012, injunctions, the "2012 Injunctions").  (Ex. C.)

   In issuing the 2012 Injunctions, the Court found that there was "no

adequate remedy at law . . . because the Republic has made clear – indeed, it has codified

---

[2] The *Pari Passu* Actions can be found at: Nos. 08 Civ. 6978 (TPG); 09 Civ. 1707 (TPG); 09 Civ. 1708 (TPG); 09 Civ. 8757 (TPG); 09 Civ. 10620 (TPG); 10 Civ. 1602 (TPG); 10 Civ. 3507 (TPG); 10 Civ. 3970 (TPG); 10 Civ. 8339 (TPG); 10 Civ. 4101 (TPG); 10 Civ. 4782 (TPG); 10 Civ. 9587 (TPG); and 10 Civ. 5338 (TPG).

in Law 26,017 [the "Lock Law"] . . . – its intention to defy any money judgment issued by this Court". (Ex. B ¶ 1(b); Ex. C ¶ 1(b).) The Court found further that the balance of equities strongly supported the injunction because, among other reasons, "[i]n the absence of the equitable relief provided by this Order, the Republic will continue to violate Paragraph 1(c) [of the FAA] with impunity", and because "the Republic has engaged in an unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations [under the FAA], in direct violation of its contractual commitment". (Ex. B ¶ 1(c); Ex. C ¶ 1(c).) The Court also found that the public interest favored "holding the Republic to its contractual obligations". (Ex. B ¶ 1(d); Ex. C ¶ 1(d).)

In affirming the 2012 Injunctions, the Second Circuit agreed that the plaintiffs had no adequate remedy at law because "the Republic has made clear its intention to defy any money judgment issued by this Court. Moreover, Argentina has gone considerably farther by passing legislation, the Lock Law, specifically barring payments to FAA bondholders". *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 241 (2d Cir. 2013) (internal citation omitted). The Second Circuit went on to explain that

> "this case is an exceptional one with little apparent bearing on transactions that can be expected in the future. Our decision here does not control the interpretation of all *pari passu* clauses or the obligations of other sovereign debtors under *pari passu* clauses in other debt instruments. . . . We simply affirm the district court's conclusion that Argentina's extraordinary behavior was a violation of the particular *pari passu* clause found in the FAA." *Id.* at 247.

The Court "further observed that cases like this one are unlikely to occur in the future because Argentina has been a uniquely recalcitrant debtor". *Id.*

On October 30, 2015, the Court entered similar injunctions in 49 actions (the "Me Too Actions")[3] brought by the so-called "me too" plaintiffs (the "Me Too Injunctions" and, collectively with the 2012 Injunctions, the "Injunctions"). (Ex. D.) In issuing the Me Too Injunctions, the Court held that "[t]he Republic has done nothing in recent years to alleviate the court's concerns" and that "[i]f anything, it has escalated its scheme of attempting to make payments on the Exchange Bonds while refusing to make any payment on the FAA bonds". (*Id.* at 8.) The Court also cited "[t]he Republic's reluctance to entertain meaningful settlement discussions before the Special Master". *Id.* at 10. The Court echoed the Second Circuit's statements that Argentina had been a "uniquely recalcitrant debtor" and that "this 'exceptional' case" would not "imperil future sovereign debt restructurings". *Id.*

## B.     The Court's Encouragement of Settlement

This Court has impressed upon the parties repeatedly that there must be a negotiated resolution of this matter. (*See, e.g.*, Ex. E (Aug. 8, 2014 Hr'g Tr.) at 8:24-9:1 ("[T]he really truly important thing is to recognize that this matter will not be resolved without a successful settlement.").) To that end, the Court appointed Daniel A. Pollack as Special Master to oversee settlement discussions. (Ex. F ¶ 1.) The Court instructed the parties "to give full co-operation to the Special Master in all respects in the

---

[3] The "Me Too" actions can be found at: 14 Civ. 8601 (TPG); 14 Civ. 8988 (TPG); 14 Civ. 8630 (TPG); 14 Civ. 8242 (TPG); 14 Civ. 8946 (TPG); 14 Civ. 8947 (TPG); 14 Civ. 8303 (TPG); 14 Civ. 4092 (TPG); 14 Civ. 4091 (TPG); 14 Civ. 8739 (TPG); 14 Civ. 7258 (TPG); 14 Civ. 7739 (TPG); 15 Civ. 710 (TPG); 14 Civ. 8243 (TPG); 13 Civ. 8887 (TPG); 14 Civ. 4908 (TPG); 14 Civ. 10141 (TPG); 14 Civ. 5963 (TPG); 14 Civ. 1109 (TPG); 14 Civ. 3127 (TPG); 14 Civ. 10016 (TPG); 14 Civ. 7171 (TPG); 14 Civ. 7169 (TPG); 14 Civ. 7164 (TPG); 14 Civ. 7166 (TPG); 14 Civ. 7637 (TPG); 14 Civ. 10064 (TPG); 14 Civ. 9093 (TPG); 14 Civ. 10201 (TPG); 14 Civ. 9855 (TPG); 14 Civ. 5849 (TPG); 15 Civ. 1470 (TPG); 15 Civ. 1471 (TPG); 15 Civ. 1553 (TPG); 15 Civ. 1588 (TPG); 15 Civ. 1508 (TPG); 15 Civ. 2611 (TPG); 15 Civ. 5886 (TPG); 15 Civ. 2577 (TPG); 15 Civ. 5190 (TPG); 15 Civ. 4654 (TPG); 15 Civ. 3523 (TPG); 15 Civ. 4284 (TPG); 15 Civ. 4767 (TPG); 11 Civ. 8817 (TPG); 15 Civ. 6702 (TPG); 15 Civ. 3932 (TPG); 15 Civ. 7367 (TPG); and 15 Civ. 2369 (TPG).

negotiations".  (*Id.* ¶ 6.)

In subsequent hearings, the Court has reiterated the importance of
reaching a negotiated resolution.  During a hearing on August 8, 2014, the Court stated:
"I want to say now, and I will repeat it at the end, it is through settlement that obligations
which need to be honored can be honored; therefore, it is highly important that settlement
negotiations go forward and bear fruition."  (Ex. E at 3:20-23; *see also id.* at 9:11-14
("[I]f the parties and if the attorneys wish to resolve this matter, there must be negotiation
of issues and there must be a settlement.  And there can be a settlement.").)  Similarly,
during a hearing on August 21, 2014, the Court stated:  "I have said it today, we all know
it, and that is, the thing that is of paramount necessity is to have a settlement".  (Ex. G
at 10:24-25; *see also id.* at 7:24-25 ("[T]he settlement is what has got to come somehow,
some day.").)

**C.      The New Government's Commitment to Resolving this Dispute**

Mauricio Macri was elected President of the Republic on November 22,
2015.  (Bausili Decl.[4] ¶ 3.)  After taking office on December 10, 2015, President Macri
began implementing a package of economic reforms, including cutting personal income
taxes, eliminating most farm export taxes and overhauling Argentina's statistics agency.
(*Id.*)  President Macri appointed Alfonso Prat-Gay, a former president of the Central
Bank of Argentina, as his new Minister of the Economy, and he appointed Luis Caputo as
his Secretary of Finance.  (*Id.*)  Central to President Macri's agenda, and among the
primary tasks for Minister Prat-Gay and Secretary Caputo, is resolving this long-running

---

[4] References to "Bausili Decl." are to the accompanying Declaration of Undersecretary of Finance Santiago
Bausili, executed on February 11, 2016.

dispute with the holders of Argentina's defaulted debt and restoring Argentina's access to global capital markets.  (*Id.*)

Immediately upon assuming office, President Macri dispatched Secretary Caputo and other senior members of the government to New York to engage in discussions with Special Master Pollack as well as holders of Argentina's defaulted debt. (*Id.* ¶ 4.)  Since then, government officials have held a series of productive discussions with both the Special Master and a substantial number of bondholders.  (*Id.*)  On January 22, President Macri told Reuters in an interview regarding the negotiations: "I want to be clear:  We want to reach a settlement.  We want to find a fair agreement." (Ex. H at 3:2-4.)  The Special Master has acknowledged the "courage and flexibility" of President Macri and Minister Prat-Gay "in stepping up to and dealing with this long-festering problem which was not of their making", as well as the "tireless and meaningful contributions" of the team led by Secretary Caputo and Vice Chief of Cabinet Mario Quintana, noting that "their team worked around the clock to facilitate the negotiations". (Ex. I.)

### D.     The Settlements Reached To Date

On January 31, 2016, the Republic reached an agreement in principle with claimants (the "Italian Bondholders") in the case of *Abaclat and Others v. Argentine Republic* (ICSID Case No. ARB/07/05) to resolve all outstanding claims (in a matter not before this Court).  (Bausili Decl. ¶ 5.)  The agreement is subject to, among other things, the approval of the Argentine Congress.  (*Id.* ¶ 3.)  The Congress will next be in session on March 1, 2016.  (*Id* .¶ 10.)

On February 3, 2016, the Republic reached agreements in principle with plaintiffs in five of the above-captioned matters (the "Settling Bondholders") to resolve

all outstanding claims.  (*Id.* ¶ 6.)  The agreements with the Settling Bondholders are each subject to what the Special Master has stated are "two important conditions".  (*See* Ex. I.) *First*, the agreements are subject to the approval of the Argentine Congress.  As part of its efforts to resolve these matters, the government will ask Congress to repeal the Lock Law and the Sovereign Payment Law, which now prevent Argentina from completing the settlements.  (*See* Bausili Decl. ¶ 10.)  *Second*, the agreements are subject to an order by this Court vacating the Injunctions.  (*Id.* ¶ 11.)  The Settling Bondholders agree that the Injunctions should be vacated on the conditions proposed, and the Republic expects they will be filing papers in support of the Republic's motion.

> **E.     The Republic's Resolution Proposal**

On February 5, 2016, after extensive work with the Special Master and the bondholders, the Republic published a proposal (the "Proposal") of its intention, upon receiving the required legislative authority, to offer to settle the claims of all outstanding holders of defaulted Argentine debt, including holders of FAA Bonds, like plaintiffs in the above-captioned cases.  (Ex. J.)  If approved by the legislature and accepted by plaintiffs in the above-captioned actions, the Proposal would result in a total payment to plaintiffs of USD $6.5 billion.  (Bausili Decl. ¶ 7.)

The Proposal contemplates two settlement offers.  The first offer (the "Standard Offer") will be open to holders of all FAA Bonds.  Under the Standard Offer, the Proposal provides for a payment in cash equal to the original principal amount of the bond plus 50% of that original principal.

The second offer (the "*Pari Passu* Offer") will be extended to the holders of FAA Bonds that are subject to the Injunctions—*i.e.*, plaintiffs in the above-captioned

actions.  Those holders may elect to receive either the Standard Offer or the *Pari Passu*

Offer.  The *Pari Passu* Offer consists of the following:

- with respect to any bonds as to which a monetary judgment was issued prior to February 1, 2016, a payment in cash equal to the full amount of that judgment less a discount of 30%; and

- with respect to any bonds as to which a money judgment had not been issued as of February 1, 2016, a payment in cash equal to the current accrued value of the claims at their contractual rate less a discount of 30%.

For any bondholders that reach agreements in principle with the Republic on or before

February 19, 2016, the 30% discounts in the *Pari Passu* Offer will be reduced to 27.5%.

In each instance, creditors would receive the full principal amount of the debt they hold,

plus a substantial return representing a significant portion of the outstanding accrued

interest on that amount.  (*See* Bausili Decl. ¶ 7.)  Like the agreements in principle that

already have been reached, the offers contemplated by the Proposal are subject to (i) the

approval of the Argentine Congress and (ii) the lifting of the Injunctions by this Court.

Following the release of the Proposal, the Special Master released a

statement stating that he was "pleased to report that enormous progress has been made"

and calling the Proposal "an historic breakthrough".  (Ex. I.)

The Proposal also has received the support of the United States

Government.  (Bausili Decl. ¶ 8.)  On February 7, 2016, Minister Prat-Gay spoke with

U.S. Treasury Secretary Jacob Lew, who commended Argentina's good faith efforts to

resolve this dispute and expressed his hope that all holders of FAA Bonds would reach

settlements with Argentina.  (*Id.* ¶ 8; Ex. K.)  The Proposal also has received a positive

reaction in the global markets.  (Bausili Decl. ¶ 9.)

To bring about a final resolution of this matter, Argentina now asks the Court for an order that the Injunctions shall be deemed vacated, without further action of the Court, upon the occurrence of the following conditions precedent:

> (1) the Republic of Argentina takes action necessary to repeal or otherwise abridge Law 26,017 (the "Lock Law") and Law 26,984 (the "Sovereign Payment Law"); and

> (2) with respect to any of the parties in the above-captioned matters that enters into a settlement agreement with the Republic of Argentina on or before February 29, 2016 (each a "Settling Party"), payment is made by the Republic of Argentina to all such Settling Parties (in accordance with the specific terms of each such Settlement Agreement) and certification that such payment was received by each Settling Party is made by the Republic of Argentina to this Court with simultaneous notice to the Settling Party.

## **ARGUMENT**

### I.    **THE COURT SHOULD ORDER THAT THE INJUNCTIONS BE DEEMED VACATED UPON THE OCCURRENCE OF THE PROPOSED CONDITIONS PRECEDENT.**

#### A.    **Legal Standard**

Rule 54(b) provides that any order, "however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a [final] judgment". *See Grace v. Rosenstock*, 228 F.3d 40, 51 (2d Cir. 2000) ("All interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain."). "[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so." *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) (citation omitted).

Even if the Injunctions were final judgments, Rule 60(b)(5) of the Federal Rules of Civil Procedure provides that a court may vacate or modify a permanent

injunction when "applying it prospectively is no longer equitable". The rule is "based on the historic equitable power of the court to modify its decree in light of changed circumstances". *In re Joint E. & S. Dists. Asbestos Litig.*, 237 F. Supp. 2d 297, 316 (E.D.N.Y. 2002); *see United States v. Eastman Kodak Co.*, 63 F.3d 95, 101 (2d Cir. 1995) ("[T]he power of a court to modify or terminate a consent decree is, at bottom, guided by equitable considerations."). As the Second Circuit has explained, "[t]he power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible". *N.Y. State Ass'n for Retarded Children v. Carey*, 706 F.2d 956, 967 (2d Cir. 1983); *see also Davis v. N.Y.C. Hous. Auth.*, 278 F.3d 64, 88 (2d Cir. 2002) ("It is, of course, well established that a district court has the power, in the exercise of its discretion, to modify its past injunctive decrees in order to accommodate changed circumstances."). Further embodying that broad equitable power is Rule 60(b)(6), which authorizes a court to vacate an order for "any other reason that justifies relief". *See Matarese v. Lefevre*, 801 F.2d 98, 106 (2d Cir. 1986) ("[Rule 60(b)(6)] confers broad discretion on the trial court to grant relief when appropriate to accomplish justice." (citation and internal quotation marks omitted)).

Under Rule 60(b)(5), a court is authorized to vacate or modify an injunction when there has been "a significant change either in factual conditions or in law". *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992); *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984) (explaining that Rule 60(b)(5) relief is warranted "where conditions have so changed as to make such relief equitable, *i.e.*, a significant change in the law or facts"). The Supreme Court has recognized that vacating or modifying an injunction may be warranted "when enforcement of the decree

without modification would be detrimental to the public interest".  *Rufo*, 502 U.S. at 384.

The court's discretion is guided by "whether the requested modification effectuates or

thwarts the purpose behind the injunction".  *Sierra Club*, 732 F.2d at 257.

      **B.**      **Applying the Injunctions Prospectively Is No Longer Equitable.**

      The circumstances that led the Court to issue the Injunctions, and the

Second Circuit to affirm them, have significantly changed.  Whereas the Second Circuit

characterized the previous administration as a "uniquely recalcitrant debtor", the current

government is intensely committed to resolving the dispute with its debt holders through

a reasonable and fair settlement.  The government has demonstrated that commitment

through the "enormous progress" it has made—over the course of only two months in

office—in settlement negotiations with the Special Master, through the conclusion of

significant agreements in principle and through the promulgation of a fair Proposal that

the Special Master has referred to as "an historic breakthrough".  *See* Ex. I.  The Proposal

remains open to all holders of defaulted debt, with the goal of achieving a complete

resolution of this matter, and the government continues to make significant progress in its

negotiations with the remaining holdout creditors.  Bausili Decl. ¶ 4-7.

      In addition, the Republic has proposed to make vacatur of the Injunctions

subject to conditions precedent that, upon their occurrence, will further make continued

application of the Injunctions inequitable.  *First*, the lifting of the Injunctions would be

contingent upon the repeal of legislation that gave rise, in part, to the need for the

Injunctions.  *See* Ex. C (holding that injunction was justified, among other reasons,

"because the Republic has made clear – indeed, it has codified in Law 26,017 . . . – its

intention to defy any money judgment issued by this Court"); *see also NML Capital*, 727

F.3d at 241 ("[T]he Republic has made clear its intention to defy any money judgment

issued by this Court.  Moreover, Argentina has gone considerably farther by passing

legislation, the Lock Law, specifically barring payments to FAA bondholders." (internal

citation omitted)).  Such a legislative change would represent a "dramatic shift in . . .

policy" and a significant change in the factual circumstances, justifying vacating the

Injunctions.  *See Horne v. Flores*, 557 U.S. 433, 461 (2009) ("Congress' enactment of

NCLB represents another potentially significant 'changed circumstance.' NCLB marked

a dramatic shift in federal education policy."); *Calderon v. Wambua*, No. 74 Civ. 4868

(LAP), 2012 WL 1075840, at *4 (S.D.N.Y. Mar. 28, 2012) ("[T]he Supreme Court held

[in *Horne v. Flores*] that certain legislative changes were significant factual changes that

the district court should have considered.").  The passage of such legislation also will

render the Injunctions unnecessary to achieve their ends, as the government will be

authorized to and will pay reasonable settlements to all holders of defaulted Argentine

bonds under the terms of the Proposal.

*Second*, the Republic has proposed to make vacatur of the Injunctions

contingent upon actual payment to any plaintiff in the above-captioned matters who

reaches an agreement in principle with the Republic on or before February 29, 2016.

Such payments would represent another significant change in circumstances, as they

would result in a full satisfaction of the settling parties' claims and a demonstration to the

remaining claimants and to this Court of the Republic's commitment to resolving this

dispute.

Subject to those conditions, and in light of the good faith efforts of the

new government, continued "enforcement of the decree without modification would be

detrimental to the public interest" in resolving this long-running dispute.  *Rufo*, 502 U.S.

at 384.  Although the Injunctions helped bring Argentina to the negotiating table, they

now serve as obstacles to finalizing those settlements because they make it difficult for

Argentina to access the global capital markets to raise funds to assist in completing the

settlements.  *See* Ex. I (explaining that "the proposal by Argentina is an historic

breakthrough which, if the conditions mentioned above are met, will allow Argentina to

return to the global financial markets to raise much needed capital").  Given the size of

the payment required to settle with all outstanding bondholders, and the Republic's

existing commitments to other creditors, the cash required for the settlement payments

may need to be raised in the capital markets.  Bausili Decl. ¶ 11.  New creditors need to

have confidence that, if they finance these settlements, Argentina will not be barred from

making payments to those creditors on the newly issued debt.  *See id*.  Finally, the

Injunctions provide the remaining holdouts with an incentive not to settle, knowing that

by holding out they can threaten to prevent Argentina and the other bondholders from

achieving any resolution.

On the other hand, the conditions that Argentina has proposed provide the

holders of outstanding Argentine bonds with significant protection, even if they choose

not to reach agreements in principle by February 29.  The legislative condition ensures

that there will be no legal obstacle to the Republic's settlement of their claims, and the

payment condition demonstrates the Republic's financial ability and willingness to settle

their claims.

### C.  The Proposed Modifications Are Necessary and Appropriate.

It is crucial that vacatur of the Injunctions be made automatic upon the

proposed conditions and not contingent on further action by this Court.  *First*, such an

order would boost the government's efforts to repeal the legislation, as legislators would

understand that repeal will encourage a prompt resolution.  *Second*, such an order would help bring the remaining holdouts to the negotiating table, providing them with an incentive to reach a resolution rather than continue to hold out.  To be clear, the Republic does not suggest that the Court should force any debt holder to accept a settlement.  Vacating the Injunctions does not compel any bondholder to accept a settlement, and any party can press its claims in court.  Rather, it is equitable that the debt holders should no longer hold the Injunctions over Argentina as a club in negotiations.  *Third*, such an order would provide potential new creditors with the confidence they need to invest in Argentine bonds.

## II.    THE COURT HAS JURISDICTION TO HEAR THIS MOTION IN THE "ME TOO" ACTIONS NOTWITHSTANDING THE PENDING APPEAL.

The appeal pending in the Me Too Actions does not deprive this Court of jurisdiction to hear and rule on the Republic's motion.  Rule 62.1(a)(3) of the Federal Rules of Civil Procedure provides that, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue".  *See, e.g.*, *SEC v. Ahmed*, No. 3:15 Civ. 675 (JBA), 2016 WL 500436, at *1 (D. Conn. Jan. 11, 2016) ("[T]his Court hereby states that . . . Defendants' motion to modify the preliminary injunction . . . 'raises a substantial issue' as that phrase is used in Rule 62.1(b).").  If the Court makes either of those findings, Rule 62.1(b) provides that "[t]he movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1".  Under Rule 12.1(b) of the Federal Rules of Appellate Procedure, the Court of Appeals then "may remand for further proceedings" so that the District Court may rule on the motion.

16

*See Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 118 (2d Cir. 2011) ("[T]his court issued a limited remand of the appeal to permit the district court to rule on the pending Rule 60(b) motion.").

        For the reasons stated above, the Court should grant the Republic's motion.  Therefore, in the Me Too Actions, the Court should issue an indicative ruling pursuant to Rule 62.1(a)(3) that it would grant the motion if the Second Circuit remands for that purpose (or, alternatively, that the motion "raises a substantial issue").  Upon remand, the Court should grant the Republic's motion for the reasons stated herein.

## **CONCLUSION**

        For the foregoing reasons, the Republic of Argentina respectfully requests that this Court:

(1) issue the proposed Orders to Show Cause;

(2) issue, in the Me Too Actions, an Indicative Ruling pursuant to Federal Rule of Civil Procedure 62.1 that this Court would grant the relief sought herein upon a remand by the Court of Appeals for that purpose and/or that the relief sought herein raises a "substantial issue"; and

(3) issue orders, pursuant to Federal Rules of Civil Procedure 54(b), 60(b)(5) and 60(b)(6), and the Court's inherent equitable power, that the Injunctions shall be deemed vacated upon the occurrence of the following conditions precedent:

    (a) the Republic of Argentina takes action necessary to  repeal or otherwise abridge Law 26,017 (the "Lock Law") and Law 26,984 (the "Sovereign Payment Law"); and

    (b) with respect to any of the parties in the above-captioned matters that enters into a settlement agreement with the Republic of Argentina on or before February 29, 2016 (each a "Settling Party"), payment is made by the Republic of Argentina to all such Settling Parties (in accordance with the specific terms of each such Settlement Agreement) and certification that such payment was received by each Settling Party is made by the Republic of Argentina to this Court with simultaneous notice to the Settling Party.

February 11, 2016

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

By

Daniel Slifkin
Michael A. Paskin
John D. Buretta
Damaris Hernández
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
dslifkin@cravath.com

*Attorneys for Defendant The Republic of Argentina*