# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EM LTD.,<br><br>                    Plaintiff,<br><br>     v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                  Defendant. | No. 14 Civ. 8303 (TPG) |
| MONTREUX PARTNERS L.P.,<br><br>                  Plaintiff,<br><br>     v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                  Defendant. | No. 14 Civ. 7171 (TPG) |
| LOS ANGELES CAPITAL,<br><br>                  Plaintiff,<br><br>     v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                  Defendant. | No. 14 Civ. 7169 (TPG) |

|  |  |
|---|---|
| CORDOBA CAPITAL,<br><br>Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendant. | No. 14 Civ. 7164 (TPG) |
| WILTON CAPITAL, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendant. | No. 14 Civ. 7166 (TPG) |

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT THE REPUBLIC OF ARGENTINA'S MOTION FOR AN INDICATIVE RULING THAT THE COURT WOULD GRANT RELIEF FROM THE *PARI PASSU* INJUNCTION

Plaintiffs EM Ltd. and Montreux[1] (collectively, the "Settling Plaintiffs")

respectfully submit this Memorandum of Law in support of Defendant the Republic of

Argentina's Motion for an Indicative Ruling under Federal Rule of Civil Procedure 62.1

that the Court would grant Argentina relief from all of the *pari passu* injunctions entered

in these and related actions (referred to as the "*Pari Passu* Injunction").[2]

---

[1] Montreux Partners, L.P., Los Angeles Capital, Cordoba Capital, and Wilton Capital, Ltd.

[2] Settling Plaintiffs support Argentina's motion provided that the relief Argentina seeks is granted in all the actions in which Argentina has brought its motion. That is so because if the relief Argentina seeks is not finally granted in all actions (including

## PRELIMINARY STATEMENT

On October 30, 2015, this Court issued the *Pari Passu* Injunction against Argentina. *NML Capital, Ltd. v. Republic of Argentina*, ___ F. Supp. 3d ___, 2015 WL 6656573 (S.D.N.Y. Oct. 30, 2015). Settling Plaintiffs sought this remedy as a last resort, in response to Argentina's longstanding and repeated defiance of this Court's orders, and Argentina's continual efforts to frustrate satisfaction of the judgments the Settling Plaintiffs secured. Indeed, until recently, "Argentina ha[d] been a uniquely recalcitrant debtor," making "clear its intention to defy any money judgment issued by this court" and "engag[ing] in a scheme of making payments on other external indebtedness after repudiating its payment obligations to plaintiffs." *Id.* at *4, *5 (quoting *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 262 (2d Cir. 2013)). For these reasons, the Court granted the injunctive and other relief the Settling Plaintiffs sought. *Id.*

But circumstances have now changed. Argentina recently elected a new president, Mauricio Macri, who campaigned on a platform of resolving Argentina's disputes with its creditors. Shortly after President Macri's election, Argentina sent to New York a sophisticated team of senior advisors, headed by Luis Caputo, Secretary of Public Finance, and Mario Quintana, the President's Cabinet Chief, to conduct for the first time in years full and frank discussions with Argentina's creditors. Given the mandate to resolve Argentina's outstanding debt obligations, the Argentine delegation

---

the actions in which Argentina is currently seeking an indicative ruling), it is the Settling Plaintiffs' understanding that Argentina will not be in a position to obtain approval of the settlements from the Argentine Congress and to complete Argentina's settlements with the Settling Plaintiffs.

3

initiated and participated in good faith settlement negotiations under the auspices of Daniel Pollack, the Court-appointed Special Master.

In the course of just two weeks, the delegation successfully negotiated agreements in principle with the Settling Plaintiffs which, if effectuated, would resolve a substantial percentage of the outstanding claims arising from Argentina's 2001 default. Argentina also published a proposal for settlements on very favorable terms with *all* bondholders who are covered by the *Pari Passu* Injunction. In the nearly fifteen years since Argentina's default, the events of the past several weeks demonstrate an unprecedented level of commitment by Argentina to resolving this dispute.

Given the dramatic change in circumstances, the *Pari Passu* Injunction should now be conditionally lifted in its entirety. More specifically, the *Pari Passu* Injunction should be dissolved on the condition that, and as soon as, (1) Argentina's legislature repeals legislation that has been blocking the settlement of these disputes, and (2) Argentina satisfies its payment obligations to Settling Plaintiffs and any other settling plaintiffs. By conditioning relief from the *Pari Passu* Injunction in this fashion, the Court can ensure that the injunctions will remain in place for as long as is necessary, but not a moment *longer*, to bring about a fair and equitable resolution of this long-running litigation.

The *Pari Passu* Injunction has served its purpose of forcing Argentina to "entertain meaningful settlement discussions." *NML Capital, Ltd.*, 2015 WL 6656573, at *5. Yet, without the limited relief that Argentina seeks, the *Pari Passu* Injunction will now stand as an obstacle to the resolution of these disputes. The Court should therefore

issue an indicative ruling stating that, if the Second Circuit remands the case to this

Court, this Court would conditionally lift the *Pari Passu* Injunction.

## FACTUAL BACKGROUND

The Settling Plaintiffs are bondholders who were the owners of debt issued by

Argentina under the Fiscal Agency Agreement dated October 19, 1994 (the "1994

FAA").[3]  Following an economic crisis, Argentina defaulted on its sovereign debt,

including the bonds held by the Settling Plaintiffs, and the Settling Plaintiffs commenced

litigation in this Court to recover on their defaulted bonds.[4]  EM first brought its action in

2003 and received a final judgment in the amount of $724,801,662.56 on October 27,

2003.[5]  Montreux brought actions beginning in 2005 and received final judgments in the

aggregate amount of $411,950,915 in June 2009.[6]  Post-judgment interest was awarded

---

[3]   *EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507 (TPG) (Memorandum Opinion, ECF No. 30); Declaration of Kenneth E. Johns, Jr. in Support of Plaintiff's Memorandum of Law, dated Feb. 11, 2016 ("Johns Decl.") ¶ 5; *EM Ltd. v. Republic of Argentina*, No. 14 Civ. 8303 (TPG) (ECF No. 1, Annex A – 1994 FAA).

[4]   Johns Decl. ¶¶ 6–7; Declaration of Michael Straus in Support of the Motion of Defendant The Republic of Argentina For Indicative Ruling and For Relief From An Injunction, dated Feb. 10, 2016 ("Straus Decl.") ¶ 8.

[5]   *EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507 (TPG) (Amended Final Judgment, ECF No. 38), 2003 WL 22454934, (S.D.N.Y. Oct. 27, 2003) *aff'd*, 382 F.3d 291 (2d Cir. 2004).

[6]   *Montreux Partners, L.P. v. Republic of Argentina*, No. 05 Civ. 4239 (TPG) (Final Judgment of $48,621,544, ECF No. 30); *Cordoba Capital v. Republic of Argentina*, 06 Civ. 5887 (TPG) (Final Judgment of $100,033,967, ECF No. 31); *Los Angeles Capital v. Republic of Argentina*, No. 05 Civ. 10201 (TPG) (Final Judgment of $82,160,690, ECF No. 33); *Los Angeles Capital v. Republic of Argentina*, No. 07 Civ. 2349 (TPG) (Final Judgment of $75,139,739, ECF No. 26); *Wilton Capital, Ltd. v. Republic of Argentina*, No. 07 Civ. 1797 (TPG) (Final Judgment of $39,869,672,

on all the foregoing judgments. Argentina has not made a single voluntary payment on any judgment held by Settling Plaintiffs. Johns Decl. ¶ 6; Straus Decl. ¶¶ 10, 12, 14, 17, 19, 21–22.

Separately, Argentina has attempted two debt restructurings, one in 2005 and one in 2010. Declaration of Charles Platto in Support of Motion for Partial Summary Judgment ("Platto Decl.") Ex. A-5, Prospectuses for 2010 Exchange Offer, ECF Nos. 11-6, 11-7, 11-8, and Ex. A-7, Prospectus for 2005 Exchange Offer, ECF No. 11-10.[7] The terms of these restructurings were extremely unfavorable to the defaulted debt holders (including Settling Plaintiffs) and were presented as "take-it-or-leave-it" offers with non-negotiable terms. As part of its coercive tactics, Argentina made clear that any creditor who failed to accept these offers would receive no payment on any of its defaulted debt. Argentina also passed legislation known as the "Lock Law" to prevent negotiation with or payment to creditors who refused to accept Argentina's offers. Platto Decl. Ex. A-8, Law 26,017 with Certified English Translation, ECF No. 11-11. The Lock Law and other similar laws enacted with the same purpose are still in effect. *See NML Capital, Ltd.*, 2015 WL 6656573, at *1, *3.

In 2009 and 2010, a group of creditors who did not exchange their bonds and had not yet received judgments on that debt (the "Pre-Judgment Plaintiffs") filed suit to enforce the so-called *pari passu* clause of the 1994 FAA, whereby Argentina promised to

---

ECF No. 27); *Wilton Capital v. Republic of Argentina*, No. 09 Civ. 401 (TPG) (Amended Judgment of $66,125,303, ECF No. 7).

[7]  For ease of reference, all docket citations are to *EM Ltd. v. Republic of Argentina*, No. 14 Civ. 8303 (TPG), unless otherwise noted.

rank its payment obligations on the bonds issued under the 1994 FAA equally with all other present and future external indebtedness.[8]  The Court held that Argentina had violated the *pari passu* clause by making payments on other external indebtedness, such as the Exchange Bonds, while repudiating its obligations on the defaulted 1994 FAA debt.  *E.g.*, *NML Capital, Ltd v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (Order dated Dec. 7, 2011, ECF No. 353).

In accordance with these rulings, on November 21, 2012, the Court issued an injunction requiring that Argentina make a "ratable payment" to the Pre-Judgment Plaintiffs whenever it made any payment to the Exchange Bondholders (referred to herein as the "Original *Pari Passu* Injunction").  *NML Capital, Ltd. v. Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG), 09 Civ. 1708 (TPG), 2012 WL 5895786 (S.D.N.Y. Nov. 21, 2012).  After affirmance by the Second Circuit and denial of Argentina's petition for *certiorari*, the Original *Pari Passu* Injunction entered into full force and effect on June 16, 2014.  *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2819 (2014).

Rather than complying with these orders, Argentina, then under the leadership of President Cristina Fernández de Kirchner, characterized the Original *Pari Passu*

---

[8]  *NML Capital, Ltd v. Republic of Argentina*, Nos. 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG), 09 Civ. 1708 (TPG); *Aurelius Capital Master, Ltd. and ACP Master, Ltd. v. Republic of Argentina*, Nos. 09 Civ. 8757 (TPG), 09 Civ. 10620 (TPG); *Aurelius Opportunities Fund II, LLC and Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 10 Civ. 1602 (TPG); *Aurelius Capital Master, Ltd. and Aurelius Opportunities Fund II, LLC v. Republic of Argentina*, Nos. 10 Civ. 3507 (TPG); 10 Civ. 3970 (TPG), 10 Civ. 8339 (TPG); *Blue Angel Capital I LLC v. Republic of Argentina*, Nos. 10 Civ. 4101 (TPG), 10 Civ. 4782 (TPG); *Olifant Fund, Ltd. v. Republic of Argentina*, No. 10 Civ. 9587 (TPG); *Varela. v. Republic of Argentina*, No. 10 Civ. 5338 (TPG).

Injunction as "extortion," and repeatedly announced plans to evade these injunctions by paying the Exchange Bondholders outside of this Court's jurisdiction. Platto Decl. Ex. A-22 at 5, Statement by President Cristina Fernández de Kirchner issued on June 16, 2014, with Certified English Translation, ECF No. 11-25. In response, the Court issued orders that expressly prohibited the Republic from taking steps to evade its obligations under the Original *Pari Passu* Injunction. *NML Capital, Ltd v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (Amended February 23, 2012 Order, ECF No. 425). Despite those orders and the Original *Pari Passu* Injunction, Argentina continued to attempt to make payments on other external indebtedness without paying the Pre-Judgment Plaintiffs or other creditors. It also frequently issued inflammatory public statements criticizing the rulings of this Court and the Second Circuit, and making clear that Argentina intended to defy the orders of the U.S. courts. Johns Decl. ¶¶ 8, 10; Straus Decl. ¶¶ 23, 25.

On October 16, 2014, faced with continued recalcitrance on the part of Argentina and consistent refusals to honor its obligations, EM and Montreux filed new complaints and motions for summary judgment in this Court seeking the same relief as the Pre-Judgment Plaintiffs under the *pari passu* clause of the 1994 FAA.[9] On June 5, 2015, the

---

[9]     *EM Ltd. v. Republic of Argentina*, No. 14 Civ. 8303 (TPG) (Motion for Partial Summary Judgment, ECF No. 8), *Montreux Partners, L.P. v. Republic of Argentina*, No. 14 Civ. 7171 (Motion for Summary Judgment, ECF No. 8); *Los Angeles Capital v. Republic of Argentina*, No. 14 Civ. 7169 (TPG) (Motion for Partial Summary Judgment, ECF No. 7); *Cordoba Capital v. Republic of Argentina*, No. 14 Civ. 7164 (TPG) (Motion for Partial Summary Judgment, ECF No. 8); *Wilton Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 7166 (TPG) (Motion for Partial Summary Judgment, ECF No. 8).

Court granted the motions for summary judgment[10] and, on October 30, 2015, the Court

issued the *Pari Passu* Injunction, requiring Argentina to make a ratable payment to the

Settling Plaintiffs and nearly fifty other creditors whenever it paid other holders of

unsecured and unsubordinated external indebtedness, such as the Exchange

Bondholders.[11]  On November 10, 2015, Argentina appealed this Court's October 30,

2015 order.  This appeal is currently pending before the Second Circuit.[12]

    In December of 2015, Mauricio Macri was elected president of Argentina, ending

a twelve-year period of governance by the previous ruling party led by former President

Kirchner.  Johns Decl. ¶ 13; Straus Decl. ¶ 28.  President Macri's election marked a sharp

turning point in both the attitude and actions of the Republic with regard to its unpaid

judgments and unfulfilled debt obligations.  Johns Decl. ¶ 14, 17; Straus Decl. ¶¶ 29–30.

Since his election, President Macri's government has consistently stated that Argentina

wishes to bring an end to this debt dispute and reopen Argentina to foreign investors.  *See*

---

[10]  *NML Capital, Ltd. v. Republic of Argentina*, 2015 WL 3542535 (S.D.N.Y. June 5, 2015).

[11]  *EM Ltd. v. Republic of Argentina*, No. 14 Civ. 8303 (TPG) (October 30, 2015 Opinion and Order, ECF No. 32); *Montreux Partners, L.P. v. Republic of Argentina*, No. 14 Civ. 7171) (October 30, 2015 Opinion and Order, ECF No. 26); *Los Angeles Capital v. Republic of Argentina*, No. 14 Civ. 7169 (TPG) (October 30, 2015 Opinion and Order, ECF No. 26); *Cordoba Capital v. Republic of Argentina*, No. 14 Civ. 7164 (TPG) (October 30, 2015 Opinion and Order, ECF No. 26); *Wilton Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 7166 (TPG) (October 30, 2015 Opinion and Order, ECF No. 26).

[12]  *EM Ltd. v. Republic of Argentina*, No. 14 Civ. 8303 (TPG) (Notice of Appeal, ECF No. 33); *Montreux Partners, L.P. v. Republic of Argentina*, No. 14 Civ. 7171 (Notice of Appeal, ECF No. 27); *Los Angeles Capital v. Republic of Argentina*, No. 14 Civ. 7169 (TPG) (Notice of Appeal, ECF No. 27); *Cordoba Capital v. Republic of Argentina*, No. 14 Civ. 7164 (TPG) (Notice of Appeal, ECF No. 27); *Wilton Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 7166 (TPG) (Notice of Appeal, ECF No. 27).

Johns Decl. ¶ 13, Straus Decl. ¶ 28.  In January of 2016, President Macri's government reopened debt negotiations with its creditors, including the Settling Plaintiffs, by sending a delegation of senior government officials to commence negotiations under the auspices of the Court-appointed Special Master.  Johns Decl. ¶ 14; Straus Decl. ¶¶ 29–30.

On February 3, 2016, each of the Settling Plaintiffs reached an agreement in principle with Argentina to settle the outstanding dispute.  Johns Decl. ¶ 15; Straus Decl. ¶ 30.  Each agreement is contingent upon (1) Argentina's repeal of the Lock Law, and (2) lifting of the *Pari Passu* Injunction and the Original *Pari Passu* Injunction in all cases.  *Id.*

In addition, on February 5, 2016, Argentina publicly released a proposal which, if approved by the Argentine Congress, would extend a settlement offer to all holders of defaulted bonds covered by the 1994 FAA.  Johns Decl. Exhibit A, Copy and Certified Translation of Settlement Proposal of Feb. 5, 2016.  The offer, which is also contingent on the repeal of the Lock Law and the lifting of the *Pari Passu* Injunction and Original *Pari Passu* Injunction, is extremely attractive to Argentina's creditors.  Argentina's new approach has attracted the attention of commentators, who have applauded Argentina's public proposal and urged Argentina's creditors to accept it.[13]

---

[13]  *E.g.*, Reynolds Holding and Martin Langfield, *Argentine Offer Opens Way for a Debt Settlement*, N.Y. Times, Feb. 8, 2016, *available at* http://www.nytimes.com/2016/02/09/business/dealbook/argentine-offer-opens-the-way-for-a-debt-settlement.html?_r=0; Paul Kilby, *Argentina Debt Outperforms on Holdout Offer*, Reuters, Feb. 8, 2016, *available at* http://www.reuters.com/article/argentina-bonds-idUSL8N15N34O; *A reasonable deal to end Argentina's debt saga*, Financial Times, Feb. 8, 2016, *available at* http://www.ft.com/intl/cms/s/0/d1efd5aa-ce5d-11e5-92a1-c5e23ef99c77.html#axzz3zmKjghrj.

## ARGUMENT

### I.     This Court Has The Authority To Issue An Indicative Ruling.

Federal Rule of Civil Procedure 62.1 gives this Court authority to issue an indicative ruling where, as here, a party wishes to modify an injunction that is presently on appeal.  The rule states that: "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Civ. P. 62.1(a).  Rule 62.1 thus provides a "clear procedure [which] is helpful whenever relief is sought from an order that the court cannot reconsider because the order is the subject of a pending appeal."  Fed. R. Civ. P. 62.1 Advisory Committee Notes (2009).  Here, of course, the Court lacks authority to modify the *Pari Passu* Injunction because Argentina appealed the Court's October 30, 2015 order, and the matter remains on appeal.  But for the reasons set forth below, the Court can and should issue an indicative ruling that it would conditionally lift the *Pari Passu* Injunction if the Court of Appeals were to remand the case to the Court for that purpose.

### II.     This Court Should Issue An Indicative Ruling That It Would Lift The *Pari Passu* Injunction Because The Factual Circumstances Justifying That Injunction Have Fundamentally Changed.

The Court should indicate to the Second Circuit that, if the case were remanded to it, it would conditionally lift the *Pari Passu* Injunction.  The Court has the inherent authority to modify injunctive decrees like the *Pari Passu* Injunction, while Rule 60(b) permits the Court to grant relief from a final order on specified grounds, including, as here, when "applying [the Order] prospectively is no longer equitable." Fed. R. Civ. P.

11

60(b)(5), (6).  That is demonstrably the case here, because the circumstances that justified

issuance of the *Pari Passu* Injunction have now dramatically changed.

The *Pari Passu* Injunction succeeded in incentivizing Argentina to return to the

negotiating table and address its payment obligations, and has therefore served its

purpose.  The public interest is consequently best served by conditionally lifting that

extraordinary relief, thereby permitting Argentina to settle its disputes with Settling

Plaintiffs and other creditors willing to engage in good-faith negotiations with Argentina.

In the circumstances, "continued enforcement of the [*Pari Passu* Injunction] is not only

unnecessary, but improper."  *See Horne v. Flores*, 557 U.S. 433 (2009).

### A.     Argentina Has Demonstrated That It Is No Longer Repudiating Its Payment Obligations.

In entering the *Pari Passu* Injunction, this Court emphasized that Argentina had

caused plaintiffs irreparable harm by violating its contractual obligations under the 1994

FAA and by "ma[king] clear its intention to defy any money judgment issued by this

court."  *NML Capital, Ltd.*, 2015 WL 6656573, at *4.  The Court further stressed

Argentina's "reluctance to entertain meaningful settlement discussions before the Special

Master."  *Id.* at *5.

But these circumstances no longer exist.  Instead, shortly after the election of

President Macri, Argentina deployed a sophisticated team of senior economic and

political advisors led by Luis Caputo, Secretary of Public Finance, and Mario Quintana,

the President's Cabinet Chief.  That team engaged, for the first time in years, in full and

frank discussions with external creditors with a view to realizing the President's

commitment to resolving its outstanding debt obligations.  Further, abandoning its past

defiance, Argentina honored this Court's appointment of a highly experienced Special Master by submitting to his oversight and entering into good faith, confidential negotiations, all as facilitated by him with firmness, thoughtfulness, and patience. These negotiations ultimately resulted in agreements in principle with the Settling Plaintiffs, representing resolution of a substantial portion of existing creditors' claims. Johns Decl. ¶¶ 14-15; Straus Decl. ¶ 30.

In addition, Argentina has publicly proposed to all bondholders to pay 100 percent of outstanding principal of the defaulted bonds and a significant percentage of the interest owed, which in some cases is many times the underlying principal of the bonds. Johns Decl., Exhibit A. This proposal will result in a full recovery for many bondholders and a substantial recovery for all bondholders who accept the proposed settlement with Argentina. Argentina's proposal is exactly the type of conduct that should "alleviate the . . . concerns" that the Court articulated when it issued the *Pari Passu* Injunction. *NML Capital, Ltd.*, 2015 WL 6656573, at *4.

B. **The Relief Being Sought From The *Pari Passu* Injunction Is Conditioned On Further Concrete Action By Argentina.**

It is also significant that Argentina has not requested the immediate and unconditional lifting of the *Pari Passu* Injunction. To the contrary, if the Court enters the proposed order being sought by Argentina, the *Pari Passu* Injunction would remain in effect until Argentina actually *performs* on its commitment to settle unpaid judgments and claims. Specifically:

1. Argentina must repeal or abrogate the Lock Laws, which have prohibited Argentina from entering into settlements or recognizing this Court's

judgments. Def.'s Proposed Order, ECF No. 34-2, at 15–16. Argentina's past decision to enact those laws — which will be repealed prior to the lifting of the injunction — was an important reason cited by the Court for granting the *Pari Passu* Injunction. *NML Capital, Ltd.*, 2015 WL 6656573, at *1, *3.

2. Argentina must pay in full the Settling Plaintiffs and any other creditors that accept the proposed settlement offer. Def.'s Proposed Order, ECF No. 34-2, at 15–16. Again, in issuing the *Pari Passu* Injunction, the Court sought to remedy Argentina's past refusal to honor its commitments to its creditors. *NML Capital, Ltd.*, 2015 WL 6656573, at *4-5.

Argentina has proposed significant conditions. Its willingness to condition relief from the *Pari Passu* Injunction on the payment in full of substantial monetary settlements is compelling evidence of its sincerity and good faith, and stands in stark contrast to the contumacious policies of the prior administration. And the Court's retention of jurisdiction should allay any concern that Argentina may return to its old ways.

C. **The *Pari Passu* Injunction No Longer Serves The Public Interest, And The Balance Of The Equities Favors Lifting The Injunction.**

The *Pari Passu* Injunction has, up to now, served the public interest. It provided bondholders with protection from unequal treatment in light of Argentina's repeated attempts to pay the Exchange Bondholders in contravention of court orders. It also created conditions that encouraged settlement negotiations among the parties. Further, the *Pari Passu* Injunction succeeded in "serv[ing] the public interest of enforcing

contracts, maintaining confidence in debt markets, and upholding the rule of law." *NML Capital, Ltd.*, 2015 WL 6656573, at *5.  Argentina's recent settlement proposals demonstrate that the *Pari Passu* Injunction has furthered the goal described by the Second Circuit of "maintaining New York's status as one of the foremost commercial centers, [which] is advanced by requiring debtors, including foreign debtors, to pay their debts." *Id.* (quoting *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 248 (2d Cir. 2013)).

At this point, however, maintaining the *Pari Passu* Injunction would disserve the public interest and contravene the strong public policy favoring the settlement of disputes.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).  Argentina has a new regime and has taken decisive action to resolve these pending disputes by proposing very reasonable settlement terms to all bondholders.  Johns Decl. ¶¶ 15–16; Straus Decl. ¶¶ 30–31.  In this changed landscape, the balance of the equities now favors conditionally lifting the *Pari Passu* Injunction, to facilitate completion of the settlements in principle among Argentina and the Settling Plaintiffs and to facilitate settlements with other bondholders who may accept Argentina's proposal.  Maintaining the *Pari Passu* Injunction at this stage would substantially prejudice both the Settling Plaintiffs and other bondholders who may wish to settle with Argentina but cannot do so because the *Pari Passu* Injunction remains in force.

## CONCLUSION

For the foregoing reasons, the Settling Plaintiffs respectfully request that this Court issue an indicative ruling under Federal Rule of Civil Procedure 62.1 that it would

grant Argentina's motion to lift the *Pari Passu* Injunction, subject to the conditions set forth in the proposed order.

Dated:   New York, New York
         February 11, 2016

Respectfully submitted,

/s/  David Rivkin
David W. Rivkin
William H. Taft V
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
dwrivkin@debevoise.com

*Attorneys for Plaintiff EM Ltd.*

/s/  Richard Holwell
Richard J. Holwell
Michael S. Shuster
Vincent Levy
Neil R. Lieberman
Holwell Shuster & Goldberg LLP
750 Seventh Avenue, 26th Floor
New York, New York 10019
(646) 837-5151
rholwell@hsgllp.com

*Attorneys for Plaintiffs Montreux Partners, L.P., Los Angeles Capital, Cordoba Capital and Wilton Capital Ltd.*

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EM LTD.,

                              Plaintiff,

         v.                                          No. 14 Civ. 8303 (TPG)

THE REPUBLIC OF ARGENTINA,

                              Defendant.

---

MONTREUX PARTNERS LP,

                              Plaintiff,

v.                                                   No. 14 Civ. 7171 (TPG)

THE REPUBLIC OF ARGENTINA,

                              Defendant.

---

LOS ANGELES CAPITAL,

                              Plaintiff,

         v.                                          No. 14 Civ. 7169 (TPG)

THE REPUBLIC OF ARGENTINA,

                              Defendant.

---

CORDOBA CAPITAL,

                              Plaintiff,

         v.                                          No. 14 Civ. 7164 (TPG)

THE REPUBLIC OF ARGENTINA,

                              Defendant.

WILTON CAPITAL, LTD.,

                    Plaintiff,

    v.

THE REPUBLIC OF ARGENTINA,

                    Defendant.

No.14 Civ. 7166 (TPG)

**DECLARATION OF KENNETH E. JOHNS, JR. IN SUPPORT OF
PLAINTIFF'S MEMORANDUM OF LAW**

I, Kenneth E. Johns Jr., declare as follows:

1.     I am an attorney who, for the past thirty years, has served as outside

counsel to various members of the Dart family and entities owned directly or

indirectly by them including Dart Capital Limited ("Dart"), the parent company of

EM Limited. I have represented EM Limited ("EM") since its formation.

2.     I make this declaration in support of the memorandum of law of

Plaintiff EM supporting the Republic of Argentina's ("Argentina") request for an

indicative ruling pursuant to Federal Rule of Civil Procedure 62.1 on a motion under

Federal Rule of Civil Procedure 60(b) seeking relief from the injunction entered by

this Court on October 30, 2015 in this action, referred to in this declaration as the

"*Pari Passu* Injunction".

3.     At the outset, it is important to make clear that EM's support of

Argentina's requested relief in this case is conditioned on this Court granting

Argentina's motions in all cases; in other words, EM requests that the Court lift all

injunctions this Court has issued under the *pari passu* clause found in documents

relating to bonds issued by Argentina. EM's support is conditioned on Argentina

receiving the full relief sought because EM understands that Argentina will not

consider itself able to effectuate the settlement agreed to in principle with EM unless

this Court grants the full relief sought by Argentina in all cases. In these

circumstances, it would be pointless and could cause confusion if Argentina's motion

for relief in the EM action was granted without the same order in all applicable cases.

4.     As the result of my role as an advisor to EM, I am knowledgeable

about EM's litigation against Argentina arising from Argentina's default on its

sovereign debt and the recent settlement negotiations with Argentina. The facts set

forth in this declaration are based upon my personal knowledge.

5.     Dart on January 25, 2002 contributed to EM the New AR$ 10% Global

Bond due September 19, 2008, ISIN #XS0130278467 (hereinafter, the "EM Bond")

issued by the Republic of Argentina. The EM Bond is governed by a Fiscal Agency

Agreement dated October 19, 1994 (the "1994 FAA").

6.     By the terms of the EM Bond, the Republic of Argentina was obligated

to make semi-annual interest payments to EM on March 19 and September 19 of each

year, up to and including the September 19, 2008 maturity date. The Republic of

Argentina failed to make the interest payment on the Bond due to EM on March 19,

2002, and made no voluntary payments to EM with respect to the Bond since that

time.

7.     In 2003, EM brought an action in the District Court for the Southern

District of New York, *EM Ltd. v. The Republic of Argentina*, 03 Civ. 2507 (TPG),

seeking a money judgment based on Argentina's failure to pay principal and interest

on the EM Bond. In October 2003, the Court entered a final amended judgment in

EM's favor in the amount of $724,801,662.56. Post-judgment interest has accrued at

the statutory rate of 1.3% per annum. The judgment has not been satisfied to date. It is my understanding that EM is one of the largest creditors of Argentina among the group of creditors with claims or judgments based on defaulted bonds issued under the 1994 FAA.

8.      For the next decade, and more, Argentina refused to enter into meaningful negotiations with EM over the payment of this Court's judgment. To the contrary, the Argentine government during those years repeatedly disavowed its duty to pay the judgment and took steps calculated to avoid its obligations to EM and other holders of defaulted bonds.

9.      On October 16, 2014, after more than a decade of efforts to collect its judgment, EM filed a new action in the District Court for the Southern District of New York, *EM Ltd. v. Republic of Argentina*, Case No. 14 Civ. 8303 (TPG), alleging violation of the *pari passu* clause in the 1994 FAA. At the same time, EM filed a motion for summary judgment. On June 5, 2015, EM's summary judgment motion was granted.

10.      On August 17, 2015, EM, in coordination with similarly-situated judgment holders arising from related litigations against Argentina, filed a motion for specific performance based on Argentina's violations of the *pari passu* clause in the 1994 FAA. EM moved for specific performance and sought issuance of the *Pari Passu* Injunction in response to Argentina's long-standing refusal to satisfy EM's judgment. Up to that point, Argentina had maintained its refusal to pay the judgment or even engage in meaningful settlement negotiations. I personally recall Argentina's evasive tactics and repeated efforts to frustrate any resolution of this matter, including statements made in 2013 and 2014 by Argentina's then-President, Cristina Fernández

de Kirchner and others in the Argentine government criticizing the rulings of this Court and the Second Circuit and indicating their intent to defy the orders of the U.S. courts.

11.     In light of the circumstances at that time, EM believed that it had no effective remedy for Argentina's repeated breaches of its contractual obligations under the 1994 FAA except filing a motion for specific performance seeking the issuance of the *Pari Passu* injunction.  EM believed the public interest favored the issuance of the *Pari Passu* injunction, in part because it would prevent Argentina from engaging in unfair treatment of bondholders like EM and cause Argentina to reconsider its strategy with respect to resolving these disputes.

12.     The motions of EM and other similarly-situated plaintiffs in related actions for specific performance were granted on October 30, 2015, and the court issued the *Pari Passu* Injunction ordering Argentina to perform its obligations to plaintiffs under the *pari passu* clause in the FAA by making ratable payments to plaintiffs any time it makes, or attempts to make, payments on the "Exchange Bonds," (a term used in past disputes to refer to certain other bonds offered by Argentina in the exchange offers of 2005 and 2010).

13.     In December 2015, Argentina's ruling party changed with the election of a new president, Mauricio Macri.  President Macri had campaigned on a platform that called for resolution of the disputes arising from Argentina's 2001 default.

14.     Almost immediately after President Macri's election, Argentina indicated that it was prepared to engage in a new round of negotiations with bondholders.  Shortly thereafter, in January 2016, Argentina initiated settlement negotiations with EM and others with the assistance of court-appointed Special

Master Daniel A. Pollack. I personally participated in those negotiations on behalf of EM.

15.     On February 3, 2016, EM and Argentina reached an agreement in principle whereby Argentina would satisfy the substantial outstanding judgment held by EM. Upon information and belief, Montreux Partners, LP and Argentina also reached an agreement in principle on or around the same date. This agreement in principle to pay EM's judgment is subject to certain conditions, including relief under the *Pari Passu* Injunction and the repeal of legislation in Argentina that prohibits settlements with EM and similarly situated parties.

16.     Subsequently, Argentina publicly released a proposal which, if approved by the Argentine Congress, would extend a settlement offer to all holders of defaulted bonds covered by the 1994 FAA. See Exhibit A, Copy and Certified Translation of Settlement Proposal of February 5, 2016.

17.     Based on my personal experience in recent negotiations, Argentina has made substantial efforts to resolve its disputes with bondholders and cease its past evasive conduct since President Macri's election. Argentina engaged in good faith negotiations with EM, leading to the agreement in principle. As someone who has been intimately involved with this dispute for almost fifteen years, I believe Argentina has fundamentally shifted their approach to these disputes, and for the first time has proposed a solution that could result in a broad settlement of claims and judgments arising from the 2001 default on fair terms.

18.     Based on my personal experience and knowledge of these matters, the relief requested Argentina will advance the cause of resolving the litigation arising

from the 2001 default, including by enabling settlement of the substantial EM and Montreux judgments.

19.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at San Diego, California on February 11, 2016.

Kenneth E. Johns, Jr.

# EXHIBIT A

5 de Febrero de 2016

**Propuesta**

La República Argentina propone un acuerdo de reestructuración a todos los tenedores de sus títulos públicos que no entraron a las operaciones de canje de deuda llevados a cabo en los años 2005 y 2010 en los términos de la presente propuesta (la "Propuesta").

Con respecto a los títulos públicos a favor de los cuales el Tribunal Federal del Distrito Sur de Nueva York, Estados Unidos emitió medidas cautelares denominadas "pari passu injunctions" con anterioridad al 1 de Febrero de 2016 (las "Medidas Cautelares Pari Passu" y los "Tenedores Pari Passu," respectivamente) la misma contemplará un pago de aproximadamente USD 6.500 millones de dólares en caso de una aceptación completa de los Tenedores Pari Passu.

La Propuesta contempla las siguientes dos ofertas.

1.1.1.1.  Oferta Base. Con respecto a los tenedores de títulos públicos que no cuenten con Medidas Cautelares Pari Passu la Propuesta prevé la "Oferta Base" bajo la cual se propone la reestructuración de dichos títulos públicos mediante un pago equivalente al monto de capital original adeudado más un 50% de dicho monto de capital original.

1.1.1.2.  Oferta Pari Passu. Los Tenedores Pari Passu podrán elegir, como opción a la Oferta Base, la denominada "Oferta Pari Passu" y que se basa en los siguientes términos: (i) con respecto a aquellos títulos públicos en relación a los cuales se haya emitido una sentencia monetaria con anterioridad al día 1 de Febrero de 2016, el 100% del monto original reconocido en dicha sentencia monetaria menos un descuento del 30%, y (ii) con respecto a aquellos títulos públicos en relación con los cuales no se haya emitido una sentencia monetaria con anterioridad al día 1 de Febrero de 2016, el valor devengado del reclamo menos un descuento del 30%. Ambos descuentos descritos en (i) y (ii) serán reducidos a 27,5% en aquellos acuerdos de reestructuración preliminares firmados hasta el 19 de febrero de 2016, inclusive.

Tanto en la Oferta Base como en la Oferta Pari Passu, se contempla el pago en efectivo con fondos provenientes de la emisión de nuevos títulos públicos de Argentina a ser colocados en los mercados de capitales.

Simultáneamente con la implementación de la presente Propuesta se contempla que los tenedores de títulos públicos que participen de la misma deberán renunciar a todos sus derechos, sumas adeudadas y acciones judiciales derivados de sus títulos públicos.

Asimismo, se contempla que los montos de capital y/o intereses de los bonos que hayan prescriptos conforme los términos contractuales y la normativa aplicable no serán reconocidos.

Una vez cumplidas las condiciones enunciadas a continuación Argentina llevará adelante una oferta formal de reestructuración conforme los términos de la presente Propuesta.

**La Propuesta se encuentra sujeta a la aprobación del Congreso de la Nación así como de la resolución judicial que disponga el levantamiento de las Medidas Cautelares Pari Passu.**



translations@geotext.com
www.geotext.com

STATE OF NEW YORK    )
    )
    )   ss
COUNTY OF NEW YORK    )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Spanish into English of the attached Proposal, dated February 5,

2016.

Mirna Turina, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me

this ⎵11th⎵ day of ⎵February⎵, 20 ⎵16⎵.

HOA WIN LY
Notary Public, State of New York
No. 01LY6323702
Qualified in New York County
Term Expires April 27, 2019

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143

February 5, 2016

### Proposal

The Republic of Argentina proposes a restructuring agreement to all holders of its government securities that were not part of the debt swap operations carried out in 2005 and 2010, under the terms set forth in this proposal (the "Proposal").

With respect to the government securities for which the United States District Court for the Southern District of New York issued "pari passu injunctions" prior to February 1, 2016 (the "Pari Passu Injunctions" and the "Pari Passu Holders," respectively), the proposal will include a payment of approximately US $6.5 billion if fully accepted by the Pari Passu Holders.

The Proposal includes the following two offers.

1.1.1.1. Base Offer. With respect to the holders of government securities that are not subject to Pari Passu Injunctions, the Proposal provides for the "Base Offer," which proposes the restructuring of said government securities through a payment equivalent to the original amount of principal owed plus 50% of said original amount of principal.

1.1.1.2. Pari Passu Offer. The Pari Passu Holders may choose, as an alternative to the Base Offer, the offer known as the "Pari Passu Offer," which consists of the following: (i) for government securities with respect to which a monetary judgment has been issued prior to February 1, 2016, 100% of the original amount recognized in said monetary judgment, less a discount of 30%, and (ii) for government securities with respect to which a monetary judgment was not issued prior to February 1, 2016, the accrued value of the claim, less a discount of 30%. Both discounts described in (i) and (ii) shall be reduced to 27.5% in any preliminary restructuring agreements signed by February 19, 2016, inclusive.

It is envisioned that both the Base Offer and the Pari Passu Offer would be cash payments using funds from the issuance of new government securities of Argentina to be placed on the capital markets.

Simultaneously with the implementation of this Proposal, it is also envisioned that holders of government securities participating in said Proposal must waive all of their rights, amounts owed [to them] and legal actions derived from their government securities.

Similarly, it is provided that the principal and/or interest amounts of any bonds that have matured pursuant to the terms of the contract and applicable law shall not be recognized.

Upon completion of the above-stated conditions, Argentina will then proceed to make a formal restructuring offer in accordance with the terms of this Proposal.

**The Proposal is subject to the approval of the Argentine National Congress, as well as to any court decision ordering the lifting of the Pari Passu Injunctions.**

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONTREUX PARTNERS, L.P., Plaintiff, v. THE REPUBLIC OF ARGENTINA, Defendant. | 14 Civ. 7171 (TPG) |
| CORDOBA CAPITAL, Plaintiff, v. THE REPUBLIC OF ARGENTINA, Defendant. | 14 Civ. 7164 (TPG) |
| WILTON CAPITAL, LTD., Plaintiff, v. THE REPUBLIC OF ARGENTINA, Defendant. | 14 Civ. 7166 (TPG) |
| LOS ANGELES CAPITAL, Plaintiff, v. THE REPUBLIC OF ARGENTINA, Defendant. | 14 Civ. 7169 (TPG) |

| | |
|---|---|
| EM LTD., | |
|                          Plaintiff, | |
|         v. | No. 14 Civ. 8303 (TPG) |
| THE REPUBLIC OF ARGENTINA, | |
|                        Defendant. | |

**DECLARATION OF MICHAEL STRAUS IN SUPPORT OF THE MOTION OF DEFENDANT THE REPUBLIC OF ARGENTINA FOR INDICATIVE RULING AND FOR RELIEF FROM AN INJUNCTION**

I, Michael Straus, declare as follows:

1.      I am a Managing Member of Montreux Capital Management, LLC, the general partner of Montreux Partners, L.P. ("Montreux"). Montreux has authority herein to act for itself and for three related or affiliated entities, Cordoba Capital ("Cordoba"), Wilton Capital, Ltd. ("Wilton"), and Los Angeles Capital ("LAC") (collectively with Montreux, the "Montreux Plaintiffs"). I am also a member in good standing of the Bars of the States of New York and Alabama, holding retired status in the one and special status in the other. I have been involved in matters concerning debts issued by foreign states from the early 1980s on, first in the private practice of law and thereafter in my investment management capacities.

2.      I make this declaration in support of the motion of defendant the Republic of Argentina ("Argentina") for an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1 and on a motion under Federal Rule of Civil Procedure 60(b) seeking relief from the injunction entered by this Court on October 30, 2015, in these actions, referred to in this declaration as the "*Pari Passu* Injunction." It is important to note, however, that the support of the Montreux Plaintiffs for Argentina's motion is conditioned on a decision by this Court granting Argentina's motion in *all* of the cases

in which Argentina is making the motion—in other words, in all of the actions in which this Court has granted *any* plaintiff an injunction based on the *pari passu* clause in documents relating to bonds issued by Argentina. That is so primarily because if the Court does not grant Argentina's motion in all of the actions in which Argentina is making the motion, my understanding is that Argentina will not consider itself in a position to complete its settlement with the Montreux Plaintiffs. In that event, it would be pointless, and could lead to confusion, for Argentina's motion to be granted in the actions brought by the Montreux Plaintiffs.

3. I am fully knowledgeable concerning the Montreux Plaintiffs' litigation against Argentina arising from Argentina's default on its sovereign debt and about the recent settlement negotiations with Argentina. The facts set forth in this declaration are based upon my personal knowledge.

4. Montreux is the owner of $5,000,000 in original principal amount of Floating Rate Accrual Notes ("FRANs"), issued by Argentina pursuant to a Fiscal Agency Agreement between Argentina and Bankers Trust Company, as Fiscal Agent, dated as of October 19, 1994 (the "1994 FAA"), together with all accrued and unpaid interest thereon. (Deutsche Bank is now the successor fiscal agent under the 1994 FAA.)

5. Cordoba is the owner of $10,287,000 in original principal amount of FRANs issued by Argentina pursuant to the 1994 FAA, together with all accrued and unpaid interest thereon.

6. Wilton is the owner of $10,900,000 in original principal amount of FRANs issued by Argentina pursuant to the 1994 FAA, together with all accrued and unpaid interest thereon.

7.      LAC is the owner of $16,176,000 in original principal amount of FRANs issued by Argentina pursuant to the 1994 FAA, together with all accrued and unpaid interest thereon.

8.      On December 24, 2001, Argentina declared a moratorium on the payment of principal and interest with respect to all of its external debt, including the FRANs owned by the Montreux Plaintiffs.  Argentina's failure to pay principal and interest on the FRANs when due and the declaration of a moratorium on the payment of amounts due on the FRANs each constituted an event of default under the 1994 FAA.  The defaults of Argentina entitled the Montreux Plaintiffs to accelerate, and the Montreux Plaintiffs did accelerate, the obligation of Argentina to pay the entire principal amounts of the FRANs.

9.      On April 28, 2005, Montreux initiated a lawsuit against Argentina to enforce Montreux's contractual right to immediate payment by Argentina of the entire principal amount of the FRANs, together with all accrued and unpaid interest thereon.

10.      On June 1, 2009, this Court entered a judgment in *Montreux Partners, L.P.* v. *Republic of Argentina*, No. 05 Civ. 4239 (TPG) (the "Montreux Judgment") in favor of Montreux and against Argentina awarding an aggregate amount of $48,621,544.  Argentina has not paid any portion of the Montreux Judgment.

11.      On August 3, 2006, Cordoba initiated a lawsuit against Argentina to enforce Cordoba's contractual right to immediate payment by Argentina of the entire principal amount of the FRANs, together with all accrued and unpaid interest thereon.

12.      On June 1, 2009, this Court entered a judgment in *Cordoba Capital* v. *Republic of Argentina*, No. 06 Civ. 5887 (TPG) (the "Cordoba Judgment") in favor of

Cordoba and against Argentina awarding an aggregate amount of $100,033,967. Argentina has not paid any portion of the Cordoba Judgment.

13. On March 1, 2007, Wilton initiated a lawsuit against Argentina to enforce Wilton′s contractual right to immediate payment by Argentina of $4,100,000 in principal amount of the FRANs, together with all accrued and unpaid interest thereon.

14. On June 1, 2009, this Court entered a judgment in *Wilton Capital, Ltd.* v. *Republic of Argentina*, No. 07 Civ. 1797 (TPG) (the ″First Wilton Judgment″) in favor of Wilton and against Argentina awarding an aggregate amount of $39,869,672. Argentina has not paid any portion of the First Wilton Judgment.

15. On April 28, 2005, Wilton′s predecessors in interest initiated a lawsuit against Argentina to enforce their contractual right to immediate payment by Argentina of, among other amounts, $6,800,000 in principal amount of the FRANs, together with all accrued and unpaid interest thereon in *Greylock Global Distressed Debt Master Fund, Ltd. and Greylock Global Opportunity Master Fund, Ltd.* v. *Republic of Argentina*, No. 05 Civ. 4246 (TPG).

16. By order dated December 12, 2008, this Court substituted Wilton as plaintiff on claims relating to the FRANs and directed that Wilton proceed with such claims in a new action. In compliance with this Court′s order, Wilton commenced a new action on January 14, 2009, which was designated *Wilton Capital* v. *Republic of Argentina*, No. 09 Civ. 401 (TPG).

17. On June 26, 2009, this Court entered *nunc pro tunc* an amended judgment in *Wilton Capital* v. *Republic of Argentina*, No. 09 Civ. 401 (TPG) (the

"Second Wilton Judgment") in favor of Wilton and against Argentina awarding an aggregate amount of $66,125,303. Argentina has not paid any portion of the Second Wilton Judgment.

18.     On December 5, 2005, LAC initiated a lawsuit against Argentina to enforce LAC's contractual right to immediate payment by Argentina of $8,449,000 in principal amount of the FRANs, together with all accrued and unpaid interest thereon, including capitalized interest.

19.     On June 1, 2009, this Court entered a judgment in *Los Angeles Capital* v. *Republic of Argentina*, No. 05 Civ. 10201 (TPG) (the "First LAC Judgment") in favor of LAC and against Argentina awarding an aggregate amount of $82,160,690. Argentina has not paid any portion of the First LAC Judgment.

20.     On March 21, 2007, LAC initiated a legal action against Argentina to enforce LAC's contractual right to immediate payment by Argentina of $8,449,000 in principal amount of the FRANs, together with all accrued and unpaid interest thereon, including capitalized interest.

21.     On June 1, 2009, this Court entered a judgment in *Los Angeles Capital* v. *Republic of Argentina*, No. 07 Civ. 2349 (TPG) (the "Second LAC Judgment") in favor of LAC and against Argentina awarding an aggregate amount of $75,139,739. Argentina has not paid any portion of the Second LAC Judgment.

22.     The Montreux Judgment, the Cordoba Judgement, the First Wilton Judgment, the Second Wilton Judgment, the First LAC Judgment, and the Second LAC Judgement (collectively, the "Montreux Plaintiffs' Judgments") total $411,950,915 in the aggregate. Post-judgment interest on the Montreux Plaintiffs'

Judgments was awarded at a rate of 0.49% per annum. The Montreux Plaintiffs′ Judgments have not been satisfied to date in whole or in part. It is my understanding that the Montreux Plaintiffs′ Judgments are among the largest judgments against Argentina awarded to creditors with claims or judgments based on defaulted bonds issued under the 1994 FAA.

23. From the time of its default and continuing through the entry of the Montreux Plaintiffs′ Judgments against it, Argentina neither sought to pay the amounts it owed nor engaged in any form of discussions, let alone meaningful negotiations, with the Montreux Plaintiffs over the payment of the Montreux Plaintiffs′ Judgments. To the contrary, the Argentine government during those years repeatedly resisted this Court′s decisions and orders; disavowed its duty to pay the Montreux Plaintiffs′ Judgments; and took steps calculated to frustrate any fair resolution of the Montreux Plaintiffs′ claims.

24. On September 5, 2014, after being thwarted in recovering its claims, the Montreux Plaintiffs filed the following new actions in the United States District Court for the Southern District of New York: *Montreux Partners, L.P. v. Republic of Argentina*, No. 14 Civ. 7171 (TPG), *Cordoba Capital v. Republic of Argentina*, No. 14 Civ. 7164 (TPG), *Wilton Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 7166 (TPG), *Los Angeles Capital v. Republic of Argentina*, No. 14 Civ. 7169 (TPG). The complaints in these actions alleged that Argentina had violated the *pari passu* clause in the 1994 FAA. On February 27, 2015, the Montreux Plaintiffs filed motions for summary judgment in these actions. On June 5, 2015, the Montreux Plaintiffs′ summary judgment motions were granted.

25.     On August 17, 2015, the Montreux Plaintiffs, together with similarly situated judgment creditors of Argentina, filed motions for specific performance based on Argentina's violations of the *pari passu* clause in the 1994 FAA.  The Montreux Plaintiffs moved for specific performance and sought issuance of the *Pari Passu* Injunction in response to Argentina's long-standing refusal to satisfy the Montreux Plaintiffs' Judgments.  Up to that point, Argentina had maintained its refusal to pay the judgments or even engage in meaningful settlement negotiations.  I personally recall Argentina's evasive tactics and repeated efforts to frustrate any resolution of this matter, including statements made in 2013 and 2014 by Argentina's then-President, Cristina Fernandez de Kirchner, and others in the Argentine government criticizing the rulings of this Court and the Second Circuit and indicating their intent to defy the orders of the U.S. courts.

26.     In light of the circumstances at that time, the Montreux Plaintiffs believed that they had no effective remedy for Argentina's repeated breaches of its contractual obligations under the 1994 FAA except filing a motion for specific performance seeking the issuance of the *Pari Passu* Injunction.  The Montreux Plaintiffs further believed the public interest favored the issuance of the *Pari Passu* Injunction, in part because it would prevent Argentina from engaging in unfair treatment of bondholders like the Montreux Plaintiffs and could well have the salutary effect of causing Argentina to reconsider its negative strategy with respect to resolving these disputes.

27.     The motions of the Montreux Plaintiffs and other similarly situated plaintiffs in related actions for specific performance were granted on October 30,

2015.  In granting those motions this Court issued the *Pari Passu* Injunction, which in substance ordered Argentina, among other things, to perform its obligations to plaintiffs under the *pari passu* clause in the FAA by making ratable payments to plaintiffs any time Argentina makes, or attempts to make, payments on the ʺExchange Bonds.ʺ  The ʺExchange Bondsʺ is a term used by this Court to refer to certain other bonds offered by Argentina in 2005 and 2010.

28.      In December 2015, Argentinaʹs ruling party changed with the election of a new president, Mauricio Macri.  President Macri had campaigned on a platform that called for resolution of the disputes arising from Argentinaʹs 2001 default.

29.      Almost immediately after President Macriʹs election, Argentina indicated that it was prepared to engage in a new round of negotiations with bondholders.  Shortly thereafter, in January 2016, Argentina initiated settlement negotiations with the Montreux Plaintiffs with the assistance of court-appointed Special Master Daniel A. Pollack.  I personally participated in those negotiations on behalf of the Montreux Plaintiffs.

30.      It quickly became clear to me that Argentina had set a course to resolve the pending disputes.  In particular, Argentina promptly deployed and sent to New York a sophisticated team of senior economic and political advisors captained by Luis Caputo, Secretary of Public Finance, and Mario Quintana, the Presidentʹs Cabinet Chief.  That team engaged, for the first time in years, in full and frank discussions with external creditors with a view to realizing the Presidentʹs commitment to resolving its outstanding debt obligations.  Further, abandoning its past defiance, Argentina honored this Courtʹs appointment of a highly experienced

Special Master by submitting to his oversight and entering into good faith, confidential negotiations, all as facilitated by him with firmness, thoughtfulness, and patience.  For their part, the Montreux Plaintiffs engaged in good faith, arm's length negotiations with Argentina, leading to an agreement in principle on February 3, 2016 whereby Argentina would satisfy the Montreux Plaintiffs' Judgments.  Upon information and belief, Plaintiff EM Ltd. and Argentina also reached an agreement in principle on or around the same date.  The agreement in principle to pay the Montreux Plaintiffs' Judgments is subject to certain conditions, including relief under the *Pari Passu* Injunction and the repeal of legislation in Argentina that I understand was intended to prohibit settlements with the Montreux Plaintiffs and similarly situated parties.

31.     Subsequently, Argentina publicly released a proposal which, if approved by the Argentine Congress, would extend a settlement offer to all holders of defaulted bonds covered by the 1994 FAA.  As someone who has been intimately involved with this dispute for over a decade, I therefore believe Argentina has fundamentally shifted its approach to these disputes not just in word but in deed.

32.     Based on my personal experience and knowledge of these matters, I am confident that the relief requested by the motion of Argentina will advance the cause of resolving the litigation between the Montreux Plaintiffs and Argentina arising from the 2001 default.  More specifically, it is my hope and expectation that the granting of that relief, coupled with appropriate action by the Argentine Congress, will enable completion of the settlement relating to the Montreux Plaintiffs' Judgments and the separate settlement of the judgment obtained by EM Ltd.

33.     I declare under penalty of perjury that the foregoing is true and correct.

Executed at Alton, Alabama on February 10, 2016

_____
Michael Straus