UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NML Capital Ltd.,

                              Plaintiff,

            v.

The Republic of Argentina,

                              Defendant.

08 Civ. 6978 (TPG)

---

## DECLARATION OF SIONG WEI "MAX" LEE

Pursuant to 28 U.S.C. Section 1746, I declare that the following is true and correct.

1.      My legal name is Siong Wei Lee.  I am known as "Max" Lee.

2.      I am an authorized representative of Honero Fund I, LLC ("Honero").  I have personal knowledge of the averments in this declaration and am authorized by Honero to make this declaration.

3.      Honero holds various beneficial rights in bonds issued by the Republic of Argentina ("Argentina") that are governed by English, German and New York law.

4.      Honero is a plaintiff in civil actions pending before this Court, including those with docket numbers 14-09095 (S.D.N.Y.) (TPG), 14-09427 (S.D.N.Y.) (TPG), 15-08529 (S.D.N.Y.) (TPG), 15-09579 (S.D.N.Y.) (TPG), 16-00911 (S.D.N.Y.) (TPG) and 16-00905 (S.D.N.Y.) (TPG).  In certain of these cases, there are pending disputes concerning the operation of foreign law on claims timeliness, and other technical defenses raised by Argentina.  (In addition, Honero, like most of the co-plaintiffs in the Eurobond actions, is plaintiff in "Me-too"

actions with docket numbers 15-01553 (S.D.N.Y.) (TPG), 15-06702 (S.D.N.Y.) (TPG) and 16-01193 (S.D.N.Y.) (TPG).  Honero and those plaintiffs have been unsuccessful in their attempts to settle those actions.)

5.      Prior to February 2016, Honero representatives made numerous efforts to speak with representatives of Argentina to discuss settlement.  To the best of my knowledge, no representative of Argentina engaged in any substantive discussion with us.

6.      On or about February 7, 2016, we received and reviewed an official English language translation of the Proposal attached hereto as Exhibit 1.

7.      On February 16, 2016, I spoke by telephone to Mr. Santiago Bausili, Argentina's Undersecretary of Finance.  During our call, he advised that the Proposal included payment of 150% of principal for our bonds.  That same day, I emailed Mr. Bausili a spreadsheet of Honero's holdings of Argentine bonds, ISIN by ISIN.  I asked for confirmation of what he had told me on the phone -- that Argentina was "offering 150% of principal/face value for all the bonds in the attached spreadsheet." *See* Exhibit 2.

8.      Later that evening and the next day, by email and telephone, Argentina representatives committed to me that they were indeed making that offer.  At 1:22 p.m. EST on February 17, Mr. Bausili emailed me, stating, "Max, we were working on providing the following link and agreement for you to execute.  **We did not find any issues in the list of ISINs that you sent us**." *See* Exhibit 3 (emphasis added).  The link to which Mr. Bausili referred contained a form of "Master Settlement Agreement" published by Argentina on a government website.  Later that same day, Mr. Bausili emailed me to say that disputes about

"prescription become irrelevant i guess if we agree on an amount of money for the isins and principal submitted." *See* Exhibit 4.

9.      Honero downloaded the Master Settlement Agreement, and completed the "Agreement Schedule" thereon.  On February 18, 2016, at 4:12 p.m. EST, on behalf of Honero, I emailed a fully-executed Agreement Schedule to Mr. Bausili.  A copy of my covering email and schedule is attached as Exhibit 5.  The submitted schedule was precisely in the form of Argentina's Master Settlement Agreement, with one exception.  In light of the disputes that existed in pending litigation concerning foreign law on claims timeliness, Honero included "Rider A to Agreement Schedule," which added subsection (vii) to the Agreement Schedule (the "Rider").  *See id.*  The Rider would have mooted the pending litigation disputes, enabling the parties to reach a clean settlement without the need for further litigation before this Court.

10.      In my 4:12 p.m. EST cover email, I made note of the Rider, noting to Mr. Bausili my understanding that "a significant portion of the Morgan Lewis bondholder group (perhaps as great as 73% of the group US$483 million holding) are prepared to promptly to send in their ISINs with the identical rider if these terms are acceptable to you." Ex. 5.  (The Morgan Lewis bondholder group includes a number of entities that hold the same or similar foreign-law bonds that are held by Honero, and are parties in the same litigation.)

11.      Over the course of Thursday, February 18, and Friday, February 19, 2016, I exchanged calls and emails with representatives of Argentina, who were seeking to reconcile the ISINs in our submitted acceptance (Exhibit 5) with complaints filed in this Court.  I supplied the relevant complaints on February 18 and 19.  Late on the evening of February 18, Mr. Bausili

indicated that he was departing for Buenos Aires, and that Argentina was seeking to limit our deal to "isins that were involved in litigation before their prescription date."

12.     On February 19, 2016, at 9:21 a.m. EST, I emailed Mr. Bausili again concerning our proposal to add the Rider that would moot this concern.  I advised that I believed that "more than 90% of the Morgan Lewis group will sign up to the deal now."  *See* Exhibit 6.

13.     On February 19, 2016, at 10:12 a.m. EST, Mr. Bausili responded by email to my email attached as Exhibit 7, writing, "Max.  Just landed.  **We will be ok with the rider**.  We will need to however reconcile isins into cases as mentioned before." (emphasis added).

14.     On February 19, 2016, at approximately 4:42 p.m. EST, this Court's indicative ruling on the order to show cause was published on the docket.

15.     On Monday, February 22, 2016, at 12:52 p.m. EST, Mr. Bausili emailed me to say, "Max, we reviewed your calculation and we believe that you are not taking into consideration the status of limitations."  (I read his email to mean, "*statute*" of limitations.)  I responded that afternoon, expressing my puzzlement, because of his earlier statement that "we will be okay with the rider."

16.     Since February 22, 2016, we have tried to reach out to Argentina via multiple phone calls and emails and have been unable to resolve the dispute.

Dated:       February 26, 2016
             New York, New York


I declare under penalty of perjury that the foregoing is true and correct

_____

SIONG WEI LEE