UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
NML CAPITAL, LTD.,  :
 :   08 Civ. 6978 (TPG)
            Plaintiff,  :   09 Civ. 1707 (TPG)
 :   09 Civ. 1708 (TPG)
        v.  :   14 Civ. 8601 (TPG)
 :   14 Civ. 8988 (TPG)
THE REPUBLIC OF ARGENTINA,  :
 :
            Defendant.  :
------------------------------------------------------------ x
 :
AURELIUS CAPITAL MASTER, LTD. and  :
ACP MASTER, LTD.,  :
 :   09 Civ. 8757 (TPG)
            Plaintiffs,  :   09 Civ. 10620 (TPG)
 :
        v.  :
 :
THE REPUBLIC OF ARGENTINA,  :
 :
            Defendant.  :
 :
------------------------------------------------------------ x
 :
AURELIUS OPPORTUNITIES FUND II, LLC  :
and AURELIUS CAPITAL MASTER, LTD.,  :
 :   10 Civ. 1602 (TPG)
            Plaintiffs,  :   10 Civ. 3507 (TPG)
 :
        v.  :
 :
THE REPUBLIC OF ARGENTINA,  :
 :
            Defendant.  :
 :   (captions continued on next page)
------------------------------------------------------------ x

**SUPPLEMENTAL MEMORANDUM OF LAW OF NML CAPITAL, LTD., AURELIUS OPPORTUNITIES FUND II, LLC, AURELIUS CAPITAL MASTER, LTD., AURELIUS CAPITAL PARTNERS, LP, ACP MASTER, LTD., BLUE ANGEL CAPITAL I LLC, OLIFANT FUND, LTD., FFI FUND LTD., AND FYI LTD. IN OPPOSITION TO THE REPUBLIC OF ARGENTINA'S RENEWED MOTION TO VACATE THE INJUNCTIONS**

```
------------------------------------------------------------ x
AURELIUS CAPITAL MASTER, LTD. and        :
AURELIUS OPPORTUNITIES FUND II, LLC,     :
                                         :    10 Civ. 3970 (TPG)
                 Plaintiffs,             :    10 Civ. 8339 (TPG)
                                         :
         v.                              :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                 Defendant.              :
------------------------------------------------------------ x
BLUE ANGEL CAPITAL I LLC,                :
                                         :
                 Plaintiff,              :
                                         :    10 Civ. 4101 (TPG)
                                         :    10 Civ. 4782 (TPG)
         v.                              :    14 Civ. 8947 (TPG)
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                 Defendant.              :
------------------------------------------------------------ x
OLIFANT FUND, LTD.,                      :
                                         :
                 Plaintiff,              :
                                         :
         v.                              :
                                         :    10 Civ. 9587 (TPG)
THE REPUBLIC OF ARGENTINA,               :
                                         :
                 Defendant.              :
------------------------------------------------------------ x
AURELIUS CAPITAL PARTNERS, LP and        :
AURELIUS CAPITAL MASTER, LTD.            :
                                         :
                 Plaintiffs,             :
                                         :
         v.                              :    14 Civ. 8946 (TPG)
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                 Defendant.              :
------------------------------------------------------------ x
```

```
------------------------------------------------------------ x
FFI FUND, LTD. and FYI LTD.,                                 :
                                                             :
                              Plaintiffs,                    :
                                                             :
               v.                                            :     14 Civ. 8630 (TPG)
                                                             :
THE REPUBLIC OF ARGENTINA,                                   :
                                                             :
                              Defendant.                     :
------------------------------------------------------------ x
```

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

I.  The February 29, 2016 Settlement Deadline Is Unnecessary And
    Counterproductive................................................................................................... 4

II. The Court Should Lift The Injunctions Only As To Those Plaintiffs Who Are
    Paid In Accordance With Their Provisional Settlement Agreements...................... 6

CONCLUSION...................................................................................................................... 8

Plaintiffs NML Capital, Ltd. ("NML"), Aurelius Capital Master, Ltd., Aurelius Capital Partners, LP, Aurelius Opportunities Fund II, LLC, ACP Master, Ltd., Blue Angel Capital I LLC,[1] Olifant Fund, Ltd., FFI Fund Ltd., and FYI Ltd.[2] (collectively, "Lead Plaintiffs"), respectfully submit this response to the letter of Republic of Argentina ("Argentina") dated February 25, 2016, requesting that the Court enter an order providing for the future automatic vacatur of the pari passu Injunctions in the above-captioned actions under the terms of this Court's Rule 62.1 Indicative Ruling dated February 19, 2016 (the "Indicative Ruling"). Lead Plaintiffs, who hold 65% (in dollar terms) of the claims with pari passu Injunctions against Argentina, respectfully submit that Argentina's motion should be denied because issuing the requested order would be both legally improper and also contrary to the goal this Court has repeatedly endorsed—a full and final settlement of all the pending cases.

## INTRODUCTION

Lead Plaintiffs have entered into a settlement agreement with Argentina—an agreement that was executed on February 29, 2016.[3] In their agreement, Lead Plaintiffs have accepted economic terms that "haircut" their claims more substantially than terms agreed to by Argentina with some other plaintiffs,[4] and somewhat less than the haircuts in the public tender offer and the terms agreed to by Argentina with other plaintiffs. These disparities are a normal part of settlement negotiations. Lead Plaintiffs have agreed to the terms in their agreement without holding out for 100% of what they are due, and without insisting on terms equal to the best deal achieved by other plaintiffs. It should be obvious that while different parties are free to negotiate

---

[1] "Aurelius" refers to Aurelius Capital Master, Ltd., Aurelius Capital Partners, LP, Aurelius Opportunities Fund II, LLC, ACP Master, Ltd., and Blue Angel Capital I LLC.

[2] "Olifant" refers to Olifant Fund, Ltd., FFI Fund Ltd., and FYI Ltd.

[3] See Declaration of Jay Newman dated February 29, 2016.

[4] Indeed, Argentina has agreed to pay some plaintiffs—EM (with a claim for almost $1 billion), Old Castle and Lightwater—100% of their claims.

different terms, and are bound by their agreed-upon terms, it would be quite another thing for a court to try to force parties to accept settlement terms that they have not negotiated and agreed to. This is especially so here where less than 10% of the plaintiffs with injunctions have agreed to accept the terms that Argentina is now promising to cramdown on all non-settling plaintiffs.

In their agreement, Lead Plaintiffs, like the other plaintiffs that have agreements with Argentina, have agreed that when they are paid and Argentina has fulfilled its obligations under the agreement, their Injunctions can be vacated. Why then do Lead Plaintiffs oppose the entry of the order now requested by Argentina? There are two related reasons:

**First**, based on the prior rulings of this Court and the Second Circuit, the order would be legally improper. The Injunctions were issued to protect the contract rights of all the plaintiffs. Injunctions in favor of plaintiffs who did not reach agreements in the short time available before February 29—many of whom did not even have an opportunity to negotiate with Argentina— cannot be vacated just because other plaintiffs did have opportunities to negotiate and did enter into agreements on widely varying terms. The fact that Argentina has negotiated settlement agreements with some plaintiffs and agreed to pay other plaintiffs in full is not the substantial change in circumstances that would render inequitable maintaining the Injunctions in cases of plaintiffs who have *not* settled.

The rights of non-settling bondholders are of importance to Lead Plaintiffs because unless and until Argentina complies with the terms of their agreements, the Lead Plaintiffs could find themselves in the position of plaintiffs without a settlement, facing the same argument that Argentina makes here: that because other plaintiffs have settled their Injunctions can be vacated. Moreover, under the terms of Lead Plaintiffs' agreement, they can terminate the agreement if Argentina does not make payment by a predetermined date, and there thus remains

some risk that Lead Plaintiffs once again could be in the same position as those plaintiffs who have not yet reached settlements.

**Second,** because the requested order is legally problematic, entering it will undermine ongoing negotiations and delay the settlement process for many months or years, with appeals and perhaps stays pending appeal. If the Court finalizes the Indicative Ruling, non-settling plaintiffs surely will appeal its cramdown terms to the Second Circuit. And Lead Plaintiffs may be compelled to as well, because until they receive timely payment pursuant to their agreement with Argentina, Lead Plaintiffs cannot acquiesce in a ruling that Argentina may later argue permits the withdrawal of their injunctive relief simply because Argentina has agreed to resolve the claims of other plaintiffs. The better alternative is to allow the settlement process to continue, but without the artificial February 29 deadline, and defer entry of any order at least until all parties have had an opportunity to negotiate with Argentina.

Parties may agree to varying terms, as has already occurred in the settlements to date. But the court should not countenance a deadline and cramdown that threatens some plaintiffs (who may settle after February 29) with the vacatur of their Injunctions even if Argentina does not honor their settlements (as the Indicative Ruling would do), and coerces other plaintiffs to agree to terms that they have not negotiated and that are inferior to terms Argentina agreed to with other plaintiffs. The Lead Plaintiffs would like to see their settlement agreement with Argentina consummated as soon as possible, not potentially delayed by litigation, such as Argentina's motion now before the Court, that distracts and diverts focus away from the settlement process.

Finally, if the Court does issue any order, such order should make explicit what is implicit in the Indicative Ruling: For plaintiffs who have entered into settlement agreements on

or before February 29 (including Lead Plaintiffs), if Argentina fails to fulfill all the terms of any such agreement (whether because the agreement is terminated in accord with its terms or it remains in effect and Argentina does not pay or otherwise fulfill its obligations), then the Injunctions will be maintained as to those plaintiffs. The Court's Indicative Ruling states that "the Republic must pay their settlements in full before the injunctions are lifted," Indicative Ruling at 22, so it follows perforce that if Argentina does not pay their settlements in full in accordance with the terms of the settlement agreements, the Injunctions must be maintained. Lead Plaintiffs do not understand this to be a disputed issue but it should be clear in any ruling of the Court.

I.   **The February 29, 2016 Settlement Deadline Is Unnecessary And Counterproductive.**

Under the Indicative Ruling, the Injunctions "will be lifted automatically" once Argentina repeals certain legislation and, "[f]or all plaintiffs that enter into agreements in principle with [Argentina] on or before February 29, 2016," once Argentina "make[s] full payment in accordance with the specific terms of each such agreement." Indicative Ruling at 23. Though that deadline now is upon us, dozens of plaintiffs have had no opportunity to negotiate with Argentina. And even if Argentina later negotiates agreements with some of them, under the Indicative Ruling, those plaintiffs' injunctions still would be vacated even if Argentina does not live up to those post-February 29 agreements.

If the Court's goal is to foster a prompt resolution of all the Argentine bond litigation before it, it should withdraw the February 29 deadline and defer any decision as to whether to vacate the injunctions at least until all plaintiffs have had a fair opportunity to negotiate with Argentina. The Indicative Ruling is legally dubious and factually unsupported. If it becomes an order and is stayed pending appeal, the stay could delay resolution of these litigations by several months or even longer.

4

Waiting until other plaintiffs have been provided an opportunity to negotiate is all the more appropriate because Argentina has provided no sound rationale for the February 29 deadline that it has asked this Court to impose. The February 29 deadline, of course, corresponds to the close of Argentina's public tender offer. But, as Judge Walker recognized, this Court's incorporation of the same deadline for settlements in the indicative ruling had the effect of transforming the public tender offer into a "cram down." Declaration of Robert A. Cohen Ex. A at 11:11 (Feb. 29, 2016). The Court lacks authority to give Argentina's tender offer that kind of coercive effect. "The court does not have the authority to dictate terms" of a settlement. *Diamond v. Fogelman*, No. 90-cv-900, 1992 WL 167271, at *3 (E.D.N.Y. June 26, 1992). And that is true whether the Court attempts to dictate terms directly, or indirectly by threatening to withhold relief if the terms are not accepted.

The February 29 deadline also appears to correspond to the opening of the Argentine Congress on March 1. While it is perfectly understandable that Argentina might have wished to have reached agreements with all plaintiffs before March 1, that has not occurred, in large part because Argentina has not engaged in negotiations with smaller creditors, preferring instead to attempt to compel such plaintiffs to accept Argentina's public tender offer. In any event, Congress may not take action immediately[5] and nothing in the Indicative Ruling is necessary for Argentina's Congress to lift its Lock Law and to authorize the Macri Administration to complete settlements. Whether or not this Court enters the Indicative Ruling as an order, Argentina's Congress can legislate as it wishes.

In short, there is no need for the Court to impose a February 29 deadline or otherwise to threaten to withdraw injunctive relief from plaintiffs who have had no opportunity to negotiate

---

[5] Cohen Decl. Ex. A 8:24-25 ("MR. PASKIN: Right. Well, the legislative process is going to take time. They have two houses of Congress.").

5

with Argentina.[6] Doing so will only delay the final resolution of this dispute as the parties' energies are directed away from negotiations and toward litigating an appeal before the Second Circuit and enforcing judgments. The Court instead should encourage Argentina to commence negotiations with the non-settling plaintiffs. As this Court repeatedly has recognized, and consistent with norms from international financial institutions,[7] it is only through negotiations that this long-running dispute can be brought to its ultimate conclusion.

## II. The Court Should Lift The Injunctions Only As To Those Plaintiffs Who Are Paid In Accordance With Their Provisional Settlement Agreements.

If this Court decides to issue an order providing for vacatur of this Court's Injunctions, it should not lift Injunctions as to non-settling parties without further, individualized analysis of each non-settling party's situation. *See* Pls.' Opp'n to Mot. to Vacate the Injunctions at 23-27, D.E. 874.

The equities of any injunctive decree "depends on each suit's facts." *Rogers v. 66-36 Yellowstone Blvd. Co-op. Owners, Inc.*, 599 F. Supp. 79, 82 (E.D.N.Y. 1984). It follows that a decision to vacate an injunction also must be analyzed on an individualized basis. The Indicative Ruling repeatedly emphasizes Argentina's professed new desire to negotiate with plaintiffs to settle this dispute, Indicative Ruling at 13-18, but many of non-settling plaintiffs have had no opportunity to negotiate. Similarly, while the Indicative Ruling declares that maintaining Injunctions in favor of non-settling plaintiffs might "prevent resolution of a meaningful portion of this litigation," Indicative Ruling at 22, the Ruling does not explain how that could be so. There is no analysis—much less a finding—that Argentina cannot simultaneously comply with

---

[6] Indeed, one member of the Second Circuit panel expressed concern over the looming February 29 deadline, Cohen Decl. Ex. A 10:20-11:2, and asked Argentina's counsel if he had authority to extend the February 29 deadline, *id.* 35:15-17.

[7] Inst. of Int'l Fin., Principles for Stable Capital Flows and Fair Debt Restructuring in Emerging Markets 11-14 (2005); IMF, Fund Policy on Lending Into Arrears to Private Creditors-Further Consideration of the Good Faith Criterion 8-9 (2002), http://www.imf.org/external/pubs/ft/privcred/073002.pdf.

its contractual obligations to non-settling plaintiffs while consummating its settlements with those plaintiffs that chose to do so. And it is simply incorrect for the Court to suggest, at this stage where non-settling plaintiffs have not been given the opportunity to negotiate, that non-settling plaintiffs are "hold[ing] other plaintiffs hostage." *Id.* at 23. It is Argentina, not the non-settling plaintiffs, which has rested on a take-it-or-leave-it tender offer—ironically, the same misguided strategy that made Argentina's 2005 exchange offer problematic. Indeed, that is exactly the situation in which Lead Plaintiffs found themselves when they first moved for injunctive relief five years ago—Argentina had announced a unilateral exchange offer, and a percentage of creditors accepted the offer—and yet this Court granted injunctive relief. *See NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 252-56 (2d Cir. 2012) ("*NML I*"). And the Second Circuit affirmed, resoundingly rejecting Argentina's argument that the existence of a take-it-or-leave-it settlement offer was an appropriate basis for the denial of equitable relief. *Id.* at 263 n.15; *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 238 (2d Cir. 2013) ("*NML II*").

The Court should not withdraw equitable relief from a non-settling plaintiff without an individualized analysis of the equities of each case. Doing so will trigger litigation that only will delay the ultimate resolution of this dispute.

Moreover, and at a minimum and although implied by the Indicative Ruling, the Court should clarify that it will not lift the Injunctions as to any plaintiff who signed an agreement with Argentina that Argentina fails to fulfill—either because the Argentine Congress disapproves the settlement, or because Argentina otherwise fails to perform. The Indicative Ruling appears to contemplate that the Injunctions will be lifted only to the extent that all agreements executed before the settlement deadline are fulfilled. Indicative Ruling at 23. But, because the Indicative

Ruling also contemplates automatic vacatur of the Injunctions without any prior court approval or supervision, the Order should clearly state, for the avoidance of doubt, that if Argentina fails to fulfill its terms of an agreement, Argentina effectively has chosen to continue living under the terms of that plaintiff's Injunction, which shall remain in place. Lead Plaintiffs are submitting herewith a proposed order accompanying the Declaration of Robert A. Cohen that would grant this alternative relief.

This minor amendment is entirely appropriate because any failure by Argentina to fulfill the terms of an agreement would fatally undermine this Court's primary rationale for vacating the Injunctions—that Argentina has changed its ways under President Macri. *See* Indicative Ruling at 13-15. If, after all this, Argentina fails to make timely payment under its new agreements with bondholders, Argentina should never again be heard to claim that it would be equitable to lift Injunctions entered in favor of plaintiffs who chose not to take a haircut.

The Second Circuit affirmed the Injunctions because Argentina's prior government had made clear that it would never honor any judgment entered against it. *NML I*, 699 F.3d at 255. Any double-back by this new government—after its professed enthusiasm for settlement—would only confirm Argentina's bad faith. Non-settling plaintiffs should not have their equitable relief taken away at the very moment that Argentina confirms that it cannot be trusted to deliver on its new-found desire to negotiate.

## CONCLUSION

This Court should deny Argentina's motion to vacate the Injunctions. If this Court grants Argentina's motion, this Court should (1) not adopt the February 29, 2016 deadline, (2) clarify that if plaintiffs do not receive full payment in accordance with the specific terms of the agreement with Argentina for any reason, including if Lead Plaintiffs terminate their agreement with Argentina on or after April 14, 2016 at 12:00 noon EST in accordance with the terms of that

8

agreement, the Injunctions shall remain in place, and (3) not vacate Injunctions entered in favor of those plaintiffs who did not accept Argentina's February 5 tender offer.

Dated:  New York, New York
        February 29, 2016

Respectfully submitted,

/s/ Robert A. Cohen

| | |
|---|---|
| Theodore B. Olson<br>Matthew D. McGill<br>Jason J. Mendro<br>Christopher B. Leach<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C.  20036<br>(202) 955-8500 | Robert A. Cohen<br>Dennis H. Hranitzky<br>DECHERT LLP<br>1095 Avenue of the Americas<br>New York, N.Y.  10036<br>(212) 698-3500 |

*Attorneys for Plaintiff NML Capital, Ltd.*

| | |
|---|---|
| Edward A. Friedman<br>Daniel B. Rapport<br>Marc G. Farris<br>FRIEDMAN KAPLAN SEILER<br>  & ADELMAN LLP<br>7 Times Square<br>New York, N.Y.  10036<br>(212) 833-1100 | Roy T. Englert, Jr.<br>Mark T. Stancil<br>ROBBINS, RUSSELL, ENGLERT,<br>  ORSECK, UNTEREINER &<br>  SAUBER LLP<br>1801 K Street, N.W.<br>Washington, D.C.  20006<br>(202) 775-4500 |

*Attorneys for Plaintiffs Aurelius Capital Master, Ltd., Aurelius Capital Partners, LP, Aurelius Opportunities Fund II, LLC, ACP Master, Ltd., and Blue Angel Capital I LLC*

Robert D. Carroll
GOODWIN PROCTER LLP
Exchange Place
Boston, MA  02109
(617) 570-1000

*Attorney for Plaintiffs Olifant Fund, Ltd., FFI Fund Ltd., and FYI Ltd.*

9