# EXHIBIT A

Transcript of Oral Argument in *Aurelius Opportunities Fund II LLC v. Republic of Argentina*, No. 15-1060(L) (2d Cir.), held on February 24, 2016

1    UNITED STATES COURT OF APPEALS

2    FOR THE SECOND CIRCUIT

3    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

4    In the Matter of:

5

6    AURELIUS OPPORTUNITIES FUND II. LLC., et al,

7                    Appellees.

8        v.                          Docket No. 15-1060-cv

9    THE REPUBLIC OF ARGENTINA,

10                   Appellant.

11

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

13

14                             U.S. Court of Appeals

15                             Thurgood Marshall U.S. Courthouse

16                             40 Foley Square

17                             New York, New York

18

19                             February 24, 2016

20

21   B E F O R E:

22   HON. PETER W. HALL

23   HON. JOHN M. WALKER, JR.

24   HON. REENA RAGGI

25   U.S. COURT OF APPEALS JUDGES

```
 1   A P P E A R A N C E S :

 2

 3   CRAVATH, SWAINE & MOORE LLP

 4        Attorneys for The Republic of Appellant

 5

 6   BY:  MICHAEL A. PASKIN

 7

 8   GIBSON DUNN

 9        Attorney for Appellees

10

11   BY:  MATTHEW D. MCGILL

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2            JUDGE RAGGI:  And now we'll hear from the parties

 3    in Aurelius Opportunities v. Argentina.  Counsel, let me

 4    begin by saying this case is before the Court for argument

 5    of an appeal, but there have been motions filed recently,

 6    first of all, to dismiss the schedules appeal with

 7    prejudice, and then to have this panel entertain motions in

 8    a related case, which is colloquially referred to by all

 9    parties as involving the me too injunctions.

10            And to remand that case for further action by the

11    District Court.  I think we'd like to start by hearing you

12    all on the motions.  And if everybody could just identify

13    themselves for us, who's going to be arguing, it would be

14    helpful.

15            MR. PASKIN:  Yes, may it please the Court, Michael

16    Paskin from Cravath, Swaine & Moore for the Republic of

17    Argentina.

18            JUDGE RAGGI:  Thank you, Mr. Paskin.

19            MR. MCGILL:  May it please the Court, Judge Raggi,

20    Matthew McGill of Gibson, Dunn & Crutcher for the appellees

21    in 1060.  And to the extent the Court is addressing 3675,

22    I'm here on behalf of appellees, NML Capital, the Aurelius

23    appellees and FFI and FFY Funds.

24            JUDGE RAGGI:  Thank you.

25            JUDGE WALKER:  And we also have another.  We have
```

1    other people who have come in support of Argentina for some

2    of the -- for the remand.

3              MR. PASKIN:  That's correct.  There have been

4    other papers filed --

5              JUDGE RAGGI:  And only the two of you are going to

6    be arguing?

7              JUDGE WALKER:  Only the two of you will be

8    arguing, okay.

9              MR. PASKIN:  But only the two of us will be --

10             JUDGE WALKER:  That's fine.

11             JUDGE RAGGI:  Well, if I understand it, the motion

12   for dismissal with prejudice is Argentina's.  The motion for

13   this panel to consider the remand motion is Argentina's, but

14   the motion for this panel to consider it is -- comes from

15   your client, Mr. McGill, is that right?

16             MR. MCGILL:  That is correct, Your Honor.

17             JUDGE RAGGI:  All right.  Well, we'll start with

18   Argentina.  And we have many questions on these motions, so

19   I'm going to start, let Judge Hall start us off here.

20             MR. PASKIN:  Of course.

21             JUDGE HALL:  I guess let me make first make clear,

22   Mr. Paskin, in the me too cases, is it Argentina's motion

23   also to refer this case -- sorry -- to remand this case

24   under 12.1?

25             MR. PASKIN:  Argentina's motion, yes, in the me

1    too cases is to remand under 12.1 based on the Court's

2    indicative ruling.

3            JUDGE HALL:  But and my colleagues will jump in

4    very shortly, but I think the first thing we would like to

5    know is with respect to that motion, why is Argentina not

6    seeking to dismiss that appeal with prejudice as it is doing

7    in this one?

8            MR. PASKIN:  Right.  Well, frankly, Your Honor, I

9    think dismissal with prejudice of that appeal as a

10   substantive issue would be appropriate and entirely

11   consistent with the overall change in strategy of the

12   Republic here, which is we are not pursuing these old issues

13   and these old appeals, and challenging the entry of these

14   injunctions.

15           Things have obviously been moving, you know,

16   extremely quickly over the last several days, and couple of

17   weeks.  And the concern, and it may be a baseless concern,

18   but the concern with just dismissing the 3675 appeal along

19   with 1061 was, does it procedurally interfere with our

20   attempt to get the remand and make sure that we're on

21   procedurally appropriate grounds with the District Court's

22   indicative ruling and the ability to have that converted

23   into an actual order?

24           JUDGE RAGGI:  I'm not sure I understand.  You're

25   looking for dismissal with prejudice in this case.  I would

1    assume that the same concerns apply.

2          MR. PASKIN:  Yes, I --

3          JUDGE RAGGI:  And that's why we're a little

4    perplexed as to why there are different applications in the

5    two cases.

6          MR. PASKIN:  Okay.  Well then, apologies for the

7    complexity there, Your Honor, but Argentina's position is it

8    is not pursuing the substance of either of the pending

9    appeals.

10          JUDGE WALKER: I'd like to ask a few questions, if

11    I could --

12          MR. PASKIN:  Of course.

13          JUDGE WALKER:  -- about the District Court's order

14    lifting the -- or opinion lifting the injunction.  First of

15    all, it's not lifting the injunction, it's because we have

16    jurisdiction, so it's going to depend upon a remand of

17    somehow getting it back before the District Judge, right?

18          MR. PASKIN: Of course.

19          JUDGE WALKER:  And then the second question that I

20    have, though, are what are the terms of the lifting of the

21    injunction?  The injunction, as I read it, it looks like

22    Argentina has to take some legislative steps, and then

23    payment has to be made before the injunction can be lifted.

24          MR. PASKIN:  That's correct.

25          JUDGE WALKER:  But how do you pay -- make

1    payments, and then lift the injunction, if you don't lift

2    the injunction first?  That's one question.

3             JUDGE RAGGI:  Because the payments are not in

4    conformity with (indiscernible).

5             JUDGE WALKER:  The payments are not in --

6             JUDGE RAGGI:  (indiscernible) --

7             JUDGE WALKER:  -- conformity of the pari passu.

8             MR. PASKIN:  The -- technically, the injunctions

9    themselves apply to payments to the exchange bond holders.

10            JUDGE WALKER:  Right.

11            MR. PASKIN:  The payments that would be made in

12   conform -- in consistent with Judge Griesa indicative ruling

13   are payments to the holdout bond holders, the litigants in

14   these cases, who settle with Argentina.

15            JUDGE WALKER:  Don't the -- doesn't the injunction

16   enjoin Argentina from making anything other than pari passu

17   payments?

18            MR. PASKIN:  The injunction enjoins Argentina from

19   making anything other than pari passu payments to the

20   exchange bond holders.  They can't make payments to the

21   exchange bond holders, unless they also are making payments

22   from the --

23            JUDGE WALKER:  From the injunction.

24            MR. PASKIN:  -- to the holdouts.

25            JUDGE WALKER:  It doesn't cover the settlements.

```
 1              MR. PASKIN:  That's correct.  The injunction
 2   doesn't --
 3              JUDGE WALKER:  Even though the contract would?
 4              MR. PASKIN:  That is, you know, correct, yes.  And
 5   Judge Griesa, it appears, is prepared to -- proposes in his
 6   order that he would --
 7              JUDGE WALKER:  (indiscernible) -- violate the pari
 8   passu clause of a contract in order to effectuate the
 9   settlement.
10              MR. PASKIN:  That he would authorize those
11   payments in order to bring about the settlement so that
12   everybody can get paid.
13              JUDGE WALKER:  So but let me just ask then, what
14   is the realistic -- I mean, you've -- there's a lot of talk
15   about an emergency here, and Monday's got to be an emergency
16   and everybody's got to settle by then.  And the date -- the
17   reason that's been fixed, apparently, is because the
18   legislature's coming into session on the following day,
19   March 1st, correct?
20              MR. PASKIN:  Correct.
21              JUDGE WALKER:  So what is the indication that the
22   legislature's going to do anything for -- on March 1st, or
23   for that matter, for the next three months?
24              MR. PASKIN:  Right.  Well, the legislative process
25   is going to take time.  They have two houses of Congress.
```

1    There's a house and a Senate (indiscernible) --

2            JUDGE WALKER:  Right.  So why wouldn't the actual

3    lifting of the lock law be -- and the other impediments to

4    settlement be the triggering event, at least as far as

5    lifting the injunction is concerned, rather than having it

6    be Monday.

7            MR. PASKIN:  Well, the triggering event, as far as

8    lifting the injunction is not only the change of the laws,

9    but it's also getting these payments effectuated.

10           JUDGE WALKER:  Well --

11           MR. PASKIN:  And just to continue, Your Honor, if

12   the question is why isn't there a delay prior to remand in

13   order to let the District Court enter his order, because

14   that appears to be appellees' position is the -- as to what

15   should happen.

16           JUDGE WALKER:  Yeah.

17           MR. PASKIN:  The issue there becomes, in order to

18   effectuate the payments that are the other prong of the

19   conditions under the order, what really is necessary is for

20   the -- for there to be certainty about the meaning and

21   viability of that order.  If it's unclear whether upon

22   making those payments, that order would then be challenged

23   in this Court, and potentially overturned, then it can't

24   work.

25           And so, the idea would be if there's going to be a

1   challenge, the challenge to the indicative ruling or the

2   challenge to the rationale behind it should happen as

3   quickly as possible.  It should be converted to an order.

4   If appellees want to take it up on appeal, which presumably,

5   they do, then it can be challenged.

6          And in parallel, with the process that goes on in

7   the legislature, and the mechanics behind effectuating

8   payments to the settling bond holders, excuse me, we can get

9   the certainty as to whether the order that's been entered,

10  that's proposed to be entered by the District Court is an

11  order that actually is going to stand.

12         And because without that, it puts -- it makes the

13  entire situation untenable.  And so, while Mr. McGill

14  suggests that we should all wait and let the status quo of

15  the last two years just prevail, that doesn't really work,

16  first of all, because the status quo has changed.  The

17  government has come in and changed its attitude, and based

18  on that, the District Court has changed its interpretation

19  of, you know, what equitably is required to do here.

20         JUDGE WALKER:  When would the parties appear

21  before the District Judge, if a remand occurred?  Because it

22  seems to me there are lots of questions about why this --

23  why -- I don't understand quite right now, by the February

24  29th date, is in place, were -- for the others to settle, in

25  order to benefit from, in effect, from the injunction.

1    Because if they don't settle by the 29th, then they're --

2    they have no injunction, right?

3            MR. PASKIN:  Well, if they don't settle by the

4    29th, they -- and everything goes forward and the settling

5    parties do get paid and the injunction and the order becomes

6    effective --

7            JUDGE WALKER:  Right.

8            MR. PASKIN:  -- essentially, that's correct.

9    Appellees no longer, who don't settle, no longer have the

10   injunctions.

11           JUDGE WALKER:  This is effectively a cram down

12   provision.

13           MR. PASKIN:  No, it's absolutely not, because

14   first of all, the District Court retains jurisdiction over

15   the injunction.  And as has been abundantly clear in the

16   past, if it believes that Argentina is no longer, is

17   reverting to its old ways, to put it, you know,

18   colloquially, the District Court obviously can put the --

19   you know, can impose the same restrictions or harsher ones

20   or whatever it is that the District Court is inclined to do.

21           JUDGE RAGGI:  That would be a new order, and that

22   would be appealable and that's what the non-settling parties

23   don't want to have to go through.

24           MR. PASKIN:  If it's just a question, Your Honor,

25   of the effort of that, Argentina is taking the position, and

1    again, I'm not expecting them to be taken on their words

2    alone, which is why there are these conditions in the

3    lifting of the injunction.  We're abandoning the substantive

4    arguments against the imposition of the original

5    injunctions.

6              And by abandoning those arguments, I would expect

7    that it's going to be very hard to reassert them again,

8    having lost them in past years, having lost them on appeal

9    before, and now having completely changed the strategy.  So

10   there's a certain point at which the new government has to

11   be given an opportunity to actually do what it says it's

12   going to do with these conditions applied, and allow these

13   settlements to happen, because I realized that I'm running

14   out of time, but --

15             JUDGE RAGGI:  You're last on our calendar.

16             MR. PASKIN:  But the -- but I think the other

17   issue about the status quo is the status quo that prevailed

18   for the last two years, as Mr. McGill points out in his --

19   in one of his briefs, at least up until the new government

20   took office in December, was a status quo that inflicted

21   tremendous pain on Argentina, that they had brought upon

22   themselves admittedly.  But one -- didn't actually succeed

23   in moving settlement talks forward, that didn't actually

24   succeed in getting any of these holdout bond holders paid.

25             So now we have a process in place that allows

1    those things to move forward, that allows settlements to

2    happen.  There have been billions of dollars in settlements

3    announced already, pursuant to these new rules and the new

4    approach of Argentina's government.  So it seems that the

5    worst position that the appellees find themselves in is

6    exactly the same position that they have been in, which is

7    winning everything in Court, but not actually getting the

8    satisfaction that they want.

9         And now there's a way through it, so we would

10   think, respectfully, that they should be in favor of a

11   prompt remand of converting the indicative ruling into an

12   order.  And if by that point they haven't settled or other

13   people haven't, take it up on appeal.  Figure out what the

14   rules are and then play by them.

15        JUDGE HALL:  When is the injunction actually

16   lifted?  It's not lifted for several months, is that right,

17   until the payments are (indiscernible) --

18        MR. PASKIN:  Until the payments occur.

19        JUDGE HALL:  When do they occur?  Do we know,

20   roughly?

21        MR. PASKIN:  It -- ultimately, it will depend

22   upon, I think the quantity of payments required, and the

23   degree to which access to capital markets will be required

24   in order to finance them.

25        JUDGE HALL:  And so, until that time, the

1    injunction remains in play.

2              MR. PASKIN:  Exactly.

3              JUDGE HALL:  And the District Judges can modify it

4    or do whatever, hear arguments on that score.

5              MR. PASKIN:  Of course.

6              JUDGE HALL:  But then, right now, as we stand here

7    now, who has settled?  My -- the papers seem to indicate

8    that I think 14 percent have settled, and that's of the me

9    toos, I assume?

10             MR. PASKIN:  Those were me toos.  The 14 percent

11   referred to in the papers were the initial settlements that

12   were announced back on February 5th or whatever the date

13   was.  Since then, the special master has made statements as

14   additional cases and additional plaintiffs have settled.

15   Those statements have come out on practically a daily basis

16   of additional --

17             JUDGE HALL:  What's the tally in that?

18             JUDGE RAGGI:  (indiscernible) --

19             JUDGE HALL:  What's it now?

20             MR. PASKIN:  I don't know what the exact tally is,

21   but I think we're now approaching $2 billion rather than a

22   little bit over one million.

23             JUDGE HALL:  (indiscernible) percentage.

24             JUDGE RAGGI:  (indiscernible) percentage, are we

25   talking 25 percent, 40 percent?

1              MR. PASKIN:  I wouldn't want to be taken exactly

2     on it, but I think about 25 percent is where they are.

3              JUDGE WALKER:  And those are the me toos?

4              MR. PASKIN:  It's a -- (indiscernible) question.

5              JUDGE WALKER:  (indiscernible) no-me too, any

6     original (indiscernible)?

7              MR. PASKIN:  No, good question.  I should know the

8     answer to that question, but I don't, so I'm not going to

9     guess.

10             JUDGE RAGGI:  With respect to the motion before us

11    on dismissal with prejudice, you know, this was made just

12    the other day.  We -- we're ready to hear this appeal and

13    resolve it.  And I'm wondering why we shouldn't?  You know,

14    you said, well, you basically abandoned the challenges to

15    the original injunction, and so you're -- you know, there

16    wouldn't be litigation of that again.

17             But a dismissal with prejudice leaves some

18    ambiguity as to what got resolved, and you know, I'm a

19    little concerned about this, especially if you're not

20    looking to dismiss with prejudice, the me too case, which

21    would then perhaps leave you free, or your client, I

22    understand, that you're making a representation to the

23    Court, but your client's changed its mind before, to

24    resurrect issues that we're prepared to address right now.

25             MR. PASKIN:  Right, understood, Your Honor.

1          JUDGE RAGGI:  Why should we dismiss?

2          MR. PASKIN:  Well, first, with the question of

3   dismissal of the other case, of the me too case, as I stated

4   earlier, we are prepared to dismiss that.

5          JUDGE RAGGI:  With prejudice?

6          MR. PASKIN:  With prejudice?

7          JUDGE RAGGI:  Okay.

8          JUDGE WALKER:  Can you do that today?

9          MR. PASKIN:  Yes, I can do that today.  We can

10  dismiss that with prejudice.  I just wanted to preserve

11  procedurally the District Court's ruling and the ability to

12  convert that into an order.

13         JUDGE RAGGI:  So your adversary expressed some

14  cost to that -- some question about litigating costs and

15  sanctions.  What's Argentina's position with respect to

16  costs, because I might have thought those were dictated by

17  Rule 39?

18         MR. PASKIN:  I think that at this point, first of

19  all, I would expect appellees to be happy with the result,

20  and that the costs associated with the particular appeal

21  here seem to be a drop in the bucket relative to --

22         JUDGE RAGGI:  (indiscernible) acknowledging your

23  responsibility for costs, how much is maybe another

24  question, but you're acknowledging your responsibility for

25  costs (indiscernible) --

1          MR. PASKIN:  I'm acknowledging the client's, you

2     know, potential responsibility for costs, subject to a

3     motion for costs that they would bring.

4          JUDGE RAGGI:  Now my understanding about Rule 38

5     sanctions motions is that those could be sought even after

6     dismissal.  Does Argentina take any different view on that?

7     I mean, if we dismiss this case, are you going to dispute

8     their ability to seek sanctions?

9          MR. PASKIN:  No.

10          JUDGE RAGGI:  I mean, you'd dispute their right.

11          MR. PASKIN:  We made -- exactly.  We may challenge

12     the substance of it, but we won't challenge --

13          JUDGE RAGGI:  (indiscernible) --

14          MR. PASKIN:  -- the procedural time limits,

15     exactly.

16          JUDGE RAGGI:  Okay.  We may have more questions,

17     but I think we want to hear from your adversaries first.

18          MR. PASKIN:  Okay.  Thank you, Your Honor.

19          MR. MCGILL:  Thank you, Your Honors, and may it

20     please the Court, Matthew McGill for the parties as I

21     described before.  The District Court's indicative ruling of

22     just Friday gave Argentina's public tender offer the force

23     of a judicial ultimatum.

24          JUDGE RAGGI:  Before we get to the merits of what

25     the District Court did, which may not even be in front of

1   us, you've just heard Argentina say that it's prepared to

2   have both appeals dismissed with prejudice.  They

3   acknowledged that they will be liable for costs, the amounts

4   to be resolved, and that you can bring a Rule 38 sanctions

5   motion, even after dismissal.  In light of that position,

6   why should we not grant dismissal with prejudice, of the two

7   appeals?

8           MR. MCGILL:  Rule 42(b) dismissals are within the

9   discretion of the Court, particularly at --

10          JUDGE RAGGI:  Right.  So now tell us why not?

11          MR. MCGILL:  And I will.  Let me paint the picture

12   of what the indicative ruling does and permits.  On Monday,

13   that's February 29th, on Monday, Argentina's public tender

14   offer closes.  And on Tuesday, Argentina can fulfill the

15   conditions set forth in the order.  The injunctions are

16   automatically lifted.  There is no hearing.  There has been

17   no hearing on this motion.  This was a -- this was presented

18   by an ex parte order to show cause.

19          It was briefed on our side.  Initially, we were

20   told, you know, the Court had already closed for the Friday

21   and Monday, and our deadline was Tuesday at noon, at 10:30

22   on Tuesday.  The Court extended it to Thursday.

23          JUDGE WALKER:  What's to prevent you from going

24   right -- if we dismiss these appeals, and did it quickly,

25   you're going right before Judge Griesa this week and making

1    whatever points you want to make.

2              MR. MCGILL:  Well, I would --

3              JUDGE WALKER:   The injunction's not going to take

4    effect.

5              MR. MCGILL:  We would've -- well, no, that's

6    exactly the point.  On Monday, the -- is when the offer

7    closes, this public tender offer.

8              JUDGE RAGGI:  (indiscernible) --

9              MR. MCGILL:  On Tuesday, they can fulfill the

10   conditions, and that -- and then, it is a springing vacatur

11   of the injunction.

12             JUDGE RAGGI:  (indiscernible) to the Court,

13   though.

14             MR. MCGILL:  It -- they do not.  It --

15             JUDGE RAGGI:  That's what the last line of the

16   Judge's order says, the indicative ruling.  Let me get it in

17   front of me.

18             MR. MCGILL:  (indiscernible), and it says, "If the

19   Court of Appeal remands, the injunctions will be lifted

20   automatically upon fulfillment of these two conditions."

21             JUDGE WALKER:  One of which is that the Republic

22   give notice of the payments (indiscernible) --

23             MR. MCGILL:  But --

24             JUDGE RAGGI:  Right, so the last line of the

25   second (indiscernible) --

```
 1              MR. MCGILL:  But all that can happen on Tuesday.
 2    The lock law can be lifted.  The payments can be made.
 3    We're talking about -- you asked how many people have
 4    settled so far?  It's 20 percent.  20 percent is what
 5    settled.  The three funds that I mentioned before, NML, the
 6    Aurelius funds and FFI and FFY, we're 65 percent.  Right?
 7    My plea to the Court is, "Wait to dismiss anything."  We are
 8    -- we have had, since Thursday --
 9              JUDGE RAGGI:  What is that going to mean in terms
10    of the District Court being able to decide what it's going
11    to do here?
12              MR. MCGILL:  I --
13              JUDGE RAGGI:  Because the alternative is, we're
14    ready to hear the appeal and we're ready to rule on it --
15              MR. MCGILL:  Right, and --
16              JUDGE RAGGI:  -- probably in a, you know, very
17    brief time.
18              MR. MCGILL:  And I'm -- and I can address that.
19    But the point here is, you have discretion on -- to whether
20    or not to dismiss.  And I think you should wait to dismiss
21    for the following --
22              JUDGE HALL:  (indiscernible), though?  Why should
23    we be in the position of having to decide whether the
24    settlement's effective or fair or anything like that,
25    because that's the District Court's normal responsibilities?
```

1          MR. MCGILL:  It is --

2          JUDGE RAGGI:  That's (indiscernible) --

3          JUDGE HALL:  The -- this District Judge has been

4   on this case forever, and that's what you're asking us to

5   do.  You're asking us to weigh in and see if we can help you

6   get a better settlement.

7          MR. MCGILL:  No, no, I'm not.  All I'm asking for

8   is for a little time for the settlements that Argentina

9   claims that they want to take place.  My point, my core

10  point is that this February 29th deadline is needless and

11  counterproductive.

12         JUDGE RAGGI:  Well, why (indiscernible) --

13         MR. MCGILL:  And we had had no --

14         JUDGE RAGGI:  (indiscernible) for an adjournment

15  then, or an extension, if you need more time?  Why should

16  this Court use a delay in either granting a dismissal motion

17  or deciding the appeal?  Why should it delay either of

18  those, in order --

19         MR. MCGILL:  Because --

20         JUDGE RAGGI:  -- in order to give you time on

21  something that's really a District Court matter?

22         MR. MCGILL:  I think there are two reasons, Judge

23  Raggi.  One is that we have made repeated requests to the

24  District Court to be heard on this motion, and thus far,

25  have been -- those requests have been declined.  The order

1    was entered, and the --

2              JUDGE HALL:  (indiscernible) have jurisdiction,

3    isn't it?

4              MR. MCGILL:  No, it's not.

5              JUDGE HALL:  (indiscernible) of these --

6              MR. MCGILL:  He entered the indicative ruling and

7    he could've heard us on the ex parte motion to enter an

8    indicative ruling and he chose not to.  And he --

9              JUDGE RAGGI:  We need to grant dismissal for rule

10   in this case so that the appeal is over.  You can make

11   whatever application you have to the District Court.

12             MR. MCGILL:  Well --

13             JUDGE RAGGI:  If you're not successful, can't you

14   appeal the unsuccessful ruling --

15             MR. MCGILL:  The --

16             JUDGE RAGGI:  -- and seek a stay, if you

17   (indiscernible)?

18             MR. MCGILL:  Well, if Argentina would consent now

19   to a stay pending appeal --

20             JUDGE RAGGI:  They're not going to consent.

21             MR. MCGILL:  Okay.  But --

22             JUDGE RAGGI:  And you'll make the application to

23   the Court.

24             MR. MCGILL:  Well, then here's the problem, and

25   now let me just try to paint it.  If Argentina satisfies the

1    conditions on Tuesday and the injunctions are automatically

2    lifted on Tuesday, on that same day, Argentina can change

3    the payment mechanisms that have been in place for years,

4    that the injunction prohibits them from changing, and

5    thereby render the restoration of effective injunctive

6    relief impossible.

7            JUDGE RAGGI:  I understand all these concerns you

8    have, I do.  But my question is, how do we use delay in

9    ruling on motions for an appeal to effectively grant you a

10   stay of the lifting of the injunction?

11           MR. MCGILL:  It is within your discretion to grant

12   or to decline to grant the dismissal.

13           JUDGE RAGGI:  But why (indiscernible) exercise it

14   for the purpose you're urging?

15           MR. MCGILL:  I --

16           JUDGE RAGGI:  That doesn't seem to be our task.

17           MR. MCGILL:  The -- and I'm -- the reason you

18   should exercise it is that it will facilitate the end of the

19   litigation.  What nobody wants is what this order is going

20   to create, which is the cascade of appeals and stay motions

21   and everything else. Let me finish.  The -- my clients, the

22   65 percent, we have had a -- an agreement on economic terms

23   with Argentina since Thursday.  We're this close to a deal,

24   this close.

25           We've been discussing payment mechanics, ancillary

1    provisions.  And I should mention that our deal, our on

2    economic terms is closer to their public tender offer than

3    100 percent.  We are this close.  Unfortunately, we've had

4    some hiccups in negotiating these mechanics.  You know, the

5    first payment, the -- a payment mechanic that was suggested

6    by the special master, it was discovered very late that it

7    involved, rather than a wire transfer, it involved the use

8    of paper checks coming through FedEx.

9            That was not going to work.  So we're trying to

10   find a payment mechanics that work.  This is a $5 billion

11   transaction, and we're being told that we have to sign it up

12   on a page and a half agreement by Monday.  If we have just a

13   little time, we can finish the deal.  The economic terms are

14   agreed.

15           What they're asking for, and what we're afraid of,

16   is that by hastening this back to the District Court, we're

17   all going to be mitigating stay motions, stays pending

18   appeal that will last --

19           JUDGE WALKER:  How much time do you feel you need

20   to settle this?

21           MR. MCGILL:  What I suggested in my papers, on the

22   remand motion, which I --

23           JUDGE HALL:  The balance of next week?

24           MR. MCGILL:  I think what would be appropriate is

25   that the Court wait until Argentina lifts its lock law.

```
 1    That is the first, but not the second condition that

 2    Argentina has set forth that would trigger the indicative

 3    ruling.  And then, that is when they'll be ready to pay.  We

 4    are, you know, we are so close to ending 15 years --

 5             JUDGE RAGGI:  (indiscernible) know before they

 6    lift the laws, how many parties they settled.  Isn't that

 7    why there's the 29th and then the Argentine legislature will

 8    meet within a day or two of that?  So you're suggesting that

 9    it be put the other way, that Argentina lift the laws before

10    your client settles.

11             MR. MCGILL:  The --

12             JUDGE RAGGI:  I don't want to get into which makes

13    sense, but that's what I understand the (indiscernible)

14    reason.

15             MR. MCGILL:  The indicative ruling is in place.

16    The Court, the District Court has signaled its intention --

17             JUDGE RAGGI:  Well, the indicative ruling is an

18    indicative ruling.  We have to decide something and get the

19    case back to it before it can enter anything.

20             MR. MCGILL:  I --

21             JUDGE RAGGI:  I mean, I would almost understand

22    you're saying to us, "Ask the District Court before it makes

23    it a final ruling," to give you another opportunity to be

24    heard.

25             MR. MCGILL:  We would think at a minimum, we would
```

1   be entitled to that.  This is litigation, just on the pari

2   passu -- I mean, the litigation has gone on for 15 years.

3          JUDGE RAGGI:  Yeah, but an opportunity to be

4   heard, and he just enters an indicative ruling, you have an

5   automatic appeal, and probably a very successful one.  Don't

6   you think?

7          MR. MCGILL:  I --

8          JUDGE RAGGI:  I mean, if you haven't been heard up

9   to this point and he's not hearing you and then he enters an

10  injunction and you're not --

11         MR. MCGILL:  I, I'm going to --

12         JUDGE RAGGI:  This is an injunction and you're not

13  prepared to --

14         MR. MCGILL:  I'll be back here on Tuesday, you

15  know, saying, "I desperately need a stay pending appeal."

16  And but the fact is is that we really don't want that.  What

17  we want is to settle these cases that have clogged the

18  dockets of the District Court and this Court for 15 years.

19         JUDGE RAGGI:  I understand that, I'm just not sure

20  I understand why a delay by this Court is an appropriate

21  action by us to facilitate something like that.  We review

22  District Court decisions, that's what we do.

23         MR. MCGILL:  Right.  Well, one, the -- obviously,

24  the me too appeals have yet to be dismissed.  And that --

25  they may -- that may happen, and if they do, then we'll be

1    in a different situation.  They blew their briefing deadline

2    of yesterday, so that fairly does indicate an intent to

3    dismiss the appeals.

4              JUDGE RAGGI:  (indiscernible) sought an extension.

5              MR. MCGILL:  Yeah, so the -- you asked the, I

6    think fine, the -- what is the key question?  Why should you

7    exercise your discretion in this way?  And I think the

8    answer is that it will facilitate the ends that everybody

9    here is professing to want to achieve.  And it is so close,

10   and it would be such a tragedy, if it all vaporized, because

11   of a hasty, indicative ruling that was entered.

12             And I should just say, you know, my clients are

13   the lucky ones, right?  My clients have had the opportunity

14   to negotiate.  There are dozens of plaintiffs who, for whom

15   it's the tender offer or nothing.  And maybe, you know,

16   maybe they'll be the ones taking the appeals.

17             JUDGE RAGGI:  You know, Judge Walker asked you how

18   long do you want your stay, do you want it, (indiscernible)?

19             JUDGE HALL:  What's the (indiscernible)?

20             JUDGE RAGGI:  Well, that's a curious way for us to

21   act.  We're going to delay a ruling?  Not for two weeks, not

22   for two months, but until another sovereign takes certain

23   action.  I mean, that seems an extremely curious thing, when

24   the two applications before us are to dismiss with prejudice

25   or to decide an appeal that we are prepared to hear you on.

```
1              MR. MCGILL:  We will -- I'm perfectly happy to be

2    heard on the 1060 appeal.  I think the Court should decide

3    it.  It should rule on the merits.  But that's --

4              JUDGE RAGGI:  But that's going to (indiscernible)

5    on that --

6              JUDGE HALL:  And that --

7              JUDGE RAGGI:  -- you'll be in the same position as

8    a dismissal with prejudice.

9              MR. MCGILL:  Yes, that's correct, Judge Raggi.

10   That's correct.  And I'm not -- and what we're -- what we

11   want to do is what we have argued is that this -- when it

12   was just a motion to remand, we argued that the remand

13   should wait until this -- this isn't even a real indicative

14   ruling, it's a conditional indicative ruling, right?  It's

15   an indicative ruling that we -- it will vacate if two

16   conditions are satisfied.

17             Now I think maybe seeing the force of that

18   argument, Argentina has changed tactics again, in yet

19   another abrupt procedural maneuver, has now said, "We're

20   going to dismiss the appeals outright."  And this is all

21   calculated to avoid a hasty -- this is all calculated to

22   avoid any holdup in this Court and to delay any entry of

23   this order.

24             And I think it is -- I would not be protecting my

25   client's interests and I would not be serving the interests
```

1    of the other bond holders involved in this appeal, if we did

2    not have an opportunity to seek appellate review of that

3    order, once it's entered.  And our very real concern, our

4    very real concern is that Argentina will satisfy all the

5    conditions and make it impossible to restore injunctive

6    relief.  There -- this is an -- this -- Argentina, I

7    recognize that the government has changed --

8              JUDGE WALKER:  (indiscernible) relief of the very

9    form.

10             MR. MCGILL:  Right.  If you reversed --

11             JUDGE WALKER:  (indiscernible) appeal onto the --

12             MR. MCGILL:  If you reversed -- yeah, if the

13   indicative ruling were entered as an order to vacate and you

14   reversed, it could be, "Well, too bad that we've changed the

15   payment mechanics and Bank of New York is no longer the

16   trustee of the U.S. dollar bonds, it's now (indiscernible),"

17   which is, I have -- it bears mentioning.  Argentina remains

18   in contempt of court.  They -- it's un-purged for their

19   legislation to fire Bank of New York as Trustee, and to

20   replace them with an Argentine institution.

21             Judge Griesa had recognized that this was a

22   blatant attempt to evade the injunction.  So the --

23   actually, the legislative mechanism is already in place in

24   Argentina.  It's already in place.  So there is no way,

25   under the structure of this order, I've never seen anything

 1   like it.   It is a springing vacatur upon satisfaction of two

 2   conditions that are entirely within Argentina's control.

 3           They could make them happen tomorrow.   It could

 4   pass the law and it can wire the funds.   The injunction goes

 5   away.   We change the payment mechanics and we're left with

 6   nothing, except our judgments, which will keep the

 7   litigation going forever.

 8           JUDGE RAGGI:   Why don't we hear briefly from

 9   Argentina, and you know, if you need to respond further,

10   we'll hear you then?   Thank you.

11           MR. MCGILL:   Thank you, Judge Raggi.

12           JUDGE WALKER:   You have a way of addressing your

13   adversaries concerns here, if you want to settle this case,

14   by agreeing to a period of time that could be used to

15   effectuate these settlements, so that it's not what I raised

16   earlier., effectively, you know, my way or the highway until

17   Monday.

18           MR. PASKIN:   Well, I think it's interesting, Your

19   Honor, because Mr. McGill effectively said that this is all

20   about settlement leverage.   And if the question is, what's

21   brought the settlement negotiations as close to fruition as

22   they have been with his clients, and have concluded them

23   with other parties, it's hard to believe, when he says

24   that's what brought Argentina to that position is the years

25   of history of having these injunctions in place.

```
 1                JUDGE HALL:  Right, but --

 2                MR. PASKIN:  It's --

 3                JUDGE WALKER:  I'm asking a more direct question.

 4     I'm asking you a question as to whether or not there is a

 5     possibility that there could be a meeting of the minds on

 6     how this is -- how this could play out, rather than our

 7     hearing a competing -- competing considerations and having

 8     to wrestle with those.

 9                MR. PASKIN:  Right.

10                JUDGE WALKER:  In other words, you heard what he

11     said, and --

12                MR. PASKIN:  Yes.

13                JUDGE WALKER:  -- his concerns.  Is there a way

14     you can address those?

15                MR. PASKIN:  I think the way that I would address

16     it is that his description of the terms is not accurate,

17     because it's not the my way or the highway deadline.

18                JUDGE WALKER:  No, he is saying that the

19     effectively, Argentina, once the injunction is lifted, is

20     free to alter all sorts of things and make it very difficult

21     for his clients to get paid in any event.  If you want a

22     settlement here, why wouldn't you want some period of time

23     in which to effectuate that?

24                MR. PASKIN:  The period of time has -- we've given

25     a period of time.  We're trying to effectuate settlements
```

1  with as many parties as possible.  I think that the

2  existence of the firm deadline is what in fact has brought

3  the parties as close together as they are.

4       JUDGE RAGGI:  It's unlikely you'll settle with

5  everybody between now and Monday.

6       MR. PASKIN:  It's --

7       JUDGE RAGGI:  And the concern is, if you get the

8  injunction lifted, which would, you know, you're -- the

9  concern is the legislature changes to the law the next day,

10  and you transfer the money immediately to everyone, what

11  you'll also do is free of the injunction, change transfer

12  agents, do all of the things that have allowed the Court's

13  injunction to limit Argentina's violation of the pari passu

14  clause by, you know, basically taking the actions out of the

15  supervision of the United States Court.

16       And while, you know, your client professes to have

17  a new view of all of this, those of us who've been involved

18  in the supervision of the litigation for 14 years know that

19  there've been changes of heart over time.

20       MR. PASKIN:  Absolutely understood, Your Honor.  I

21  think the bottom line here is that the situation that he

22  posits is exactly the same situation that he's currently in,

23  and that he's been in for years without an ability to get

24  what his clients want.

25       JUDGE RAGGI:  Well, except that at least for the

1    last few years, there's been the injunction.

2              MR. PASKIN:  Right, and the --

3              JUDGE RAGGI:  That -- and while that may not be

4    the triggering agent that has made the new administration

5    take a different view, it certainly has to have played a

6    part.

7              MR. PASKIN:  Of course it's played a part.  And by

8    the District Court having continuing jurisdiction to oversee

9    those issues, if Argentina steps --

10             JUDGE RAGGI:  These are changing your transfer

11   banks and all of this.  The District Court may not be able

12   to enter the same kind of injunction that it -- that is

13   presently in place.

14             MR. PASKIN:  But it still has the power,

15   regardless of any of those changes, it still has the power

16   to block -- to direct Argentina not to make the other

17   payments, essentially to direct Argentina that it can't

18   violate pari passu.

19             JUDGE WALKER:  You don't have any -- are you not

20   at all concerned about the fact that Judge Griesa has not

21   accommodated the other side here, in terms of meeting with

22   him to discuss the -- or to go over this indicative ruling?

23             MR. PASKIN:  Why Judge Griesa did what he did, I

24   wasn't before him either.  So we don't know.

25             JUDGE HALL:  Well, I understand that, but I mean -

1    -

2              JUDGE RAGGI:  Would you have any objection to it?

3    I mean --

4              JUDGE HALL:  If we were to --

5              JUDGE RAGGI:  If we're going to send this back, do

6    you have any objection to meeting with the Judge and all

7    these concerns being aired before the final ruling is

8    entered?

9              MR. PASKIN:  We have no objection at all to

10   whatever proceedings Judge Griesa wishes to hold before he

11   enters his orders.  We want to do whatever --

12             JUDGE HALL:  (indiscernible) to order him to do

13   certain things, or at least in broad brush?

14             MR. PASKIN:  You probably --

15             JUDGE HALL:  That is hold a hearing and hear from

16   those parties that want to be present, prior to entering

17   this order?

18             MR. PASKIN:  Your Honor probably knows the answer

19   to that question better than I do, but if you believe that

20   that's something that you can and should do, well then,

21   we'll appear at the hearing and defend the positions that

22   we've already articulated and that have already been

23   responded to on the papers.

24             JUDGE RAGGI:  Let me ask you another question, I

25   was concerned with Mr. McGill that he was asking us to delay

1   rulings as a way of ensuring that they would have the time

2   to appeal any action by the District Court, or at least

3   delay any action until they were heard.

4          If we were to go ahead and rule, as you're urging

5   us to do, and the District Court lifts the injunction, are

6   you prepared to agree to something like a 24 or a 48 hour

7   period before you take any action, to give them at least a

8   time to come to the Court and seek whatever redress they

9   want?  That's not to say they'll be successful, but at least

10  to ensure that before anything happens, they've had an

11  opportunity to be heard by this Court.

12         MR. PASKIN:  As I said before, Your Honor, we have

13  no objection to appropriate appellate review of what the

14  District Court has articulated in its indicative ruling.

15         JUDGE WALKER:  Is the offer -- does the offer that

16  expires on the 29th, do you have authority to extend that

17  offer?

18         MR. PASKIN:  I do not.

19         JUDGE WALKER:  Mm hmm.

20         MR. PASKIN:  But as I was saying, first of all, 24

21  or 48 hours functionally wouldn't matter because to get the

22  laws changed is going to take more than 24 or 48 hours.  To

23  set up the mechanics to pay the people who settle by the

24  deadline is going to take more than 24 or 48 hours.  And as

25  I explained earlier, as a practical matter, unless Argentina

1    knows that the order that Judge Griesa anticipates entering

2    is a good order that's going to hold up, then they can't

3    meet the conditions.  They need that certainty.

4          So I would submit that we have just the same

5    interest in having finality associated with that order, as

6    Mr. McGill says he has, and that's why I don't understand

7    his suggestion that there be this delay built in.  He should

8    be as anxious as anybody to say, "This case should go back

9    to the District Court, reduce it to real orders that are

10   appealable, appeal it as quickly as possible," and all of

11   that's going to happen very quickly.

12         JUDGE RAGGI:  Anything else?  Otherwise, I'm going

13   to let Mr. McGill have the last word here.

14         MR. PASKIN:  No, that's all, Your Honor.  Thank

15   you.

16         JUDGE RAGGI:  Mr. McGill, you've heard what

17   Argentina's position is on all of this.

18         MR. MCGILL:  If Argentina won't agree to a stay of

19   even 24 hours, then this is a cram down period.  There is no

20   other way to describe it.  It is take the tender offer or

21   you get nothing.

22         JUDGE RAGGI:  All right, well let's

23   (indiscernible) --

24         MR. MCGILL:  That --

25         JUDGE HALL:  You're saying he does have authority

```
 1   to do it, but we've got the rest of this week to sort it

 2   out.  Suppose we say we'll -- we won't decide these motions

 3   for three days, and then in the meantime, we direct the

 4   parties to appear before Judge Griesa?

 5             MR. MCGILL:  I think this Court has ample

 6   authority and discretion under Rule 42(b) to condition its

 7   dismissal on proceedings in the District Court.  It could

 8   condition its dismissal on the Court's entry of a stay

 9   pending appeal of some length of time.  It could be brief,

10   to allow a properly briefed and argued stay motion to happen

11   before a motions panel of this Court --

12             JUDGE WALKER:  You have no problem with us

13   granting all the motions, but if we included with it a stay

14   of any effectuation of the order until -- to give you an

15   opportunity to appeal, and a directive to appear before

16   Judge Griesa?

17             MR. MCGILL:  I think. Judge Walker, you know, I've

18   avoided talking about the substance of the indicative

19   ruling.  I think the indicative ruling is deeply, deeply

20   flawed.  But, I --

21             JUDGE RAGGI:  Right, but that's --

22             MR. MCGILL:  -- I, so I --

23             JUDGE RAGGI:  -- (indiscernible) whether you have

24   had an opportunity to be heard by the District Court,

25   whether you have the opportunity to be heard (indiscernible)
```

1    --

2              MR. MCGILL:  If we have an opportunity to be heard

3    by both forums, I think that would solve many of the

4    concerns I have about the picture I painted of the

5    injunction going away very suddenly.  I do need to make just

6    one more point.  The me too appeals involved 49 different

7    cases.  I am, you know, here in -- from in those cases, I'm

8    here for three large hedge funds that have the bulk of the

9    claims.  But there are dozens of other parties who have had

10   no opportunity to negotiate.  I urge the Court to look at

11   the letters of Mr. Michael Spencer, describing what he has

12   had in terms of an opportunity to negotiate.

13             JUDGE RAGGI:  Negotiate settlement.

14             MR. MCGILL:  Negotiate a settlement.  He's not

15   nobody.  He's got almost a billion dollars of claims here.

16   And, you know, and he represents individuals from Argentina

17   who bought these bonds at par before default.  He represents

18   some small funds, but there's been no meaningful opportunity

19   for these people to negotiate.  And for them, it really is a

20   cram down, and that is -- it is obvious, any sentient being

21   can see what's going on here.  It is settle with the big

22   guys by -- and then tell everyone else on February 29th to

23   take a hike.

24             And I don't think this Court should be party to

25   it.  I urge the Court to condition any dismissal on at least

1    those non-settling parties having ample opportunity to be

2    heard in the District Court and to be heard in this Court

3    before any vacatur of the injunction takes effect.

4         JUDGE RAGGI:  Well, I mean, let me ask both

5    parties again to avoid any misunderstanding about this.  So

6    what you're suggesting is that if we grant relief here,

7    namely the dismissal, that the order indicate that we

8    understand this is sought for the purposes of allowing the

9    indicative ruling to be an actual ruling, and that before

10   that's done, all parties in the two cases should have the

11   opportunity to be heard by the District Court.

12        MR. MCGILL:  I would add to that, Judge Raggi,

13   that -- and before any vacatur takes effect, that the Court

14   stay it for a -- whatever period of time this Court views is

15   sufficient, to --

16        JUDGE WALKER:  Well, you would stay it until a

17   proper stay motion with more --

18        MR. MCGILL:  Right.

19        JUDGE WALKER:  -- with better papers and so forth

20   could be made before a motions panel of this Court.

21        MR. MCGILL:  Right.  And I don't want to presume

22   what length of time that should be.  But we would accept,

23   speaking for the people I represent, we would accept any

24   conditions that the Court wants to impose.

25        JUDGE RAGGI:  (indiscernible) all kinds of

```
 1    (indiscernible).  I've seen District Courts grant stays for
 2    only 24 hours on the theory that then a judge of this court
 3    can decide whether to enter a longer stay.  I've seen judges
 4    enter a stay for a week.  So there are lots of ways that's
 5    done.  Counsel, Mr. Paskin, what's your view on what's being
 6    proposed here?
 7              MR. PASKIN:  I think, Your Honor, that with
 8    respect to the idea that we be directed to appear before
 9    Judge Griesa.  We have no objection to that whatsoever.
10              JUDGE RAGGI:  And all parties, so that all parties
11    are (indiscernible) --
12              MR. PASKIN:  That any party who wants to appear --
13              JUDGE WALKER:  (indiscernible) pending any appeal.
14              MR. PASKIN:  A stay pending any appeal, as Your
15    Honor suggested, I think if you want to grant a stay that
16    gives them enough time to apply for a stay to this Court, we
17    have no --
18              JUDGE WALKER:  (indiscernible) on Tuesday.
19              MR. PASKIN:  Yes, we have no problem with that,
20    Your Honor.
21              JUDGE WALKER:  I think we're going to discuss it
22    and then come back and tell them what we're going to do.
23              JUDGE RAGGI:  All right.  Given the time
24    sensitivity of this, we'd like to conference and ask you to
25    wait.
```

1            MR. PASKIN:  Okay.  Thank you, Your Honor.

2            MR. MCGILL:  Very well, Your Honor.

3            JUDGE RAGGI:  Okay, thank you very much.

4            CLERK:  The Court's in recess.  Judges of the

5    United States Court of Appeals for the Second Circuit.

6            JUDGE RAGGI:  Please be seated.  First of all, let

7    me thank all counsel for their arguments and responsiveness

8    to our questions.  It is our inclination, subject to hearing

9    from you now, to grant the dismissals with prejudice, but

10   subject to certain agreements that we understand counsel to

11   have indicated a moment ago.  So I'm going to try to speak

12   slowly and suggest that this is a draft of an order, but I

13   think substantively, it captures what we want.  I may have

14   to clean up our syntax a little bit.

15           We expect to note that motions to dismiss the

16   appeals in, and then list all the docket numbers that

17   pertain, have been sought in order to allow the District

18   Court to enter orders indicated in its indicative ruling of

19   February 19th.

20           The motions are granted pursuant to the party's

21   agreement.  One, that Argentina will give notice to all

22   parties in these actions.  If it moves the District Court to

23   formalize the indicative rulings, and Argentina will afford

24   the parties an opportunity to be heard before the District

25   Court.

1           Then number two, Argentina agrees to the entry of

2      a stay of any order of the District Court for up to two

3      weeks, so that the parties can file a notice of appeal

4      within two business days of the order, and then, seek a stay

5      from a motions panel of this Court pending appeal.

6           If you gentlemen want to think about this for a

7      moment or talk among yourselves, we're happy to give you

8      some time.  Otherwise, the question is whether we've

9      correctly understood what you just agreed to and whether

10     there's any other concerns we should be mindful of before we

11     proceed in the way I'm just indicating.

12          MR. MCGILL:  May I be heard, Judge Raggi?

13          JUDGE RAGGI:  Sure.

14          MR. MCGILL:  On the -- if I understand correctly

15     the first of the two conditions you set forth, it's that

16     Argentina will provide notice to all of the affected parties

17     that it is filing a motion to formalize the indicative

18     ruling.  My -- this is -- I think the substance of that is

19     fine, except for one unique feature of this indicative

20     ruling, is that I do not read it to contemplate any further

21     action by the District Court.

22          JUDGE HALL:  Well, the indicative ruling --

23          MR. MCGILL:  Or excuse me, I misspoke.

24          JUDGE HALL:  A precondition here is that the

25     indicative ruling can't take effect otherwise.

1           MR. MCGILL:  So that it will take effect only

2  after a motion being made on notice, not ex parte --

3           JUDGE HALL:  Right.

4           MR. MCGILL:  -- in the District Court, and we --

5  us having an opportunity to brief and be heard on that

6  motion?

7           JUDGE RAGGI:  Well, my first sentence, which I

8  know went by quickly, says that the motions to dismiss the

9  appeals in docket numbers whatever are sought in order to

10  allow the District Court to enter orders indicated in its

11  indicative ruling.  So we are contemplating that the

12  indicative ruling has no force in effect by itself.

13          This Court has to return jurisdiction to the

14  District Court, whereupon the ruling is indicated it wants

15  to enter once it has jurisdiction could be entered.  And

16  pursuant to your agreement, and Argentina has to indicate

17  whether this is correct, Argentina has agreed it'll give

18  notice to everybody and afford them an opportunity to be

19  heard when it says to Judge Griesa, "You've got jurisdiction

20  again, enter your orders."  And it will also agree to a

21  modest stay, so that you can come up and file your notice of

22  appeal and move for a stay and take your chances as to how

23  that will go for you.

24          MR. MCGILL:  On the understanding that as the

25  first condition that there will be a motion filed in the

1    District Court --

2         JUDGE HALL:  Yes, because the indicative ruling is

3    just -- he's indicated what his ruling will be.  He hasn't -

4    - it's not a ruling yet.

5         MR. MCGILL:  I understand that part.

6         JUDGE HALL:  It won't be a ruling until he says

7    it's a ruling.

8         MR. MCGILL:  I clearly understand that part.  What

9    I am concerned about, and I, I'll just put it on the table,

10   and I just want to make sure we all have a clear

11   understanding, since this is an agreement among the parties,

12   is that --

13        JUDGE RAGGI:  Let me see if I can tweak language,

14   but I'd first like to hear from Argentina, so that I know

15   exactly -- I'd like to know whether we have an agreement on

16   the large points or not?

17        MR. PASKIN:  Right.  Yes, thank you, Your Honor.

18        JUDGE RAGGI:  Mr. Paskin.

19        MR. PASKIN:  With respect to the points as Your

20   Honor laid them out, yes, we can agree to those conditions.

21   I believe the point that Mr. McGill was getting at is that

22   it is possible, and without knowing what the District

23   Court's intent is, that the District Court doesn't believe a

24   further motion by Argentina is necessary in order to just

25   say, "I've received remand, now I'm going to enter the

1    orders."

2           JUDGE WALKER:  Because the orders say, because the

3    indicative orders say that it becomes effective as an order,

4    upon remand, or does it require -- does it say -- is it

5    silent?

6           MR. PASKIN:  It's silent about that.  So but the

7    question is, because the motions were put before the

8    District Court on -- seeking the underlying substantive

9    relief, the District Court has those motions.  And so, the

10   question I believe for this Court is not necessarily whether

11   Argentina can agree to say, "If we move to formalize the

12   order, we're going to give notice," but whether, you know --

13   but what to do in the event that the District Court on its

14   own determines that now that the case has been remanded, I

15   can just enter my orders.

16          JUDGE RAGGI:  Well, let me suggest this, though I

17   could be blunter even than this, we would say that the

18   motions are granted pursuant to the parties agreements.

19   One, that before any indicative order is formalized,

20   Argentina will give notice to all parties of its intent to

21   request such an order, and an opportunity to be heard before

22   the District Court.  Now that's one way of doing it.

23          You know, another is to say that motions to

24   dismiss the appeals have been sought in order to allow the

25   District Court upon motions of the parties to enter orders

```
 1    indicated in the indicative ruling.  Or, I could do both, as

 2    belts and suspenders, you know, whatever.  I want to capture

 3    what you all have agreed to.

 4           MR. PASKIN:  Right.  I understand, Your Honor, and

 5    again, the way Your Honor described it is perfectly

 6    acceptable to us.  But I think that if you really want to

 7    ensure that notice happens, I think that it needs to account

 8    for the possibility that there would be no motion required

 9    in order to get the District Court to issue its orders.

10           So it could be that the District Court, prior to

11    issuing such orders, must notify or must require Argentina

12    to notify all parties of this remand and the fact that --

13    something along those lines.

14           JUDGE RAGGI:  (indiscernible) give you notice of

15    the remand.

16           MR. PASKIN:  Exactly.

17           JUDGE RAGGI:  The final -- a final sentence could

18    read, "Jurisdiction is returned to the District Court in

19    order to allow motions to be made consistent with the

20    agreements of the parties stated above," something to that

21    effect.

22           MR. PASKIN:  Yes.

23           JUDGE RAGGI:  Now we have belts, suspenders.

24           MR. PASKIN:  Yes.  That would be fine, Your Honor.

25    I would envision a one line motion that says --
```

 1              JUDGE WALKER:  Or we could even say it a little

 2     further, not only an order to, it's conditioned upon the

 3     District Court.

 4              JUDGE RAGGI:  On condition.

 5              JUDGE WALKER:  On condition that the parties have

 6     notice and be able to appear before the District Court

 7     before any finalization of the indicative order.

 8              JUDGE RAGGI:  All right.

 9              MR. PASKIN:  That's certainly acceptable to us.

10              JUDGE RAGGI:  Now I will need a little time to get

11     this in, you know, cogent English, but do you have another

12     suggestion?

13              JUDGE HALL:  Do you have something else?

14              MR. MCGILL:  I have one last friendly suggestion.

15     Could -- as a part of the second condition, could you

16     please, in all cases, waive federal rule of Appellate

17     Procedure Eight, which would require us to seek a stay in

18     the District Court first?

19              JUDGE HALL:  You're getting this stay pursuant to

20     the order, I think.

21              JUDGE RAGGI:  Why should we do that, if the

22     District Court grants you the stay, you've got what you

23     want.  Why should we eliminate that?  Maybe I'm missing

24     something.

25              MR. MCGILL:  Well, I just -- the way I had

1    understood what Your Honors had suggested was that there --

2    that the District Court would impose a stay for two weeks,

3    in order for us to seek a stay pending appeal in this Court.

4    And on my reading of --

5              JUDGE HALL:  You want us to waive the requirement

6    when you're seeking a stay with us that you have sought the

7    stay?

8              MR. MCGILL:  Correct.

9              JUDGE RAGGI:  Oh.

10             MR. MCGILL:  Yes.

11             JUDGE RAGGI:  So --

12             MR. MCGILL:  It's a procedural formality, but I

13   want to be observant of the formalities.

14             JUDGE WALKER:  (indiscernible) shoelaces with the

15   belt and suspenders.

16             MR. MCGILL:  Don't want to trip and fall.

17             JUDGE WALKER:  Absolutely.

18             MR. MCGILL:  I think with -- I would also --

19             JUDGE RAGGI:  Rule Eight?

20             MR. MCGILL:  Yes, of the Appellate Procedure

21   Rules.  And I understand the Court to be saying in the

22   beginning, when you said, when you referred to all of the

23   cases.  We're talking about the consolidated appeals 15-

24   1060, and 15-3675.

25             JUDGE RAGGI:  I have I think seven numbers just

1    for the appeal today.  And then, there are numbers there.

2    Frankly, I would not mind if the parties were able to ensure

3    that we've got everybody (indiscernible) -- I'm sorry

4    (indiscernible) go back here --

5            MR. MCGILL:  May I suggest something that would

6    make that very easy for Your Honor?

7            JUDGE RAGGI:  Yes.

8            MR. MCGILL:  And with his (indiscernible) -- this

9    is on the fly, but perhaps, since he is -- since you are

10   dismissing everything, consolidate the two appeals,

11   consolidate 1060 and 3675, then it all goes back down in one

12   neat package.

13           JUDGE WALKER:  (indiscernible) good?

14           MR. PASKIN:  That seems fine to me, Your Honor.

15           JUDGE WALKER:  I didn't hear what you said.  You

16   said it seems fine?

17           MR. PASKIN:  I said that seems fine.

18           JUDGE RAGGI:  All right, so it's consolidating the

19   1060 and the 1035, is that the --

20           MR. MCGILL:  3675.

21           JUDGE RAGGI:  3675.

22           MR. MCGILL:  And then, what I envision would

23   happen is that when -- unfortunately there's many, many

24   parties, so what we -- if there is an appeal, there would be

25   many appeals.  So we would -- if the Court wishes, we can

```
 1   move to consolidate at that time, or the Court could include
 2   it in its order that any appeal from the order will be
 3   consolidated in a single docket.
 4           JUDGE RAGGI:  I'm not inclined to consolidate in
 5   advance of knowing what goes on and who's appealing on what
 6   grounds, but I -- you can certainly move to consolidate, if
 7   everybody's bringing common issues or (indiscernible) --
 8           MR. MCGILL:  We've --
 9           JUDGE RAGGI:  That's fine.
10           MR. MCGILL:  Historically, we've always
11   (indiscernible) --
12           JUDGE RAGGI:  We would consolidate simply for
13   purposes of the order.  There -- I think you may have a
14   colleague who wants to consolidate?
15           MAN:  (indiscernible).
16           JUDGE RAGGI:  You are, sir?
17           MAN:  (indiscernible) representing
18   (indiscernible). I (indiscernible) convenience of the Court
19   and the parties that they might indeed want to allow
20   (indiscernible) to make consolidated (indiscernible), simply
21   to do it as (indiscernible).
22           JUDGE RAGGI:  We'll consider that.  I need to
23   think about that, and I'm sure my colleagues do, too.
24   Anything else?  All right, we will try to get this in clean
25   prose and out as soon as possible.  Thank you all again for
```

1    your attention to this matter.

2              CLERK:   The Court stands adjourned.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        I N D E X

2

3                        RULINGS

4    Grant the dismissals with prejudice, but subject to certain

5    agreements, Argentina agrees to entry of stay and

6    consolidation of 1060 and 1035       Page 41    Line(s) 8-11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T I O N

 2

 3     I, Sonya Ledanski Hyde, certified that the foregoing

 4     transcript is a true and accurate record of the proceedings.

 5

 6

 7

 8     Sonya Ledanski Hyde

 9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  February 25, 2016
```