UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NML CAPITAL,<br><br>Plaintiff,<br><br>- against -<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendant. | 08 Civ. 6978 (TPG)<br>09 Civ. 1707 (TPG)<br>09 Civ. 1708 (TPG) |
| NML CAPITAL,<br><br>Plaintiff,<br><br>- against -<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendant. | 14 Civ. 8601 (TPG) |
| NML CAPITAL,<br><br>Plaintiff,<br><br>- against -<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendant. | 14 Civ. 8988 (TPG) |

*(captions continue on following pages)*

**THIRD SUPPLEMENTAL DECLARATION OF MICHAEL A. PASKIN IN FURTHER SUPPORT OF THE REPUBLIC OF ARGENTINA'S MOTION, BY ORDER TO SHOW CAUSE, TO VACATE THE INJUNCTIONS ISSUED ON NOVEMBER 21, 2012, AND OCTOBER 30, 2015**

FFI FUND, LTD. and FYI LTD.,

Plaintiffs,

- against -                                                  14 Civ. 8630 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,

Plaintiffs,

- against -                                                  09 Civ. 8757 (TPG)
                                                             09 Civ. 10620 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

AURELIUS OPPORTUNITIES FUND II, LLC and
AURELIUS CAPITAL MASTER, LTD.,

Plaintiffs,

- against -                                                  10 Civ. 1602 (TPG)
                                                             10 Civ. 3507 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

AURELIUS CAPITAL MASTER, LTD. and
AURELIUS OPPORTUNITIES FUND II, LLC,

                                        Plaintiffs,

                    - against -

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

10 Civ. 3970 (TPG)
10 Civ. 8339 (TPG)

BLUE ANGEL CAPITAL I LLC,

                                        Plaintiff,

                    - against -

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

10 Civ. 4101 (TPG)
10 Civ. 4782 (TPG)

OLIFANT FUND, LTD.,

                                        Plaintiff,

                    - against -

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

10 Civ. 9587 (TPG)

PABLO ALBERTO VARELA, *et al.*,

                                        Plaintiffs,

                    - against -

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

10 Civ. 5338 (TPG)

PEREZ, *et al.*,

Plaintiffs,

- against -                                          14 Civ. 8242 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

AURELIUS CAPITAL PARTNERS, LP, *et al.*,

Plaintiffs,

- against -                                          14 Civ. 8946 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

BLUE ANGEL CAPITAL I LLC,

Plaintiff,

- against -                                          14 Civ. 8947 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

EM LTD.,

Plaintiff,

- against -                                          14 Civ. 8303 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

LIGHTWATER CORP. LTD.,

                                 Plaintiff,

                - against -                     14 Civ. 4092 (TPG)

THE REPUBLIC OF ARGENTINA,

                                 Defendant.

OLD CASTLE HOLDINGS, LTD.,

                                   Plaintiff,

                - against -                     14 Civ. 4091 (TPG)

THE REPUBLIC OF ARGENTINA,

                                 Defendant.

SETTIN,

                                   Plaintiff,

                - against -                     14 Civ. 8739 (TPG)

THE REPUBLIC OF ARGENTINA,

                                 Defendant.

CAPITAL VENTURES INTERNATIONAL,

                                   Plaintiff,

                - against -                     14 Civ. 7258 (TPG)

THE REPUBLIC OF ARGENTINA,

                                 Defendant.

ADAMI, *et al.*,

Plaintiffs,

- against -                                              14 Civ. 7739 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

CAPITAL MARKETS FINANCIAL SERVICES INC.,
*et al.*,

Plaintiffs,

- against -                                              15 Civ. 710 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

FOGLIA, *et al.*,

Plaintiffs,

- against -                                              14 Civ. 8243 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

PONS, *et al.*,

Plaintiffs,

- against -                                              13 Civ. 8887 (TPG)

THE REPUBLIC OF ARGENTINA,

Defendant.

GUIBELALDE, *et al.*,

                                          Plaintiffs,

            - against -                                    11 Civ. 4908 (TPG)

THE REPUBLIC OF ARGENTINA,

                                          Defendant.

DORRA, *et al.*,

                                          Plaintiffs,

            - against -                                    14 Civ. 10141 (TPG)

THE REPUBLIC OF ARGENTINA,

                                          Defendant.

BELOQUI, *et al.*,

                                          Plaintiffs,

            - against -                                    14 Civ. 5963 (TPG)

THE REPUBLIC OF ARGENTINA,

                                          Defendant.

TORTUS CAPITAL MASTER FUND, LP,

                                          Plaintiff,

            - against -                                    14 Civ. 1109 (TPG)

THE REPUBLIC OF ARGENTINA,

                                          Defendant.

TORTUS CAPITAL MASTER FUND, LP,

                         Plaintiff,

           - against -                         14 Civ. 3127 (TPG)

THE REPUBLIC OF ARGENTINA,

                         Defendant.

TRINITY INVESTMENTS LIMITED,

                         Plaintiff,

           - against -                      14 Civ. 10016 (TPG)

THE REPUBLIC OF ARGENTINA,

                         Defendant.

MONTREUX PARTNERS, L.P.,

                         Plaintiff,

           - against -                      14 Civ. 7171 (TPG)

THE REPUBLIC OF ARGENTINA,

                         Defendant.

LOS ANGELES CAPITAL,

                         Plaintiff,

           - against -                      14 Civ. 7169 (TPG)

THE REPUBLIC OF ARGENTINA,

                         Defendant.

CORDOBA CAPITAL,

|                          |                    |
|--------------------------|--------------------|
|                  Plaintiff, |                 |
|        - against -       | 14 Civ. 7164 (TPG) |
| THE REPUBLIC OF ARGENTINA, |                  |
|                  Defendant. |                 |

WILTON CAPITAL, LTD.,

|                          |                    |
|--------------------------|--------------------|
|                  Plaintiff, |                 |
|        - against -       | 14 Civ. 7166 (TPG) |
| THE REPUBLIC OF ARGENTINA, |                  |
|                  Defendant. |                 |

MCHA HOLDINGS, LLC,

|                          |                    |
|--------------------------|--------------------|
|                  Plaintiff, |                 |
|        - against -       | 14 Civ. 7637 (TPG) |
| THE REPUBLIC OF ARGENTINA, |                  |
|                  Defendant. |                 |

MCHA HOLDINGS, LLC,

|                          |                     |
|--------------------------|---------------------|
|                  Plaintiff, |                  |
|        - against -       | 14 Civ. 10064 (TPG) |
| THE REPUBLIC OF ARGENTINA, |                   |
|                  Defendant. |                  |

ANDRAREX LTD.,

|                               |                      |
|-------------------------------|----------------------|
|                     Plaintiff,|                      |
|           - against -         | 14 Civ. 9093 (TPG)   |
| THE REPUBLIC OF ARGENTINA,    |                      |
|                    Defendant. |                      |

CLARIDAE, *et al.*,

|                               |                      |
|-------------------------------|----------------------|
|                    Plaintiffs,|                      |
|           - against -         | 14 Civ. 10201 (TPG)  |
| THE REPUBLIC OF ARGENTINA,    |                      |
|                    Defendant. |                      |

ARAG-A LIMITED, *et al.*,

|                               |                      |
|-------------------------------|----------------------|
|                    Plaintiffs,|                      |
|           - against -         | 14 Civ. 9855 (TPG)   |
| THE REPUBLIC OF ARGENTINA,    |                      |
|                    Defendant. |                      |

ATTESTOR MASTER VALUE FUND LP,

|                               |                      |
|-------------------------------|----------------------|
|                     Plaintiff,|                      |
|           - against -         | 14 Civ. 5849 (TPG)   |
| THE REPUBLIC OF ARGENTINA,    |                      |
|                    Defendant. |                      |

ANGULO, *et al.*,

                                                                   Plaintiffs,

                           - against -                                                 15 Civ. 1470 (TPG)

THE REPUBLIC OF ARGENTINA,

                                                                   Defendant.

---

LAMBERTINI, *et al.*,

                                                                   Plaintiffs,

                           - against -                                                 15 Civ. 1471 (TPG)

THE REPUBLIC OF ARGENTINA,

                                                                   Defendant.

---

HONERO FUND I, LLC,

                                                                   Plaintiff,

                           - against -                                                 15 Civ. 1553 (TPG)

THE REPUBLIC OF ARGENTINA,

                                                                   Defendant.

---

TRINITY INVESTMENTS LIMITED,

                                                                   Plaintiff,

                           - against -                                                 15 Civ. 1588 (TPG)

THE REPUBLIC OF ARGENTINA,

                                                                   Defendant.

BANCA ARNER S.A., *et al.*,

Plaintiffs,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

15 Civ. 1508 (TPG)

TRINITY INVESTMENTS LIMITED,

Plaintiff,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

15 Civ. 2611 (TPG)

TRINITY INVESTMENTS LIMITED,

Plaintiff,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

15 Civ. 5886 (TPG)

MCHA HOLDINGS, LLC,

Plaintiff,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

15 Civ. 2577 (TPG)

MCHA HOLDINGS, LLC,

                                        Plaintiff,

                    - against -                              15 Civ. 5190 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

ERCOLANI, *et al.*,

                                        Plaintiffs,

                    - against -                              15 Civ. 4654 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

FAZZOLARI, *et al.*,

                                        Plaintiffs,

                    - against -                              15 Civ. 3523 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

STONEHILL INSTITUTIONAL PARTNERS, L.P.,
*et al.*,

                                        Plaintiffs,

                    - against -                              15 Civ. 4284 (TPG)

THE REPUBLIC OF ARGENTINA,

                                        Defendant.

WHITE HAWTHORNE, LLC,

                                             Plaintiff,

                 - against -                                    15 Civ. 4767 (TPG)

THE REPUBLIC OF ARGENTINA,

                                             Defendant.

---

VR GLOBAL PARTNERS, LP,

                                             Plaintiff,

                 - against -                                    11 Civ. 8817 (TPG)

THE REPUBLIC OF ARGENTINA,

                                             Defendant.

---

HONERO FUND I, LLC,

                                             Plaintiff,

                 - against -                                    15 Civ. 6702 (TPG)

THE REPUBLIC OF ARGENTINA,

                                             Defendant.

---

PROCELLA HOLDINGS, L.P.,

                                             Plaintiff,

                 - against -                                    15 Civ. 3932 (TPG)

THE REPUBLIC OF ARGENTINA,

                                             Defendant.

BYBROOK CAPITAL MASTER FUND LP, *et al.*,

Plaintiffs,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

15 Civ. 7367 (TPG)

BYBROOK CAPITAL MASTER FUND LP, *et al.*,

Plaintiffs,

- against -

THE REPUBLIC OF ARGENTINA,

Defendant.

15 Civ. 2369 (TPG)

## THIRD SUPPLEMENTAL DECLARATION OF MICHAEL A. PASKIN IN FURTHER SUPPORT OF THE REPUBLIC OF ARGENTINA'S MOTION, BY ORDER TO SHOW CAUSE, TO VACATE THE INJUNCTIONS ISSUED ON NOVEMBER 21, 2012, AND OCTOBER 30, 2015

Michael A. Paskin hereby declares as follows:

1.      I am a member of the Bar of this Court and a partner at the law firm of Cravath, Swaine & Moore LLP, counsel to defendant the Republic of Argentina (the "Republic") in the above-captioned actions.

2.      I make this Declaration in further support of the Republic of Argentina's Motion, by Order to Show Cause, to Vacate the Injunctions Issued on November 21, 2012, and October 30, 2015.

3.      Attached as Exhibit A is a true and correct copy of the Declaration of Mark L. Kalish in Support of Defendant the Republic of Argentina's Motion for an

1

Indicative Ruling that the Court Would Grant Relief from the *Pari Passu* Injunction,

executed on February 17, 2016, and filed in the actions docketed at 08 Civ. 6978 (TPG),

08 Civ. 1707 (TPG), 09 Civ. 1708 (TPG), 14 Civ. 4092 (TPG) and 14 Civ. 4091 (TPG).

        4.      Attached as Exhibit B is a true and correct copy of a letter on

behalf of certain Euro Bondholders, filed on February 19, 2016, in the action docketed at

08 Civ. 6978 (TPG).

        5.      Attached as Exhibit C is a true and correct copy of the Statement

of Daniel A. Pollack, Special Master in Argentina Debt Litigation, dated February 22,

2016.

        6.      Attached as Exhibit D is a true and correct copy of the Statement

of Daniel A. Pollack, Special Master in Argentina Debt Litigation, dated February 24,

2016.

        7.      Attached as Exhibit E is a true and correct copy of the Statement of

Daniel A. Pollack, Special Master in Argentina Debt Litigation, dated February 29, 2016.

        I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 29, 2016.

Michael A. Paskin

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
NML CAPITAL, LTD.,

                Plaintiff,

                              08 Civ. 6978 (TPG)
                              08 Civ. 1707 (TPG)
                              09 Civ. 1708 (TPG)

      -against-

THE REPUBLIC OF ARGENTINA,

                Defendant.
------------------------------------------------------x
LIGHTWATER CORPORATION LIMITED,

                          14 CV 4092 (TPG)

                Plaintiff,

      -against-

THE REPUBLIC OF ARGENTINA,


                Defendant.
------------------------------------------------------x
OLD CASTLE HOLDINGS, LTD.,

                          14 CV 4091 (TPG)

                Plaintiff,

      -against-

THE REPUBLIC OF ARGENTINA,

                Defendant.
------------------------------------------------------x

          DECLARATION IN SUPPORT OF DEFENDANT THE
          REPUBLIC OF ARGENTINA'S MOTION FOR AN
          INDICITIVE RULING THAT THE COURT WOULD
          GRANT RELIEF FROM THE PARI PASSU INJUNCTION


        Mark L. Kalish declares as follows pursuant to 28 U.S.C. 1746(2):

1.   I am a partner with the law firm of Moss & Kalish, PLLC, attorneys for plaintiffs Lightwater Corporation Limited ("Lightwater") and Old Castle Holdings, Ltd. ("Old Castle") in the second and third above captioned actions.

2.   I make this Declaration in support of and to join in and adopt the Memorandum of Law filed by plaintiffs, EM Ltd and Montreau Partners L.P. (the "Settling Plaintiffs") . The Memorandum of Law supports the application of the Republic for an Indicative Ruling.

3.   Attached to this Declaration as Exhibit A is a true and correct copy of the judgment entered in favor of Lightwater in Lightwater Corporation Limited v. The Republic of Argentina, 02 Civ. 3804 on May 27, 2003.

4. Attached to this Declaration as Exhibit B is a true and correct copy of the judgment entered in favor of Old Castle in Old Castle Holdings, Ltd. v. The Republic of Argentina, 02 Civ. 3808 on May 27, 2003.

5. Plaintiffs in these two actions have settled with the Republic.

6. I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 17, 2016
New York, New York

MARK L. KALISH

# EXHIBIT A

DOC #

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x

LIGHTWATER CORPORATION LIMITED,      :

                 Plaintiff,      :      02 Civ. 3804 (TPG)

       - against -      :      **JUDGMENT**

THE REPUBLIC OF ARGENTINA,      :      #03/1099

              Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff, Lightwater Corporation Limited, having moved for
summary judgment, and the matter having come before the Honorable Thomas
P. Griesa, United States District Court, and the Court, on April 14, 2003,
having rendered its opinion (88369) granting plaintiff's motion for summary
judgment and directing that judgment will be entered for the principal amount
of the bonds purchased by plaintiff plus accrued interest, and the Clerk having
filed a judgment dated April 16, 2003 (the "April 16, 2003 judgment"); and the
Court having issued a Memorandum Order dated May 7, 2003 directing that
the April 16, 2003 judgment "should be replaced" and that the amended
judgment should "cover all principal and interest due and unpaid, and
prejudgment interest on the unpaid amounts";

      NOW, on motion of Moss & Kalish, PLLC, attorney for plaintiff, it is
hereby

ORDERED, ADJUDGED AND DECREED as follows:

1.    This Court's Judgment entered on April 16, 2003 be and the same hereby is deemed void and of no force and effect.

2.    Plaintiff, Lightwater Corporation Limited, a corporation organized and existing under the laws of the Bahamas with its principal place of business in Nassau, Bahamas, shall recover of the defendant, The Republic of Argentina, the sum of $7,000,000 along with interest due and owing on the bonds in the amount of $1,194,375, for a total amount due and owing on the bonds of $8,194,375, along with prejudgment interest from March 16, 2003 through May 28, 2003 in the amount of $159,250.

3.    Plaintiff, Lightwater Corporation Limited, shall recover from the defendant, The Republic of Argentina, the total sum of $8,353,625.

Dated:    New York, New York
          May 27, 2003

ENTER:

_Thomas P. Griesa_
United States District Judge

_S. Michel McMahon_
Clerk of the Court

By: _____
Deputy Clerk

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON

# EXHIBIT B

DOC # ___19___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - x

OLD CASTLE HOLDINGS, LTD.,      :

                    Plaintiff,      :      02 Civ. 3808 (TPG)

        - against -        :      **JUDGMENT**

THE REPUBLIC OF ARGENTINA,       :      # 03, 1098

                    Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff, Old Castle Holdings, Ltd., having moved for summary judgment, and the matter having come before the Honorable Thomas P. Griesa, United States District Court, and the Court, on April 14, 2003, having rendered its opinion (88369) granting plaintiff's motion for summary judgment and directing that judgment will be entered for the principal amount of the bonds purchased by plaintiff plus accrued interest, and the Clerk having filed a judgment dated April 16, 2003 (the "April 16, 2003 judgment"); and the Court having issued a Memorandum Order dated May 7, 2003 directing that the April 16, 2003 judgment "should be replaced" and that the amended judgment should "cover all principal and interest due and unpaid, and prejudgment interest on the unpaid amounts";

NOW, on motion of Moss & Kalish, PLLC, attorney for plaintiff, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1.   This Court's Judgment entered on April 16, 2003 be and the same hereby is deemed void and of no force and effect.

2.   Plaintiff, Old Castle Holdings, Ltd., a corporation organized and existing under the laws of the Bahamas with its principal place of business in Nassau, Bahamas, shall recover of the defendant, The Republic of Argentina, the sum of $700,000 along with interest due and owing on the bonds in the amount of $119,437.50, for a total amount due and owing on the bonds of $819,437.50, along with prejudgment interest from March 16, 2003 through May 28, 2003 in the amount of $15,925.

3.   Plaintiff, Old Castle Holdings, Ltd., shall recover from the defendant, The Republic of Argentina, the total sum of $835,362.50.

Dated:   New York, New York
         May 27, 2003

ENTER:

_____
United States District Judge

_____
Clerk of the Court

By: _____
Deputy Clerk

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 5/30/03

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------×
NML CAPITAL, LTD.,

           Plaintiff,

                           08 Civ. 6978 (TPG)
                           08 Civ. 1707 (TPG)
        -against-          09 Civ. 1708 (TPG)

THE REPUBLIC OF ARGENTINA,

           Defendant.
------------------------------------------------------×
LIGHTWATER CORPORATION LIMITED,
                           14 CV 4092 (TPG)

           Plaintiff,

        -against-

THE REPUBLIC OF ARGENTINA,

           Defendant.
------------------------------------------------------×
OLD CASTLE HOLDINGS, LTD.,
                           14 CV 4091 (TPG)

           Plaintiff,

         -against-

THE REPUBLIC OF ARGENTINA,

           Defendant.
------------------------------------------------------×

## <u>DECLARATION IN SUPPORT OF DEFENDANT THE REPUBLIC OF ARGENTINA'S MOTION FOR AN INDICITIVE RULING THAT THE COURT WOULD GRANT RELIEF FROM THE PARI PASSU INJUNCTION</u>

**MOSS & KALISH, PLLC**
**Attorneys for Plaintiffs Lightwater Corporation and**
**Old Castle Holdings, Ltd.**
**122 East 42nd Street, Suite 2100**
**New York, New York 10168**
**(212) 867-4488**

# Exhibit B

**Christopher J. Clark**
Direct Dial: 212.906.1350
Chris.Clark@lw.com

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Milan |
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New Jersey |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

February 19, 2016

<u>VIA ECF</u>

Hon. Thomas P. Griesa
United States District Court Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *NML Capital, Ltd. v. The Republic of Argentina*, No. 08-cv-6978 (TPG) and
related cases

Dear Judge Griesa:

I write on behalf of certain Euro Bondholders[1] in support of the motion by the Republic of Argentina (the "Republic"), by order to show cause (the "Motion"), to vacate the amended injunction issued on November 21, 2012 and extended on October 30, 2015 (the "Injunction") in the above-captioned actions. For the reasons set forth below, and in the Order to Show Cause entered by the Court on February 11, 2016, the Euro Bondholders believe that a vacatur at this time is necessary to facilitate the resolution of these disputes, and respectfully request that this Court exercise its discretion to grant such relief to help end the long-standing impasse between the Republic and the Plaintiffs and other holdout creditors ("Plaintiffs" or the "Holdout Bondholders").

The Euro Bondholders are third parties who, through no fault of their own, have been collaterally damaged by the Injunction. Previously holders of defaulted debt, the Euro Bondholders and other holders of Exchange Bonds participated in good faith in the exchanges (blessed by this Court) held by the Republic in 2005 and 2010 (the "Exchanges"), accepting new bonds ("Exchange Bonds") in return for their existing debt. In doing so, they took a substantial haircut on their investments so that the Republic could restructure its debt load and begin to rebuild its economy. Indeed, it is not an exaggeration to state that without the financial compromises of the holders of Exchange Bonds, the Republic would not be in a position today to pay the Holdout Bondholders. Regrettably, however, the Euro Bondholders' legitimately owed interest payments have become collateral damage in the dispute between the Republic and the Plaintiffs.

---

[1] The Euro Bondholders are a group of holders of a substantial amount of English law governed euro-denominated bonds ("Euro Bonds") issued by the Republic of Argentina (the "Republic") pursuant to 2005 and 2010 exchange offers.

LATHAM&WATKINS LLP

A.     The Entry and Unintended Effects of the Injunction

It is common ground that the Court entered the Injunction pursuant to its equitable powers, upon its assessment of "the equities and public interest[.]"  *See* Nov. 21, 2012 Injunction ¶ 1, Dkt. # 425.  Specifically, the Court found that the equities weighed in favor of the Injunction because:  (1) the Injunction was necessary to "restore[]" the Holdout Bondholders to their position relative to other creditors; (2) in passing the Lock Law, the Republic had "codified . . . its intention to defy" the Court's monetary judgments; (3) the Republic was in the process of conducting a "systematic scheme" of "repudiating its payment obligations to [Plaintiffs]"; and (4)  there was a lack of recourse available to the Plaintiffs.  *Id.*  At the time, the Republic's refusal to negotiate with the Holdout Bondholders was well-known, and in affirming the Injunction, the Second Circuit described the Republic as a "uniquely recalcitrant debtor."  *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 247 (2d Cir. 2013).

Although the Injunction was intended to be an equitable remedy specific to the unique circumstances of the Republic's defiance, in practice, it became something else entirely:  ammunition for Plaintiffs to use against any third party caught in the periphery of the dispute.  Consequently, the record of these proceedings is replete with examples of sweeping non-party subpoenas and threats to hold in contempt any third party that stood in the way of Plaintiffs' efforts to pressure the Republic.  Regardless of the leverage afforded to Plaintiffs through the Injunction, however, the Court consistently emphasized that the only way the dispute could be resolved was through an amicably negotiated settlement which took into account the interests of *all* relevant stakeholders—not just Plaintiffs' interests—and making clear that, "it was very, very important to try to arrive at a settlement, a settlement which would at long last *take into account the exchangers*, take into account the people who had the judgments, take into account all of the obligations of the republic."[2]  July 30, 2014 Hr'g Tr. at 47:5-9, Dkt. # 619 (emphasis added).[3]  However, against the Republic's and the Holdout Creditors' initial refusal to negotiate such settlement—even with the help of the Court-appointed Special Master Daniel Pollack—the dispute remained at an impasse.  As a result of this deadlock, the Euro Bondholders—along with the remaining 93% of bondholders who participated in the Exchanges in good faith—continued to receive no payments on their Exchange Bonds.

The inauguration of a new administration in the Republic has changed the tenor of these proceedings considerably.  As the Court is aware, the Republic's newly appointed officials have diligently worked with Special Master Pollack and Plaintiffs' representatives in an effort to advance a settlement.  These efforts are bearing fruit: since the Republic's settlement offer was announced on February 5, multiple Plaintiffs (the "Settling Plaintiffs") have agreed to settle their claims—including two of the largest Holdout Bondholders, Dart Management Inc. and Montreux Partners.  While the terms of such settlement offers vary, they all entail the cash payment in full of all of the

---

[2]     The Court has not wavered on this point; as late as October 28, 2015, the Court emphasized that "the way to ultimately resolve this litigation must come through settlement."  Oct. 28, 2015 Hr'g Tr. at 29:4-6, *NML Capital, Ltd. v. The Republic of Arg.*, 14-cv-8601 (TPG).

[3]     All docket references are to *NML Capital Ltd. v. The Republic of Arg.*, 08-cv-6978 (TPG), unless otherwise indicated.

LATHAM&WATKINS LLP

Holdout Bondholders' principal claims. A number of Settling Plaintiffs have also filed submissions in support of the Republic's Motion, which make clear that vacatur of the Injunction is required for the Republic to obtain the legislative approval required to effect the settlements reached with the Settling Plaintiffs—in other words, the continued operation of the Injunction is now a roadblock to those settlements. *See* Republic of Arg. Reply Mem. of Law (Feb. 19, 2016) at 4-5, Dkt. # 881; Paskin Letter (Feb. 12, 2016), Dkt. # 869; Paskin Letter (Feb. 19, 2016), Dkt. # 882.

Nevertheless, and despite the evidenced willingness of multiple Holdout Bondholders to help resolve this dispute, several Plaintiffs led by affiliates of NML Capital, Ltd. and Aurelius Capital Master Fund, Ltd. (the "NML Plaintiffs") formally oppose vacatur, and several Plaintiffs led by ARAG-A Limited (the "Intervenors") have sought to intervene for the purposes of opposing vacatur. As discussed below, their arguments leave no doubt that those Plaintiffs' goal is *not* to engage in good-faith negotiations, but to cling to the leverage afforded to them by the Injunction in order to squeeze more value out of the Republic.

## B. The Equities No Longer Weigh in Favor of the Injunction

The Euro Bondholders fully agree with the arguments advanced by the Republic in its Motion and in the submissions of the Settling Plaintiffs in support of that motion. It is beyond dispute that the Republic's position has shifted dramatically since the Injunction was issued: its official settlement proposal to the Holdout Bondholders and the settlement with two of the largest Holdout Bondholders are clear evidence that the circumstances that led to the Injunction no longer exist. Republic's Mem. of Law in Supp. of Order to Show Cause at 13-14, Dkt. # 863. It is also beyond dispute that the Injunction is now an active impediment to settlement, in that it prevents the Republic from accessing the global capital markets—access that is critical for the Republic to raise the capital necessary to satisfy the Holdout Bondholders' demands. *Id.* at 14-15.[4] The NML Plaintiffs are simply wrong—this turn of events, after 16 years of vocal unwillingness to negotiate—clearly constitutes "a significant change in the . . . facts" sufficient to support vacatur. *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F. 2d 253, 256 (2d Cir. 1984).

The Euro Bondholders write separately, however, to emphasize that the equities no longer support the continuing existence of the Injunction due to its unique punitive effect on non-parties to the litigation, particularly non-parties who, like the Euro Bondholders, have committed no wrongdoing. While the Injunction was originally entered to protect the contractual rights of the Plaintiffs, its sole effect now is to interfere with the contractual rights of non-parties. Since the Injunction was first entered, the Second Circuit has expressed "concerns about the Injunctions' application to third parties," and accordingly remanded the case to this Court "to more precisely determine the third parties to which" it applied so that the Court of Appeals could decide whether "application to them [was] reasonable." *NML Capital v. Republic of Arg.*, 699 F.3d 246, 264 (2d

---

[4]    The Intervenors claim that the Republic should not be allowed to raise capital at all, and that the Injunction should be left in place to prevent the Republic from doing so. Intervenors' Opp'n Mem. of Law, Dkt. # 873-2 at 5, 14. Although we trust the Republic is capable of refuting this claim on a factual basis, the notion that a "global settlement" can be effected without access to capital is self-evidently absurd. *Money* is the so-called "fuel" for a settlement, not the lack thereof.

LATHAM&WATKINS LLP

Cir. 2012). Even if the effect of the Injunction on third parties were at some point reasonable, that is no longer the case. Under these circumstances, equity now requires that the innocent participants in the Exchanges receive the payments to which they are contractually entitled.

That the holders of Exchange Bonds ("Exchange Bondholders") deserve to be paid has never been seriously disputed or contested by any party to these litigations. This Court has acknowledged it on several occasions. For example, on August 1, 2014, the Court expressed its belief that "[i]t is important to get the people who are owed interest on their exchange bonds, get them paid." Aug. 1, 2014 Hr'g Tr. at 12:15-12:16, Dkt. # 637. A few days later, during an August 8, 2014 hearing, the Court again reiterated that "[t]he Republic surely has obligations to [parties who exchanged their bonds], without any doubt." Aug. 8, 2014 Hr'g Tr. at 4:14-5:2, Dkt. # 646. When first introducing the Special Master to the parties, the Court likewise emphasized the Republic's obligations to the Exchange Bondholders. July 22, 2014 Hr'g Tr. at 47:9, Dkt. # 619.

It is especially inequitable to allow the Injunction to continue to impede the rights of the Euro Bondholders to be paid on the bonds they own, given the substantial financial sacrifices that they and the other Exchange Bondholders made *before* the Injunction was entered, sacrifices that have inured not only to the benefit of the Republic but of the Plaintiffs as well. Indeed, the settlement of the Exchange Bondholders' claims against the Republic through the Exchange Offers, for fractions of their then-current and potential future value, is the very reason why the Republic's considerably more lucrative settlement offer to the Holdout Bondholders is even possible. After its default and economic collapse, the Republic could not possibly have raised adequate capital to satisfy the full amount owed to all holders of defaulted debt issued pursuant to the 1994 Fiscal Agency Agreement. Only because 93% of the bondholders voluntarily accepted significant haircuts on their holdings is it now possible for the Republic to settle in cash $6.5 billion worth of debt, at 100 cents on the dollar for all principal claims, with a haircut only on interest claims.

These sacrifices expose the opposition of the NML Plaintiffs in particular as hollow. The NML Plaintiffs complain that the Republic's current offer may constitute only 70 to 72.5% of some Holdout Creditors' Claims. NML Opp'n Mem. of Law, Dkt. No. # 874 at 14. This offer is astronomically generous compared to the pennies on the dollar that the Euro Bondholders accepted years ago. Yet, the NML Plaintiffs use it as justification to maintain the Injunction in place and deprive *the Euro Bondholders* from any amounts to which they are entitled. Nothing could be more inequitable. The NML Plaintiffs also complain that the Republic's offer "divides [the Republic's] creditors" into groups and "advantages some bondholders" in comparison to others, *id.*—ignoring that the continued operation of the Injunction has already divided the Republic's creditors—all of whom are aggrieved—into those who hold disproportionate negotiating leverage and those who hold none. Again, it would be manifestly inequitable to maintain the Injunction in order to preserve the NML Plaintiffs' disproportionate negotiating leverage at the expense of innocent third parties.

The NML Plaintiffs further argue that the "judicial power does not exist to impose pressure tactics designed to coerce a settlement." *Id.* at 20 (citing *In re A.T. Reynolds & Sons, Inc.*, 452 B.R. 374, 382 (S.D.N.Y. 2011) (internal quotation mark omitted). The Euro Bondholders agree with the NML Plaintiffs on this particular point—and because the NML Plaintiffs have been using the Injunction for just that end, the Injunction is demonstrably inequitable, particularly now that

LATHAM&WATKINS LLP

circumstances of the dispute have changed dramatically. It is now incumbent on the remaining Holdout Bondholders to compromise on their demands, just as the Euro Bondholders have compromised on their legal rights, over and over again, in the interest of resolving this interminable and complex dispute. If the Holdout Bondholders continue to resist negotiation, the blame for their recalcitrance can no longer be laid at the foot of the Republic. Nor can a disproportionate—and undeserved—share of the penalty continue to be borne by the Euro Bondholders.[5]

Finally, the Euro Bondholders' long-standing and well-known support for a negotiated settlement between the Republic and the Holdout Bondholders further demonstrates the injustice of continuing to hold their contractual rights hostage while the NML Plaintiffs attempt to extract a more lucrative deal from the Republic—a process that could continue for months or years. All along, the Euro Bondholders have seen eye-to-eye with the Court and with Special Master Pollack in recognizing that the only possible resolution to this litigation was a mutually agreeable settlement between the Holdout Creditors and the Republic, and have repeatedly emphasized on the record that they "strongly support a negotiated solution." July 22, 2014 Hr'g Tr. at 38:20-21, Dkt. # 619. The Court itself explicitly encouraged them to help foster a dialogue with Special Master Pollack,[6] who can attest to the ongoing and productive dialogue that has resulted, even when the parties themselves refused to meet with him. While it is ultimately incumbent on the Holdout Bondholders and the Republic to negotiate and effect a settlement to their disputes, the Euro Bondholders have proactively proposed solutions that they believed would help bring one or both sides to the bargaining table. For example, in July 2014, the Euro Bondholders worked diligently, under the auspices of Special Master Pollack, to encourage other Exchange Bondholders to agree to waive the "Rights Upon Future Offers" clause in the Exchange Bonds, a provision the Republic had raised as a possible impediment to settlement. *See, e.g.*, Mar. 3, 2015 C. Clark Ltr., Dkt. # 754 n.3. On two occasions, the Euro Bondholders' counsel also wrote to the Court to request that it exercise its equitable powers to set a date certain after which Holdout Bondholders could no longer seek relief under the Injunction, in order to ensure that any settlement reached by the Republic would not unleash a torrent of as yet unknown claims. *Id.*; Mar 17, 2015 C. Clark Ltr., Dkt. #767. On May 28, 2015, the Euro Bondholders also encouraged the Court, again through counsel, to consider the proposal by several of the Holdout Bondholders to authorize a representative creditors' committee to facilitate settlement discussions. May 28, 2015 C. Clark Ltr., Dkt. # 785. Although neither the

---

[5] The Intervenors' proposed Opposition is so fantastic as to barely warrant mention. The Intervenors seek to keep the Injunction in place until the Republic has reached a "global settlement" with the Holdout Bondholders, and that the Injunction is necessary to prevent settling Holdout Bondholders from collecting on their settlements and to prevent the Republic from raising capital. Intervenors' Opp'n Mem. of Law, Dkt. # 873-2 at 4-5. A global settlement includes hundreds, if not thousands, of individual bondholders, not all of whom have necessary come forward, and whose claims could not possibly be valued with any sense of accuracy at this time. The Intervenors propose no mechanism to bring each to the table, or to satisfy them. They further do not propose how, if the Republic is unable to access capital markets, the Republic can pay for this mythical global settlement. In reality, the course of action suggested by the Intervenors' would not encourage settlement; it would foreclose any future possibility of settlement.

[6] In the July 30, 2014 Hearing, Your Honor remarked that "the special master had better get [the] name, address, and phone number" of counsel for the Euro Bondholders. *Id.* at 39:8-14.

LATHAM&WATKINS LLP

Court nor the parties ultimately adopted these measures, they demonstrate that the Euro Bondholders have spared no effort to work with the Court, the Special Master, and various stakeholders in the litigation to facilitate the settlement of these long-running dispute.

In light of the decade and a half of litigation in these cases, the developments of the last few months have been nothing but momentous. Special Master Pollack himself referred to them as "[a] happy day for everyone"[7]—words that perhaps could have never before been applied to this dispute. These developments portend a fundamental shift in the equities underlying the Injunction. It is no longer equitable to punish the Republic for refusing to come to the negotiating table in good faith. It would no longer be equitable to reward the Holdout Bondholders with the leverage inherent to the Injunction if now *they* are the ones that refuse to compromise. And it is fundamentally inequitable to continue to punish the Euro Bondholders by blocking the monies to which everyone agrees they are entitled.

\*     \*     \*

As set forth above, it is common ground between the Republic, the Settling Plaintiffs, and the Euro Bondholders alike that vacatur is critical *both* to effecting the Republic's settlement with any Settling Plaintiffs, and allowing it to comply with its undisputed contractual obligations to pay innocent third parties such as the Euro Bondholders. In those circumstances, it would be manifestly unjust to maintain the operation of the Injunction and allow non-settling Holdout Bondholders to block the global resolution of these disputes, contrary to the efforts of the Court, the Special Master, and multiple differently-situated stakeholders in the litigation. Therefore, the Euro Bondholders respectfully submit that the balance of equities requires the Court to lift the Injunction and grant the Euro Bondholders reprieve after years of impasse that has deprived them of the payments which they are rightfully owed.

Sincerely,

 /s/ Christopher J. Clark

Christopher J. Clark
of LATHAM & WATKINS LLP

cc:     Counsel of Record (via ECF)

---

[7]     *See* Daniel Bases & Sarah Marsh, ARGENTINA OFFERS $6.5 BILLION CASH DEAL TO END DEBT BATTLE, Reuters (Feb 5, 2016), http://www.reuters.com/article/us-argentina-debt-idUSKCN0VE2L4.

# Exhibit C

# Statement Of Daniel A. Pollack, Special Master In Argentina Debt Litigation, Feb. 22, 2016

 ()

NEW YORK, Feb. 22, 2016 /PRNewswire/ -- Daniel A. Pollack, Special Master presiding over settlement negotiations between the Republic of Argentina and its "holdout" Bondholders issued the following statement today:

As Special Master, I am pleased to report that Agreements in Principle have now been reached by the Republic of Argentina with five other Bondholders for a total amount of approximately $250 million plus 185 million Euros. These Bondholders include Lightwater Corp, Old Castle Holdings, VR Capital, Procella Holdings and Capital Ventures International.  I am continuing to work with the Republic of Argentina and all interested Bondholders to help them arrive at Agreements in Principle.  These Agreements in Principle, like all others, are subject to two conditions: first, the lifting of the Lock Law and the Sovereign Payment Law, and second, the lifting of the Injunction by Judge Griesa.  These Agreements in Principle are all within the framework of the February 5 Proposal issued by the Republic of Argentina, available to all Bondholders.  I will have no further comment on this tonight.

SOURCE Daniel A. Pollack

# Exhibit D

 (http://www.prnewswire.com/)



# Statement of Daniel A. Pollack, special master in Argentina bonds matter, Feb. 24, 2016 (2:15 p.m., EST)

NEW YORK, Feb. 24, 2016 /PRNewswire/ -- Daniel A. Pollack, Special Master presiding over the settlement negotiations between the Republic of Argentina and its Bondholders, issued the following statement today at 2:15 p.m., EST:

"A lawyer for certain 'holdout' Bondholders made a statement in court this morning to the effect that Argentina and NML had reached an Agreement in Principle on economic terms. That statement violated the confidentiality of the discussions between the parties, which is an inviolable principle of all negotiations through me as Special Master.  If and when there is a signed Agreement in Principle reached between those or any other parties, I will announce it as Special Master."

SOURCE Daniel A. Pollack

**Find this article at:**
http://www.prnewswire.com/news-releases/statement-of-daniel-a-pollack-special-master-in-argentina-bonds-matter-feb-24-2016-215-pm-est-300225624.html

☐ Check the box to include the list of links referenced in the article.

# Exhibit E

# Special Master Announces Settlement Of 15-Year Battle Between Argentina And "Holdout" Hedge Funds

 ()

NEW YORK, Feb. 29, 2016 /PRNewswire/ -- Daniel A. Pollack, Special Master appointed to preside over settlement negotiations between the Republic of Argentina and its "Holdout" Bondholders, this morning issued the following statement:

"It gives me greatest pleasure to announce that the 15-year pitched battle between the Republic of Argentina and Elliott Management, led by Paul E. Singer, is now well on its way to being resolved.  The parties last night signed an Agreement in Principle after three months of intense, around-the-clock negotiations under my supervision.  The Agreement in Principle, if consummated, will pay NML Capital Ltd, the fund managed by Elliott, and several other funds of other managers who had sued alongside NML, the aggregate sum of approximately $4.653 billion dollars to settle all claims, both in the Southern District of New York and world-wide. This is a giant step forward in this long-running litigation, but not the final step.  The Agreement in Principle is subject to approval by the Congress of Argentina and, specifically, the lifting of the Lock Law and the Sovereign Payment Law, enacted under an earlier Administration and which would bar such settlements.  Thereafter, Argentina contemplates a capital-raise in the global financial markets, which would be used to fund the payments.  The four "holdout" Bondholders who are signatories to this Agreement in Principle,have agreed not to attempt to attach or otherwise interfere with that capital-raise. Upon payment, the Injunctions entered several years ago against Argentina by Judge Thomas P. Griesa would automatically dissolve if Judge Griesa's Indicative Ruling of February 19 is converted into a final Order vacating the Injunctions. The parties have agreed to take all steps necessary to cooperate with me in my capacity as Special Master and with each other to effect a consummation of the Agreement in Principle and a termination of the litigation.  It is hoped by the parties that all necessary steps can be taken in a period of six weeks.  The Agreement in Principle, if consummated, will pay the Funds managed by Elliott Management, Aurelius Capital, Davidson Kempner and Bracebridge Capital, 75% of their full judgments including principal and  interest, plus a payment to settle claims outside the Southern District of New York  and certain legal fees and expenses incurred by them over a 15-year period.

There are many people who have devoted untold hours or special talents, or both, to making this settlement possible.  Foremost among them is Hon. Thomas P. Griesa, the Federal Judge who presided over all cases in re Argentina Debt Litigation for 15 years.  Others entitled to greatest credit are President Mauricio Macri of Argentina, who immediately upon his election in November,  set about to change the negative course that the Republic had steered in this litigation, and his Secretary of Finance Luis Caputo, who led the delegation that met with me in my capacity as Special Master and with the "holdout" Bondholders for countless hours, with patience, good will and intelligence.  He was ably assisted by Santiago Bausili, Under  Secretary of Finance. Also  involved as important decision-makers for Argentina were: Alfonso Prat-Gay, Minister of the Economy, and Marcos Pena and Mario Quintana, the Chief and Vice Chief of the Cabinet.  Their course-correction for Argentina was nothing short of heroic. On the "holdout" hedge fund side, Paul E. Singer was the central figure who involved himself intensely with me over the past several weeks on behalf of the "holdout " Bondholders.  He was a tough but fair negotiator.  His second-in-command, Jon Pollock, also made a key contribution to the success of the negotiations.  All of the senior principals of the "holdout" hedge funds demonstrated vast talent.  No party to a settlement  gets everything it seeks.  A settlement is, by definition, a compromise and, fortunately, both sides to this epic dispute finally saw the need to compromise, and have done so.

This settlement, if consummated, together with prior Agreements in Principle with other "holdout" Bondholders, resolves over 85% of the claims of those with "pari passu" and "me-too" Injunctions.  I will continue to serve, at the pleasure of Judge Griesa, until all claims are resolved, both with respect to the consummation of this central Agreement in Principle and to facilitate settlement with all other "holdout" Bondholders who wish to resolve their claims with Argentina.  In short, I will continue to help the willing find solutions.

Daniel A. Pollack (in my capacity as Special Master)

SOURCE Daniel A. Pollack