# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EM LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> Defendant. | No. 14 Civ. 8303 (TPG) |
| MONTREUX PARTNERS, L.P., <br><br> Plaintiff, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> Defendant. | No. 14 Civ. 7171 (TPG) |
| LOS ANGELES CAPITAL, <br><br> Plaintiff, <br><br> v. <br><br> THE REPUBLIC OF ARGENTINA, <br><br> Defendant. | No. 14 Civ. 7169 (TPG) |

| | |
|---|---|
| CORDOBA CAPITAL,<br><br>                            Plaintiff,<br><br>      v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                            Defendant. | No. 14 Civ. 7164 (TPG) |
| WILTON CAPITAL, LTD.,<br><br>                            Plaintiff,<br><br>      v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>                            Defendant. | No. 14 Civ. 7166 (TPG) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
THE REPUBLIC OF ARGENTINA'S MOTION FOR THE ENTRY OF FINAL
ORDERS CONDITIONALLY LIFTING THE *PARI PASSU* INJUNCTIONS**

As this Court is aware, plaintiffs EM Ltd. and Montreux[1] have, after arm's length negotiations, signed agreements in principle with Argentina to settle claims exceeding $1 billion in aggregate. Those agreements were filed as a matter of public record and are on the same economic terms that Argentina has since offered to all bondholders, terms that many more bondholders have now accepted. EM and Montreux respectfully submit that the Court should now enter a final order conditionally lifting the *pari passu* injunctions that stand in the way of consummating those and any future settlements. The Court's

---

[1] Montreux Partners, L.P., Los Angeles Capital, Cordoba Capital, and Wilton Capital, Ltd.

1

indicative ruling correctly determined, after extensive briefing and evidentiary submissions, that maintaining the injunctions in place would be inequitable and would disserve the public interest.[2] No new facts have emerged since then to cause the Court to reexamine its ruling. To the contrary, all the facts that have come to light since this Court's indicative ruling of February 19, 2016 provide further support for entry of a final order conditionally lifting the injunctions.

**1.** As the Court correctly determined, the injunctions have now served their purpose of encouraging a negotiated resolution of this longstanding litigation. Reversing years of obstinacy under former President Kirchner, the newly elected administration of President Macri immediately sent a senior delegation to New York to negotiate with bondholders, reaching agreements with EM and Montreux in early February. At present, Argentina continues to engage in settlement talks in earnest. No plaintiff could seriously dispute the Court's finding that President Macri's election has resulted in a dramatic change of circumstances.

Contrary to the unsupported allegations of certain bondholders, there is no "cram down" afoot.[3] Argentina has nowhere presented its proposals as "take it or leave it," as was the practice of the prior administration. Instead, bondholders remain free to enter into consensual resolutions on such terms as they may negotiate with Argentina. Thus, as

---

[2] Indicative Ruling, *EM Ltd. v. Argentina*, No. 14 Civ. 8303 (TPG) (S.D.N.Y. Feb. 19, 2016) (ECF No. 49) (the "Indicative Ruling"). For ease of reference, all docket citations are to *EM Ltd. v. Argentina*, No. 14 Civ. 8303 (TPG) unless otherwise noted.

[3] *E.g.*, Letter from P. Sabin Willet, *NML Capital v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Feb. 26, 2016) (ECF No. 892) (referred to herein as the "Willet Letter").

of the date of this filing and beyond the roughly $1 billion settlements with EM and Montreux, Argentina has also reached settlement agreements with at least ten additional bondholders with claims exceeding $6 billion in aggregate, as well as with the *Brecher* class plaintiffs on a 'claims made' basis, representing the majority of the outstanding claims against Argentina.

Given the undisputed progress made toward resolution of these long-running disputes—which was always the point of the injunctions (*see* Indicative Ruling at *21-23)—the injunctions have plainly served their purpose. The changed circumstances are also reflected by Argentina's recent decision to voluntarily dismiss with prejudice two appeals it was pursuing in the Second Circuit to overturn this Court's rulings relating to the *pari passu* injunctions. Argentina's acceptance of the Court's authority to issue broad injunctive relief stands in stark contrast to the prior regime's open defiance of the Court's orders, and strongly supports lifting the injunctions on the conditions set forth in the Court's indicative ruling.[4]

**2.** In light of the changed circumstances, the Court was also entirely correct in ruling that maintaining the injunctions in place would be "inequitable and detrimental to the public interest." Indicative Ruling, at 13. Again, there can be no dispute that the injunctions now stand in the way of consummating settlements between Argentina and EM, Montreux, and others—nor can anyone contest that they inflict immeasurable daily

---

[4] Notably, Argentina dismissed with prejudice its appeal of the Court's ruling that the *pari passu* injunctions are binding on third parties involved in the payment chain. This feature of the *pari passu* injunctions, the enforceability of which is now conceded by Argentina, ensures the efficacy of any future injunctive relief ordered by the Court should circumstances again change. *NML Capital Ltd. v. Republic of Argentina*, No. 15-3675-cv (L) (2d Cir. Feb. 24, 2016) (ECF No. 120).

harm upon third parties not before this Court, including, most notably, the people of Argentina and exchange bondholders.

In comparison, the desire of a minority of "hold out" bondholders to increase their leverage over Argentina while holding the settling plaintiffs' deals hostage does not justify maintaining the injunctions in place. For example, counsel for certain foreign bondholders make the curious argument that the injunctions should not be lifted because the injunctions would permit them to press Argentina for payment of claims barred by the statute of limitations. Willet Letter, at 2. The desire of a few plaintiffs for additional leverage while they seek to extract further concessions from Argentina, some going so far as to try to squeeze out payment for time-barred claims, hardly counts as a legitimate basis for continuing to deny Argentina access to the international capital markets, holding up payments to exchange bondholders, or interfering with Argentina's settlements with EM, Montreux, and other bondholders.

There is also no substance to objectors' speculation, aired at oral argument in the Second Circuit, that if the injunctions are vacated, this Court would be unable to fashion an effective remedy should Argentina revert to its old ways. As an initial matter, nothing is immediate. The injunctions will be vacated only if and when the Lock Law is repealed and the settlements are paid. Should Argentina take steps in a different direction, the Court may reconsider. And even after the injunctions lift, Argentina will still be bound by its contractual obligations, and the objectors will continue to have the ability to enforce them in this Court. Were this Court to issue new injunctions, the repercussions for Argentina would be swift and severe. Argentina's access to the international credit markets would again be cut off, at great economic cost to the Argentine people and

political cost to their new government. The objecting plaintiffs offer no grounds to suggest otherwise.

**3.** Any delay in issuing an order conditionally lifting the injunctions will result in substantial prejudice to EM, Montreux, and other parties that have already reached settlement agreements. EM and Montreux negotiated and agreed to settlement agreements with Argentina in early February. Under the terms of those agreements, neither will obtain their settlement payments—resolving years of litigation—until the injunctions are conditionally lifted, nor will those payments accrue additional interest until payment is made. *See* Supplemental Declaration of Michael A. Paskin, ECF No. 45, attaching agreements in principle between Argentina and Montreux and Argentina and EM. It would be inequitable to allow "hold out" plaintiffs to delay for the sole purpose of enhancing their own negotiating positions to the detriment of EM and Montreux, the first two parties to reach agreements with Argentina.

\*     \*     \*

In sum, there is no factual basis to dispute this Court's conclusion that, "[p]ut simply, President Macri's election changed everything." Indicative Ruling, at 13. EM and Montreux respectfully request that this Court issue a final ruling under Federal Rule of Civil Procedure 60(b) granting Argentina's motion to lift the *pari passu* injunctions, subject to the conditions set forth in the Court's indicative ruling.

5

Dated: New York, New York
February 29, 2016

                                                    Respectfully submitted,

| | |
|---|---|
| /s/ Richard Holwell | /s/ Michael Mukasey |
| Richard J. Holwell | Michael B. Mukasey |
| Michael S. Shuster | David W. Rivkin |
| Vincent Levy | William H. Taft V |
| Neil R. Lieberman | Debevoise & Plimpton LLP |
| Holwell Shuster & Goldberg LLP | 919 Third Avenue |
| 750 Seventh Avenue | New York, New York 10022 |
| New York, New York 10019 | (212) 909-6000 |
| (646) 837-5151 | whtaft@debevoise.com |
| rholwell@hsgllp.com | |
| | *Attorneys for Plaintiff EM Ltd.* |
| *Attorneys for Plaintiffs Montreux Partners, L.P., Los Angeles Capital, Cordoba Capital and Wilton Capital Ltd.* | |

6