Christopher J. Clark
Direct Dial: 212.906.1350
Chris.Clark@lw.com

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Milan |
| Barcelona | Moscow |
| Beijing | Munich |
| Boston | New Jersey |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

February 29, 2016

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/1/16

**VIA ECF**

Hon. Thomas P. Griesa
United States District Court Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re:** *NML Capital, Ltd. v. The Republic of Argentina*, No. 08-cv-6978 (TPG) and related cases

Dear Judge Griesa:

I write on behalf of certain Euro Bondholders[1] to respectfully request an opportunity to be heard regarding the letter motion (the "Motion") filed by the Republic of Argentina (the "Republic") on February 25, 2016, seeking orders to vacate the amended injunctions entered by the Court on November 21, 2012 and October 30, 2015 (collectively, the "Injunction"). *See* Feb. 25, 2016 M. Paskin Ltr., *NML Capital, Ltd. v. The Republic of Arg.*, No. 08-cv-6978, Dkt. # 888 (S.D.N.Y. Feb. 25, 2016).

It is common ground that, through no fault of their own, the Euro Bondholders (and other exchange bondholders) have been collaterally damaged by the dispute between the Plaintiffs and the Republic for years. The operation of the Injunction has deprived the Euro Bondholders of hundreds of millions of dollars of contractually owed payments on the bonds they own, and the current total amount of blocked interest payments on all exchange bonds is approximately 3.1 billion dollars. Ex. A, Declaration of Christopher J. Clark (Feb. 29, 2016) ¶¶ 3-4. "The court has repeatedly voiced its concern" regarding the "plight" of such innocent third parties affected by the Injunction, and has expressly recognized that the "most notable" among these third parties "are the exchange bondholders," including the Euro Bondholders. Indicative Ruling at 18, *NML Capital, Ltd. v. The Republic of Arg.*, No. 14-cv-8947, Dkt. # 47 (S.D.N.Y. Feb. 19, 2016) (citing Aug. 21, 2014 Hr'g Tr. at 11:9, *NML Capital, Ltd. v. The Republic of Arg.*, No. 08-cv-6978 (S.D.N.Y. Sept. 4, 2014) (noting concern with the Injunction's collateral effect on "very innocent third parties")). As the

---

[1] The Euro Bondholders are a group of holders of a substantial amount of English law governed euro-denominated bonds ("Euro Bonds") issued by the Republic of Argentina pursuant to 2005 and 2010 exchange offers. Ex. A, Clark Decl. ¶ 2.

Case 1:08-cv-06978-TPG   Document 908   Filed 03/01/16   Page 2 of 4
Case 1:14-cv-08601-TPG   Document 70   Filed 02/29/16   Page 2 of 4

February 29, 2016
Page 2

LATHAM&WATKINS LLP

Court recognized, if the Injunction is lifted, "the Republic may once again pay the exchange bondholders—something that has not happened for nearly two years." Indicative Ruling at 19. If, however, the Injunction remains in effect, the total amount of blocked payments on the exchange bonds will continue growing, rising to approximately 3.8 billion dollars by June 2016. Ex. A, Clark Decl. ¶ 4.

Under these circumstances, the continuing operation of the Injunction is unwarranted and inequitable. As set forth in my letter of February 19, 2016, and in the Court's Indicative Ruling, the significant change in the circumstances underlying the Injunction warrants vacatur as soon as the conditions set forth in the Indicative Ruling are met. *See* Indicative Ruling at 11-18; Feb. 19, 2016 C. Clark Ltr. at 2-3, *NML Capital, Ltd. v. The Republic of Arg.*, No. 08-cv-6978, Dkt. # 886 (S.D.N.Y. Feb. 19, 2016).

*First*, it is undisputed that, contrary to the facts that gave rise to the Injunction—namely, the Republic's refusal to negotiate with holdout bondholders, *see* Indicative Ruling at 4—the Republic's new administration has consistently declared its commitment to resolving these disputes and has made good on those promises by extending (generous) settlement offers to the Plaintiffs. Indicative Ruling at 7-10, 13-14, 16.

*Second*, many large holdout bondholders (the "Settling Plaintiffs"), including Dart Management Inc., EM Ltd., Montreux Partners, L.P., Los Angeles Capital, Cordoba Capital, and Wilton Capital, Ltd., have accepted the Republic's offers. *See* Indicative Ruling at 7, 17. Those settlements—like the payments owed to the Euro Bondholders and other exchange bondholders—are now held hostage by the continued operation of the Injunction because, as explained by the Settling Plaintiffs in submissions to the Court, absent vacatur, the Republic would be unable to obtain the Congressional approval required to effect those settlements. *See* Settling Pls.' Br. at 2-3 n.2, *NML Capital, Ltd. v. The Republic of Arg.*, No. 08-cv-6978, Dkt. # 869-1 (S.D.N.Y. Feb. 12, 2016); *see also* Indicative Ruling at 19. The Court has echoed the Settling Plaintiffs' concerns, noting that "if another plaintiff, armed with an injunction in a different action could scupper that deal, [a Settling Plaintiff]—as a third party to that action—would suffer." Indicative Ruling at 19.

*Third*, as long as the Injunction remains in effect, the amount of past interest due to holders of exchange bonds, which is currently approximately 3.1 billion dollars, Ex. A, Clark Decl. ¶ 4, will continue to grow. Indeed, if the Injunction is not vacated, that amount will rise to approximately 3.8 billion dollars by June 2016. Ex. A, Clark Decl. ¶ 4. Meanwhile, the Republic would remain unable to access the global capital markets to raise capital to finance settlements with holdout bondholders *or* to pay the amounts owed on the exchange bonds. Eventually, those amounts will become so large that, without access to the global capital markets, the Republic may simply be unable to pay them. In other words, the Injunction will perpetuate *and exacerbate* the very problem it was meant to resolve—the Republic's non-payment of its defaulted debt—and will transform from a tool for incentivizing settlement to an impediment to settlement.

*Finally*, maintaining the status quo is particularly inequitable in light of the fact that the issuance of the Injunction and its effect on the rights of third parties, including the Euro Bondholders, was put in place without affording those third parties a meaningful opportunity to be heard. For example, on November 9, 2012, at the Plaintiffs' request, the Court set an expedited

Case 1:08-cv-06978-TPG   Document 908   Filed 03/01/16   Page 3 of 4
Case 1:14-cv-08601-TPG   Document 70   Filed 02/29/16   Page 3 of 4

February 29, 2016
Page 3

LATHAM&WATKINS LLP

briefing schedule to decide—in accordance with the Second Circuit Court of Appeals' mandate—the effect of the Injunction on third-party intermediaries in the exchange bond payment chain. *See* Nov. 9, 2014 Hr'g Tr., *NML Capital, Ltd. v. The Republic of Arg.*, No. 08-cv-6978, Dkt. # 411 (S.D.N.Y. Nov. 19, 2012). Exchange bondholders (indisputably interested third parties), including the Euro Bondholders, received neither notice of that proceeding nor an opportunity to be heard. Likewise, on June 27, 2014, again at the Plaintiffs' behest, the Court held an emergency hearing regarding funds transferred by the Republic for the benefit of the Euro Bondholders to a Bank of New York Mellon account at Banco Central de la República de Argentina in Buenos Aires, Argentina. *See* July 27, 2014 Hr'g Tr., *NML Capital, Ltd. v. The Republic of Arg.*, No. 08-cv-6978, Dkt. # 622 (S.D.N.Y. July 31, 2014). Again, the Euro Bondholders, *whose money was the subject of that hearing*, Ex. A, Clark Decl. ¶ 5, received no notice of the proceeding.[2] And, each time the Euro Bondholders have attempted to protect their rights by seeking to intervene before the Second Circuit Court of Appeals, they have been rebuffed and their motions denied. *See NML Capital, Ltd. v. Republic of Arg.*, 727 F.3d 230, 240 (2d Cir. 2013); *Applestein v. Republic of Arg.*, No. 14-4221, Dkt. # 101 (2d Cir. Jan. 28, 2015); *Dussault v. Republic of Arg.*, No. 14-4235, Dkt. # 70 (2d Cir. Jan. 28, 2015).

---

[2] In light of this procedural history, the Plaintiffs' letter of February 26, 2016 is particularly ironic when it bemoans the "hurried schedule" set by the Court to hear the Republic's motion to vacate the Inunction as "entirely unnecessary and skirt[ing] the mandate of the court of appeals." Feb. 25, 2016 R. Cohen Ltr., *NML Capital, Ltd. v. The Republic of Arg.*, No. 08-cv-6978, Dkt. # 890 (S.D.N.Y. Feb. 25, 2016). As the court is aware, on many occasions, the Plaintiffs have submitted *ex parte* applications to hold emergency hearings with no notice to interested third parties, and have repeatedly surreptitiously filed papers with the Court without making them publically available. *See, e.g.*, July 3, 2014 C. Clark Ltr. at 1 n.1, *NML Capital, Ltd. v. The Republic of Arg.*, No. 08-cv-6978, Dkt. # 558 (S.D.N.Y. July 3, 2014) (noting the Plaintiffs' submission of a letter and proposed order to Court via email such that counsel of record, including for the Euro Bondholders, did not receive notice). The latter clandestine practice required the Court to formally order that parties "file all documents electronically." Order, *NML Capital, Ltd. v. The Republic of Arg.*, No. 08-cv-6978, Dkt. # 644 (S.D.N.Y. Aug. 19, 2014). The schedule set by the Court is eminently reasonable and provides the Plaintiffs far greater opportunity to be heard than many others have been afforded in these matters. The Plaintiffs have been on notice of the Republic's motion to vacate the Injunctions since February 11, 2016, have been provided the opportunity to submit further briefing, and will have the chance to make their points orally at the hearing on March 1, 2016. This Court's judicial process does not exist for the Plaintiffs' strategic advantage, and the Plaintiffs must abide by the Court's procedures even when they are inconvenient for them.

Case 1:08-cv-06978-TPG   Document 908   Filed 03/01/16   Page 4 of 4
Case 1:14-cv-08601-TPG   Document 70   Filed 02/29/16   Page 4 of 4

February 29, 2016
Page 4

LATHAM&WATKINS<sup>LLP</sup>

After years of being deprived of their contractually owed payments and a meaningful opportunity to be heard, the Euro Bondholders respectfully submit that they are entitled to their day in court, and request an opportunity to address the Court on these very important matters during the hearing before the Court scheduled for 1:30 p.m. on March 1, 2016.

APPROVED

Sincerely,

/s/ Christopher J. Clark

Christopher J. Clark
of LATHAM & WATKINS LLP

cc:   Counsel of Record (via ECF)

So ORDERED:   *Thomas P. Griesa*

3/1/2016